1   DENNIS J. HERRERA, State Bar #139669
    City Attorney
2   KRISTEN A. JENSEN, State Bar #130196
    THOMAS S. LAKRITZ, State Bar #161234
3   Deputy City Attorneys
    City Hall, Room 234
4   1 Dr. Carlton B. Goodlett Place
    San Francisco, California 94102
5   Telephone:     (415) 554-6547
    Facsimile:      (415) 554-4747
6   E-Mail:         tom.lakritz@sfgov.org

7   Attorneys for Defendant
    CITY AND COUNTY OF SAN FRANCISCO
8

9               UNITED STATES DISTRICT COURT

10             NORTHERN DISTRICT OF CALIFORNIA

11

12   METRO FUEL LLC, a Delaware limited          Case No. C07-6067 JSW
     liability company,
13                                               **DEFENDANT CITY AND COUNTY OF**
                      Plaintiff,                 **SAN FRANCISCO'S NOTICE OF**
14                                               **MOTION, MOTION AND**
              vs.                                **MEMORANDUM OF POINTS AND**
15                                               **AUTHORITIES IN SUPPORT OF**
     CITY OF SAN FRANCISCO, a municipal          **MOTION FOR JUDGMENT ON THE**
16   corporation, COUNTY OF SAN                  **PLEADINGS**
     FRANCISCO, a subdivision of the State
17   of California, CITY AND COUNTY OF           **Fed. R. Civ. P. 12(c)**
     SAN FRANCISCO, a chartered California
18   city and county and DOE 1 through DOE       Hearing Date:   June 13, 2008
     10,                                         Time:           9:00 A.M.
19                                               Place:          Courtroom 2, 17th Fl.
                      Defendants.
20                                               Trial Date:     October 26, 2009

21

22

23

24

25

26

27

28

# TABLE OF CONTENTS

TABLE OF AUTHORITIES ............................................................................................... ii

NOTICE AND MOTION ..................................................................................................1

MEMORANDUM OF POINTS AND AUTHORITIES ....................................................2

SUMMARY OF ARGUMENT .........................................................................................2

BACKGROUND ...............................................................................................................3

          A.     *Metromedia v. City Of San Diego* ................................................3

          B.     San Francisco's Regulation of Signs and Billboards ..................................4

          C.     San Francisco's Ban On New General Advertising Signs ..........................5

          D.     San Francisco's General Advertising Sign Inventory Requirements ..........7

          E.     The Complaint ............................................................................................8

DISCUSSION ....................................................................................................................9

    I.      LEGAL STANDARD..........................................................................................9

    II.     SAN FRANCISCO'S BAN ON NEW GENERAL ADVERTISING SIGNS
          DOES NOT VIOLATE THE FIRST AMENDMENT...........................................9

          A.     San Francisco's Ban On New General Advertising Signs Does Not
                 Impermissibly Regulate Speech Based On Content ....................................9

          B.     San Francisco's Exception For The Public Right of Way Does Not
                 Violate The First Amendment ..................................................................11

    III.    METRO FUEL, AS A BUSINESS ENTITY, DOES NOT ENJOY THE
          FIFTH AMENDMENT PROTECTION AGAINST SELF-INCRIMINATION ..13

    IV.    METRO FUEL'S 42 U.S.C. § 1983 CLAIMS FAIL AS A MATTER OF LAW .14

          A.     Metro Fuel's 42 U.S.C. § 1983 Claims Are Barred By The Statute of
                 Limitations ...............................................................................................14

          B.     San Francisco's Ban On New General Advertising Signs Is Not
                 Irrational..................................................................................................15

          C.     San Francisco's Ban On New General Advertising Signs Does Not
                 Violate Procedural Due Process................................................................16

CONCLUSION................................................................................................................17

1

2

## <u>TABLE OF AUTHORITIES</u>

**Federal Cases**

*Ackerley Communications of the Northwest Inc. v. R.F. Krochalis*
    108 F.3d 1095 (9th Cir. 1997) ..................................................................11

*California Bankers Ass'n v. Shultz*
    416 U.S. 21 (1974)..................................................................2, 13, 14

*Central Hudson Gas & Elec. Corp. v. Public Serv. Comm'n of N.Y.*
    447 U.S. 557 (1980)..................................................................3

*FCC v. Beach Communications, Inc.*
    508 U.S. 307 (1993)..................................................................15

*Hal Roach Studios, Inc. v. Richard Feiner and Co.*
    896 F.2d 1542 (9th Cir. 1990) ..................................................................9

*Heller v. Doe*
    509 U.S. 312 (1993)..................................................................15

*Jones v. Blanas*
    393 F.3d 918 (9th Cir. 2004) ..................................................................14

*Landgraf v. USI Film Products*
    511 U.S. 244 (1994)..................................................................14

*McGlinchy v. Shell Chemical Co*
    845 F.2d 802 (9th Cir. 1988) ..................................................................9

*Metro Lights, L.L.C. v. City of Los Angeles*
    488 F.Supp.2d 927 (C.D. Cal. 2006) ..................................................................12

*Metromedia v. City of San Diego*
    453 U.S. 490 (1981)..................................................................passim

*Minnesota v. Clover Leaf Creamery Co.*
    449 U.S. 456 (1981)..................................................................15

*National Advertising Co. v. City of Orange*
    861 F.2d 246 (9th Cir. 1988) ..................................................................12

*Nordlinger v. Hahn*
    505 U.S. 1 (1992)..................................................................15

*Outdoor Media Group, Inc. v. City of Beaumont*
    506 F.3d 895 (9th Cir. 2007) ..................................................................2, 16, 17

*Outdoor Systems, Inc. v. City of Mesa*
    997 F.2d 604 (9th Cir. 1993) ..................................................................11

