# EXHIBIT A
# (PART 2 OF 2)

ing business sign shall preclude the erection of a freestanding identifying sign on the same lot. The area of such freestanding sign or sign tower, as defined in Section 602.1(a), shall not exceed 30 square feet nor shall the height of the sign exceed 24 feet. No part of the sign shall project more than 75 percent of the horizontal distance from the street property line to the curbline, or six feet, whichever is less. Such signs may be nonilluminated or indirectly illuminated, or during business hours, may be directly illuminated.

(g) **Special Sign Districts.** Additional controls apply within certain Mixed Use Districts that are designated as Special Sign Districts. The designations, locations, and boundaries of these Special Sign Districts are provided on Sectional Map SSD of the Zoning Map of the City and County of San Francisco, and are described within Sections 608.1 through 608.10 of this Code.

(h) **Special Districts for Sign Illumination.** Signs in Mixed Use Districts shall not have nor consist of any flashing, blinking, fluctuating or otherwise animated light except in the following special districts, all specifically designated as "Special Districts for Sign Illumination" on Sectional Map SSD of the Zoning Map of the City and County of San Francisco, and described in Section 607(e) of this Code.

(1) **Broadway District.** Along the main commercial frontage of Broadway between Wayne and Osgood.

(i) **Other Sign Requirements.** Within Mixed Use Districts, the following additional requirements shall apply:

(1) **Public Areas.** No sign shall be placed upon any public street, alley, sidewalk, public plaza or right-of-way, or in any portion of a transit system, except such projecting signs as are otherwise permitted by this Code and signs, structures, and features as are specifically approved by the appropriate public authorities under applicable laws and regulations not inconsistent with this Code and under such conditions as may be imposed by such authorities or posted pursuant to the Police Code.

(2) **Maintenance.** Every business sign pertaining to an active establishment shall be adequately maintained in its appearance. When the activity for which the business sign has been posted has ceased operation for more than 90 days within the Chinatown Mixed Use Districts, all signs pertaining to that business activity shall be removed after that time.

(3) **Temporary Signs.** The provisions of Section 607.1(g) of this Code shall apply.

(4) **Special Standards for Automotive Gas and Service Stations.** The provisions of Section 607.1(f)(4) of this Code shall apply. (Added by Ord. 131-87, App. 4/24/87; amended by Ord. 115-90, App. 4/6/90; Ord. 219-94, App. 6/3/94; Ord. 74-01, File No. 002218, App. 5/18/2001)

## SEC. 607.3.   VAN NESS SPECIAL SIGN DISTRICT.

(a) **General.** Signs located within the Van Ness Special Use District, with the exception of the Civic Center Special Sign District as shown in Sectional Map SSD, shall be regulated by the provisions of Article 6 and those set forth below, except for those signs which are exempt pursuant to Section 603. In the event of conflict between the provisions of this Section and those of Article 6, the provisions of this Section shall prevail in the Van Ness Special Use District.

(b) **Purposes.** In addition to the purposes stated in Sections 101 and 601 of this Code, the following purposes apply to the Van Ness Special Use District. These purposes constitute findings that form a basis for regulations and provide guidance for their application.

(1) As Van Ness Avenue changes from an automotive oriented area to a mixed-use, predominantly residential district, it needs to maintain its attractiveness to business customers and residents alike. Physical amenities and a pleasant appearance will benefit both existing and new enterprises.

(2) The character of signs and other features projecting from buildings is an important part of the visual appeal of a street and the general quality and economic stability of the area. Opportunities exist to relate these signs

and projections more effectively to street design and building design. These regulations establish a framework that will contribute toward a coherent appearance of the Van Ness Special Use District.

(3) The Van Ness Special Use District is intended to be a mixed-use area with commercial units on the ground or lower stories and residential uses on upper stories. Although signs and other advertising devices are essential to a vital commercial district, they should not be allowed to interfere with or diminish the livability of residential units within the Van Ness Special Use District or in adjacent residential districts.

(4) The scale of the Van Ness Special Use District as characterized by building height, bulk, and appearance, and by the width of streets and sidewalks, differs from that of other commercial and industrial districts. Sign sizes should relate and be compatible with the surrounding district scale.

(c) **Controls.**

(1) **Signs or Sign Features Not Permitted in the Van Ness Special Use District.** Roof signs as defined in Section 602.16 are not permitted.

(2) **Identifying Signs.** Identifying signs, as defined in Section 602.10, shall be permitted in the Van Ness Special Use District subject to the limits set forth below.

(A) An identifying sign shall not exceed 20 square feet in area. The sign may be a wall sign or a projecting sign. A wall sign or projecting sign shall be mounted at or below the level of the lowest residential windowsill or 25 feet, whichever is lower. Such sign may be nonilluminated, indirectly illuminated, or directly illuminated. For the purposes of this Section, "wall signs" shall be defined as signs placed flat against a building wall with its copy parallel to the wall to which it is attached and not protruding more than the thickness of the sign cabinet.

(B) One name plate, as defined in Section 602.12, not exceeding an area of six square feet, shall be permitted for each resident and occupant of the building.

(3) **General Advertising Signs.** General advertising signs, as defined in Section 602.7, shall be permitted in the Van Ness Special Use Districts as provided below. General advertising signs may be either a wall sign or a freestanding sign, provided that the surface of any freestanding sign shall be parallel to and within three feet of an adjacent building wall. The building wall shall form a complete backdrop for the wall sign, as the sign is viewed from those points on a street or alley from which it is legible. Signs painted directly on a building wall shall be considered general advertising signs for the purposes of this Section. No general advertising sign shall be permitted to cover part or all of any window. No more than one general advertising sign of 300 square feet or two general advertising signs of 72 square feet each shall be permitted per lot. The height of any such sign shall not exceed 36 feet, or the height of the wall to which it is attached or before which it is placed, or the height of the lowest residential windowsill located on the wall to which the sign is attached or before which it is placed, whichever is lowest. Signs may be either non-illuminated, directly or indirectly illuminated. All general advertising signs shall conform to the provisions of Section 5408 of the California Business and Professions Code, including the requirement that no advertising display shall be placed within 100 feet from another advertising display on the same side of Van Ness Avenue.

(4) **Business Signs.** Business signs, as defined in Section 602.3, shall be permitted subject to the following restrictions:

(A) **Window Signs.** The total area of any window sign, as defined in Section 602.1(b), shall not exceed ⅓ the area of the window on or in which the sign is located. Such signs may be nonilluminated, indirectly illuminated, or directly illuminated. For purposes of this Section, "window signs" shall be defined as signs placed directly on the surface of the glass inside the building.

(B) **Wall Signs.** The area of any wall sign shall not exceed three square feet per foot of street frontage occupied by the building on which

the sign is located. The height of any wall sign shall not exceed 45 feet, or the height of the wall to which it is attached, or the height of the lowest of any residential windowsill on the wall to which the sign is attached, whichever is lower. Such signs may be nonilluminated, indirectly, or directly illuminated.

(C) **Projecting Signs.** The area of any projecting sign shall not exceed 36 square feet. The height of the sign shall not exceed 24 feet, or the height of the wall to which it is attached, or the height of the lowest of any residential windowsill on the wall to which the sign is attached, whichever is lowest. No part of the sign shall project more than six feet from the property line. Such signs may be nonilluminated, indirectly, or directly illuminated.

(D) **Signs on Awnings and Marquees.** Sign copy may be located on permitted awnings and marquees in lieu of projecting signs. The area of such sign copy shall not exceed 60 square feet. Such sign copy may be nonilluminated, indirectly illuminated or directly illuminated.

(E) **Freestanding Signs and Sign Towers.** Freestanding signs and sign towers shall not be permitted in the Van Ness Special Sign District except as provided in Section 606(c)(1).

(F) **Automotive Gas and Service Stations.** For automotive gas and service stations, only the following signs are permitted:

(i) A maximum of two oil company signs, which shall not extend more than 10 feet above the roof line if attached to a building, or exceed 24 feet in height if freestanding. The area of any such sign shall not exceed 180 square feet. Along each street frontage, all parts of such a sign or signs that are within 10 feet of the street property line shall not exceed 80 square feet in area. No such sign shall project more than five feet beyond any property line. The areas of other permanent and temporary signs as covered in Subparagraph (ii) below shall not be included in the calculation of the areas specified in this Subsection.

(ii) Other permanent and temporary signs customarily incidental to the service station business, not to exceed 30 square feet in area for each

such sign or a total of 180 square feet for all such signs on the premises. No such sign shall extend above the roof line if attached to a building, or in any case project beyond any street property line or building setback line.

