PAUL E. FISHER, State Bar No. 125309
The Law Office of Paul E. Fisher
537 Newport Center Dr., #289
Newport Beach, CA 92660
Telephone: (949) 675-5619
Facsimile:  (949) 675-5641

ERIC HECKER (admitted *pro hac vice*)
Emery Celli Brinckerhoff & Abady LLP
75 Rockefeller Plaza, 20th Floor
New York, NY 10019
Telephone: (212) 763-5000
Facsimile:  (212) 763-5001

ATTORNEYS FOR PLAINTIFF
METRO FUEL LLC

# UNITED STATES DISTRICT COURT

# FOR THE NORTHERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| METRO FUEL LLC, a Delaware limited liability company,<br><br>    Plaintiff,<br><br>vs.<br><br>CITY OF SAN FRANCISCO, a municipal corporation, COUNTY OF SAN FRANCISCO, a subdivision of the State of California, CITY AND COUNTY OF SAN FRANCISCO, a chartered California city and county,<br><br>    Defendants. | Case No. 3:07-CV-6067 (JSW)<br><br>The Hon. Jeffrey S. White<br><br>**ADMINISTRATIVE MOTION FOR LEAVE TO FILE A MOTION FOR A PRELIMINARY INJUNCTION AND TO FILE A MEMORANDUM OF LAW OF TWENTY-FIVE PAGES IN SUPPORT THEREOF**<br><br>Date:    July 11, 2008<br>Time:   1:30 p.m.<br>Ctrm.   2, 15th Fl. |

1  Pursuant to the Court's Minute Entry following the March 14, 2008 Initial
2  Case Management Conference (Docket #12) directing that "[t]he Court will not
3  allow a Motion for Preliminary Injunction without an Administrative Request to
4  file," Plaintiff Metro Fuel LLC ("Plaintiff") hereby moves, pursuant to Local Rule
5  7-11, for administrative leave to move for a preliminary injunction on a briefing
6  schedule and with a return date to be determined by the Court. Plaintiff further
7  moves, also pursuant to Local Rule 7-11, for leave to file a 25-page memorandum of
8  law in support of its motion for a preliminary injunction.

9  As detailed in Plaintiff's Amended Complaint dated April 17, 2008, this case
10 is about stark government hypocrisy. Relying on well-reasoned case law that
11 Defendant City of San Francisco (the "City") has conceded is on point, Plaintiff
12 challenges the City's authority to suppress valuable, constitutionally protected
13 speech when the City's stated justifications for doing so are flatly belied by its own
14 conduct.

15 Plaintiff is engaged in the business of outdoor advertising in San Francisco
16 through its operation of so-called "panel signs." Panel signs, also known as "light
17 boxes," are internally illuminated poster advertisements that have a surface area of
18 approximately 24 square feet (approximately 6 feet by 4 feet).

19 Article 6 of the San Francisco Planning Code (the "Sign Ordinance") places
20 severe restrictions on Plaintiff's ability to operate panel signs within the City. It
21 does so in two fundamental ways. First, through its adoption of Proposition G in
22 March 2002, the City added Section 611 to its Sign Ordinance, which purports to
23 impose a complete and total ban on any and all new "general advertising signs" –
24 signs that direct attention to goods, services, or activities offered elsewhere than on
25 the premises upon which the sign is located – including virtually all of Plaintiff's
26 panel signs. Second, with respect to those panel signs that were installed prior to
27 March 2002 and therefore are not subject to the prospective ban, the Sign Ordinance
28

contains a slew of highly restrictive underlying zoning regulations that, if enforced, would prohibit most, if not all, of Plaintiff's panel signs. *See generally* Sign Ordinance §§ 605-608.

The City has claimed that both its total ban on new advertising signs, and its underlying zoning restrictions governing pre-ban advertising signs, are necessary to preserve and protect "traffic safety" and "aesthetics." The City's own conduct, however, belies these supposed justifications and proves that they are nothing more than empty pretexts. Tellingly, in enacting the Sign Ordinance, the City bestowed itself with blanket exemptions for *thousands* of its own advertising signs – signs that are virtually identical to Plaintiff's signs in terms of size, illumination, and appearance; that often are located in close proximity to Plaintiff's signs; but that, unlike Plaintiff's signs, generate *hundreds of millions of dollars* for the City.

The City has, for example, entered into an exclusive contract with Clear Channel Outdoor, Inc. to place advertising signs on all of the City's bus shelters, notwithstanding that all such advertising violates the very Sign Ordinance provisions – including the City's underlying zoning regulations – that supposedly render Plaintiff's panel signs illegal. The City has conveniently given its bus shelters a blanket exemption, set forth in section 603(j) of the Sign Ordinance, that immunizes such advertising signs from *all* of the rules governing advertising signs.[1]

It cannot seriously be disputed that the City-sanctioned street furniture advertising signs that now blanket the streetscape are at least as "dangerous" and "unsightly" as Plaintiff's panel signs allegedly are. The City's signs invariably are, by design, significantly closer to the curb line than Plaintiff's signs and thus are, if

---

[1] The same is true for the City's contract with private franchisees to install and operate hundreds of newsracks and hundreds of "public service kiosks" bearing advertising signs on its streets. These advertising signs have conveniently been given a blanket pass through sections 603(m) (public service kiosks) and 603(n) (newsracks) of the Sign Ordinance.

anything, more visible and distracting to motorists and pedestrians. But the City embraces its franchisees' signs because it profits handsomely by doing so.

