<u>AUTOMATIC PUBLIC TOILET AND PUBLIC SERVICE KIOSK AGREEMENT</u>

TABLE OF CONTENTS

Page

Part 1.   General Provisions . . . . . . . . . . . . . . . . .   1

    1.01.      Definitions . . . . . . . . . . . . . .   1
    1.02.      Certification of Funds; Budget and Fiscal
               Provisions; Termination in the Event of
               Non-Appropriation . . . . . . . . . . .   3
    1.03.      Term of Agreement . . . . . . . . . . .   4
    1.04.      Effective Date of Agreement . . . . . .   4
    1.05.      Guaranteed Maximum Costs . . . . . . . .   4
    1.06.      Contractor to Provide Automatic Public
               Toilets . . . . . . . . . . . . . . . .   5
    1.07.      License to Install and Maintain Public
               Service Kiosks as Consideration for Automatic
               Public Toilets . . . . . . . . . . . . .   5
    1.08.      Grant of Advertising Rights . . . . . .   5
    1.09.      Ownership of Automatic Public Toilets and
               Public Service Kiosks . . . . . . . . .   7
    1.10.      Payment by Contractor . . . . . . . . .   7
    1.11.      Performance Bond . . . . . . . . . . . .   8
    1.12.      Letter of Credit . . . . . . . . . . . .   11
    1.13.      Maintenance and Complaint Log . . . . .   14
    1.14.      Insurance . . . . . . . . . . . . . . .   14
    1.15.      Hold Harmless and Indemnification . . . .   16
    1.16.      Social Security; Unemployment Compensation . .   17
    1.17.      Notices; When Effective . . . . . . . .   17
    1.18.      Termination of Agreement . . . . . . . .   17
    1.19.      Event of Default; Remedies . . . . . . .   19
    1.20.      No Waiver of Subsequent Breaches or Defaults .   22
    1.21.      Subcontracting . . . . . . . . . . . . .   22
    1.22.      Audited Financial Report . . . . . . . .   22
    1.23.      Initial Capital . . . . . . . . . . . .   23
    1.24.      Guaranty of Obligation . . . . . . . . .   23

Part 2.   Automatic Public Toilet Installation . . . . . . . .   23

    2.01.      Installation of Automatic Public Toilets . . .   23
    2.02.      Permit Approvals Required for Automatic
               Public Toilets . . . . . . . . . . . . .   24
    2.03.      City Review of Plans and Submittals . . . .   24
    2.04.      Automatic Public Toilets Required To Be
               Installed . . . . . . . . . . . . . . .   25
    2.05.      Locations and Sites of Automatic Public
               Toilets . . . . . . . . . . . . . . . .   26
    2.06.      Relocation of Automatic Public Toilets . . . .   28

Page

2.07.    Clearance Requirements for Automatic Public
         Toilets . . . . . . . . . . . . . . . . . . . . . .    28
2.08.    Automatic Public Toilet Design . . . . . . . . .    29
2.09.    Approval of Other Agencies . . . . . . . . . .    29
2.10.    Location Drawings and Engineering Plans for
         Automatic Public Toilets . . . . . . . . . . . .    30
2.11.    Electrical, Sewage, Telephone and Water
         Services; Installation . . . . . . . . . . . . .    31
2.12.    Restoration of Sites . . . . . . . . . . . . . .    31

Part 3.    **Public Service Kiosk License** . . . . . . . . . .    32

3.01.    Installation of Public Service Kiosks . . . .    32
3.02.    Permit Approvals Required For Public Service
         Kiosks . . . . . . . . . . . . . . . . . . . . . .    32
3.03.    CITY Review of Plans And Submittals . . . . .    33
3.04.    Number of Public Service Kiosks Permitted . .    33
3.05.    Locations and Sites of Public Service Kiosks .    34
3.06.    Relocation of Public Service Kiosks . . . . .    35
3.07.    Clearance Requirements For Public Service
         Kiosks . . . . . . . . . . . . . . . . . . . . . .    36
3.08.    Public Service Kiosk Design . . . . . . . . .    37
3.09.    Approval of Other Agencies . . . . . . . . . .    37
3.10.    Location Drawings and Engineering Plans for
         Public Service Kiosks . . . . . . . . . . . . .    37
3.11.    Electrical Connections and Service
         Responsibility of Contractor . . . . . . . . .    38
3.12.    Restoration of Sites . . . . . . . . . . . . .    38

Part 4.    **Advertising** . . . . . . . . . . . . . . . . . . .    38

4.01.    Advertising Displays . . . . . . . . . . . . .    38
4.02.    Size and Location of Advertising . . . . . . .    39
4.03.    Advertising Rights . . . . . . . . . . . . . .    39
4.04.    Changes in Authorized Advertising . . . . . .    39
4.05.    Design Considerations and Use of Materials . .    40
4.06.    Advertising Material . . . . . . . . . . . . .    40
4.07.    Limitation on Tobacco Advertising . . . . . .    40
4.08.    Public Information Campaign . . . . . . . . .    40

Part 5.    **Maintenance and Operation** . . . . . . . . . . . .    41

5.01.    Automatic Public Toilet and Public Service
         Kiosk Maintenance and Operation . . . . . . .    41
5.02.    Hours of Operation . . . . . . . . . . . . . .    41

Page

5.03.    Services to be Furnished by CONTRACTOR . . . .    41
5.04.    Maintenance Schedule . . . . . . . . . . . .    42
5.05.    Inspection and Clean-Up of Automatic Public
         Toilets and Public Service Kiosks . . . . . .    42
5.06.    Repair and Replacement . . . . . . . . . . .    43
5.07.    Vandalism of Automatic Public Toilets . . . .    44
5.08.    Charge For Use of Automatic Public Toilets . .    44
5.09.    Parking and Traffic Restrictions . . . . . .    45
5.10.    Public Service Use of Public Service Kiosks .    45
5.11.    Relocation Costs . . . . . . . . . . . . . .    49

Part 6.    **Accessibility Requirements** . . . . . . . . . . . .    50

6.01.    Accessibility . . . . . . . . . . . . . . .    50
6.02.    Accessible Design . . . . . . . . . . . . .    50
6.03.    Path of Travel . . . . . . . . . . . . . . .    50
6.04.    Approved Cleaning Products . . . . . . . . .    50
6.05.    Automatic Public Toilet Review Committee . . .    51
6.06.    Disabled Access Advisory Committee . . . . .    51

Part 7.    **Miscellaneous Contract Provisions** . . . . . . . .    51

7.01.    San Francisco Office . . . . . . . . . . . .    51
7.02.    Conflict of Interest . . . . . . . . . . . .    51
7.03.    Other Agreements between CITY and CONTRACTOR .    52
7.04.    Assignment . . . . . . . . . . . . . . . . .    52
7.05.    Binding Effect of Agreement . . . . . . . .    52
7.06.    Taxes . . . . . . . . . . . . . . . . . . .    52
7.07.    No Other Fees . . . . . . . . . . . . . . .    52
7.08.    Legal Relationship . . . . . . . . . . . . .    53
7.09.    Independent Contractor . . . . . . . . . . .    53
7.10.    Qualified Personnel . . . . . . . . . . . .    54
7.11.    Equal Employment Opportunity and Business
         Practices; Liquidated Damages . . . . . . . .    54
7.12.    MacBride Principles--Northern Ireland . . . .    54
7.13.    Tropical Hardwood Ban . . . . . . . . . . .    55
7.14.    Resource Conservation . . . . . . . . . . .    55
7.15.    Non-Waiver of Rights . . . . . . . . . . . .    55
7.16.    Modification And Amendment of Agreement . . .    55
7.17.    Section Headings . . . . . . . . . . . . . .    55
7.18.    Agreement Made in California; Venue . . . . .    55
7.19.    Construction . . . . . . . . . . . . . . . .    55
7.20.    Entire Agreement . . . . . . . . . . . . . .    55

<u>APPENDICES</u>

<u>Appendix</u>

A.   Location of Gannett Market Street Kiosks

B.   Preliminary Locations of Initial Phase Automatic Public Toilets

C.   Automatic Public Toilet Plans and Specifications

D.   Public Service Kiosks Plans and Specifications

E.   Form of Guaranty

F.   Map of the San Francisco Waterfront

G.   Department of Public Works Order Nos. 163,368 and 163,369

This AGREEMENT is made and entered into this 2nd day of August, 1994, by and between the CITY AND COUNTY OF SAN FRANCISCO, a municipal corporation, hereinafter referred to as "CITY", acting by and through its Department of Public Works, and JCDECAUX UNITED STREET FURNITURE, INC., a California corporation, hereinafter referred to as "CONTRACTOR".

## Recitals

WHEREAS, The CITY desires to establish an Automatic Public Toilet Program, for the benefit of the residents and visitors to the City and County of San Francisco, to provide for the placement of automatic public toilets on public property in San Francisco; and

WHEREAS, CONTRACTOR states and declares that it has the knowledge, willingness and ability to provide automatic public toilets for the Automatic Public Toilet Program, in exchange for the right to place public service kiosks on public property and to sell advertising on said public service kiosks; and

WHEREAS, The CITY has selected CONTRACTOR to provide the Automatic Public Toilet Program according to the terms of this Automatic Public Toilet And Public Service Kiosk Agreement ("the Agreement");

NOW, THEREFORE, for and in consideration of the promises hereinafter set forth, the parties hereto agree as follows:

## Part 1.   General Provisions.

1.01.   Definitions.

Where any word or phrase defined below or a pronoun used in place thereof, is used in any part of this Agreement, it shall have the meaning herein set forth.

(A)   "Agreement" means this contract, as originally executed and as amended or extended from time to time; words such as "herein," "hereinafter," "hereof," "hereto" and "hereunder," when used with reference to this Agreement, refer to this Agreement as a whole, unless the context otherwise requires.

(B)   "Approval" means the written consent of the Director, or his or her designated agent, unless the context otherwise requires.

(C)   "Authorization" means an order or other written authorization of the CITY properly executed by the

Director, or his or her designated agent, unless the context otherwise requires.

(D)  "Automatic Public Toilet" means a free standing enclosure containing an automatic self-cleaning toilet available for use by the general public as provided herein.

(E)  "CITY" means the City and County of San Francisco, a municipal corporation; except where otherwise indicated by the context, all references to CITY shall also mean and include the Port of San Francisco.

(F) "CONTRACTOR" means JCDecaux United Street Furniture, Inc. a California corporation, and its successors and assigns permitted hereunder.

(G) "Controller" means the Controller of the City and County of San Francisco.

(H) "Director" means the Director of the CITY's Department of Public Works.

(I) "Downtown Area" means the geographic area of the CITY bounded on the south by the southerly line of Folsom Street, on the west by the westerly line of Van Ness Avenue extended north to the San Francisco Bay, and on the north and east by the shoreline of the San Francisco Bay.

(J)  "Initial Phase" means the twenty-seven (27) Automatic Public Toilets and one hundred twenty one (121) Public Service Kiosks initially authorized pursuant to this Agreement.

(K)  "PORT" means the Port of San Francisco.

(L)  "Port Director" means the Executive Director of the Port of San Francisco.

(M)  "Port Property"  means the geographic area of the CITY shown on the map of the San Francisco waterfront attached hereto as Appendix F.

(N)  "Public Service Kiosk" means a free standing circular kiosk, the exterior of which is divided into three sections, two of which display advertising panels of approximately

fifty-one (51) square feet each, and one of
which provides access to a public service,
such as public art, a newsstand, newsrack,
display of map or local information, telephone
booth, recycling bin, vending machine,
interactive video information system, or other
public service authorized pursuant to Section
5.10 of this Agreement.

(O)  "Reference Rate" means the reference rate
charged by the Bank of America, NT & SA, San
Francisco, California, at the beginning of each
month.

(P)  "Start Date" means the first date upon which
all permits required for installation have been
issued for at least (i) twenty (20) Automatic Public
Toilets and (ii) ninety (90) Public Service Kiosks,
of which at least thirty-five (35) shall be located
on Market Street.

(Q)  "Vandalism" shall mean wilful or malicious
damage or destruction of an Automatic Public Toilet
or any part thereof caused by a party other than
CONTRACTOR or CITY but shall exclude graffiti,
ordinary wear and tear, and any damage caused during
riots and other civil disturbance.

(R)  Whenever the words "as directed", "as required",
"as permitted", or words of like effect are used, it
shall be understood as the direction, requirement, or
permission of the Department of Public Works.  The
words "sufficient", necessary", or "proper", and the
like, mean sufficient, necessary or proper in the
judgment of the Department of Public Works.  The
words "approval", "acceptable", "satisfactory", or
words of like import, shall mean approved by, or
acceptable to, or satisfactory to the Department of
Public Works, unless otherwise expressly provided
herein.

1.02.  Certification of Funds; Budget and Fiscal Provisions;
Termination in the Event of Non-Appropriation.  This
Agreement is  subject to the budget and fiscal provisions
of the CITY's Charter.

CITY has no obligation to make appropriations for this
Agreement in lieu of appropriations for new or other
agreements.  CITY budget decisions are subject to the
discretion of the Mayor and the Board of Supervisors.

CONTRACTOR's assumption of risk of possible non-appropriation is part of the consideration for this Agreement.  THIS SECTION CONTROLS AGAINST ANY AND ALL OTHER PROVISIONS OF THIS AGREEMENT.  Notwithstanding the foregoing, if CITY should fail to appropriate amounts as and when due CONTRACTOR hereunder, CONTRACTOR shall have the right, at its sole option, to terminate this Agreement, effective immediately upon notice to CITY.

1.03.    <u>Term of Agreement</u>.  This Agreement shall commence as of the Effective Date (as defined in Section 1.04 below) and shall continue, subject to the terms of this Agreement regarding termination, to the date twenty (20) years from the Effective Date.

1.04.    <u>Effective Date of Agreement</u>.  This Agreement shall become effective on the date (the "Effective Date") occurring thirty (30) days after the CITY's Mayor signs the ordinance approving this Agreement.

1.05.    <u>Guaranteed Maximum Costs</u>.

    A.    The CITY's financial obligations hereunder shall not at any time exceed the amount certified by the Controller for the purpose and period stated in such certification.

    B.    Except as may be provided by CITY ordinances governing emergency conditions, the CITY and its employees and officers are not authorized to request CONTRACTOR to perform services or to provide materials, equipment and supplies that would result in CONTRACTOR performing services or providing materials, equipment and supplies that are beyond the scope of the services, materials, equipment and supplies agreed upon in the Agreement unless the Agreement is amended in writing and approved as required by law to authorize the additional services, materials, equipment or supplies.  CITY is not required to reimburse CONTRACTOR for services, materials, equipment or supplies that are provided by CONTRACTOR which are beyond the scope of the services, materials, equipment and supplies agreed upon in the Agreement and which were not approved by a written amendment to the Agreement having been lawfully executed by the CITY.

