A or better (or comparable successor rating) and having at least one branch office within the City and County of San Francisco, and the place for City's presentation of a demand shall be a branch office in the City and County of San Francisco. The Alternative Letter of Credit shall have an original term of one (1) year, with automatic extensions of the full amount required hereunder to be maintained until completion of installation of the Fixed Pedestal Units. The original of the Alternative Letter of Credit shall be held by City throughout its term. The Alternative Letter of Credit shall provide that payment of the entire face amount of the letter of credit, or any portion thereof, shall be made to the City, upon presentation of a written demand to the Bank signed by the Director on behalf of the City accompanied by a copy of the demand for performance delivered to Contractor and a copy of the certified mail, return receipt requested form. If Contractor defaults, as described in Section 8.11 of this Agreement with respect to its obligations hereunder other than to supply and install the Fixed Pedestal Units required hereunder, and fails to cure such default within the applicable cure period, City may, but shall not be required to, make its demand under the Alternative Letter of Credit for all or any portion thereof to compensate City for any loss or damage which City may have incurred by reason of Contractor's default. City shall present its written demand to the Bank for payment under the Alternative letter of Credit only after the City shall have made its demand for performance directly to Contractor by certified mail, return receipt requested, and after five (5) full Business Days have elapsed without performance by Contractor.

(g)   Non-Extension of Letter of Credit Alternative; Replacement. The Alternative Letter of Credit permitted under this Section shall provide for sixty (60) days notice by the issuer to City in the event of termination or non-renewal of the Alternative Letter of Credit. Upon receipt of notice from the issuer that the Alternative Letter of Credit will not be renewed or extended, City may demand that Contractor replace the Alternative Letter of Credit within at least twenty (20) days prior to its expiration. If Contractor fails to do so, City shall be entitled to present its written demand for payment of the entire face amount of the Alternative Letter of Credit. Any amounts so received by City shall be held as cash collateral, in the manner provided in subsection 8.6(g), and shall be returned to Contractor upon replacement of the Alternative Letter of Credit.

(h)   Holding of Proceeds. Any amounts held by City pursuant to a default under subsection 8.6(f) shall be held in a segregated account separate from other funds held by City, and shall be invested by City, in the name of City, but for the account of Contractor, in one or more investments which are lawful for investments of public funds, but subject to a security interest in favor of City to secure payment of any loss or damage which City may incur by reason of Contractor's default hereunder. At the request of City, Contractor shall execute and deliver to City a security agreement with respect to any such amounts or account,, in such form as City may reasonably request, a UCC-1 financing statement in proper form for filing and recording, and as applicable, written notice satisfying the requirements of California Commercial Code Section 9302(1)(g)(ii) (or any successor section), to create and perfect such security interest. So long as

30

Contractor is not otherwise in default hereunder, interest earned on any such amounts or account shall be disbursed to the Contractor no less than annually.

8.7 **Insurance**.

(a)  Insurance Policies. Contractor shall maintain in force, during the full term of this Agreement, insurance as follows:

(i)  Workers' Compensation, with Employers' Liability limits not less than One Million Dollars ($1,000,000) each accident;

(ii)  Commercial General Liability Insurance, with limits not less than One Million Dollars ($1,000,000) each occurrence Combined Single Limit Bodily Injury and Property Damage, including coverage for Contractual Liability, Personal Injury, Advertising Liability, Independent Contractor's Broad Form Property Damage, Products and Completed Operations coverages; and

(iii)  Business Automobile Liability Insurance with limits not less than One Million Dollars ($1,000,000) each occurrence Combined Single Limit Bodily Injury and Property Damage, including owned, non-owned and hired auto coverages, as applicable.

(b)  Endorsements. Commercial General Liability and Business Automobile Liability Insurance policies shall be endorsed to provide the following:

(i)  To name as additional insureds with respect to the operations of Contractor under this Agreement the City and County of San Francisco and its officers, agents, and employees, and,

(ii)  To provide that such policies are primary insurance to any other insurance available to the additional insureds, with respect to any claims arising out of this Agreement, and that insurance applies separately to each insured against whom claim is made or suit is brought, except with respect to the limits of the insurer's liability.

(c)  Notice. All policies shall be endorsed to provide that there will be thirty (30) days advance written notice to City of cancellation, non-renewal or reduction in coverage, which shall be mailed to the following address:

Department of Public Works
City and County of San Francisco
Attention: Newsrack Program Manager
City Hall, Room 348
1 Dr. Carlton B. Goodlett Place
San Francisco, CA 94102

31

5551693v11

(d)  Condition Precedent.  Certificates of insurance, in a form reasonably satisfactory to City with insurers whose current A M Best rating is not less than A-VIII, evidencing all coverages above, shall be furnished to City before the Effective Date of this Agreement, with relevant sections of any required policies necessary to resolve ambiguities of coverage, if such cannot be resolved through revised certificates in insurance.

(e)  Approval by City.  Approval of insurance contracts required under this Agreement shall not relieve Contractor, its subcontractors, consultants, successors or assigns, from the obligation to indemnify and hold harmless the City pursuant to Section 8.8.

(f)  Copies of Policies and General Provisions.  If at any time during the term of this Agreement Contractor fails to maintain the required insurance in full force and effect, Contractor shall discontinue immediately all work under the Agreement and shall not resume work until authorized by the Department of Public Works after having given acceptable written evidence, such as provided at subsection (d) above that the required insurance has been restored to full force and effect and that the premiums therefor have been paid and are current.

(g)  Breach.  In the event of any uncured breach of any provision of this Section 8.7, or in the event that any insurance coverage required to be maintained by Contractor by this Agreement is canceled or diminished in any way, City, in addition to any other remedies available under this Agreement or by law, and notwithstanding any other provision of this Agreement to the contrary, shall have the right upon notice to the Contractor, to suspend the further exercise by Contractor of all rights and privileges granted to Contractor under this Agreement until such coverage is provided or terminate this Agreement.

8.8  **Hold Harmless and Indemnification**.

(a)  Contractor shall indemnify, reimburse, and save harmless City and its officers, agents and employees from, and, if requested, shall defend them against any and all loss, damage, injury, liability, and claims thereof for injury to or death of a person, including employees of Contractor, or loss of or damage to tangible property, other than newspapers and other materials distributed from Fixed Pedestal Units, to the extent such loss, damage, injury, liability, or claim arises from Contractor's performance of this Agreement and is not contributed to by City, its subcontractors or either's agent or employee through any negligent or intentionally wrongful act (other than the hiring or supervision of Contractor), or by an omission to perform some duty imposed by law or agreement on City, its subcontractors or either's agent or employee.

(b)  City shall indemnify, reimburse, and save harmless Contractor and its officers, agents and employees from, and, if requested, shall defend them against any and all loss, damage, injury, liability, and claims thereof for injury to or death of a person, including employees of Contractor, or loss of or damage to tangible

property, other than newspapers and other materials distributed from Fixed Pedestal Units, to the extent such loss, damage, injury, liability, or claim arises from City's performance of this Agreement and is not contributed to by Contractor, its subcontractors or either's agent or employee through any negligent or intentionally wrongful act (other than the hiring or supervision of City), or by an omission to perform some duty imposed by law or agreement on Contractor, its subcontractors or either's agent or employee.

(c)    Contractor shall indemnify and hold City harmless from all loss and liability, including reasonable attorney's fees and court costs all other litigation expenses for any infringement of the patent rights, copyright, trade secret, or other proprietary right or trademark and all other intellectual property claims of any person or persons in consequence of the use by City, or any of its officers or agents, of articles or services to be supplied by Contractor in the performance of the Agreement.

(d)    Except as provided at Section 8.8(a) or (c) herein, and notwithstanding any part or possible interpretation of any provision of this Agreement, City shall indemnify, reimburse, pay, protect, defend and hold harmless Contractor from, against, and for any and all claims, damages, lost profits, causes of action, costs and expenses, including attorneys' fees, court costs and all other litigation expenses, caused by, brought, initiated by, or arising in any way from any claim by any "Challenging Party" (defined to mean (i) anyone asserting an alleged right to receive information; or (ii) any Permit Holder or publisher (or anyone acting on their behalf or representing their interests, including a trade association)): in any way connected with or related to the City's Fixed Pedestal Unit program (including any related ordinance or guideline), Fixed Pedestal Units, their operation or this Agreement. Without prejudice to Contractor's right to indemnification, City shall immediately defend Contractor through counsel proposed by Contractor and agreed to by City, which agreement shall not be unreasonably withheld, whose reasonable fees, costs and litigation expenses shall be paid by City (hereinafter "outside counsel"), provided that:

(i)    In the event of a lawsuit, claim, or cause of action brought or initiated by any Challenging Party challenging a discrete past action, decision, or discretionary determination by City concerning the locations of fixed pedestal zones or fixed pedestal units, the allocation of space within fixed pedestal units, or the issuance, denial, or revocation of fixed pedestal permits (but excluding a lawsuit challenging the constitutionality or legality f the Fixed Pedestal-Mounted Newsrack Program), City may satisfy its obligation to defend Contractor under this Section 8.8(d) through a defense afforded by a Deputy City Attorney separate and ethically walled off from any Deputy City Attorney(s) defending the City against such lawsuit, claim, or cause of action, so long as Contractor is exclusively represented by outside counsel with respect to (i) all settlement communications or negotiations whatsoever; and (ii) all specific litigation tasks (including responding to particular discovery and

33

interviewing Contractor personnel and any affiliates, agents, partners or subcontractors of Contractor (collectively, "Confidential Personnel")) which require access to Confidential Personnel or Confidential Personnel's documents or information.

