(d) City shall have the right to have a receiver appointed upon application by City to take possession of the Premises and to collect the rents or profits therefrom and to exercise all other rights and remedies pursuant to this Section 15.3.

(e) City shall have the right to enjoin, and any other remedy or right now or hereafter available to a landlord against a defaulting tenant under the laws of the State of California or the equitable powers of its courts, and not otherwise specifically reserved herein.

(f) City may elect to terminate any other agreement between Tenant and City, including the Other Agreements, if any.

14.4    <u>City's Right to Perform</u>.  All agreements and provisions to be performed by Tenant under any of the terms of this Lease shall be at its sole cost and expense and without any abatement of Rent.  If Tenant shall fail to make any payment or perform any act on its part to be performed hereunder and such failure shall continue for ten (10) days after notice thereof by City, City may, but shall not be obligated to do so, and without waiving or releasing Tenant from any obligations of Tenant, make any such payment or perform any such other act on Tenant's part to be made or performed as provided in this Lease.  All sums so paid by City and all necessary incidental costs shall be deemed additional rent hereunder and shall be payable to City on demand, and City shall have (in addition to any other right or remedy of City) the same rights and remedies in the event of the nonpayment thereof by Tenant as in the case of default by Tenant in the payment of Rent.

14.5    <u>Rights Related to Termination</u>.  In the event of any termination based on any breach of the covenants, terms and conditions contained in this Lease, City shall have the option at once and without further notice to Tenant to enter upon the Premises and take exclusive possession of same.  City may remove or store any personal property located therein, at the sole cost and expense of Tenant without City being liable to Tenant for damage or loss thereby sustained by Tenant.  Upon such termination by City, all rights, powers and privileges of Tenant hereunder shall cease, and Tenant shall immediately vacate any space occupied by it under this Lease, and Tenant shall have no claim of any kind whatsoever against City or any City Entity by reason of such termination, or by reason of any act by City or any City Entity incidental or related thereto.  In the event of the exercise by City of such option to terminate, Tenant shall have no right to or claim upon any improvements or the value thereof, which may have been previously installed by Tenant in or on the Premises.

14.6    <u>Cumulative Rights</u>.  The exercise by City of any remedy provided in this Lease shall be cumulative and shall in no way affect any other remedy available to City under law or equity.

14.7    <u>Prepayment</u>.  As provided in Section 4.9 [Prepay Rent], if Tenant defaults in the payment of Rent, City may require prepayment of Rent.  Such right shall be in addition to and not in lieu of any and all other rights hereunder, or at law or in equity.

14.8    <u>Fines</u>.  If Tenant defaults under any of the Lease terms specified below, Director may elect to impose the fines described below on the basis of per violation per day:

| <u>Violation</u> | <u>Section</u> | <u>Fine</u> |
|---|---|---|

| Violation | Section | Fine |
|---|---|---|
| Violation of Premises Clause | 1 | $500 |
| Violation of Use Section | 3 | $500 |
| Failure to cause operations or Premises to comply with Laws | 3.13 | $500 |
| Failure to submit required documents and reports, including Sales Reports | 4.4, 4.5, and others | $500 |
| Construction or Alterations without City approval | 7.6 | $500 |
| Failure to make required repairs | 9 | $500 |
| Unauthorized advertising or signage | 3.4, 10 | $1,000 |
| Failure to obtain/maintain insurance | 11 | $500 |
| Failure to obtain or maintain Deposit | 12 | $500 |

Director's right to impose the foregoing fines shall be in addition to and not in lieu of any and all other rights hereunder, in the Airport Rules, or at law or in equity. City shall have no obligation to Tenant to impose fines on or otherwise take action against any other tenant at the Airport. THE PARTIES HAVE AGREED THAT A VIOLATION OF ANY OF THE ABOVE TERMS SHALL RESULT IN CITY INCURRING DAMAGES WHICH ARE IMPRACTICAL OR IMPOSSIBLE TO DETERMINE. THE PARTIES HAVE AGREED THAT THE ABOVE FINES ARE A REASONABLE APPROXIMATION OF SUCH DAMAGES. Such fines shall constitute "**Additional Rent.**"

14.9    City Lien. Tenant hereby grants to City a lien upon and security interest in all fixtures, chattels and personal property of every kind now or hereafter to be placed or installed in or on the Premises, and agrees that in the event of any default on the part of Tenant City has all the rights and remedies afforded the secured party by the chapter on "Default" of the Uniform Commercial Code in the state wherein the Premises are located on the date of this Lease and may, in connection therewith, also (a) enter on the Premises to assemble and take possession of the collateral, (b) require Tenant to assemble the collateral and make its possession available to the City at the Premises, (c) enter the Premises, render the collateral, if equipment, unusable and dispose of it in a manner provided by the Uniform Commercial Code on the Premises. Tenant agrees to execute such instruments as City may request to perfect such lien, and designates also Director his attorney-in-fact for purposes of executing such documents.

14.10    Commencement of Legal Actions. Any legal action by City to enforce any obligation of Tenant or in the pursuit of any remedy hereunder shall be deemed timely filed if commenced at any time prior to one (1) year after the expiration or termination of the Term hereof or prior to the expiration of the statutory limitation period that would be applicable except for this Section 15.10, whichever period expires later.

Airport Advertising Program Lease

14.11  Waiver of Notice.  Except as otherwise expressly provided in this Section 15, Tenant hereby expressly waives, so far as permitted by law, the service of any notice of intention to enter or re-enter provided for in any statute, or of the institution of legal proceedings to that end, and Tenant, for and on behalf of itself and all persons claiming through or under Tenant, also waives any right of redemption or relief from forfeiture under California Code of Civil Procedure Sections 1174 or 1179, or under any other present or future law, if Tenant is evicted or City takes possession of the Premises by reason of any default by Tenant hereunder.

## 15.  SURRENDER

Tenant shall at the end of the Term surrender to City the Premises and all Alterations, additions and improvements thereto in the same condition as when received, ordinary wear and tear and damage by fire, earthquake, act of God, or the elements excepted. Subject to City's right to require removal pursuant to Section 7 [Investments; Alterations] hereof, all Alterations and improvements installed in the Premises by Tenant (other than Tenant's trade fixtures), shall, without compensation to Tenant, then become City's property free and clear of all claims to or against them by Tenant or any third person.  In the event that Tenant shall fail to remove its personal property, including trade fixtures, on or before the Expiration Date, such personal property shall become City's property free and clear of all claims to or against them by Tenant or any third person.  In such event, City shall not be responsible for any Losses related to such personal property, and City may sell or otherwise dispose of such personal property.

## 16.  HAZARDOUS MATERIALS

16.1  Definitions.  As used herein, the following terms shall have the meanings hereinafter set forth:

(a)  "**Environmental Laws**" shall mean any federal, state, local or administrative law, rule, regulation, order or requirement relating to industrial hygiene, environmental conditions or Hazardous Materials, whether now in effect or hereafter adopted, including the Comprehensive Environmental Response, Compensation and Liability Act of 1980, as amended (42 U.S.C. Sections 9601, et seq.), the Resources Conservation and Recovery Act of 1976 (42 U.S.C. Section 9601, et seq.), the Clean Water Act (33 U.S.C. Section 1251, et seq.), the Safe Drinking Water Act (14 U.S.C. Section  401, et seq.), the Hazardous Materials Transportation Act (49 U.S.C. Section 1801, et seq.), the Toxic Substance Control Act (15 U.S.C. Section 2601, et seq.), the California Hazardous Waste Control Law (California Health and Safety Code Section 25100, et seq.), the Porter-Cologne Water Quality Control Act (California Water Code Section 13000, et seq.), and the Safe Drinking Water and Toxic Enforcement Act of 1986 (California Health and Safety Code Section 25249.5, et seq.

(b)  "**Hazardous Material**" shall mean any material that, because of its quantity, concentration or physical or chemical characteristics, is deemed by any federal, state or local governmental authority to pose a present or potential hazard to human health or safety or to the environment.  "**Hazardous Material**" includes, without limitation, any material or substance defined as a "hazardous substance," or "pollutant" or "contaminant" pursuant to any Environmental Law; any asbestos and asbestos containing materials; petroleum, including crude oil or any fraction thereof, natural gas or natural gas liquids; and any materials listed in the Airport's TI Guide.

(c) "**Release**" when used with respect to Hazardous Material shall include any actual or imminent spilling, leaking, pumping, pouring, emitting, emptying, discharging, injecting, escaping, leaching, dumping, or disposing into or inside the Building, or in, on, under or about the Property.

(d) "**Pre-Existing Condition**" means the existence of any Hazardous Materials on the Premises immediately prior to the Commencement Date.

