PAUL E. FISHER, State Bar No. 125309
The Law Office of Paul E. Fisher
537 Newport Center Dr., #289
Newport Beach, CA 92660
Telephone: (949) 675-5619
Facsimile:  (949) 675-5641

ERIC HECKER (admitted *pro hac vice*)
Emery Celli Brinckerhoff & Abady LLP
75 Rockefeller Plaza, 20th Floor
New York, NY 10019
Telephone: (212) 763-5000
Facsimile:  (212) 763-5001

ATTORNEYS FOR PLAINTIFF
METRO FUEL LLC

UNITED STATES DISTRICT COURT

FOR THE NORTHERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| METRO FUEL LLC, a Delaware limited liability company,<br><br>　　　　　Plaintiff,<br>vs.<br><br>CITY OF SAN FRANCISCO, a municipal corporation, COUNTY OF SAN FRANCISCO, a subdivision of the State of California, CITY AND COUNTY OF SAN FRANCISCO, a chartered California city and county,<br><br>　　　　　Defendants. | Case No. 3:07-CV-6067 (JSW)<br><br>The Hon. Jeffrey S. White<br><br>**PLAINTIFF'S RESPONSE TO THE CITY'S ADMINISTRATIVE MOTION TO CONTINUE MEET AND CONFER AND BRIEFING DATES** |

Plaintiff Metro Fuel LLC ("Plaintiff") hereby responds, pursuant to Local Rule 7-11(b), to the City's Administrative Motion to Continue Meet and Confer and Briefing Dates, which was filed earlier this afternoon.

At the outset, it bears emphasis that the *only* aspect of the City's motion that Plaintiff opposes is the City's curious refusal even to meet and confer with Plaintiff this week regarding the discovery it claims it needs in order to oppose Plaintiff's pending preliminary injunction motion.

Although Plaintiff certainly is sympathetic to Mr. Lakritz's tragic personal situation, we respectfully submit that there is no reason why Ms. Jensen cannot engage in a constructive dialogue with counsel for Plaintiff in Mr. Lakritz's absence. Ms. Jensen, who is Mr. Lakritz's direct supervisor, does not attempt to suggest that she is unfamiliar with the issues presented in this case, nor does she attempt to suggest that she is unfamiliar with the categories of discovery that the City has claimed it needs in order to oppose Plaintiff's pending preliminary injunction motion. Indeed, Mr. Lakritz undoubtedly would be consulting with Ms. Jensen and seeking her guidance with respect to the City's discovery position were he not indisposed. In the amount of time that Ms. Jensen spent drafting her administrative motion, declaration, and proposed order, she could have reviewed Plaintiff's motion papers and engaged in the discussion with Plaintiff's counsel that she is now stretching to avoid.

The parties wasted well over a month negotiating and finalizing a stay of enforcement that the City ultimately rejected. As Plaintiff's preliminary injunction papers make clear, its need for preliminary injunctive relief has grown increasingly more urgent. We respectfully submit that the City's request to continue the meet and confer schedule is a thinly-veiled attempt to deprive this Court of the ability even to consider the discovery issue, and that it should be denied. The parties should be directed to meet and confer and to report back to the Court by Friday as scheduled.

On the merits of the discovery issue, moreover, the City plainly does not need any of the discovery it seeks prior to responding to Plaintiff's pending preliminary injunction motion. The City's list of requests, which was appended to Mr. Lakritz's July 9, 2008 declaration responding to Plaintiff's administrative motion for leave to file a preliminary injunction motion, is attached hereto once again for the Court's reference and convenience. A cursory review of this list makes clear that the City does not need *any* of these materials prior to responding to Plaintiff's pending preliminary injunction motion.

