# EXHIBIT D

Amendment of the Whole
June 7, 2006.

FILE NO. 052021                          ORDINANCE NO.    *140-06*

1    [General Advertising Signs – Relocation Agreements, Sign Inventories, ~~and Associated Fees~~.]

2

3    Ordinance amending the San Francisco Administrative Code by adding Section 2.21 to

4    establish a General Advertising Sign Relocation Procedure; amending the San

5    Francisco Planning Code by amending Section 303 to add criteria for the Planning

6    Commission's approval of a general advertising sign relocation site, ~~adding Section~~

7    ~~358 to establish fees for the Planning Department's review of General Advertising Sign~~

8    ~~Inventories and proposed Relocation Agreements,~~ amending Planning Code Section

9    604 to prohibit general advertising signs that have been removed from being replaced

10   on the same site, adding Section 604.2 to require general advertising sign companies

11   to maintain and submit to the City current inventories of their signs, and amending

12   Sections 1005 and 1111.7 to prohibit the relocation of new general advertising signs to

13   Historic Districts or Conservation Districts or on an historic property regulated by

14   Articles 10 and 11 of the Planning Code; and adopting findings including

15   environmental findings and findings of consistency with the Priority Policies of

16   Planning Code Section 101.1 and the General Plan.

17        Note:        Additions are _single-underline italics Times New Roman_;
                       deletions are ~~_strikethrough italics Times New Roman_~~.
18                     Board amendment additions are __double underlined__.
19                     Board amendment deletions are ~~strikethrough normal~~.

20        Be it ordained by the People of the City and County of San Francisco:

21        Section 1.  Findings.

22        (a)    In March 2002, the voters approved Proposition G, which amended the San

23   Francisco Planning Code by adding Section 611 to prohibit the approval of new general

24   advertising signs within the City as of March 5, 2002.

25

Supervisor Peskin
BOARD OF SUPERVISORS

1    (b)    Proposition G authorized the Board of Supervisors, upon recommendation from

2    a department designated by the Board, to enter into agreements with general advertising sign

3    companies to provide for the relocation of existing legally permitted general advertising signs.

4    (Planning Code Section 611(c)(1).)  New location sites for existing legally permitted general

5    advertising signs must comply with the zoning in effect prior to adoption of Proposition G, or

6    as further restricted by the Board in future legislation, and must be approved through the

7    conditional use procedure.  (Planning Code Section 611(c)(2).)

8    (c)    Through this ordinance, the Board of Supervisors intends to exercise its

9    authority under Proposition G to provide for the relocation of existing legally permitted general

10    advertising signs in the City through Relocation Agreements entered into with general

11    advertising sign companies and to further restrict the areas in which such signs may be

12    relocated.

13    (d)    The Board also intends through this ordinance to further Proposition G's overall

14    objectives of enhancing the City's livability and quality of life by reducing the proliferation of

15    general advertising signs in the City and the resulting clutter, blight, and other problems

16    described in Proposition G.  These objectives will be accomplished by prohibiting the

17    replacement of signs on the same site after they have been removed, which will reduce over

18    time the total number of general advertising signs in the City.  In addition, general advertising

19    sign companies will be required to submit to the City and to keep updated current and

20    accurate inventories of all their signs located in the City.  An accurate inventory of general

21    advertising signs will facilitate the removal of existing illegal signs that have contributed to the

22    blight, clutter, and other problems described in Proposition G.

23    (e)    The Board of Supervisors finds that this ordinance will serve the public

24    convenience and welfare in that it provides for a mechanism to implement the intent of the

25

1   voters in enacting Proposition G and for the additional reasons set forth in Planning

2   Commission Resolution No. _____17224_____ recommending approval of this

3   Planning Code amendment, which reasons are incorporated herein by this reference. A copy

4   of said resolution is on file with the Clerk of the Board of Supervisors in Board File No.

5   052021.

6        (f)     Pursuant to Planning Code Section 101.1, this Board of Supervisors finds that

7   this ordinance is consistent with the Priority Policies of Planning Code Section 101.1(b) and

8   with the General Plan and hereby adopts and incorporates herein by reference the findings of

9   the Planning Commission, as set forth in Commission Resolution No. _____17224_____.

10       (g)     The Planning Department has concluded environmental review of this ordinance

11  pursuant to the California Environmental Quality Act. Documentation of that review is on file

12  with the Clerk of the Board of Supervisors in Board File No. 052021.

13       Section 2. The San Francisco Administrative Code is hereby amended by adding

14  Section 2.21, to read as follows:

15  *SEC. 2.21.  PROCEDURE FOR APPROVAL BY THE BOARD OF SUPERVISORS OF*

16  *GENERAL ADVERTISING SIGN COMPANY RELOCATION AGREEMENTS.*

17      *The Board of Supervisors hereby establishes the following procedure for its approval of the*

18  *relocation of existing legally permitted general advertising signs pursuant to Section 611(c) of the*

19  *Planning Code.*

20      *(a)     Designation of the Planning Department.  The Board hereby designates the Planning*

21  *Department as the department to review and recommend to the Board approval or disapproval of a*

22  *Relocation Agreement pursuant to Planning Code Section 611(c).  The Board shall not approve or*

23  *consider any such Agreement without first receiving a recommendation from the Department.*

24      *(b)     Definitions.  For purposes of this Section 2.21, the following definitions shall apply:*

25

Supervisor Peskin
**BOARD OF SUPERVISORS**

1      (1)     "Board" shall mean the Board of Supervisors of the City and County of San Francisco.

2      (2)     "Department" shall mean the Planning Department of the City and County of San

3  Francisco.

4      (3)     "General advertising sign company" or "sign company" shall mean an entity that owns a

5  general advertising sign structure, as distinguished from the person or entity that owns the property on

6  which the sign is located.

7      (4)     "Legally permitted" or "lawfully existing" shall mean a sign that was lawfully erected

8  prior to the effective date of Section 611 of the Planning Code pursuant to a permit duly issued by the

9  City and County of San Francisco, or that has an in-lieu identifying number granted by the Director of

10  Planning pursuant to Section 604.1(c) of the Planning Code, and is in compliance with all conditions of

11  approval.

12      (5)     "Relocation Agreement" or "Agreement" shall mean an agreement with a general

13  advertising sign company to relocate existing legally permitted general advertising signs of a sign

14  company, as permitted by Planning Code Section 611(b).

15      (6)     "Sign" shall mean a legally permitted general advertising ~~sign~~ structure or wall sign as

16  defined in Planning Code Section 602.7.

17      (c)     Application for Relocation Agreement. Any general advertising sign company desiring

18  to relocate an existing legally permitted sign shall first file an application with the Department on a

19  form provided by the Department and pay the application fee set forth in Section 358 of the Planning

20  Code.

21      (d)     Information Required to be Submitted with the Application. The applicant for a

22  Relocation Agreement shall submit the following information with the application, in addition to such

23  other information as the Department may require:

24      (1)     a list of signs proposed for relocation;

25

1    (2)    *a site map showing the locations of all signs proposed for relocation by address and by*

2    *block and lot;*

3    (3)    *a copy of any permit or permits authorizing the sign, if available; if a copy of the permit*

4    *or permits are not available, a copy of the Director of Planning's approval of an in-lieu identifying*

5    *number or numbers;*

6    (4)    *evidence that a sign proposed to be relocated has not been removed and still exists at*

7    *the authorized location, and that the sign company is the owner of the sign structure;*

8    (5)    *a proposed form of Relocation Agreement specifying the sign or signs to be relocated,*

9    *which Agreement shall be in the format of and contain the provisions of a model agreement developed*

10    *by the City Attorney or which shall be otherwise acceptable to the City Attorney; and*

11    (6)    *the written consent to the relocation of each sign from the owner of the property upon*

