# EXHIBIT S-1

# ARTICLE 5.4: REGULATION OF NEWSRACKS

Sec. 184.      Purpose and Intent.
Sec. 184.1.    Definitions.
Sec. 184.2.    Newsrack Certificate.
Sec. 184.3.    Newsrack Identification.
Sec. 184.4.    Newsracks Prohibited.
Sec. 184.5.    Maintenance and Display Standards.
Sec. 184.6.    Correction of Violations; Hearing.
Sec. 184.7.    Reserved.
Sec. 184.8.    Penalties; Other Remedies.
Sec. 184.9.    Insurance.
Sec. 184.10.   Indemnification.
Sec. 184.11.   Severability.
Sec. 184.12.   Fixed Pedestal Newsracks.

## SEC. 184. PURPOSE AND INTENT.

The Board of Supervisors hereby finds that newsracks placed and maintained on the streets, sidewalks, or other public rights-of-way, absent some reasonable regulation, may unreasonably interfere with the use of such streets, sidewalks, and public rights-of-way, and may present hazards to persons or property.

The Board of Supervisors further finds that streets, sidewalks and public rights-of-way are historically associated with the sale and distribution of newspapers and other publications, and that access to and use of these areas for such purposes is not to be denied except where such use unreasonably interferes with the use of these areas by pedestrians or traffic, or where such use presents a hazard to persons or property.

The Board of Supervisors therefore has determined that a reasonable accommodation of these competing interests can be achieved by adoption of this Article, which regulates the placement and maintenance of newsracks. (Added by Ord. 359-85, App. 7/24/85)

## SEC. 184.1. DEFINITIONS.

(a) "Newsrack" is any self-service or coin-operated box, container, storage unit, or other dispenser installed, used, or maintained for the display and sale or distribution without charge of newspapers, periodicals or other publications.

(b) "City" is the City and County of San Francisco.

(c) "Person" is an individual, firm, partnership, joint venture, association, social club, fraternal organization, joint stock company, corporation, estate, trust, business trust, receiver, trustee, syndicate, or any other group or combination acting as a unit, excepting the United States of America, the State of California, or any political subdivision thereof.

(d) "Director of Public Works" is the City's Director of Public Works or his or her designated representative.

(e) "General Manager of MUNI" is the General Manager of the City's Municipal Railway or his or her designated representative.

(f) "Abandoned newsrack" is any newsrack which remains empty for 10 business days, except that a newsrack remaining empty due to labor strike or any temporary and extraordinary interruption of distribution or publication by the newspaper or other publication sold or distributed from that newsrack shall not be deemed abandoned. (Added by Ord. 359-85, App. 7/24/85)

## SEC. 184.2. NEWSRACK CERTIFICATE.

Prior to the installation of any newsrack on any public street, sidewalk, or other public right-of-way, the person responsible for such installation and for the maintenance of such newsrack shall submit a newsrack certificate to the Director of Public Works. Any person may establish a single, master newsrack certificate covering all of such person's newsracks within the City. The newsrack certificate shall state the name, address and telephone number of the person re-

sponsible for installation and maintenance of the newsrack(s) covered by such certificate and set forth such person's agreement to indemnify and hold harmless the city pursuant to Section 184.10 of this Article. Within 10 business days from the date the newsrack certificate is submitted, the person responsible for such installation and for maintenance of such newsrack shall submit a separate certificate evidencing the insurance required to be carried under Section 184.9 of this Article. (Added by Ord. 359-85, App. 7/24/85)

### SEC. 184.3. NEWSRACK IDENTIFICATION.

Every person, either for himself or herself or any other person, who places or maintains or who causes to be placed or maintained a newsrack on any street, sidewalk or public right-of-way shall have his or her name, address and telephone number permanently affixed to the newsrack in a place where such information will be readily visible. (Added by Ord. 359-85, App. 7/24/85)

### SEC. 184.4. NEWSRACKS PROHIBITED.

(a) No person shall place, use or maintain any newsrack which in whole or in part rests upon, in or over any portion of any street or other public right-of-way on which motor vehicles are lawfully permitted.

(b) No person shall place, use or maintain any newsrack which in whole or in part rests upon, in or over any street, sidewalk or other public right-of-way, when such placement, use or maintenance endangers the safety of persons or property, or unreasonably interferes with public utility purposes, public transportation purposes or other government use, or when such newsrack unreasonably interferes with or impedes the flow of pedestrian or vehicular traffic, the ingress into or egress from any residence, place of business, or any legally parked or stopped vehicles, the use of poles, posts, traffic signs or signals, police or fire call boxes, transit shelters, sidewalk elevators, mailboxes, or other objects permitted at or near said location, or access to or use of delivery areas or loading zones.

(c) No person shall place, use or maintain any newsrack within five feet of any fire hydrant or any transit shelter installed by or for the San Francisco Municipal Railway ("MUNI") (except for newsracks placed inside or affixed to any such transit shelter with MUNI's consent), nor shall any person place, use or maintain any newsrack in any location where such newsrack leaves less than five feet of clear space for pedestrian passage.

(d) No person shall place, use or maintain any newsrack closer than seven feet from the curb within the first 30 feet of any MUNI stopping zone (as measured from the front of the yellow MUNI stop bar on the street, if there is one, or if there is not, from the beginning of the white box zone painted on the street). In the remaining portion of any MUNI stopping zone, no person shall place, use or maintain any newsrack closer than five feet from the curb, except that in the last 15 feet of any MUNI stopping zone, newsracks may be placed so that no edge is closer than two feet from the curb.

(e) The Director of Public Works shall appoint an advisory committee of newspaper distributors and concerned citizens to recommend such guidelines as may be necessary for interpreting and enforcing Section 184.4(b). Upon adoption of such guidelines by the Director of Public Works, copies of the guidelines shall be kept on file at the Director of Public Works and shall be made available to any person upon request. (Added by Ord. 359-85, App. 7/24/85)

### SEC. 184.5. MAINTENANCE AND DISPLAY STANDARDS.

(a) Every newsrack shall be maintained in good repair and working order. Newsracks that have been damaged or stolen shall be replaced or repaired as soon as is practical, unless the person responsible for the newsrack wishes to abandon the location, in which event such person shall promptly remove the newsrack and repair any damage to public property caused by the installation or removal of such newsracks.