NOTICE, MOTION AND MPA ISO MJP
USDC No. C07-6067 JSW
    ii
    n:\land\li2008\080804\00475208.doc

*Posadas de Puerto Rico Associates v. Tourism Company of Puerto Rico*
478 U.S. 328 (1986)................................................................2, 15, 16

*United States R. Retirement Bd. v. Fritz*
449 U.S. 166 (1980).......................................................................15

*United States v. White*
322 U.S. 694 (1944)..........................................................1, 2, 13, 14

**Federal Statutes**

42 United States Code
Section 1983 .......................................................................2, 8, 14, 15

Federal Rules of Civil Procedure
Rule 12(c) ..............................................................................................9
Rule 12(b)(6)..........................................................................................9

**State Cases**

*Krusesky v. Baugh*
138 Cal.App.3d 562 (1982) ................................................................14

*Traverso v. People ex rel. Dept. of Transp.*
6 Cal.4th 1152 (1993) .........................................................................16

**State Statutes & Codes**

Code of Civil Procedure
Section 335.1 .......................................................................................14
Section 340 ..........................................................................................14

**San Francisco Statutes, Codes & Ordinances**

San Francisco, California, Planning Code
Article 6 ...................................................................................... passim
Section 601 .............................................................................................6
Section 602 .............................................................................................7
Section 602.3 ....................................................................................5, 10
Section 602.7 ....................................................................................5, 10
Section 604.1(c)......................................................................................7
Section 604.2 ...................................................................................2, 7, 13
Section 604.2(c).....................................................................................8
Section 604.2(g)...................................................................................14
Section 604.2(g)(3-4)...........................................................................14
Section 611 .............................................................................................5
Section 611(a) ...............................................................................10, 17
Section 611(b) ........................................................................................6

**Constitutional Provisions**

United States Constitution

First Amendment ................................................................................................ passim
Fifth Amendment ..........................................................................................8, 13
Fourteenth Amendment ..............................................................................................2

**Other References**

Proposition G ........................................................................................... passim

1
2
3
4
5
6
7
8
9
10
11
12
13
14
15
16
17
18
19
20
21
22
23
24
25
26
27
28

## NOTICE AND MOTION

Defendant the City and County of San Francisco, sued herein as the City of San Francisco, County of San Francisco, and City and County of San Francisco (collectively, "the City" or "San Francisco") hereby moves for judgment on the pleadings on the first, second, third and fourth causes of action of the Complaint, because these causes of action fail to state a claim and because claims arising under the 14th Amendment to the U.S. Constitution are time-barred. This motion is made pursuant to Rule 12(c) of the Federal Rules of Civil Procedure, as is based upon the below Memorandum of Points and Authorities and the Request for Judicial Notice filed concurrently herewith.

This motion will be heard on Friday, June 13, 2008, at 9:00 a.m., before the Honorable Jeffrey S. White in Courtroom 17 at the United States District Court, San Francisco Division, 450 Golden Gate Avenue, San Francisco, CA 94102.

Dated: March 28, 2008                          Respectfully submitted,

                                                                DENNIS J. HERRERA
                                                                City Attorney
                                                                KRISTEN A. JENSEN
                                                                THOMAS S. LAKRITZ
                                                                Deputy City Attorneys


                                               By:_____/S/_____.
                                                                THOMAS S. LAKRITZ

                                                                Attorneys for Defendant CITY AND COUNTY OF
                                                                SAN FRANCISCO

1

2

3

4

5

6

7

8

9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28

## MEMORANDUM OF POINTS AND AUTHORITIES

## SUMMARY OF ARGUMENT

For over 40 years, the City and County of San Francisco ("the City") has regulated signs and billboards in San Francisco. In 2002, the almost 80% of the voters approved Proposition G, which prohibits all new general advertising signs as a March 5, 2002. Proposition G was premised on the need to control the visual clutter and blight caused by the proliferation of billboards in San Francisco. In addition, Proposition G sought to protect the interest of pedestrians and drivers by removing visual clutter in the public right of way.

Metro Fuel LLC ("Metro Fuel") seeks to invalidate Proposition G alleging it violates the First and Fourteenth Amendments. Metro Fuel also alleges that another provision of the San Francisco Planning Code violates the Fifth Amendment.

Metro Fuel's claim that San Francisco Planning Code, Article 6 violates the First Amendment fails, because the City may ban commercial advertising when the ban is based on esthetics and pedestrian and driver safety. *See Metromedia v. City of San Diego,* 453 U.S. 490 (1981).

Metro Fuel's claim that the inventory requirements of San Francisco Planning Code section 604.2 violate the Fifth Amendment right against self-incrimination fails, because as a business organization and not a natural person, Metro Fuel does not enjoy the constitutional privilege against self-incrimination encompassed by the 5th Amendment. *See California Bankers Ass'n v. Shultz,* 416 U.S. 21, 55 (1974); *United States v. White,* 322 U.S. 694, 698 (1944).

Metro Fuel's 42 U.S.C. § 1983 claim is time barred. Metro Fuel did not initiate this lawsuit by March 5, 2003. Nor did Metro Fuel allege any acts that occurred since November 30, 2005, that might give rise to a cause of action against the City. Furthermore, San Francisco's ban on new general advertising signs is rationally related to legitimate government interest. *See Posadas de Puerto Rico Associates v. Tourism Company of Puerto Rico,* 478 U.S. 328, 344 fn.9 (1986). Finally, Metro Fuel's procedural due process claim fails, because Metro Fuel does not have a vested right any erecting any new general advertising signs. *See Outdoor Media Group, Inc. v. City of Beaumont*, 506 F.3d 895, 902-903 (9th Cir. 2007).

Accordingly, the Court should grant the City's motion for judgment on the pleadings.