(5) **Temporary Signs.** Temporary signs permitted in the Van Ness Special Use District are sale or lease signs as defined in Section 602.17 and construction signs giving the names of persons and firms connected with work on buildings under actual construction or alteration and information pertinent to the project. One sign per lot not exceeding 50 square feet shall be permitted and conform to all regulations as set forth in Section 607(f). All temporary signs shall be promptly removed upon removal of the property from the market or completion of the construction activity.

(6) **Maintenance and Removal of Signs.** Every business and identifying sign shall be adequately maintained in its appearance, or else removed or obscured. When the business, service, industry, use or activity for which a business sign or identifying sign has been erected has ceased operation on the premises, all such signs pertaining to such establishment shall be removed or obscured within 180 days.

(7) **Additional Controls.** Additional sign controls apply to certain areas of the Van Ness Special Use District designated as Special Sign Districts. Special Sign Districts are described within Sections 608.1 through 608.11 of this Code and, with the exception of Sections 608.1, 608.2 and 608.11, their designations, locations and boundaries are provided on Sectional Map SSD of the Zoning Map of the City and County of San Francisco.

(8) Automotive sales and service signs within the Automotive Special Use District which have all required permits but which do not comply with the controls for new signs established in Section 607.3 of this Code shall be permitted to remain as nonconforming uses and shall be permitted to modify the signage text to describe new automobile ownerships and dealerships that may occur from time to time.

(d) **Landmark Buildings.** Notwithstanding any other provision of this Code to the contrary, any sign which is presently located upon or was once located upon a structure within the Van Ness Special Use District which is designated a landmark under Section 1004 may be replaced and/or restored subject to the limits set forth below.

(1) The sign may not exceed the size, shape and number of the sign(s) being replaced and/or restored.

(2) The sign may be a wall, projecting, or freestanding sign.

(3) The height of the sign may not exceed 80 feet from the sidewalk elevation.

(4) The sign must be in the same location of the sign being replaced and/or restored.

(5) The sign may not be located on the roof.

(6) The sign may not cover or partially block any window.

(7) The light of the sign may not be flashing, intermittent, or moving.

(8) The features of the sign including size, shape and illumination must be reviewed and approved in accordance with the procedures for the application of a Certificate of Appropriateness under Section 1006 of this Code and subject to the discretion of the City Planning Commission. Both the Landmark Preservation Advisory Board and the City Planning Commission have the authority to modify any features of the sign in order to preserve the historical nature of the building. (Added by Ord. 537-88, App. 12/16/88; amended by Ord. 79-89, App. 3/24/89; Ord. 327-96, App. 8/21/96)

## SEC. 607.4. NORTH OF MARKET RESIDENTIAL SPECIAL USE DISTRICT.

Signs located in the RC-4 portion of the North of Market Residential Special Use District shall be regulated as provided herein, except for those signs which are exempted by Section 603 of this Code.

(a) **Business Signs.** Business signs, as defined in Section 602.3, shall be permitted subject to the regulations set forth below:

(1) **Window Signs.** The total area of all window signs, as defined in Section 602.1(b), shall not exceed ⅓ of the area of the window on

or in which the signs are located. Such signs may be nonilluminated, indirectly illuminated, or directly illuminated.

(2) **Wall Signs.** The area of all wall signs shall not exceed three square feet per foot of street frontage occupied by the use measured along the wall to which the signs are attached, or 150 square feet for each street frontage, whichever is less. The height of any wall sign shall not exceed 24 feet, or the height of the wall to which it is attached, or the height of the lowest of any residential windowsill on the wall to which the sign is attached, whichever is lower. Such signs may be nonilluminated, indirectly, or directly illuminated.

(3) **Projecting Signs.** The number of projecting signs shall not exceed one per business. The area of such sign, as defined in Section 602.1(a), shall not exceed 32 square feet. The height of the sign shall not exceed 24 feet, or the height of the wall to which it is attached, or the height of the lowest of any residential windowsill on the wall to which the sign is attached, whichever is lower. No part of the sign shall project more than 75 percent of the horizontal distance from the street property line to the curbline, or six feet, six inches, whichever is less. Such signs may be nonilluminated, indirectly, or directly illuminated.

(4) **Sign Copy on Awnings and Marquees.** Sign copy may be located on permitted awnings or marquees in lieu of projecting signs. The area of such sign copy, as defined in Section 602.1(c), shall not exceed 40 square feet. Such sign copy may be nonilluminated, or indirectly illuminated.

(5) **Freestanding Signs and Sign Towers.** With the exception of automotive service station signs, which are permitted subject to the provisions of Section 606(c)(1) of this Code, one freestanding sign or sign tower per lot shall be permitted in lieu of a projecting sign if the building or buildings are recessed from the street property line. The existence of a freestanding business sign shall preclude the erection of a freestanding identifying sign on the same lot. The area of such freestanding sign or sign tower,

as defined in Section 602.1(a), shall not exceed 30 square feet, nor shall the height of the sign exceed 24 feet. No part of the sign shall project more than 75 percent of the horizontal distance from the street property line to the curbline, or six feet, whichever is less. Such signs may be nonilluminated or indirectly illuminated, or during business hours, may be directly illuminated.

(b) **Nameplates.** One nameplate, as defined in Section 602.12 of this Code, not exceeding an area of two square feet, shall be permitted for each non-commercial use.

(c) **Identifying Signs.** Identifying signs, as defined in Section 602.10, shall be permitted subject to the following regulations:

(1) One sign per lot shall be permitted and such sign shall not exceed 20 square feet in area. The sign may be a freestanding sign, if the building is recessed from the street property line, or may be a wall sign or a projecting sign. The existence of a freestanding identifying sign shall preclude the erection of a freestanding business sign on the same lot. A wall or projecting sign shall be mounted on the first-story level; a freestanding sign shall not exceed 15 feet in height. Such sign may be nonilluminated, indirectly illuminated, or directly illuminated.

(d) **Signs or Sign Features Not Permitted in the North of Market Residential Special Use District.** Roof signs as defined in Section 602.16 of this Code, wind signs as defined in Section 602.22 of this Code and general advertising signs as defined in Section 602.7 are not permitted. In addition, no sign shall have or consist of any moving, rotating, or otherwise physically animated part or any lights that give the appearance of animation by flashing, blinking or fluctuating. All signs or sign features not otherwise specifically regulated in this Section shall be prohibited. (Added by Ord. 345-87, App. 8/21/87)

## SEC. 608.  SPECIAL SIGN DISTRICTS.

In addition to the zoning districts that are established under other Articles of this Code, there shall also be in the City such Special Sign Districts as are established in this Article 6 in order to carry out further the purposes of this Code. The designations, locations and boundaries of these Special Sign Districts shall be as provided in this Article and as shown on the Zoning Map referred to in Section 105, subject to the provisions of Section 105. The original of the sectional map of the Zoning Map for Special Sign Districts (numbered SSD) referred to in this Article is on file with the Clerk of the Board of Supervisors under File No. 138-62. In each such Special Sign District, signs, other than those signs exempted by Section 603 of this Code, shall be subject to the special limitations of Sections 608.1 through 608.12, respectively, in addition to all other applicable provisions of this Code. In the event of inconsistency with any other provision of Article 6, the most restrictive provision shall prevail unless this Code specifically provides otherwise. (Amended by Ord. 64-77, App. 2/18/77; Ord. 69-87, App. 3/13/87; Ord. 285-94, App. 8/2/94)

## SEC. 608.1.  NEAR R DISTRICTS.

No general advertising sign, and no other sign exceeding 100 square feet in area, shall be located in an NC, C, M, or South of Market District within 100 feet of any R District in such a manner as to be primarily viewed from residentially zoned property or from any street or alley within an R District; any sign of which the face is located parallel to a street property line and lies for its entire width opposite an NC, C, M, or South of Market SLR District shall be deemed prima facie not to be primarily so viewed. No sign of any size within 100 feet of any R District shall project beyond the street property line or building setback line of any street or alley leading off the main commercial frontage into the R District. (Added by Ord. 263-65, App. 10/22/65; amended by Ord. 69-87, App. 3/13/87; Ord. 115-90, App. 4/6/90)

## SEC. 608.2.  NEAR SCHOOLS, PARKS, AND RECREATION FACILITIES.

No general advertising sign, and no other sign exceeding 200 square feet in area, shall be located within 100 feet of any part of the premises of a school, attendance at which satisfies

the compulsory education laws of the State of California, in such a way that it is primarily viewed through any part of such premises. No general advertising sign, and no other sign exceeding 200 square feet in area, shall be located within 200 feet of any part of the premises of a park, playground, recreation center or facility, square, avenue or grounds under the jurisdiction and supervision of the San Francisco Recreation and Park Commission or a park, playground, or recreation center or facility of any other public agency, if the sign is so arranged that it is primarily viewed from or through such premises. (Added by Ord. 263-65, App. 10/22/65; amended by Ord. 134-97, App. 4/25/97)