The Supreme Court has made clear that this kind of government hypocrisy is constitutionally fatal. The City cannot trample on Plaintiff's First Amendment right to engage in protected commercial speech where, as here, the City's scheme contains enormous exemptions that substantially undermine its stated regulatory rationale. *See, e.g., Greater New Orleans Broadcasting Ass'n, Inc. v. U.S.*, 527 U.S. 173, 174 (1999) (striking down scheme restricting commercial speech because the "regulatory regime is so pierced by exemptions and inconsistencies that the Government cannot hope to exonerate it").

Applying this Supreme Court case law to a factual scenario virtually identical to the one presented in this case, the United States District Court for the Central District of California recently struck down Los Angeles's ban on new general advertising signs in *Metro Lights, LLC v. City of Los Angeles*, 488 F. Supp. 2d 927 (C.D. Cal. 2006). In *Metro Lights*, the City of Los Angeles had enacted a ban barring any new construction of off-site signs, reserving for itself a blanket exemption for all of its franchisee's revenue-generating signs located on public rights of way. The district court held that the City's ban failed to advance its asserted interest in traffic safety and aesthetics in light of the franchisee's broad mandate to erect signs on street furniture across the city. *See* 488 F. Supp. 2d at 943-50.[2]

---

[2] Notably, in this case, the restrictions are even broader than in *Metro Lights*, for the underlying zoning regulations challenged in this case prohibit nearly all advertising signs (other than the City's own signs), not just new signs. *See World Wide Rush, LLC v. City of Los Angeles*, __ F. Supp. 2d __, 2008 WL 2477440 (C.D. Cal. Jun. 9, 2008) (relying on *Greater New Orleans* and *Metro Lights* to strike down Los Angeles's underlying zoning rules prohibiting freeway advertising signs).

The City has conceded that *Metro Lights*, which is now on appeal to and has already been argued before the Ninth Circuit, controls the outcome of this case. The City essentially so conceded in its initial Rule 12 motion (by arguing that *Metro Lights* was wrongly decided rather than attempting to distinguish it, *see* Docket #14, at 12), and the City expressly so conceded in its May 9, 2008 request to stay this litigation pending the Ninth Circuit's decision in *Metro Lights* given the "closeness of the issues" (Docket #26). Accordingly, there is little doubt that Plaintiff will be able to establish the requisite likelihood of success on the merits.

Nor is there any doubt that Plaintiff will be able to establish that is threatened with imminent irreparable harm. Plaintiff intends to demonstrate that the City has engaged in an aggressive campaign of harassing Plaintiff's lessors – those who own the land on which Plaintiff's panel signs sit – including by boldly assuring lessors that this lawsuit is a clear loser. As a result, many lessors – who have been assessed substantial escalating fines and threatened with liens on their properties – have vowed to take down their signs absent immediate relief from this Court; several lessors already have actually done so; and one lessor recently went so far as to *sue* Plaintiff in Superior Court for failing to protect its lessors. Plaintiff will establish that this widespread lessor unrest is getting worse by the day and is posing an imminent and grave threat to Plaintiff's business. Of course, Plaintiff need not do so in order to prevail on a preliminary injunction motion because, as the Ninth Circuit has repeatedly recognized, "the fact that a case raises serious First Amendment questions compels a finding that there exists the potential for irreparable injury." *Sammartano v. First Judicial Dist. Ct.*, 303 F.3d 959, 973 (9th Cir. 2002) (internal citations omitted).

Counsel to the parties have met and conferred by telephone regarding Plaintiff's intention to move for a preliminary injunction as soon as possible. The City does not object to Plaintiff filing whatever motion it believes is appropriate,

subject to several caveats. First, the City obviously opposes the preliminary injunctive relief Plaintiff intends to seek. Second, the City believes that it is entitled to certain discovery that it asserts is necessary to enable it to defend against Plaintiff's preliminary injunction motion, and it reserves the right to oppose Plaintiff's preliminary injunction motion on that basis or to affirmatively move to postpone Plaintiff's motion until that discovery has been completed. Finally, the City continues to believe that this case should be stayed pending the Ninth Circuit's decision in the *Metro Lights* appeal, and reserves the right to move for a stay in the future.

Plaintiff disagrees that the City needs any discovery in order to oppose its contemplated preliminary injunction motion. However, Plaintiff agrees that the City is entitled to make that argument in its opposition papers or in a separate motion, and Plaintiff will set forth its position in response to whatever argument the City makes.

The parties mutually agree that it would be preferable to stipulate to a briefing schedule that is acceptable to both sides. However, given the parties' disagreement regarding the extent, if any, to which discovery should be conducted prior to adjudicating Plaintiff's preliminary injunction motion, the parties agree that it makes sense to defer setting a briefing schedule until the conference scheduled for July 11. At that conference, the parties and the Court will have the opportunity to discuss the discovery that the City believes it needs, and the Court can set an appropriate briefing schedule after hearing from the parties.

Finally, the parties mutually agree that it would be appropriate to allow each side to file 25-page briefs in support of and in opposition to Plaintiff's preliminary injunction motion. This is consistent with Rule 8 of Your Honor's Civil Standing Orders, which allow 25-page briefs in support of and in opposition to summary judgment motions.

| | | |
|---|---|---|
| 1 | Date: July 2, 2008 | Respectfully submitted, |
| 2 | | LAW OFFICE OF PAUL E. FISHER |

By: _____/s/_____
PAUL E. FISHER
State Bar No. 125309
Law Office of Paul E. Fisher
537 Newport Center Dr., #289
Newport Beach, CA 92660
Telephone: (949) 675-5619
Facsimile: (949) 675-5641

ERIC HECKER (admitted *pro hac vice*)
Emery Celli Brinckerhoff & Abady LLP
75 Rockefeller Plaza, 20th Floor
New York, NY 10019
Telephone: (212) 763-5000
Facsimile: (212) 763-5001

ATTORNEYS FOR PLAINTIFF
METRO FUEL LLC