    C.    CITY and its employees and officers are not authorized to offer or promise to CONTRACTOR additional funding for the Agreement which would

exceed the maximum amount of funding provided for in
the Agreement for CONTRACTOR's performance under the
Agreement.  Additional funding for the Agreement in
excess of the maximum provided in the Agreement shall
require lawful approval and certification by the
Controller of the CITY.  The CITY is not required to
honor any offered or promised additional funding for
an Agreement which exceeds the maximum provided in
the Agreement which requires lawful approval and
certification by the Controller when the lawful
approval and certification by the Controller has not
been obtained.

D.    The Controller is not authorized to make payments on
any contract for which funds have not been certified
as available in the budget or by supplemental
appropriation.

1.06.  <u>Contractor to Provide Automatic Public Toilets</u>.
CONTRACTOR shall install, operate and maintain, on public
property, Automatic Public Toilets as provided in Part 2,
<u>Automatic Public Toilet Installation</u>, hereof, subject to
all of the terms and conditions set forth in this
Agreement.

1.07.  <u>License to Install and Maintain Public Service Kiosks as
Consideration for Automatic Public Toilets</u>.  In
consideration for the installation, operation and
maintenance of Automatic Public Toilets according to the
terms  and conditions of this Agreement, the CITY hereby
agrees to grant to CONTRACTOR the right, to occupy and use
public property for the installation, operation and
maintenance of Public Service Kiosks as provided in, and
subject to all of the terms and conditions of, this
Agreement, and the right to place advertising on such
Public Service Kiosks, subject to the terms, conditions
and limitations set forth in Part 4 of this Agreement.

1.08.  <u>Grant of Advertising Rights</u>.

A.    CITY hereby grants to CONTRACTOR, and represents and
warrants that CONTRACTOR shall have, during the term
of this Agreement, the exclusive right to erect and
maintain Public Service Kiosks on CITY property, and
the exclusive right to place advertising on Public
Service Kiosks as authorized.  CITY shall retain and
reserve to itself and its assigns all advertising
rights not expressly granted to CONTRACTOR hereunder,
subject to the limitations and conditions of this
Agreement.

6175\7.0
4/21/94

5.

B.  Except for advertising displayed by the CONTRACTOR on Public Service Kiosks authorized hereunder, and except as provided in Paragraph C below, CITY agrees not to display nor will it authorize nor permit the display of advertising panels of from eighteen (18) to fifty-five (55) square-feet on any free-standing structure located on any public right-of-way or other CITY-owned property (i) anywhere within the Downtown Area, and/or (ii) outside the Downtown Area, within a 300-foot radius of any Public Service Kiosk authorized hereunder.  For purposes of this Section 1.08, the term "free-standing structure" includes structures of any shape, size or number of advertising panels, but shall not include buildings of at least 250 square-feet of floor area.

C.  Notwithstanding any other provisions of Paragraph A or B of this Section 1.08, CITY shall have the right to display or to authorize or permit display of advertising panels, each of which shall not exceed twenty four (24) square feet in area, provided that such panels are physically attached to transit shelters, excluding, however, transit shelters on Market Street within the Downtown Area; provided further that the CITY's right to display advertising on such transit shelters shall survive the expiration or termination of the Advertising Transit Shelter Agreement between the CITY and Gannett Outdoor Company, Inc of Northern California, dated as of January 5, 1990.

D.  Notwithstanding any other provision of Paragraph A or B of this Section 1.08, CITY shall have the right to display or to authorize or permit display of up to two (2) advertising panels, each of which shall not exceed twenty four (24) square feet in area, on the twenty-six (26) "Market Street Kiosks" authorized as of the Effective Date hereof pursuant to the First Amendment to Advertising Transit Shelter Agreement between the CITY and Gannett Outdoor Company, Inc. of Northern California dated as of January 5, 1990 (the locations of which are listed in Appendix A hereto); provided that such "Market Street Kiosks" may be relocated as part of any relocation of the transit shelters on Market Street; and provided further that CITY's right to display advertising on the twenty-six (26) "Market Street Kiosks" shall survive the expiration or termination of such Advertising Transit Shelter Agreement.

E.  Notwithstanding the provisions of Paragraphs A
through D of this Section 1.08, the PORT shall have
the right to display or to authorize or permit
display of advertising, including informational and
directional displays, related exclusively to the
business activities of the PORT, its lessees and
licensees, within Port Property; except that any such
displays of a commercial nature on free-standing
structures shall be no larger than eighteen (18)
square feet.

F.  CITY shall not enter into any contract or Agreement
granting to any third-party any exclusive advertising
rights which would have the effect of precluding the
CITY from permitting Public Service Kiosks anywhere
in the CITY otherwise permitted hereunder; provided,
however, that CITY may impose reasonable standards,
such as those imposed pursuant to Department of
Public Works Order Number 163,368, (as set forth in
Appendix G hereto, on the distance between individual
pieces of street furniture containing advertising.

1.09.  Ownership of Automatic Public Toilets and Public Service
Kiosks.  All Automatic Public Toilets and Public Service
Kiosks constructed, installed and maintained pursuant to
this Agreement shall be the property of CONTRACTOR.

1.10.  Payment by Contractor.  CONTRACTOR agrees to pay the CITY
an annual fee according to the following terms and
conditions, to defray CITY'S costs of administering this
Agreement.

A.  Base Payment; Adjustments.  CITY's base fee shall be
twenty-five thousand dollars ($25,000) for all those
Automatic Public Toilets provided in the Initial
Phase pursuant to this Agreement.  In Year One (1) of
the Agreement (commencing on the Start Date),
CONTRACTOR shall pay the base fee without adjustment.
CONTRACTOR's bid security, a certified check in the
amount of twenty-five thousand dollars ($25,000)
submitted with CONTRACTOR's bid and presently held by
the CITY, shall be retained as CONTRACTOR's Year One
(1) base fee.  In each succeeding year during the
term of the Agreement (Years Two (2) through Twenty
(20),) CONTRACTOR shall pay CITY on or after each
anniversary date of the Start Date of this Agreement,
adjusted as follows:  (i) the base fee shall be
adjusted based on the percentage change in the most
recently published Consumer Price Index (CPI) (Urban
Wage Earners and Clerical Workers in San Francisco –

Oakland Standard Metropolitan Statistical Area (1982-84 = 100)) as calculated from the Start Date, and (ii) a fee of Five Hundred Dollars ($500) shall be added for each Automatic Public Toilet for which all permits have been issued over and above the twenty-seven (27) Automatic Public Toilets in the Initial Phase. The above fee includes both the Automatic Public Toilets and the associated Public Service Kiosks authorized hereunder.

B.    <u>Late Payments</u>.  Payments due hereunder which are not received by the CITY within fifteen (15) days after such amount becomes due shall bear interest at the Reference Rate from and after the date said payment was due until the date paid.

C.    <u>Payments</u>.  CONTRACTOR shall make all payments to: CITY and County of San Francisco, Department of Public Works, Bureau of Street-Use and Mapping, Room 350 CITY Hall, San Francisco, California 94102, or at such other place as CITY may from time to time designate by written notice to CONTRACTOR.

1.11.  <u>Performance Bond</u>.  CONTRACTOR shall provide the CITY with a performance bond as a guarantee for CONTRACTOR's performance of the supply and installation of the Automatic Public Toilets in accordance with the terms and specifications of this Agreement.

A.    <u>Initial Amount of Bond</u>.  CONTRACTOR agrees that within three (3) business days after the Effective Date of this Agreement, CONTRACTOR shall deliver to the Department of Public Works a performance bond valued at two million dollars ($2,000,000).

B.    <u>Qualifications of Surety</u>.  The bond shall be executed by a guaranty or surety company legally authorized to engage in the business of furnishing performance bonds in the State of California and listed in the latest issue of the United States Treasury Circular 570.  The total bond liability of any guaranty or surety company engaged by CONTRACTOR shall not exceed the therein specified underwriting limitation for that company.

C.    <u>Duration of Bond Requirement</u>.  Except as otherwise provided herein or authorized in writing by the Director, CONTRACTOR shall maintain said performance bond in full force and effect throughout the period of installation of the Automatic Public Toilets.

After CONTRACTOR has completed installation of twenty (20) Automatic Public Toilets, the required amount of such performance bond shall be reduced to One Million Two Hundred Thousand Dollars ($1,200,000). Thereafter, the required amount of such Performance Bond shall be reduced pro rata at a rate of Forty Thousand Dollars ($40,000) per Automatic Public Toilet as CONTRACTOR completes installation of each Automatic Public Toilet installed hereunder; except that CONTRACTOR shall not be required to maintain said Performance Bond in effect for more than five (5) years after the Start Date.

D.  Failure to Provide Performance Bond; Failure of Surety.

(1)  If CONTRACTOR fails to deliver the performance bond as required by the Agreement, the CITY shall be entitled to cancel the Agreement effective immediately upon notice to CONTRACTOR and shall be entitled to exercise any other rights and remedies granted hereunder or by law.

(2)  During the period covered by this Agreement, if any of the sureties upon the bond shall become insolvent or, in the opinion of the Department of Public Works, unable to pay promptly the amount of such bond to the extent to which the surety might be liable, CONTRACTOR, within thirty (30) days after notice given by the Department of Public Works to CONTRACTOR, shall by supplemental bond or otherwise, substitute another and sufficient surety approved by the Director in place of the surety becoming insolvent or unable to pay. If CONTRACTOR fails within such thirty (30) day period to substitute another and sufficient surety, the Department of Public Works may elect to find CONTRACTOR in default of the performance of its obligations under this Agreement. The Department of Public Works, in addition to any and all other remedies available to it by law, may terminate the Agreement, withhold monies then due or which thereafter may become due to CONTRACTOR, and bring any proper suit or proceeding against CONTRACTOR under the Agreement. The amount for which the surety shall have justified on the bond and the monies so deducted shall be held by CITY as collateral for the performance of the conditions of the bond.

E.   <u>Letter of Credit as Alternative</u>.  Notwithstanding any
other provision of this Section 1.11, CONTRACTOR
shall have the right to substitute a letter of credit
for the performance bond otherwise required hereunder
as a guarantee for CONTRACTOR's performance of the
supply and installation of the Automatic Public
Toilets under the terms of this Agreement
(hereinafter "Alternative Letter of Credit").  The
required amount of any such Alternative Letter of
Credit shall be the same as that required for a
performance bond pursuant to Paragraphs A and C
above.  Any such Alternative Letter of Credit shall
be established with a national or California bank
having at least one branch office within the CITY and
County of San Francisco, in favor of the CITY, a
municipal corporation, acting by and through its
Director.  The Alternative Letter of Credit shall
have an original term of one (1) year, with automatic
extensions of the full amount required hereunder to
be maintained until the date five (5) years after the
Start Date.  The original of the Alternative Letter
of Credit shall be held by CITY throughout its term.
The Alternative Letter of Credit shall provide that
payment of the entire face amount of the letter of
credit, or any portion thereof, shall be made to the
CITY and County of San Francisco, upon presentation
of a written demand to the Bank signed by the
Director on behalf of the CITY and County of San
Francisco, accompanied by a copy of the demand for
performance delivered to CONTRACTOR and a copy of the
certified-mail-return-receipt-requested form.  If
CONTRACTOR defaults, as described in Section 1.19,
<u>Event of Default; Remedies</u>, of this Agreement with
respect to its obligation to supply and install the
Automatic Public Toilets required hereunder, CITY
may, but shall not be required to, make its demand
under the Alternative Letter of Credit for all or any
portion thereof to compensate CITY for any loss or
damage which CITY may have incurred by reason of
CONTRACTOR's default.  CITY shall present its written
demand to the Bank for payment under the Alternative
Letter of Credit only after the CITY shall have made
its demand for performance directly to CONTRACTOR by
certified mail, return receipt requested, and after
five (5) full business days have elapsed without
performance by CONTRACTOR.

F.   <u>Non-Extension of Letter of Credit Alternative;
Replacement</u>.  The Alternative Letter of Credit
permitted under this Section 1.11 shall provide for

sixty (60) days notice by the issuer to CITY in the event of termination or non-renewal of the Alternative Letter of Credit. Upon receipt of notice from the issuer that the Alternative Letter of Credit will not be renewed or extended, CITY may demand that CONTRACTOR replace the Alternative Letter of Credit within at least twenty (20) days prior to its expiration. If CONTRACTOR fails to do so, CITY shall be entitled to present its written demand for payment of the entire face amount of the Alternative Letter of Credit. Any amounts so received by CITY shall be held as cash collateral, in the manner provided in Paragraph G of Section 1.12, <u>Letter of Credit</u>, below, and shall be returned to CONTRACTOR upon replacement of the Alternative Letter of Credit.

1.12.  <u>Letter of Credit</u>. In addition to the guaranty of performance required hereunder pursuant to the provisions of Section 1.11, above, CONTRACTOR shall provide CITY with a letter of credit or Alternate Security (as hereinafter defined) according to the following terms and conditions, which shall constitute security for the faithful performance by CONTRACTOR of all terms, covenants, and conditions, including all monetary obligations set forth in this Agreement.

A.  <u>Amount and Term of Letter of Credit</u>. Subject to Paragraph G below, CONTRACTOR agrees that, in addition to the required guarantee of performance provided pursuant to Section 1.11, within seventy-two (72) hours after the Start Date of this Agreement, CONTRACTOR shall establish a confirmed irrevocable letter of credit in the amount of three hundred fifty thousand dollars ($350,000) in favor of the CITY and County of San Francisco, a municipal corporation, acting by and through its Department of Public Works. The letter of credit shall be established with a national or a California bank having at least one branch office within the CITY and County of San Francisco. The letter of credit shall have an original term of one (1) year, with automatic extensions of the full three hundred fifty thousand dollar ($350,000) amount to be maintained throughout the term of this Agreement. The original copy of the letter of credit shall be held by the CITY throughout the term of this Agreement.

B.  <u>Payment on Demand</u>. The letter of credit shall provide that payment of the entire face amount of the

letter of credit, or any portion thereof, shall be made to CITY, upon presentation of a written demand to the bank signed by Director of Public Works on behalf of CITY, accompanied by a copy of the demand for payment delivered to CONTRACTOR and a copy of the certified-mail-return-receipt-requested form, in accordance with Paragraph C below.

C.    Default of Contractor.  If CONTRACTOR defaults with respect to any provision of this Agreement, as described in Section 1.19, Event of Default; Remedies, of this Agreement, CITY may, but shall not be required to make its demand under the letter of credit for all or any portion thereof to compensate CITY for any loss or damage which the CITY may have incurred by reason of CONTRACTOR's default.  CITY shall present its written demand to the bank for payment under the letter of credit only after the CITY shall have made its demand for payment directly to CONTRACTOR by certified mail, return receipt requested, and after five (5) full business days have elapsed without payment by CONTRACTOR.  CITY need not terminate this Agreement in order to receive compensation for its damages hereunder.  If any portion of the letter of credit is so used or applied, CONTRACTOR, within twenty (20) business days after written demand therefor, shall reinstate the letter of credit to its original amount, and upon such reinstatement, the excess of the proceeds of the letter of credit over the amount of the loss or damage suffered by the CITY shall be returned to CONTRACTOR pursuant to Paragraph E below. CONTRACTOR's failure to comply with any of the provisions hereinabove shall constitute a material breach of this Agreement.