(ii)    To the extent reasonably possible and consistent with Contractor's interests, any outside counsel representing Contractor shall allow the City to take the lead role in responding to and defending the City's Fixed Pedestal-Mounted Newsrack Program against any lawsuit, claim, or cause of action that challenges the constitutionality or legality of that program, and said outside counsel shall take a secondary role in responding to such a lawsuit, claim, or cause of action, to avoid incurring unnecessary attorney's fees, costs, and litigation expenses.

(iii)   In a matter where Contractor has been represented by its first choice of outside counsel paid for by City, if there is a specific determination made part of a final judgment (following the exhaustion of all appeals), determining that Contractor's failure to comply with any term or provision of this Agreement has proximately caused a Challenging Party to sustain damages, Contractor shall indemnify and hold City harmless for such damages awarded to such Challenging Party, and reimburse City for those reasonable attorney's fees, costs and litigation expenses actually expended by City in defense of the particular allegation upon which the determination is made.  At Contractor's option, to the extent reasonably possible and consistent with City's interests, City shall allow any counsel representing Contractor to take the lead role in responding to and defending any allegation that Contractor's failure to comply with any term or provision of this Agreement has proximately caused a Challenging Party to sustain damages, and counsel for the City shall take a secondary role in responding to such a lawsuit, claim, or cause of action, to avoid incurring unnecessary attorney's fees, costs, and litigation expenses.

(e)    Except as provided herein, the parties each specifically acknowledge and agree that each has an immediate and independent obligation to defend the other to the extent provided in this Section 8.8 from any claim which actually or potentially falls within a party's respective indemnification obligation under this Section 8.8, even if the allegations are or may be groundless, false or fraudulent, which obligation arises at the time such claim is tendered by the other party. Notwithstanding the foregoing, Contractor may, but is not required to defend City, in circumstances covered by Section 8.8(d)(iii), which shall be handled through reimbursement, if applicable.

(f)    The failure of Contractor to participate in or to agree to anything in any pre-litigation "meet and confer" type exchange concerning a purported dispute with a third party, including a Challenging Party, shall not in any way diminish or prejudice Contractor's rights herein, nor be raised by City as a purported defense to any claim by Contractor.

5551693v11

8.9    **Social Security, Unemployment Compensation**. Subject to rules concerning privacy protection or other legal restrictions that may preclude disclosure, Contractor, upon request, shall furnish to City adequate evidence of compliance with laws relating to Social Security and Unemployment Compensation.

8.10   **Notices; When Effective**. Except as provided in this Section 8.10, all notices, requests, demands and other communications that are required under this Agreement shall be in writing and shall, if properly addressed, be deemed to have been duly given (i) when received if personally delivered, (ii) upon electronic confirmation of receipt, if transmitted by facsimile, (iii) one (1) Business Day after deposit for overnight delivery by a nationally recognized overnight delivery service (e.g., Federal Express) if paid in advance and properly addressed, (iv) five (5) Business Days from the date of deposit in the U.S. mails, if sent with proper postage paid by certified or registered U.S. mail, return receipt requested, and (v) upon electronic confirmation of receipt, if transmitted by electronic mail. Notwithstanding the foregoing, a notice of default may not be sent by electronic mail. In each case notice shall be pursuant to the contact information listed below or such other or additional contact information as designated in a written notice delivered to the other party. The parties shall provide notice to each other with appropriate electronic mail addresses. The parties shall promptly provide notice regarding any change to any contact information including electronic mail addresses.

> To City:
> Department of Public Works
> City and County of San Francisco
> Attention: Newsrack Program Manager
> City Hall, Room 348
> 1 Dr. Carlton B. Goodlett Place
> San Francisco, CA 94102
>
> Tel: (415) 554-6917
> Fax: (415) 554-6944
>
> To Contractor:
> Clear Channel Adshel, Inc.
> Attention: President
> 110 East 42nd Street, Suite 1800
> New York, NY 10017
>
> Tel: (212) 972-0515
> Fax: (212) 972-0399

8.11   **Event of Default; Remedies**.

(a)    **Default of Contractor**. In the event that Contractor fails to comply with or carry out any material term, covenant, condition, or promise herein set forth, City may

35

5551693v11

elect to serve upon Contractor a Notice of Default. If Contractor fails to cure such default within thirty (30) days after receipt of said notice, or, if such default cannot be cured within such period, if Contractor does not commence to cure within such thirty (30) days and thereafter diligently pursue such cure to completion, then City may elect to terminate this Agreement. No thirty (30) day cure period shall be applicable where a liquidated damages provision has been agreed to by the parties. Termination shall be effective upon written notice to Contractor. Contractor shall undertake no new work after the date of receipt of any notice of termination.

(b)    Bankruptcy or Reorganization Proceedings. Contractor shall be deemed to be in default of this Agreement in the event that Contractor or its successors or assigns shall cease conducting a newsrack business, become insolvent, make a general assignment for the benefit of creditors, suffer or permit the appointment of a receiver for its business or assets or shall avail itself of, or become subject to, any proceeding under the Federal Bankruptcy Act or any other statute of any state of these United States or any other foreign country relating to the insolvency or the protection of rights of creditors, and, in the case of any involuntary action, fails to remove or discharge the same within thirty (30) days after the filing of the involuntary action. Then, at the option of the other party, this Agreement shall terminate and be of no further force and effect, and any property or rights of such other party, tangible or intangible, shall forthwith be returned to it. Upon the occurrence of any of the foregoing events, the City shall have the right to terminate this Agreement forthwith and Contractor or its successor in interest by operation of law or otherwise shall thereafter have no rights in or to this Agreement or to any of the privileges herein conferred.

(c)    Option to Demand Payment on Letter of Credit; Performance Bond. In the event of a default by Contractor under this Agreement which causes City to suffer any loss or damage, whether or not said default is timely cured, City shall be entitled to draw up to the full amount of the performance bond or letter of credit, as provided in Section 8.6, in an amount equal to the amount necessary to compensate the City for said loss or damages incurred as a result of Contractor's failure to comply with the Agreement, including but not limited to the City's costs of operating and maintaining the Fixed Pedestal Units in the event of Contractor's default and failure to cure said default within the applicable cure period. If Contractor has not fulfilled its obligations to install the required Fixed Pedestal Units at the time of said default, then after the expiration of any applicable cure period, the City shall also be entitled to make a demand on Contractor's performance bond or other guarantee of performance, as provided in Section 8.5 of this Agreement, in addition to any other remedies available in law or equity.

(d)    Damages. In the event that either party serves a Notice of Default on the other, and such default is subsequently cured, the non-defaulting party shall be entitled to recover from the defaulting party any loss or damage which the non-defaulting party may have reasonably incurred by reason of such default. Each party shall

5551693v11

have available to it the remedies provided for in this Section as well as all remedies available in law and equity, to resolve its claim for loss or damage.

(e) <u>Rights of Parties Accrued Prior to Termination</u>. Without limiting or affecting, by implication or otherwise, the rights and obligations of the parties in circumstances not covered by Section 8.11, termination of this Agreement pursuant to this Section 8.11 shall not in any way affect the rights and obligations of the parties with respect to damages or amounts payable to the other party which have accrued prior to such termination.

8.12 **No Waiver of Subsequent Breaches or Defaults; Other Remedies**. The failure of either party to insist upon a strict performance of any of the terms, conditions and covenants herein by the other party shall not be deemed a waiver of any subsequent breach or default in the terms, conditions and covenants herein contained. The exercise of the remedies provided for in this Agreement shall be cumulative and shall in no way affect any other remedy the parties may have available in law or equity. The exercise by either party of any of the options set forth in this Agreement by commencement of legal proceedings, audit, or otherwise, shall not be deemed a waiver of its right to exercise any other option provided herein.