16.2   Tenant's Covenants.   Neither Tenant nor any Tenant Entity shall cause any Hazardous Material to be brought upon, kept, used, stored, generated or disposed of in, on or about the Premises or the Airport, or transported to or from the Premises or the Airport; provided that Tenant may use such substances as are customarily used in retail merchandise sales so long as such use is in compliance with all applicable Environmental Laws and the Airport's TI Guide.

16.3   Environmental Indemnity.   Tenant shall indemnify, defend, and hold harmless City from and against any and all Losses arising during or after the Term as a result of or arising from:  (a) a breach by Tenant of its obligations contained in the preceding Section 17.2 [Tenant's Covenants], or (b) any Release of Hazardous Material from, in, on or about the Premises or the Airport caused by the act or omission of Tenant or any Tenant Entity, or (c) the existence of any Hazardous Materials on the Premises, except to the extent that Tenant can demonstrate that such Hazardous Materials constitutes a Pre-Existing Condition.

16.4   Environmental Audit.   Upon reasonable notice, Director shall have the right but not the obligation to conduct or cause to be conducted by a firm acceptable to Director, an environmental audit or any other appropriate investigation of the Premises for possible environmental contamination.  Tenant shall pay all costs associated with said investigation in the event such investigation shall disclose any Hazardous Materials contamination as to which Tenant is liable hereunder.

16.5   Closure Permit.   Prior to the termination or expiration of this Lease, Director shall the right to require Tenant to file with the City and application for a Closure Permit for decontamination of the site and investigation and removal of all Hazardous Materials in compliance with the Airport's TI Guide, the Airport's Rules and Regulations, and all Laws.  The Closure Permit may require a plan for long-term care and surveillance of any contamination allowed to remain at the Premises or Airport property and an acknowledgment of responsibility and indemnification for any and all Losses associated with any such contamination.

## 17.   EMINENT DOMAIN

17.1   Definitions.   For purposes of this Section 17, the following capitalized terms shall have the following meanings:

(a) "**Award**" means all compensation, sums or value paid, awarded or received for a Taking, whether pursuant to judgment, agreement, settlement or otherwise.

(b) "**Date of Taking**" means the earlier of:  (a) the date upon which title to the portion of the Premises taken passes to and vests in the condemnor, and (b) the date on which Tenant is dispossessed

(c) "**Taking**" means a taking or damaging, including severance damage, by eminent domain, inverse condemnation or for any public or quasi-public use under applicable Laws. A Taking may occur pursuant to the recording of a FINAL order of condemnation, or by voluntary sale or conveyance in lieu of condemnation or in settlement of a condemnation action.

17.2    General. If during the Term or during the period between the execution of this Lease and the Commencement Date, any Taking of all or any part of the Premises or any interest in this Lease occurs, the rights and obligations of the parties hereunder shall be determined pursuant to this Section 17. City and Tenant intend that the provisions hereof govern fully in the event of a Taking and accordingly, the Parties each hereby waives any right to terminate this Lease in whole or in part under Sections 1265.120 and 1265.130 of the California Code of Civil Procedure or under any similar Law now or hereafter in effect.

17.3    Total Taking; Automatic Termination. If a total Taking of the Premises occurs, then this Lease shall terminate as of the Date of Taking.

17.4    Partial Taking; Election to Terminate.

(a) If a Taking of any portion (but less than all) of the Premises occurs, then this Lease shall terminate in its entirety if all of the following exist: (a) the partial Taking renders the remaining portion of the Premises untenantable or unsuitable for continued use by Tenant for the Permitted Use; (b) the condition rendering the Premises untenantable or unsuitable either is not curable or is curable but City is unwilling or unable to cure such condition; and (c) City elects to terminate.

(b) If a partial Taking of a material portion of the Terminal occurs, City shall have the right to terminate this Lease in its entirety.

(c) City's elections to terminate this Lease pursuant to this Section shall be exercised by City's giving notice to Tenant on or before the date that is one hundred twenty (120) days after the Date of Taking, and thereafter this Lease shall terminate upon on the thirtieth (30th) day after such notice is given.

17.5    Tenant Monetary Obligations; Award. Upon termination of this Lease pursuant to an election under Section 17.4 [Partial Taking; Election to Terminate] above, then: (a) Tenant's obligation to pay Base Rent shall continue up until the date of termination, and thereafter shall cease, and (b) City shall be entitled to the entire Award in connection therewith (including any portion of the Award made for the value of the leasehold estate created by this Lease), and Tenant shall have no claim against City for the value of any unexpired term of this Lease, provided that Tenant may make a separate claim for compensation, and Tenant shall receive any Award made specifically to Tenant, for Tenant's relocation expenses or the interruption of or damage to Tenant's business or damage to Tenant's personal property.

17.6    Partial Taking; Continuation of Lease. If a partial Taking of the Premises occurs and this Lease is not terminated in its entirety under Section 17.4 [Partial Taking; Election to Terminate] above, then this Lease shall terminate as to the portion of the Premises so taken, but shall remain in full force and effect as to the portion not taken, and the rights and obligations of the Parties shall be as follows: (a) the Minimum Annual Guarantee shall be adjusted by Director to reflect the Taking, and (b) City shall be entitled to the entire Award in connection therewith (including, but not limited to, any portion of the Award made for the value of the leasehold estate

created by this Lease). Tenant shall have no claim against City for the value of any unexpired Term of this Lease, provided that Tenant may make a separate claim for compensation. Tenant shall retain any Award made specifically to Tenant for Tenant's relocation expenses or the interruption of or damage to Tenant's business or damage to Tenant's personal property.

17.7    Temporary Takings. Notwithstanding anything to contrary in this Section, if a Taking occurs with respect to all or any part of the Premises for a limited period of time not in excess of one hundred eighty (180) consecutive days, this Lease shall remain unaffected thereby, and Tenant shall continue to pay Rent, and to perform all of the terms, conditions and covenants of this Lease. In the event of such temporary Taking, City shall be entitled to receive any Award.

## 18.    CITY AND OTHER GOVERNMENTAL PROVISIONS

18.1    MacBride Principles - Northern Ireland. Pursuant to San Francisco Administrative Code §12.F.5, the City and County of San Francisco urges companies doing business in Northern Ireland to move towards resolving employment inequities, and encourages such companies to abide by the MacBride Principles. The City and County of San Francisco urges San Francisco companies to do business with corporations that abide by the MacBride Principles. By signing below, the person executing this agreement on behalf of Tenant acknowledges and agrees that he or she has read and understood this section.

18.2    Charter. The terms of this Lease shall be governed by and subject to the budget and fiscal provisions of the Charter of the City and County of San Francisco.

18.3    Tropical Hardwood and Virgin Redwood Ban. (a) Except as expressly permitted by the application of Sections 12I.3.b and 12I.4.b of the San Francisco Administrative Code, neither Tenant nor any of its contractors shall use in the construction of any Alterations or otherwise in the performance of this Lease any items or materials which are tropical hardwoods, or tropical hardwood products, virgin redwood or virgin redwood products; (b) City and County of San Francisco urges companies not to import, purchase, obtain or use for any purpose, any tropical hardwood, tropical hardwood product, virgin redwood, or virgin redwood product.

18.4    No Representations. Tenant acknowledges and agrees that neither City nor any person on behalf of City has made, and City hereby disclaims, any representations or warranties, express or implied, regarding the business venture proposed by Tenant at the Airport, including any statements relating to the potential success or profitability of such venture. Tenant represents and warrants that it has made an independent investigation of all aspects of the business venture contemplated by this Lease and the Permitted Use.

18.5    Effect of City Approvals. Notwithstanding anything to the contrary herein, Tenant acknowledges and agrees that City is entering into this Lease as a landowner, and not as a regulatory agency with police powers. Accordingly, any construction, alterations, or operations contemplated or performed by Tenant hereunder may require further authorizations, approvals, or permits from governmental regulatory agencies, including the Airport's Quality Control Department. Nothing in this Lease shall limit Tenant's obligation to obtain such other authorizations, approvals, or permits. No inspection, review, or approval by City pursuant to this Lease shall constitute the assumption of, nor be construed to impose, responsibility for the legal or other sufficiency of the matter inspected, reviewed, or approved. In particular, but without limiting the generality of the foregoing, in approving plans and specifications for Alterations,

– 31 –

City (a) is not warranting that the proposed plan or other action complies with applicable Laws, and (b) reserves its right to insist on full compliance in that regard even after its approval has been given or a permit has been issued.

　　18.6　　Limitation on Damages.  Notwithstanding anything to the contrary herein, in no event will City or any City Entity be liable to Tenant or any Tenant Entity for any consequential, incidental, or special damages, or special damages, or lost revenues or lost profits.