The first two items on the City's list relate to the locations of Plaintiff's panel signs. However, Plaintiff has already demonstrated that it operates 164 panel signs in San Francisco and that the City itself operates thousands of panel signs that are at least as dangerous and unsightly as Plaintiff's signs allegedly are. The straightforward legal question presented in Plaintiff's motion is whether that kind of government hypocrisy has constitutional significance. Two prior cases have held squarely that it does. *See Metro Lights, LLC v. City of Los Angeles*, 488 F. Supp. 2d 927 (C.D. Cal. 2006), and *World Wide Rush, LLC v. City of Los Angeles*, __ F. Supp. 2d __, 2008 WL 2477440 (C.D. Cal. Jun. 9. 2008). Whether Plaintiff operates 10, 75, 164, or 500 panel signs is irrelevant to that basic question, as are the precise locations of Plaintiff's signs. Plaintiff's entitlement to a preliminary injunction rises or falls entirely based on this Court's assessment of whether the *Metro Lights* and *World Wide Rush* courts correctly decided the controlling *legal* question.

Requests Nos. 4-6 pertain to the harm that Plaintiff has suffered as a result of the City's unconstitutional conduct. But the Ninth Circuit has repeatedly held that "[t]he loss of First Amendment freedoms, for even minimal periods of time, unquestionably constitutes irreparable injury for purposes of the issuance of a preliminary injunction." *Warsoldier v. Woodford*, 418 F.3d 989, 1002 (9th Cir. 2005); *Sammartano v. First Judicial Dist. Ct.*, 303 F.3d 959, 973 (9th Cir.

2002) (holding that "the fact that a case raises serious First Amendment questions compels a finding that there exists the potential for irreparable injury, or that at the very least the balance of hardships tips sharply in [the plaintiff's] favor"); *see also Elrod v. Burns*, 427 U.S. 347, 373 (1976) (presumption of irreparable injury is particularly strong in cases involving infringement on First Amendment freedoms). To be sure, the discovery the City seeks is relevant to the extent to which it is liable to Plaintiff for money damages, but that issue is not implicated by Plaintiff's preliminary injunction motion.

Requests Nos. 7-11, 12-16, and 21-23 seek information relating to Plaintiff's advertisers, to Plaintiff's lessors, and to the due diligence process relating to the transaction through which Plaintiff acquired the panel signs at issue. We do not understand how any of this information is even arguably necessary to respond to Plaintiff's preliminary injunction motion, and Mr. Lakritz has declined on several occasions to explain the City's position to counsel for Plaintiff.

Requests Nos. 17-19 seek information relating to permits. Plaintiff's preliminary injunction papers are clear that Plaintiff has no advertising sign permits for its panel signs (because the City has refused even to accept its permit applications for filing). To the extent the City seeks information relating to "utility" permits (Request No. 17), the *Metro Lights* court correctly held that such discovery is not appropriate – let alone urgently necessary – where, as here, the City has not issued any utility code violations for any of the signs at issue. *See* 488 F. Supp. 2d at 938.

Finally, Request No. 20 seeks notices of violation that plainly are within the City's possession, custody, or control.

For all of these reasons, it is respectfully submitted that the City should be directed to file its opposition to Plaintiff's preliminary injunction motion as soon as possible, or at a minimum that the City should be directed to meet and confer with Plaintiff this week as the Court previously

held. Plaintiff certainly is willing to agree to a preliminary injunction briefing schedule that will accommodate Mr. Lakritz's tragic personal situation. But the City's refusal even to review Plaintiff's motion papers and engage in a constructive dialogue can only be seen as an improper dilatory tactic.

With respect to the City's request for an extension of time in which to file its motion for judgment on the pleadings, Plaintiff has no objection to that request or to the City's request to file a 25-page brief. Because Eric Hecker, counsel for Plaintiff, will be on vacation from August 18-31, we respectfully suggest that the City file its motion on August 29 and that the Plaintiff file its opposition on September 12. (As we previously observed, however, the City's strained claim that it cannot respond to Plaintiff's preliminary injunction motion without discovery is belied by its insistence that it somehow is entitled to judgment as a matter of law without discovery.)