12    *which the existing sign structure is erected.*

13    (e)    *Submission to the Board. The Department shall submit to the Board the Department's*

14    *recommendation to approve or disapprove the proposed Relocation Agreement after the Department*

15    *has completed its review of the application and supporting documents.*

16    *Prior to submitting its recommendation to the Board, the Department shall have (i) reviewed*

17    *the sign company's initial and any updated sign inventory submitted pursuant to Section 604.2 of the*

18    *Planning Code and verified that each sign proposed for relocation has been determined to be lawfully*

19    *existing and lawfully permitted and (ii) verified that there are no ~~outstanding code enforcement~~*

20    *~~actions~~ pending Notices of Violation against the sign company for violation of Article 6 of the*

21    *Planning Code or any other applicable law governing general advertising signs.*

22    (f)    *Conditional Use Approval by the Planning Commission. Upon approval by the Board of*

23    *Supervisors of the proposed Relocation Agreement, the sign company may apply to the Planning*

24    *Commission for a conditional use authorization pursuant to the Agreement.*

25

1      *(g)     Modification or Termination of a Relocation Agreement.*

2      *(1)     Modification or amendment of any of the terms or provisions of a Relocation Agreement*

3      *shall require a recommendation for approval or disapproval from the Department and approval of the*

4      *Board.*

5      *(2)     Any Relocation Agreement shall provide that evidence of a pattern of willful*

6      *misrepresentation of information provided to the City by the sign company in any inventory or site*

7      *maps it has submitted to the City shall be grounds for termination of the Relocation Agreement by the*

8      *City.*

9            Section 3.  The San Francisco Planning Code is hereby amended by amending Section

10     303, to read as follows:

11           SEC. 303.  CONDITIONAL USES.

12           (a)     General. The City Planning Commission shall hear and make determinations

13     regarding applications for the authorization of conditional uses in the specific situations in

14     which such authorization is provided for elsewhere in this Code. The procedures for

15     conditional uses shall be as specified in this Section and in Sections 306 through 306.6,

16     except that Planned Unit Developments shall in addition be subject to Section 304, medical

17     institutions and post-secondary educational institutions shall in addition be subject to the

18     institutional master plan requirements of Section 304.5, and conditional use and Planned Unit

19     Development applications filed pursuant to Article 7, or otherwise required by this Code for

20     uses or features in Neighborhood Commercial Districts, and conditional use applications

21     within South of Market Districts, shall be subject to the provisions set forth in Sections 316

22     through 316.8 of this Code, in lieu of those provided for in Sections 306.2 and 306.3 of this

23     Code, with respect to scheduling and notice of hearings, and in addition to those provided for

24

25

Case 3:07-cv-0606-JSW     Document 15-6     Filed 03/2/2008     Page 8 of 39

1   in Sections 306.4 and 306.5 of this Code, with respect to conduct of hearings and

2   reconsideration.

3         (b)    Initiation. A conditional use action may be initiated by application of the owner,

4   or authorized agent for the owner, of the property for which the conditional use is sought. *For*

5   *a conditional use application to relocate a general advertising sign under subsection (l) below,*

6   *application shall be made by a general advertising sign company* ~~with a~~ that has filed a *Relocation*

7   *Agreement* application and all required information with the Planning Department ~~approved by~~

8   ~~the Board of Supervisors~~ *pursuant to Section 2.21 of the San Francisco Administrative Code.*

9         (c)    Determination. After its hearing on the application, or upon the recommendation

10  of the Director of Planning if the application is filed pursuant to Sections 316 through 316.8 of

11  this Code and no hearing is required, the City Planning Commission shall approve the

12  application and authorize a conditional use if the facts presented are such to establish:

13        (1)    That the proposed use or feature, at the size and intensity contemplated and at

14  the proposed location, will provide a development that is necessary or desirable for, and

15  compatible with, the neighborhood or the community

16        (A)    In Neighborhood Commercial Districts, if the proposed use is to be located at a

17  location in which the square footage exceeds the limitations found in Planning Code §

18  121.2(a) or 121.2(b), the following shall be considered:

19        (i)    The intensity of activity in the district is not such that allowing the larger use will

20  be likely to foreclose the location of other needed neighborhood-servicing uses in the area;

21  and

22        (ii)    The proposed use will serve the neighborhood, in whole or in significant part,

23  and the nature of the use requires a larger size in order to function; and

24

25

Supervisor Peskin
**BOARD OF SUPERVISORS**

1        (iii)     The building in which the use is to be located is designed in discrete elements

2   which respect the scale of development in the district; and

3        (2)     That such use or feature as proposed will not be detrimental to the health,

4   safety, convenience or general welfare of persons residing or working in the vicinity, or

5   injurious to property, improvements or potential development in the vicinity, with respect to

6   aspects including but not limited to the following:

7        (A)     The nature of the proposed site, including its size and shape, and the proposed

8   size, shape and arrangement of structures;

9        (B)     The accessibility and traffic patterns for per-sons and vehicles, the type and

10  volume of such traffic, and the adequacy of proposed off-street parking and loading;

11       (C)     The safeguards afforded to prevent noxious or offensive emissions such as

12  noise, glare, dust and odor;

13       (D)     Treatment given, as appropriate, to such aspects as landscaping, screening,

14  open spaces, parking and loading areas, service areas, lighting and signs; and

15       (3)     That such use or feature as proposed will comply with the applicable provisions

16  of this Code and will not adversely affect the Master Plan; and

17       (4)     With respect to applications filed pursuant to Article 7 of this Code, that such use

18  or feature as proposed will provide development that is in conformity with the stated purpose

19  of the applicable Neighborhood Commercial District, as set forth in zoning control category .1

20  of Sections 710 through 729 of this Code; and

21       (5)(A) With respect to applications filed pursuant to Article 7, Section 703.2(a), zoning

22  categories .46, .47, and .48, in addition to the criteria set forth above in Section 303(c)(1—4),

23  that such use or feature will:

24

25

Supervisor Peskin
BOARD OF SUPERVISORS

1        (i)    Not be located within 1,000 feet of another such use, if the proposed use or

2    feature is included in zoning category .47, as defined by Section 790.36 of this Code; and/or

3        (ii)    Not be open between two a.m. and six a.m.; and

4        (iii)    Not use electronic amplification between midnight and six a.m.; and

5        (iv)    Be adequately soundproofed or insulated for noise and operated so that

6    incidental noise shall not be audible beyond the premises or in other sections of the building

7    and fixed-source equipment noise shall not exceed the decibel levels specified in the San

8    Francisco Noise Control Ordinance.

9        (B)    Notwithstanding the above, the City Planning Commission may authorize a

10    conditional use which does not satisfy the criteria set forth in (5)(A)(ii) and/or (5)(A)(iii) above,

11    if facts presented are such to establish that the use will be operated in such a way as to

12    minimize disruption to residences in and around the district with respect to noise and crowd

13    control.

14        (C)    The action of the Planning Commission approving a conditional use does not

15    take effect until the appeal period is over or while the approval is under appeal.

16        (6)    With respect to applications for live/work units in RH and RM Districts filed

17    pursuant to Section 209.9(f) or 209.9(h) of this Code, that:

18        (A)    Each live/work unit is within a building envelope in existence on the effective

19    date of Ordinance No. 412-88 (effective October 10, 1988) and also within a portion of the

20    building which lawfully contains at the time of application a nonconforming, nonresidential use;

21        (B)    There shall be no more than one live/work unit for each 1,000 gross square feet

22    of floor area devoted to live/work units within the subject structure; and

23

24

25

Supervisor Peskin
**BOARD OF SUPERVISORS**

1   (C)    The project sponsor will provide any off-street parking, in addition to that

2   otherwise required by this Code, needed to satisfy the reasonably anticipated auto usage by

3   residents of and visitors to the project.