(b) All coin-operated newsracks shall be equipped with a coin-return device maintained in good repair and working order.

(c) All newsracks and the newspapers or other publications sold therefrom shall be maintained and displayed in accordance with all applicable law, including (without limitation) Article 10.1 of Part II, Chapter VIII of the San Francisco Municipal Code (Police Code). (Added by Ord. 359-85, App. 7/24/85)

### SEC. 184.6. CORRECTION OF VIOLATIONS; HEARING.

(a) Any newsrack installed or maintained in violation of this Article may be seized and removed pursuant to Section 184.6. Seizure and removal of newsracks in violation of Sections 184.4 or 184.5 may take place only if it is impractical to remedy the violation by moving the newsrack to another point on the street, sidewalk or other public right-of-way without mechanical assistance. Before any newsrack is seized, the person responsible for its installation and maintenance shall be notified and given 10 business days in which to remedy the violation or to request a hearing to contest the seizure in the manner provided in Section 184.6(b). Notice to the party responsible for the newsrack shall be given by written notice sent to the address for such party stated on the newsrack certificate filed pursuant to Section 184.2 of this Article, and an additional notice tag shall be affixed to the newsrack on the date of notice. The latter notice shall be sufficient if no identification is shown on the newsrack and no newsrack certificate has been filed. Both the notice sent to the address stated on the newsrack certificate and the additional notice tag affixed to the newsrack shall state the place to request a hearing to contest the seizure, as provided in Section 184.6(b).

(b) Any person notified under Section 184.6(a) may request a hearing before a designated City official (the "Hearing Officer") in the manner set forth below. The Hearing Officer shall be the Director of Public Works unless the newsrack allegedly installed or maintained in violation of this Article is located within any MUNI stopping zone, in which case the Hearing Officer shall be the General Manager of MUNI. The person notified under Section 184.6(a) may request a hearing by making a request to the office of the Director of Public Works (if the Hearing Officer is the Director of Public Works) or, if the Hearing Officer is the General Manager of MUNI, then by making a request to the office of the General Manager of MUNI. The hearing shall be held not less than 10 business days after the request was made by the party notified under Section 184.6(a). The hearing shall be informal, but oral and written evidence may be given by both sides. Any action by the City with respect to the alleged violation shall be stayed pending the Hearing Officer's decision following the hearing, which decision shall be rendered no later than 10 business days after the hearing. The Hearing Officer may give oral notice of the decision at the close of the hearing, but shall give written notice as well of all decisions.

(c) The City may seize and remove a newsrack if the person responsible for such newsrack (i) has neither requested a hearing before the Hearing Officer nor remedied the violation within 10 business days following date of notice, or (ii) has failed to remedy the violation within 10 business days after receiving a copy of the written decision that the newsrack was installed or maintained in violation of this Article, following a hearing conducted pursuant to Section 184.6(b). Such person shall be notified of the seizure. Seized newsracks shall be retained by the City and may be recovered by the responsible party for a period of at least 10 business days following seizure.

(d) Notwithstanding the provisions of Section 184.6(a) through (c), if a newsrack is installed or maintained in such a place or manner as to pose an immediate and serious danger to persons or property, the City may seize such newsrack without prior notice to the person responsible for such newsrack if it is impractical to remedy the danger by one person moving the newsrack to another point on the street, sidewalk, or other public right-of-way without mechanical assistance. The person responsible for such newsrack shall be notified promptly after such seizure has occurred, and shall have the

right to request an informal hearing before the Director of Public Works (or, if the seized newsrack had been located within any MUNI stopping zone in violation of Section 184.4(d), then before the General Manager of MUNI) within 10 business days after receiving such notice to determine whether the seizure was proper. Any newsrack seized pursuant to this Section shall be retained by the City and may be recovered by the person responsible for such newsrack as provided in Section 184.6(c).

(e) Abandoned newsracks may be removed by a public officer of the City and may be disposed of if not claimed by the person responsible for that newsrack within 10 business days. The above notwithstanding, at least 10 business days before any newsrack is removed under this subsection, the person responsible for its installation or maintenance shall be given written notice pursuant to this Section that such newsrack is suspected of being abandoned. Such newsrack shall not be removed if, before removal, the party responsible for its installation or maintenance informs the Director of Public Works that the newsrack has not been abandoned and promptly stocks and maintains the subject newsrack. In addition, upon removal of any abandoned newsrack, the person responsible for its installation or maintenance shall promptly be notified and given 10 business days in which to request an informal hearing before the Director of Public Works (or, if the newsrack had been located within any MUNI stopping zone in violation of Section 194.4(d), then before the General Manager of MUNI) to contest the removal under this subsection. (Added by Ord. 359-85, App. 7/24/85)

### SEC. 184.7. RESERVED.

### SEC. 184.8. PENALTIES; OTHER REMEDIES.

Any other provisions of this Article to the contrary notwithstanding, as a condition of recovering any newsrack properly seized pursuant to the terms of Section 184.6 of this Article, the person responsible for such newsrack shall pay an impound fee covering the actual cost to the City of transporting and storing such newsrack. In addition, any person who violates Sections 184.4 or 184.5 of this Article shall be guilty of an infraction, and if such person's newsrack is properly seized pursuant to Section 184.6, such person may be punished by a fine not exceeding $50 for the first such violation, $75 for the second such violation, or $100 for each violation thereafter. The Hearing Officer may waive these fines in appropriate circumstances.