1

2

### BACKGROUND

**A.**    *Metromedia v. City Of San Diego*

As the leading opinion analyzing the ability of cities to regulate outdoor advertising in order to further public safety and aesthetics, *Metromedia v. City of San Diego,* 453 U.S. 490 (1981), bears close examination.  *Metromedia* involved a San Diego ordinance that allowed "onsite" commercial signs but prohibited "[offsite] commercial . . .and noncommercial communications using fixed-structure signs," that is, billboards.[1]  453 U.S. at 496.  The San Diego ordinance contained 12 exceptions and one of the exceptions stated that the ordinance did not apply to "[b]ench signs located at designated public transit bus stops; provided, however, that such signs shall have any necessary permits."  *Id.* at 496, fn.3.  After the California Supreme Court upheld the ordinance under the federal and California Constitutions, the U.S. Supreme Court, applying the commercial speech test set forth in *Central Hudson Gas & Elec. Corp. v. Public Serv. Comm'n of N.Y.*, 447 U.S. 557 (1980), held that the ordinance's restrictions on commercial speech did not violate the First Amendment.  *Metromedia*, 453 U.S. at 508-512 (plurality); *id*. at 540 (Stevens, J. (joining plurality as to commercial speech)); *id*. at 555 (Burger, J. (finding ordinance entirely constitutional)); *id*. at 569 (Rehnquist, J. (same).)

The *Metromedia* Court held, first, that there was no "substantial doubt" that the measure's two stated purposes – "to eliminate hazards to pedestrians and motorists brought about by distracting sign displays" and "to preserve and improve the appearance of the City" – are "substantial governmental goals."  453 U.S. at 493, 507-08.  Second, the Court held that the prohibition on commercial billboards directly advanced the city's safety and aesthetic interests, even though the city had relied only on its "legislative judgment that billboards are traffic hazards" and cause aesthetic blight.  *Id*. at 508-510.  Finally, the Court held that the ordinance was no broader than necessary to serve the city's interests.  As it explained, "[i]f the city has a sufficient basis for believing that billboards are traffic hazards and are unattractive, then obviously the most direct and perhaps the only effective approach to solving the problems they create is to prohibit them."  *Id*., 453 U.S. at 508.

---

[1]  An "onsite" sign was defined as one that designated the name of the owner or occupant of the property where the sign was located, or that advertised goods produced or services rendered at that location.  Conversely, an "offsite" sign was one that "advertis[ed] goods or services produced or offered elsewhere."  *Metromedia*, 453 U.S. at 494, 503.

The *Metromedia* Court also held that the law did not violate the First Amendment even though it allowed onsite commercial billboards but prohibited "identical billboards, equally distracting and unattractive," that displayed offsite messages. *Id*. at 511. The fact that the city "has obviously chosen to value one kind of commercial speech – onsite advertising – more than another kind of commercial speech – offsite advertising," was legally permissible. *Id*. at 512. As the Court explained:

> The ordinance reflects a decision by the city that the former interest, but not the latter, is stronger than the city's interests in traffic safety and esthetics. The city has decided that in a limited instance – onsite commercial advertising – its interests should yield. We do not reject that judgment.

*Id*. Moreover, "the prohibition of offsite advertising is directly related to the stated objectives of traffic safety and esthetics. This is not altered by the fact that the ordinance is underinclusive because it permits onsite advertising." *Id*. at 511. And "the city may believe that offsite advertising, with its periodically changing content, presents a more acute problem than does onsite advertising." *Id*.

**B.    San Francisco's Regulation of Signs and Billboards**

For over 40 years, the City has regulated signs and billboards in San Francisco. In 1965, the City enacted San Francisco Planning Code, Article 6 to regulate and control signs and billboards in San Francisco. San Francisco, Cal., Planning Code art. 6. (2007).[2] The purpose of San Francisco's regulations is to enhance the character, dignity, and aesthetics of the City, and to promote the public health, safety, and welfare by reducing visual distractions to pedestrians and motorists:

> it is the further purpose of this Article 6 to safeguard and enhance property values in residential, commercial and industrial areas; to protect public investment in and the character and dignity of public buildings, open spaces and thoroughfares; to protect the distinctive appearance of San Francisco which is produced by its unique geography, topography, street patterns, skyline and architectural features; to provide an environment which will promote the development of business in the City; to encourage sound practices and lessen the objectionable effects of competition in respect to size and placement of signs; to aid in the attraction of tourists and other visitors who are so important to the economy of the City and County; to reduce hazards to motorists and pedestrians traveling on the public way; and thereby promote the public health, safety and welfare.

---

[2]    San Francisco, Cal., Planning Code art. 6 (2007) is attached as Exhibit A to the City's Request for Judicial Notice.

1  *Id.* at § 601.

2      Like many cities, San Francisco follows the dictates of *Metromedia* and regulates signs based

3  on the onsite and offsite distinction.  In San Francisco, onsite signs are designated as "business signs"

4  and offsite signs are designated "general advertising signs."  A "business sign" is defined as:

5          A sign which directs attention to a business, commodity, service, industry or
        other activity which is sold, offered, or conducted, other than incidentally, on
6          the premises upon which such sign is located, or to which it is affixed.  Where
        a number of commodities with different brand names or symbols are sold on
7          the premises, up to 1/3 of the area of a business sign, or 25 square feet of sign
        area, whichever is the lesser, may be devoted to the advertising of one or more
8          of those commodities by brand name or symbol as an accessory function of the
        business sign, provided that such advertising is integrated with the remainder
9          of the business sign, and provided also that any limits which may be imposed
        by this Code on the area of individual signs and the area of all signs on the
10         property are not exceeded.