### SEC. 608.3.  WITHIN CIVIC CENTER AREA.

No general advertising sign, and no other sign exceeding 200 square feet in area, shall be located within the Civic Center Special Sign Districts Numbers 1 and 2, as designated on Sectional Map SSD of the Zoning Map of the City and County of San Francisco. Within such districts, no sign that is located on publicly owned property, or that is located on a street frontage facing publicly owned property, shall have any moving, rotating or otherwise animated part; or have any flashing, blinking, fluctuating or otherwise animated light; or project beyond any street property line or building setback line; or be attached to a building in any manner other than with its entire area flat against a wall of such building that directly faces a street. (Added by Ord. 263-65, App. 10/22/65)

### SEC. 608.4.  WITHIN CANDLESTICK PARK AREA.

No general advertising sign, and no other sign exceeding 200 square feet in area, shall be located within the Candlestick Park Special Sign District, as designated on Sectional Map SSD of the Zoning Map of the City and County of San Francisco; provided, however, that signs in a parking lot immediately adjacent to or on the exterior of the stadium which are designed primarily to be viewed by patrons arriving at or departing from the stadium, and include directional information for the control of traffic and functions of the stadium, shall be permitted. (Added by Ord. 263-65, App. 10/22/65; amended by Ord. 360-94, App. 10/19/94)

### SEC. 608.4A.  SIGNS FOR USES WITHIN THE CANDLESTICK POINT SPECIAL USE DISTRICT.

Any sign that directs attention to a business, commodity, service, industry or other activity that is or will be sold, offered or conducted within the Candlestick Point Special Use District and that either is greater than 200 square feet in area or extends above the roofline of the building upon which the sign is located ("SUD sign") shall be permitted within the Candlestick Park Special Sign District if approved by the Planning Commission as a conditional use. Planning Code Sections 608.4, 608.5 and 609.2, or any other regulation applicable to signs within the Candlestick Park Special Sign District, shall not apply to SUD signs. SUD signs shall conform to the restrictions set forth in Planning Code Section 607 for signs in C-3 Districts, except that there shall be no height limit for SUD signs. The Planning Commission may authorize an SUD sign as a conditional use if the design of the sign and any associated sign structure is appropriate for the intended use and location. This criterion shall be in lieu of the criteria set forth in Planning Code Section 303(c)(1) through (4). Any scoreboard or sign within a stadium located in the Candlestick Point Special Use District shall be exempt from regulation under Article 6 of the Planning Code. Principally permitted signs within the special use district shall be consistent with a sign program submitted and approved by the Planning Commission as part of the design review process for the Candlestick Point Special Use District. (Added by Proposition F, 6/3/97)

### SEC. 608.5.  NEAR FREEWAYS.

Except for historic signs designated pursuant to Section 608.14 of this Code, no general advertising sign, and no other sign exceeding 200 square feet in area, shall be located after the date of determination and designation of the route of a landscaped or nonlandscaped freeway

so that it is primarily to be viewed by persons traveling on any portion of such freeway. When located so as to be viewed primarily by persons traveling on any portion of a landscaped freeway, business signs not exceeding 200 square feet in area which are permitted by this Section and historic signs designated pursuant to Section 608.14 which may exceed 200 square feet in area shall, regardless of any other provision of this Code, be limited to signs which designate the name of the owner or occupant of the premises upon which the sign is placed, or which identify such premises, or which direct attention to goods manufactured or produced, or services rendered, on the property upon which the sign is placed. (Added by Ord. 263-65, App. 10/22/65; amended by Ord. 276-98, App. 8/28/98)

## SEC. 608.6.   NEAR CERTAIN SCENIC STREETS.

No general advertising sign, and no other sign exceeding 200 square feet in area, shall be located within the areas along the scenic streets that are listed below and designated as special sign districts on Sectional Map SSD of the Zoning Map of the City and County of San Francisco, if any face of such sign is visible from any such street. These limitations shall apply to any portion of any property that is within 200 feet of any such street, unless a greater depth or area is indicated on said Sectional Map.

Telegraph Hill Boulevard for its entire length;

Twin Peaks Boulevard for its entire length;

Market Street extension east side from Mono Street to Portola Drive;

Portola Drive for its entire length;

Roosevelt Way for its entire length;

El Camino Del Mar for its entire length;

Point Lobos Avenue from El Camino Del Mar to its intersection with the Great Highway, including the Cliff House and Sutro Baths areas;

Sunset Boulevard for its entire length;

Great Highway and Esplanade from Point Lobos Avenue to Sloat Boulevard;

Great Highway extension south from Sloat Boulevard to its junction with Skyline Boulevard near Harding Boulevard;

Nineteenth Avenue from Lincoln Way to Junipero Serra Boulevard;

Sloat Boulevard from the Great Highway to Junipero Serra Boulevard;

Junipero Serra Boulevard from Sloat Boulevard to the County Line;

Skyline Boulevard from Sloat Boulevard to the County Line;

Lake Merced Boulevard for its entire length;

John Muir Drive for its entire length;

Zoo Road for its entire length;

Harding Boulevard for its entire length;

Alemany Boulevard from Mission Street viaduct to Junipero Serra Boulevard;

Marina Boulevard for its entire length;

Lyon Street from Marina Boulevard to Lombard Street;

Baker Street from Marina Boulevard to Lombard Street;

Broderick Street from Marina Boulevard to Lombard Street;

Jefferson Street from Lyon Street to Broderick Street;

Beach Street from Baker Street to Broderick Street;

North Point Street from Baker Street to Broderick Street;

Bay Street from Lyon Street to Broderick Street;

Francisco Street from Lyon Street to Broderick Street;

Chestnut Street from Lyon Street to Broderick Street;

Lombard Street from Broderick Street to Lyon Street;

Richardson Avenue from Lyon Street to Lombard Street. (Added by Ord. 263-65, App. 10/22/65)

## SEC. 608.7.  NEAR RAPID TRANSIT ROUTES.

No general advertising sign, and no other sign exceeding 200 square feet in area, shall be located after the date of determination and designation of the route or portion thereof of the Bay Area Rapid Transit District or other rapid transit line, wherever such route or portion thereof is other than underground, so that the sign is primarily to be viewed by persons traveling on any such route or portion thereof. (Added by Ord. 263-65, App. 10/22/65)

## SEC. 608.8.  ON AND NEAR MARKET STREET FROM THE EMBARCADERO TO THE CENTRAL SKYWAY OVERPASS.

There shall be a special sign district known as the "Market Street Special Sign District" in the vicinity of Market Street, from The Embarcadero to the Central Skyway overpass as designated on Sectional Map SSD of the Zoning Map of the City and County of San Francisco. The original copy of said Sectional Map with this Special Sign District indicated thereon is on file with the Clerk of the Board of Supervisors under File No. 112-70.

With respect to said Special Sign District, the following regulations shall apply:

(a) **Purpose and Findings.** In addition to the purposes stated in Sections 101 and 601 of this Code, the following purposes apply to the Market Street Special Sign District. These purposes constitute findings that form a basis for these regulations and provide guidance for their application.

(1) In November 1962, the electorate of San Francisco voted approval of an investment in a City and regional rapid transit system that will run beneath Market Street. In June 1968, the electorate approved a bonded indebtedness of $24,500,000, including payment for reconstruction and improvement of Market Street from The Embarcadero to the Central Skyway overpass.

The street is being completely rebuilt at public expense, with special paving, furnishings, plazas and landscaping. When rebuilt, Market Street will be the transit spine of the downtown area, will have heavy concentrations of pedestrians, and will be more than ever a central domain of the people of the City and of the region. It is a purpose of the Market Street Special Sign District to further this public endeavor.

(2) As Market Street is rebuilt, the area is attracting and will continue to attract investments, development and design efforts in reliance upon the promise of a street of high quality. Both existing and new enterprises will be strengthened by the high standards of their environment and by the joint efforts of owners and businessmen.

(3) The character of signs along the street and of other features projecting from buildings is especially significant to street appearance and to the general quality and economic stability of the area. Opportunities exist to relate these signs and projections more effectively to the street design and to the design of buildings, and it is a purpose of these regulations to set a framework that will contribute toward those ends.

(4) The standards established by these regulations are reasonable standards related to the unique nature of the Market Street area and to its present and future needs. Where removal of existing signs and other features is required, the periods for removal are related to the schedule for reconstruction of Market Street, including installation of the street trees with which projecting signs and other features would conflict. The removal periods recognize the revocable nature of past permits for erection of features projecting over public streets, and will help to promote equality among establishments, adding greater significance to the improvement efforts.