D.    Non-Extension of Letter of Credit Replacement.  The letter of credit shall provide for sixty (60) days notice by the issuer to CITY in the event of termination or non-renewal of the letter of credit. Upon receipt of notice from the issuer that the letter of credit will not be renewed or extended, CITY may demand that CONTRACTOR replace the letter of credit within at least twenty (20) days prior to its expiration.  If CONTRACTOR fails to do so, CITY shall be entitled to present its written demand for payment of the entire face amount of the letter of credit. Any amounts so received by CITY shall be held as cash collateral pursuant to Paragraph G below, and shall

be returned to CONTRACTOR upon replacement of the letter of credit.

E.   <u>Wrongful or Excessive Demand; Return of Receipts</u>.  If CITY receives any payments from the aforementioned bank under the letter of credit by reason of having made a wrongful or excessive demand for payment, CITY shall return to CONTRACTOR the amount by which CITY's total receipts from CONTRACTOR and from the bank under the letter of credit exceeds the amount to which CITY rightfully is entitled, together with interest thereon at the Reference Rate, but CITY shall not otherwise be liable to CONTRACTOR for any damages or penalties.

F.   <u>Return Upon Faithful Performance</u>.  The letter of credit  shall be returned to CONTRACTOR upon the termination of the Agreement, provided that the CONTRACTOR has faithfully performed throughout the duration of the Agreement and, upon termination of the Agreement, has removed all Automatic Public Toilets and Public Service Kiosks and has restored all affected CITY streets and sidewalks.

G.   <u>Alternate Security</u>.  In lieu of a letter of credit, CONTRACTOR may deposit $350,000 in cash, (referred to herein as "Alternate Security").  Any cash deposited with CITY as Alternate Security, or any cash proceeds of a draw upon a letter of credit posted hereunder which are in excess of the loss or damage suffered by the CITY shall be held in a segregated account separate from other funds held by CITY, and shall be invested by CITY, in the name of CITY, but for the account of CONTRACTOR, in one or more investments which are lawful for investments of public funds, but subject to a security interest in favor of CITY to secure payment of any loss or damage which CITY may incur by reason of CONTRACTOR's default hereunder. At the request of CITY, CONTRACTOR shall execute and deliver to CITY a security Agreement, in such form as CITY may reasonably request, a UCC-1 financing statement in proper form for filing and recording, and with respect to any Alternate Security, written notice satisfying the requirements of California Commercial Code Section 9302(1)(g)(ii)(or any successor section), to create and perfect such security interest. So long as CONTRACTOR is not in default hereunder, interest earned on any Alternate Security shall be disbursed to the CONTRACTOR no less than annually.

1.13.  <u>Maintenance and Complaint Log</u>.

    A.    <u>Maintenance Logs</u>.  CONTRACTOR shall prepare
maintenance logs as described in Section 5.04,
<u>Maintenance Schedule</u>, and submit to CITY copies of
the log for the preceding month within fifteen (15)
days after the end of every month during the first
six (6) months following completion of the
installation of the Automatic Public Toilets for
which permits were issued by the Start Date.
Thereafter, copies of such logs shall be provided
upon the request of the Director.  Unless less
frequent submittals are authorized by the Director,
CONTRACTOR shall also furnish to the Director within
thirty (30) days after the end of each calendar
quarter a narrative summary of its maintenance
operations during the preceding quarter, noting
problem areas, corrective actions taken, and the
number and cost of repairs attributable to Vandalism.

    B.    <u>Complaint Log</u>.  CONTRACTOR shall maintain and make
available to CITY a written complaint log in format
reasonably  acceptable to CITY.  The purpose of this
document will be to record complaints and/or
incidents that occur with respect to the Automatic
Public Toilets and Public Service Kiosks.  In
addition to the date, time, location, etc., the log
shall include disposition and final resolution of the
complaint.  Copies of this document will be submitted
to the CITY upon request.

1.14.  <u>Insurance</u>.

    A.    <u>Insurance Policies</u>.  CONTRACTOR shall maintain in
force, during the full term of this Agreement,
insurance as follows:

        (1)  Workers' Compensation, with Employers' Liability
limits not less than One Million Dollars ($1,000,000)
each accident;

        (2) Commercial General Liability Insurance, including
all coverages contained in an unamended I.S.O. 1988
Occurrence Form with limits not less than One Million
Dollars ($1,000,000) each occurrence Combined Single
Limit Bodily Injury and Property Damage.  Such form
includes Contractual Liability, Personal Injury,
Advertising Liability, Broad Form Property Damage,
Products and Completed Operations coverages; and

(3) Comprehensive Automobile Liability Insurance with limits not less than One Million Dollars ($1,000,000) each occurrence Combined Single Limit Bodily Injury and Property Damage, including owned, non-owned and hired auto coverages, as applicable.

(4) Excess Liability Coverage following the provisions of the insurance referred to in clauses (1), (2) and (3) above in the amount of Five Million Dollars ($5,000,000) per occurrence, Combined Single Limit, and Five Million Dollars ($5,000,000) in the aggregate for each annual policy period.

B.    Endorsements. Commercial General Liability and Comprehensive Automobile Liability Insurance policies shall be endorsed to provide the following:

(1) To name as additional insureds with respect to the operations of CONTRACTOR under this Agreement the CITY and County of San Francisco, its Department of Public Works, San Francisco Port Authority, and San Francisco Recreation and Park Department, and their officers, agents, and employees, and;

(2) To provide that such policies are primary insurance to any other insurance available to the additional insureds, with respect to any claims arising out of this Agreement, and that insurance applies separately to each insured against whom claim is made or suit is brought.

C.    Notice. All policies shall be endorsed to provide that there will be thirty (30) days advance written notice to CITY of cancellation, non-renewal or reduction in coverage, which shall be mailed to the following address:

Director of Public Works
Bureau of Street-Use and Mapping
Room 350, CITY Hall
San Francisco, CA 94102

D.    Condition Precedent. Certificates of insurance, satisfactory to CITY, evidencing all coverages above, shall be furnished to CITY before the Effective Date of this Agreement, with complete copies of policies to be delivered to CITY upon its request.

E.    Approval by CITY. Approval of insurance contracts required under this Agreement shall not relieve

CONTRACTOR, its subcontractors, consultants, successors or assigns, from the obligation to indemnify and hold harmless the CITY pursuant to Section 1.15, <u>Hold Harmless and Indemnification</u>, of this Agreement.

F.  <u>Copies of Policies and General Provisions</u>.  If at any time during the term of this Agreement CONTRACTOR fails to maintain the required insurance in full force and effect, CONTRACTOR shall discontinue immediately all work under the Agreement and shall not resume work until authorized by the Department of Public Works after having given proper notice that the required insurance has been restored to full force and effect and that the premiums therefor have been paid and are current.

G.  <u>Insurers</u>.  The insurance required herein shall be placed in a company or companies having policy holders' surplus of not less than ten (10) times the amount of coverage required hereunder.

H.  <u>Breach</u>.  In the event of any uncured breach of any provision of this Section 1.14, <u>Insurance,</u> or in the event that any insurance coverage required by this Agreement is cancelled or diminished in any way, during any period that any insurance coverage or endorsements required under this Section 1.14 is not in effect, CITY, in addition to any other remedies available under this Agreement or by law, and notwithstanding any other provision of this Agreement to the contrary, shall have the option, upon notice to the CONTRACTOR, to suspend the further exercise by CONTRACTOR of all rights and privileges granted to CONTRACTOR under this Agreement until such coverage is provided.

1.15.  <u>Hold Harmless and Indemnification</u>.

A.  CONTRACTOR shall indemnify, defend, and hold harmless CITY, its employees, officers, representatives, and agents from and against any claim, loss, damages, injury, expense, judgment or liability associated with the Automatic Public Toilets and Public Service Kiosks to the extent such claim, loss, damages, injury, expense, judgment or liability is caused either by defects in products supplied by CONTRACTOR hereunder or by the willful or negligent act or omission of CONTRACTOR, its employees, officers, representatives and agents.

B.  CITY shall indemnify, defend, and hold harmless CONTRACTOR, its employees, officers, representatives, and agents from and against any claim, loss, damages, injury, expense, judgment or liability associated with the Automatic Public Toilets and Public Service Kiosks to the extent such claim, loss, damages, injury, expense, judgment or liability is caused by the willful or negligent act or omission of CITY, its employees, officers, representatives and agents.

1.16.  Social Security, Unemployment Compensation.  CONTRACTOR, upon request, shall furnish to CITY adequate evidence of compliance with laws relating to Social Security and Unemployment Compensation.

1.17.  Notices; When Effective.  Notices, as herein provided, shall be given by either personal service or by first class mail and shall be addressed as follows:

          To CITY:              Director of Public Works
                                Bureau of Street-Use and Mapping
                                Room 350, CITY Hall
                                San Francisco, CA 94102

          To CONTRACTOR:        JCDecaux United Street Furniture, Inc.
                                249 Front Street
                                San Francisco, CA 94111

Notices shall be deemed effective upon delivery, if given by personal service, or, if by mail, three (3) days after deposit in the mail.  In the event of any change in the above mailing addresses, the affected party shall notify the other promptly in writing.

1.18.  Termination of Agreement.

A.  Termination Upon Expiration.  This Agreement shall terminate twenty (20) years from the Effective Date, as provided in Section 1.03, unless the Agreement has been extended as provided herein, including in Section 2.03, and unless terminated earlier as provided in this Section.

B.  Removal of Automatic Public Toilets and Public Service Kiosks Upon Termination.  Upon termination of this Agreement, CITY may direct CONTRACTOR to remove its Automatic Public Toilets and Public Service Kiosks and restore the respective sidewalks and curbs at CONTRACTOR's own cost and expense, and CONTRACTOR shall promptly thereafter file applications for the

necessary permits to do so.  CONTRACTOR shall
complete such removal and restoration within one
hundred twenty (120) days of the issuance of such
permits.  If CONTRACTOR fails to complete such
removal and restoration within said one hundred
twenty (120) day period, CITY, without further notice
and at CONTRACTOR's cost and expense, may remove the
Automatic Public Toilets and Public Service Kiosks
and restore the sidewalks and curbs.  CITY shall
promptly issue permits for removal of Automatic
Public Toilets and/or Public Service Kiosks whenever
such removal is required hereunder.

C.    <u>Termination for Default</u>.  In the event of any uncured
default by either party to this Agreement, as defined
in Section 1.19, <u>Event of Default; Remedies</u>, the
non-breaching party shall have the option to
terminate the Agreement as provided therein.

D.    <u>Termination For Delays in Start Date</u>.  In the event
that the Start Date has not occurred within two (2)
years of the Effective Date, CONTRACTOR, at its
option, may at any time after the end of said two (2)
year period, but in no event later than the Start
Date, elect to terminate this Agreement upon sixty
(60) days notice to CITY during which period CITY
shall have an opportunity to cure said delay.  In the
event CITY fails to achieve the Start Date within
said sixty (60) day period, this Agreement shall
terminate without further notice and the parties
shall be discharged from any and all obligations
hereunder without penalty or liability, except for
liability for breach of this Agreement arising prior
to the date of such termination.

E.    <u>Termination for Delays in Issuance of Permits for
Initial Phase</u>.  If, through no fault of CONTRACTOR,
CITY has not issued permits for all of the Automatic
Public Toilets in the Initial Phase by the date one
(1) year after the Start Date, then CONTRACTOR, at
its option, may at any time after the end of said one
(1) year period, but in no event later than the date
three (3) years after the Start Date, elect to
terminate this Agreement upon sixty (60) days notice
to CITY during which period CITY shall have an
opportunity to cure said delay.  In the event CITY
fails to issue permits for all such Automatic Public
Toilets within said sixty (60) day period, this
Agreement shall terminate without further notice and
the parties shall be discharged from any and all

obligations hereunder without penalty or liability, excepting liability for breach of this Agreement arising prior to the date of such termination and excepting also CONTRACTOR's obligations pursuant to Paragraph B of this Section 1.18.

F.  <u>Change in Laws</u>.  If CITY, the State of California, the federal government or any other governmental agency should adopt a change in laws or regulations, including Department of Public Works Orders, applicable to the Automatic Public Toilets, Public Service Kiosks or the use of the Public Service Kiosks for advertising, which significantly affects CONTRACTOR's ability to sell advertising, significantly restricts the areas in which the Public Service Kiosks (including the advertising to be placed thereon) are permitted, or significantly increases the cost of operation, including the cost of manufacture or installation of new Automatic Toilets or Public Service Kiosks, but excluding any tax or change in business regulation of general applicability, then at the request of CONTRACTOR, CITY and CONTRACTOR shall negotiate in good faith possible modifications to this Agreement to compensate for the effect of such change.  In no event shall CITY be required to agree to any particular modification of this Agreement.  If no modification of the Agreement  satisfactory to CONTRACTOR is agreed upon after one hundred twenty (120) days, CONTRACTOR may, at its option, elect to terminate this Agreement upon ninety (90) days notice to CITY.

1.19.  <u>Event of Default; Remedies</u>.

A.  <u>Default of Contractor</u>.  In the event that CONTRACTOR shall fail to comply with or carry out any material term, covenant, condition, or promise herein set forth, CITY may elect to serve upon CONTRACTOR a First Notice of Default.  If CONTRACTOR fails to cure such default within thirty (30) days after receipt of said notice, or, if such default cannot be cured within such period, if CONTRACTOR does not commence to cure within such thirty (30) days and thereafter diligently pursue such cure to completion, then CITY may elect to serve upon CONTRACTOR a Second Notice of Default.  If CONTRACTOR fails to cure such default within twenty (20) days after receipt of said Second Notice of Default, or if such default cannot be cured within such period, CONTRACTOR does not commence to

cure such default and thereafter diligently pursue
such cure to completion, then CITY may elect to
terminate this Agreement.  Termination shall be
effective after ten (10) days written notice to
CONTRACTOR.  CONTRACTOR shall undertake no new work
after the date of receipt of any notice of
termination or five days after the date of the
notice, whichever date is earlier.

B.    <u>Bankruptcy or Reorganization Proceedings</u>.  CONTRACTOR
shall be deemed to be in default of this Agreement in
the event that CONTRACTOR shall cease conducting
business in the normal course, become insolvent, make
a general assignment for the benefit of creditors,
suffer or permit the appointment of a receiver for
its business or assets or shall avail itself of , or
become subject to, any proceeding under the Federal
Bankruptcy Act or any other statute of any state of
these United States or any other foreign country
relating to the insolvency or the protection of
rights of creditors, then at the option of the other
party, this Agreement shall terminate and be of no
further force and effect, and any property or rights
of such other party, tangible or intangible, shall
forthwith be returned to it.  Upon the occurrence of
any of the foregoing events, the CITY shall have the
right to terminate this Agreement forthwith and
CONTRACTOR or its successor in interest by operation
of law or otherwise shall thereafter have no rights
in or to this Agreement or to any of the privileges
herein conferred.