8.13 **Subcontracting**.

(a) <u>Limitations</u>. Contractor may subcontract portions of its services provided to the City under this Agreement upon the written authorization of the Director which authorization shall not be unreasonably withheld. However, such consent shall not relieve Contractor from any liability or obligations under this Agreement, and as between City and Contractor, Contractor shall be responsible for the acts, defaults or omissions of subcontractors. Contractor shall ensure that its subcontractors comply with all of the terms of this Agreement, insofar as they apply to the subcontracted portion of this Agreement. All references herein to duties and obligations of Contractor shall be deemed to pertain also to all subcontractors to the extent applicable. A default by any subcontractor shall be deemed to be a default under this Agreement to the extent that Contractor does not cure the default within the applicable cure period. Nothing contained in this Agreement shall create any contractual relationship between any subcontractor and the City. Neither party shall on the basis of this Agreement, contract on behalf of or in the name of the other party.

(b) <u>Terms of Subcontract</u>. Each subcontract shall expressly provide that it may be assigned to City without the prior written consent of the subcontractor to the subcontracted portion of the Agreement in the event of default by the Contractor. Each subcontract shall also provide to the City, the audit and inspection rights set forth in Section 8.15, with respect to the subcontractor. Upon written request by City, Contractor shall promptly furnish to City true and correct copies of each subcontract permitted hereunder.

(c)   Violation. An agreement made in violation of this provision shall confer no rights on any party and shall be null and void.

8.14   **Financial Report.** Upon request by City, Contractor shall provide to City through its Director, a verified statement by an authorized executive of Gross Annual Advertising Revenue no more frequently than every five (5) years beginning with the Effective Date of this Agreement throughout the term of this Agreement.

8.15   **Audit and Inspection of Books.** Contractor agrees to maintain accurate accounting books and records relating to its work under this Agreement. No more than once every twelve (12) months, during regular business hours and upon at least three (3) weeks prior notice, Contractor will permit City at City's sole expense to audit, examine and make excerpts and transcripts from such accounting books and records. Notwithstanding any possible interpretation of this Section 8.15, Contractor is not required to disclose privileged documents, business memoranda, plans or projections, personnel records, or any information subject to rules of privacy protection or other legal restrictions that may preclude disclosure.

8.16   **Confidentiality.** City warrants that information received from Contractor in confidence pursuant to Sections 8.14 and/or Section 8.15 will be maintained in confidence by City. City warrants that it will immediately provide notice to Contractor if City receives a request for disclosure of such information and City shall take all lawful steps, including through litigation, to resist the disclosure of such information. Contractor specifically acknowledges that this Section is subject to City's compliance with the Public Record Acts and any laws of similar import.

8.17   **Compliance With Laws; Change In Laws.**

(a)   Contractor shall be and shall keep fully informed of the City Charter, codes, ordinances and regulations and of all state, local and federal laws of general applicability affecting the performance of this Agreement, including but not limited to local and state planning, public works, electrical, and other applicable codes, and shall at all times comply with said codes, and with San Francisco Public Works Code Section 184.12 regarding Fixed Pedestal Newsracks. Citation of specific code sections in this Agreement shall not exonerate Contractor from its obligation of compliance with all applicable local, state, federal laws and ordinances. Contractor shall be responsible for all installation costs of Fixed Pedestal Units, required permits and approvals.

(b)   Notwithstanding any other part or possible interpretation of this Section or this Agreement, Contractor is not responsible for determining if Installation Information provided by City, or any portion thereof, is in compliance with applicable local, state, or federal laws, guidelines, orders or rules of any kind, including Orders of the Director.

(c)   Contractor understands and agrees that except as provided by this Agreement, Contractor's rights hereunder do not include the designation of Fixed Pedestal

38

Zones or the determination as to where Fixed Pedestal Units are located whether through an original installation or a relocation.

(d) Contractor acknowledges that this Agreement includes provisions granting to City the right to order the removal to accomplish a relocation of Fixed Pedestal Units as well as the actual relocation, and the right to terminate the Agreement and upon such termination to order the removal of all Fixed Pedestal Units ("Specified Rights"). The parties mutually acknowledge and agree that the advertising rights granted herein may be affected by changes in the conduct of the City's municipal affairs, including changes resulting from changes in federal, state or local laws. Except for a breach of this Agreement or as otherwise provided for in this Agreement, City shall have no liability for any such change affecting the level, scope, time, place or manner of or the revenue to Contractor from advertising authorized by this Agreement. Contractor understands and agrees that this Agreement does not create any rights in Contractor, at any specific location within the City, to install Fixed Pedestal Units or display advertising, except as provided herein. For example, and without attempting to be exhaustive, City understands and agrees that the foregoing is not intended to diminish in any way Contractor's rights hereunder concerning Contractor's selection of which Fixed Pedestal Units within the Advertising Zone bear advertising, Contractor's rights when it has relied on Installation Information, or Contractor's rights concerning the relocation of Fixed Pedestal Units as those rights are provided herein. Subject to the other terms of this Agreement, Contractor fully waives, releases and relinquishes forever any and all claims, demands, rights and causes of action that it may have against the City under the Outdoor Advertising Act (Business and Professions Code, Section 5200 et seq.), any amendments thereto or other future laws, for any compensation from City, including the payment of just compensation, as defined in the Eminent Domain Law (Title 7, commencing with Section 1230.010, of Part 3 of the Code of Civil Procedure), in the event City lawfully and in accordance with the provisions of this Agreement exercised one or more of the Specified Rights.

(e) A "City Act" as used herein occurs if City adopts any ordinance, guideline, regulation, code, rule, or takes an action of any kind, including Director's Orders, that concerns Fixed Pedestal Units, or that concerns outdoor advertising and which affects Fixed Pedestal Units,

(i) except for laws of general applicability. (However, in construing this Agreement it is agreed that a law or act of any kind, that concerns Fixed Pedestal Units, or that concerns outdoor advertising and which affects Fixed Pedestal Units, is not a law of general applicability.); and

(ii) except for laws or actions of any kind by City that have the effect of determining where Fixed Pedestal Zones and/or Fixed Pedestal Units may or may not be placed, so long as (i) City adopts such laws or takes such actions before Contractor has received Installation Information or any portion thereof relating to the area(s) to which such laws or actions relate,

1551693v11

and (ii) such laws or actions do not prevent Contractor from installing 485 Unobstructed Fixed Pedestal Units within the Advertising Zone according to the terms of this Agreement, including pacing; and

(iii)     except for directives that are unrelated to Contractor's rights and obligations herein, or commercially reasonable directives regarding: (i) the method and technology for fastening Fixed Pedestal Units to sidewalks, or (ii) the ministerial process of Contractor's submission of location drawings or installation applications to the City. The commercial reasonability of said directives depends upon the degree to which the change adds inconvenience, financial risk, or expense to Contractor's performance of this Agreement. By way of example, and not limitation, it is agreed that directives that require installation of a concrete pad or similar support system for any Fixed Pedestal Unit, or that impose any fees proscribed by Section 3.3(c) herein are not commercially reasonable as used herein.

(f)     City may cause a City Act without Contractor's consent. If a City Act occurs with Contractor's written consent then the remainder of this Section 8.17(f) does not apply. If a City Act occurs without Contractor having consented in writing, to that City Act, and City fails to rescind or modify the City Act to render it no longer a City Act within sixty (60) days of receiving written notice of the City Act from Contractor, then, without limiting Contractor's other rights or remedies:

(i)     Contractor has the option to terminate this Agreement, without further cause, upon at least ninety (90) days' prior written notice to City, and City shall pay Contractor the Fair Market Value of the installed Fixed Pedestal Units which shall become the property of City.

(ii)     If Contractor terminates this Agreement as authorized by Section 8.17(f)(i), then City shall pay Contractor all actual damages and all future lost profits based on what would have been the remaining maximum duration (including extensions provided under Section 2.7 herein) of the Agreement measured from the date of the notice of termination ("remainder of the term") based on the City's laws and acts existing immediately prior to the City Act. In such circumstance, Contractor is absolutely entitled to all actual damages and all future lost profits and the sole question is one of quantifying the amount of actual damages and future lost profits, if any. It is agreed that the nature of the City Act and the fact that Contractor exercised Contractor's option to terminate the Agreement are immaterial and not admissible as to the question of the quantification of actual damages and future lost profits, if any, and is only admissible, if at all, if City maintains that a City Act did not occur, that Contractor consented in writing to the City Act, that Contractor did not give City written notice of the City Act as provided above, or that City rescinded or modified the City Act as provided above so as to render it no

5551693v11

longer a City Act, such that Contractor may not terminate the Agreement under this Section.