　　18.7　　Sponsor's Assurance Agreement.  This Lease shall be subordinate and subject to the terms of any "Sponsor's Assurance Agreement" or any like agreement heretofore or hereinafter entered into by City and any agency of the United States of America.

　　18.8　　Federal Nondiscrimination Regulations.  Tenant understands and acknowledges that City has given to the United States of America, acting by and through the Federal Aviation Administration, certain assurances with respect to nondiscrimination, which have been required by Title VI of the Civil Rights Act of 1964, as effectuated by Title 49 of the Code of Federal Regulations, Subtitle A - Office of the Secretary of Transportation, Part 21, as amended, as a condition precedent to the government making grants in aid to City for certain Airport programs and activities, and that City is required under said Regulations to include in every agreement or concession pursuant to which any person or persons other than City, operates or has the right to operate any facility on the Airport providing services to the public, the following covenant, to which Tenant agrees as follows: "Tenant in its operation at and use of San Francisco International Airport, covenants that (1) no person on the grounds of race, color, or national origin shall be excluded from participation in, denied the benefits of, or be otherwise subjected to discrimination in the use of said facilities;  (2) that in the construction of any improvements on, over, or under such land and the furnishing of services thereon, no person on the grounds of race, color, or national origin shall be excluded from participation in, denied the benefits of, or otherwise be subjected to discrimination, and  (3) that the grantee, licensee, permittee, etc., shall use the Premises in compliance with all other requirements imposed by or pursuant to Title 49, Code of Federal Regulations, Subtitle A, Office of the Secretary of Transportation, Part 21, Nondiscrimination in Federally-Assisted Programs of the Department of Transportation Effectuations of Title VI of the Civil Rights Act of 1964, and as said regulations may be amended."

　　18.9　　Federal Affirmative Action Regulations.  Tenant assures that it will undertake an affirmative action program as required by 14 CFR Part 152, Subpart E, to insure that no person shall on the grounds of race, creed, color, national origin, or sex be excluded from participating in any employment activities covered in 14 CFR Part 152, Subpart E.  Tenant assures that no person shall be excluded on these grounds from participating in or receiving the services or benefits of any program or activity covered by this subpart.  Tenant assures that it will require that its covered sub-organizations provide assurances to Tenant that they similarly will undertake affirmative action programs and that they will require assurances from their sub-organizations, as required by 14 CFR Part 152, Subpart E, to the same effect.

　　18.10　　City's Nondiscrimination Ordinance.

　　　　　(a)  In the performance of this Lease, Tenant covenants and agrees not to discriminate on the basis of the fact or perception of a person's race, color, creed, religion, national origin, ancestry, age, sex, sexual orientation, gender identity, domestic partner status, marital status, weight, height, disability or Acquired Immune Deficiency Syndrome or HIV

status (AIDS/HIV status) against any employee of, any City employee working with, or applicant for employment with, Tenant, in any of Tenant's operations within the United States, or against any person seeking accommodations, advantages, facilities, privileges, services, or membership in all business, social, or other establishments or organizations operated by Tenant.

(b) Tenant shall include in all subleases and other subcontracts relating to the Premises hereunder a non-discrimination clause in substantially the form of subsection (a) above. In addition, Tenant shall incorporate by reference in all subleases and other subcontracts the provisions of Sections 12B.2(a), 12B.2(c)-(k), and 12C.3 of the San Francisco Administrative Code and shall require all subtenants and other subcontractors to comply with such provisions. Tenant's failure to comply with the obligations in this subsection shall constitute a material breach of this Lease.

(c) Tenant does not as of the date of this Lease and will not during the Term, in any of its operations in San Francisco, at the Airport, or where the work is being performed for the City elsewhere within the United States, discriminate in the provision of bereavement leave, family medical leave, health benefits, membership or membership discounts, moving expenses, pension and retirement benefits or travel benefits, as well as any benefits other than the benefits specified above, between employees with domestic partners and employees with spouses, and/or between the domestic partners and spouses of such employees, where the domestic partnership has been registered with a governmental entity pursuant to state or local law authorizing such registration, subject to the conditions set forth in Section 12B.2(b) of the San Francisco Administrative Code.

(d) Tenant hereby represents that prior to execution of this Lease (i) Tenant executed and submitted to the Human Rights Commission of the City and County of San Francisco (the "HRC") the "Chapter 12B Declaration: Nondiscrimination in Contracts and Benefits" form (Form HRC-12B-101)", with supporting documentation, and (ii) the HRC approved such form.

(e) The provisions of Chapters 12B and 12C of the San Francisco Administrative Code relating to non-discrimination by parties contracting for the lease of City property are incorporated in this Section by reference and made a part of this Lease as though fully set forth herein. Tenant shall comply fully with and be bound by all of the provisions that apply to this Lease under such Chapters of the Administrative Code, including but not limited to the remedies provided in such Chapters. Without limiting the foregoing, Tenant understands that pursuant to Section 12B.2(h) of the San Francisco Administrative Code, a penalty of $50 for each person for each calendar day during which such person was discriminated against in violation of the provisions of this Lease may be assessed against Tenant and/or deducted from any payments due Tenant.

18.11  Conflict of Interest.  Tenant states that it is familiar with the provisions of City's Charter Section C8.105, and Section 87100 et seq. of the Government Code of the State of California and certifies that it knows of no facts in connection with this Lease which constitute a violation of said sections.  It further certifies that it will make a complete disclosure to Director, if necessary, of all facts within its reasonable knowledge bearing upon any possible interest, direct or indirect, which it believes a member of Commission or other officer or employee of City presently has or will have in this Lease or in its performance.  Willful failure of Tenant to make such disclosure, if any, to Commission, shall constitute grounds for termination of this Lease.

18.12   _Prevailing Wages_.   Tenant shall abide by Airport Commission Policy No. 80-0031, requiring that Tenant pay generally prevailing rates of salaries, wages, and employee benefits, to its employees working at San Francisco International Airport pursuant to this agreement.

18.13   _Declaration Regarding Airport Private Roads_.   Tenant hereby acknowledges and agrees that all roads existing at the date of execution hereof within the boundaries of the Airport, as shown on the current official Airport plan and as it may be revised, are the private property and private roads of the City and County of San Francisco, with the exception of that portion of the old Bayshore Highway which runs through the southern limits of the City of South San Francisco and through the northern portion of the Airport to the intersection with the North Airport Road as shown on said Airport Plan, and with the exception of that portion of the North Airport Road which runs from the off and on ramps of the State Bayshore Freeway to the intersection with said old Bayshore Highway as shown on said Airport Plan.  It further acknowledges that any and all roads hereafter constructed or opened by City within the Airport boundaries will be the private property and road of City, unless otherwise designated by appropriate.

18.14   _No Relocation Assistance; Waiver of Claims_.   Tenant acknowledges that it will not be a displaced person at the time this Lease is terminated or expires by its own terms, and Tenant fully releases, waives, and discharges forever any and all claims or other Losses, against and covenants not to sue City or any City Entity under any Laws, including any and all claims for relocation benefits or assistance from City under federal and state relocation assistance laws.  Without limiting Section 5 [Assignment or Subletting], Tenant shall cause any Transferee to expressly waive entitlement to any and all relocation assistance and benefits in connection with this Lease.  Tenant shall indemnify, defend, and hold harmless City for any and all Losses arising out of any relocation assistance or benefits payable to any Transferee.

18.15   _Drug-Free Workplace_.   Tenant acknowledges that pursuant to the Federal Drug-Free Workplace Act of 1989, the unlawful manufacture, distribution, possession or use of a controlled substance is prohibited on City premises.  Any violation of this prohibition by Tenant or any Tenant Entity shall constitute a default hereunder.

18.16   _Compliance with Americans With Disabilities Act_.   Tenant acknowledges that, pursuant to the ADA, programs, services and other activities provided by a public entity, whether directly or through a contractor, must be accessible to the disabled public.  Tenant shall provide the services specified in this Lease in a manner that complies with the ADA and any and all other applicable federal, state and local disability rights legislation.  Tenant agrees not to discriminate against disabled persons in the provision of services, benefits or activities provided under this Lease and further agrees that any violation of this prohibition on the part of Tenant, its employees, agents or assigns shall constitute a material breach of this Lease.

18.17   _Sunshine Ordinance_.   In accordance with Section 67.24(e) of the San Francisco Administrative Code, contracts, contractors' bids, leases, agreements, responses to Requests for Proposals, and all other records of communications between City and persons or firms seeking contracts will be open to inspection immediately after a contract has been awarded.  Nothing in this provision requires the disclosure of a private person's or organization's net worth or other proprietary financial data submitted for qualification for a contract, lease, agreement or other benefit until and unless that person or organization is awarded the contract, lease, agreement or

benefit.  Information provided which is covered by this paragraph will be made available to the public upon request.