Date: July 22, 2008             Respectfully submitted,

                                LAW OFFICE OF PAUL E. FISHER


                        By:  _____/s/_____
                             PAUL E. FISHER
                             State Bar No. 125309
                             Law Office of Paul E. Fisher
                             537 Newport Center Dr., #289
                             Newport Beach, CA 92660
                             Telephone: (949) 675-5619
                             Facsimile:  (949) 675-5641

                             ERIC HECKER (admitted *pro hac vice*)
                             Emery Celli Brinckerhoff & Abady LLP
                             75 Rockefeller Plaza, 20th Floor
                             New York, NY 10019
                             Telephone: (212) 763-5000
                             Facsimile:  (212) 763-5001

                             ATTORNEYS FOR PLAINTIFF
                             METRO FUEL LLC

# EXHIBIT A

1. Current list (as of June 1, 2008), by street address, of all Metro Fuel signs locations in San Francisco.

2. Documents showing the street addresses of all Metro Fuel signs in San Francisco as of December 31 of each year from 2000 through June 1, 2008.

3. Documents showing all locations, by street address, from which Metro Fuel removed a sign in San Francisco from 2002 through June 1, 2008.

4. Documents presenting or describing all locations Metro Fuel claims it lost as a result of the actions of the City and County of San Francisco from 2002 through June 1, 2008.

5. Documents presenting or describing all locations Metro Fuel claims it could have erected a sign but for the actions of the City and County of San Francisco from 2002 through June 1, 2008.
    a. Provide documents (correspondence, notes, etc.) including communication or negotiations with future lessors at such additional sites.
    b. Provide leases or draft lease documents of these additional sites.
    c. Provide correspondence or communications from any potential lessors indicating that they would not allow Metro Fuel to lease a site display space due to the ban.

6. Any documents indicating or specifying whether all or any of Metro Fuel's San Francisco signs operate within any rotary or rotation programs with other Metro Fuel billboards.

7. Names of advertising agencies ("agencies") utilized by Metro Fuel to obtain advertisers for its San Francisco signs from January 1, 2002 through June 1, 2008.

8. Names of agencies utilized by advertisers to place advertisements on Metro Fuel's San Francisco signs from January 1, 2002 through June 1, 2008.

9. List of clients with which Metro Fuel had or has national advertising campaigns or contracts and placed advertisements in San Francisco from 2002 through June 1, 2008.

10. Any and all written agreements or advertising contracts with advertising agencies representing companies advertising on Metro Fuel's San Francisco signs for the last 5 years.

11. Any and all written agreements or advertising contracts directly with advertisers placing advertisements on Metro Fuel's San Francisco signs for the last 5 years.

12. Real property lease agreements between Metro Fuel and the real property owners for each property on which Metro Fuel's San Francisco signs are presently located.

13. Any sub-lease agreements between Metro Fuel and the master lessees of each real property on which Metro Fuel's San Francisco signs are presently located.

14. Any lease renewal agreements for each real property on which Metro Fuel's San Francisco signs are located.

15. Any easement agreements for each real property on which Metro Fuels' San Francisco signs are located.

16. Any written agreements, contracts, or other documents demonstrating property rights or leasehold interests for each real property on which Metro Fuel's San Francisco signs are located.

17. Any and all permits (e.g., building, utility, etc.) related to the operation of each of Metro Fuel's San Francisco signs for each location at which a sign is presently operated.

18. All permit applications, requests for modifications, variances, and supplemental permits for Metro Fuel's San Francisco signs from January 1, 2002 through current.

19. All permit applications, requests for modifications, and variances denied for Metro Fuel's San Francisco signs from January 1, 2002 through June 1, 2008.

20. All abatement notices, notices of violations and/or orders of abatement pertaining to Metro Fuel's San Francisco signs, if any, from 2002 through June 1, 2008.

21. Any purchase agreements or escrow documents associated with the acquisition of assets from Metro Lights, LLC by Metro Fuel, LLC and/or Fuel Outdoor, LLC.

22. Any due diligence documents relied upon and maintained for the acquisition of the Metro Lights, LLC assets by Metro Fuel, LLC and/or Fuel Outdoor, LLC.

23. Any data pertaining to the San Francisco signs provided by Metro Lights, LLC to Metro Fuel, LLC and/or Fuel Outdoor, LLC relating to the acquisition of certain Metro Lights, LLC assets at or before time of acquisition.