4   Such action of the City Planning Commission, in either approving or disapproving the

5   application, shall be final except upon the filing of a valid appeal to the Board of Supervisors

6   as provided in Section 308.1.

7   (d)    Conditions. When considering an application for a conditional use as provided

8   herein with respect to applications for development of "dwellings" as defined in Chapter 87 of

9   the San Francisco Administrative Code, the Commission shall comply with that Chapter which

10  requires, among other things, that the Commission not base any decision regarding the

11  development of "dwellings" in which "protected class" members are likely to reside on

12  information which may be discriminatory to any member of a "protected class" (as all such

13  terms are defined in Chapter 87 of the San Francisco Administrative Code). In addition, when

14  authorizing a conditional use as provided herein, the City Planning Commission, or the Board

15  of Supervisors on appeal, shall prescribe such additional conditions, beyond those specified in

16  this Code, as are in its opinion necessary to secure the objectives of the Code. Once any

17  portion of the conditional use authorization is utilized, all such conditions pertaining to such

18  authorization shall become immediately operative. The violation of any condition so imposed

19  shall constitute a violation of this Code and may constitute grounds for revocation of the

20  conditional use authorization. Such conditions may include time limits for exercise of the

21  conditional use authorization; otherwise, any exercise of such authorization must commence

22  within a reasonable time.

23  (e)    Modification of Conditions. Authorization of a change in any condition previously

24  imposed in the authorization of a conditional use shall be subject to the same procedures as a

25

1  new conditional use. Such procedures shall also apply to applications for modification or

2  waiver of conditions set forth in prior stipulations and covenants relative thereto continued in

3  effect by the provisions of Section 174 of this Code.

4      (f)    Conditional Use Abatement.  The Planning Commission may consider the

5  possible revocation of a conditional use or the possible modification of or placement of

6  additional conditions on a conditional use when the Planning Commission determines, based

7  upon substantial evidence, that the applicant for the conditional use had submitted false or

8  misleading information in the application process that could have reasonably had a substantial

9  effect upon the decision of the Commission or the conditional use is not in compliance with a

10  condition of approval, is in violation of law if the violation is within the subject matter

11  jurisdiction of the Planning Commission or operates in such a manner as to create hazardous,

12  noxious or offensive conditions enumerated in Section 202(c) if the violation is within the

13  subject matter jurisdiction of the Planning Commission and these circumstances have not

14  been abated through administrative action of the Director, the Zoning Administrator or other

15  City authority.  Such consideration shall be the subject of a public hearing before the Planning

16  Commission but no fee shall be required of the applicant or the subject conditional use

17  operator.

18      (1)    The Director of Planning or the Planning Commission may seek a public hearing

19  on conditional use abatement when the Director or Commission has substantial evidence

20  submitted within one year of the effective date of the Conditional Use authorization that the

21  applicant for the conditional use had submitted false or misleading information in the

22  application process that could have reasonably had a substantial effect upon the decision of

23  the Commission or substantial evidence of a violation of conditions of approval, a violation of

24

25

Supervisor Peskin
**BOARD OF SUPERVISORS**

1    law, or operation which creates hazardous, noxious or offensive conditions enumerated in

2    Section 202(c).

3        (2)    The notice for the public hearing on a conditional use abatement shall be subject

4    to the notification procedure as described in Sections 306.3 and 306.8 except that notice to

5    the property owner and the operator of the subject establishment or use shall be mailed by

6    regular and certified mail.

7        (3)    In considering a conditional use revocation, the Commission shall consider

8    whether and how the false or misleading information submitted by the applicant could have

9    reasonably had a substantial effect upon the decision of the Commission, or the Board of

10    Supervisors on appeal, to authorize the conditional use, substantial evidence of how any

11    required condition has been violated or not implemented or how the conditional use is in

12    violation of the law if the violation is within the subject matter jurisdiction of the Planning

13    Commission or operates in such a manner as to create hazardous, noxious or offensive

14    conditions enumerated in Section 202(c) if the violation is within the subject matter jurisdiction

15    of the Planning Commission. As an alternative to revocation, the Commission may consider

16    how the use can be required to meet the law or the conditions of approval, how the

17    hazardous, noxious or offensive conditions can be abated, or how the criteria of Section

18    303(c) can be met by modifying existing conditions or by adding new conditions which could

19    remedy a violation.

20        (4)    Appeals. A decision by the Planning Commission to revoke a conditional use, to

21    modify conditions or to place additional conditions on a conditional use or a decision by the

22    Planning Commission refusing to revoke or amend a conditional use, may be appealed to the

23    Board of Supervisors within 30 days after the date of action by the Planning Commission

24    pursuant to the provisions of Section 308.1(b) The Board of Supervisors may disapprove the

25

action of the Planning Commission in an abatement matter by the same vote necessary to overturn the Commission's approval or denial of a conditional use. The Planning Commission's action on a conditional use abatement issue shall take effect when the appeal period is over or, upon appeal, when there is final action on the appeal.

   (5) Reconsideration. The decision by the Planning Commission with regards to a conditional use abatement issue or by the Board of Supervisors on appeal shall be final and not subject to reconsideration within a period of one year from the effective date of final action upon the earlier abatement proceeding, unless the Director of Planning determines that:

   (A) There is substantial new evidence of a new conditional use abatement issue that is significantly different than the issue previously considered by the Planning Commission; or

   (B) There is substantial new evidence about the same conditional use abatement issue considered in the earlier abatement proceeding, this new evidence was not or could not be reasonably available at the time of the earlier abatement proceeding, and that new evidence indicates that the Commission's decision in the earlier proceeding ha not been implemented within a reasonable time or raises significant new issues not previously considered by the Planning Commission. The decision of the Director of Planning regarding the sufficiency and adequacy of evidence to allow the reconsideration of a conditional use abatement issue within a period of one year from the effective date of final action on the earlier abatement proceeding shall be final.

   (g) Hotels and Motels.

   (1) With respect to applications for development of tourist hotels and motels, the Planning Commission shall consider, in addition to the criteria set forth in Subsections (c) and (d) above:

Case 3:07-cv-06067-JSW    Document 15-6    Filed 03/2   008    Page 15 of 39

(A)    The impact of the employees of the hotel or motel on the demand in the City for housing, public transit, childcare, and other social services. To the extent relevant, the Commission shall also consider the seasonal and part-time nature of employment in the hotel or motel;

(B)    The measures that will be taken by the project sponsor to employ residents of San Francisco in order to minimize increased demand for regional transportation; and

(C)    The market demand for a hotel or motel of the type proposed.

(2)    Notwithstanding the provisions of Sub-sections (f)(1) above, the Planning Commission shall not consider the impact of the employees of a proposed hotel or motel project on the demand in the City for housing where:

(A)    The proposed project would be located on property under the jurisdiction of the San Francisco Port Commission; and

(B)    The sponsor of the proposed project has been granted exclusive rights to propose the project by the San Francisco Port Commission prior to June 1, 1991.

(3)    Notwithstanding the provisions of Subsection (f)(1) above, with respect to the conversion of residential units to tourist hotel or motel use pursuant to an application filed on or before June 1, 1990 under the provisions of Chapter 41 of the San Francisco Administrative Code, the Planning Commission shall not consider the criteria contained in Subsection (f)(1) above; provided, however, that the Planning Commission shall consider the criteria contained in Subsection (f)(1)(B) at a separate public hearing if the applicant applies for a permit for new construction or alteration where the cost of such construction or alteration exceeds $100,000. Furthermore, no change in classification from principal permitted use to conditional use in Section 216(b)(i) of this Code shall apply to hotels or motels that have filed

1    applications on or before June 1, 1990 to convert residential units to tourist units pursuant to

2    Chapter 41 of the San Francisco Administrative Code.

3           (h)     Internet Services Exchange.