The provisions of this Section shall not limit any other remedies authorized by law. (Added by Ord. 359-85, App. 7/24/85)

### SEC. 184.9. INSURANCE.

Each person installing or maintaining a newsrack under this Article shall furnish to the City a certificate showing that such person has then in force a policy or policies of public liability and property damage insurance, naming the City as an additional insured, in an amount not less than $100,000 minimum liability combined single limit (bodily injury and property damage) per person and per occurrence. Each such person shall provide and keep in force such policy or policies of public liability insurance during such time as he or she continues to place or maintain any newsrack under the terms of this Article. The evidence of insurance filed with the City shall include a statement by the insurance carrier that such carrier will give the City 30 days' notice before cancelling such insurance. (Added by Ord. 359-85, App. 7/24/85)

### SEC. 184.10. INDEMNIFICATION.

Any person installing or maintaining a newsrack under this Article shall further be required to execute an agreement with the City that he or she agrees to indemnify and to hold harmless the City and its representatives from all claims, demands or liability arising out of or encountered in connection with the installation or maintenance of any newsrack on public property by or on behalf of such person, except only such injury or harm as may be caused solely and exclusively by the negligence of the City or its authorized representatives. This indemnification shall extend only to actions filed within the applicable



period for filing actions under California law. (Added by Ord. 359-85, App. 7/24/85)

### SEC. 184.11.  SEVERABILITY.

If any provision or clause of this Article or the application thereof to any person or circumstance is held to be unenforceable by a court of competent jurisdiction, such clause or provision and the remainder of this Article shall remain effective and enforceable to the fullest extent allowed by law, and all clauses and provisions of this Article are hereby declared to be severable. (Added by Ord. 359-85, App. 7/24/85)

### SEC. 184.12.  FIXED PEDESTAL NEWSRACKS.

(a) **PURPOSE AND INTENT.** The Board of Supervisors hereby finds and declares:

(1) The City and County of San Francisco has a substantial interest in promoting the public health, safety, welfare and convenience of its citizens and visitors by ensuring that public streets, public sidewalks and public rights-of-way are not unreasonably obstructed by newsracks, and that newsracks are properly maintained.

(2) In recent years, the proliferation of newsracks on City streets, and particularly poorly maintained or abandoned freestanding newsracks, have contributed to the congestion of public sidewalks, impeded the flow of pedestrian and vehicular traffic, interfered with the use of streets, public sidewalks and public rights-of-way, presented hazards to persons and property, contributed to the litter problems of public sidewalks, and resulted in visual blight.

(3) The City and County of San Francisco has a substantial interest in preserving and protecting its unique visual and aesthetic qualities identified in Sections I.5.24 through I.5.25, I.5.32 through I.5.33, and II.4.2 of the San Francisco General Plan. To that end, and consistent with the Downtown Area Plan of the General Plan (§§ II.1.48 through II.1.50), the City must take steps to reduce the visual blight, the inconvenience and the hazards associated with unlimited numbers and designs of newsracks, poorly maintained newsracks and the virtually unrestricted placement of newsracks on public streets, public sidewalks and public rights-of-way.

(4) A six-month pilot program employing fixed pedestal newsracks at various locations the City has shown that an effective way to reduce the visual clutter and hazards associated with excessive numbers of newsracks is to prohibit freestanding newsracks in congested areas, and to allow only fixed pedestal newsracks in these areas.

(5) The purpose of this section is to promote the public health, safety and welfare and the aesthetic qualities of the City by controlling the placement, size, construction and appearance of newsracks and fixed pedestal units so as to accomplish the following, to the extent reasonably possible in compliance with this section and the guidelines:

(A) Provide for pedestrian and vehicular safety and convenience;

(B) Ensure that there is no unreasonable interference with the flow of pedestrian or vehicular traffic including ingress into, or egress from, any residence, place of business or public facility, or any legally parked or stopped vehicles;

(C) Ensure compliance with the Americans With Disabilities Act and improve passage for persons with disabilities by reducing impediments to passage caused by poorly located newsracks;

(D) Provide reasonable access for the safe and efficient use and maintenance of sidewalks, poles, posts, traffic signs or signals, hydrants, mailboxes, police or fire call boxes, sidewalk elevators, delivery areas, loading zones, transit shelters, curb ramps, parking meters, and locations used for public transportation services;

(E) Reduce visual blight and clutter and litter problems associated with poorly maintained, improperly located or abandoned newsracks;

(F) Protect the unique aesthetic and historical attributes of the City;



(G) Advance the economic interests of the City's businesses and residents, including the interests of those involved in the publication or distribution of newspapers and news periodicals through newsracks;

(H) Respect publications' interests in effective distribution, including by (i) allowing publications currently distributed from freestanding newsracks to receive distribution space in fixed pedestal units located at, or as close as reasonably possible to, the locations of such freestanding newsracks; (ii) allowing publications not currently distributed from freestanding newsracks to receive distribution space in fixed pedestal units, (iii) allowing the number, locations, and usage of fixed pedestal units to change over time in response to changing market conditions; and (iv) specifying reasonable conditions under which paid publications shall have the right to repair, maintain, replace or otherwise engage in self-help as to specific components of newsrack boxes they occupy that relate to newsrack box functionality;

(I) Provide for streetworthy fixed pedestal units and prompt and effective maintenance, repair and replacement of such units, including by providing for expeditious maintenance, repair and replacement of parts of such units which, if not thus maintained, repaired or replaced, could significantly impede the effective use of such units for the sales or distribution of publications; and

(J) Specify reasonable conditions under which paid publications may elect to have the Vendor assume responsibility for repair, maintenance, or replacement of coin mechanisms and related parts of newsrack boxes that those paid publications occupy, and may subsequently revoke such election.

(6) In adopting this section, the Board of Supervisors is mindful that regulation of newsracks implicates rights protected by the First Amendment of the United States Constitution and by Article I, Section 2 of the California Constitution. To that end, the Board of Supervisors directs the Director of the Department of Public Works, the General Manager of the Municipal Railway, and other appropriate City officials to interpret and apply this section and the guidelines promulgated under this section, and to exercise their powers and duties, in a manner consistent with the constitutional rights of citizens and the regulated community.

(7) Use of streets, public sidewalks and other public rights-of-way for distribution of newspapers may be denied where such use presents a danger to persons or property. Use of these areas for such purposes may be restricted where it unreasonably interferes with the intended use of the area or with pedestrian or vehicular traffic, or results in unreasonable levels of visual blight.