11  San Francisco, Cal., Planning Code § 602.3 (2007).

12      A "general advertising sign" is defined as

13         A sign, legally erected prior to the effective date of Section 611 of this Code,
        which directs attention to a business, commodity, industry or other activity
14         which is sold, offered or conducted elsewhere than on the premises upon which
        sign is located, or to which it is affixed, and which is sold, offered or
15         conducted on such premises only incidentally if at all.

16  San Francisco, Cal., Planning Code § 602.7.

17      Article 6 of the San Francisco Planning Code also imposes numerous other requirements and

18  restraints on signs and billboards in San Francisco.  Only two are relevant in this litigation.

19  **C.    San Francisco's Ban On New General Advertising Signs**

20      Relevant to Metro Fuel's allegations is the City's ban on new general advertising signs.  In

21  2002, members of the Board of Supervisors ("the Board") sought to prohibit new general advertising

22  signs as of March 5, 2002, and they placed Proposition G on the ballot.  *See* San Francisco, Cal.,

23  Voter Information Pamphlet And Sample Ballot, Consolidated Primary Election, March 5, 2002

24  ("Proposition G").[3]  While imposing a ban on new general advertising signs, Proposition G expressly

25  stated that "Nothing in this ordinance shall be construe to prohibit the placement of signs . . . in the

---

[3]      San Francisco, Cal., Voter Information Pamphlet And Sample Ballot, Consolidated
Primary Election, March 5, 2002 ("Proposition G") is attached as Exhibit B to the City's Request for
Judicial Notice.

1    public right of way as permitted by local law." *Id.* at p. 102 (codified at San Francisco, Cal., Planning

2    Code § 611(b).)  Moreover, consistent with constitutional limits, Proposition G expressly stated that it

3    was "not intended to regulate non-commercial speech." *Id.* at § 1(n) (uncodified findings).  The

4    following findings were made when Proposition G was adopted:

### *Preserving the City's Unique Character*

(a)    General advertising is currently in, adjacent to, and visible from public and historically significant civic spaces including parks, public plazas, historic buildings and the waterfront.

(b)    City officials have received complaints from the public about the proliferation of general advertising signs in the City, about the commercialization of the City's public space, the increased size of vinyl signs which cover entire sides of buildings, as well as about general advertising signs placed on architecturally and historically significant buildings, all of which affect the quality of life in San Francisco, adding blight and clutter.

(c)    The City currently contains an amply supply of legally permitted general advertising signs.

(d)    The number of general advertising signs is increasing all over the City. Many areas of the City are saturated with general advertising signs.  In these areas the general advertisings signs are obtrusive, out of scale, and contribute to visual pollution and blight.  As population, traffic and building trends grow and shift within the City, it is difficult to assess which areas of the City will be inundated with general advertising signs next.

(e)    Tourism, San Francisco's largest revenue generating industry, benefits from the preservation of the City's unique character, architecture and vistas. As general advertising signs become more and more a part of the City's landscape, its distinctive appearance is hidden and the character that tourists visit the City to experience is lost.

### *Safety*

(f)    City officials and the public have expressed concern over the impact of the increasing volume of general advertising signs on traffic and pedestrian safety.

(g)    Signs identifying local services and businesses are often blocked or obscured by general advertising signs, a practice that confuses and distracts the public from finding those services and businesses.

(h)    Planning Code Section 601 identifies the need to reduce hazards such as signs which can distract motorists and pedestrians traveling on the public right of way and increase the potential for accidents, especially in congested parts of the City.

*Id.* at § 1 (a-h) (uncodified findings).

Proposition G passed with almost 80% of the vote.  *See* San Francisco, Cal., Consolidated Primary Election Results, March 5, 2002, Proposition G.[4]

**D.    San Francisco's General Advertising Sign Inventory Requirements**

Also relevant to Metro Fuel's allegations is the City's requirement that sign companies affirmatively submit information about each general advertising sign.  In 2006, the Board wanted to provide a mechanism "to further Proposition G's overall objectives of enhancing [San Francisco]'s livability and quality of life by reducing the proliferation of general advertising signs in [San Francisco] and the resulting clutter, blight, and other problems described in Proposition G."  San Francisco, Cal., Ordinance 140-06, Section 1 (d) (June 20, 2006).[5]  To accomplish this, the Board added Planning Code section 604.2, which requires any general advertising company to submit a current, accurate, and complete inventory of its general advertising signs.  General advertising sign companies were required to provide the following information for each general advertising sign:

> (1)    the location of the sign by street address, by block and lot, and by nearest intersection;
>
> (2)    a photograph of the sign in its existing location on the lot, specifically identifying the sign;
>
> (3)    the date of the original erection or installation of the sign, if known;
>
> (4)    the permit number or in-lieu identifying number issued by the Department pursuant to Section 604.1(c) of this Code;
>
> (5)    the approved and existing area, dimensions, height, and any other special features of the sign such as illumination or movement;
>
> (6)    the type of sign, as defined in Section 602 of this Code;
>
> (7)    evidence that the sign has not been removed and still exists at the authorized location, and that the sign company is the owner of the sign structure;
>
> (8)    permit number and, in the case of subsequent modifications of the sign, including but not limited to, illumination, permit application number or permit number;
>
> (9)    evidence that the sign still is in use for general advertising; and

---

[4]    San Francisco, Cal., Consolidated Primary Election Results, March 5, 2002, Proposition G is attached as Exhibit C to the City's Request for Judicial Notice.

[5]    San Francisco, Cal., Ordinance 140-06 (June 20, 2006) is attached as Exhibit D to the City's Request for Judicial Notice.

(10)  information, if known, whether the sign had a prior use as a non-general advertising sign, including, but not limited to, a business sign or exempt sign, and the duration of such prior use.