(5) The standards established by these regulations are deemed to be minimum requirements, forming a basic framework for development and remodeling. They are not intended in any way to preclude further design refinement or review by individuals or duly constituted organizations which might consider more restrictive

requirements as to any aspects limited herein, or as to additional aspects such as materials, color, graphics, types of representation, relationship of signs to one another and to architectural features, or the general quality of design. It is anticipated that private efforts along such lines will and should be made for the further improvement of Market Street.

(b)  **General Advertising Signs.** Except as specified in Paragraph 608.8(f)(2) below,

(1)  No general advertising sign shall be permitted at any location within said Special Sign District; and

(2)  No general advertising sign shall be located within 200 feet of said Special Sign District, if any portion of a face of such sign would be visible from any point on a street, alley or plaza within the Special Sign District.

(c)  **Roof Signs.** Notwithstanding the exceptions stated in Subsection 607(b) of this Code, no roof sign shall be permitted within said Special Sign District.

(d)  **Projection of Signs and Other Features.** Within said Special Sign District:

(1)  No projection shall exceed a horizontal distance of six feet beyond any street property line. This limitation shall apply to signs and to all other features including but not limited to marquees, awnings and canopies, with the sole exception of flagpoles for flags of any nation or political subdivision.

(2)  Projecting signs for each establishment shall be limited to one sign on each street frontage occupied by the establishment, in addition to any signs that are placed flat upon or otherwise integrated in the design of marquees and awnings.

(e)  **Height and Extension Above Roofline.** Within said Special Sign District, all of the following limitations shall apply:

(1)  Notwithstanding the exceptions stated in Subsection 607(g) of this Code, no sign attached to a building shall extend or be located above the roofline of the building to which it is attached.

(2)  A projecting sign with lettering or other inscription arranged in a vertical manner shall have a maximum height of 60 feet; except that a greater height shall be permitted, up to a maximum height of 100 feet, provided the height of the sign shall remain at least 20 feet below the roofline of the building as measured directly above the sign.

(3)  Except as provided in Paragraph 608.8(e)(5) below, all other signs shall be located no higher than the windowsill level of the lowest story (if any) that has a window or windows on the building facade on which the signs are placed, exclusive of the ground story and mezzanine, provided that no such sign shall in any case exceed a height of 60 feet.

(4)  In addition, except as provided in Paragraph 608.8(e)(3) and (4) above, uniformity of height shall be maintained in both the upper and lower edges of signs placed flat upon or essentially parallel to each facade of a single building.

(5)  As to the requirements of Paragraphs 608.8(e)(3) and (4) above, deviation from the requirements may be permitted to the extent an alternative placement of signs is made necessary by the location of arches, entrances and other architectural features, as determined by the Zoning Administrator, or for the purpose of installing special lighting effects and temporary holiday decorations, or for the purpose of modifying or replacing currently existing noncomplying business wall signs as provided by Subsection 607(g).

(f)  **Other Requirements.** Within said Special Sign District, the following additional requirements shall apply:

(1)  **Temporary Signs.** With the exception of holiday decorations, no sign composed of paper or other temporary material shall be placed on the outside of any building or structure or affixed to the glass on the outside or inside of any window, unless such sign is placed in a frame or on a structure specifically designed for this purpose.

(2)  **Public Areas.** No sign or other structure or feature shall be placed upon any public street, alley or public plaza, or in any portion of a transit system, except such signs, structures

and features as are specifically approved by the appropriate public authorities under applicable laws and regulations not inconsistent with this Code and under such conditions as may be imposed by such authorities.

(3) **Maintenance.** Every sign pertaining to an active establishment shall be adequately maintained in its appearance, or else removed or obscured. When the space occupied by any establishment has been vacated, all signs pertaining to such establishment shall be removed or obscured within 60 days following the date of vacation. (Added by Ord. 125-70, App. 1/17/70; amended by Ord. 219-94, App. 6/3/94)

### SEC. 608.9.   IN JACKSON SQUARE.

There shall be a special sign district known as the "Jackson Square Special Sign District," as designated on Sectional Map SSD of the Zoning Map of the City and County of San Francisco. The original copy of said Sectional Map with this Special Sign District indicated thereon is on file with the Clerk of the Board of Supervisors under File No. [Ord. No.] 276-72.

(a) **Purposes and Findings.**

(1) In addition to furthering the purposes stated in Sections 101 and 601 of this Code, creation of the Jackson Square Special Sign District is intended to further the purposes of the Jackson Square Historic District created pursuant to Ordinance No. 221-72 and to foster the preservation and enhancement of said Historic District.

(2) The standards established by these regulations are deemed to be minimum requirements. They are not intended in any way to preclude further design refinement or review by duly constituted private organizations which might consider more restrictive requirements as to any aspects limited herein, or as to additional aspects such as materials, color, graphics, types of representation, relationship of signs to one another and to architectural features, or the general quality of design.

(b) **Regulations.** Within such Special Sign District:

(1) No general advertising sign shall be permitted.

(2) The area of all signs on a building shall not exceed an area of two square feet for each foot of street frontage occupied by the building, and shall in no event exceed a total of 100 square feet on each street frontage.

(3) Notwithstanding the exceptions stated in Subsection 607(b) of this Code, no roof sign shall be permitted.

(4) Notwithstanding the exceptions stated in Subsection 607(g) of this Code, no sign attached to a building shall extend or be located above the roofline of the building to which it is attached.

(5) No projection shall exceed a horizontal distance of six feet beyond any street property line. This limitation shall apply to signs and to all other features including but not limited to marquees and awnings, with the sole exception of flagpoles for flags of any nation or political subdivision. All signs, marquees, awnings and other features shall be supported entirely by a building; no canopies shall be permitted.

(6) Projecting signs for each establishment shall be limited to one sign on each street frontage occupied by the establishment.

(7) All signs shall be placed entirely below the level of the lowest cornice or strong horizontal element located above the ground story of the building, but in no event higher than three feet above the top of the ceiling level of the ground story.

(8) No directly illuminated sign shall be permitted. (Added by Ord. 223-72, App. 8/9/72)

### SEC. 608.10.   ON AND NEAR MARKET STREET FROM THE CENTRAL SKYWAY OVERPASS TO DIAMOND STREET.

There shall be a special sign district known as the Upper Market Special Sign District in the vicinity of Market Street from the Central Skyway overpass to Diamond Street as designated on Sectional Map SSD of the Zoning Map of the City and County of San Francisco. The original copy of said Sectional Map with this Special Sign District indicated thereon is on file with the

**Signs**

Clerk of the Board of Supervisors under File No. 324-76-2. With respect to said Special Sign District, the following regulations shall apply:

(a) **Purposes and Findings.** In addition to the purposes stated in Sections 101 and 601 of this Code, the following purposes apply to the Upper Market Special Sign District. These purposes constitute findings that form a basis for these regulations and provide guidance for their application.

(1) In November 1962, the electorate of San Francisco voted approval of an investment in a City and regional rapid transit system that will run beneath Market Street, including a city subway along Upper Market. In June 1968, the electorate approved a bonded indebtedness of $24,500,000, including payment for reconstruction and improvement of Market Street from the Central Skyway overpass to the vicinity of Castro Street. The street is being rebuilt at public expense, with special paving, furnishings and landscaping. When rebuilt, this portion of Market Street will have heavy concentrations of pedestrians, and will increase in importance as a transit and shopping corridor. It is a purpose of the Upper Market Special Sign District to further this public endeavor.

(2) As the street is rebuilt, the area is attracting and will continue to attract investments, development and design efforts in reliance upon the promise of a street of high quality. Both existing and new enterprises will be strengthened by the high standards of their environment and by the joint efforts of owners and business people.

(3) The character of signs along the street and of other features projecting from buildings is especially significant to street appearance and to the general quality and economic stability of the area. Opportunities exist to relate these signs and projections more effectively to the street design and to the design of buildings, and it is a purpose of these regulations to set a framework that will contribute toward those ends.

(4) The standards established by these regulations are reasonable standards related to the unique nature of the Upper Market area and to its present and future needs. Where removal or alteration of existing signs is required, the periods for removal or alteration allow adequate time for amortization of the signs, consistent with other improvements along the street. The removal or alteration will help to promote equality among establishments, adding greater significance to the improvement efforts.

(5) The standards established by these regulations are deemed to be minimum requirements, forming a basic framework for development and remodeling. They are not intended in any way to preclude further design refinement or review by individuals or duly constituted organizations which might consider more restrictive requirements as to any aspects limited herein, or as to additional aspects such as materials, color, graphics, types of representation, relationship of signs to one another and to architectural features, or the general quality of design. It is anticipated that private efforts along such lines will and should be made for the further improvement of the Upper Market area.