C.    <u>Option to Demand Payment on Letter of Credit;</u>
<u>Performance Bond</u>.  In the event of a default by
CONTRACTOR under this Agreement which causes CITY to
suffer any loss or damage, whether or not said
default is timely cured, CITY shall be entitled to
demand the immediate payment of the full amount of
the letter of credit as provided in Section 1.12,
<u>Letter of Credit</u>, of this Agreement, from which the
CITY may be compensated for said loss or damages
incurred as a result of CONTRACTOR's failure to
comply with the Agreement, including but not limited
to the CITY's costs of operating and maintaining the
Automatic Public Toilets and Public Service Kiosks in
the event of CONTRACTOR's default.  If CONTRACTOR has
not fulfilled its obligations to install any
Automatic Public Toilets in the Initial Phase at the
time of said default, the CITY shall also be entitled
to make a demand on CONTRACTOR's performance bond or

other guarantee of performance, as provided in
Section 1.11, <u>Performance Bond</u>, of this Agreement, in
addition to any other remedies available in law or
equity.

D.    <u>Default of CITY</u>.   In the event that the CITY shall
fail to comply with or carry out any material term,
covenant, condition, or promise herein set forth,
CONTRACTOR may elect to serve upon CITY a Notice of
Default.  If the CITY fails to cure such default
within thirty (30) days after receipt of said notice,
or, if such default cannot be cured within such
period, if CITY does not commence to cure within such
thirty (30) days and thereafter diligently pursue
such cure to completion, then CONTRACTOR may elect to
serve upon CITY a Second Notice of Default.  If CITY
fails to cure such default within twenty (20) days
after receipt of said Second Notice of Default, or,
if such default cannot be cured within such period,
CITY does not commence to cure such default and
thereafter diligently pursue such cure to completion,
then CONTRACTOR may elect to terminate this
Agreement.  Termination shall be effective after ten
(10) days written notice to the CITY.  CONTRACTOR
shall then be entitled to the return of its letter of
credit or Alternate Security and any performance
bond, in addition to any other remedies available in
law or equity.

E.    <u>Actual Damages</u>.  In the event that either party
serves a Notice of Default on the other and such
default is subsequently cured, the non-defaulting
party shall nevertheless be entitled to recover from
the defaulting party any loss or damage which the
non-defaulting party may have incurred by reason of
such default.  Each party shall have available to it
the remedies provided for in this Section 1.19 as
well as all remedies available in law and equity, to
resolve its claim for loss or damage.

F.    <u>Rights of Parties Accrued Prior to Termination</u>.
Termination of this Agreement shall not in any way
affect the rights and obligations of the parties with
respect to damages or amounts payable to the other
party which have accrued prior to such termination.

G.    <u>Other Remedies</u>.  The exercise of the remedies
provided for in this Section 1.19 shall be cumulative
and shall in no way affect any other remedy the
parties may have available in law or equity.   The

exercise by either party of any of the options set
forth in this paragraph by commencement of legal
proceedings, audit, or otherwise, shall not be deemed
a waiver of its right to exercise any other option
provided herein.

H.   <u>No Termination for Certain Defaults</u>.  Notwithstanding
any other provision of this Agreement, the CITY shall
not have the right to terminate this Agreement due to
any failure of the CONTRACTOR to comply with the
provisions of Section 7.11, below, but may exercise
any or all other remedies as provided in Section 7.11
or as are otherwise available in law or equity.

1.20.  <u>No Waiver of Subsequent Breaches or Defaults</u>.

The failure of either party to insist upon a strict
performance of any of the terms, conditions and covenants
herein by the other party shall not be deemed a waiver of
any subsequent breach or default in the terms, conditions
and covenants herein contained.

1.21.  <u>Subcontracting</u>.

CITY grants CONTRACTOR the authority to hire such
subcontractors as CONTRACTOR deems necessary to fulfill
the requirements detailed in this Agreement, provided if
an MBE/WBE subcontractor is unable to perform successfully
and is to be replaced, CONTRACTOR will be required (i) to
give prompt notice thereof to the CITY and, (ii) make good
faith efforts to replace the original MBE/WBE
subcontractor with another MBE/WBE subcontractor, pursuant
to Section 7.11, <u>Equal Employment Opportunity and Business
Practices</u>, below.

1.22.  <u>Audited Financial Report</u>.

On or before the first (1st) day of the fifth (5th)
calendar month of the CONTRACTOR's succeeding fiscal year
for the duration of this Agreement, CONTRACTOR shall
submit to CITY, through its Director, copies of
CONTRACTOR's annual Audited Financial Statements, audited
by an independent certified public accountant.  CITY shall
also be entitled to audit CONTRACTOR's books pertaining to
the Automatic Public Toilet program on demand.

1.23.  <u>Initial Capital</u>.

As of the Start Date, CONTRACTOR shall have shareholders'
equity capital, calculated in accordance with generally
accepted accounting principles, of at least One Million
Five Hundred Thousand Dollars ($1,500,000) and shall
provide to CITY within forty-five (45) days after the
Start Date a certificate to that effect audited by an
independent certified public accountant.

1.24.  <u>Guaranty of Obligation</u>.

CONTRACTOR shall, prior to the Effective Date, provide a
guaranty of its obligation to install the Automatic Public
Toilets in the Initial Phase, as provided hereunder from
JCDecaux USA, which guaranty shall be substantially in the
form attached hereto as Appendix E.

Part 2.  **Automatic Public Toilet Installation.**

2.01.  <u>Installation of Automatic Public Toilets</u>.

A.  CONTRACTOR shall install Automatic Public Toilets
only for which (i) the design complies with the
requirements of Section 2.08, Automatic Public Toilet
Design, below, (ii) all required permits have been
issued and all applicable fees have been paid by
CONTRACTOR, and  (iii) locations have been determined
pursuant to Section 2.05, Locations and Sites of
Automatic Public Toilets, below.  CONTRACTOR shall be
and shall keep fully informed of the CITY Charter,
codes, ordinances and regulations and of all state,
local and federal laws in any manner affecting the
performance of this Agreement, including but not
limited to local and state planning, public works,
electrical, plumbing and other applicable codes, and
shall at all times comply with said codes.  Citation
of specific code sections in this Agreement shall not
exonerate CONTRACTOR from its obligation of
compliance with all applicable local, state, federal
laws and ordinances.

B.  CONTRACTOR agrees that it shall neither have nor
acquire any possessory interest in any property on
which an Automatic Public Toilet has been installed
pursuant to this Agreement.

2.02.  <u>Permit Approvals Required for Automatic Public Toilets</u>.

    A.    CONTRACTOR must obtain all applicable permits and pay all required permit fees before proceeding with installation of any Automatic Public Toilet.  Within five (5) days following the Effective Date of this Agreement, the Director shall notify CONTRACTOR to commence work under this Agreement (the "Notice to Proceed").  Unless otherwise directed by the Director, within ninety (90) days after the Director has issued the Notice to Proceed, CONTRACTOR shall submit to the Department of Public Works location drawings for the twenty-seven (27) Automatic Public Toilet sites in the Initial Phase described in Appendix B, or substitute sites designated by the Director, together with an encroachment permit fee of three hundred fifty dollars ($350) for each Automatic Public Toilet.  The Department of Public Works shall review each location drawing, inspect each location and site and, if required, hold public hearings on each proposed Automatic Public Toilet location and site, and thereafter, unless the location is determined by the CITY to be unsuitable for installation of an Automatic Public Toilet, shall approve and issue encroachment and excavation permits for each proposed Automatic Public Toilet site.  If a location is determined to be unsuitable, no additional encroachment permit fee shall be payable for substitute sites.

    B.    Where any Automatic Public Toilet is to be installed on Port Property, CONTRACTOR shall submit location drawings to the PORT's Chief Harbor Engineer, together with an encroachment permit fee of three hundred fifty dollars ($350) for each such Automatic Public Toilet, and the PORT (in lieu of the Department of Public Works) shall, as required or as necessary, review such drawings, conduct inspections and hold public hearings in accordance with the terms of this Agreement.  CONTRACTOR shall obtain building permits from the PORT's Chief Harbor Engineer prior to any Automatic Public Toilet installation on Port Property.  No PORT building permit fee shall be payable for such sites on Port Property.

2.03.  <u>CITY Review of Plans and Submittals</u>.  If CONTRACTOR has faithfully submitted site plans as required by this Agreement, CITY agrees (i) to use its best efforts to review and, if appropriate, approve permits for

installation of the Initial Phase within six (6) months of
CONTRACTOR's initial submittals, and (ii) if the Start
Date has not occurred within three (3) months after the
Effective Date, the term of this Agreement shall be
extended on a day-for-day basis until the Start Date has
occurred.  A reasonable schedule for submitting site plans
to the Department for additional Automatic Public Toilets,
if required by the CITY in accordance with Section 2.04C,
shall be jointly determined by the parties.

2.04.    Automatic Public Toilets Required To Be Installed.

    A.    CONTRACTOR agrees to install Automatic Public Toilets
in accordance with this Agreement within the
following limits:

    B.    Initial Phase.  CONTRACTOR shall provide twenty-seven
(27) Automatic Public Toilets under this Agreement
during the Initial Phase.  CONTRACTOR shall complete
the installation of the first twenty (20) Automatic
Public Toilets within six (6) months of the Start
Date.  CONTRACTOR shall complete the installation of
the remaining Automatic Public Toilets in the Initial
Phase in three (3) sub-phases, installing two (2)
Automatic Public Toilets in each of the first two (2)
such sub-phases and three (3) Automatic Public
Toilets in the remaining such sub-phase within six
(6) months  after the issuance of all applicable
permits for all of the Automatic Public Toilets (and
associated Public Service Kiosks) in that sub-phase.
There shall be ninety (90) Public Service Kiosks
installed within the first six (6) months of the
Start Date, nine (9) Public Service Kiosks in each of
the first two (2) sub-phases, and thirteen (13)
Public Service Kiosks installed in the remaining such
sub-phase as described herein.

    C.    Maximum Requirement.  The CITY, at its sole
discretion, but subject to the terms and conditions
of this Agreement, including without limitation
Section 3.05, Locations and Sites of Public Service
Kiosks, Paragraph B, Additional Public Service Kiosk
Locations, may require CONTRACTOR to provide up to a
maximum of fifty (50) Automatic Public Toilets
(inclusive of the twenty-seven (27) Automatic Public
Toilets in the Initial Phase) during the term of the
Agreement; provided, however, that (i) CONTRACTOR may
not be required to provide any Automatic Public
Toilets in excess of those in the Initial Phase until
at  least one (1) year after the completion of the

installation of the Initial Phase, (ii) CONTRACTOR shall not be required to install more than eight (8) of such additional Automatic Public Toilets in any one (1) year, and (iii) CITY shall exercise its option to require such additional Automatic Public Toilets, if at all, by the date five (5) years after the Start Date.  If CITY does not exercise its option to require a total of fifty (50) Automatic Public Toilets by the date five (5) years after the Start Date, but thereafter wishes to increase the number of Automatic Public Toilets up to said total, then CITY and CONTRACTOR shall negotiate in good faith a possible modification to this Agreement only as to an extension of the term of the Agreement.

2.05.  <u>Locations and Sites of Automatic Public Toilets</u>.  CITY shall designate the locations for all Automatic Public Toilets.  CONTRACTOR shall install the Automatic Public Toilets at locations designated and approved in accordance with this Section 2.05.

    A.  <u>Initial Phase</u>.  A preliminary list of locations for the Automatic Public Toilets in the Initial Phase prepared by CITY is attached as Appendix B.  In the event any of the locations listed in Appendix B are determined by the CITY to be unsuitable for Automatic Public Toilet installation prior to the issuance of permits therefor, or are disapproved by CONTRACTOR pursuant to Paragraph C of this Section 2.05, then the CITY shall designate an equal number of alternate locations.

    B.  <u>Additional Automatic Public Toilet Locations</u>.  If CITY elects to require the installation of additional Automatic Public Toilets pursuant to Section 2.04, <u>Automatic Public Toilets Required To Be Installed</u>, Paragraph C, <u>Maximum Requirement</u>, above, or orders or permits the relocation of any Automatic Public Toilet in accordance with this Agreement, CITY shall designate locations for installation of those additional Automatic Public Toilets, as provided herein.

    C.  <u>Review and Approval of Automatic Public Toilet Locations</u>.  CITY and CONTRACTOR shall inspect the proposed locations and exchange information regarding the suitability of each such location for an Automatic Public Toilet.  CITY acknowledges that the installation of the Automatic Public Toilets requires clear space of at least three and one-half feet (3-

1/2') below the surface of the slab.  If a proposed location will not provide the clear space necessary for the installation of the Automatic Public Toilet, CONTRACTOR may disapprove the location and CITY shall designate a substitute location.  Except as provided in Paragraph D of this Section 2.05, CONTRACTOR shall be obligated to incur a maximum cost of Twenty-Thousand Dollars ($20,000) for each Automatic Public Toilet for the cost of utility connections, including sewer, electrical, water and telephone connections, the costs of any trenching and street restoration required in connection with such utility connections and costs of extraordinary site preparation, such as demolition of existing structures or construction of a sidewalk bulb.  In the event that such costs would exceed a total of Twenty-Thousand Dollars ($20,000), CONTRACTOR may disapprove the location, and CITY shall designate a substitute location.

D.   If CITY elects to require CONTRACTOR to install Automatic Public Toilets on Port Property where CONTRACTOR will encounter special site conditions, CONTRACTOR shall be obligated to incur a maximum cost of Forty-Thousand Dollars ($40,000) for each of two (2) such Automatic Public Toilets on Port Property, for the cost of utility connections, including sewer, electrical, water and telephone connections, the costs of any excavation or restoration required in connection with such utility connections and the costs of extraordinary site preparation, such as making utility connections on piers.  In the event that such costs would exceed a total of Forty-Thousand Dollars ($40,000), CONTRACTOR may disapprove the location and the CITY may designate a substitute location.

E.   Specific Sites.  CONTRACTOR shall present site plans showing the precise site of the Automatic Public Toilet to the Department of Public Works for approval as more specifically required in Section 2.10, Location Drawings and Engineering Plans for Automatic Public Toilets, which approval shall not be unreasonably withheld.  At some locations, the Automatic Public Toilet may be installed on a new sidewalk bulb to be constructed by CONTRACTOR, subject to CITY approval and upon the conclusion of proper street encroachment proceedings; provided, however, that any additional fees payable to the CITY as a result of such bulb shall count against the

twenty-thousand-dollar ($20,000) maximum cost
referred to in Paragraph C above.  Without limitation
on the provisions of Paragraph C, <u>Review and Approval
of Automatic Public Toilet Locations</u>, above, if
CONTRACTOR finds a location to be unsuitable or
infeasible as a site for installation of an Automatic
Public Toilet, CONTRACTOR may appeal to the Director
for abandonment of that location and for a substitute
location.