(iii)    Contractor may elect to continue the Agreement, in which case City shall pay Contractor all of Contractor's actual damages and future damages, including lost profits if applicable, to the extent caused by the City Act. City fully waives, releases and relinquishes forever all defenses, if any, to any effort by Contractor to receive amounts under this Section 8.17(f)(iii), to the extent the defense is based in any way on Contractor failing to elect to exercise is option under Section 8.17(i) and/or Section 8.17(ii) of this Agreement.

(iv)    In any matter covered by Section 8.17(e)-(g), Contractor is not required to establish its actual damages, future damages, and future lost profits with certainty; a projection of reasonable reliability is sufficient. In addition, to those rights specified in Section 8.17(e)-(g), Contractor may pursue all other legal remedies it might have in any way concerning a City Act. It is agreed that Section 8.17(d) is void, unenforceable, not operative and not a bar as to any recovery sought by Contractor if Contractor is pursuing a recovery following a termination of this Agreement under this Section 8.17(f), but if the Agreement is not terminated then Section 8.17(d) is void, unenforceable and not operative only in respect of the City Act and Contractor's rights and remedies in response to the City Act. City fully waives, releases and relinquishes forever all defenses, if any, to the enforceability or legality of Section 8.17(e)-(g).

(g)    In respect of any claims or remedies for compensation to Contractor as authorized by Section 8.17(e)-(f), either party may demand and require an arbitration. Such arbitration will be conducted by the American Arbitration Association ("AAA") in San Francisco, California and will be initiated and conducted in accordance with the Commercial Arbitration Rules of the AAA (or such other arbitrator and rules as the parties agree to), as such rules are in effect on the date of delivery of a demand for arbitration, except to the extent that such rules are inconsistent with the terms set forth in this Agreement. The arbitrator shall not have had any history of any employment or professional relationship with either party to the arbitration. Judgment upon the award may be entered in any court having jurisdiction, or application may be made to such court for judicial acceptance of the award and/or an order of enforcement as the case may be. Consistent with the expedited nature of arbitration, each party will, upon the written request of the other, promptly provide the other party with copies of documents relevant to the issues raised by any claim or counterclaim on which the producing party may rely in support of or in opposition to any claim or defense. In no event shall any party be required to produce information for particular Fixed Pedestal Units or advertising sales transactions. Information that is aggregated shall be deemed sufficient. If City receives information in confidence from Contractor, designated by Contractor as confidential business information, City shall maintain such information in confidence subject to the provisions of the Public Records Act or

any other applicable legal obligation, but in any event shall give Contractor at least seven (7) day's advanced written notice by facsimile, preceded by notice by telephone if possible, prior to any disclosure. Any dispute regarding discovery, or the relevance or scope thereof, shall be determined by the arbitrator, whose determination shall be conclusive, except that Contractor may seek judicial protection in respect of the disclosure of confidential information. No party may conduct a deposition without the prior approval of the arbitrator and in no event shall a party conduct more than three (3) depositions, each no longer than six (6) hours. All discovery shall be completed within sixty (60) days following the appointment of the arbitrator. In addition to any recovery that may be awarded to Contractor, the arbitrator shall award to the prevailing party an award of all fees and costs. "Fees and costs" means all pre-award expenses of the arbitration, including, but not limited to, attorneys' fees, arbitrator's fees, administrative fees, travel expenses, court costs, witness fees, litigation expenses and out-of-pocket expenses such as copying and telephone charges. In respect of all decisions, the arbitrator shall issue a written statement explaining its decision and reasoning.

(h)     If the State of California, the federal government or any other non-City related governmental agency (other than with the endorsement or encouragement of City in which case the circumstances are covered by Section 8.17(e)-(g)), or any court adopts or effects a change in law or regulations, which significantly affects Contractor's ability to sell advertising, significantly restricts the areas in which advertising bearing Fixed Pedestal Units are permitted, or significantly increases the cost of operation, including the cost of maintenance, manufacture or installation of Fixed Pedestal Units, then at the option of Contractor, City and Contractor shall negotiate in good faith possible modifications to this Agreement to compensate for the effect of such change. In no event shall City or Contractor be required to agree to any particular modification of this Agreement. If no modification of the Agreement satisfactory to Contractor is agreed upon after one hundred and twenty (120) days, Contractor may, at its option and without prejudice to any other rights it may have, elect to terminate this Agreement upon ninety (90) days' prior written notice to City.

(i)     Contractor may or may not exercise any of its rights herein without prejudice to other rights it may or may not have including any rights for breach of this Agreement by City.

## ARTICLE IX – MISCELLANEOUS CONTRACT PROVISIONS

9.1     **Conflict of Interest**. Contractor states that it is familiar with provisions of Section 15.103 and Appendix C8.105 of the Charter of City, and Section 87 100 et seq. of the Government Code of the State of California, and certifies that it does not know of any facts which constitute a violation of said provisions.

9.2     **Other Agreements Between City and Contractor**. Contractor agrees that to the best of its knowledge and belief it does not have any interest, and to the best of its actual knowledge, none of Contractor's current employees has any interest in any other

42

agreement with City. Failure to have disclosed such information may result in termination of this Agreement.

9.3 **Assignment.** Except as otherwise provided herein, this Agreement and the rights granted therein may not be assigned by Contractor without the prior written consent of City, which consent shall not be unreasonably withheld. If Contractor is a corporation, any dissolution, merger, consolidation, or other reorganization of Contractor assets or operations, or the sale or other transfer of a controlling percentage of Contractor's capital stock, or the sale of fifty-one percent (51%) of the value of Contractor's assets, shall be deemed an involuntary assignment not requiring the City's approval or consent. The phrase "controlling percentage" shall mean the ownership of and the right to vote upon, stock possessing at least fifty-one percent (51%) of the total combined voting power of all classes of Contractor's capital stock issued, outstanding and entitled to vote for the election of directors. Contractor shall not be required to obtain City's consent in connection with any assignment or transfer by Contractor of its rights under this Agreement to an Affiliate. For purposes of this Agreement, the term "Affiliate" is defined as an entity that directly or indirectly controls, is controlled by or is under common control with Contractor, and "control" means the power to direct the management of such entity through voting rights, ownership or contractual obligations.

9.4 **Binding Effect of Agreement.** This Agreement shall bind and inure to the benefit of the all the successors or assigns of the parties hereto.

9.5 **Taxes.**

    (a)    Contractor acknowledges and agrees that during the entire term of this Agreement, Contractor shall pay prior to delinquency, all lawful taxes and assessments, including, but not limited to, possessory interest taxes and California Sales and Use Taxes, assessed, imposed or levied upon this Agreement, the transaction, Contractor's interest under this Agreement, any of Contractor's property or the City's property which is the subject of this Agreement or the services delivered pursuant hereto to the full extent of installments or amounts payable arising during the term of this Agreement.

    (b)    Without limiting Section 9.05(a), Contractor agrees as follows:

        (i)    Contractor, on behalf of itself and any permitted successors, assigns and subcontractors, recognizes and understands that this Agreement may create a possessory interest subject to property taxation and Contractor, and any permitted successor, assign, or subcontractor may be subject to the payment of such taxes.

        (ii)    Contractor, on behalf of itself and any permitted successors, assigns and subcontractors, further recognizes and understands that any subcontract or assignment permitted hereunder and any exercise of any option to renew or other extension of this Agreement may constitute a change in ownership within the meaning of the California Revenue and Taxation

43

Code and therefore may result in a reassessment of any possessory interest created hereunder in accordance with applicable laws. Contractor shall report any subcontract, assignment or other transfer of any interest in this Agreement or any renewal or extension thereof to the County Assessor within sixty (60) days after such assignment, transfer, renewal or extension.

    (iii)    San Francisco Administrative Code Sections 6.63-1 and 6.63-2 require City to report certain information relating to this Agreement and the creation, renewal, extension, assignment or the transfer of any interest granted hereunder to the County Assessor within sixty (60) days after any such transaction and within thirty (30) days following the date of any transaction that is subject to reporting requirements. Contractor shall provide such information as may be requested by the City to enable the City to comply with any reporting requirements under applicable law with respect to possessory interests.

    (c)    Contractor shall pay or reimburse City, as the case may be, for any fine, penalty, interest or costs which may be added by the collecting authority to late payment or any nonpayment of any tax or other imposition required to be paid by Contractor under this Agreement.

    (d)    Within a reasonable time following the City's written request, given from time to time, Contractor shall deliver to City copies of official receipts of the appropriate taxing authorities, or other proof reasonably satisfactory to City, evidencing the timely payment of such taxes.

    (e)    All taxes and impositions for the tax years in which the Effective Date occurs or during the tax year in which this Agreement terminates shall be apportioned and prorated between City and Contractor on the basis of the number of days occurring in such period.