   18.18   Tenant's Utilization of MBE/WBE/LBE.  As described in Commission Resolution No. 95-0136, the City's Board of Supervisors has found that policies and programs that enhance the opportunities and entrepreneurial skills of minority owned, women owned, and local businesses ("**MBE/WBE/LBE**") will best serve the public interest because the growth and development of such businesses will have a significant positive impact on the economic health of the City and County of San Francisco and will serve to reduce racial tension in our community. As described in such resolution, the Commission desires to maximize the opportunities for San Francisco based MBE/WBE/LBEs to obtain construction, architectural, and engineering work with Airport tenants.  Pursuant to the foregoing resolution, the Commission has adopted a Tenant Improvement Policy to maximize the contracting opportunities for local MBE/WBE/LBEs in tenant improvement work involving construction, architectural and engineering services at the Airport.  In connection with any tenant improvement work hereunder that involves construction, architectural, and engineering services, (a) Airport staff will set recommended participation goals in the manner set forth in the San Francisco Administrative Code Chapter 12D; and (b) Tenant will use its best efforts to utilize local MBE/WBE/LBEs for the performance of such work.

   18.19   Pesticide Prohibition.  Tenant shall comply with the provisions of Section 39.9 of the San Francisco Administrative Code (the "**Pesticide Ordinance**") which (i) prohibits the use of certain pesticides on City property, (ii) require the posting of certain notices and the maintenance of certain records regarding the pesticide usage, and (iii) require Tenant to submit to Director an integrated pest management ("**IPM**") plan that (1) lists, the extent reasonably possible, the types and estimated quantities of pesticides that Tenant may need to apply to the City property during the term of this Lease, (b) describes the steps Tenant will make to meet the City's IPM Policy described in Section 39.1 of the Pesticide Ordinance, and (c) identifies, by name, title, address and telephone number, an individual to act as the Tenant's primary IPM contact person with the City.  In addition, Tenant shall comply with the requirements of Section 39.4(a) and 39.4(b) of the Pesticide Ordinance as of January 1, 1999, and January 1, 2000, respectively.  Nothing herein shall prevent Tenant, through Director, from seeking a determination from the Commission on the Environment that it is exempt from complying with certain provisions of the Pesticide Ordinance as provided in Section 39.8 thereof.

   18.20   First Source Hiring Ordinance.  Tenant shall comply with the San Francisco First Source Hiring Ordinance (Board of Supervisors Ordinance No. 264-98) in cooperation with the Airport Commission Office of Employment and Community Partnerships pursuant to the First Source Hiring Agreement entered into between the Airport Commission and the Tenant concurrently herewith, and incorporated herein by reference.

   18.21   Resource Efficiency Ordinance.  With respect to any construction activity, including renovation or remodeling, on the Premises, Tenant shall comply with the City and County of San Francisco's Resource Efficiency Ordinance, Chapter 82 of the San Francisco Administrative code, to the extent applicable.

   18.22   Labor Peace/Card Check Rule.  Without limiting the generality of other provisions herein requiring tenant to comply with all Airport Rules, Tenant shall comply with the Airport's Labor Peace/Card Check Rule, adopted on February 1, 2000, pursuant to Airport Commission Resolution No. 00-0049 (the "**Labor Peace/Card Check Rule**").  Capitalized terms not defined

in this provision are defined in the Labor Peace/Card Check Rule. To comply with the Labor Peace/Card Check Rule, Tenant shall, among other actions: (a) Enter into a Labor Peace/Card Check Agreement with any Labor Organization which requests such an agreement and which has registered with the Airport Director or his/her designee, within thirty (30) days after the Labor Peace/Card Check Agreement has been requested; (b) Not less than thirty (30) days prior to the modification of this Lease, Tenant shall provide notice by mail to any Labor Organization or federation of labor organizations which have registered with the Director or his/her designee (**"registered labor organization"**), that Tenant is seeking to modify or extend this Lease; (c) Upon issuing any request for proposals, invitations to bid, or similar notice, or in any event not less than thirty (30) days prior to entering into any Subcontract, Tenant shall provide notice to all registered labor organizations that Tenant is seeking to enter into such Subcontract; and (d) Tenant shall include in any subcontract with a Subcontractor performing services pursuant to any Covered Contract, a provision requiring the Subcontractor to comply with the requirements of the Labor Peace/Card Check Rule, airport Director shall have the option to terminate this Lease, in addition to exercising all other remedies available to him/her.

## 19.  GENERAL PROVISIONS

19.1  <u>Notices</u>.  Except as otherwise specifically provided in this Lease, any notice, consent, request, demand, or other correspondence given under this Lease shall be in writing and given by delivering the notice in person or by commercial courier, or by sending it by first-class mail, certified mail, return receipt requested, or overnight courier, return receipt requested, with postage prepaid, to: (a) Tenant at Tenant's Notice Address; or (b) City at City's Notice Address; or (c) such other address as either Tenant or City may designate as its new address for such purpose by notice given to the other in accordance with this Section. Any notice hereunder shall be deemed to have been given and received and effective two (2) days after the date when it is mailed, if sent by first-class, certified mail, one day after the date when it is mailed if sent by overnight courier, or upon the date personal delivery is made. For convenience of the parties, copies of notices may also be given by facsimile to the number set forth in the Summary or such other number as may be provided from time to time; however, neither party may give official or binding notice by facsimile.

19.2  <u>No Implied Waiver</u>.  No failure by either party to insist upon the strict performance of any obligation of the other party under this Lease or to exercise any right, power or remedy consequent upon a breach thereof shall constitute a waiver of any such breach or of such term, covenant or condition.  No express written waiver of any default or the performance of any provision hereof shall affect any other default or performance, or cover any other period of time, other than the default, performance or period of time specified in such express waiver.

19.3  <u>Entire Agreement</u>.  The parties intend that this Lease (including all of the attached exhibits, which are made a part of this Lease) shall be the final expression of their agreement with respect to the subject matter hereof and may not be contradicted by evidence of any prior or contemporaneous written or oral agreements or understandings.  The parties further intend that this Lease shall constitute the complete and exclusive statement of its terms and that no extrinsic evidence whatsoever (including prior finals hereof and changes therefrom) may be introduced in any judicial, administrative or other legal proceeding involving this Lease.

19.4  <u>Amendments</u>.  Except as specifically provided herein, neither this Lease nor any term or provisions hereof may be changed, waived, discharged or terminated, except by a written

instrument signed by the party against which the enforcement of the change, waiver, discharge or termination is sought.

19.5    Interpretation of Lease.  The captions preceding the articles and sections of this Lease and in the table of contents have been inserted for convenience of reference only and such captions shall in no way define or limit the scope or intent of any provision of this Lease.  This Lease has been negotiated at arm's length and between persons sophisticated and knowledgeable in the matters dealt with herein and shall be interpreted to achieve the intents and purposes of the parties, without any presumption against the party responsible for finalizing any part of this Lease.  Provisions in this Lease relating to number of days shall be calendar days.  Use of the word "**including**" shall mean "including, without limitation."  References to statutes, sections, ordinances or regulations are to be construed as including all statutory, ordinance, or regulatory provisions consolidating, amending, replacing, succeeding or supplementing the statute, section, ordinance or regulation.  Whenever the singular number is used in this Lease and when required by the context, the same includes the plural, the plural includes the singular, and the masculine gender includes the feminine and neuter genders, and the word "person" shall include corporation, partnership, firm, limited liability company, and association.

19.6    Successors and Assigns.  Subject to the provisions of Section 5 [Assignment or Subletting], the terms, covenants and conditions contained in this Lease shall bind and inure to the benefit of Tenant and City and, except as otherwise provided herein, their personal representatives and successors and assigns.

19.7    No Third-Party Beneficiaries.  There are no third-party beneficiaries to this Lease.

19.8    No Joint Venture.  It is expressly agreed that City is not, in any way or for any purpose, a partner of Tenant in the conduct of Tenant's business or a member of a joint enterprise with Tenant, and does not assume any responsibility for Tenant's conduct or performance of this Lease.

19.9    Brokers.  Neither party has had any contact or dealings regarding the leasing of the Premises, or any communication in connection therewith, through any licensed real estate broker or other person who could claim a right to a commission or finder's fee in connection with the lease contemplated herein.  In the event that any broker or finder perfects a claim for a commission or finder's fee based upon any such contact, dealings or communication, the party through whom the broker or finder makes his/her claim shall be responsible for such commission or fee and shall indemnify, defend, and hold harmless the other party from any and all Losses incurred by the indemnified party in defending against the same.  The provisions of this Section shall survive any termination or expiration of this Lease.