4           (1)     With respect to application for development of Internet Services Exchange as

5    defined in Section 209.6(c), the Planning Commission shall, in addition to the criteria set forth

6    in Subsection (c) above, find that:

7           (A)     The intensity of the use at this location and in the surrounding neighborhood is

8    not such that allowing the use will likely foreclose the location of other needed neighborhood-

9    serving uses in the area;

10          (B)     The building in which the use is located is designed in discrete elements, which

11   respect the scale of development in adjacent blocks, particularly any existing residential uses;

12          (C)     Rooftop equipment on the building in which the use is located is screened

13   appropriately.

14          (D)     The back-up power system for the proposed use will comply with all applicable

15   federal state, regional and local air pollution controls.

16          (E)     Fixed-source equipment noise does not exceed the decibel levels specified in

17   the San Francisco Noise Control Ordinance.

18          (F)     The building is designed to minimize energy consumption, such as through the

19   use of energy-efficient technology, including without limitation, heating, ventilating and air

20   conditioning systems, lighting controls, natural ventilation and recapturing waste heat, and as

21   such commercially available technology evolves;

22          (G)     The project sponsor has examined the feasibility of supplying and, to the extent

23   feasible, will supply all or a portion of the building's power needs through on-site power

24   generation, such as through the use of fuel cells or co-generation;

25

Case 3:07-cv-06067-JSW     Document 15-6     Filed 03/2_/2008     Page 17 of 39

1   (H)     The project sponsor shall have submitted design capacity and projected power

2   use of the building as part of the conditional use application; and

3   (2)     As a condition of approval, and so long as the use remains an Internet Services

4   Exchange, the project sponsor shall submit to the Planning Department on an annual basis

5   power use statements for the previous twelve-month period as provided by all suppliers of

6   utilities and shall submit a written annual report to the Department of Environment and the

7   Planning Department which shall state: (a) the annual energy consumption and fuel

8   consumption of all tenants and occupants of the Internet Services Exchange; (b) the number

9   of all diesel generators located at the site and the hours of usage, including usage for testing

10  purposes; (c) evidence that diesel generators at the site are in compliance with all applicable

11  local, regional, state and federal permits, regulations and laws; and (d) such other information

12  as the Planning Commission may require.

13  (3)     The Planning Department shall have the following responsibilities regarding

14  Internet Services Exchanges:

15  (A)     Upon the effective date of the requirement of a conditional use permit for an

16  Internet Services Exchange, the Planning Department shall notify property owners of all

17  existing Internet Services Exchanges that the use has been reclassified as a conditional use;

18  (B)     Upon the effective date of the requirement of a conditional use permit for an

19  Internet Services Exchange, the Planning Department shall submit to the Board of

20  Supervisors and to the Director of the Department of Building Inspection a written report

21  covering all existing Internet Services Exchanges and those Internet Services Exchanges

22  seeking to obtain a conditional use permit, which report shall state the address, assessor's

23  block and lot, zoning classification, square footage of the Internet Services Exchange

24  constructed or to be constructed, a list of permits previously issued by the Planning and/or

25

1   Building Inspection Departments concerning the Internet Services Exchange, the date of

2   issuance of such permits, and the status of any outstanding requests for permits from the

3   Planning and/or Building Inspection Departments concerning Internet Services Exchange; and

4       (C)     Within three years from the effective date of the requirement of a conditional use

5   permit for an Internet Services Exchange, the Planning Department, in consultation with the

6   Department of Environment, shall submit to the Board of Supervisors a written report, which

7   report shall contain the Planning Commission's evaluation of the effectiveness of the

8   conditions imposed on Internet Services Exchanges, and whether it recommends additional or

9   modified conditions to reduce energy and fuel consumption, limit air pollutant emissions, and

10  enhance the compatibility of industrial uses, such as Internet Services Exchanges, located

11  near or in residential or commercial districts.

12      (I)     Formula Retail Uses.

13      (1)     With respect to an application for a formula retail use as defined in Section

14  703.3, whenever a conditional use permit is required per Section 703.3(f), the Planning

15  Commission shall consider, in addition to the criteria set forth in Subsection (c) above:

16      (A)     The existing concentrations of formula retail uses within the neighborhood

17  commercial district.

18      (B)     The availability of other similar retail uses within the neighborhood commercial

19  district.

20      (C)     The compatibility of the proposed formula retail use with the existing

21  architectural and aesthetic character of the neighborhood commercial district.

22      (D)     The existing retail vacancy rates within the neighborhood commercial district.

23      (E)     The existing mix of Citywide-serving retail uses and neighborhood-serving retail

24  uses within the neighborhood commercial district.

25

1          (j)      Large-Scale Retail Uses.  With respect to applications for the establishment of

2     large-scale retail uses under Section 121.6, in addition to the criteria set forth in Subsections

3     (c) and (d) above, the Commission shall consider the following:

4          (A)      The extent to which the retail use's parking is planned in a manner that creates

5     or maintains active street frontage patterns;

6          (B)      The extent to which the retail use is a component of a mixed-use project or is

7     designed in a manner that encourages mixed-use building opportunities;

8          (C)      The shift in traffic patterns that may result from drawing traffic to the location of

9     the proposed use; and

10         (D)      The impact that the employees at the proposed use will have on the demand in

11    the City for housing, public transit, childcare, and other social services.

12         (k)      Movie Theater Uses.

13         (1)      With respect to a change in use or demolition of a movie theater use as set forth

14    in Sections 221.1, 703.2(b)(1)(B)(ii), 803.2(b)(2)(B)(iii) or 803.3(b)(1)(B)(ii), in addition to the

15    criteria set forth in Subsections (c) and (d) above, the Commission shall make the following

16    findings:

17         (A)      Preservation of a movie theater use is no longer economically viable and cannot

18    effect a reasonable economic return to the property owner;

19         (i)      For purposes of defining "reasonable economic return," the Planning

20    Commission shall be guided by the criteria for "fair return on investment" as set forth in

21    Section 228.4(a).

22         (B)      The change in use or demolition of the movie theater use will not undermine the

23    economic diversity and vitality of the surrounding neighborhood commercial district; and

24

25

Supervisor Peskin
BOARD OF SUPERVISORS

Case 3:07-cv-06067-JSW    Document 15-6    Filed 03/2?/2008    Page 20 of 39

(C)    The resulting project will preserve the architectural integrity of important historic features of the movie theater use affected.

*(1)    Relocation of Existing General Advertising Signs pursuant to a General Advertising Sign Company Relocation Agreement.*

*(1)    Before the Planning Commission may consider an application for a conditional use to relocate an existing lawfully permitted general advertising sign as authorized by Section 611 of this Code, the applicant sign company must have:*

*(A)    obtained a current Relocation Agreement approved by the Board of Supervisors under Section 2.21 of the San Francisco Administrative Code that covers the sign or signs proposed to be relocated; and*

*(B)    submitted to the Department a current sign inventory, site map, and the other information required under Section 604.2 of this Code; and*

*(C)    obtained the written consent to the relocation of the sign from the owner of the property upon which the existing sign structure is erected.*

*(D)    obtained a permit to demolish the sign structure at the existing location.*

*(2)    The Department, in its discretion, may review in a single conditional use application all signs proposed for relocation by a general advertising company or may require that one or more of the signs proposed for relocation be considered in a separate application or applications.  Prior to the Commission's public hearing on the application, the Department shall have verified the completeness and accuracy of the general advertising sign company's sign inventory.*

*(3)    Only one sign may be erected in a new location, which shall be the same square footage or less than the existing sign proposed to be relocated.  In no event may the square footage of several existing signs be aggregated in order to erect a new sign with greater square footage.*

*(4)     In addition to applicable criteria set forth in subsection (c) above, the Planning Commission shall consider the size and visibility of the signs proposed to be located as well as the following factors in determining whether to approve or disapprove a proposed relocation:*