(8) In recent years, City officials have noticed that a number of newsracks in the City are placed in inappropriate locations, are abandoned, or are poorly maintained. Many of these newsracks also end up being used as trash receptacles, causing unsightly and unsanitary clutter and litter.

(9) Given the limited space available and the increasing congestion on certain public sidewalks, streets and public rights-of-way, the City has a substantial interest in devising an approach to placement of newsracks and fixed pedestal units in those areas that promote public health, safety and welfare and the aesthetic quality of the City. This objective may be achieved by creating "fixed pedestal zones" in highly congested areas or areas that have particular public safety, aesthetic, historical, or economic concerns. Allowing fixed pedestal units and prohibiting freestanding newsracks and unauthorized fixed pedestal units in these zones will promote the City's interest in promoting public safety, reducing visual blight and clutter, protecting the unique aesthetic and historical attributes of the City, and advancing the economic interests of the City's businesses and residents by improving the appearance of the area and resulting in better use of space and reduced congestion, while respecting publication's interests in effective distribution. A reasonable accommodation of these competing interests can be achieved by adoption of this section, which regulates the placement,



size, construction design, maintenance, and appearance of newsracks and fixed pedestal units in specified areas.

(10)  This section is not intended to and does not ban freestanding newsracks on public sidewalks, streets and public rights-of-way throughout the City. Subject to Section 184.12(c) and the guidelines, freestanding newsracks may continue to be placed on public sidewalks, streets and public rights-of-way in areas of the City that are not within fixed pedestal zones created pursuant to this section, in accordance with Article 5.4, Sections 184 through 184.11, of the San Francisco Public Works Code and the guidelines promulgated thereunder. Publications also may continue to be distributed within fixed pedestal zones created pursuant to this section by all authorized means other than freestanding newsracks.

(b)  **DEFINITIONS.** The definitions contained in Section 184.1 shall apply to this section except to the extent such definitions are inconsistent with the following:

(1)  "Abandoned newsrack box" means any newsrack box that either remains empty for more than fifteen (15) business days or contains only outdated issues in violation of the guidelines promulgated under this section, after the expiration of applicable notice, grace and cure periods. In case of a labor strike or a temporary and extraordinary interruption of distribution or publication of the newspaper or other periodical sold or dispensed from that newsrack box, the publication shall notify the Director in writing in order to avoid having the newsrack box deemed abandoned.

(2)  A "block face" means the sidewalk between, and including, two contiguous curb corners without an intervening street or other roadway, excluding driveways.

(3)  A "curb corner" means the common area formed at the intersection of, and consisting of the overlap of, two adjacent sidewalks.

(4)  A "cluster of fixed pedestal units" means two or more fixed pedestal units located such that each unit is within twenty-five feet (25') of another unit on the same block face.

(5)  "Director" means the Director of the Department of Public Works or his or her designated agent or representative.

(6)  "Fixed pedestal zone" means any area designated by the Director, in accordance with this section and the guidelines in which distribution of newspapers through newsracks is restricted to fixed pedestal units installed in a style and manner approved by the Director.

(7)  "Fixed pedestal permit" means a permit issued to a publication authorizing the placement of the publication in one or more newsrack boxes in a fixed pedestal unit in a Fixed Pedestal Zone.

(8)  "Fixed pedestal unit" means an assembly which is of a type, design or model approved by the Director and which contains one or more self-service or coin-operated boxes, containers, storage units or other dispensers installed, used or maintained for the display and sale or free distribution of publications, and which is attached to the public sidewalk, street or public right-of-way in accordance with this section, guidelines promulgated under this section, and any vendor contract.

(9)  "Freestanding newsrack" means any self-service or coin-operated box, container, storage unit or other dispenser installed, used or maintained for the display and sale or the distribution without charge of publications, and which is not a fixed pedestal unit authorized under this section.

(10)  A "historically present" publication means a publication that, according to the survey completed most recently before initial implementation of this section in any fixed pedestal zone, was distributed from at least one freestanding newsrack situated cat the area in question. For purposes of the preceding sentence:

(A)  "Area" means either a corner area or a midblock area. A "corner area" is that general portion of a block face that, as reasonably estimated by the Director in the compilation of the survey without undertaking actual measurement, is no more than thirty-five feet (35') from the edge of the nearest curb corner on that block face, or, if there is one or more item of street

furniture, utilities, or other fixed obstructions (except freestanding newsracks) within those thirty-five feet (35'), no more than fifty feet (50') from the edge of the nearest curb corner. A midblock area is that general portion of a block face that is not a corner area under this subsection.

(B) Because freestanding newsracks are often inadvertently moved into locations that are illegal under City laws or regulations, a freestanding newsrack is "situated" in the area in question even if it is placed in a location that violates one or more City laws or regulations concerning freestanding newsrack placement. Notwithstanding the foregoing sentence, no freestanding newsrack shall support a claim of historical presence, or be counted in any survey of historically present freestanding newsracks, if it is secured to a tree, tree grate, or tree guard; is secured to or interfering with a fire hydrant, police or fire call box, or parking meter; or is located in a crosswalk, in any part of a bus zone save the last fifteen feet (15') thereof, in a blue zone, in any location where it interferes with a handicapped access ramp, or in any other location where it poses a similar significant threat to public safety or property.

(11) "Initial implementation" means the first stage of implementation of this section throughout a fixed pedestal zone, and shall include the selection of locations for initial fixed pedestal units in that zone which are as close as possible to the former locations of freestanding newsracks, in compliance with this section and the guidelines; the allocation of space within those units to historically present publications and, if possible, to other interested publications; and the installation of those units.

(12) "Newsrack" means a freestanding newsrack or an unauthorized fixed pedestal unit.

(13) "Newsrack box" shall mean the individual space within a fixed pedestal unit that dispenses one publication, including the door, coin return mechanism and associated hardware. Except as stated otherwise in this section or the guidelines, if the vendor has split a newsrack box into two separate distribution areas, each such area shall constitute as separate newsrack box. "Newsrack box" does not include any freestanding newsrack.

(14) "Permit holder" means a publication that has been issued one or more fixed pedestal permits by the Director, or that is otherwise authorized to occupy one or more newsrack boxes.