San Francisco, Cal., Ordinance 140-06, Section 5 (June 20, 2006) (codified at San Francisco, Cal., Planning Code § 604.2(c) (2007).

### E.    The Complaint

On November 30, 2007, Metro Fuel filed this suit, challenging the City's ban on new general advertising signs and the subsequent requirement that each sign company must submit and maintain inventories of their general advertising signs located in San Francisco.  Metro Fuel's Complaint contains four causes of action.  Although Metro Fuel makes numerous claims about the constitutional infirmity of the City's sign and billboard restrictions, Metro Fuel makes no allegations that it was actually prevented from doing something (that is, putting up a sign or billboard) or harmed in any way by the City's ordinances.

The first cause of action alleges that San Francisco Planning Code, Article 6 violates the First Amendment to the U.S. Constitution in that it (a) impermissibly distinguishes between sign messages based on their content; (b) constitutes an unlawful prior restraint of speech by regulating speech based on its content; and (c) is impermissibly vague.  Complaint, ¶ 20.  Metro Fuel also challenges the City's general advertising ban, because it exempts the public right of way.  *Id.*

The second cause of action alleges that the inventory requirement violates the Fifth Amendment to the U.S. Constitution in that it requires parties to engage in conduct that could be self-incriminating.  *Id.*, ¶ 27.

The third cause of action seeks an injunction to restrain the City from enforcing San Francisco Planning Code, Article 6.  *Id.*, ¶ 34.

The fourth cause of action seeks damages for deprivation of civil rights.  *Id.*, ¶ 39.  Metro Fuel fails to state the legal basis for this cause of action.  The City assumes this cause of action is brought under 42 U.S.C. § 1983.

### DISCUSSION

## I.    LEGAL STANDARD

"Judgment on the pleadings is proper when the moving party clearly establishes on the face of the pleadings that no material issue of fact remains to be resolved and that it is entitled to judgment as a matter of law." *Hal Roach Studios, Inc. v. Richard Feiner and Co.,* 896 F.2d 1542, 1550 (9th Cir. 1990).

When Federal Rule of Civil Procedure 12(c) is used to raise the defense of failure to state a claim upon which relief can be granted, the standard governing the Rule 12(c) motion is the same for that governing a Rule 12(b)(6) motion. *McGlinchy v. Shell Chemical Co.,* 845 F.2d 802, 810 (9th Cir. 1988). As a result, a 12(c) motion for failure to state a claim should be granted, "if it is clear that no relief could be granted under any set of facts that could be proven consistent with the allegations." *Id.* (quotation and citation omitted). The Court must take the non-moving party's factual allegations as true and must construe those allegations in the light most favorable to the non-moving party. *Id.*

## II.    SAN FRANCISCO'S BAN ON NEW GENERAL ADVERTISING SIGNS DOES NOT VIOLATE THE FIRST AMENDMENT

### A.    San Francisco's Ban On New General Advertising Signs Does Not Impermissibly Regulate Speech Based On Content

Metro Fuel alleges that San Francisco's ordinance "impermissibly distinguishes between sign messages based upon their content without any compelling government interest and by means that are not narrowly drawn." Complaint, ¶ 20(a). Metro Fuel also alleges that San Francisco's ordinance "constitutes an unlawful prior restraint on speech by regulating speech based on its content." *Id.* at ¶ 20(b). Metro Fuel also alleges that San Francisco's ordinance "is impermissibly vague and does not provide sufficient safeguards to insure that City inspectors are prohibited from exercising unbridled discretion in determining which signs constitute on-site speech and which signs constitute off-site speech." Complaint, ¶ 20(e).

*Metromedia* easily disposes of these claims.

As noted above, under *Metromedia* municipalities can regulate, even ban, commercial speech. In *Metromedia,* the Court held that San Diego could ban offsite commercial advertising signs, while allowing identical onsite commercial advertising signs. *Metromedia*, 453 U.S. at 511. The fact that

1   San Diego "has obviously chosen to value one kind of commercial speech – onsite advertising – more

2   than another kind of commercial speech – offsite advertising," is legally permissible.  *Id.* at 512.  The

3   Court found that, "the prohibition of offsite advertising is directly related to the stated objectives of

4   traffic safety and esthetics.  This is not altered by the fact that the ordinance is underinclusive because

5   it permits onsite advertising."  *Id.* at 511.  And "the city may believe that offsite advertising, with its

6   periodically changing content, presents a more acute problem than does onsite advertising."  *Id.*

7   Here, as noted above, San Francisco's ordinance, like San Diego's ordinance upheld in

8   *Metromedia,* also distinguishes between onsite signs ("business signs") and offsite signs ("general

9   advertising signs").  *See* San Francisco, Cal., Planning Code §§ 602.3, 602.7.  In adopting Proposition

10  G, San Francisco prohibited "new general advertising signs . . . at any location within the City as of

11  March 5, 2002."  San Francisco, Cal., Planning Code § 611(a).  San Francisco acted to preserve the

12  City's unique character and to ensure the safety of pedestrians and drivers.  San Francisco, Cal., Voter

13  Information Pamphlet Consolidated Primary Election, March 5, 2002, Proposition G.

14  Therefore, for the same reasons articulated in *Metromedia*, San Francisco's ban on new

15  general advertising signs not does impermissibly regulate speech based upon content.  *Metromedia*,

16  453 U.S. at 511.  It is important to note that the onsite - offsite distinction involves disparate

17  treatment of two types of commercial speech, it does not involve discrimination between commercial

18  and noncommercial speech.  San Francisco's ordnance permissibly distinguishes between two types

19  of commercial speech and does not regulate noncommercial speech.