(b) **General Advertising Signs.** Except as specified in Subsection 608.10(f) below:

(1) No general advertising sign shall be permitted at any location within said Special Sign District; and

(2) No general advertising sign shall be located within 200 feet of said Special Sign District, if any portion of a face of such sign would be visible from any point on a street, alley or plaza within the Special Sign District.

(c) **Roof Signs.** Notwithstanding the exceptions stated in Subsection 607(b) of this Code, no roof sign shall be permitted within said Special Sign District.

(d) **Projection of Signs and Other Features.** Within said Special Sign District:

(1) No projection shall exceed a horizontal distance of six feet beyond any street property line. This limitation shall apply to signs and to all other features including but not limited to marquees, awnings and canopies, with the sole exception of flagpoles for flags of any nation or political subdivision.

(2)  Projecting signs for each establishment shall be limited to one sign on each street frontage occupied by the establishment, in addition to any signs that are placed flat upon or otherwise integrated in the design of marquees and awnings.

(e)  **Height and Extension Above Roofline.** Within said Special Sign District, all of the following limitations shall apply:

(1)  Notwithstanding the exceptions stated in Subsection 607(g) of this Code, no sign attached to a building shall extend or be located above the roofline of the building to which it is attached.

(2)  A projecting sign attached to a building with lettering or other inscription arranged in a vertical manner shall have a maximum height of 50 feet or the roofline of the building to which it is attached, whichever is the lesser.

(3)  Except as provided in Paragraph 608.10(e)(5) below, all other signs attached to a building shall be located no higher than the windowsill level of the lowest story (if any) that has a window or windows on the building facade on which the signs are placed, exclusive of the ground story and mezzanine, provided that no such sign shall in any case exceed a height of 50 feet or the roofline of the building to which it is attached, whichever is the lesser.

(4)  In addition, except as provided in Paragraph 608.10(e)(5) below, uniformity of height shall be maintained in both the upper and lower edges of signs placed flat upon or essentially parallel to each facade of a single building.

(5)  As to the requirements of Paragraphs 608.10(e)(3) and (4) above, deviation from the requirements may be permitted to the extent an alternative placement of signs is made necessary by the location of arches, entrances and other architectural features, as determined by the Zoning Administrator, or for the purpose of installing special lighting effects and temporary holiday decorations.

(6)  The maximum height for freestanding signs shall be 24 feet.

(f)  **Public Areas.** No sign or other structure or feature shall be placed upon any public street, alley or public plaza, or in any portion of a transit system, except such signs, structures and features as are specifically approved by the appropriate public authorities under applicable laws and regulations not inconsistent with this Code and under such conditions as may be imposed by such authorities. (Added by Ord. 64-77, App. 2/18/77)

## SEC. 608.11.  HOSPITALS AND MEDICAL CENTERS IN R DISTRICTS ADJACENT TO OR CROSS THE STREET FROM NC, C OR M DISTRICTS.

(a)  **Purposes and Findings.** In addition to the purposes stated in Sections 101 and 601 of this Code, the following purposes apply to this Special Sign District. These purposes constitute the findings that form a basis for these regulations and provide guidance for their application.

(1)  Hospitals and medical centers are distinguished from other uses in R Districts in that they provide emergency medical care vital to the health and well-being of the people of the City. Where such facilities are in R Districts and adjacent to or across the street from NC, C or M Districts, their signs are substantially obscured, ineffective, and put to a significant disadvantage by the more intense signage allowed in the NC, C or M Districts nearby, making identification of emergency facilities difficult.

(2)  Imposing the standards of Section 607 on only those hospitals and medical centers in R Districts adjacent to or across the street from NC, C or M Districts will allow for necessary and desirable signs to the benefit of the people in need of emergency care when such identification is most critical.

(3)  The City Planning Commission in reviewing applications for signs under this Section 608.11 shall consider the needs of pedestrians and drivers approaching the applicant institution and the character and pattern of the immediate neighborhood and those neighborhoods affected by the proposed signs so that only such signs that are required for the identification of

the institution, and that are not detrimental to the surrounding neighborhoods and any panoramas or vistas in such areas, are approved.

(b) **Control.** Notwithstanding the provisions of Section 606 of this Code, a hospital or medical center in an R District and adjacent to or across the street from an NC, C or M District for a distance of at least 400 feet of total street frontage shall be subject to the provisions of Section 607 of this Code that apply to the NC, C or M District adjacent to or across the street upon approval by the City Planning Commission as a conditional use under the procedures and criteria set forth in Section 303 of this Code. The Commission, in considering an application under this Section, may permit signs, including signs located on the sides of a penthouse, that exceed the standards of Section 607 to the extent necessary to meet community needs for adequately identified medical institutions with the exception of moving parts, flashing lights and wind signs which are prohibited. (Added by Ord. 30-85, App. 1/17/85; amended by Ord. 69-87, App. 3/13/87)

## SEC. 608.12.   IN SHOWPLACE SQUARE.

There shall be a special sign district known as the "Showplace Square Special Sign District," as designated on Sectional Map SSD of the Zoning Map of the City and County of San Francisco.

(a) **Purposes and Findings.** In addition to furthering the purposes stated in Sections 101 and 601 of this Code, creation of the Showplace Square Special Sign District is intended to facilitate the transition of the Showplace Square area from its former industrial character to an area of design showrooms. Presently, wholesale and trade design showrooms and accessory uses have located in this area, replacing industrial-type uses. The showroom-type activities enhance the Showplace Square area and attract investments, development and other design improvements. Due to the changed environment, the existence of general advertising signs in the area is no longer appropriate and detracts from the emerging quality and character of the area.

(b) **Regulations.** Within such special sign district:

1.   No general advertising sign shall be permitted. (Added by Ord. 64-88, App. 2/18/88)

## SEC. 608.13.   RINCON HILL AREA.

Within the boundaries of the Rincon Hill Downtown Residential District set forth in Section 249.1 of the City Planning Code and as designated on Sectional Map 1SUb of the Zoning Map, and generally bounded by Folsom Street, The Embarcadero, Bryant Street, and Essex Street, notwithstanding any other provisions of this Code, the existing signs and/or sign towers may be changed, modified or replaced provided that all the following criteria are met:

(a)   Such changed, modified or replacement sign is in the same general location as the existing signage;

(b)   The total area and height of the changed, modified or replacement sign is not increased from the total area and height of the existing sign or sign tower;

(c)   Such sign or sign tower may contain letters, numbers, a logo, service mark and/or trademark, and may be nonilluminated, or directly or indirectly illuminated;

(d)   Such sign or sign tower may only reflect the identity of the owner or a tenant of the building, including a parent corporation, subsidiary and/or affiliate of the owner or of the tenant. (Added by Ord. 389-95, App. 12/14/95; amended by Ord. 217-05, File No. 050865, App. 8/19/2005)

## SEC. 608.14.   HISTORIC SIGNS IN HISTORIC SIGN DISTRICTS.

Signs which depict in text or graphic form a particular residential, business, cultural, economic, recreational, or other valued resource which is deemed by the Planning Commission to be of historic value and contributes to the visual identity and historic character of the City shall be allowed to be restored, reconstructed, maintained and technologically improved on a property by Conditional Use authorization of the Planning Commission provided that: (a) the proposed historic sign lies within an historic sign

district designated pursuant to Section 302 of the Planning Code and shown on the Zoning Map of the City and County of San Francisco; (b) the historic sign to be restored, reconstructed or technologically improved depicts a use, person, place, thing, cultural icon or other valued character or characteristics of the City that, at the time of the historic sign permit application, is at least 40 years old; (c) the sign does not visually obstruct or significantly impair or detract from, by glare or any other means, a City landmark or public vista; (d) the sign is not larger than the sign that existed prior to the historic designation of a sign that is proposed for restoration and does not appear to be more visually prominent than the sign that existed prior to the historic designation; and, (e) the sign is maintained in good condition, repair and working order.