2.06.  <u>Relocation of Automatic Public Toilets</u>.  CONTRACTOR may
not relocate or remove an Automatic Public Toilet without
the CITY'S permission.  The CITY may, at the order of the
Director, direct the relocation of up to one (1)
Automatic Public Toilet in any twelve-month period (non-
cumulative) for which CONTRACTOR will bear the full cost
of removal and relocation, subject to Section 5.11,
<u>Relocation Costs</u>, below.  In the event that the terms and
conditions of Section 5.11, <u>Relocation Costs</u>, are met and
CONTRACTOR fails to remove and relocate an Automatic
Public Toilet within the time directed by the CITY, CITY
may, at its sole discretion, cause the removal and storage
or relocation of said Automatic Public Toilet and recover
any and all costs incurred from CONTRACTOR as provided in
Section 1.12, <u>Letter of Credit</u>, Paragraph C. <u>Default of
Contractor</u>.  Any costs not so recovered shall be paid
directly to CITY by CONTRACTOR upon the invoice therefor.
CONTRACTOR may also, with the CITY's permission, elect to
relocate and remove any Automatic Public Toilet, for which
CONTRACTOR shall bear the full cost of removal and
relocation, including sidewalk and curb repair if the same
is affected by the removal.  The new location of any such
relocated Automatic Public Toilet shall be determined in
accordance with Section 2.05, <u>Locations and Sites of
Automatic Public Toilets</u>, Paragraph C, <u>Review and Approval
of Automatic Public Toilet Locations</u>, above.  In the event
the Port Director directs CONTRACTOR to remove any
Automatic Public Toilet on Port Property, CONTRACTOR shall
remove such toilet within seventy-two (72) hours
(excluding Sundays and holidays) provided that the PORT
has at the time of removal issued permits for installation
at another location for the Automatic Public Toilet, which
location shall have been approved by CONTRACTOR under the
terms of this Agreement.  Such removal and relocation
shall be subject to the limits set forth above in this
Section 2.06 and in Section 5.11, <u>Relocation Costs</u>.

2.07.  <u>Clearance Requirements for Automatic Public Toilets</u>.  All
Automatic Public Toilets, wherever located, shall be
placed in accordance with the terms of Department of

by the Director, and as modified from time to time by subsequent Director's orders.    After the installation of an Automatic Public Toilet, CITY shall use its best efforts not to place any new structures or obstacles within the specified clearance area or which would obstruct the access to such Automatic Public Toilet.    If after the installation of the Automatic Public Toilet, CITY shall place any new structures or obstacles within the specified clearance area, CONTRACTOR shall not be required to relocate that Automatic Public Toilet to accommodate the CITY's structure, except as provided in Section 2.06, <u>Relocation of Automatic Public Toilets</u>, above.

2.08.  <u>Automatic Public Toilet Design</u>.    Subject to the provisions of this Section 2.08 and Section 2.09, Approval of Other Agencies, below, CONTRACTOR shall design, construct, and install the Automatic Public Toilets contracted for under this Agreement in conformity with the plans and specifications attached hereto as Appendix C.    Such plans and specifications may be modified by the CONTRACTOR, only with the prior written approval of the Director.    Such approval shall not be unreasonably withheld if the proposed change does not materially affect the external appearance or the disabled access requirements of the Automatic Public Toilets or adversely affect the operation of the Automatic Public Toilets.    The two (2) display panels on the Automatic Public Toilets shall be illuminated during nighttime hours.    CONTRACTOR shall also create, reproduce and install on one side of each Automatic Public Toilet, on display panels which may be illuminated, a map of the CITY and County of San Francisco, which shall have been approved by the CITY, which approval shall not be unreasonably withheld or delayed.    CONTRACTOR shall create, reproduce and install on one side of each Automatic Public Toilet located on Port Property, a map of the waterfront of the CITY, which shall have been approved by the Port Director, which approval shall not have been unreasonably withheld or delayed. All such maps to be created and installed by CONTRACTOR shall be based on information which shall have been provided to CONTRACTOR by the CITY and the Port Director.    CONTRACTOR shall update said maps at least every six (6) years.

2.09.  <u>Approval of Other Agencies</u>.

    A.    <u>Approval of Recreation and Park Commission -- When Required</u>.    Additional locations of Automatic Public Toilets on real property owned by or under the

jurisdiction of or fronting the property of the San Francisco Recreation and Park Department shall be subject to review and approval by the Recreation and Park Commission.

B.    Approval of Port Commission; Bay Conservation Development Commission -- When Required. Locations of Automatic Public Toilets on real property owned by or under the jurisdiction of the Port of San Francisco shall be subject to review and approval by the Port Commission. In addition, any such additional locations within one hundred feet (100') of the San Francisco Bay shoreline shall be reviewed by the Bay Conservation and Development Commission.

C.    Approval of Port Director -- When Required. Location, relocation or removal of any Automatic Public Toilet on Port Property shall be subject to the review and approval of the Port Director and of Port engineering staff (in lieu of the Department of Public Works), in accordance with this Agreement.

2.10.    Location Drawings and Engineering Plans for Automatic Public Toilets. Location drawings shall contain a twenty feet (20') to one inch (1") scale (20:1 scale) representation of the proposed Automatic Public Toilet site covering the area from the property line to the street centerlines at the nearest intersection. Mid-block sites can be shown with broken line ties. The drawing also shall give all necessary street dimensions, such as sidewalk width and street width, and denote all surface and subsurface structures, including hydrants, utility poles and catch basins, subsidewalk basements, transit shelters, bus stops and their accurate positions. After approval of a particular location (including any required public hearing), CONTRACTOR must also submit to the Department of Public Works engineering plans showing sewer connections, water service connections, electrical service connections and foundation details for each Automatic Public Toilet, which plans must be stamped and signed by an engineer registered with the State of California. CONTRACTOR is responsible for identifying all utility lines located beneath the Automatic Public Toilet and for showing all such utility lines on the location drawing and notifying underground service alert prior to any excavation. Under this Agreement, the CITY must approve the location and engineering drawings and issue encroachment and excavation permits before CONTRACTOR may commence work on a particular site or location.

2.11.   <u>Electrical, Sewage, Telephone and Water Services;</u>
<u>Installation</u>.   Subject to Paragraph C below, CONTRACTOR
shall bear the full cost of the connection of the
Automatic Public Toilets to water supply and electrical,
sewer and telephone services, and the operating charges
for water supply and electrical, sewer and telephone
service charge to each Automatic Public Toilet.   If
feasible, CITY shall permit CONTRACTOR to utilize the
CITY's electrical system, in which event CONTRACTOR shall
pay the same rate charged to CITY agencies.

    A.   <u>Electrical Connections and Related Work</u>.   CONTRACTOR
shall arrange and perform all internal electrical
components and hook-up procedures in accordance with
the San Francisco Electrical Code.   All electrical
service lines in each Automatic Public Toilet site
shall be underground and shall originate from the
point-of-services designated by CITY or by Pacific
Gas & Electric Company ("PG&E").   CONTRACTOR shall
contact PG&E and arrange for additional service not
provided by CITY and shall pay CITY or PG&E directly
for all charges for service connections and
electricity.

    B.   <u>Sewage, Water Service and Drainage</u>.   CONTRACTOR shall
contact the San Francisco Water Department and
arrange for water service and shall pay the San
Francisco Water Department for all charges for
service connections and water use.   CONTRACTOR shall
arrange and perform sewer hook-up procedures in
accordance with the San Francisco Plumbing Code.
CONTRACTOR shall contact the Department of Public
Works to establish sewer service and to arrange to
pay for all sewer service charges.

    C.   <u>Unanticipated Conditions</u>.   In the event that during
the installation of any Automatic Public Toilet, the
CONTRACTOR encounters unanticipated conditions beyond
its reasonable control which would significantly
increase the cost of installation of the Automatic
Public Toilet, CONTRACTOR, upon notice to the CITY,
may restore the work area to its pre-installation
condition, and an alternate location for the
Automatic Public Toilet shall be designated in
accordance with Section 2.05 of this Agreement.

2.12.   <u>Restoration of Sites</u>.   When each Automatic Public Toilet
installation is complete, CONTRACTOR shall remove all
excess materials and restore the work area.

Part 3.   <u>Public Service Kiosk License.</u>

3.01.   <u>Installation of Public Service Kiosks.</u>

A.    CONTRACTOR shall have the right, subject to the terms and conditions of this Agreement, to install Public Service Kiosks only for which (i) the design complies with the requirements of Section 3.08, <u>Public Service Kiosk Design</u>, (ii) all required permits have been issued, and (iii) locations have been determined pursuant to Section 3.05, <u>Location and Sites of Public Service Kiosks</u>, and all applicable fees have been paid by the CONTRACTOR.   CONTRACTOR shall be and shall keep fully informed of the CITY Charter, codes, ordinances and regulations and of all state, local and federal laws in any manner affecting the performance of this Agreement, including but not limited to local and state planning, public works, electrical, plumbing and other applicable codes, and shall at all times comply with said codes.   Citation of specific code sections in this Agreement shall not exonerate CONTRACTOR from its obligation of compliance with all applicable local, state, federal laws and ordinances.

B.    CONTRACTOR agrees that it shall neither have nor acquire any possessory interest in any property on which a Public Service Kiosk has been installed pursuant to this Agreement.

3.02.   <u>Permit Approvals Required For Public Service Kiosks.</u>

A.    CONTRACTOR must obtain all applicable permits before proceeding with installation of any Public Service Kiosk.   Within ninety (90) days after the Director has issued the Notice to Proceed, CONTRACTOR shall submit to the Department of Public Works location drawings for one hundred twenty one (121) Public Service Kiosks in the Initial Phase, together with an encroachment fee of Three Hundred Fifty Dollars ($350) for each Public Service Kiosk.   The Department of Public Works shall review each location drawing, and inspect each location and site and hold public hearings, if required, on each proposed Public Service Kiosk location and site, and thereafter, unless the site is determined to be unsuitable for installation of a Public Service Kiosk, shall approve and issue encroachment and excavation permits for each proposed Public Service Kiosk site.   CITY shall use its best efforts to assist CONTRACTOR to receive

permit approvals from any applicable state or regional agencies with jurisdiction over any particular locations, including BCDC and CalTrans.

B.   Where any Public Service Kiosk is to be installed on Port Property, CONTRACTOR shall submit location drawings to the PORT's Chief Harbor Engineer, together with an encroachment fee of Three Hundred Fifty Dollars ($350) for each Public Service Kiosk, and the PORT (in lieu of the Department of Public Works) shall, as required or as necessary, review such drawings, conduct inspections and hold public hearings in accordance with this Agreement. CONTRACTOR shall obtain building permits from the PORT's Chief Harbor Engineer prior to any Public Service Kiosk installation on Port Property.   No PORT building permit fee shall be payable for such sites on Port Property.

3.03.   <u>CITY Review of Plans And Submittals</u>.   If CONTRACTOR has faithfully submitted site plans as required by this Agreement, CITY agrees to use its best efforts to review and, if appropriate, approve permits for installation of the Initial Phase within six (6) months of CONTRACTOR's initial submittals, all in accordance with Section 2.03 of this Agreement.   A reasonable schedule for submitting site plans to the Department for additional Public Service Kiosks, if additional Automatic Public Toilets are required by the CITY in accordance with the Section 2.04C, shall be jointly determined by the parties.

3.04.   <u>Number of Public Service Kiosks Permitted</u>.   CONTRACTOR shall have the right to install, operate and maintain Public Service Kiosks at a ratio of no more than four and one-half (4.5) Public Service Kiosks for each one (1) Automatic Public Toilet provided pursuant to this Agreement.   CONTRACTOR shall not display advertising on any Public Service Kiosks pursuant to this Agreement, on or before the date CONTRACTOR completes installation of the associated Automatic Public Toilet under this Agreement.   In the Initial Phase of the Agreement, CONTRACTOR shall have the right to install a maximum of one hundred twenty one (121) Public Service Kiosks at a ratio of no more than 4.5 kiosks to each Automatic Public Toilet installed pursuant to this Agreement. Thereafter, except as expressly provided by the terms of this Agreement, CONTRACTOR shall have the right to install additional Public Service Kiosks at no more than the ratio set forth herein.   If an odd number of additional

Automatic Public Toilets in excess of those in the Initial
Phase is required, the permitted number of associated
Public Service Kiosks shall be rounded up to the next
whole number.

3.05. <u>Locations and Sites of Public Service Kiosks</u>.

A.   <u>Initial Phase</u>. The CITY retains the right to approve
the locations of all Public Service Kiosks proposed
by CONTRACTOR, which approval shall not be
unreasonably withheld. In the event one or more
locations for the Public Service Kiosks proposed by
CONTRACTOR are disapproved by CITY, then CITY and
CONTRACTOR shall cooperate to identify suitable
alternate locations for installation of the Public
Service Kiosks, within the same general area if
possible. Permits shall not be issued for any
location unless and until CITY and CONTRACTOR have
mutually agreed upon such location. Of the one
hundred twenty one (121) Public Service Kiosks in the
Initial Phase, at least one hundred ten (110) shall
be located in the Downtown Area, and of those, at
least forty (40) shall be located on Market Street,
unless CONTRACTOR otherwise agrees. If CONTRACTOR
finds any previously approved location to be
unsuitable or infeasible as a site for a Public
Service Kiosk, CONTRACTOR may appeal to the Director
for abandonment of that location and may propose an
alternate or substitute location, which shall be
subject to the CITY's approval according to the
provisions of this Paragraph. Any substitution of
locations for Public Service Kiosks shall not change
the ratio of Public Service Kiosks to Automatic
Public Toilets authorized by this Agreement.

B.   <u>Additional Public Service Kiosk Locations</u>. If CITY
elects to require the installation of additional
Automatic Public Toilets pursuant to Section 2.04,
Paragraph C, or orders or permits the relocation of
any Public Service Kiosk CONTRACTOR may, within
thirty (30) days of notice of such action or order by
CITY, propose locations for additional Public Service
Kiosks in the ratio set forth above. The CITY
retains the right to approve the locations for all
such Public Service Kiosks proposed by CONTRACTOR,
which approval shall not be unreasonably withheld.
In the event one or more locations for the Public
Service Kiosks proposed by CONTRACTOR are disapproved
by the CITY, then CONTRACTOR and CITY shall cooperate
to identify suitable alternate locations for

installation of the Public Service Kiosks. Permits shall not be issued for any location until CITY and CONTRACTOR have mutually agreed upon such location. Of the additional locations approved pursuant to this Section 3.05B, approximately fifty-eight percent (58%) (60 of the total possible 104 additional Public Service Kiosks) shall be located in the Downtown Area, and of those, approximately seventeen percent (17%) (10 of the 60 additional Public Service Kiosks located in the Downtown Area) shall be located on Market Street, unless CONTRACTOR otherwise agrees. Any Public Service Kiosks relocated pursuant to Section 3.06, if previously located in the Downtown Area shall be relocated in the Downtown Area, and if previously located on Market Street shall be relocated on Market Street, except with the consent of CONTRACTOR. If CONTRACTOR finds any previously approved location to be unsuitable or infeasible as a site for a Public Service Kiosk, CONTRACTOR may appeal to the Director for abandonment of that location and may propose an alternate or substitute location, which shall be subject to the CITY's approval according to the provisions of this Paragraph. <u>Any substitution of locations for Public Service Kiosks shall not change the ratio of the Public Service Kiosks to Automatic Public Toilets authorized by this Agreement</u>.