**9.6**    **Legal Relationship**. The parties hereby declare that it is not their intention by this Agreement or any of the terms thereof to create a partnership, joint venture or agency relationship between them.

**9.7**    **Independent Contractor**.

    (a)    Contractor shall be deemed at all times to be an independent contractor and shall be wholly responsible for the manner in which Contractor performs the service required of Contractor by the terms of this Agreement. Contractor shall be liable for the acts and omissions of it, its employees and its agents. Nothing contained herein shall be construed as creating an employment or agency relationship between City and Contractor. Terms in this Agreement referring to direction from City shall be construed as providing for direction as to policy and the result of Contractor's work only and not as to the means by which such a result is obtained.

5551693v11

(b)     Should the City, in its discretion, or a relevant taxing authority such as the Internal Revenue Service or the State Employment Development Division, or both, determine that Contractor is an employee for purposes of collection of any employment taxes, the amounts payable under this Agreement shall be reduced by amounts equal to both the employee and employer portions of the tax due (and offsetting any credits for amounts already paid by Contractor which can be applied against this liability). The City shall then forward those amounts to the relevant taxing authority.

(c)     A determination of employment status pursuant to the preceding paragraph shall be solely for the purposes of the particular tax in question, and for all other purposes of this Agreement, Contractor shall not be considered an employee of the City. Notwithstanding the foregoing, should any court, or administrative authority determine that Contractor is an employee for any other purpose, then Contractor agrees to a reduction in the City's liability resulting from this Agreement pursuant to principles similar to those stated in the foregoing paragraphs so that the total expenses of the City under this Agreement shall not be greater than they would have been had the court, or administrative authority determined that Contractor was not an employee.

9.8     **Qualified Personnel**.  Work under this Agreement shall be performed only by competent personnel under the supervision of and in the employment of Contractor.  City may make reasonable requests regarding assignment of personnel, but Contractor shall not be obligated to conform with such requests.  All personnel, including those assigned at City's request, shall be supervised by Contractor.

9.9     **Minority/Women/Local Business Utilization; Liquidated Damages**.

(a)     Contractor shall use its best efforts to achieve a twenty (20) percent subcontracting participation goal ("the MBE/WBE Participation Goal") for Minority Business Enterprise (MBE) firms and Women Business Enterprise (WBE) firms certified by City's Human Rights Commission (HRC) in the provision of goods and services under this Agreement.  For the purposes of this Agreement, Contractor shall be deemed to have attained the MBE/WBE Participation Goal if the aggregate value of Contractor's subcontracts with MBE and WBE firms under this Agreement shall equal or exceed an amount (the "Commitment Amount") equal to twenty (20) percent of the capital costs incurred by Contractor in connection with the Fixed Pedestal Units authorized hereunder throughout the term of this Agreement. The Commitment Amount shall be calculated as of the date of completion of the installation of one thousand (1,000) Fixed Pedestal Units described in Section 3.1(a) herein.

(b)     The terms "best efforts", "Minority Business Enterprise" and "Women Business Enterprise" shall have the meanings set forth in San Francisco Administrative Code Section 12D.A.5 subsections 1 through 10, which definitions are incorporated by reference and made a part of this Agreement as though fully set forth.

45

(c)　　Contractor shall submit to HRC on the annual anniversary of the Effective Date, a report verified by an authorized executive stating the capital costs described in subsection 9.9(a) and the payments made by Contractor to MBE and WBE firms performing work under this Agreement and a written report of the efforts Contractor has made during the prior year to attain the MBE/WBE Participation Goal pursuant to subsection 9.9(a). If the Director of the Human Rights Commission reasonably determines that Contractor has not used its best efforts to attain the MBE/WBE Participation Goal, the Director of HRC shall notify Contractor in writing within thirty (30) Business Days after HRC's receipt of such report of Contractor's breach of its obligations under subsection 9.9(a) and the specific actions that Contractor must take in order to cure such default.

(d)　　If, by the end of the term of this Agreement, Contractor has failed to (i) achieve the MBE/WBE Participation Goal and (ii) use its best efforts to attain the MBE/WBE Participation Goal in any year during the term of this Agreement and cure such default after receipt of written notice from the Director (as provided in subsection 9.9(c), then Contractor shall pay to City, as its sole remedy for Contractor's breach of its obligations under this Section 9.9, the Liquidated Damages Amount. For purposes of this Agreement, the Liquidated Damages Amount is defined as an amount equal to the lessor of (i) the positive difference between (A) the Commitment Amount and (B) the aggregate value of Contractor's subcontracts with MBE and WBE firms under this Agreement and (ii) the product of (X) the Commitment Amount and (Y) a fraction, the numerator of which is the number of years during the term of this Agreement during which Contractor failed to use its best efforts to attain the MBE/WBE Participation Goal and cure such default after Contractor's receipt of written notice from the Director, and the denominator of which is twenty (20). If Contractor has achieved the MBE/WBE Participation Goal by the end of the term of this Agreement, Contractor shall not be obligated to pay to City the Liquidated Damages Amount even though Contractor may have failed to use its best efforts to attain the MBE/WBE Participation Goal during one or more years during the term of this Agreement. Contractor's obligations under this Section 9.9 with respect to the payment of the Liquidated Damages Amount shall be secured by the additional performance bond described in Section 8.6. Notwithstanding anything to the contrary herein, no Liquidated Damages Amount shall be required in the event that the term of this Agreement is less than twenty (20) years.

9.10　**Nondiscrimination; Penalties.** Chapters 12B and 12C of the San Francisco Administrative Code are incorporated in this Section by reference and made a part of this Agreement as though fully set forth herein. Contractor shall comply fully with and be bound by all of the provisions that apply to this Agreement under such Chapters of the Administrative Code, including but not limited to the remedies provided in such chapters, provided that such provisions have not been found invalid by a court of law in circumstances which would be applicable to this Agreement or in connection with this Agreement specifically. Without limiting the foregoing, Contractor understands that pursuant to Section 12B.2(h) of the San Francisco Administrative Code, a penalty of $50 for each person for each calendar day during which such person was discriminated

5551693v11

against in violation of the provisions of this Agreement may be assessed against Contractor and/or deducted from any payments due Contractor.

9.11 **MacBride Principles – Northern Ireland**. The City urges companies doing business in Northern Ireland to move towards resolving employment inequities, and encourages such companies to abide by the MacBride Principles. The City urges San Francisco companies to do business with corporations that abide by the MacBride Principles. By signing below, the persons executing this Agreement on behalf of the Contractor acknowledge and agree that they have read and understood this section.

9.12 **Tropical Hardwood and Virgin Redwood Ban**. The City urges Contractor not to import, purchase, obtain, or use for any purpose, any tropical hardwood, tropical hardwood products, virgin redwood or virgin redwood products.

9.13 **Resource Conservation**. Reports required to be submitted under this Agreement shall be on recycled paper and printed on double-sided pages to the maximum extent possible.

9.14 **Non-Waiver of Rights**. The omission by either party at any time to enforce any default or right reserved to it, or to require performance of any of the terms, covenants, or provisions hereof by the other party at the time designated, shall not be a waiver of any such default or right to which the party is entitled, nor shall it in any way affect the right of the party to enforce such provisions thereafter.

9.15 **Modification and Amendment of Agreement**. This Agreement may be modified or amended only by a written instrument signed by both City and Contractor. Each party's compliance with the terms of this Agreement may not be waived, except by written instrument executed and approved in the same manner as this Agreement.

9.16 **Section and Paragraph Headings**. The section headings and paragraph captions contained herein are for convenience in reference and are not intended to define or limit the scope of any provision hereof.

9.17 **Agreement Made in California; Venue**. The information, interpretation and performance of this Agreement shall be governed by the laws of the State of California, excluding its conflict of laws rules. Venue for all litigation relative to the formation, interpretation and performance of this Agreement shall be in San Francisco.

9.18 **Entire Agreement**. This Agreement, including all Appendices hereto, sets forth the entire agreement between the parties, and supersedes all other oral or written agreements, representations, statements, negotiations, and undertakings between the parties other than any operative written signed settlement agreement and mediation confidentiality agreement for the Action. This Agreement may be modified only as provided in Section 9.15.