19.10    Severability.  If any provision of this Lease or the application thereof to any person, entity or circumstance shall, to any extent, be invalid or unenforceable, the remainder of this Lease, or the application of such provision to persons, entities or circumstances other than those as to which it is invalid or unenforceable, shall not be affected thereby, and each other provision of this Lease shall be valid and be enforceable to the full extent permitted by law.

19.11    Governing Law.  This Lease shall be construed and enforced in accordance with the laws of the State of California.

Airport Advertising Program Lease

19.12  <u>Attorneys' Fees</u>.  In the event that either City or Tenant fails to perform any of its obligations under this Lease or in the event a dispute arises concerning the meaning or interpretation of any provision of this Lease, the defaulting party or the party not prevailing in such dispute, as the case may be, shall pay any and all costs and expenses incurred by the other party in enforcing or establishing its rights hereunder (whether or not such action is prosecuted to judgment), including, without limitation, court costs and reasonable attorneys' fees.  For purposes of this Lease, reasonable fees of attorneys of City's Office of the City Attorney shall be based on the fees regularly charged by private attorneys with the equivalent number of years of experience in the subject matter area of the law for which the City Attorney's services were rendered who practice in the City of San Francisco in law firms with approximately the same number of attorneys as employed by the Office of the City Attorney.

19.13  <u>Cumulative Remedies</u>.  All rights and remedies of either party hereto set forth in this Lease shall be cumulative, except as may otherwise be provided herein.

19.14  <u>Time of Essence</u>.  Time is of the essence with respect to all provisions of this Lease in which a definite time for performance is specified.

19.15  <u>Reservations by City</u>.  City may (a) at any time, upon reasonable advance written or oral notice, enter the Premises to show the Premises to prospective tenants or other interested parties, to post notices of non-responsibility, to remeasure the Premises, to repair any part of the Premises or adjoining areas, to install equipment for adjoining areas, and for any other lawful purpose; (b) without advance notice, enter the Premises to conduct an environmental audit, operational audit, or general inspection, or in an emergency.  City shall use reasonable efforts to minimize disruption in Tenant's business.  Such entry shall not constitute a forcible or unlawful entry into or a detainer of the Premises, or an eviction, actual or constructive of Tenant from the Premises.  City reserves the exclusive right to use all areas of the Airport not comprising the Premises, and the exterior walls and roof the Premises.  City reserves the exclusive right to use such areas together with the right to install, maintain, use, repair, and replace pipes, ducts, conduits, wires, columns, and structural elements serving other parts of the Airport in and through the Premises.  This reservation in no way affects maintenance obligations imposed in this Lease.

19.16  <u>Survival</u>.  Expiration or termination of this Lease shall not affect the right of either party to enforce any and all indemnities and representations and warranties given or made to the other party under this Lease, nor shall it effect any provision of this Lease that expressly states it shall survive termination hereof.  Each party hereto specifically acknowledges and agrees that, with respect to each of the indemnities contained in this Lease, the indemnitor has an immediate and independent obligation to defend the indemnitees from any claim which actually or potentially falls within the indemnity provision even if such allegation is or may be groundless, fraudulent or false, which obligation arises at the time such claim is tendered to the indemnitor by the indemnitee.  Further, Tenant's obligation to make payments to City in respect of accrued charges (including those which have not yet been billed) and to make repairs (including those relating to the return of the Premises to City) which are accrued at the expiration or earlier termination of this Lease shall survive the expiration or earlier termination of this Lease.

19.17  <u>Quiet Enjoyment and Title</u>.  Tenant, upon paying the Rent hereunder and performing the covenants hereof, shall peaceably and quietly have, hold and enjoy the Premises and all appurtenances during the full Term as against all persons or entities claiming by and

– 38 –

through City. Tenant expressly acknowledges that Tenant's right to quiet possession of the Premises does not preclude City's right to make changes and additions to the Airport, including the Premises, and to do work in the Premises as permitted by this Lease.

19.18  No Right of Redemption. Tenant waives any right of redemption or reinstatement of Tenant under any present or future case law or statutory provision (including Code of Civil Procedure Sections 473 and 1179 and Civil Code Section 3275) in the event Tenant is dispossessed from the Premises for any reason. This waiver applies to future statutes enacted in addition or in substitution to the statutes specified herein.

19.19  Accord and Satisfaction. The payment by Tenant or the receipt by City of a lesser amount than the rent stipulated in this Lease may be, at City's sole option, deemed to be on account of the earliest due stipulated rent, or deemed to be on account of rent owing for the current period only, notwithstanding any instructions by or on behalf of Tenant to the contrary, which instructions shall be null and void, and no endorsement or statement on any check or any letter accompanying any such check or payment will be deemed an accord and satisfaction, and City may accept such check or payment without prejudice to City's right to recover the balance of such rent or payment or pursue any other remedy available in this Lease, at law or in otherwise. City may accept any partial payment from Tenant without invalidation of any contractual notice required to be given herein (to the extent such contractual notice is required) and without invalidation of any notice given or required to be given pursuant to applicable law.

19.20  Joint and Several Liability. The liabilities hereunder of the entities and/or person(s) comprising Tenant shall be joint and several.

19.21  Estoppel Statements. Within ten (10) days after request therefor by City, Tenant shall deliver, in recordable form, an estoppel statement certifying that this Lease is in full force and effect; the date of Tenant's most recent payment of Rent, and that Tenant has no defenses or offsets outstanding, or stating those claimed, and any other information reasonably requested. Failure to deliver said statement within the specified period shall be conclusive upon Tenant that: (i) this Lease is in full force and effect, without modification except as may be represented by City; (ii) there are no uncured defaults in City's performance and Tenant has no right of offset, counterclaim or deduction against Rent hereunder; and (iii) no more than one month's Base Rent has been paid in advance. Notwithstanding the conclusiveness of Tenant's failure to deliver such statement, Tenant's failure shall constitute a breach of this Lease.

19.22  Authority. If Tenant signs as a corporation, a limited liability company, or a partnership, each of the persons executing this Lease on behalf of Tenant does hereby covenant and warrant that Tenant is a duly authorized and existing entity, that Tenant has and is duly qualified to do business in California, that Tenant has full right and authority to enter into this Lease, and that each and all of the persons signing on behalf of Tenant are authorized to do so. Upon City's request, Tenant shall provide City evidence reasonably satisfactory to City confirming the foregoing representations and warranties.

19.23  Consents. If City is required to reasonably grant consent or approval, but does not do so, Tenant's sole and exclusive remedy is to seek specific performance and in no event will City be liable for any monetary damages.

19.24   <u>Counterparts</u>.   This Lease may be executed in two or more counterparts, each of which shall be deemed an original, but all of which taken together shall constitute one and the same instrument.

19.25   <u>Lease to be Signed</u>. The preparation and submission of a final of this Lease by either party to the other does not constitute an offer nor will either party be bound to any of the terms of this Lease or the entirety of the Lease itself until both parties have fully executed a final document and an original signature document has been received by both parties.

IN WITNESS WHEREOF, the parties have executed this Lease as of the Effective Date.

<u>TENANT</u>:   Transportation Media, Division of Eller Media Company, A Corporation organized under the laws of the State of Delaware.

[signatories to also initial Summary]   a _____Delaware_____ corporation

By: _____

Name: ____JAMES  V.  RILEY____
                                        (type or print)

Title: ____PRESIDENT____

<u>CITY</u>:   CITY AND COUNTY OF SAN FRANCISCO, a municipal corporation, acting by and through its Airport Commission

[signatories to also initial Summary]

_____
John L. Martin
Airport Director

AUTHORIZED BY AIRPORT COMMISSION

Resolution No. 00-0408
Adopted: November 21, 2000
Attest: _____
                Secretary
        Airport Commission

APPROVED AS TO FORM:
LOUISE H. RENNE,
City Attorney

By: _____
        Deputy City Attorney

## LIST OF EXHIBITS

Exhibit A – Description of Premises
Exhibit B – Airport Advertising Standards
Exhibit C – Form of Commencement Date Acknowledgment
Exhibit D – Initial Improvements
Exhibit E – Deposit Form

# EXHIBIT A
## PREMISES

Premises will include limited area within Airport parking structures, parking elevator cores, transit stations, shuttle buses, non-terminal bus shelters, connector tunnels in the parking lots and other areas as determined by the Airport Director.