*(A)     The factors set forth in this subsection (A) shall weigh in favor of the Commission's approval of the proposed relocation site:*

*(i)     The sign or signs proposed for relocation are lawfully existing but are not in conformity with the sign regulations that existed prior to the adoption of Proposition G on March 5, 2002.*

*(ii)     The sign or signs proposed for relocation are on a City list, if any, of priorities for sign removal or signs preferred for relocation.*

*(iii)     The sign or signs proposed for relocation are within, adjacent to, or visible from property under the jurisdiction of the San Francisco Port Commission, the San Francisco Unified School District, or the San Francisco Recreation and Park Commission.*

*(iv)     The sign or signs proposed for relocation are within, adjacent to, or visible from an Historic District or conservation district designated in Article 10 or Article 11 of the Planning Code.*

*(v)     The sign or signs proposed for relocation are within, adjacent to, or visible from a zoning district where general advertising signs are prohibited.*

*(vi)     The sign or signs proposed for relocation are within, adjacent to, or visible from a designated view corridor.*

*(B)     The factors set forth in this Subsection (B) shall weigh against the Commission's approval of the proposed relocation:*

*(i)     The sign or signs proposed for relocation are or will be obstructed, partially obstructed, or removed from public view by another structure or by landscaping.*

1        *(ii)    The proposed relocation site is adjacent to or visible from property under the*

2    *jurisdiction of the San Francisco Port Commission, the San Francisco Unified School District, or the*

3    *San Francisco Recreation and Park Commission.*

4        *(iii)    The proposed relocation site is adjacent to or visible from an Historic District or*

5    *conservation district designated in Article 10 or Article 11 of the Planning Code.*

6        *(iv)    The proposed relocation site is within, adjacent to, or visible from a zoning district*

7    *where general advertising signs are prohibited.*

8        *(v)    The proposed relocation site is within, adjacent to, or visible from a designated view*

9    *corridor.*

10        *(vi)    There is significant neighborhood opposition to the proposed relocation site.*

11        *(5)    In no event may the Commission approve a relocation where:*

12        *(A)    The sign or signs proposed for relocation have been erected, placed, replaced,*

13    *reconstructed, or relocated on the property, or intensified in illumination or other aspect, or expanded*

14    *in area or in any dimension in violation of Article 6 of this Code or without a permit having been duly*

15    *issued therefor; or*

16        *(B)    The proposed relocation site is not a lawful location under Planning Code Section*

17    *611(c)(2); or*

18        *(C)    The sign in its new location would exceed the size, height or dimensions, or increase the*

19    *illumination or other intensity of the sign at its former location; or*

20        *(D)    The sign in its new location would not comply with the Code requirements for that*

21    *location as set forth in Article 6 of this Code; or*

22        *(E)    The sign has been removed from its former location; or*

23        *(F)    The owner of the property upon which the existing sign structure is erected has not*

24    *consented in writing to the relocation of the sign.*

25

Supervisor Peskin
**BOARD OF SUPERVISORS**

1    _(6)_     _The Planning Commission may adopt additional criteria for relocation of general_

2    _advertising signs that do not conflict with this Section 303(l) or Section 611 of this Code._

3    Section 4. ~~The San Francisco Planning Code is hereby amended by adding Section~~

4    ~~358, to read as follows:~~

5    ~~SEC. 358. GENERAL ADVERTISING SIGNS~~

6    ~~(a)     Application for Relocation Agreement~~

7    ~~Section 611 and Administrative Code Section 2.21:~~        ~~$1,000 per individual~~

8    ~~relocation agreement application~~

9    ~~(b)     Initial Inventory Processing fee (Section 604.2)~~     ~~$5,000, plus $75.00 per~~

10   ~~sign structure.~~

11   ~~Section 5.~~ The San Francisco Planning Code is hereby amended by amending Section

12   604, to read as follows:

13   SEC. 604. PERMITS AND CONFORMITY REQUIRED.

14   (a)     An application for a permit for a sign that conforms to the provisions of this Code

15   shall be approved by the Department of Planning without modification or disapproval by the

16   Department of Planning or the Planning Commission, pursuant to the authority vested in them

17   by Section 26, Part III, of the San Francisco Municipal Code or any other provision of said

18   Municipal Code; provided, however, that applications pertaining to signs subject to the

19   regulations set forth in Article 10 of the Planning Code, Preservation of Historical,

20   Architectural and Aesthetic Landmarks, Article 11, Preservation of Buildings and Districts of

21   Architectural, Historical and Aesthetic Importance in the C-3 Districts and Section 608.14 may

22   be disapproved pursuant to the relevant provisions thereof. No sign, other than those signs

23   exempted by Section 603 of this Code, shall be erected, placed, replaced, reconstructed or

24   relocated on any property, intensified in illumination or other aspect, or expanded in area or in

25

1    any dimension except in conformity with *Article 6* of this Code. No such erection, placement,

2    replacement, reconstruction, relocation, intensification, or expansion shall be undertaken

3    without a permit having been duly issued therefor, except as specifically provided otherwise in

4    this Section 604.

5         (b)    The provisions of this Section 604 shall apply to work of the above types on all

6    signs unless specifically exempted by this Code, whether or not a permit for such sign is

7    required under the San Francisco Building Code. In cases in which permits are not required

8    under the Building Code, applications for permits shall be filed with the Central Permit Bureau

9    of the Department of Building Inspection on forms prescribed by the Department of Planning,

10   together with a permit fee of $5 for each sign, and the permit number shall appear on the

11   completed sign in the same manner as required by the Building Code.

12        (c)    No permit shall be required under this Code for a sign painted or repainted

13   directly on a door or window in an NC, C or M District. Permits shall be required for all other

14   painted signs in NC, C and M Districts, and for all painted signs in P and R Districts.

15   Repainting of any painted sign shall be deemed to be a replacement of the sign, except as

16   provided in Subsection (f) below.

17        (d)    Except as provided in Subsection (c) above, no permit shall be required under

18   this Code for ordinary maintenance and minor repairs which do not involve replacement,

19   alteration, reconstruction, relocation, intensification or expansion of the sign.

20        (e)    No permit shall be required under this Code for temporary sale or lease signs,

21   temporary signs of persons and firms connected with work on buildings under actual

22   construction or alteration, and temporary business signs, to the extent that such signs are

23   permitted by this Code.

24

25

Supervisor Peskin
**BOARD OF SUPERVISORS**

1     (f)     A mere change of copy on a sign the customary use of which involves frequent

2  and periodic changes of copy shall not be subject to the provisions of this Section 604, except

3  that a change from general advertising to nongeneral advertising sign copy or from

4  nongeneral advertising to general advertising sign copy or an increase in area including, but

5  not limited to, any extensions in the form of writing, representation, emblem or any figure of

6  similar character shall in itself constitute a new sign subject to the provisions of this Section

7  604. In the case of signs the customary use of which does not involve frequent and periodic

8  changes of copy, a change of copy shall in itself constitute a new sign subject to the

9  provisions of this Section 604 if the new copy concerns a different person, firm, group,

10  organization, place, commodity, product, service, business, profession, enterprise or industry.

11     (g)     Each application for a permit for a sign shall be accompanied by a scaled

12  drawing of the sign, including the location of the sign on the building or other structure or on

13  the lot, and including (except in the case of a sign the customary use of which involves

14  frequent and periodic changes of copy) such designation of the copy as is needed to

15  determine that the location, area and other provisions of this Code are met.