(15) A "petition unit" means a fixed pedestal unit installed pursuant to a petition under subsection 184.12(g)(3)(B) after initial implementation has occurred throughout the fixed pedestal zone in question.

(16) "Publication" includes all editions of that publication, including but not limited to morning, evening, or special editions, as well as any editions of that publication published jointly with another publisher.

(17) "Public right-of-way" means land which by deed, conveyance, agreement, easement, dedication, usage or process of law is reserved and dedicated to the general public for street, highway, alley, public utility, or pedestrian walkway purposes, whether or not said land has been improved or accepted for maintenance by the City.

(18) "Roadway" means that portion of a public street that is improved or customarily used for vehicular traffic.

(19) "Section" or "this section," or "any subsection thereof" means Article 5.4, Section 184.12 of the San Francisco Public Works Code.

(20) "Sidewalk" means any public surface or public walkway provided for the exclusive or primary use of pedestrians.

(21) "Street" means all that area dedicated to the public use, including but not limited to roadways, sidewalks and planter strips.

(22) A "survey" means a written enumeration of the freestanding newsracks situated on public sidewalks and public rights-of-way in one or more portions of the City that (A) states the name of the publication distributed from each such freestanding newsrack, with such names listed according to survey order; (B) states whether each such freestanding newsrack is situated at a corner area or midblock area, as reasonably estimated by the Director without undertaking



actual measurement; (C) is conducted after the effective date of this Section; and (D) is accompanied by a contemporaneous videotape or comparable photographic depiction of such freestanding newsracks that the Director retains for at least twelve (12) months cater initial implementation in that zone is completed. For purposes of the preceding sentence "area" and "situated" shall have the meanings set forth in Section 184.12(b)(10).

(23) "Survey order" means that the Director, in conducting a survey of freestanding newsracks situated in a particular area, as defined in Section 184.12(b)(10), shall proceed in the following order:

(A) In surveying a corner area, the Director shall:

(i) First survey that group of freestanding newsracks in that area that is located on the curb side of the sidewalk (as opposed to the property line side of the sidewalk) and is located closest to the corner. Within that group, the Director shall first survey those freestanding newsracks that face toward the property line, starting with those closest to the corner, and shall then survey those freestanding newsracks that do not face toward the property line, starting with those closest to the corner;

(ii) Then repeat the process described in subsection (i) immediately above for each other group of freestanding newsracks in that area that also is located on the curb side of the sidewalk, proceeding from group to group in order of increasing distance from the corner, until all groups of freestanding newsracks in that area that are located on the curb side of the sidewalk have been surveyed;

(iii) Then repeat the process described in subsection (i) for each remaining group of freestanding newsracks located in that area (i.e. freestanding newsracks not on the curb side of the sidewalk), proceeding from group to group in order of increasing distance from the corner, until all groups of freestanding newsracks in that area have been surveyed.

(B) In surveying a midblock area, the Director shall:

(i) First survey that group of freestanding newsracks in that area that is located on the curb side of the sidewalk and that a vehicle moving on that side of the street would first encounter. Within that group, the Director shall first survey those freestanding newsracks that face toward the property line, proceeding from newsrack to newsrack in the direction in which vehicular traffic on that side of the street moves, and shall then survey those freestanding newsracks that do not face toward the property line, again proceeding from newsrack to newsrack in the direction in which vehicular traffic on that side of the street moves;

(ii) Then repeat the process described in subsection (i) immediately above for each other group of freestanding newsracks in that area that also is located on the curb side of the sidewalk, proceeding from group to group in the direction in which vehicular traffic on that side of the street moves, until all groups of freestanding newsracks in that area that are located on the curb side of the sidewalk have been surveyed;

(iii) Then repeat the process described in subsection (i) for each remaining group of freestanding newsracks located in that area, proceeding from group to group in the direction in which vehicular traffic on that side of the street moves, until all groups of freestanding newsracks in that area have been surveyed.

(24) "Unauthorized fixed pedestal unit" means an assembly containing one or more self-service or coin-operated boxes, containers, storage units or other dispensers installed, used or maintained for the display and sale or free distribution of publications, and which is attached to the public sidewalk, street or public right-of-way in a fixed pedestal zone, which is not authorized pursuant to a vendor contract.

(25) "Vendor" means any individual or entity that has entered into an agreement with the Director, or any agent thereof, to provide, install and maintain fixed pedestal units pursuant to this section.



(26) "Vendor contract" means any agreement between the Director and a vendor pursuant subsection 184.12(d)(3).

(c) **SCOPE.** The requirements this section shall apply to all fixed pedestal units, unauthorized fixed pedestal units, newsrack boxes and freestanding newsracks located within fixed pedestal zones designated by the Director in accordance with subsection 184.12(f) or within fifteen feet (15') of any fixed pedestal unit that is located in such a zone. To the extent any provision in Sections 184 through 184.11 is in conflict or inconsistent with this section, it is the Board of Supervisors' intention that this section shall control in any fixed pedestal zone or within fifteen feet (15') of any fixed pedestal unit that is located in such a zone.

(d) **GUIDELINES, FEES, AND AUTHORITY OF DIRECTOR.**

(1) **Promulgation of Guidelines.**

(A) The Director is hereby authorized and directed to promptly promulgate guidelines consistent with the provisions of this section controlling the selection of locations for, as well as the placement, size, construction, design, methods of attachment, appearance, and maintenance and repair of fixed pedestal units and newsrack boxes in fixed pedestal zones. The guidelines shall also contain procedures for establishing or amending fixed pedestal zones, for determining access by publications to fixed pedestal units, and for obtaining fixed pedestal permits. The guidelines may also set maximum density levels for fixed pedestal units in fixed pedestal zones, including different levels for commercial and residential areas of the City.

(B) In promulgating guidelines, the Director's decisions shall be consistent with the purpose of this section, as set forth in subsection 184.12(a)(5)(A)—(J).