20  Accordingly, Metro Fuel's claims that San Francisco's ordinance impermissibly distinguishes

21  between sign messages based upon their content" and is impermissibly vague fail as a matter of law.[6]

22

23  [6]    Metro Fuel also alleges that San Francisco's ordinance violates the First Amendment
24  because "[w]hile on-site signs are predominantly used to convey commercial speech, the City
    completely prohibits off-site signs that contain both commercial and non-commercial speech.
25  Complaint, ¶ 10.  Metro Fuel mischaracterizes the City's ordinance.  Proposition G, which enacted the
    ban on general advertising signs, expressly states that it "is not intended to regulate non-commercial
26  signs."  San Francisco, Cal., Voter Information Pamphlet Consolidated Primary Election, March 5,
    2002.  Moreover, San Francisco defines "general advertising sign" to make clear that it only covers
27  commercial speech.  San Francisco, Cal., Planning Code § 602.7 ("A sign . . . which directs attention
    to a *business, commodity, industry . . .*).  Accordingly, this claim fails.
28

**B.    San Francisco's Exception For The Public Right of Way Does Not Violate The First Amendment**

Metro Fuel alleges that San Francisco's ordinance violates the First Amendment, because while banning all new general advertising signs, the City allows similar signs to be placed in the public right of way.  Complaint, ¶¶ 11, 20(d).

*Metromedia* also disposes of this claim.

As noted above, in *Metromedia*, the Supreme Court upheld San Diego's ordinance that banned offsite advertising.  San Diego's ban also expressly exempted twelve categories of signs, including "signs located at public bus stops."  *Metromedia*, 453 U.S. at 494.  San Diego premised its ban on pedestrian and driver safety and aesthetics.  *Id.* at 508.

The *Metromedia* Court held, first, that there was no "substantial doubt" that the measure's two stated purposes – "to eliminate hazards to pedestrians and motorists brought about by distracting sign displays" and "to preserve and improve the appearance of the City" – are "substantial governmental goals."  *Id.* at 507-08.  Second, the Court held that the prohibition on commercial billboards directly advanced the city's safety and aesthetic interests, even though the city had relied only on its "legislative judgment that billboards are traffic hazards" and cause aesthetic blight.  *Id*. at 508-510.  Finally, the Court held that the ordinance, including the 12 exceptions, was no broader than necessary to serve the city's interests.  As it explained, "[i]f the city has a sufficient basis for believing that billboards are traffic hazards and are unattractive, then obviously the most direct and perhaps the only effective approach to solving the problems they create is to prohibit them."  *Id*., 453 U.S. at 508.

The same reasoning applies to San Francisco's ban on general advertising, which contains an exception for signs in the public right of way.

The Ninth Circuit has repeatedly applied *Metromedia* to uphold laws prohibiting commercial advertising displays.  *See, e.g., Ackerley Communications of the Northwest Inc. v. R.F. Krochalis,* 108 F.3d 1095, 1099 (9th Cir. 1997) (ordinance prohibiting commercial billboards to further aesthetic and safety interests is constitutional as matter of law "without detailed proof that the billboard regulation will in fact advance the city's interests"); *Outdoor Systems, Inc. v. City of Mesa*, 997 F.2d 604, 610-12 (9th Cir. 1993) (prohibition on offsite commercial billboards does not violate First Amendment);

1   *National Advertising Co. v. City of Orange*, 861 F.2d 246, 248 (9th Cir. 1988) (city "may prohibit

2   [commercial] billboards entirely in the interest of traffic safety and aesthetics, and may also prohibit

3   them except where they relate to activity on the premises on which they are located" [citations

4   omitted]).

5          Accordingly, Metro Fuel's claims that San Francisco's exception for the public right of way

6   does not violate the First Amendment.  That San Francisco bans new general advertising signs and

7   allows for advertising signs in the right of way is entirely consistent with the holding in *Metromedia*.

8          The City assumes that Metro Fuel will rely on *Metro Lights, L.L.C. v. City of Los Angeles*,

9   488 F.Supp.2d 927 (C.D. Cal. 2006)[7] to oppose this motion.  In *Metro Lights*, the district court found

10  that Los Angeles ban on general advertising signs, which exempted signs on street furniture, violated

11  the First Amendment because, read together, they did not "in a narrowly tailored manner, directly

12  advance the City's interests in traffic safety and aesthetics."  *Metro Lights,* 488 F.Supp.2d at 950.

13         But the *Metro Lights* court failed to properly apply the holding of *Metromedia*.

14         In *Metro Lights*, the court concluded that Los Angeles' program for the placement of signs on

15  street furniture undermined the gains in aesthetics and traffic and pedestrian safety achieved by

16  banning offsite general advertising.  *Metro Lights,* 488 F.Supp.2d at 948-950.  In so holding, the

17  *Metro Lights* court ignored *Metromedia* in three significant ways.

18         First, it ignored the holding that "a legislative judgment that billboards are traffic hazards is

19  not manifestly unreasonable *and should not be set aside.*"  *Metromedia*, 453 U.S. at 508-09.  Second,

20  it also ignored the fact that the Supreme Court "likewise hesitate[d] to disagree with the accumulated,

21  commonsense judgments of local lawmakers and of the many reviewing courts that billboards are real

22  and substantial hazards to traffic safety.  There is nothing to suggest that these judgment are

23  unreasonable."  *Id.* at 509.  Finally, it ignored the holding of *Metromedia* regarding esthetics:

24                  It is not speculative to recognize that billboards by their vary nature, wherever
                    located and however constructed, can be perceived as an "esthetic harm."  San
25                  Diego, like many States and other municipalities, has chosen to minimize the

26  _____

27         [7]      *Metro Lights, L.L.C. v. City of Los Angeles* is currently on appeal to the Ninth Circuit
    and is fully briefed.  *Metro Lights, L.L.C. v. City of Los Angeles,* 488 F.Supp.2d 927 (C.D. Cal. 2006),
    *appeal docketed*, Nos. 07-55179, 07-55207 (9th Cir. Feb. 1, 2007).