Once a sign is designated as historic under this Section, its continuation, enlargement, alteration or abandonment shall be governed by the provisions of Section 178 of this Code. (Added by Ord. 276-98, App. 8/28/98)

### SEC. 609. AMORTIZATION PERIODS.

No lawfully existing sign which fails to conform to the provisions of this Article 6 need be removed or altered to conform to said provisions prior to the end of its normal life as provided in Section 604 of this Code, except as specified in Sections 609.1 through 609.12. Where two or more amortization periods of differing duration apply to the same sign, the most restrictive of such amortization periods shall prevail unless this Code specifically provides otherwise. Where removal or alteration of a sign is required, such requirement shall apply to the sign faces, the sign structure, the supporting framework and all other parts of the sign. (Amended by Ord. 64-77, App. 2/18/77)

### SEC. 609.1. GENERAL ADVERTISING SIGNS LOCATED IN R DISTRICTS.

Any lawfully existing general advertising sign in an R District shall be removed within five years after the effective date of this Article 6 or such later date as the sign becomes nonconforming. (Added by Ord. 263-65, App. 10/22/65)

### SEC. 609.2. WITHIN CANDLESTICK PARK SPECIAL SIGN DISTRICT.

Any lawfully existing sign which does not conform to Section 608.4 of this Code shall be removed or altered to conform therewith within five years after the effective date of this Article 6 or such later date as the sign becomes nonconforming; unless such sign was made subject to removal or alteration within five years after July 23, 1960, by Section 4722.D of the San Francisco Building Code, as that Section was in effect immediately prior to the effective date of this Article 6, in which case such earlier date shall prevail. (Added by Ord. 263-65, App. 10/22/65)

### SEC. 609.3. WITHIN CIVIC CENTER SPECIAL SIGN DISTRICTS.

Any lawfully existing sign which does not conform to Section 608.3 of this Code shall be removed or altered to conform therewith within the period of time specified below after the effective date of this Article 6 or such later date as the sign becomes nonconforming:

(a) In Civic Center Special Sign Districts Numbers 1 and 2, one year for painted wall signs;

(b) In Civic Center Special Sign District No. 1, one year for general advertising signs;

(c) In Civic Center Special Sign District No. 2, five years for general advertising signs other than painted wall signs.

Provided, however, that within these Special Sign Districts, except as stated otherwise in Section 609.10 of this Code, a lawfully existing sign which does not conform to Section 608.3 need not be removed or altered to conform therewith prior to the end of its normal life if located on the north side of Market Street and within 60 feet of the north line of Market Street and primarily viewed from Market Street, or if located on the north line of Hayes Street (between Market Street and a point 100 feet east of the east line of Van Ness Avenue) and within 60 feet of the north line of Hayes Street and primarily viewed from Hayes Street. (Amended by Ord. 125-70, App. 4/17/70)

## SEC. 609.4.  SIGNS NEAR NONLANDSCAPED FREEWAYS.

Any lawfully existing sign which is now or hereafter near a nonlandscaped portion of a freeway and which does not conform to the provisions of Section 608.5 of this Code shall be removed or altered to conform therewith within 10 years after the effective date of this Article 6, or within 10 years after such date as the precise route of the freeway has been determined and designated but not before such route has been opened to traffic, whichever date is later; provided, however, that any lawfully existing sign near the James Lick Freeway if located west of Fifth Street, north of Division Street, and east of 10th Street, or near the San Francisco-Oakland Bay Bridge approach east of Fifth Street need not be removed or altered to conform to Section 608.5 prior to the end of its normal life if located within the area exempted from the prohibition of freeway signs by Section 4721.D(2) of the San Francisco Building Code as that Section was in effect immediately prior to the effective date of this Article 6. (Added by Ord. 263-65, App. 10/22/65)

## SEC. 609.5.  SIGNS NEAR LANDSCAPED FREEWAYS.

Any lawfully existing sign which is now or hereafter near a landscaped portion of a freeway and which does not conform to the provisions of Section 608.5 of this Code shall be removed or altered to conform therewith within three years after the effective date of this Article 6, or three years after the date when the landscaping project has been completed, whichever is later; unless an earlier date for removal or alteration of the sign has been established by Section 4721.C of the San Francisco Building Code, as that Section was in effect immediately prior to the effective date of this Article 6, in which case the date for removal or alteration shall be two years following the date so established by the Building Code. (Added by Ord. 263-65, App. 10/22/65)

## SEC. 609.6.  SIGNS NEAR CERTAIN SCENIC STREETS.

Any lawfully existing sign which does not conform to Section 608.6 of this Code shall be

removed or altered to conform therewith within five years after the effective date of this Article 6 or such later date as the sign becomes nonconforming; unless such sign was made subject to removal or alteration within five years after February 18, 1960, by Section 4722.D of the San Francisco Building Code, as that Section was in effect immediately prior to the effective date of this Article 6, in which case such earlier date shall prevail. Provided, however, that any lawfully existing sign within the Special Sign District along Nineteenth Avenue between Lincoln Way and Sloat Boulevard and on a lot in a C-1 or C-2 District need not be removed or altered to conform to Section 608.6 prior to the end of its normal life or until such earlier date, if any, by which it must be removed or altered to qualify said street for designation as a part of the State scenic highway system in accordance with the applicable provisions of State law. (Added by Ord. 263-65, App. 10/22/65)

## SEC. 609.7.  WIND SIGNS.

Any lawfully existing wind sign in any zoning district shall be removed within one year after the effective date of this Article 6. (Added by Ord. 263-65, App. 10/22/65)

## SEC. 609.8.  MISCELLANEOUS SERVICE STATION SIGNS IN R DISTRICTS.

Any lawfully existing sign at an automobile service station in an R District (other than those signs covered by Paragraph 606(c)(1)(A) of this Code) which does not conform to Paragraph 606(c)(1)(B) of this Code shall be removed or altered to conform therewith within one year after the effective date of this Article 6 or such later date as the sign becomes nonconforming. (Added by Ord. 263-65, App. 10/22/65)

## SEC. 609.9.  SIGNS NEAR RAPID TRANSIT ROUTES.

Any lawfully existing sign which is now or hereafter near a rapid transit route or portion thereof and which does not conform to the provisions of Section 608.7 of this Code shall be removed or altered to conform therewith within five years after the effective date of this Article 6,

or within five years after such date as the precise rapid transit route or portion has been determined and designated but not before such route or portion has been opened to traffic, whichever date is later. (Added by Ord. 263-65, App. 10/22/65)

## SEC. 609.10.   ON AND NEAR MARKET STREET FROM THE EMBARCADERO TO THE CENTRAL SKYWAY OVERPASS.

(a)   **General Advertising Signs.** Any lawfully existing general advertising sign within the Market Street Special Sign District, other than such a sign located on a wall immediately adjacent to the establishment to which it directs attention, shall be removed within five years after the effective date of said Special Sign District or such later date as the location of such sign may be designated as part of said Special Sign District; provided, however, that if the public street and plaza improvements within any of the sections of the Market Street Special Sign District listed below have not been substantially completed at the end of said five-year period in accordance with the architectural plans entitled "Market Street Reconstruction," Transit Task Force File No. 810.00R1 through 810.28R1, dated September 10, 1970, and "Surface Plan—Hallidie Plaza," Transit Task Force File No. 1000, dated July 15, 1970, including permanent pavement of sidewalk and roadway areas, planting of trees and placement of furnishings, then said general advertising signs within any such section need not be removed until 30 days after the date of substantial completion of said improvements in the section in which said signs are located:

(1)   Between The Embarcadero and the easterly line of Third Street;

(2)   Between the easterly line of Third Street and the easterly line of Powell Street;

(3)   Between the easterly line of Powell Street and the easterly line of Seventh Street;

(4)   Between the easterly line of Seventh Street and the easterly line of Twelfth Street;

(5)   Between the easterly line of Twelfth Street and the Central Skyway overpass.

It is hereby found and declared that as of May 18, 1976, six years after the effective date of the Market Street Special Sign District, the public street and plaza improvements within each and every section of Market Street listed above have been substantially completed in accordance with the plans and other terms set forth above. Accordingly, all general advertising signs specified in this Subsection (a) shall be removed forthwith. This amendment is intended only to clarify existing provisions of law, and thereby to facilitate administration of those provisions.

It is hereby found and declared, further, that a six-year amortization period for general advertising signs throughout the Market Street Special Sign District is more than adequate in view of the express purposes of the Special District, the massive public and private investments that have already taken place, and the new environment created in all sections of the street. In addition, it is noted that the amortization period for general advertising signs originally adopted in this district was three years, which period was extended to five years with the proviso concerning substantial completion, and that the amortization periods for all other signs affected by this Section were only one, two and three years, which periods have in all cases already been enforced and complied with; the factor, also, demonstrates that a six-year amortization period for general advertising signs is more than adequate.

(b)   **Moving Parts.** Any lawfully existing sign within the Market Street Special Sign District that has a moving part or parts legally nonconforming under Subsection 607(d) of this Code shall be removed or altered to conform therewith within three years after the effective date of said Special Sign District or such later date as the location of such sign may be designated as part of said Special Sign District.

(c)   **Temporary Signs.** Any lawfully existing sign within the Market Street Special Sign District which does not conform to the requirements of Paragraph 608.8(f)(1) of this Code shall be removed or altered to conform therewith within

one year after the effective date of said Special Sign District or such later date as the location of such sign may be designated as part of said Special Sign District.