C.    <u>Specific Sites</u>. CONTRACTOR shall be responsible for determining the precise site, and the orientation of the advertising and public service panels, for each Public Service Kiosk at the designated location and to present site plans to the Department of Public Works for approval in the manner provided in Section 3.10, <u>Location Drawings and Engineering Plans for Public Service Kiosks</u>.

3.06.  <u>Relocation of Public Service Kiosks</u>. CONTRACTOR may not relocate or remove a Public Service Kiosk without CITY'S permission. CITY does not guarantee any specific location or site for the duration of this Agreement. Subject to the provisions of Section 5.11 below, CITY may request CONTRACTOR to remove or relocate up to three (3) Public Service Kiosks in any twelve-month period (non-cumulative) because of private development, public works projects, public convenience or any other reason, for which CONTRACTOR shall bear the full cost of removal and relocation, including sidewalk and curb repair if the same is affected by the removal or relocation and if said removal and relocation is ordered by the CITY. If in any

twelve-month period, the CITY orders the relocation of more than three (3) of the Public Service Kiosks provided pursuant to this Agreement, regardless of how many Public Service Kiosks have been relocated in prior years, CITY shall bear the full costs thereof, including sidewalk and curb repair if the same is affected by the relocation, subject to Section 5.11, below, of this Agreement.  CITY shall reimburse CONTRACTOR for such costs within one-hundred-twenty (120) days of the invoice therefor, accompanied by reasonable documentation of the costs incurred.  In the event that the terms and conditions of Section 5.11, <u>Relocation Costs</u>, are met and CONTRACTOR fails to remove and relocate a Public Service Kiosk within the time directed by the CITY, CITY may, at its sole discretion, cause the removal and storage or relocation of said Public Service Kiosk and recover any and all costs incurred from CONTRACTOR as provided in Section 1.12, <u>Letter of Credit</u>, Paragraph C, <u>Default of Contractor</u>.  Any costs not so recovered shall be paid directly to CITY by CONTRACTOR upon the invoice therefor.  The new location of any relocated Public Service Kiosk shall be determined in accordance with Section 3.05, Paragraph B above.  In the event the Port Director directs CONTRACTOR to remove any Public Service Kiosk on Port Property, CONTRACTOR shall remove such kiosk within seventy-two (72) hours (excluding Sundays and holidays) provided that the PORT has at the time of removal issued permits for installation at another location for the Public Service Kiosk, which location shall have been approved by CONTRACTOR under the terms of this Agreement.  Such removal and relocation shall be subject to the limits set forth above in this Section 3.06 and Section 5.11, <u>Relocation Costs.</u>

3.07.    <u>Clearance Requirements For Public Service Kiosks</u>.  All Public Service Kiosks, wherever located, shall be placed in accordance with the terms of Department of Public Works Order No. 163,368 (<u>Appendix G</u> hereto), issued by the Director, and as modified from time to time by subsequent Director's orders; provided, however, that such subsequent orders are subject to the provisions of Paragraph E of Section 1.18.  After the installation of a Public Service Kiosk, to the extent feasible, CITY shall use its best efforts not to place any new structures or obstacles within the specified clearance area or which would obstruct the visibility of or access to such Public Service Kiosk.  If after the installation of a Public Service Kiosk, CITY shall place any new structures or obstacles within the specified clearance area, CONTRACTOR shall not be required to relocate that Public Service

Kiosk to accommodate the CITY's structure except as provided in Section 3.06.

3.08.   Public Service Kiosk Design.   Subject to the provisions of this Section 3.08 and Section 3.09 below, CONTRACTOR shall design, construct and install the Public Service Kiosks provided under this Agreement in conformity with the plans and specifications attached hereto as Appendix D, which have been approved by CITY, including its Art Commission. Such plans and specifications may be modified by CONTRACTOR, only with the prior written approval of the Director.   Such approval shall not be unreasonably withheld if the proposed change does not materially affect the external appearance or accessibility of the Public Service Kiosks.

3.09.   Approval of Other Agencies.

A.   Approval of Recreation and Park Commission -- When Required.   Locations of Public Service Kiosks on real property owned by or under the jurisdiction of or immediately adjacent to property of the San Francisco Recreation and Park Department shall be subject to review and approval by the Recreation and Park Commission.

B.   Approval of Port Commission; Bay Conservation Development Commission -- When Required.   Locations of Public Service Kiosks on real property owned by or under the jurisdiction of the Port of San Francisco shall be subject to review and approval by the Port Commission.   In addition, locations of Public Service Kiosks on real property located within one hundred feet (100') of the San Francisco Bay shoreline shall be reviewed by the Bay Conservation and Development Commission, in addition to any other necessary approvals.

3.10.   Location Drawings and Engineering Plans for Public Service Kiosks.   Location drawings submitted to CITY for approval for each licensed Public Service Kiosk shall contain a twenty-feet-(20')-to-one-inch-(1") scale (20:1 scale) representation of the proposed Public Service Kiosk site covering the area from the property line to the street centerlines at the nearest intersection.   Mid-block sites can be shown with broken line ties.   The drawing also shall give all necessary street dimensions, such as sidewalk width and street width, and denote all surface and subsurface structures, including hydrants, utility poles and catch basins, subsidewalk basements, transit

shelters, bus stops and their accurate positions.  After approval of a particular location (including any required public hearing), CONTRACTOR must also submit to the Department of Public Works engineering plans showing electrical service connections and foundation details for each Public Service Kiosk, which plans must be stamped and signed by an engineer registered with the State of California.  CONTRACTOR is responsible for identifying all utility lines located beneath the Public Service Kiosk site and for showing all such utility lines on the location drawing.  As described in Section 2.10, <u>Location Drawings and Engineering Plans for Automatic Public Toilets</u>, of this Agreement, the CITY must approve the location and engineering drawings and issue encroachment and excavation permits before CONTRACTOR may commence work on a particular site or location.

3.11.  <u>Electrical Connections and Service Responsibility of Contractor</u>.  CONTRACTOR shall bear the full responsibility, including all costs, of furnishing, installing and maintaining electrical services to each Public Service Kiosk permitted under this Agreement.  CONTRACTOR shall arrange and perform all internal electrical components and hook-up procedures necessary to the installation of the Public Service Kiosks in accordance with the San Francisco Electrical Code.  All electrical service lines at each Public Service Kiosk site shall be underground and shall originate from the point-of-service designated by CITY or by Pacific Gas & Electric Company ("PG&E"), respectively.  CITY shall designate the CITY-owned street lighting conduit that CONTRACTOR can utilize to house any electrical service wiring for the Public Service Kiosk.  If feasible, CITY shall permit the CONTRACTOR to utilize the CITY's electrical system, in which event, CONTRACTOR shall pay the same rate charged to CITY agencies.  CONTRACTOR shall contact PG&E and arrange for additional service not provided by CITY and shall pay CITY or PG&E directly for all charges for service connections and electricity.

3.12.  <u>Restoration of Sites</u>.  When each Public Service Kiosk installation is complete, CONTRACTOR shall remove all access materials and restore the work area.

Part 4.  <u>Advertising.</u>

4.01.  <u>Advertising Displays</u>.  Advertising posters may be displayed on Public Service Kiosks as provided in this Section.

4.02.  <u>Size and Location of Advertising</u>.  Advertising posters displayed pursuant to this Agreement shall not exceed fifty-two (52) square feet in area nor be greater than twelve feet (12') in height nor five feet (5') in width, and shall be located only within the two (2) advertising display panels of each Public Service Kiosk, as selected by CONTRACTOR.  The panels on the Public Service Kiosks may be illuminated up to twenty-four (24) hours a day at the discretion of CONTRACTOR; provided, however, in unusual circumstances CONTRACTOR shall, at the request of the Director, cooperate to agree upon mutually agreeable hours of illumination.

4.03.  <u>Advertising Rights</u>.

A.  <u>Commercial Advertising</u>.  CONTRACTOR, its employees or approved subcontractors, may contract with others to sell space for commercial advertising on the Public Service Kiosks.  CONTRACTOR may also display on such panels its own advertisements and promotions designed to increase the sale of advertising space.

B.  <u>Noncommercial Advertising Space</u>.  CITY shall have the right to place informative material on the two (2) display panels on each Automatic Public Toilet and on one display panel on each Information Kiosk (as defined in Section 5.10, <u>Public Service Use of Public Service Kiosks</u>, Paragraph C, <u>Information Kiosks</u>, of this Agreement).  Display panels on Information Kiosks located on Port Property shall be used exclusively for noncommercial PORT purposes.  CONTRACTOR agrees to install and display informative material provided by CITY at no cost to CITY in a manner which neither interferes with advertising placed by CONTRACTOR nor generates overtime costs for CONTRACTOR; CITY agrees not to sell such reserved space to commercial advertisers either directly or through any intermediary.

C.  <u>Public Service Announcements</u>.  CONTRACTOR shall have the right, at its own discretion, to display free of charge certain public, educational, and charitable displays on space not contracted for use by paid advertisers and not otherwise being used by CONTRACTOR for purposes described in this Section.

4.04.  <u>Changes in Authorized Advertising</u>.  The parties mutually acknowledge and agree that the advertising rights granted under this Agreement are only incidental to the conduct of the CITY's municipal business.  Accordingly, CONTRACTOR

understands and agrees that the advertising rights granted herein may be affected by changes in the conduct of the CITY's municipal affairs.  <u>CITY shall have no liability for any such change affecting the level or scope of advertising authorized by this Agreement.</u>  CONTRACTOR acknowledges that the particular locations available for Public Service Kiosks may vary from time to time for various reasons, including administrative and/or legislative determinations by CITY relative to the desirability of having Public Service Kiosks in a particular location.  CITY will give CONTRACTOR at least ninety (90) days written notice of any decision regarding changes required in advertising Public Service Kiosks. CITY will, where possible, identify replacement locations for any such advertising required to be removed from another location pursuant to such administrative and/or legislative determination.  Nothing in this Section 4.04 shall be construed to limit the provisions of Section 1.18, <u>Termination of Agreement</u>, Paragraph F, <u>Change of Laws,</u> of this Agreement.

4.05.   <u>Design Considerations and Use of Materials</u>.  It is the intent of both CITY and CONTRACTOR to provide an advertising program which is effective and aesthetically pleasing to residents and visitors of San Francisco and which will be beneficial to both parties.  The parties accordingly agree to maintain throughout the term of this Agreement a continual liaison and exchange of plans and information to assure successful implementation of this Agreement.

4.06.   <u>Advertising Material</u>.  CONTRACTOR is expected at all times to use good judgment in accepting any material for advertising on Public Service Kiosks.  CONTRACTOR agrees to remove promptly, upon written demand by the Director of Public Works, or, with respect to advertising displays on Port Property, upon written demand by the Port Director, any advertisement deemed to be objectionable, on stated grounds which shall be reasonable and lawful.

4.07.   <u>Limitation on Tobacco Advertising</u>.  CONTRACTOR agrees that space devoted to advertising of tobacco products shall not exceed twenty percent (20%) of its total available space in any one year during the term of this Agreement.

4.08.   <u>Public Information Campaign</u>.  CONTRACTOR shall develop and implement a public information campaign designed to educate the public about the Automatic Public Toilets and Public Service Kiosks and to encourage public cooperation in protecting the Automatic Public Toilets from misuse.

The public information campaign shall take place around
the time that the Initial Phase of the Automatic Public
Toilets become operational and shall include, but not be
limited to, the following:

A.    Design and reproduction of printed material
      describing the use of the Automatic Public Toilets,
      and encouraging the public cooperation in protecting
      the Automatic Public Toilets from misuse;

B.    Distribution of the printed materials, particularly
      through schools and nonprofit agencies serving the
      disabled and the homeless;

C.    Design, reproduction and installation of posters to
      be displayed in the Automatic Public Toilets and/or
      Public Service Kiosks; and

D.    Press releases to major media, including newspapers
      and radio and television stations.


Part 5.  **Maintenance and Operation.**

5.01.  **Automatic Public Toilet and Public Service Kiosk
       Maintenance and Operation**.  CONTRACTOR shall have full
       responsibility to operate and maintain all Automatic
       Public Toilets and Public Service Kiosks installed under
       this Agreement as provided herein.

5.02.  **Hours of Operation**.  Each Automatic Public Toilets shall
       be operational during the hours from 6:00 a.m. to
       10:00 p.m. every day, unless otherwise agreed by
       CONTRACTOR and the Director.

5.03.  **Services to be Furnished by CONTRACTOR**.  CONTRACTOR, its
       employees, or authorized subcontractors shall provide the
       following services in connection with the maintenance and
       operation of the Automatic Public Toilets and Public
       Service Kiosks during the entire term of this Agreement:

A.    Continuously maintain in a clean, graffiti-free,
      safe, and first-class condition, in a manner
      consistent with the more specific standards elsewhere
      provided in this Agreement, all Automatic Public
      Toilets, Public Service Kiosks, advertising panels,
      and any other displays installed under this
      Agreement;

B. Place, replace and maintain in a clean, graffiti-free, safe, and first-class condition, in a manner consistent with the more specific standards elsewhere provided in this Agreement, all advertising copy, advertisements, posters, public information and display materials;

C. Make a continuous, full-time, and good faith effort to sell the greatest practicable amount of advertising;

D. Provide an experienced sales force;

E. Maintain an office and shop facilities in the CITY and County of San Francisco for JCDecaux United Street Furniture, Inc. which shall serve as the western United States headquarters and training center for JCDecaux public toilets and street furniture;

F. Assure the best quality design and production of exhibits and advertising material to be installed or used in advertising displays;

G. Provide the necessary personnel to assure the maintenance of Automatic Public Toilets and Public Service Kiosks and displays of advertising as provided herein.

5.04. <u>Maintenance Schedule</u>.  CONTRACTOR shall be responsible for maintaining all Automatic Public Toilets and Public Service Kiosks installed under this Agreement in clean, graffiti-free, safe, first-class condition,  throughout the duration of this Agreement, including refurbishing, reconditioning, and if necessary, replacing any Automatic Public Toilets and Public Service Kiosks at no cost to the CITY.  CONTRACTOR shall also develop a log for recording all inspections and maintenance work performed on each Automatic Public Toilet and Public Service Kiosk, as required in Section 1.13, <u>Maintenance and Complaint Log</u>, Paragraph A, <u>Maintenance Log</u>.

5.05. <u>Inspection and Clean-Up of Automatic Public Toilets and Public Service Kiosks</u>.  CONTRACTOR shall inspect each Automatic Public Toilet at least once per day (Sundays and bank holidays excepted) and shall inspect each Public Service Kiosk at least once per week, except that CONTRACTOR shall inspect each Automatic Public Toilet on Port Property at least once daily (including Sundays and holidays).  CONTRACTOR shall inspect any site more

frequently if conditions at that site so require.  At the
time of every inspection, CONTRACTOR shall, if necessary,
clean and wash each Automatic Public Toilet and Public
Service Kiosk.  In addition, CONTRACTOR shall inspect all
fixtures at each site and, if needed, shall replace
defective fixtures within the time frames provided in
Section 5.06 below.  CONTRACTOR shall remove all graffiti,
stickers, unauthorized posters and flyers, litter, dust,
dirt and weeds and other rubbish from each Automatic
Public Toilet and Public Service Kiosk.  Notwithstanding
any other provision of this Agreement, CONTRACTOR shall
not be required to provide security personnel at the site
of the Automatic Public Toilets or Public Service Kiosks.