9.19 **Submitting False Claims; Monetary Penalties**. Contractor acknowledges that it is subject to San Francisco Administrative Code Section 6.57, which provides that any contractor, subcontractor or consultant who submits a false claim shall be liable to the City for three times the amount of damages which the City sustains because of the false

5551693v11

claim. A contractor, subcontractor or consultant who submits a false claim shall also be liable to the City for the costs, including attorney's fees, of a civil action brought to recover any of those penalties or damages, and may be liable to the City for a civil penalty of up to $10,000 for each false claim. A contractor, subcontractor or consultant will be deemed to have submitted a false claim to City if the contractor, subcontractor or consultant: (a) knowingly presents or causes to be presented to an officer or employee of the City a false claim or request for payment or approval; (b) knowingly makes, uses, or causes to be made or used a false record or statement to get a false claim paid or approved by the City; (c) conspires to defraud the City by getting a false claim allowed or paid by the City; (d) knowingly makes, uses, or causes to be made or used a false record or statement to conceal, avoid, or decrease an obligation to pay or transmit money or property to the City; or (e) is a beneficiary of an inadvertent submission of a false claim to the City, subsequently discovers the falsity of the claim, and fails to disclose the false claim to the City within a reasonable time after discovery of the false claim.

9.20    **Prohibiting City Business With Burma**. By its execution of this Agreement, Contractor attests that it is not the government of Burma (Myanmar), a person or business entity organized under the laws of Burma (Myanmar) or a "prohibited person or entity" as defined in San Francisco Administrative Code section 12J.2(G). The City may terminate this Agreement for default if Contractor violates the terms of section 12J.2(G). Chapter 12J of the San Francisco Administrative Code is hereby incorporated by reference as though fully set forth herein. The failure of Contractor to comply with any of its requirements shall be deemed a material breach of contract. In the event that Contractor fails to comply in good faith with any of the provisions of Chapter 12J of the San Francisco Administrative Code, Contractor shall be liable for liquidated damages for each violation in an amount equal to Contractor's net profit under the contract, or 10% of the total amount of the contract, or $1,000, whichever is greatest. Contractor acknowledges and agrees that the liquidated damages assessed shall be payable to the City upon demand and may be set off against any moneys due to the Contractor from any City contract.

9.21    **Ownership of Results**. City shall have a non-exclusive, non-transferable license to use for City's own non-commercial purposes copies of complaint logs, installation location site plans, and maintenance reports obtained by City under this Agreement and any other specific documents mutually agreed to in writing by City and Contractor. All drawings, plans, specifications, and other documents prepared by Contractor or its subcontractors are and shall remain the property of Contractor, and Contractor shall retain all common law, statutory and other reserved rights with respect hereto.

9.22    **Survival of Terms**. The following sections of this Agreement shall survive the termination or expiration of this Agreement: 2.1, 2.2, 2.3, 2.4, 2.5, 2.6, 2.7, 2.8, 3.9, 8.4, 8.6, 8.8, 8.10, 8.11, 8.16, 8.17, 9.4, 9.5, 9.7, 9.14, 9.15, 9.16, 9.17, 9.18, 9.19, 9.21, 9.22, 9.23, 9.24, 9.25, 9.26, 9.27.

9.23    **Attorneys' Fees**. If either party commences an action against the other or a dispute arises under this Agreement, the prevailing party shall be entitled to recover from the other reasonable attorneys' fees and costs. For purposes hereof, reasonable attorneys'

5551693v11

fees of City shall be based on fees regularly charged by private attorneys in San Francisco with comparable experience.

9.24    **Force Majeure**. No party to this Agreement shall be held responsible or incur any liability for any delay or failure in the performance of any part of this Agreement to the extent that such delay or failure results from causes beyond its reasonable control, including but not limited to fire, flood, explosion, war, labor dispute, embargo, government requirement, civil or military authority, supply disruption, natural disasters, criminal acts of third parties, earthquakes, severe weather or other similar types of situations. If such a situation occurs, the party delayed or unable to perform shall give prompt notice to the other party and shall use its commercially reasonable best efforts to resume services, to the extent possible, as soon as practicable after the cessation of the situation. If services or the exercise of rights herein cannot be resumed with commercially reasonable efforts within sixty (60) days after a force majeure situation occurs, the party unable to perform or exercise its rights may elect to terminate this Agreement.

9.25    **No Third-Party Beneficiaries**. Nothing herein is intended to make nor shall make any Permit Holder or publisher a third-party beneficiary of this Agreement.

9.26    **Notification of Limitations on Contributions**.

(a)    San Francisco Campaign and Governmental Conduct Code (the "Conduct Code") Section 3.700 et. seq., and San Francisco Ethics Commission Regulations 3.710(a)-1—3.730-1, prohibit the public officials who approved this Agreement from receiving (1) gifts, honoraria, emoluments or pecuniary benefits of a value in excess of $50; (2) any employment for compensation; or (3) any campaign contributions for any elective office for a period of up to six years from individuals and entities who are "public benefit recipients" of the contract. Public benefit recipients of the contract are: (1) the individual, corporation, firm, partnership, association, or other person or entity that is a party to the contract; (2) an individual or entity that has a direct 10% equity, or direct 10% participation, or direct 10% revenue interest in that party at the time the public benefit is awarded; or (3) an individual who is a trustee, director, partner or officer of the contracting party at the time the public benefit is awarded.

(b)    Contractor understands that any public official who approved this Agreement may not accept campaign contributions, gifts, or future employment from Contractor except as provided under the Conduct Code. Contractor agrees to notify any other individuals or entities it understands to be deemed "public benefit recipients" under the Conduct Code because of this Agreement. Upon request, Contractor agrees to furnish, before this contract is entered into, such information as any public official approving this contract may require in order to ensure such official's compliance with the Conduct Code. Upon request, the City agrees to provide, before this Agreement is entered into, Contractor with a list of public officials who, under the Conduct Code, approved this Agreement. Failure of any public official who approved this Agreement to abide by the Conduct Code shall

49

not constitute a breach by either the City or Contractor of this Agreement. Notwithstanding anything to the contrary in this Agreement, neither party shall have the right to terminate the Agreement due to any failure by the other party to provide the information described in this Section.

9.27  **Authority To Bind Vendor**.  Whenever this Agreement refers to Contractor's consent, such consent shall only be binding if secured in writing from a corporate officer of Contractor or from one who has been designated in writing for that purpose by a corporate officer of Contractor.

5551693v11

IN WITNESS WHEREOF, the parties hereto have caused this Agreement to be executed, in quintuplicate, by their duly authorized officers.

CITY                                                              CONTRACTOR

City and County of San Francisco, a California                    Clear Channel Adshel, Inc.,
municipal corporation                                             a New York corporation

Recommended by:

_____                                  _____
Edwin M. Lee                                                      Douglas E. Watts
Director, Department of Public Works                              President

Approved as to Form:

Dennis J. Herrera
City Attorney

By: _____                                 _____
    Wayne K. Snodgrass                                           Laura C. Toncheff
    Deputy City Attorney                                          Vice President & Assistant Secretary

Approved:

_____
Douglas F. Wong                                                  Address: 110 East 42nd Street, Suite 1800
Port of San Francisco                                                     New York, NY 10017

Approved:                                                        Telephone Number: (212) 972-0515

_____                                 Federal Employer Number: 11-30 950 71
The Honorable Willie L. Brown, Jr.
Mayor of San Francisco

APPENDIX A







## TYPICAL POWER SERVICE
## FOR NEWSTAND

## NOTE:

CONNECTION TO LIGHTING CIRCUIT THROUGH 5A. FUSE INSIDE
DPW LIGHTING STANDARD HAND HOLE.



**PARSONS BRINCKERHOFF**

303 SECOND ST. SUITE 700H. SAN FRANCISCO. CA

| SCALE | DATE | SHEET |
|---|---|---|
| NONE | 03DEC98 | SKE-00 |



**TYPICAL POWER SERVICE**
**FOR NEWSTAND**
(UTILITY ONLY)

## NOTES:

1. REQUIREMENTS FOR MEETING SHALL
   BE COORDINATED WITH UTILITY.

2. SERVICE CONDUIT LOCATION AND
   SUB-OUT TO BE COORDINATED WITH
   UTILITY.



**PARSONS**
**BRINCKERHOFF**

303 SECOND ST. SUITE 700N. SAN FRANCISCO. CA

| SCALE | DATE | SHEET |
|-------|------|-------|
| NONE | 03DEC98 | SKE-002 |

8. For single—family residences, the electric meter should normally be located in the same general area as the gas meter. Refer to Section 2, Figure 10, for required clearances.

9. All meter installations require prior PG&E review and approval. When meter(s) is (are) installed in a confined or enclosed area, a means (e.g., window, opening, etc.) to read the meter(s) from an external location should be provided.

## 4. Single Meter Sockets and Mounting - Single Residence, Underground

### A. Single Metered Residence, 0 to 200 Amperes, 1Ø.

For a single underground residential service to be metered by a self—contained meter, the customer shall furnish, install, and maintain a 4—terminal socket similar to that shown in Figure 1 for 120V/240 V service (5—terminal for 120V/208 V service). PG&E's service conductors will be connected to termination lugs in the underground service termination section.