Should circumstances warrant The Airport reserves the right to relocate Advertising to more suitable locations. The following are the initial list of locations:

| Location | Advertising Type | No. of Locations | Unit Total |
|---|---|---|---|
| **I. South Terminal** | | | |
| **B/A A Garage** | | | |
| Park. Garage/Elev. Core (A) | Wall Wrap (4x4) | 2 sites/floor (4 floors) | 8 |
| Park. Garage/Stairwell (A) | Wall Wrap (4x6) | 1 every landing | 4 |
| | | | |
| **B/A B Garage / Tunnel** | | | |
| Park. Garage/Elev. Core (B) | Wall Wrap (4x4) | 2 sites/floor (4 floors) | 8 |
| Park. Garage/Stairwell (B) | Wall Wrap (4x6) | 1 every landing | 4 |
| Connector Tunnel to Terminal | Wall Wrap/Diorama(4x6) | See Diagram 1.3 for locations | 8 |
| | | | |
| **B/A C Garage** | | | |
| Park. Garage/Elev. Core (C) | Wall Wrap (4x4) | 2 sites/floor (4 floors) | 8 |
| Park. Garage/Stairwell (C) | Wall Wrap (4x6) | 1 every landing | 4 |
| | | | |
| **II Current International** | | | |
| **B/A D Garage** | | | |
| Park. Garage/Elev. Core (D) | Wall Wrap (4x4) | 2 sites/floor (4 floors) | 8 |
| Park. Garage/Stairwell (D) | Wall Wrap (4x6) | 1 every landing | 4 |
| Connector Tunnel to Terminal | Wall Wrap/Diorama (4x6) | See Diagram 1.4 for locations | 9 |
| | | | |
| **III. North Terminal** | | | |
| **B/A E Garage** | | | |
| Park. Garage/Elev. Core (E) | Wall Wrap (4x4) | 2 sites/floor (4 floors) | 8 |
| Park. Garage/Stairwell (E) | Wall Wrap (4x6) | 1 other landing | 4 |
| Garage to level 1 escalator | Wall Wrap (entire wall) | 1 location "see drawing" | 1 |
| | | | |
| **B/A F Garage / Tunnel** | | | |
| Park. Garage/Elev. Core (F) | Wall Wrap (4x4) | 2 sites/floor (4 floors) | 8 |
| Park. Garage/Stairwell (F) | Wall Wrap (4x6) | 1 every landing | 4 |
| Connector Tunnel to Terminal | Wall Wrap/Diorama (4x6) | See Diagram 1.2 for locations | 3 |
| Garage to level 1 escalator (F) | Wall Wrap (entire wall) | 1 location "see drawing" | 1 |

| Proposed Location | Advertising Type | No. of Locations | Unit Total |
|---|---|---|---|
| **B/A G Garage** | | | |
| Park. Garage/Elev. Core (G) | Wall Wrap (4x4) | 2 sites/floor (4 floors) | 8 |
| Park. Garage/Stairwell (G) | Wall Wrap (4x6) | 1 every landing | 4 |

**IV. Boarding Area "A" and "G" Connector Tunnels leading into the New International Terminal.** Sites to be determined.

| **V. Transit and Miscellaneous** | | | |
|---|---|---|---|
| LTA Boards | Phone Centers (duratrans) | 10 phone centers | 10 |
| Connector Tunnels (A&G) | TBD | 2/tunnel (2 tunnels) | 4 |
| Bus Shelters | | | |
| Transit Stations | | | |
| Shuttle Bus Interiors | | | |
| Rental Car Center | | | |
| Hold Room Silent Monitors (New IT) | | 27" plasma screens | 24 |

# EXHIBIT B
# AIRPORT ADVERTISING STANDARDS

The following is the Airport Advertising Standards Policy, approved by the Airport Commission on June 6, 2000. Tenant must abide by the Airport Advertising Standards Policy, as amended from time to time

1) Three weeks prior to posting, all proposed advertising graphic designs shall be submitted to the Director or his designee for review and approval. The designs must be submitted in sufficient detail to determine the content and final general appearance of the advertisement.

2) Any advertisement that does not comply with the standards as set forth by the Airport in #4, shall be rejected.

3) The subject matter of all advertising shall be limited to those advertisements which propose a commercial transaction. ("Commercial transaction" does not include political or religious views.)

4) Advertisements may not be displayed which:

   a) Advertise alcohol or tobacco products

   b) Relate to an illegal activity

   c) Depict violence or contain words or images that arouse anger, alarm or resentment in others

   d) Advertise services in direct competition with the Airport's business objectives

   e) Contain obscene matter as that term is defined in California Penal Code §311(a) or contain statements or words of an obscene, indecent or immoral character, or any picture or illustration of the human figure in such detail as to offend public morals or decency

   f) Are false, misleading or deceptive

   g) Relate to gambling

   h) Contain material that is offensive to the ordinary person

AMENDMENT NO. 1 AND NO. 2
AIRPORT ADVERTISING PROGRAM LEASE
AT SAN FRANCISCO INTERNATIONAL AIRPORT

THIS AMENDMENT AGREEMENT (this "**Agreement**"), dated as of the Effective Date (as defined below) is entered into by and between Tenant (as defined below), and the City and County of San Francisco, a municipal corporation, acting by and through its Airport Commission ("**City**"). This Agreement is made with reference to the following facts:

A.     Tenant and City have entered into the Lease (as defined below) pursuant to which Tenant conducts certain concession operations at the San Francisco International Airport (the "**Airport**"). Most Airport concession leases provide that the tenant pays annual rent to City equal to the higher of a "Minimum Annual Guarantee" or a percentage of gross revenues.

B.     On September 11, 2001, the World Trade Center and Pentagon were attacked by terrorists, resulting in extraordinary and unexpected effects on travel worldwide. As a result, many of the Airport's concession tenants have represented that they are unable to conduct their businesses under the existing terms of their respective Airport leases. Pursuant to Airport Commission Resolution No. 02-0039, the Airport Commission approved a comprehensive long-term plan to support the Airport's concession tenants, known as the Airport Concession Support Program (the "**Support Program**").

C.     As contemplated by and in furtherance of the Support Program, Tenant and City desire to amend the Lease, on the terms and conditions set forth below.

Accordingly, Tenant and City agree as follows:

1.  **DEFINED TERMS.**

As used in this Agreement, the following capitalized terms shall have the meanings given them below.

OCT 18 2002

|  | |
|---|---|
| **Effective Date:** | _____, 2002. |
| **Tenant (collectively):** | **Clear Channel Outdoor, Inc. dba Clear Channel Airports, formerly known as Transportation Media, a division of Eller Media Company, a Delaware Corporation.** |
| **Lease:** | **Lease No. 00-0408 ("Airport Advertising Program Lease")**, as the same may have been amended or modified to date. |
| **Premises:** | In addition to the Premises already stated in the Lease, limited areas in the baggage claim level of the Terminal Building Complex, including International Terminal. |
| **MAG:** | The Minimum Annual Guarantee or other minimum rental amount to be paid by Tenant to City as provided in the Lease. |

| | |
|---|---|
| **Percentage Rent:** | The percentage rent specified or other rental amount based on Tenant's Gross Revenues to be paid by Tenant to City as provided in the Lease or herein. |
| **Sales Report:** | The sales report as defined in the Lease, or if none is so defined, a summary of Gross Revenues in form satisfactory to the Airport Director. |
| **Gross Revenues:** | The gross revenues as defined in the Lease, or if none is so defined, all gross revenues achieved by Tenant in the Airport facilities. |
| **Attachments:** | Attachment 1: City and Other Governmental Provisions<br>Attachment 2: MAG Adjustment<br>Attachment 3: Option to Extend Lease Term |
| | All such attachments are incorporated into this Agreement and the Lease and made a part hereof. |

Any other capitalized terms used herein and not defined herein shall have the meanings given them in the Lease.

/ / / / / / Intentionally Left Blank / / / / /

Airport Advertising Program Lease Amendment No. 1

## 2.  LEASE AMENDMENTS

2.1   <u>MAG Suspensions and Percentage Rent</u>.  Effective as of September 11, 2001, Tenant's obligation to pay the MAG shall be suspended and Tenant shall be required to pay only the Percentage Rent, unless and until the MAGs are reinstated as provided below.  On or before the 20th day of each month, Tenant will submit to City a Sales Report showing Tenant's Gross Revenues achieved with respect to the prior month, together with the Percentage Rent calculated on such Gross Revenues, cumulated by Lease Year.

2.2   <u>Tiered Percentage Rent Structure</u>.  If the Lease provides that the Percentage Rent is based on a tiered gross revenue structure, for purposes of determining the Percentage Rent payable, the annual gross revenues shall continue to cumulate as provided in the Lease.  For example, if Tenant's Lease Year is November 1 through October 31, then for purposes of calculating Percentage Rent for April 2002, all gross revenues achieved to date (from November 1 through April 30) will be cumulated.