16     (h)     Unless otherwise provided in this Code or in other Codes or regulations, a

17  lawfully existing sign which fails to conform to the provisions of this Article 6 may remain until

18  the end of its normal life. Such sign may not, however, be replaced, altered, reconstructed,

19  relocated, intensified or expanded in area or in any dimension except in conformity with the

20  provisions of this Code, including Subsection (i) below.  Ordinary maintenance and minor

21  repairs shall be permitted, but such maintenance and repairs shall not include replacement,

22  alteration, reconstruction, relocation, intensification or expansion of the sign*; provided,*

23  *however, that alterations of a structural nature required to reinforce a part or parts of a lawfully*

24  *existing sign to meet the standards of seismic loads and forces of the Building Code, to replace a*

25

1    ~~damaged or weathered signboard,~~ ~~or~~ *to ensure safe use and maintenance of that sign,* ~~or~~ *to*

2    *remediate hazardous materials, or any combination of the above alterations shall be considered*

3    *ordinary maintenance and shall be allowed.*  A sign which is damaged or destroyed by fire or

4    other calamity shall be governed by the provisions of Sections 181(d) and 188(b) of this Code.

5         A sign which is voluntarily destroyed or removed by its owner or which is required by

6    law to be removed may be restored only in full conformity with the provisions of this Code,

7    except as authorized in Subsection (i) below.  *A general advertising sign that has been removed*

8    *shall not be reinstalled, replaced, or reconstructed at the same location, and the erection, construction,*

9    *and/or installation of a general advertising sign at that location to replace the previously existing sign*

10   *shall be deemed to be a new sign in violation of Section 611(a) of this Code; provided, however, that*

11   *such reinstallation, replacement, or reconstruction pursuant to a permit duly issued prior to the*

12   *effective date of this requirement shall not be deemed a violation of Section 611(a) and shall be*

13   *considered a lawfully existing nonconforming general advertising sign; and further provided that this*

14   *prohibition shall not prevent a general advertising sign from being relocated to that location pursuant*

15   *to a Relocation Agreement and conditional use authorization under Sections 611 and 303(l) of this*

16   *Code and Section 2.21 of the San Francisco Administrative Code.*

17        (i)    A lawfully existing business that is relocating to a new location within 300 feet of

18   its existing location within the North Beach Neighborhood Commercial District described in

19   Sections 702.1 and 722.1 of this Code may move to the new location within said North Beach

20   Neighborhood Commercial District one existing business sign together with its associated sign

21   structure, whether or not the sign is nonconforming in its new location; provided, however, that

22   the sign is not intensified or expanded in area or in any dimension except in conformity with

23   the provisions of this Code. With the approval of the Zoning Administrator, however, the sign

24   structure may be modified to the extent mandated by the Building Code. In no event may a

25

1    painted sign or a sign with flashing, blinking, fluctuating or other animated light be relocated
2    unless in conformity with current code requirements applicable to its new location. In addition,
3    the provisions of Articles 10 and 11 of this Code shall apply to the relocation of any sign to a
4    location regulated by the provisions of said Articles.

5        (j)    Nothing in this Article 6 shall be deemed to permit any use of property that is
6    otherwise prohibited by this Code, or to permit any sign that is prohibited by the regulations of
7    any special sign district or the standards or procedures of any Redevelopment Plan or any
8    other Code or legal restriction.

9        Section 65.  The San Francisco Planning Code is hereby amended by adding Section
10   604.2, to read as follows:

11   *SEC. 604.2 GENERAL ADVERTISING SIGN INVENTORIES.*

12   *(a)    Submission of Initial Sign Inventory. Within 60 days of the effective date of this Section,*
13   *any general advertising sign company that owns a general advertising sign located in the City shall*
14   *submit to the Department a current, accurate, and complete inventory of its general advertising signs*
15   *together with the inventory processing fee required by subsection (f) below. Any general advertising*
16   *company that commences ownership of one or more general advertising signs located in the City after*
17   *the effective date of this Section shall submit an inventory together with the inventory processing fee*
18   *within 60 days after its commences such ownership whether or not the signs on the inventory have*
19   *previously been reviewed by the Department in its review of the inventory of a previous owner.*

20   *(b)    All Signs to be Included in the Inventory; Inclusion Not Evidence of Legality. The*
21   *inventory shall identify all general advertising signs located within the City that the general advertising*
22   *company owns and/or operates under a lease, license or other agreement whether or not those signs*
23   *can be proved to be lawfully existing. Inclusion of a sign on the inventory shall not be considered*
24   *evidence that a sign is lawfully existing.*

25

Supervisor Peskin
**BOARD OF SUPERVISORS**

1    *For purposes of this Section, a "general advertising sign company" shall mean an entity that*

2    *owns a general advertising sign structure, as distinguished from the person or entity that owns the*

3    *property on which the sign is located.*

4    *(c)    The initial sign inventory required by subsection (a) above shall include a site map that*

5    *shows the location of all signs identified in the inventory, and shall provide the following information*

6    *for each sign:*

7    *(1)    the location of the sign by street address,* ~~and~~ *by block and lot,* and by nearest

8    intersection;

9    *(2)    a photograph of the sign in its existing location on the lot, specifically identifying the*

10   *sign;*

11   *(3)    the date of original erection or installation of the sign, if known;*

12   *(4)    the permit number or in-lieu identifying number issued by the Department pursuant to*

13   *Section 604.1(c) of this Code;*

14   *(5)    the approved and existing area, dimensions, height, and any other special features of the*

15   *sign such as illumination or movement;*

16   *(6)    the type of sign, as defined in Section 602 of this Code;*

17   *(7)    evidence that the sign has not been removed and still exists at the authorized location,*

18   *and that the sign company is the owner of the sign structure;*

19   (8)    permit number and, in the case of subsequent modifications of the sign,

20   including, but not limited to, illumination, permit application number or permit number;

21   (9)    evidence that the sign still is in use for general advertising; and

22   (10)    information, if known, whether the sign had a prior use as a non-general

23   advertising sign, including, but not limited to, a business sign or exempt sign, and the duration

24   of such prior use.

25

1    (d)     *Affidavit. The general advertising sign company shall submit with the inventory an*

2    *affidavit signed under penalty of perjury by a duly authorized officer or owner of the sign company*

3    *stating that:*

4        (1)     *the sign inventory and site map are current, accurate, and complete to the best of his or*

5    *her knowledge;*

6        (2)     *the officer or owner believes, after the exercise of reasonable and prudent inquiry, that*

7    *all signs on the inventory have been erected or installed with an appropriate City permit or have an in-*

8    *lieu identifying number granted by the Director of Planning;*

9        (3)     *the general advertising sign company is the owner of all sign structures listed on the*

10    *inventory.*

11    (e)     *Inventory Update. Any general advertising sign company that has submitted an initial*

12    *sign inventory pursuant to subsection (a) above shall be responsible for keeping its inventory updated*

13    *by reporting in writing to the Department the sale or removal of any general advertising sign identified*

14    *in the inventory, the purchase of a sign from another sign company or owner, or the relocation of a*

15    *sign pursuant to a Relocation Agreement and conditional use authorization. Such reporting to the*

16    *Department shall be made within 30 days of the actual sale, removal, purchase, or relocation of the*

17    *sign. The fee charged to a sign company for an update to its initial sign inventory shall be the fee per*

18    *sign structure set forth in Section 358 of this Code.*

19    (f)     *Inventory Processing Fee. With the submission of the initial sign inventory required by*

20    *subsection (a) above, the general advertising sign company shall pay the inventory processing fee set*

21    *forth in Section 358 of this Code. The Department shall use this fee solely for the following purposes:*

22        (1)     *to compensate the Department for its costs in verifying that the signs identified in the*

23    *corresponding inventory are lawfully existing;*

24

25

Supervisor Peskin
**BOARD OF SUPERVISORS**

1    (2)    to obtain removal, through abatement actions or other code enforcement activities, of

2   any signs included on the inventory that the Department determines to be existing illegally.