(C) The guidelines shall be adopted by way of a Department of Public Works order signed by the Director after giving due consideration to the recommendations of the Newsrack Advisory Committee. The provisions of this section governing fixed pedestal units, access to fixed pedestal units by publications, and prohibiting freestanding newsracks and unauthorized fixed pedestal units in fixed pedestal zones shall not be implemented or enforced until the guidelines specified in this paragraph are in effect and notice of the effective date has been published in the City's official newspaper.

(2) **Procedures or Adopting or Amending Guidelines.** Prior to adopting or amending the guidelines the Director shall publish notice in the City's official newspaper of the Director's intent to adopt or amend the guidelines. Copies of the proposed or amended guidelines shall be made available to the public upon request.

(3) **Authority to Contractor Services.** The Director is hereby authorized to select and enter into an agreement with a vendor or vendors to provide for the installation and maintenance of fixed pedestal units in accordance with this section. Any such agreement shall include, in addition to any other provisions required by applicable City laws or by guidelines adopted by the Director pursuant to subparagraph (1), the following requirements:

(A) The vendor shall provide for streetworthy fixed pedestal units, and shall be responsible for installing and promptly and effectively maintaining the condition and appearance of, and repairing and replacing, all fixed pedestal units and newsrack boxes subject to the agreement (except for responsibilities which are the obligation of the permit holder pursuant to subsection 184.12(i) in accordance with the terms of the agreement and the requirements of this section;

(B) The vendor shall provide a way to disable and render inoperative any newsrack box that is found by the Director to be in violation of this section by means such as a locking plate over the offending newsrack box. The vendor(s) shall agree to disable any such newsrack boxes within 24 hours of receiving notice to do so from the Director;

(C) A statement to accordance with Section 6.63-1 of the San Francisco Administrative Code that the vendor has a clear and unequivocal understanding that a possessory interest subject to taxation may be created by the agreement and the vendor shall pay any and all possessory



interest taxes levied upon the vendor's interest therein pursuant to an assessment lawfully made by the Assessor;

(D) The vendor shall furnish evidence of insurance that is satisfactory to the City Risk Manager, and that names the City as an additional insured;

(E) The vendor shall have no authority to make determinations concerning where fixed pedestal units will be located, or concerning which publications shall have access to a fixed pedestal unit;

(F) Where the Director intends to allow the vendor to place advertising on the back of one or more fixed pedestal units authorized under this section, the agreement shall set forth the requirements applicable to such advertising, including the requirements set forth in subsection 184.12(i)(1)(F);

(G) The vendor shall provide a reasonable opportunity for paid publications to elect to have the vendor assume responsibility for repair, maintenance, or replacement of coin mechanisms and related parts of newsrack boxes that those paid publications occupy, and to subsequently revoke such an election;

(H) The vendor shall specify reasonable conditions under which publications shall have the right to repair, maintain, replace or otherwise engage in self-help as to specific components of newsrack boxes they occupy, and to obtain reimbursement for certain repair, maintenance, or replacement;

(I) The vendor shall provide for installation of reasonable security features to protect the integrity of the fixed pedestal units, including any coin mechanisms and associated hardware;

(J) The vendor shall allow paid publications, at their own cost, to change the coin mechanism in newsrack boxes they occupy, subject to reasonable notice and procedures, to adapt to changing technology and advances;

(K) The vendor shall maintain and display a "hotline" telephone number on the fixed pedestal units authorized by the vendor contract;

(L) The vendor shall reasonably retain information as to complaints concerning and repairs to each newsrack box in each fixed pedestal unit authorized by the vendor contract and make such information available, reasonably promptly, to the publication occupying each such newsrack box and to the Director;

(M) The vendor shall provide a way to split newsrack boxes into two separate distribution areas for the distribution of publications that are distributed free of charge; and

(N) The vendor shall be responsible for the installation, repair and replacement of price plates, if any, including installation, repair and replacement necessitated by a change in the price of a publication.

(O) The current provisions of the "First Amended and Restated Pedestal-Mounted Newsrack Agreement By and Between the City and County of San Francisco and Clear Channel Adshel, Inc." satisfy the current requirements of this section concerning vendor contracts, as of the date of the City's approval and authorization of said agreement, including the requirements listed at Section 184.12(d)(3)(A)—(N), above. In the event of any disagreement, interpretive issue, ambiguity, or silence in respect to the tens of this section and said agreement, said agreement, except as to any amendment, modification or supplement to either or both the agreement or this section, shall control the rights and obligations of the Vendor under said agreement, whose fulfillment of the current provisions of said agreement shall constitute compliance with this section.

(4) **Content-Based Discrimination Prohibited.** The Director shall not consider the content or viewpoint of the material to be distributed through fixed pedestal units in administering or enforcing this section, or in adopting or implementing guidelines pursuant to this section. Nothing in this paragraph shall be construed as limiting the authority of the Director to require blinder racks for adult-oriented publications in accordance with subsection 184.12(i).

(5) **Newsrack Advisory Committee.** The Director is hereby authorized and directed to establish a Newsrack Advisory Committee consisting of 11 members. The Newsrack Program Manager of the Department of Public Works shall be a voting member, and shall chair the Committee. The Director shall appoint to the Committee persons drawn from, or having expertise in, the newspaper, news and/or commercial periodical, and distributing industries in the City, and/or drawn from neighborhood and merchant groups, and other interested members of the public. The number of Committee members who are representatives of publishers and/or distributors shall equal the number of Committee members who are representatives of neighborhood and/or merchant groups. The Director shall endeavor to include on the Committee representatives paid and unpaid publications and of more and less frequently published publications. The Committee shall advise the Director in the implementation and administration of this section; resolve disputes concerning the locations of fixed pedestal units, to the extent consistent with this section and the guidelines; and minimize the cost to the City of the implementation and administration of this section. No vendor or agent or employee of a vendor may serve on the Committee. Committee members shall serve at the pleasure of the Director for a term of one year, and may be reappointed to additional terms. The Committee shall hold regularly scheduled meetings, with notice posted in the City's official newspaper.