28

1
2
3

> presence of such structures.  Such esthetic judgments are necessarily
> subjective, defying objective evaluation, and for that reason must be carefully
> scrutinized to determine if they are only a public rationalization of an
> impermissible purpose.  But there is no claim in this case that San Diego has as
> an ulterior motive the suppression of speech, and the judgment involved here is
> not so unusual as to raise suspicions in itself.

4

*Id.* at 510.

5
6
7
8

San Francisco's ban on general advertising signs, which permits signs in the public right of way, is premised on protecting the unique character of San Francisco and increasing the safety of pedestrians and drivers who navigate through the public rights of way in San Francisco.  *Metromedia* support San Francisco's ordinance.

9
10

### III.    METRO FUEL, AS A BUSINESS ENTITY, DOES NOT ENJOY THE FIFTH AMENDMENT PROTECTION AGAINST SELF-INCRIMINATION

11
12
13
14
15
16
17
18

In its second cause of action, Metro Fuel claims that the inventory requirements of San Francisco Planning Code section 604.2 violate the Fifth Amendment right against self-incrimination. Complaint, ¶¶ 15, 27.  Metro Fuel alleges that because maintenance of a general advertising sign is a violation of the Planning Code and because a violation of the Planning code is a misdemeanor, submitting an inventory (presumably with information that its signs were erected and are maintained in violation of the Planning Code) would establish that Metro Fuel is guilty of a misdemeanor.  Thus Metro Fuel alleges that the inventory requirement "is a violation of their Fifth Amendment rights against self-incrimination."  Complaint, ¶ 15.

19

This claim fails as a matter of law.

20
21
22
23
24
25
26

The Fifth Amendment to the U.S. Constitution states that "No *person* . . . shall be compelled in any criminal case to be a witness against himself."  *Emphasis added*.  "The constitutional privilege against self-incrimination is essentially a personal one, applying only to natural individuals."  *United States v. White,* 322 U.S. 694, 698 (1944).  "Since the privilege against self-incrimination is a purely personal one, it cannot be utilized by or on behalf of any organization, such as a corporation."  *Id.* at 699; *see also California Bankers Ass'n v. Shultz,* 416 U.S. 21, 55 (1974) ["Incorporated banks, like other organizations, have no privilege against compulsory self-incrimination"].

27
28

Here, Metro Fuel concedes that it is a "limited liability company" and not a natural person. Complaint, ¶ 1.  Therefore, as a business organization and not a natural person, Metro Fuel does not

enjoy the constitutional privilege against self-incrimination encompassed by the 5th Amendment. *California Bankers Ass'n*, 416 U.S. at 55; *White*, 322 U.S. at 698.

Accordingly, Metro Fuel's claim based upon the Fifth Amendment fails as a matter of law.[8]

## IV.    METRO FUEL'S 42 U.S.C. § 1983 CLAIMS FAIL AS A MATTER OF LAW

### A.    Metro Fuel's 42 U.S.C. § 1983 Claims Are Barred By The Statute of Limitations

"For actions under 42 U.S.C. § 1983, courts apply the forum state's statute of limitations for personal injury actions." *Jones v. Blanas,* 393 F.3d 918, 927 (9th Cir. 2004). In June of 2002, the statute of limitations for personal injury actions in California was one year. *See* former Code of Civil Proc. §340. On January 1, 2003, Code of Civil Procedure § 335.1 became law, extending the prior limitations period applicable to personal injury actions (and correspondingly to federal civil rights claims) in California from one year to two years. Cal. Code Civ.Proc. § 335.1.

Here, the City's ban on general advertising signs was enacted on March 5, 2002, when the voters adopted Proposition G. Thus, Metro Fuel does not benefit from this new two-year statute of limitations. Rather, since the claims herein accrued before January 1, 2003, the one-year statute governs Metro Fuel's 42 U.S.C. § 1983 claim. *See Krusesky v. Baugh*, 138 Cal.App.3d 562 (1982) ("[S]tatute[s] [are] presumed to be prospective only and will not be applied retroactively unless such intention clearly appears in the language of the statute itself."); *see also Landgraf v. USI Film Products*, 511 U.S. 244, 265-66 (1994) ("[T]he 'principle that the legal effect of conduct should ordinarily be assessed under the law that existed when the conduct took place has timeless and universal appeal.'")

Metro Fuel, however, did not initiate this lawsuit by March 5, 2003. Nor did Metro Fuel allege any acts that occurred since November 30, 2005, that might give rise to a cause of action against the City.

---

[8] Metro Fuel also alleges that Article 6 of the San Francisco Planning Code "provides that failure to divulge the information [requested in the inventory] destroys any vested legal status that legal non-conforming signs might have due to the sign company's failure to comply with the City's informational requirement." Complaint, ¶ 15. But no such penalty exists. San Francisco Planning Code section 604.2(g) sets forth a procedure for the City to impose modest monetary penalty for the failure to comply with the inventory requirement. Section 604.2(g)(3-4) also provides a mechanism for sign companies to appeal the monetary penalty.

1    Accordingly, Metro Fuel's 42 U.S.C. § 1983 claims are barred by the applicable statute of

2    limitations.

3    **B.    San Francisco's Ban On New General Advertising Signs Is Not Irrational**

4    Metro Fuel alleges that the City's ban on new general advertising signs denies Metro Fuel of

5    "equal protection of laws in that it deprive [Metro Fuel] of the same free speech right that identical

6    land owners are allowed for on-premises signs."  Complaint, ¶ 20(c).