(d) **Signs, Structures and Features in Public Areas.** Any lawfully existing sign, structure or feature within the Market Street Special Sign District which does not conform to the requirements of Paragraph 608.8(f)(2) of this Code shall be removed or altered to conform therewith within one year after the effective date of said Special Sign District or such later date as the location of such sign, structure or feature may be designated as part of said Special Sign District, if such sign, structure or feature is within Market Street, within Powell Street, or within any other street area opposite a street property line that abuts Market Street and faces Market Street at an angle of less than 90 degrees. This removal requirement shall, among other things, specifically apply to all canopies now in place in said Special Sign District and located as described herein.

(e) **Projection.** Except as provided herein, any lawfully existing sign or other feature within the Market Street Special Sign District which does not conform to the projection limitations of Paragraph 608.8(d)(1) of this Code shall be removed or altered to conform therewith within two years after the effective date of said Special Sign District if such sign or other feature projects over either street property line of Market Street, either street property line of Powell Street, or any other street property line that abuts Market Street and faces Market Street at an angle of less than 90 degrees. The Zoning Administrator may, in specific cases, permit the retention or alteration of an existing sign or other feature which projects more than six feet but in no event and under no circumstances more than eight feet, if the Zoning Administrator determines (1) that the sign or feature is of high quality, in scale with its surroundings, not detrimental to other properties, and not so located that it will conflict with trees or other features in the street area, and (2) that unusual circumstances apply concerning the nature of the sign or feature or concerning

the building that would make adherence to the six-foot limitation impractical without offsetting public advantages.

(f) **Revocation of Permits.** Any permit issued for erection or alteration of a sign, structure or feature required to be removed or altered under Subsection 609.10(d) or (e) above is hereby revoked as of the date on which such removal or alteration is required. The permit for any sign erected or altered pursuant to Section 4653(b) of the Building Code, enacted by Ordinance No. 325-69, pertaining to signs for new businesses or organizations and change in name of business or organizations, pending adoption of permanent standards for signs in the Market Street area, shall be automatically revoked upon adoption of this present ordinance, if the sign authorized by such permit does not conform to all such permanent standards made applicable hereby to the property on which the sign is located. (Amended by Ord. 64-77, App. 2/18/77)

## SEC. 609.11.  IN JACKSON SQUARE.

Any lawfully existing sign which does not conform to Section 608.9 of this Code shall be removed or altered to conform therewith within five years after the effective date of said Section or such later date as the sign becomes nonconforming. (Added by Ord. 223-72, App. 8/9/72)

## SEC. 609.12.  ON AND NEAR MARKET STREET FROM THE CENTRAL SKYWAY OVERPASS TO DIAMOND STREET.

(a) **General Advertising Signs.** Any lawfully existing general advertising sign within the Upper Market Special Sign District, other than such a sign located on a wall immediately adjacent to the establishment to which it directs attention, shall be removed within five years after the effective date of said Special Sign District or such later date as the location of such sign may be designated as part of said Special Sign District.

(b) **Roof Signs.** Any lawfully existing roof sign within the Upper Market Special Sign District shall be removed within five years after the effective date of such Special Sign District or

such later date as the location of such sign may be designated as part of said Special Sign District.

(c) **Freestanding Signs.** Any existing free standing sign within the Upper Market Special Sign District that lawfully exceeds a height of 24 feet shall be removed or altered to conform with such height limit within five years after the effective date of such Special Sign District or such later date as the location of such sign may be designated as part of said Special Sign District.

(d) **Moving Parts.** Any lawfully existing sign within the Upper Market Special Sign District that has a moving part or parts legally nonconforming under Subsection 607(d) of this Code shall be removed or altered to conform therewith within three years after the effective date of said Special Sign District or such later date as the location of such sign may be designated as part of said Special Sign District.

(e) **Flashing Lights.** Any lawfully existing sign within the Upper Market Special Sign District that has or consists of one or more flashing, blinking, fluctuating or otherwise animated lights legally nonconforming under Subsection 607(e) of this Code shall be removed or altered to conform therewith within three years after the effective date of said Special Sign District or such later date as the location of such sign may be designated as part of said Special Sign District.

(f) Not less than six months prior to the termination of the amortization period set forth in Section 609.12(a), the City Planning Commission shall conduct a hearing regarding general compliance with all the removal and conformity requirements of Section 609.12. The City Planning Commission shall send a report thereon to the Board of Supervisors, which shall conduct a hearing on said report. (Added by Ord. 64-77, App. 2/18/77)

### SEC. 609.13.  NONCONFORMING SIGNS IN NEIGHBORHOOD COMMERCIAL DISTRICTS.

If state and/or federal statutes, as applicable, which currently required local governments to pay monetary compensation to the owners of nonconforming signs as a condition of requiring removal of such signs is/are repealed, or amended so as to eliminate that requirement, then any lawfully existing general advertising sign within a Neighborhood Commercial District which does not conform to the provisions of Section 607.1(e), (h), (i), and (j) or any lawfully existing general advertising sign which directs attention to a business on the same or directly adjacent property and does not conform to the provisions of Section 607.1(e), (h), (i), and (j) shall be removed within five years of the effective date of the repeal of the amendment of said state and/or federal legislation, as applicable; provided, however, if this Code is amended after the effective date of said repeal or amendment of said state and/or federal legislation, which Code amendment first makes Section 607.1 applicable to a sign, then that sign need not be removed until five years after the effective date of said Code amendment. (Added by Ord. 69-87, App. 3/13/87)

### SEC. 610.  VIOLATION OF GENERAL ADVERTISING SIGN REQUIREMENTS.

(a) **General.** The penalties and methods of enforcement set forth in this Section 610 are in addition to those set forth in Section 176 of this Code and any other penalties or methods of enforcement authorized by law. In light of the findings of Proposition G, approved by the voters in March of 2002, a violation of the Code's general advertising sign requirements is deemed to be a public nuisance.

(b) **Administrative Penalties.** The Director of Planning may impose administrative penalties for violations of the regulations governing general advertising signs set forth in this Article, in accordance with the following procedures:

(1) **Notice of Violation.**

(A) Upon the Planning Department's determination pursuant to Section 176 of this Code that a general advertising sign has been erected, installed, expanded, intensified, relocated, or otherwise operated in violation of the requirements of this Code or has been denied an in-lieu identifying number pursuant to Section 604.1(c) of

**Signs**

this Code, the Director shall send a written notice of violation to the Responsible Party by first class mail or hand-delivery. The notice of violation shall describe the violation(s), state that the Responsible Party has forty-five days from the date postmarked on the notice or from the date of hand-delivery of the notice to: (i) file an application for a permit to remove the general advertising sign; (ii) correct the violation(s) pursuant to Subsection (c); or (iii) request reconsideration pursuant to Subsection (d).

(B)   Responsible Party. For the purposes of this Section 610, "Responsible Party" shall mean the owner(s) of the real property on which the general advertising sign is located, as listed in the Assessor's record, and the current leaseholder(s) or owner(s) of the general advertising sign, if different from the owner(s) of the real property. If the identity of the person or business entity that installed or operates the general advertising sign is unknown, the notice of violation shall be posted as close as practicable to the location of the sign; once the identity of the person or business entity is known, notice of violation shall be sent to such person or business entity without any such delay affecting the time limits, fees, or penalties imposed by this Section 610.

(2)   **Penalties.**

(A)   Accrual of Penalties. If a Responsible Party fails to respond to the notice of violation as outlined in Subsection (b)(1)(A), penalties shall accrue under this Section 610 at the daily rate set forth in Subsection (b)(2)(B) beginning on the forty-sixth day and the Director shall refer the matter to the City Attorney for further action. If the Responsible Party responds after forty-five days, but before the Director has referred the matter to the City Attorney, the Responsible Party shall be assessed a penalty based on the number of days that have passed between the end of the forty-five day period and the date the Responsible Party responded. Once the matter has been referred to the City Attorney for further proceedings, it shall be within the discretion of the City Attorney, in consultation with the Director, whether to allow the Responsible Party to request a reconsideration of the notice of viola-

tion or to proceed with other legal action. If the Responsible Party is allowed to request reconsideration, the Responsible Party shall pay a penalty based on the amount accrued between the end of the forty-five day period and the date the Responsible Party responded. The Responsible Party shall pay this penalty within five (5) business days of notice that the Responsible Party will be allowed to request reconsideration.

(B)   Amount of Penalties. The administrative penalties that the Director or administrative law judge assesses against the Responsible Parties shall be related to the square footage of the general advertising sign found to be in violation of the Planning Code, as shown below:

(i)   100 square feet or less—$100.00 per day per violation;

(ii)   101—300 square feet—$1,000.00 per day per violation;

(iii)   301—500 square feet—$1,750.00 per day per violation; and

(iv)   Over 500 square feet—$2,500.00 per day per violation.

If the violation for which the administrative penalty is assessed has increased the size of the general advertising sign, the penalty shall be based on the actual size of the general advertising sign.