5.06.    <u>Repair and Replacement</u>.  Upon observing or receiving
notification of any damage, vandalism, or graffiti in, on
or around any Automatic Public Toilet or Public Service
Kiosk CONTRACTOR shall commence to repair or replace said
damage, vandalism, or graffiti, within twenty-four (24)
hours, exclusive of weekends and bank holidays.  If an
Automatic Public Toilet or Public Service Kiosk is
destroyed, CONTRACTOR shall within twenty-four (24) hours
secure or remove the remains of the Automatic Public
Toilet or Public Service Kiosk and shall thereafter
replace the Automatic Public Toilet or Public Service
Kiosk at that site within three (3) months.  In
conjunction with such removal, CONTRACTOR shall, at its
own expense, restore the affected sidewalk and curb area
to a safe, finished condition.  If CONTRACTOR does not
maintain inspections as scheduled and remedy existing
deficiencies within such time periods, CITY shall be
entitled, upon twenty-four hours notice to CONTRACTOR (or
such shorter notice as may be feasible in an emergency),
to make the repairs and, at CITY's election, to (i) bill
CONTRACTOR for the work performed, or (ii) recover any and
all costs incurred from CONTRACTOR as provided in Section
1.12, <u>Letter of Credit</u>, Paragraph C.  <u>Default of
Contractor</u>.  Any costs not so recovered shall be paid
directly by CONTRACTOR to CITY upon submission of a proper
invoice therefor.  Subject to extension for force majeure,
if any Automatic Public Toilet requires repair such that
it is out of operation for forty-eight (48) consecutive
hours, exclusive of weekends and bank holidays, or if any
Automatic Public Toilet is destroyed and has not been
replaced within three (3) months, then CONTRACTOR shall
pay to CITY the sum of one hundred eight dollars ($108.00)
per each day thereafter that such Automatic Public Toilet
remains out of operation.  For purposes of this Paragraph
5.06, "force majeure" shall mean delays in CONTRACTOR's
performance of its obligations hereunder due to acts of

God or of the public enemy, fires, floods, strikes, criminal acts of third parties, freight embargoes and unusually severe weather.

5.07.    <u>Vandalism of Automatic Public Toilets</u>.  In the event that CONTRACTOR's cost of repair and replacement of Automatic Public Toilets due to Vandalism during any of the first two years of operation should exceed Two-Thousand Dollars ($2,000) per Automatic Public Toilet per year, CONTRACTOR may, by notice to CITY, request that CITY negotiate in good faith possible modifications of this Agreement to reduce such cost or provide additional revenues.  Such modifications may include relocation of Automatic Public Toilets for which maintenance is a particular problem, change in the ratio of Public Service Kiosks to Automatic Public Toilets, or any other modification which would reduce such costs or provide offsetting additional revenues.  In no event shall CITY be required to agree to any particular modification of this Agreement, provided, however, that it will not unreasonably withhold approval of the relocation of an Automatic Public Toilet if the cost or replacement of such Automatic Public Toilet due to Vandalism has exceeded $2,000 per year in both of its first two years of operation.  If no modification of the Agreement satisfactory to CONTRACTOR is agreed upon after one hundred twenty (120) days, CONTRACTOR may, at its option, elect to terminate this Agreement upon ninety (90) days notice to CITY.  Nothing in this Agreement shall be construed to impose on CITY any responsibility or liability for costs incurred by CONTRACTOR on account of Vandalism.

5.08.    <u>Charge For Use of Automatic Public Toilets</u>.

A.    CONTRACTOR shall have the right to charge for each use of the Automatic Public Toilets, subject to the limitations of this Section, and all revenue from such charges shall be retained by CONTRACTOR.  The initial cost per use shall be twenty-five cents ($.25).  The cost per use may be increased (but need not be decreased) no more than once in any twelve (12) month period based on the percentage change since the Start Date in the most recently published Consumer Price Index (CPI) (Urban Wage Earners and Clerical Workers in San Francisco-Oakland Standard Metropolitan Statistical Area) as calculated on the date of the increase and rounded down to the next lower multiple of five cents ($.05), unless a larger increase is approved by the Director.

B.  At the discretion of CONTRACTOR, the Automatic Public Toilets may be coin-operated or operated by magnetically-coded debit cards (similar to that currently used on the BART system).  In addition, the Automatic Toilets may be operated by another revenue collection system approved by the Director, which approval shall not be unreasonably withheld.  If CONTRACTOR adopts a magnetic card system or other system, the program for distribution of such cards shall be subject to the reasonable approval of the Director.

C.  CONTRACTOR shall provide to the CITY a minimum of ten-thousand (10,000) tokens or cards which can be used to operate the Automatic Public Toilets. CONTRACTOR will distribute these tokens or cards through non-profit agencies to the homeless.  As these tokens or cards are collected by the CONTRACTOR, they will be re-used for the purposes described in this Paragraph.  From time to time, CONTRACTOR will provide additional tokens or cards, as necessary in CONTRACTOR's reasonable judgment, to replace lost tokens so that the estimated total in circulation remains approximately ten thousand (10,000) tokens.

5.09.  <u>Parking and Traffic Restrictions</u>.  CONTRACTOR shall install all Automatic Public Toilets and  Public Service Kiosks whenever possible at hours of minimum pedestrian activity or at such hours as are approved by CITY.  The Director will assist CONTRACTOR  in obtaining from the Department of Parking and Traffic clearance to park CONTRACTOR's vehicles without penalty while CONTRACTOR is conducting installation and maintenance of the Automatic Public Toilets and Public Service Kiosks.

5.10.  <u>Public Service Use of Public Service Kiosks</u>.  One side of each of the Public Service Kiosks licensed pursuant to this Agreement shall not be used to display commercial advertising, but shall be used for public services as provided in this Section.  CONTRACTOR shall determine which of the three sides of each Public Service Kiosk is devoted to public service.

A.  <u>Newsstand Kiosks.</u>  Approximately sixty-five (65) of the Public Service Kiosks in the Initial Phase may be used as newsstands ("Newsstand Kiosks") and may replace existing  newsstands operated by the San Francisco Newspaper Agency (the "Agency") or others.

CONTRACTOR shall use its best efforts to obtain the permission of the Agency to replace its existing newsstands with a Public Service Kiosk which the Agency would continue to operate as a newsstand. CONTRACTOR intends to engage the Agency, which performs distribution functions for <u>The San Francisco Chronicle</u>, <u>The San Francisco Examiner</u>, and <u>The San Francisco Sunday Examiner and Chronicle</u>, to sell newspapers from the Newsstand Kiosks, subject to the requirements of this Agreement. CONTRACTOR shall use best efforts to cause the Agency, either itself or through a vendor's union or association, to carry and offer for sale in the Newsstand Kiosks various newspapers, based on a constitutional, non-content based allocation scheme such as frequency of circulation, with particular emphasis on satisfying customer interest and demand and maximizing income to the Agency or other vendor. The parties acknowledge and agree that the Agency or other vendor cannot carry and offer for sale all newspapers due to space limitations.

B.    <u>Interactive Media Kiosks.</u> Up to twenty-five (25) of the Public Service Kiosks in the Initial Phase may, at the option of CITY, be designated to accommodate an interactive media terminal which would provide information and could also process transactions, such as payment of parking fines, renewing municipal licenses, or purchasing tickets to cultural or sport events ("Interactive Media Kiosks"). Such interactive media terminals shall be designed to fit at a reasonable cost within the shell of CONTRACTOR'S standard Public Service Kiosk. At CITY's sole option, CITY may provide the interactive media terminals itself or through a separate contract with an interactive media provider. CITY's option to require CONTRACTOR to provide Interactive Media Kiosks shall be exercised, if at all, prior to the Start Date or such later date as may be agreed upon jointly by CONTRACTOR and the Director. If CITY elects to require Interactive Media Kiosks, and if for any reason interactive media terminals are not provided, or the contract with the interactive media provider is terminated, CONTRACTOR's sole obligation shall be to replace the Interactive Media Kiosks, at no cost to the CITY, with Information Kiosks.

C.    <u>Information Kiosks.</u> A Public Service Kiosk may be an Information Kiosk. The public service panel of the Information Kiosks may display public information,

maps, or cultural or public service announcements as determined by CITY, which displays shall in all events be of a non-commercial nature, except that identification of any commercial sponsorship may be up to ten percent (10%) of the display, contained in a band along the bottom of the display poster. Advertisements or announcements of or for nonprofit cultural events or institutions shall be considered to be of a non-commercial nature, so long as they contain no identification of any commercial sponsorship. CITY shall have sole responsibility for the selection, scheduling and coordination of all materials to be displayed on the public service panels of the Information Kiosks, and CITY is expected at all times to use good judgment in accepting any materials for such display. CITY will be responsible for the delivery to CONTRACTOR of the information to be displayed, printed in the size specified by CONTRACTOR and ready for installation, and for the provision of any specific instructions regarding the display locations for particular posters; provided, however, that CONTRACTOR shall provide maps pursuant to Section 2.08 of this Agreement. CONTRACTOR will be responsible for the installation of such materials in designated locations; provided, however, that CONTRACTOR may only be required to install such materials on the same day as it is otherwise installing new advertising posters in such Information Kiosks, which installation shall be performed at least monthly and on a schedule which CONTRACTOR shall provide in advance to CITY.

D.    Public Art Kiosks; Contribution.

(1)    Public Art Kiosks.    A Public Service Kiosk may be a Public Art Kiosk. The public service panel of a Public Art Kiosk may be used solely for the display of art, designs, photos and graphics ("Public Art") furnished by the Art Commission. All Public Art display panels shall be back-lit at all times that CONTRACTOR'S advertising panels on such kiosk are back-lit. All public agencies or non-profit arts groups wishing to display public art on the Public Art Kiosk display panels shall contact the Art Commission which will have sole responsibility for the selection, scheduling and coordination of all materials to be displayed on the Public Art panels, except that the Port Director shall also

review and approve all Public Art displayed on kiosks on Port Property.   The Art Commission will be responsible for the delivery to CONTRACTOR of the Public Art displays, printed in the size specified by CONTRACTOR and ready for installation, and for the provision of any specific instructions regarding the display locations for particular posters.  CITY is expected at all times to use good judgment in accepting any Public Art for display on the Public Art Kiosks.  Such displays shall in all events be of a non-commercial nature, except that identification of any commercial sponsorship may be up to ten percent (10%) of the display, contained in a band along the bottom of the Public Art display.  CONTRACTOR will be responsible for the installation of the Public Art in designated locations; provided, however, that CONTRACTOR may only be required to install or remove such Public Art materials on the same day as it is otherwise installing new advertising posters in such Public Art Kiosk, which installation shall be performed no more than monthly and on a schedule  which CONTRACTOR shall provide in advance to the Art Commission. CONTRACTOR shall use good faith efforts to carefully remove Public Art from the Public Art Kiosks and shall return any undamaged Public Art to the Art Commission; provided, however, that CONTRACTOR shall in no event be liable for damage to Public Art.

(2)     Contribution.   CONTRACTOR agrees to pay the Art Commission the sum of Three Thousand Dollars ($3,000), as a Contribution toward the cost of reproduction or extended print runs of such public art materials.  CONTRACTOR shall pay the first such Contribution without adjustment on the Start Date.  In each succeeding year during the term of the Agreement, CONTRACTOR shall pay the Art Commission the Contribution,  adjusted on January 1 each year based on the percentage change in the most recently published Consumer Price Index ("CPI") (Urban Wage Earners and Clerical Workers in San Francisco-Oakland Standard Metropolitan Statistical Area (1982-1984 = 100)) on or after the anniversary date of the Start Date of this Agreement.

E.  <u>Other Public Services</u>.  From time to time during the term of this Agreement, CONTRACTOR may develop and make available additional public services which can be incorporated into the Public Service Kiosks.  If such additional public services, including newspaper vending machines, and the terms and conditions upon which such services will be provided are agreed upon by the Director and CONTRACTOR, such new or additional public services may be a permitted use of the Public Service Kiosks hereunder.

F.  <u>Additional Public Service Kiosks</u>.  If CITY, in accordance with Section 2.04, <u>Automatic Public Toilets Required To Be Installed,</u> Paragraph C, <u>Maximum Requirement</u>, requires additional Automatic Public Toilets in excess of those in the Initial Phase, CITY, by notice to the CONTRACTOR, may designate the public service use of the associated additional Public Service Kiosks as Newsstand Kiosks, Information Kiosks, Public Art Kiosks or any combination thereof; provided, however that a maximum of one-half (1/2) of such additional Public Service Kiosks may be Newsstand Kiosks, and provided further that any increase in the number of Newsstand Kiosks above that in the Initial Phase shall be subject to the approval of the Agency or other vendor operating the Newsstand Kiosks.  If new or additional public services are agreed upon pursuant to Paragraph E of this Section 5.10, such public services may be provided in additional Public Service Kiosks in accordance with the terms and conditions agreed upon by the Director and CONTRACTOR.

5.11.  <u>Relocation Costs</u>.  CONTRACTOR's obligation to relocate or remove Automatic Public Toilets and Public Service Kiosks pursuant to Sections 2.06, <u>Relocation of Automatic Public Toilets</u>, and 3.06, <u>Relocation of Public Service Kiosks,</u> shall be subject to the provisions of this Section 5.11.  In any twelve-month period, CONTRACTOR shall be obligated to remove, at the CITY's direction, but at CONTRACTOR's cost and expense, <u>either</u> (i) one (1) Automatic Public Toilet, <u>or</u> (ii) up to three (3) Public Service Kiosks.  In the event that the Director orders the removal or relocation of any Automatic Public Toilet or Public Service Kiosk which would exceed the limits of CONTRACTOR's obligation for such twelve-month period, and if CITY nonetheless instructs the CONTRACTOR to remove or relocate such Automatic Public Toilet or Public Service Kiosk after CONTRACTOR notifies CITY that such limit will be exceeded, then CITY shall reimburse CONTRACTOR for the

costs incurred by CONTRACTOR in excess of such limit within one-hundred-twenty (120) days after submission of an invoice therefore by CONTRACTOR, accompanied by such supporting documentation as CITY may reasonably require. CONTRACTOR shall not be obligated to remove or relocate any such Automatic Public Toilet or Public Service Kiosk in excess of the limits provided in this Paragraph unless CITY provides a certification from its Controller that funds have been certified as available in the budget or by supplemental appropriation for such purpose. Even if CITY has the right to order the relocation of any Automatic Public Toilet or Public Service Kiosk at the cost of CONTRACTOR, CITY may nonetheless, subject to the foregoing provisions regarding reimbursement of CONTRACTOR, designate a particular relocation order to be at the cost of CITY or of a third party; provided that if the order is designated to be at the cost of a third party, assurances of payment, reasonably satisfactory to CONTRACTOR, shall be provided prior to such relocation.