PG&E
REQUIREMENTS

**Figure 1**
**Typical UG Service Termination Enclosure**
**Combination Meter Socket Panel (Residential 0-225 Amp)**

| Socket Rating Amps | X Min. Dim. | Y Min. Dim. |
|---|---|---|
| Up to 125 | 8" | 4" |
| 200 | 11" | 5-1/2" |

Notes:

1. The socket and enclosure shall be specifically designed to receive service conductors from an underground supply system. Enclosures designed for either overhead or underground service entry are acceptable provided they meet all requirements for both types.

Electric                    Section 7
Metering Residential          1995

SINGLE METER SOCKETS



All sockets are rated 600V ac max. and either 100 or 200 amps continuous. All have a short circuit rating of 10,000 rms symmetrical amperes (watt-hour meter is not included in rating).

All single meter sockets are UL labeled and are supplied in surface mounted outdoor enclosures. Confirm local utility acceptance prior to order entry.





URS1018CH        URS212ACH

## SINGLE METER SOCKETS

| Continuous Duty Amp | Volts Ac | Carton Dimensions Ⓞ Inches | | | Weight (Lbs.) | Dimensions and Knockout Figure No. | Line and Load Wire Range Cu/Al | Hub or Hub Provision | Catalog Number | List Price | NAED Number |
|---|---|---|---|---|---|---|---|---|---|---|---|
| | | H | W | D | | | | | | | |
| **Ringless Type No By-Pass 1ɸ, 3W** | | | | | | | | | | | |
| 100 | | 12-1/4 | 8-1/2 | 4-1/4 | 7 | A | #8 - 2/0 | Prov. only Ⓞ | URS1018CH | $ 72. | 00398 |
| 200 | | 15-1/2 | 11-1/2 | 5 | 13 | A | #8 - 250 MCM | None Ⓞ | URS212ACH | 126. | 00399 |
| 200 | 600 | 15-1/2 | 11-1/2 | 5 | 13 | B | #8 - 250 MCM | None Ⓞ | URS212CH | 126. | 00400 |
| 200 | | 15-1/2 | 8-1/2 | 5 | 11 | E | #8 - 250 MCM | 2 In. Hub Ⓞ | URS202NCH | 115. | 00401 |
| 200 | | 15-1/2 | 8-1/2 | 5 | 11 | E | #8 - 250 MCM | Prov. only Ⓞ | URS202CH | 110. | 00402 |
| **Ringless Type with Horn By-Pass 1ɸ, 3W** | | | | | | | | | | | |
| 200 | | 15-1/2 | 8-1/2 | 5 | 11 | E | #8 - 250 MCM | Prov. only Ⓞ | UHRS2029CH | 115. | 00403 |
| 200 | 600 | 15-1/2 | 11-1/2 | 5 | 13 | B | #8 - 250 MCM | None Ⓞ | UHRS212ACH | 138. | 00404 |
| **Ring Type No By-Pass 1ɸ, 3W (Supplied with stainless steel, snap type sealing ring)** | | | | | | | | | | | |
| 100 | | 12-1/4 | 8-1/2 | 4-1/4 | 7 | A | #8 - 2/0 | 1-1/4 In. Hub Ⓞ | URRS101CCH | 74. | 00405 |
| 200 | 600 | 16-1/2 | 11-1/2 | 5 | 14 | C | 1/0 - 150 MCM | Closure Plate Ⓞ | URRS213CCH | 132. | 00406 |

## ACCESSORIES FOR SINGLE METER SOCKETS



ARP00003CHJ        ARP00006CH2

| Catalog Number | Description | List Price | NAED Number |
|---|---|---|---|
| ARP00007CBⒾ | Hub Closure Plate | $ 8.40 | 00407 |
| ARP00005CHⒾ | 1 In. Hub | 17.90 | 00408 |
| ARP00006CHⒾ | 1-1/4 In. Hub | 17.90 | 00409 |
| ARP00003CHJⒾ | 1-1/2 In. Hub | 17.90 | 00410 |
| ARP00004CHUⒾ | 2 In. Hub | 28.00 | 00411 |
| ARP00002CH26 | 2-1/2 In. Hub | 51.00 | 00412 |
| ARP00003CHJ | 5th Jaw Kit Ⓞ | 14.20 | 00413 |

Ⓞ Bottom service cable entry only.
Ⓞ Top service cable entry only.
Ⓞ Suitable for either top or bottom service cable entry.
Ⓞ 5th jaw can be installed in either the 3 or the 9 o'clock position.
Ⓞ Carton quantity, 1.

## DIMENSIONS AND KNOCKOUT ILLUSTRATIONS



Figure A        Figure B        Figure C

Figure D        Figure E

NOTE: Dimensions shown are approximate. They represent inside dimensions of enclosure and do not include mounting bosses or cover enclosures.

DISCOUNT SYMBOL ZZ-C0

# CUTLER-HAMMER SAFETY SWITCHES
## General Duty





Type DP with
Plug Fuse Provision

Type DG
60 Amperes, Rainproof

| DP, DG |
|---|

## WHEN ORDERING SPECIFY

| • Catalog Number |
|---|

- UL listed, File E5239.
- Meets UL 98 for enclosed switches and NEMA Std. KS-1.
- Suitable as service entrance equipment, when applied with neutral or ground Lug Kit.

## FUSIBLE — Higher Hp ratings apply when time delay fuses are used.

| System | Amperes | Type of Fuse Provision | Indoor Type 1 Enclosure | | Rainproof Type 3R Enclosure | | Maximum Horsepower | | | | Pack Quant. |
|---|---|---|---|---|---|---|---|---|---|---|---|
| | | | | | | | Single Phase | | 3 Phase | dc | |
| | | | Catalog Number | List Price | Catalog Number | List Price | 120V | 240V | 240V | 250V | |

### 2 WIRE S/N (1 BLADE, 1 FUSE) 120 VOLTS AC

| System | Amperes | Type of Fuse Provision | Catalog Number | List Price | Catalog Number | List Price | 120V | 240V | 240V | 250V | Pack |
|---|---|---|---|---|---|---|---|---|---|---|---|
| NEUTRAL | 30 | Plug | DP111NGB | S 41. | DP111NRB | S 85. | 1/2 | --- | --- | | 6 |

### 3 WIRE S/N (2 BLADES, 2 FUSES) 120/240 VOLTS AC (PLUG & CART.) 240 VOLTS AC (CARTRIDGE)

| System | Amperes | Type of Fuse Provision | Catalog Number | List Price | Catalog Number | List Price | 120V | 240V | 240V | 250V | Pack |
|---|---|---|---|---|---|---|---|---|---|---|---|
| NEUTRAL | 30 | Plug | DP221NGB | S 46.20 | DP221NRB | 99. | 1/2 | 1-1/2 | --- | 2 | 6 |
| | 30 | Class H | DG221NGB | S 63. | DG221NRB | 97. | 2 | 1-1/2 — 3 | 3 — 7-1/2 O | | 6 |
| | 60 | Class H | DG222NGB | 107. | DG222NRB | 170. | 1-1/2 — 3 | 3 — 10 | 7-1/2 — 15 O | | 1 |
| | 100 | Class H | DG223NGB | 222. | DG223NRB | 250. | --- | 7-1/2 — 15 | 15 — 50 O | | 1 |
| | 200 | Class H | DG224NGK O | 459. | DG224NRK O | | --- | 15 | 25 — 50 O | | 1 |
| | 400 | Class H | DG225NGK O | 1291. | DG225NRK O | 1740. | --- | --- | 50 — 125 O | 50 | 1 |
| | 600 | Class H | DG226NGK O | 2619. | DG226NRK O | 3365. | --- | --- | 75 — 200 O | | 1 |

### 3 POLE, 240 VOLTS AC

| System | Amperes | Type of Fuse Provision | Catalog Number | List Price | Catalog Number | List Price | 120V | 240V | 240V | 250V | Pack |
|---|---|---|---|---|---|---|---|---|---|---|---|
| | 30-200 | Class H | DG25FGK O | 1357. | DG25FRK O | 1781. | --- | --- | 50 — 125 | 50 | 1 |
| | 400 | Class H | DG325FGK O | 1357. | DG325FRK O | 1781. | --- | --- | 50 — 125 | 50 | 1 |
| | 600 | Class H | DG326FGK O | 2805. | DG326FRK O | 4014. | --- | --- | 75 — 200 O | | 1 |