2.3   <u>MAG Reinstatement and MAG Adjustment</u>.

(a)   Pursuant to Resolution No. 02-0062, adopted March 5, 2002, effective April 1, 2002, the MAG has been reinstated.

(b)   Pursuant to Resolution No. 02-0071, adopted April 2, 2002, the MAG Schedule will be adjusted and has been amended as set forth in *Attachment 2*.

2.4   <u>Option to Extend Lease Term</u>.  Tenant has the option to extend the Lease Term as set forth on *Attachment 3*.

2.5   <u>Additional Premises</u>.  Pursuant to Resolution No. 02-0062, adopted March 5, 2002, Tenant has been approved for additional advertising locations on the baggage claim level of the terminals, including the sterile corridors of the International Terminal.  The additional Premises are listed as set forth on *Attachment 4*.

2.6   <u>Holdover Status</u>.  If and to the extent City approves the "holdover" of the Lease on a month-to-month basis following the expiration of the Lease, Tenant shall be required to pay only Percentage Rent (and no MAG) during such holdover period.

2.7   <u>Subtenants</u>.  If Tenant has subleased any portion of the Premises, Tenant shall offer to such subtenant(s) the same types of support as are provided herein.

2.8   <u>City and Other Governmental Provisions</u>.  If and to the extent the provisions set forth on *Attachment 1* are not included in the Lease, they shall hereafter be deemed part of the Lease.

3) **GENERAL PROVISIONS**

3.1 <u>City and Other Governmental Provisions</u>.  If and to the extent the provisions set forth on *Attachment 1* are not included in the Lease, they shall hereafter be deemed part of the Lease.

3.2 <u>Full Force and Effect</u>.  As amended hereby, each and every of the terms, conditions, and covenants in the Lease shall remain in full force and effect.

3.3 <u>Lease</u>.  As used herein and in the Lease, the term "Lease" shall mean the Lease as amended hereby.  In the event of any inconsistency or conflict between a term and/or condition of the Lease and a term and/or condition of this Agreement, the term and/or condition in this Agreement shall prevail.

3.4 <u>Entire Agreement</u>.  The parties intend that this Agreement (including all of the attached exhibits and attachments, which are made a part of this Agreement) shall be the final expression of their agreement with respect to the subject matter hereof and may not be contradicted by evidence of any prior or contemporaneous written or oral agreements or understandings.

3.5 <u>Governing Law</u>.  This Agreement shall be construed and enforced in accordance with the laws of the State of California.

3.6 <u>Counterparts</u>.  This Agreement may be executed in two or more counterparts, each of which shall be deemed an original, but all of which taken together shall constitute one and the same instrument.


/ / / / / / Intentionally Left Blank / / / / /

IN WITNESS WHEREOF, the parties have executed this Agreement as of the Effective Date.

TENANT:    Clear Channel Outdoor, Inc. dba Clear Channel
            Airports, formerly known as Transportation Media, a
            division of Eller Media Company, a Delaware
            corporation.

            By: _____

            Name: __J. MICHAEL RILEY_____
                        (type or print)
            Title: __PRESIDENT_____

CITY:      CITY AND COUNTY OF SAN FRANCISCO,
            a municipal corporation,
            acting by and through its Airport Commission

            _____
                            John L. Martin
                            Airport Director

AUTHORIZED BY AIRPORT
COMMISSION

Resolution No. 02-0039
Adopted: February 19, 2002

Resolution No. 02-0062                Resolution No. 02-0071
Adopted: March 5, 2002                Adopted: April 2, 2002

Attest: _____
            Secretary
            Airport Commission

                                            X:\CDM\TENANTS\AMENDMENTS\Clear Channel Concess Support Amend L00-0408.doc

APPROVED AS TO FORM:
DENNIS J. HERRERA,
City Attorney

By: _____
        Deputy City Attorney

Airport Advertising Program Lease Amendment No. 1

# ATTACHMENT 1
## CITY AND OTHER GOVERNMENTAL PROVISIONS

1. <u>City's Nondiscrimination Ordinance</u>. The following shall be applicable if this Agreement includes the granting of an option to extend the term:

(a)    In the performance of this Lease, Tenant agrees not to discriminate against any employee, City and County employee working with Tenant, applicant for employment with Tenant, or against any person seeking accommodations, advantages, facilities, privileges, services, or membership in all business, social, or other establishments or organizations operated by Tenant, on the basis of the fact or perception of a person's race, color, creed, religion, national origin, ancestry, age, height, weight, sex, sexual orientation, gender identity, domestic partner status, marital status, disability or Acquired Immune Deficiency Syndrome or HIV status (AIDS/HIV status), or association with members of such protected classes, or in retaliation for opposition to discrimination against such classes.

(b)    Tenant shall include in all subleases and other subcontracts relating to the Premises hereunder a non-discrimination clause in substantially the form of subsection (a) above. In addition, Tenant shall incorporate by reference in all subleases and other subcontracts the provisions of Sections 12B.2(a), 12B.2(c)-(k), and 12C.3 of the San Francisco Administrative Code and shall require all subtenants and other subcontractors to comply with such provisions. Tenant's failure to comply with the obligations in this subsection shall constitute a material breach of this Lease.

(c)    Tenant does not as of the date of this Lease and will not during the Term, in any of its operations in San Francisco, where the work is being performed for the City, or elsewhere within the United States, discriminate in the provision of bereavement leave, family medical leave, health benefits, membership or membership discounts, moving expenses, pension and retirement benefits or travel benefits, as well as any benefits other than the benefits specified above, between employees with domestic partners and employees with spouses, and/or between the domestic partners and spouses of such employees, where the domestic partnership has been registered with a governmental entity pursuant to state or local law authorizing such registration, subject to the conditions set forth in Section 12B.2(b) of the San Francisco Administrative Code.

(d)    Tenant hereby represents that prior to execution of this Lease (i) Tenant executed and submitted to the Human Rights Commission of the City and County of San Francisco (the "HRC") the "Chapter 12B Declaration: Nondiscrimination in Contracts and Benefits" form (Form HRC-12B-101)", with supporting documentation, and (ii) the HRC approved such form.

(e)    The provisions of Chapters 12B and 12C of the San Francisco Administrative Code relating to non-discrimination by parties contracting for the lease of City property are incorporated in this Section by reference and made a part of this Lease as though fully set forth herein. Tenant shall comply fully with and be bound by all of the provisions that apply to this Lease under such Chapters of the Administrative Code,

Airport Advertising Program Lease Amendment No. 1

including but not limited to the remedies provided in such Chapters. Without limiting the foregoing, Tenant understands that pursuant to Section 12B.2(h) of the San Francisco Administrative Code, a penalty of $50 for each person for each calendar day during which such person was discriminated against in violation of the provisions of this Lease may be assessed against Tenant and/or deducted from any payments due Tenant.

2. <u>Airport Intellectual Property</u>. Pursuant to Resolution No. 01-0118, adopted by the Airport Commission on April 18, 2001, the Airport Commission affirmed that it will not tolerate the unauthorized use of its intellectual property, including the SFO logo, CADD designs, and copyrighted publications. All proposers, bidders, contractors, tenants, permittees, and others doing business with or at the Airport (including subcontractors and subtenants) may not use the Airport intellectual property, or any intellectual property confusingly similar to the Airport intellectual property, without the Airport director's prior consent.

3. <u>Requiring Health Benefits for Covered Employees</u>. Unless exempt, Tenant agrees to comply fully with and be bound by all of the provisions of the Health Care Accountability Ordinance (HCAO), as set forth in San Francisco Administrative Code Chapter 12Q (Chapter 12Q), including the implementing regulations, as the same may be amended or updated from time to time. The provisions of Chapter 12Q are incorporated herein by reference and made a part of this Lease as though fully set forth herein. The text of the HCAO is currently available on the web at http://www.amlegal.com/sanfran/viewcode.htm. Capitalized terms used in this Section and not defined in this Lease shall have the meanings assigned to such terms in Chapter 12Q.

(a) For each Covered Employee Tenant shall provide the applicable health benefit set forth in Section 12Q.3 of the HCAO. If Tenant chooses to offer the health plan option, such health plan shall meet the minimum standards set forth by the San Francisco Health Commission.

(b) Notwithstanding the above, if Tenant meets the requirements of a "small business" as described in Section 12Q.3(d) of the HCAO, it shall have no obligation to comply with part (a) above.