3    (q)    Departmental Notification of Failure to Submit Complete Inventories. The

4   Department shall notify in writing those sign companies that have not submitted or have

5   submitted incomplete sign inventories, or have not timely submitted an inventory update.

6    (1)    Within 30 days of the date of notification provided under subsection (q), the sign

7   company shall submit a complete inventory with the inventory processing fee and a penalty of

8   $580 per sign for those signs that were not identified or those improperly identified.

9    (2)    If the sign company fails to submit the complete inventory with the processing

10   fee and full penalty amount provided in subsection (q)(1), then, within 60 days of the date of

11   notification provided under subsection (q), the penalty will increase to $1,160 per sign for

12   those signs that were not identified or those improperly identified.

13    (3)    Any penalties assessed pursuant to subsections (q)(1) and (2) above, are

14   appealable to the Board of Appeals.

15    (4)    The Board of Appeals, in reviewing the appeal of the penalty assessed may

16   reduce the amount of the penalty if the Board of Appeals finds that the sign owner: (i) was not

17   properly notified or (ii) had previously submitted a sign inventory that included the signs for

18   which the penalty was assessed. The Board of Appeals also may reduce the amount of the

19   penalty if it finds that any action on the part of the Department resulted an improper

20   assessment of the penalty charge.

21    (5)    If the sign company fails to submit the full penalty amount assessed pursuant to

22   subsections (q)(1) and (2) or as modified by the Board of Appeals pursuant to subsections

23   (q)(3) and (4), the Planning Department shall request the City's Treasurer/Tax Collector to

24

25

Supervisor Peskin
**BOARD OF SUPERVISORS**

1    ~~pursue the outstanding penalties after 90 days of the date of notification provided under~~

2    ~~subsection (g).~~

3    ~~(6)    All penalty revenues received shall be deposited in the Code Enforcement Fund.~~

4    ~~(h)    The Department shall submit to the Commission and the Board of Supervisors~~

5    ~~an annual report that includes: (i) annual revenues from the inventory processing fee, annual~~

6    ~~inventory maintenance fee, in-lieu application fee, and the relocation agreement application~~

7    ~~fee, (ii) annual expenditures for the sign inventory program, and (iii) a progress report on the~~

8    ~~number of general advertising signs verified in the sign inventory; in-lieu requests; and code~~

9    ~~enforcement actions for general advertising signs processing, backlog, and abatement~~

10    ~~actions.~~

11    Section ~~7~~6. The San Francisco Planning Code is hereby amended by amending

12    Section 1005, to read as follows:

13    SEC. 1005. CONFORMITY AND PERMITS.

14    (a)    No person shall carry out or cause to be carried out on a designated landmark

15    site or in a designated historic district any construction, alteration, removal or demolition of a

16    structure or any work involving a sign, awning, marquee, canopy, mural or other appendage,

17    for which a City permit is required, except in conformity with the provisions of this Article 10. In

18    addition, no such work shall take place unless all other applicable laws and regulations have

19    been complied with, and any required permit has been issued for said work.

20    (b)    *(1) Installation of a new general advertising sign is prohibited in any Historic District*

21    *or on any historic property regulated by this Article 10.*

22    *(2)*    The Central Permit Bureau shall not issue, and no other City department or

23    agency shall issue, any permit for construction, alteration, removal or demolition of a structure

24    or any permit for work involving a sign, awning, marquee, canopy, mural or other appendage

25

1    on a landmark site or in a historic district, except in conformity with the provisions of this

2    Article 10. In addition, no such permit shall be issued unless all other applicable laws and

3    regulations have been complied with.

4    (c)(1)  Where so provided in the designating ordinance for a historic district, any or all

5    exterior changes visible from a public street or other public place shall require approval in

6    accordance with the provisions of this Article 10, regardless of whether or not a City permit is

7    required for such exterior changes. Such exterior changes may include, but shall not be

8    limited to, painting and repainting; landscaping; fencing; and installation of lighting fixtures and

9    other building appendages.

10    (2)  The addition of a mural to any landmark or contributory structure in a historic

11    district shall require compliance with the provisions of this Article 10, regardless of whether or

12    not a City permit is required for the mural.

13    (3)  Alterations to City-owned parks, squares, plazas or gardens on a landmark site,

14    where the designating ordinance identifies such alterations, shall require approval in

15    accordance with the provisions of this Article 10, regardless of whether or not a City permit is

16    required.

17    (d)  The Department shall maintain with the Central Permit Bureau a current record

18    of designated landmarks and historic districts. Upon receipt of any application for a permit to

19    carry out any construction, alteration, removal or demolition of a structure or any work

20    involving a sign, awning, marquee, canopy, mural or other appendage, on a landmark site or

21    in a historic district, the Central Permit Bureau shall, unless the structure or feature concerned

22    has been declared unsafe or dangerous pursuant to Section 1007 of this Article 10, promptly

23    forward such permit application to the Department.

24

25

1    (e)    After receiving a permit application from the Central Permit Bureau in

2    accordance with the preceding subsection, the Department shall ascertain whether Section

3    1006 requires a Certificate of Appropriateness for the work proposed in such permit

4    application. If such Certificate is required and has been issued, and if the permit application

5    conforms to such Certificate, the permit application shall be processed without further

6    reference to this Article 10. If such Certificate is required and has not been issued, or if in the

7    sole judgment of the Department the permit application does not so conform, the permit

8    application shall be disapproved or held by the Department until such time as conformity does

9    exist; the decision and action of the Department shall be final. Notwithstanding the foregoing,

10   in the following cases the Department shall process the permit application without further

11   reference to this Article 10:

12   (1)    When the application is for a permit to construct on a landmark site where the

13   landmark has been lawfully demolished and the site is not within a designated historic district;

14   (2)    When the application is for a permit to make interior alterations only on a

15   privately owned structure, or on a publicly owned structure unless the designating ordinance

16   requires review of such alterations pursuant to Section 1004(c) hereof;

17   (3)    When the application is for a permit to do ordinary maintenance and repairs

18   only. For the purpose of this Article 10, "ordinary maintenance and repairs" shall mean any

19   work, the sole purpose and effect of which is to correct deterioration, decay or damage,

20   including repair of damage caused by fire or other disaster;

21   (4)    When the application is for a permit to comply with the UMB Seismic Retrofit

22   Ordinances and the Zoning Administrator determines that the proposed work complies with

23   the UMB Retrofit Architectural Design Guidelines, which guidelines shall be adopted by the

24   Planning Commission.

25

Supervisor Peskin
**BOARD OF SUPERVISORS**

1    (f)    For purposes of this Article 10, demolition shall be defined as any one of the
2    following:

3    (1)    Removal of more than 25 percent of the surface of all external walls facing a
4    public street(s); or

5    (2)    Removal of more than 50 percent of all external walls from their function as all
6    external walls; or

7    (3)    Removal of more than 25 percent of external walls from function as either
8    external or internal walls; or

9    (4)    Removal of more than 75 percent of the building's existing internal structural
10   framework or floor plates unless the City determines that such removal is the only feasible
11   means to meet the standards for seismic load and forces of the latest adopted version of the
12   San Francisco Building Code and the State Historical Building Code.

13   (g)    The following procedures shall govern review of the addition of murals to any
14   landmark or contributory structure in a historic district:

15   (1)    Where the mural is proposed to be added to a landmark or contributory structure
16   in a historic district, located on property owned by the City, no Certificate of Appropriateness
17   shall be required. On such structures, the Art Commission shall not approve the mural until
18   the Advisory Board has provided advice to the Art Commission on the impact of the mural on
19   the historical structure. The Advisory Board shall provide advice to the Art Commission within
20   50 days of receipt of a written request for advice and information regarding the placement,
21   size and location of the proposed mural;

22   (2)    Where the mural is proposed to be added to a landmark or contributory structure
23   in a historic district, located on property which is not owned by the City, a Certificate of
24   Appropriateness shall be required. The Advisory Board shall not act on the Certificate of

25

1   Appropriateness until the Art Com-mission has provided advice to the Advisory Board on the

2   mural. The Art Commission shall provide advice to the Advisory Board within 50 days of

3   receipt of a written request for advice and information regarding the proposed mural.