(6) **Fees.**

(A) The Director is hereby authorized and directed to establish and collect an annual permit fee to be paid by each permit holder. This fee is initially established at $30 or each newsrack box, including each split newsrack box. The Director has determined that this fee is not expected to generate proceeds in excess of the costs anticipated to be incurred in implementing this section during the first year that this section is in effect. In future years, the anticipated annual revenue from this fee shall not exceed the actual costs incurred by the Director for implementation, administration and enforcement of the program during the preceding twelve (12) months. The fee shall only be used to cover such costs, and not as a revenue-generating source for the City. The fee adopted pursuant to this provision shall be uniformly imposed upon all permit holders based upon the number of newsrack boxes authorized for each permit holder. The fee shall not exceed the pro-rata share allocated to each newsrack box of the actual costs incurred in implementing, administering, and enforcing the program established under this section.

(B) The fee shall be reviewed annually by the Director, who shall propose to the Board of Supervisors any recommended adjustments, along with written justification for the adjustment and any necessary legislation. In any year where the Director anticipates that the revenue from fees will exceed the estimated administrative costs, less penalties, during that year, the Director shall recommend an adjustment reducing the fee. Where the proceeds from the fee are less than the estimated costs of program administration, less penalties, the Director may recommend an adjustment. In proposing adjustments, the Director shall take into account the anticipated penalties and other charges to be collected from violators during the forthcoming year. These proceeds shall be used to offset program administration and enforcement costs that would otherwise be defrayed by fees imposed during the forthcoming year so that the fees, including any surplus from the prior year, do not exceed the projected actual costs of administering the program. For any year in which the fee proceeds exceed actual administration, inspection and abatement expenses, such surplus shall be taken into account in fixing the fee for the subsequent year.

(e) **PERMIT REQUIREMENT.**

(1) *Fixed Pedestal Permit.* Permits are necessary to facilitate the regulation and inspection of newsrack boxes for the purposes set forth in this section. Except where this section or the guidelines expressly provide otherwise, no person may place any publication in any newsrack box in a fixed pedestal unit on a public sidewalk, street or public right-of-way in a fixed pedestal



zone for the purpose of sale or distribution without having first obtained from the Director a fixed pedestal permit authorizing placement of the publication in that newsrack box.

(2) **Duty to Obtain Permit.** Except where this section or the guidelines expressly provide otherwise, each publication seeking access to a newsrack box or boxes in a fixed pedestal unit or cluster of fixed pedestal units shall apply to the City or a fixed pedestal permit for each newsrack box in each fixed pedestal unit to which the publication seeks access. The permit holder shall be responsible for the payment of all fees or penalties due or imposed udder this section with respect to that permit holder's newsrack box(es). Once a permit has been granted pursuant to this section and the requirements of the guidelines, and if the permit has not subsequently been revoked, the permit holder shall not be required to renew or reapply for another fixed pedestal permit for the same newsrack box.

(3) **Application.** Application for a fixed pedestal permit shall be made in writing on a form and in a manner provided by the City and filed with the Director or by other medium approved by the Director. The application package shall inform the applicant of the requirements of this section and the guidelines promulgated under this section.

(4) **Permit Issuance.**

(A) The Director shall grant or deny a properly completed and timely application for a fixed pedestal permit from a publication, or from the agent for a publication, accompanied by written authorization from the publication, as specified in the guidelines, within fifteen (15) business days of the Director's receipt of the application. However, if the Director has not completed the application of the space allocation procedures set forth in subsection 184.12(h) and the guidelines, the Director shall have an additional five (5) business days to grant or deny the application.

(B) The Director shall issue the fixed pedestal permit unless the Director finds one or more of the following grounds for denial to exist, in which case the Director shall deny the application for a permit. The grounds for denial of an application for a fixed pedestal permit are: (i) the application is incomplete; (ii) the application was not submitted on time; (iii) space in the newsrack box that is the subject of the application is not available after application of the space allocation procedures set forth in subsection 184.12(h) and the guidelines; or (iv) the publication that applied for the permit has failed to pay any outstanding administrative penalties levied against it pursuant to subsection 184.12(k)(1)(A). If an application is denied, the Director shall notify the applicant promptly in writing, explaining the reasons for the denial, and citing the relevant portions of this subsection and the guidelines.

(5) **Violations.** Failure to comply with any requirement of this section, or any requirement of the guidelines authorized by this section, shall constitute a violation of this section. Any such violation may be cause for removal of the offending freestanding newsrack or unauthorized fixed pedestal unit, or disabling of the offending newsrack box pursuant to subsection 184.12(j), and for the imposition of administrative penalties pursuant to subsection 184.12(k).

(6) **Permit Revocation.**

(A) The Board of Supervisors specifically determines that any fixed pedestal permit issued pursuant to this section confers a non-transferable, revocable privilege upon the permit holder. Where one or more of the grounds for revocation specified in subparagraph (B) exist, the Director shall promptly initiate such revocation in order to ensure that space in the fixed pedestal unit is made available to another publication that will lawfully use it, including publications that did not receive such space during initial implementation in the fixed pedestal zone in which the fixed pedestal unit in question is located. Any such permit may be revoked by the Director fifteen (15) business days after the Director provides written notice to the permit holder that one or more of the grounds for revocation specified in subparagraph (B) exist, if the permit holder does not correct all of the violations on or before the close of the fifteenth (15th) business day. If the permit is revoked, the Director shall

notify the permit holder promptly in writing, explaining the reasons or the revocation, and citing the relevant portions of this subsection and the guidelines.

(B) The grounds for revocation of a fixed pedestal permit are: (i) the permit holder did not submit the required permit fee, as specified in the guidelines, within ten (10) business days of the Director's approval of the voluntary space allocation agreement or of the space allocation meeting at which the permit holder was allocated the newsrack box that is the subject of the permit; (ii) the permit holder did not submit the required annual fee on time; (iii) the newsrack box that is the subject of the permit has been vacated pursuant to subsection 184.12(j)(3)(D); (iv) the newsrack box that is the subject of the permit has been abandoned pursuant to subsection 184.12(b)(1); or (v) the Director's decision to grant the permit was successfully challenged by a person aggrieved by the determination pursuant to subsection 184.12(m) and the guidelines. In addition, the Board of Supervisors may at any time in its exclusive legislative discretion elect to repeal or amend this section and thereby render null and void any permits issued pursuant this section.