7    This claims fails as a matter of law.

8    "[U]nless a classification warrants some form of heightened review because it jeopardizes

9    exercise of a fundamental right or categorizes on the basis of an inherently suspect characteristic," the

10   Equal Protection Clause requires "only that the classification rationally further a legitimate

11   [government] interest." *Nordlinger v. Hahn,* 505 U.S. 1, 10 (1992).  When reviewing legislation, a

12   court must look for any "plausible reasons" for the legislative action, whether or not such reasons

13   underlay the legislature's action.  *United States R. Retirement Bd. v. Fritz,* 449 U.S. 166, 179 (1980).

14   A court must uphold legislation as long as the issue is "at least debatable." *Minnesota v. Clover Leaf*

15   *Creamery Co.,* 449 U.S. 456, 464 (1981).  To uphold the legislation, a court need only find some

16   "reasonably conceivable state of facts that could provide a rational basis for the [legislation]".  *Heller*

17   *v. Doe,* 509 U.S. 312, 320 (1993).  Economic and social regulations are presumed constitutional, and

18   are upheld "*if there is any reasonably conceivable state of facts that could provide a rational basis*

19   *for the classification*." *FCC v. Beach Communications, Inc.,* 508 U.S. 307, 313 (1993) (citations

20   omitted and emphasis added).  Moreover, the government "has no obligation to produce evidence to

21   sustain the rationality of a statutory classification." *Heller,* 509 U.S. at 320.  Under the rational

22   relationship standard, "a legislative choice is not subject to courtroom factfinding and may be based

23   on rational speculation unsupported by evidence or empirical data." *Id.* (quotation and citation

24   omitted).

25   The U.S. Supreme Court has specifically stated, "[i]f there is a sufficient 'fit' between the

26   legislature's means and ends to satisfy the concerns of the First Amendment, the same 'fit' is surely

27   adequate under the applicable 'rational basis' equal protection analysis." *Posadas de Puerto Rico*

28   *Associates v. Tourism Company of Puerto Rico,* 478 U.S. 328, 344 fn.9.

1    As stated above, the U.S. Supreme Court has held that local regulations do not violate the

2    First Amendment even though they allow onsite commercial billboards but prohibited "identical

3    billboards, equally distracting and unattractive," that display offsite messages. *Metromedia,* 453 U.S.

4    at 511.

5        Here, San Francisco's ban on new general advertising signs easily satisfies the concerns of the

6    First Amendment. *Metromedia,* 453 U.S. at 511. Therefore, San Francisco's ban on new general

7    advertising signs easily satisfies the requirements of rational basis review. *Posadas de Puerto Rico*

8    *Associates,* 478 U.S. at 344 fn.9.

9        Accordingly, Metro Fuel's equal protection claim based upon the Fourteenth Amendment fails

10   as a matter of law.

11   **C.    San Francisco's Ban On New General Advertising Signs Does Not Violate
            Procedural Due Process**

12       At the end of its Complaint, Metro Fuel makes a passing reference to "due process" rights.

13   Complaint, ¶ 39. Metro Fuel, however, never explains what due process right it is referring to or how

14   the City impacts it. Earlier in its Complaint, Metro Fuel alleges "Plaintiff has vested rights to place

15   signs at other locations within the City[,] which the City seeks to prohibit based on its ban on off-site

16   signage." Complaint, ¶ 17. Taking these two sentences together, the City assumes that Metro Fuel is

17   alleging a procedural due process claim.

18       This claim also fails as a matter of law.

19       The Ninth Circuit easily disposed of a similar claim in *Outdoor Media Group, Inc. v. City of*

20   *Beaumont*, 506 F.3d 895, 902-903 (9th Cir. 2007). Outdoor Media alleged that the City of Beaumont

21   violated Outdoor Media's procedural due process rights when it denied Outdoor Media's application

22   to erect four billboards. *Id.* at 899. Outdoor Media alleged that the "denial was unreasonable,

23   arbitrary, and capricious." *Id.* The Ninth Circuit affirmed the District Court's decision dismissing

24   Outdoor Media's procedural due process claim, finding that "California has recognized a protected

25   property interest in billboard construction only '[o]nce a permit has been issued.'" *Id.* at 903 (citing

26   *Traverso v. People ex rel. Dept. of Transp.,* 6 Cal.4[th] 1152, 1162 (1993)).

1    Here, Metro Fuel has not alleged what "vested rights" it claims to possess. Given that San

2    Francisco Planning Code section 611 (a) states that "[n]o new general advertising signs shall be

3    permitted at any location within the City as of March 5, 2002," it is hard to imagine how Metro Fuel

4    has *any* right to place general advertising signs anywhere in San Francisco. Indeed, it does not. In

5    any event, because Metro Fuel has not obtained (and cannot obtain) permits to place general

6    advertising signs in San Francisco, it lacks a vested right and, therefore, its procedural due process

7    claims fails. *Outdoor Media Group,* 506 F.3d at 902-903.

8    Accordingly, Metro Fuel's procedural due process claim, to the extent it has alleged one,

9    based upon the Fourteenth Amendment fails as a matter of law.

10    **CONCLUSION**

11    Because Metro Fuel's claims fails as a matter of law, it is not entitled to declaratory relief,

12    injunctive relief or damages. Accordingly, the Court should grant the City's motion for judgment on

13    the pleadings and enter judgment in the City's favor.

14

15    Dated: March 28, 2008                    Respectfully submitted,

16

17                                             DENNIS J. HERRERA
                                               City Attorney
                                               KRISTEN A. JENSEN
18                                             THOMAS S. LAKRITZ
                                               Deputy City Attorneys
19

20                                             By:_____/S/_____.
                                               THOMAS S. LAKRITZ
21

22                                             Attorneys for Defendant CITY AND COUNTY OF
                                               SAN FRANCISCO
23

24

25

26

27

28