(C)   Collection. The Director may request that the Tax Collector pursue collection of any penalty, from the Responsible Party including imposition of a special assessment lien in accordance with the requirements of Article XX of Chapter 10 of the San Francisco Administrative Code (commencing with Section 10.230). The Director may also request that the City Attorney pursue collection of the penalty against the Responsible Party in a civil action to enforce the provisions of this Code.

(D)   Planning Code Enforcement Fund. Fees and penalties collected pursuant to this Section 610 shall be deposited in the Planning Code Enforcement Fund established in Administrative Code Section 10.100-166.

**San Francisco - Planning Code**

(c) **Building Permit.** A building permit shall be required to remove or modify any general advertising sign when such removal or modification is required pursuant to this Section 610.

(1) Additional time and material costs shall be added to the Building Permit fee pursuant to Section 350(c).

(2) The Responsible Party has thirty days from the filing of any required building permit application to remove or modify the general advertising sign to either: (i) obtain a Final Inspection Approval or Certificate of Final Completion from the Department of Building Inspection (DBI); or (ii) remove all advertising copy from the general advertising sign until the required DBI approval is obtained. If the Final Inspection Approval or Certificate of Final Completion has not been obtained or the advertising copy has not been removed within this time period, penalties shall accrue at the daily rate outlined in Subsection (b)(2)(B) until the advertising copy is removed or the required DBI approval is obtained.

(d) **Reconsideration of Notice of Violation or Administrative Penalty.**

(1) **Reconsideration Hearing.**

(A) A Responsible Party may seek reconsideration of the issuance of the notice of violation or any administrative penalty. Any request for reconsideration shall be accompanied by written evidence that demonstrates why the notice of violation was issued in error or why the administrative penalties were assessed in error. Upon receipt of a request for reconsideration within the time limits established by Subsection (b)(1)(A) or when allowed under Subsection (b)(2)(A), the Planning Department shall schedule a reconsideration hearing before an administrative law judge. Such hearing shall be scheduled for a date no later than 60 days after the request. At least 10 days before the scheduled hearing, the Planning Department shall notify the Responsible Party by mail in writing of the hearing date, time, and location.

(B) The administrative law judge shall hold a hearing to reconsider the director's notice of violation or administrative penalty. The administrative law judge's decision for a reconsidera-

tion of the notice of violation shall be based upon, but not limited to, the Planning Code, any final Zoning Administrator Interpretations, the Building Code, building permits issued by the City, and any final decisions of the Board of Appeals regarding the subject property. The administrative law judge's determination of a request for reconsideration of any administrative penalty shall take into account the validity of accrual dates, accuracy of assessment based upon sign size and whether the Responsible Party was accurately identified. Within 30 days of the hearing, the administrative law judge shall issue a final written decision, which shall be mailed to the Responsible Party. The final written decision shall not be appealable to the Board of Appeals. All final written decisions shall inform the Responsible Party of its right to seek judicial review pursuant to the timelines set forth in Section 1094.6 of the California Code of Civil Procedure.

(C) If the Planning Department rescinds the notice of violation or penalties prior to the reconsideration hearing, the case shall be considered abated and all accrued penalties shall be rescinded. If penalties or the reconsideration hearing fee set forth in Subsection (d)(2), below, have been paid, the Planning Department shall refund in a timely matter any unused portions of the penalties or fee.

If the administrative law judge overturns the notice of violation or penalties, the case shall be abated and all accrued penalties shall be rescinded. If penalties have been paid, the Planning Department shall refund the penalties.

If the Responsible Party withdraws its request for reconsideration of notice of violation or penalties prior to the reconsideration hearing and cures the violation(s) by filing for a building permit under subsection(c), any accrued penalties shall apply in addition to a mandatory ten-day fixed penalty based upon the daily rate outlined in Subsection (b)(2)(B). If the request for reconsideration is withdrawn within less than 10 days from the date it was timely made, the Responsible Party may apply to the Director for a reduction in the fixed penalty amount based

**Signs**

upon the number of days less than 10 that the reconsideration request was withdrawn. Any such reduction shall be granted or denied at the sole discretion of the Director and is not appealable.

If the administrative law judge upholds the notice of violation or penalties, the Responsible Party shall cure the violation(s) by filing for a building permit pursuant to the procedures and requirements of Subsection (c) within fifteen days of the date the decision is mailed to the Responsible Party. The Responsible Party shall be subject to any accrued penalties, plus a mandatory twenty-day fixed penalty based upon the daily rate outlined in Subsection (b)(2)(B). If the reconsideration hearing is held within less than 20 days from the date it was timely requested, the Responsible Party may apply to the Director for a reduction in the fixed penalty amount based upon the number of days less than 20 that the reconsideration hearing was held. Any such reduction shall be granted at the sole discretion of the Director and is not appealable. If the Responsible Party does not file for a building permit within the fifteen-day period, additional penalties shall accrue at the daily rate outlined in Subsection (b)(2)(B) and the Director shall refer the case to the City Attorney for further action.

(2) **Reconsideration Hearing Fee.** At the time the Responsible Party requests reconsideration, the Responsible Party shall pay an initial hearing fee of $3,400.00 to the Planning Department; the Responsible Party shall also be liable for time and materials as set forth in Section 350(c). The Planning Department shall increase this fee on an annual basis at a rate equal to that of the Consumer Price Index (CPI). The fee shall be waived if the Responsible Party would qualify for a waiver of court fees and costs pursuant to California Government Code Section 68511.3, as amended from time to time. Additionally, if the Responsible Party withdraws its request for reconsideration, any portion of the fee not expended to process the hearing shall be refunded.

(3) **Postponement.** The administrative law judge may grant a postponement of a hearing for Good Cause. Requests for postponement of a hearing shall be made in writing at the earliest

date possible, with supporting documentation attached. The party requesting the postponement shall notify any other parties of the request and provide them with copies of the complete request and the supporting documentation.

For the purposes of this Section 610, "Good Cause" includes, but is not limited to, the following:

(A) The illness of a party, an attorney or other authorized representative of a party, or a material witness of a party;

(B) Verified travel outside of San Francisco scheduled before the receipt of notice of the hearing; or,

(C) Any other reason which makes it impractical to appear on the scheduled date due to unforeseen circumstances or verified pre-arranged plans that cannot be changed. Mere inconvenience in appearing shall not constitute "good cause."

(e) Failure of the City, including the Director, the Planning Department, or the administrative law judge, to act within any of the timeframes set forth in this Section 610 shall not be considered approval of any general advertising sign. (Added by Ord. 71-01, File No. 001391, App. 5/18/2001; Ord. 52-07, File No. 051844, App. 3/9/2007)

## SEC. 611.  GENERAL ADVERTISING SIGNS PROHIBITED.

(a) No new general advertising signs shall be permitted at any location within the City as of March 5, 2002, except as provided in Subsection (b) of this ordinance.

(b) Nothing in this ordinance shall be construed to prohibit the placement of signs on motor vehicles or in the public right-of-way as permitted by local law.

(c) Relocation Agreements.

(1) Nothing in this ordinance shall preclude the Board of Supervisors, upon recommendation from a department designated by the Board, from entering into agreements with general advertising sign companies to provide for the relocation of existing legally permitted general advertising signs. Any such agreements shall provide

**San Francisco - Planning Code**

that the selection of a new location for an existing legally permitted general advertising sign be subject to the conditional use procedures provided for in Article 3 of the Planning Code.

(2)   Locations where general advertising signs could have been lawfully erected pursuant to the zoning laws in effect prior to the effective date of this ordinance may be considered as relocation sites. Future zoning laws may additionally restrict the locations available for the relocation of existing legally permitted general advertising signs.

(d)   Pursuant to Subsection (c)(1) of this ordinance, the selection of a relocation site for an existing legally permitted general advertising sign shall be governed by the conditional use procedures of Section 303 of the Planning Code.

(e)   Nothing in this ordinance shall preclude the Board of Supervisors from otherwise amending Article 6 of the Planning Code.

(f)   A prohibition on all new general advertising signs is necessary because:

(1)   The increased size and number of general advertising signs in the City can distract motorists and pedestrians traveling on the public right of way creating a public safety hazard.

(2)   General advertising signs contribute to blight and visual clutter as well as the commercialization of public spaces within the City.

(3)   There is a proliferation of general advertising signs visible from, on, and near historically significant buildings and districts, public buildings and open spaces all over the City.

(4)   San Francisco must protect the character and dignity of the City's distinctive appearance, topography, street patterns, open spaces, thoroughfares, skyline and architectural features for both residents and visitors.

(5)   There is currently an ample supply of general advertising signs within the City. (Added by Proposition G, 3/5/2002)

[The next page is 941]