## Part 6.  Accessibility Requirements.

6.01.  **Accessibility.**  All Automatic Public Toilets and Public Service Kiosks shall be universally accessible.

6.02.  **Accessible Design.**  Design of Automatic Public Toilets shall comply with all applicable federal, state and local law and regulation for barrier-free design, including but not limited to the applicable provisions of the Uniform Fair Accessibility Standards (UFAS); the Americans with Disabilities Act, (ADA) (42 U.S.C. section 12101 et seq.); the Americans with Disabilities Act Accessibility Guidelines (See 28 CFR, Part 36); Title 24 of the California Code of Regulations, Part 2; the California State Accessibility Standards Interpretive Manuals; and all other applicable federal, state and local regulations. In the event of conflict between applicable laws and regulations, the more restrictive shall apply.

6.03.  **Path of Travel.**  Location of Automatic Public Toilets and Public Service Kiosks shall not obstruct the path of travel for persons with disabilities.  See DPW Orders 163,368 and 163,369 for the specific clearance requirements with which CONTRACTOR shall comply.

6.04.  **Approved Cleaning Products.**  CONTRACTOR shall only use cleaning products that meet all applicable laws and regulations pertaining to accommodation of chemical sensitivities.

6.05. <u>Automatic Public Toilet Review Committee</u>. There shall be established an Automatic Public Toilet Review Committee comprised of the following: the Director, or another employee of the Department of Public Works designated by the Director; the Department of Public Works Disability Coordinator; the Port Director, or another employee of the PORT designated by the PORT Director; up to three (3) representatives of CONTRACTOR; and the following four members who shall be appointed by the Mayor: one (1) private citizen active in issues of importance to the disabled community; one (1) representative from the tourism industry; one (1) representative from the business community; and one (1) representative knowledgeable in issues affecting the homeless. Meetings of the Committee shall be scheduled by the Director or his designee as necessary during the term of the Agreement to evaluate the Automatic Public Toilet system and make recommendations to CITY and CONTRACTOR with respect thereto. If pursuant to Section 5.07, <u>Vandalism of Automatic Public Toilets</u>, CONTRACTOR gives notice to the CITY of a request to negotiate possible modifications of the Agreement because of excess costs of vandalism, the Committee shall meet and make recommendations regarding possible modifications or other means to reduce vandalism or misuse of the Automatic Public Toilets.

6.06. <u>Disabled Access Advisory Committee</u>. CONTRACTOR shall establish a Disabled Access Advisory Committee to meet regularly to ensure that the Automatic Public Toilet program fully serves the needs of the entire community.

### Part 7.    <u>Miscellaneous Contract Provisions.</u>

7.01. <u>San Francisco Office</u>. CONTRACTOR shall maintain a fully staffed business office within the CITY and County of San Francisco in order to facilitate coordination between CITY and CONTRACTOR. This office shall serve as CONTRACTOR's western United States headquarters and training center. All training conducted by CONTRACTOR on and for the western United States shall take place at this center.

7.02. <u>Conflict of Interest</u>. CONTRACTOR states that it is familiar with provisions of Section 8.105 of the Charter of CITY, and Section 87100 <u>et seq</u>. of the Government Code of the State of California, and certifies that it does not know of any facts which constitute a violation of said provisions.

7.03.   <u>Other Agreements between CITY and CONTRACTOR</u>.  CONTRACTOR agrees that to the best of its knowledge and belief neither it nor any of CONTRACTOR's employees has any interest, however remote, in any other agreement with CITY, whether or not such agreement is with CONTRACTOR's firm, affiliate firms, or through separate employment. Failure to disclose such information may result in termination of this Agreement pursuant to Section 1.19, <u>Event of Default; Remedies</u>, herein.

7.04.   <u>Assignment</u>.  This Agreement and the rights granted therein may not be assigned by CONTRACTOR without the prior written consent of CITY, except as otherwise herein provided.  The CITY's consent to any such assignment may be conditioned upon an increase in payments to be made by CONTRACTOR to CITY under this Agreement.  If CONTRACTOR is a corporation, any dissolution, merger, consolidation, or other reorganization of CONTRACTOR's assets or operations, or the sale or other transfer of a controlling percentage of CONTRACTOR's capital stock, except by reason of death or mental incapacity, or the sale of fifty-one percent (51%) of the value of CONTRACTOR's assets, shall be deemed an involuntary assignment not requiring the CITY's approval or consent.  The phrase "controlling percentage" shall mean the ownership of and the right to vote upon, stock possessing at least fifty-one percent (51%) of the total combined voting power of all classes of CONTRACTOR's capital stock issued, outstanding and entitled to vote for the election of directors.

7.05.   <u>Binding Effect of Agreement</u>.  This Agreement shall bind and inure to the benefit of the all successors or assigns of the parties hereto.

7.06.   <u>Taxes</u>.  CONTRACTOR shall pay all lawful taxes and assessments levied or assessed in connection with its operation under this Agreement.

7.07.   <u>No Other Fees</u>.  Except as expressly provided in this Agreement, and except for taxes, fees and charges duly imposed and of general applicability, no other tax, fee or charge imposed by the CITY shall be due to CITY from CONTRACTOR on account of the Automatic Public Toilets and Public Service Kiosks authorized hereunder, including, but not limited to, the installation, location or use thereof for advertising.  In the event that such a tax, fee or charge is imposed, CITY agrees to reimburse CONTRACTOR for the amount of any such tax, fee or charge.

7.08.   <u>Legal Relationship</u>.  The parties hereby declare that it is not their intention by this Agreement or any of the terms thereof to create a partnership, joint venture or agency relationship between them.

7.09.   <u>Independent Contractor</u>.

   A.   CONTRACTOR shall be deemed at all times to be an independent contractor and shall be wholly responsible for the manner in which CONTRACTOR performs the service required of CONTRACTOR by the terms of this Agreement.  CONTRACTOR shall be liable for the acts and omissions of it, its employees and its agents.  Nothing contained herein shall be construed as creating an employment or agency relationship between CITY and CONTRACTOR.  Terms in this Agreement referring to direction from CITY shall be construed as providing for direction as to policy and the result of CONTRACTOR's work only and not as to the means by which such a result is obtained.

   B.   Should the CITY, in its discretion, or a relevant taxing authority such as the Internal Revenue Service or the State Employment Development Division, or both, determine that CONTRACTOR is an employee for purposes of collection of any employment taxes, the amounts payable under this Agreement shall be reduced by amounts equal to both the employee and employer portions of the tax due (and offsetting any credits for amounts already paid by CONTRACTOR which can be applied against this liability).  The CITY shall then forward those amounts to the relevant taxing authority.

   C.   A determination of employment status pursuant to the preceding paragraph shall be solely for the purposes of the particular tax in question, and for all other purposes of this Agreement, CONTRACTOR shall not be considered an employee of the CITY.  Notwithstanding the foregoing, should any court, arbitrator, or administrative authority determine that CONTRACTOR is an employee for any other purpose, then CONTRACTOR agrees to a reduction in the CITY's liability resulting from this Agreement pursuant to principles similar to those stated in the foregoing paragraphs so that the total expenses of the CITY under this Agreement shall not be greater than they would have been had the court, arbitrator, or administrative authority determined that CONTRACTOR was not an employee.

7.10.  <u>Qualified Personnel</u>.  Work under this Agreement shall be performed only by competent personnel under the supervision of and in the employment of CONTRACTOR. CONTRACTOR will conform with CITY's reasonable requests regarding assignment of personnel, but all personnel, including those assigned at CITY's request, shall be supervised by CONTRACTOR.

7.11.  <u>Equal Employment Opportunity and Business Practices;</u>
<u>Liquidated Damages</u>.

    A.  CONTRACTOR agrees to comply fully with the provisions of Section 12B.2 of the San Francisco Administrative Code, effective as of the date hereof.  Said provisions are incorporated herein by reference and made a part of this Agreement as though fully set forth.

    B.  CONTRACTOR shall make good faith efforts to use the services of Minority Business Enterprises and Women Business Enterprises in the service agencies, suppliers, contractors and subcontractors utilized in the performance of this Agreement.  The terms "good faith efforts", "Minority Business Enterprise", and "Women Business Enterprise" shall have the meanings set forth in Section 12D.5 of the San Francisco Administrative Code as of the date hereof, the provisions of which are incorporated herein by reference and made a part of this Agreement as though fully set forth.

    C.  CONTRACTOR shall demonstrate hiring practices to include minorities, people with disabilities, and homeless.  Except as expressly set forth above, it is agreed that this Agreement is not subject to the provisions of San Francisco Administrative Code Sections 12B and 12D.

    D.  CONTRACTOR agrees to prepare and submit to CITY within twelve (12) months after the Start Date of this Agreement a written report of efforts undertaken by CONTRACTOR to obtain and use the services of Minority Business Enterprises and Women Business Enterprises in the service agencies, suppliers, contractors and subcontractors utilized in the performance of this Agreement. Thereafter, CONTRACTOR shall submit such reports to CITY upon request.

7.12.  <u>MacBride Principles--Northern Ireland</u>.  The CITY urges companies doing business in Northern Ireland to move

towards resolving employment inequities, and encourages such companies to abide by the MacBride Principles. The CITY urges San Francisco companies to do business with corporations that abide by the MacBride Principles.

7.13.  <u>Tropical Hardwood Ban</u>.  The CITY urges contractors not to import, purchase, obtain, or use for any purpose, any tropical hardwood or tropical hardwood product.

7.14.  <u>Resource Conservation</u>.  Reports required to be submitted under this Agreement shall be on recycled paper and printed on double-sided pages to the maximum extent possible.

7.15.  <u>Non-Waiver of Rights</u>.  The omission by either party at any time to enforce any default or right reserved to it, or to require performance of any of the terms, covenants, or provisions hereof by the other party at the time designated, shall not be a waiver of any such default or right to which the party is entitled, nor shall it in any way affect the right of the party to enforce such provisions thereafter.

7.16.  <u>Modification And Amendment of Agreement</u>.  This Agreement may be modified or amended only by a written instrument signed by both CITY and CONTRACTOR, nor may compliance with any of its terms waived, except by written instrument executed and approved in the same manner as this Agreement.

7.17.  <u>Section Headings</u>.  The section headings contained herein are for convenience in reference and are not intended to define or limit the scope of any provision hereof.

7.18.  <u>Agreement Made in California; Venue</u>.  The formation, interpretation and performance of this Agreement shall be governed by the laws of the State of California, excluding its conflict of laws rules.  Venue for all litigation relative to the formation, interpretation and performance of this Agreement shall be in San Francisco.

7.19.  <u>Construction</u>.  All paragraph captions are for reference only and shall not be considered in construing this Agreement.

7.20.  <u>Entire Agreement</u>.  This Agreement, including all Appendices hereto, sets forth the entire Agreement between the parties, and supersedes all other oral or written provisions.  This Agreement may be modified only as provided in Section 7.16, <u>Modification and Amendment of Agreement</u>.

IN WITNESS WHEREOF, the parties hereto have caused this agreement to be executed, in quintuplicate, by their duly authorized officers, on the day and year first herein above written.

CITY

CITY AND COUNTY OF SAN FRANCISCO, a California municipal corporation

Recommended by:

_____
Vitaly B. Troyan
Deputy Director,
Public Services

Approved as to Form:

LOUISE H. RENNE, City Attorney

By _____
   Deputy City Attorney

Approved:

_____
Dennis P. Bouey
Director,
Port of San Francisco

Approved:

_____
John E. Cribbs
Director of Public Works

Approved:

_____
Rudolf Nothenberg
Chief Administrative Officer

Approved:

_____
Honorable Frank Jordan, Mayor

CONTRACTOR

JCDecaux United Street Furniture, Inc., a California corporation

249 Front Street
Address

San Francisco, CA              94111
City              State        Zip

I have read and understood Section 7.12, the City's statement urging companies doing business in Northern Ireland to move towards resolving employment inequities, encourage compliance with the MacBride Principles, and urging San Francisco companies to do business with corporations that abide by the MacBride Principles.

By _____
   Signature

Jean-Francois Decaux
Name

Chief Executive Officer
Title

  (415)      834-0128
Area Code   Phone Number

133673557
Federal Employer Number

APPENDIX A

LOCATIONS OF GANNETT MARKET STREET KIOSKS

**City and County of San Francisco**

**Department of Public Works**
Bureau of Street-Use and Mapping



## GANNETT'S MARKET STREET MUNI. KIOSK LOCATIONS

| | Location | Corner |
|---|---|---|
| 1. | Steuart/Market (2 Kiosks) | S.E. |
| 2. | Market/Steuart | S.W. |
| 3. | Market/Drumm | N.E. |
| 4. | Market/Front | N.E. |
| 5. | Market/Sansome | N.W. |
| 6. | Market/Beale | S.E. |
| 7. | Market/Montgomery | N.W. |
| 8. | Market/Grant | N.W. |
| 9. | Market/Grant | S.E. |
| 10. | Market/Powell | N.E. |
| 11. | Market/Powell | S.E. |
| 12. | Market/Mason | N.W. |
| 13. | Market/Mason | S.E. |
| 14. | Market/Third St. | S.E. |
| 15. | Market ( S/S ) Midblock 1st-2nd Sts. | |
| 16. | Market ( S/S ) Midblock 6th-7th Sts | |
| 17. | Market ( S/S ) Midblock 7th-8th Sts. | |
| 18. | Market ( S/S ) Midblock 8th-9th Sts. | |
| 19. | Market/7th St. | N.E. |
| 20. | Market/Hyde | N.E. |
| 21. | Market/Larkin | N.W. |
| 22. | Market/Polk | N.W. |
| 23. | Market/Van Ness | N.W. |
| 24. | Market/11th St. | S.W. |
| 25. | Market/10th St. | S.E. |

APPENDIX B

PRELIMINARY LOCATIONS OF INITIAL PHASE
AUTOMATIC PUBLIC TOILETS

**City and County of San Francisco** 

**Department of Public Works**
Bureau of Street-Use and Mapping



## Proposed Locations for Pay Public Toilets
### (All Locations subject to Public Hearing)

1. St. Mary's Square
2. Mission and Geneva
3. 6th and Mission
4. Mission and Army
5. Mission and 24th
6. Twin Peaks Overlook
7. Judah and 9th
8. Haight and Masonic
9. Mission and 16th
10. 6th and Clement
11. Civic Center Plaza
12. Market and 7th
13. MaCauley Park (Larkin and O'Farrell)
14. Boedecker Park (Jones and Eddy)
15. Market and Powell
16. Geary and Powell
17. California and Van Ness
18. Grant and Columbus
19. Market and California
20. Pedestrian Promenade, South of the Agriculture Building
21. Justin Herman Plaza
22. Fisherman's Wharf (Near Pier 41)
23. Bay and Taylor
24. Jefferson and Taylor
25. Fisherman's Wharf (Near Hyde Street Pier)
26. Marginal Wharf at Pier 7
27. Beach and Hyde