### 4 WIRE S/N (3 BLADES, 3 FUSES) 240 VOLTS AC

| System | Amperes | Type of Fuse Provision | Catalog Number | List Price | Catalog Number | List Price | 120V | 240V | 240V | 250V | Pack |
|---|---|---|---|---|---|---|---|---|---|---|---|
| NEUTRAL | 30 | Class H | DG321NGB | 99. | DG321NRB | 150. | --- | 1-1/2 — 3 | 3 — 7-1/2 | | 6 |
| | 30 | Class A | DG321NGKR | 129. | DG321NRKR | 181. | --- | 1-1/2 — 3 | 3 — 7-1/2 | | 1 |
| | 60 | Class H | DG322NGB | 170. | DG322NRB | 228. | 1-1/2 — 3 | 3 — 10 | 7-1/2 — 15 | | 1 |
| | 60 | Class A | DG322NGKR | 228. | DG322NRKR | 258. | 1-1/2 — 3 | 3 — 10 | 7-1/2 — 15 | | 1 |
| | 100 | Class H | DG323NGB | 291. | DG323NRB | 418. | --- | 7-1/2 — 15 | 15 — 30 | | 1 |
| | 200 | Class H | DG324NGK | 621. | DG324NRK O | 758. | --- | 15 | 25 — 60 | | 1 |
| | 400 | Class H | DG325NGK O | 1582. | DG325NRK O | 1955. | --- | --- | 50 — 125 | 50 | 1 |
| | 600 | Class H | DG326NGK O | 2970. | DG326NRK O | 4159. | --- | --- | 75 — 200 | | 1 |

## NON-FUSIBLE

| System | Amperes | Indoor Type 1 | | Rainproof Type 3R | | Maximum Horsepower | | | Pack Quantity |
|---|---|---|---|---|---|---|---|---|---|
| | | Catalog Number | List Price | Catalog Number | List Price | 1ø ac | 3ø ac | 250V dc | |

### 2 POLE, 240 VOLTS AC

| System | Amperes | Catalog Number | List Price | Catalog Number | List Price | 1ø ac | 3ø ac | 250V dc | Pack |
|---|---|---|---|---|---|---|---|---|---|
| | 30 | DG221UGB O | S 74. | DG221URB O | S 117. | 3 | --- | | 6 |
| | 60 | --- | --- | DG222URB O | 205. | 10 | --- | | 1 |

### 3 POLE, 240 VOLTS AC

| System | Amperes | Catalog Number | List Price | Catalog Number | List Price | 1ø ac | 3ø ac | 250V dc | Pack |
|---|---|---|---|---|---|---|---|---|---|
| | 30 | DG321UGB O | 81. | DG321URB O | 150. | 3 | 7-1/2 | | 1 |
| | 60 | DG322UGB O | 106. | DG322URB O | 228. | 10 | 15 | | 1 |
| | 100 | DG323UGB O | 250. | DG323URB O | 418. | 15 | 30 | | 1 |
| | 200 | DG324UGK O | 441. | DG324URK | 744. | 15 | 60 | | 1 |
| | 400 | DG325UGK O | 1077. | DG325URK O | 1799. | --- | 125 | 50 | 1 |
| | 600 | DG326UGK O | 2128. | DG325URK O | 3372. | --- | 200 | | 1 |

O Grounded B Phase Ratings, UL listed.
O Use 4-wire, Solid Neutral Switch.

○ Not suitable as service entrance equipment.
○ Switches of 400-600A rated 240V ac, 250V dc.

APPENDIX B

<u>Form of Faithful Performance Supply & Installation Bond</u>

_____(Surety)

KNOW ALL MEN BY THESE PRESENTS:

That we   [Name of Contractor]   as Principal, and   [Surety Company]  , a
_____, as Surety, are held and firmly bound into the City and County of San Francisco, as
Obligee, in the sum of _____ ($_____) lawful money of the United States of America, to be
paid to the City and County of San Francisco for which payment, well and truly to be made, we
bind ourselves, our heirs, executors and successors jointly and severally, firmly by these
presents.
THE CONDITION OF THE FOREGOING OBLIGATION is such that

WHEREAS, the Principal has entered into an Agreement, effective _____, 20__;
with the City and County of San Francisco, for the installation of pedestal mounted newsracks on
public property and is required to give this bond in connection with the installation of the
pedestal mounted newsracks.

NOW, THEREFORE, the condition of this obligation is such that if the Principal shall
faithfully supply and install all of the Fixed Pedestal Units required under the Agreement
consistent with all of the covenants, terms and conditions of said Agreement (which by reference
is made a part hereof), then this obligation shall be null and void, otherwise to remain in full
force and effect; and shall be effective _____, 20__; provided that the Surety hereby agrees
to give at least thirty (30) days written notice by certified mail to the City at the following
address prior to the expiration or any termination of this bond for any reason: Director of the
Department of Public Works for the City and County of San Francisco, c/o San Francisco
Department of Public Works, City Hall, Room 348, 1 Dr. Carlton B. Goodlett Place, San
Francisco, CA 94102, and the Controller, City and County of San Francisco, Office of the
Controller, City Hall, Room 316, 1 Dr. Carlton B. Goodlett Place, San Francisco, CA 94102.

Surety, for value received, hereby stipulates and agrees that no change, extension of time,
alteration or addition to the terms of the contract or to the work to be performed thereunder or to
the specifications accompanying the same shall in any wise affect its obligations on this Bond,
and it does hereby waive notice of any such change, extension of time, alteration or addition to
the terms of the contract or the work or the specifications.

Signed, sealed and dated this _____ day of _____, 20___.

Principal:

_____

Surety:

_____

APPENDIX C

## Form of General Faithful Performance Bond Other Than Supply & Installation

_____(Surety)

KNOW ALL MEN BY THESE PRESENTS:

That we  [Name of Contractor]  as Principal, and ___[Su__ Company]___, a _____, as Surety, are held and firmly bound into the City and County of San Francisco, as Obligee, in the sum of _____ ($_____) lawful money of the United States of America, to be paid to the City and County of San Francisco for which payment, well and truly to be made, we bind ourselves, our heirs, executors and successors jointly and severally, firmly by these presents.

THE CONDITION OF THE FOREGOING OBLIGATION is such that

WHEREAS, the Principal has entered into an Agreement, effective _____, 20__, with the City and County of San Francisco, for the operation and maintenance of pedestal mounted newsracks on public property and is required to give this bond in connection with the operation and maintenance of the pedestal mounted newsracks.

NOW, THEREFORE, the condition of this obligation is such that if the Principal shall faithfully perform all terms, covenants, and conditions, including all monetary obligations set forth in the Agreement, other than Contractor's obligation to supply and install the Fixed Pedestal Units required under the Agreement, consistent with all of the covenants, terms and conditions of said Agreement (which by reference is made a part hereof), then this obligation shall be null and void, otherwise to remain in full force and effect; and shall be effective _____, and to expire in one (1) year, and may be renewed for another year through Surety's continuation certificate; provided that the Surety hereby agrees to give at least thirty (30) days written notice by certified mail to the City at the following address prior to the expiration or any termination of this bond for any reason:  Director of the Department of Public Works for the City and County of San Francisco, c/o San Francisco Department of Public Works, Director of the Department of Public Works for the City and County of San Francisco, c/o San Francisco Department of Public Works, City Hall, Room 348, 1 Dr. Carlton B. Goodlett Place, San Francisco, CA 94102, and the Controller, City and County of San Francisco, Office of the Controller, City Hall, Room 316, 1 Dr. Carlton B. Goodlett Place, San Francisco, CA 94102.

Surety, for value received, hereby stipulates and agrees that no change, extension of time, alteration or addition to the terms of the contract or to the work to be performed thereunder or to the specifications accompanying the same shall in any wise affect its obligations on this Bond, and it does hereby waive notice of any such change, extension of time, alteration or addition to the terms of the contract or the work or the specifications.

Signed, sealed and dated this _____ day of _____, 20___.

Principal:

_____

Surety:

_____

5551693v11

IN WITNESS WHEREOF, the parties hereto have caused this Agreement to be executed, in quintuplicate, by their duly authorized officers.

CITY

City and County of San Francisco, a California municipal corporation

Recommended by:

_____
Edwin M. Lee
Director, Department of Public Works

Approved as to Form:

Dennis J. Herrera
City Attorney

By: _____
Wayne K. Snodgrass
Deputy City Attorney

Approved:

_____
Douglas F. Wong
Port of San Francisco

Approved:

_____
The Honorable Willie L. Brown, Jr.
Mayor of San Francisco

CONTRACTOR

Clear Channel Adshel, Inc.,
a New York corporation

_____
Douglas E. Watts
President

_____
Laura C. Toncheff
Vice President & Assistant Secretary

Address: 110 East 42nd Street, Suite 1800
New York, NY 10017

Telephone Number: (212) 972-0515

Federal Employer Number: 11-30 950 71

51