(c) Tenant's failure to comply with the requirements of the HCAO shall constitute a material breach by Tenant of this Lease. If, within 30 days after receiving City's written notice of a breach of this Lease for violating the HCAO, Tenant fails to cure such breach or, if such breach cannot reasonably be cured within such 30-day period, Tenant fails to commence efforts to cure within such period, or thereafter fails diligently to pursue such cure to completion, City shall have the remedies set forth in Section 12Q.5(f)(1-5). Each of these remedies shall be exercisable individually or in combination with any other rights or remedies available to City.

(d) Any Sublease or Contract regarding services to be performed on the Premises entered into by Tenant shall require the Subtenant or Contractor and Subcontractors, as applicable, to comply with the requirements of the HCAO and shall contain contractual obligations substantially the same as those set forth in this Section. Tenant shall notify the Purchasing Department when it enters into such a Sublease or

Contract and shall certify to the Purchasing Department that it has notified the Subtenant or Contractor of the obligations under the HCAO and has imposed the requirements of the HCAO on the Subtenant or Contractor through written agreement with such Subtenant or Contractor. Tenant shall be responsible for ensuring compliance with the HCAO by each Subtenant, Contractor and Subcontractor performing services on the Premises. If any Subtenant, Contractor or Subcontractor fails to comply, City may pursue the remedies set forth in this Section against Tenant based on the Subtenant's, Contractor's, or Subcontractor's failure to comply, provided that the Contracting Department has first provided Tenant with notice and an opportunity to cure the violation.

(e)     Tenant shall not discharge, reprimand, penalize, reduce the compensation of, or otherwise discriminate against, any employee for notifying City of any issue relating to the HCAO, for opposing any practice proscribed by the HCAO, for participating in any proceedings related to the HCAO, or for seeking to assert or enforce any rights under the HCAO by any lawful means.

(f)     Tenant represents and warrants that it is not an entity that was set up, or is being used, for the purpose of evading the requirements of the HCAO.

(g)     Tenant shall keep itself informed of the requirements of the HCAO, as they may change from time to time.

(h)     Upon request, Tenant shall provide reports to City in accordance with any reporting standards promulgated by City under the HCAO, including reports on Subtenants, Contractors, and Subcontractors.

(i)     Within five (5) business days after any request by City, Tenant shall provide City with access to pertinent records relating to any Tenant's compliance with the HCAO. In addition, City and its agents may conduct random audits of Tenant at any time during the term of this Lease. Tenant agrees to cooperate with City in connection with any such audit.

/ / / / / / Intentionally Left Blank / / / / /

**ATTACHMENT 2**
**MAG Adjustment**

1    MAG Adjustment is set forth as follows:

| Lease Year | MAG | Increase in Original MAG |
|---|---|---|
| 2 (4/1/02-3/31/03) | $4,100,000 | $ 50,000 |
| 3 (4/1/03-3/31/04) | $4,200,000 | $150,000 |
| 4 (4/1/04-3/31/05) | $4,300,000 | $250,000 |
| 5 (4/1/05-3/31/06) | $4,800,000 | $750,000 |

2    Effective April 1, 2002, instead of MAG being adjusted based on Consumer Price Index (CPI), MAG shall be recalculated each year based on the greater of 85% of the previous year's rent paid or the above MAG Increase Schedule.

## ATTACHMENT 3
### Option to Extend Lease Term

On the terms and conditions set forth on this *Attachment 3*, Tenant shall have the option to extend the term of the Lease ("**Tenant's Option**") for one five (5) year period (the "**Option Term**"), commencing on the expiration date of the Lease and expiring at 11:59pm on the day before the fifth (5th) anniversary of the original expiration date.

1.  **Exercise.** To exercise Tenant's Option, Tenant must give written notice to City on or before the date that is one year before the original expiration date of the Lease. If Tenant fails to give such notice on or before such date, Tenant's Option shall be null and void.

2.  **Relationship to City's Option.** If and to the extent the Lease already includes one or more lease term extension option(s) (at City's discretion) ("**City's Option**"), Tenant's Option would be exercisable by Tenant as provided above. If Tenant exercises Tenant's Option, then City's Option would remain exercisable, and would extend the term, commencing at the end of the Option Term. If Tenant declines to exercise Tenant's Option, then City's Option would remain exercisable effective as of the end of the original term, as provided in the Lease.

3.  **Refurbishment.**

    (a) If and to the extent the Lease includes an existing requirement specifying a minimum mid-term refurbishment amount, the Airport Director shall be authorized to waive or reduce such amount provided Airport Director is satisfied that Tenant shall perform such refurbishment and otherwise develop and implement a maintenance program necessary or appropriate to keep the facilities in good condition.

    (b) If Tenant exercises Tenant's Option, or if City exercises City's Option, if any, Tenant shall perform in the first year of the relevant option period(s) such refurbishment and otherwise develop and implement a maintenance program necessary or appropriate to keep the facilities in good condition, as determined by the Airport Director.

4.  **Deposit.** As a condition to Tenant's exercise of Tenant's Option, Tenant must deliver to City a Deposit, bond, or other security deposit in form and substance satisfactory to the Airport Director and the City's City Attorney, covering Tenant's obligations during the Option Term.

/ / / / / / Intentionally Left Blank / / / /

# ATTACHMENT 4
## Additional Premises

In addition to the locations listed in Exhibit A **Premises** of the Lease, Tenant shall also install, manage, operate, maintain and display commercial advertising using various media types as generally found in airports in the *baggage claim level* of Terminal Building Complex and the New International Terminal, including the sterile corridors of the arrivals level of the International Terminal.

All Advertising Equipment and content must be approved by the Director before being installed in each location.  All advertising content must satisfy the requirements of the Airport's Advertising Standards Policy.

| Location | Advertising Type | No. of Locations |
|---|---|---|
| **I.   Terminal 1** | | |
| | Wall Diorama (3.5x5) | 18 |
| | Mini-Spectacular | |
| | -Wall Mount (6x6) | 5 |
| | Spectacular (7x11) | 2 |
| | Escalator Spectacular (4x16) | 6 |
| **II.  Terminal 3** | | |
| | Wall Diorama (3.5x5) | 9 |
| | Mini-Spectacular | |
| | -Wall Mount (6x6) | 3 |
| | Mini-Spectacular | |
| | -Floor Mount (6x6) | 2 |
| | Spectacular (7x11) | 2 |
| | Escalator Spectacular (4x16) | 8 |
| **III. International Terminal** | | |
| | Pedestal Diorama (3.5x5) | 44 |
| | Wall Wraps (sizes vary) | 12 |

TENANT:  Clear Channel Airports
LEASE NO.:  00-0408

**RIDER TO**
**LEASE AMENDMENT**
**ATTACHMENT 3**
**Option to Extend Lease Term**

This Rider is attached to and becomes a part of the Lease Amendment to which it is attached.  Capitalized terms used but not defined herein shall have the meanings given it in such Lease Amendment.  To the extent of any inconsistency between the terms of such Lease Amendment and this Rider, or the Lease and this Rider, the terms of this Rider shall prevail.

Rent payable by Tenant during the Option Term shall be adjusted to market rent as follows:  If Tenant properly and timely exercises Tenant's Option, then Director shall determine whether and to what extent market rent exceeds the rent specified in the Lease.  In making such market rent determination, Director may consider such factors as Bay Area economy, comparable Airport facilities, enplanements, revenues, concept, and location.  Within a reasonable period of time following receipt of Tenant's notice exercising Tenant's Option, Director shall give notice to Tenant specifying the appropriate market rent (the "**Adjusted Rent**") for the Lease (the "**Adjusted Rent Notice**").  Within fifteen (15) days after receipt of the Adjusted Rent Notice, Tenant may withdraw its exercise of Tenant's Option by giving notice to Director, in which event Tenant's exercise of Tenant's Option shall be null and void.  In the event Tenant fails to give timely such withdrawal notice, Tenant will be deemed to have accepted the rent adjustment and it will not thereafter be entitled to withdraw its exercise of the Tenant's Option.  In the event Tenant accepts the rent adjustment or is deemed to have accepted the rent adjustment, effective as of the first day of the Option Term, the Lease rent will be adjusted to equal the Adjusted Rent.  In no event will the rent payable in the Option Term be less than the rent payable by Tenant in the last year of the base term of the Lease.  Nothing herein shall limit any rights City may have to extend the term of the Lease.

If and to the extent the Lease provides for annual adjustments to rent based on Consumer Price Index (CPI) increases, enplanement increases, or otherwise, and if the Lease term is extended as provided herein, then the Adjusted Rent shall continue to be adjusted annually but the Adjusted Rent shall be the basis for such adjustment (rather than the MAG applicable to the first year of the Lease); and the base year and base index shall reference the data for the first year of the Option Term (rather than the data for the first year of the Lease).

Tenant Initials

City Initials