4          Section 8Z.  The San Francisco Planning Code is hereby amended by amending

5   Section 1111.7, to read as follows:

6          SEC. 1111.7.  PERMITS FOR SIGNS.

7          (a)    Installation of a new general advertising sign is prohibited in any Historic District or

8   Conservation District or on any historic property regulated by this Article 11.

9          (b)    Wherever a permit for a sign is required pursuant to Article 6 of this Code, an

10  application for such permit shall be governed by the provisions of this Section in addition to

11  those of Article 6.

12         (c)    Apart from and in addition to any grounds for approval or disapproval of the

13  application under Article 6, an application involving a permit for a business sign, or general

14  advertising sign, identifying sign, or nameplate to be located on a Significant or Contributory

15  Building or any building in a Conservation District may be disapproved, or approved subject to

16  conditions if the proposed location, materials, means of illumination or method or replacement

17  of attachment would adversely affect the special architectural, historical or aesthetic

18  significance of the building or the Conservation District. No application shall be denied on the

19  basis of the content of the sign.

20         (d)    The Director of Planning shall make the determination required pursuant to

21  Subsection (b). Any permit applicant may appeal the determination of the Director of Planning

22  to the City Planning Commission by filing a notice of appeal with the Secretary of the

23  Commission within 10 days of the determination. The City Planning Commission shall hear

24  the appeal and make its determination within 30 days of the filing of the notice of appeal.

25

Supervisor Peskin
**BOARD OF SUPERVISORS**

Case 3:07-cv-06067-JSW    Document 15-6    Filed 03/28/2008    Page 36 of 39

1

2    APPROVED AS TO FORM:
     DENNIS J. HERRERA, City Attorney
3

4    By:

5    JUDITH A. BOYAJIAN
     Deputy City Attorney
6

7

8

9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

Supervisor Peskin
**BOARD OF SUPERVISORS**

FILE NO. 052021

## LEGISLATIVE DIGEST

[General Advertising Signs – Relocation Agreements, Sign Inventories.]

**Ordinance amending the San Francisco Administrative Code by adding Section 2.21 to establish a General Advertising Sign Relocation Procedure; amending the San Francisco Planning Code by amending Section 303 to add criteria for the Planning Commission's approval of a general advertising sign relocation site, amending Planning Code Section 604 to prohibit general advertising signs that have been removed from being replaced on the same site, adding Section 604.2 to require general advertising sign companies to maintain and submit to the City current inventories of their signs, and amending Sections 1005 and 1111.7 to prohibit the relocation of new general advertising signs to Historic Districts or Conservation Districts or on an historic property regulated by Articles 10 and 11 of the Planning Code; and adopting findings including environmental findings and findings of consistency with the Priority Policies of Planning Code Section 101.1 and the General Plan.**

### Existing Law

Article 6 of the Planning Code regulates general advertising signs. Planning Code Section 611 prohibits the approval of new general advertising signs within the City as of March 5, 2002. It further authorizes the Board of Supervisors (upon recommendation from a department designated by the Board) to enter into agreements with general advertising sign companies to provide for the relocation of existing legally permitted general advertising signs. Relocation sites must comply with the zoning in effect prior to adoption of Section 611, or as further restricted by the Board in future legislation, and must be approved through the conditional use procedure.

### Amendments to Current Law

This ordinance implements Proposition G, which was enacted in 2002, by amending the Administrative Code and Planning Code to: (1) establish a general advertising sign relocation procedure, (2) designate the Planning Department as the department to review and recommend to the Board approval or disapproval of a relocation agreement, (3) provide criteria for the Department's recommendations to the Board and the Planning Commission's review of proposed relocation sites, (4) require sign companies to submit current and accurate inventories of all their general advertising signs in the City and keep the inventories updated, and (5) further restrict sites where general advertising signs may be relocated by prohibiting relocation to Historic Districts or Conservation Districts or on an historic property regulated by Articles 10 and 11 of the Planning Code.

**BOARD OF SUPERVISORS**
SUPERVISOR PESKIN

**FILE NO.**

This legislation requires every sign company that owns a general advertising sign located in the City to submit to the Planning Department within 60 days of the legislation's effective date a current, accurate and complete inventory of all their signs located within the City. Failure to timely submit an inventory or incomplete submittals could result in the imposition of penalties. The Ordinance would provide a process to appeal the imposition of the penalty amount to the Board of Appeals and to collect any assessed penalties. Accompanying the inventory must be the affidavit of an officer or owner of the sign company, signed under penalty of perjury, verifying the information submitted to the best of his or her knowledge. Before the Board may act on a proposed relocation agreement, the Planning Department must have reviewed the sign company's inventory and verified that each sign proposed for relocation is legal. The Department must also verify that there are no outstanding notices of violation pending against the sign company for violation of applicable sign regulations.

The Planning Commission through the conditional use procedure must authorize relocation sites; hence, any appeal of the Commission's action would be to the Board of Supervisors. A sign company may apply for a conditional use unless at the same time as or after it has submitted the appropriate application materials for a relocation agreement. With its request to the Board for a relocation agreement, the sign company must submit, among other things, the written consent to the relocation of each sign from the owner of the property upon which the existing sign structure is located.

Before the Planning Commission may consider an application for a conditional use to relocate an existing sign, the sign company, in addition to obtaining the Board's approval of a relocation agreement, must have submitted a current sign inventory and other information, obtained the written consent of the property owner where the existing sign is located to the relocation of the sign, and obtained a demolition permit to remove the sign from its old location.

Only one sign may be erected in a new location, and it cannot be larger than the existing sign proposed to be relocated. The square footage of several existing signs may not be aggregated in order to erect a larger new sign. The sign in its new location must not exceed the size, height or dimensions, or increase the illumination or other intensity of the sign at its former location and must comply with the requirements applicable to its new location.

The Commission may not approve the relocation of a sign if: (1) the sign has been erected, replaced, reconstructed, relocated on the property, intensified, or expanded in area or in any dimension in violation of the Planning Code or without a permit, (2) the proposed relocation site is not a lawful location, (3) the sign has been removed from its former location, or (4) the owner of the property upon which the existing sign structure is erected has not consented in writing to the relocation of the sign.

A general advertising sign that has been removed may not be reinstalled, replaced or reconstructed at the same location nor may it be relocated to a new location. However, any reinstallation, replacement or reconstruction that was approved pursuant to a permit issued by

**BOARD OF SUPERVISORS**
SUPERVISOR PESKIN

FILE NO.

the City prior to the effective date of this proposed legislation shall be considered a lawfully existing nonconforming general advertising sign. A general advertising sign may be relocated to that old location if the relocation meets all other requirements. An existing general advertising sign may be structurally altered in order to meet the standards of seismic loads and forces of the Building Code, to replace a damaged or weathered signboard, to ensure safe use and maintenance of the sign, or to remediate hazardous materials. Such structural alterations will be authorized as ordinary maintenance.

## Background Information

In March 2002, the voters approved Proposition G. Proposition G amended the Planning Code by adding Section 611 to prohibit the approval of new general advertising signs within the City as of March 5, 2002. This legislation is intended to further Proposition G's overall objectives of enhancing the City's livability and quality of life by reducing the proliferation of general advertising signs in the City and the resulting clutter, blight, and other problems described in Proposition G. The proposed legislation also exercises the Board's authority under Proposition G to provide for the relocation of existing legally permitted general advertising signs and further restrict the areas in which such signs may be relocated.