(f) **ESTABLISHMENT OF FIXED PEDESTAL ZONES.**

(1) **Fixed Pedestal Units Restricted.** No person shall place, operate or maintain a fixed pedestal unit on any public street, public sidewalk or public right-of-way located in a fixed pedestal zone except in accordance with a vendor contract. Any unauthorized fixed pedestal unit which in whole or in part is attached to or rests upon a public street, public sidewalk or public right-of-way located in a fixed pedestal zone shall be subject to impoundment pursuant to subsection 184.12(j). The owner of any unauthorized fixed pedestal unit properly impounded by the Director under subsection 184.12(j) shall be responsible for restoring the sidewalk to its original condition by replacing the concrete or other material in accordance with Section 703.2 of the Public Works Code.

(2) **Freestanding Newsracks Prohibited.** No person shall place, operate or maintain a freestanding newsrack on any public street, public sidewalk or public right-of-way located in fixed pedestal zone, or located within fifteen feet (15') of any fixed pedestal unit that is located in a fixed pedestal zone. Any freestanding newsrack which in whole or in part or rests upon a public street, sidewalk or right-of-way located in a fixed pedestal zone, or located within fifteen feet (15') of any fixed pedestal unit that is located in a fixed pedestal zone, shall be subject to impoundment pursuant to subsection 184.12(j).

(3) **Fixed Pedestal Zones.**

(A) The Director is authorized to establish one or more fixed pedestal zones within the City subject to the following requirements:

(i) The Director shall determine the location of fixed pedestal zones in compliance with, and consistent with the purpose and intent of, this section and the guidelines. Subject to subsection 184.12(f)(3)(A)(iii), such zones generally shall be established only in areas of the City which have one or more of the following: extensive public transit service, usage, and/or facilities; large concentrations of freestanding newsracks; or large numbers of pedestrians.

(ii) The Director shall not establish a fixed pedestal zone in any area of the City unless, within the immediately preceding twenty-four (24) months, the Director has completed a survey of that area and made that survey publicly available reasonably promptly upon its completion, and no later than the establishment of the fixed pedestal zone. Each such survey shall be completed reasonably promptly after it is begun.

(iii) Where a fixed pedestal zone would not otherwise contain sufficient space to install fixed pedestal units sufficient to accommodate those publications which the survey shows to be historically present in that zone, in accordance with this section and the guidelines, the Director shall establish or amend the zone to include adjoining portions of intersecting side streets, or adjacent portions of the street on which the zone was established (including where the zone was established only on one side of a street, portions



of the other side of that street), as necessary to increase the space available in the zone for fixed pedestal units to accommodate such publications, if reasonably possible.

(iv) Except as this section or the guidelines provide otherwise, the Director shall establish fixed pedestal zones following consultation with

*[INTENTIONALLY LEFT BLANK]*

the Newsrack Advisory Committee. Each zone shall be deemed established as of the date the Director publishes notice of the zone's location in the City's official newspaper following such consultation.

(B) Subject to the requirements of this section, the guidelines, and any vendor contract, initial implementation of this section within each fixed pedestal zone shall begin promptly after the Director establishes that zone. All aspects of initial implementation that require information contained in a survey, including the selection of fixed pedestal unit locations or the initial allocation of space in fixed pedestal units to historically present publications, shall only occur on the basis of a survey that was completed no more than twenty-four (24) months earlier.

(C) Not later than twelve (12) months after the Director first implements this section pursuant to subsection 184.12(l), and at least once every two (2) years thereafter, the Director shall issue a report in writing to the Board of Supervisors. This report shall address the implementation of this section, inform the Board of the effectiveness of the existing Fixed Pedestal Zones, and make any recommendations and include proposed legislation regarding changes that the Director believes are necessary, including, without limitation, any changes believed necessary to ensure that publications that did not receive space in fixed pedestal units in initial implementation are subsequently able to receive such space.

(g) **LOCATIONS AND PLACEMENT OF FIXED PEDESTAL UNITS.**

(1) **General.**

(A) All fixed pedestal units within a designated fixed pedestal zone shall be of a design designated by the Director and approved by the Art Commission pursuant to its authority under City Charter Section 5.103. The Director shall consider the factors set forth in subsection 184.12(a)(5) in selecting designs for fixed pedestal units.

(B) The Director shall monitor the installation and maintenance of fixed pedestal units and newsrack boxes in fixed pedestal zones.

(2) **Selection of Fixed Pedestal Unit Locations.**

(A) **Initial Units.** During initial implementation in each fixed pedestal zone, the locations of fixed pedestal units in that zone shall be selected, so that to the extent reasonably possible and in compliance with this section and the guidelines, (i) publications that are historically present at corner areas (as defined in Section 184.12(b)(10)) may receive space in fixed pedestal units located in that zone as close as reasonably possible to, and no more than seven feet (7') from, the curb corner, excluding space taken up by intervening street furniture; (ii) publications that are historically present at midblock areas (as defined in Section 184.12(b)(10)) may receive space in fixed pedestal units in that zone located as close as possible to the midblock locations of their former freestanding newsracks; and (iii) the number of newsrack boxes at each fixed pedestal unit location equals the number of freestanding newsracks historically present at each such location. Notwithstanding the foregoing sentence, initial implementation, including the selection (fixed pedestal unit locations, in a fixed pedestal zone may occur even if the objectives stated subsections (i),(ii), and/or (iii) of the foregoing sentence cannot be wholly achieved, in which case those objectives will be achieved to the extent reasonably possible consistent with this section and the guidelines. Fixed pedestal unit locations shall be selected in accordance with the requirements of the guidelines and with the following requirements:

(i) Each publication shall have a reasonable opportunity to submit a proposal (a "plan") to the Director proposing fixed pedestal units at locations situated pursuant to Section 184.12(g)(2)(A), at which the publication is historically present within the fixed pedestal zone, according to the survey. If at least three-quarters (¾) of the publications that are historically present at a location in the survey do not collectively submit a single plan concerning that location, the Director may select a location or locations for fixed pedestal units to replace the freestanding newsracks at that location in accordance with Section