# EXHIBIT K-1

# GUIDELINES REGARDING REGULATION OF NEWS RACKS

### Current as of November 2, 2005

City and County of San Francisco

Department of Public Works
Bureau of Street-Use and Mapping
875 Stevenson Street, Room 460
San Francisco, CA 94103

# TABLE OF CONTENTS

I.     AUTHORITY

II.    PROMULGATION AND ADOPTION OF GUIDELINES

III.   DEFINITIONS

IV.    PLACEMENT, SIZE, CONSTRUCTION, DESIGN, METHODS OF
       ATTACHMENT, APPEARANCE, AND MAINTENANCE OF
       FIXED PEDESTAL UNITS

       A.    Placement

       B.    Methods of Attachment

       C.    Size, Construction, Design, and Appearance

       D.    Maintenance of Fixed Pedestal Units

V.     ESTABLISHMENT OF FIXED PEDESTAL ZONES AND
       IMPLEMENTATION AREAS

       A.    Process

       B.    Amendment of Fixed Pedestal Zones and Implementation
             Areas

VI.    LOCATIONS OF FIXED PEDESTAL UNITS

       A.    Selection of Locations During Initial Implementation

       B.    Selection of Locations During Initial Implementation in the
             Advertising Zone

       C.    Selection of Locations for Petition Units

       D.    Selection of Locations for Relocated Units; Reconfiguration of
             Zone

       E.    Reserve Units

       F.    Maximum Density Levels

VII.   IMPLEMENTATION AND COMPLIANCE

       A.    Initial Implementation and Compliance Dates

VIII.  ALLOCATION OF SPACE IN FIXED PEDESTAL UNITS

       A.    Procedures for Allocating Space in Fixed Pedestal Units
             During Initial Implementation, in Petition Units, and in
             Relocated Units

    B.    **Voluntary Space Allocation Agreement Procedures**

    C.    **Allocation of Space Without Voluntary Space Allocation Agreements**

    D.    **Split Newsrack Box Procedures**

    E.    **Giving Notice of Available Newsrack Box Space**

    F.    **Reassigning Space in Available Newsrack Boxes**

**IX.   ACCESS TO FIXED PEDESTAL UNITS**

    A.    **Applications For Fixed Pedestal Permits**

    B.    **Grant or Denial of Applications For Fixed Pedestal Permits**

    C.    **Administrative Review of Fixed Pedestal Permit Decisions**

    D.    **Judicial Review of Fixed Pedestal Permit Decisions**

    E.    **Withdrawal of Fixed Pedestal Permits**

**X.    INSTALLATION PERMITS**

    A.    **Installation Permit Requirements**

    B.    **Preliminary Approval of Locations Proposed in Installation Permit Applications**

    C.    **Final Approval of Installation Permit Applications**

**XI.   MISCELLANEOUS PROVISIONS**

    A.    **Newsrack Advisory Committee Meetings**

    B.    **Address for Notice**

    C.    **Severability**

## I.     AUTHORITY

(1)     Pursuant to Article 5.4, Section 184.12 of the San Francisco Public Works Code ("Section 184.12"), the Director of the Department of Public Works (the "Director") hereby adopts guidelines regarding the placement, size, construction, design, methods of attachment, and appearance of fixed pedestal units and newsrack boxes in fixed pedestal zones, including maximum density levels for fixed pedestal units in such zones, and the procedures for establishing or amending fixed pedestal zones, determining the number and placement of fixed pedestal units in fixed pedestal zones, determining access by publications to fixed pedestal units, allocating space in fixed pedestal units, and obtaining fixed pedestal permits.

## II.    PROMULGATION AND ADOPTION OF GUIDELINES

(1)     In promulgating and adopting these guidelines, the Director has been mindful of, and has made decisions consistent with, the purpose and intent of Article 5.4, Section 184.12 of the San Francisco Public Works Code, as more fully set forth in Section 184.12(a)(5).

(2)     30 days before promulgating and adopting these guidelines, pursuant to Section 184.12(d)(2), the Director published notice in the City's official newspaper of the Director's intent to adopt the guidelines, and made copies of the proposed guidelines available to the public upon request.

(3)     In promulgating and adopting these guidelines, the Director did not consider the content or viewpoint of the material to be distributed through fixed pedestal units, and did not consider the potential impact on advertising revenues, if any, of the vendor.

(4)     Except as otherwise provided herein, in amending these guidelines, the Director shall consider and make decisions consistent with Section 184.12, including but not limited to Section 184.12(a)(5); shall give due consideration to recommendations of the Newsrack Advisory Committee; shall publish notice of his/her intent to amend the guidelines pursuant to Section 184.12(d)(2); shall not consider the content or viewpoint of the material to be distributed through fixed pedestal units; and shall not consider the potential impact on advertising revenues, if any, of the vendor.

## III.   DEFINITIONS

The definitions contained in San Francisco Public Works Code Article 5.4, Section 184.1 (where not inconsistent with the definitions in Section 184.12(b)) and Section 184.12(b) shall apply to these guidelines. The additional definitions contained in these guidelines shall apply except to the extent such definitions are not consistent with Section 184.12(b).

(1)     "Advertising zone" means that portion of the City that is bounded:

a.      On the south by the southerly line of Berry Street (including the sidewalk located along the south side of Berry Street);

- 3 -

b.      On the west by the westerly line of Polk Street (including the sidewalk located along the west side of Polk Street), extended north to San Francisco Bay; and

c.      On the north and east by the shoreline of the San Francisco Bay,

subject to any modifications pursuant to the terms of any vendor contract.

(2)      "Available newsrack box" means a previously allocated and/or previously occupied newsrack box, or any other newsrack box located in an already installed and operating fixed pedestal unit, that is or becomes available for any reason.

(3)      "Block face" means the sidewalk between, and including, two contiguous curb corners without an intervening street or other roadway.

(4)      "City" means City and County of San Francisco.

(5)      A "cluster of fixed pedestal units" means two or more fixed pedestal units located such that each unit is within twenty-five feet (25') of another unit on the same block face. Unless these guidelines state otherwise or the context requires otherwise, references to fixed pedestal units in these guidelines include clusters of fixed pedestal units.

(6)      "Compliance date" means a date at least ninety (90) days from the initial implementation date, by which all fixed pedestal units in an implementation area within a fixed pedestal zone shall be in compliance with Section 184.12 and these guidelines, and by which all free-standing newsracks and unauthorized fixed pedestal units shall be removed from the implementation area.

(7)      "Effective date" means the date that is published in the City's official newspaper pursuant to Section 184.12(d)(1)(C) as the date that these guidelines will be in effect. On the effective date, Section 184.12 may be implemented and enforced.

(8)      "Initial implementation date" means the date on which the Director, after giving the notice required under Section 184.12(l) and these guidelines, may authorize the Vendor to install fixed pedestal units for which the Vendor has obtained the permits and approvals required under the Contract in an implementation area within a fixed pedestal zone.

(9)      "Outdated issue," for purposes of Section 184.12(b)(1), means an issue of a publication that remains in a newsrack box in a fixed pedestal unit more than seven days after the next issue of the publication is published.

(10)    "Qualified applicant" means:

a.      with respect to a particular fixed pedestal unit that is not already installed and operating, a publication that has submitted a qualified application for a fixed pedestal permit for space in a newsrack box within that unit.

b.      with respect to an available newsrack box in an already installed and operating fixed pedestal unit, a publication that has submitted a qualified application for space in that available newsrack box that is being reassigned.

- 4 -

(11)    "Qualified application" means an application for a fixed pedestal permit that satisfies the requirements for issuance of fixed pedestal permits contained in subsection 184.12(e) and these guidelines, excluding the requirement that space in the newsrack box that is the subject of the application be available after application of the space allocation procedures set forth in subsection 184.12(h) and the guidelines.

(12)    "Section 184.12" (or any subsection thereof) or "the Ordinance" means Article 5.4, Section 184.12 of the San Francisco Public Works Code.

(13)    An "unobstructed location" for a fixed pedestal unit means a location where the back side of the unit faces the street, is no more than three (3) feet from the curb, and is not facing a building wall, fence, railing, BART/Muni station entrance wall, or other item that would obscure part of an advertising panel placed on the back of the unit.

(14)    "Vendor" means Clear Channel Adshel, Inc., as well as any other vendor that has contracted with the City pursuant to Section 184.12(d)(3).

(15)    "Vendor contract" means the "First Amended and Restated Pedestal-Mounted Newsrack Agreement By and Between the City and County of San Francisco and Clear Channel Adshel Inc.," or any similar agreement between the City and any vendor pursuant to Section 184.12(d)(3).

(16)    "Voluntary space allocation agreement" means a voluntary, written agreement among all qualified applicants seeking access to a particular fixed pedestal unit that is not already installed and operating.  A voluntary space allocation agreement may allocate space within some or all of the fixed pedestal units that comprise a clustered fixed pedestal unit.

## IV.    PLACEMENT, SIZE, CONSTRUCTION, DESIGN, METHODS OF ATTACHMENT, APPEARANCE, AND MAINTENANCE OF FIXED PEDESTAL UNITS

Based on the considerations and in the manner set forth in Section II of these guidelines, the Director has decided that the following requirements shall apply to the placement, size, construction, design, methods of attachment, appearance, and maintenance of fixed pedestal units and clusters of fixed pedestal units.  These requirements are intended to be consistent with and to supplement (not replace) the responsibilities, specifications and requirements contained in Section 184.12(d)(3), Section 184.12(i), and to operate in conjunction with the vendor contract.

The "First Amended and Restated Pedestal-Mounted Newsrack Agreement By and Between the City and County of San Francisco and Clear Channel Adshel Inc." current as of the date the guidelines become effective satisfies the current requirements of these guidelines concerning vendor contracts.  In the event of any disagreement, interpretive issue, ambiguity, or silence in respect to the terms of these guidelines or that agreement, the agreement controls the rights and obligations of the Contractor under said agreement, except as to any amendment, modification or supplement to either or both documents, and said Contractor's fulfillment of the current provisions of that

- 5 -

agreement shall constitute compliance with the current requirements of these guidelines.

### A.     Placement

(1)     Except as otherwise provided in Section VI.B(2), a fixed pedestal unit or cluster of fixed pedestal units shall not be installed, used or maintained within or on any:

a.     Public street, roadway, or MUNI passenger loading platform.

b.     Location that presents a danger to persons or property.

c.     Location that unreasonably interferes with or impedes the flow of pedestrian or vehicular traffic or the ingress into or egress from any residence or place of business.

d.     Blue zone or curb ramp.

e.     Any defined bus stop zone operated or used by MUNI and/or any other transit agency, except for within the last fifteen (15) feet of the zone.

f.     Color curb parking zone, except that a single fixed pedestal unit, not exceeding 6' 6" in total length, may be installed, used or maintained within a

(i)     commercial loading zone (yellow),

(ii)     special truck loading zone (yellow and black),

(iii)     passenger zone (white), or

(iv)     short term parking zone (green).

g.     Sidewalk access cover (e.g., utility cover, street lighting cover, or other such cover).

h.     Sidewalk where the width remaining for safe pedestrian passage after installation of the fixed pedestal unit or cluster of fixed pedestal units would be less that five (5) feet.

i.     Location that would violate the maximum density levels for fixed pedestal units in fixed pedestal zones established in these guidelines.

j.     Curb return.

(2)     Except as otherwise provided in Section VI.B(2), a fixed pedestal unit or cluster of fixed pedestal units shall not be installed, used or maintained less than:

a.     Five (5) feet from any:

(i)      ATM;

(ii)     curb in any bus zone;

(iii)    curb ramp;

(iv)    doorway;

(v)     driveway;

(vi)    fire hydrant;

(vii)   fire call box, police call box or other emergency facility;

(viii)  fire escape when the fire escape extends to the sidewalk surface;

(ix)    flower stand;

(x)     sidewalk elevator;

(xi)    subway entrance;

(xii)   newsstand or kiosk (e.g., news kiosk or other kiosk). This five foot (5') restriction applies to any kiosk, with or without an advertising panel or display, regardless of whether an advertising display is located upon the adjacent fixed pedestal unit.

(xiii)  public toilet;

(xiv)  street or sidewalk furniture;

(xv)   transit shelter or shelter kiosk;

(xvi)  certified street artist's designated area; or

(xvii) public phone.

b.   Two (2) feet from any:

(i)      curb;

(ii)     mailbox, letter receptacle, or mail storage box;

(iii)    parking meter;

(iv)    pole (MUNI, utility, traffic or street sign);

(v)     trash receptacle;

(vi)    operational building feature (e.g., a standpipe,

mail slot, night deposit slot, commercial window
display, or similar feature); or

(vii)     tree well or planter box.

c.     Six inches from any:

(i)     building wall.

(3)     Where a fixed pedestal unit is installed on the side of a sidewalk
that is closest to the curb rather than to the building or property line, such unit
shall be installed no more than three feet (3') from the curb, except as prohibited
by Section 184.12 or these guidelines.

(4)     Each fixed pedestal unit or cluster of fixed pedestal units must be
located on a level area not to exceed two percent (2%) slope in any direction.  A
clear level area in front of the fixed pedestal unit or clustered fixed pedestal unit
shall be provided measuring sixty inches (60") perpendicular to the unit and
extending the full width of the unit.  Alternate ground area conditions must be
approved by the Director, in consultation with the Department of Public Works'
Disability Access Coordinator, and shall be approved when physical constraints
make access technically infeasible and equivalent facilitation may be achieved.

**B.     Methods of Attachment**

(1)     In addition to the specifications and requirements of the vendor
contract, the methods of attachment for a fixed pedestal unit on a public sidewalk
shall be as follows:

a.     The vendor shall use a "drop-in" three-quarter (3/4) inch
stainless steel anchor bolt.  The vendor shall take necessary
precautions not to break the waterproof membrane.

b.     The vendor shall not allow the hole for the anchor bolt to
exceed a two (2) inch penetration into the concrete from the
sidewalk surface in areas where a sub-sidewalk basement is
present, but the required depth of penetration shall be at least
four (4) inches in all other areas.

c.     The vendor shall ensure that the waterproof membrane over
sub-sidewalk basements is not affected by the installation of a
fixed pedestal unit.

d.     The vendor shall repair any damage to public or private
property and facilities caused by the installation of a fixed
pedestal unit.

e.     To permanently remove a fixed pedestal unit, the vendor shall
remove the anchors by removing and replacing the entire
sidewalk square in full conformance with the requirements of
Article 14, Section 703 of the San Francisco Public Works
Code.

f.     Alternate methods of attachment may be approved by the
Director if the Director determines, and the vendor ensures,

that the alternate methods of attachment provide equivalent protections to public and private property and facilities to the protections set forth in subparagraphs (b)-(e), above.

**C.    Size, Construction, Design, and Appearance**

(1)    No fixed pedestal unit shall contain less than six (6) or more than ten (10) newsrack boxes.  For purposes of determining the minimum and maximum size of a fixed pedestal unit, a full-sized newsrack box that has been split shall count as a single newsrack box.

(2)    The total height of a fixed pedestal unit shall not exceed fifty-four inches (54").

(3)    Every fixed pedestal unit shall conform to the requirements of the California Code of Regulations, Title 24 ("Title 24"), and the Americans with Disabilities Act ("ADA").  The top of the operating handle (which opens the door to a newsrack box and is the highest operable part of the fixed pedestal unit) shall be no higher than forty-eight inches (48") above the ground level.  This dimension is based on a front approach, with a sixty (60) inch clear space in front of the fixed pedestal unit, as defined in Title 24 and the ADA.  All operable parts of the fixed pedestal unit shall be operable with one hand, and shall not require tight grasping, pinching, or twisting of the wrist.  The force required to open the newsrack box door or operate the coin return shall not exceed five (5) pounds of force.

(4)    The vendor shall install a face plate on the front of each newsrack box that is not a split newsrack box.  At or before the time it applies for a fixed pedestal permit for a non-split newsrack box in that fixed pedestal unit or cluster of fixed pedestal units, each publication shall provide the Director with camera-ready black and white art, in number and format consistent with the requirements of the vendor contract, depicting the contents of the face plate, which contents must include the clear and readily legible publication contact information described in subsection (4)c, below.  Each face plate:

a.    shall be of a uniform size approximately 3-3/4 inches high and 5-3/8 inches wide;

b.    shall contain only such colors as are permitted by the Director in accordance with the terms of a vendor contract;

c.    shall, at a minimum, display the publication's name, street address (Post Office Box numbers are not acceptable), and telephone number, displayed in a clear and readily legible manner ("publication contact information");

d.    may, in addition to and without obscuring the publication contact information described in subsection (3)c. immediately above, display such other information as the publication chooses, in a format of the publication's choice, subject to Section 184.12(i)(2)(D);

e.    shall be prepared by, and at the cost of, the vendor; and

- 9 -

    f.    shall be in addition to, and shall be placed so as not to obscure, the publication's name (as described in subsection (6), below), if the publication elects to have its name displayed on the front of its newsrack box pursuant to that subsection.

    (5)    On each door of each split newsrack box, subject to Section VIII.D.(3) of these guidelines, the vendor shall display the name, street address (Post Office Box numbers are not acceptable), and telephone number ("publication contact information") of the publication authorized to occupy that half of the split newsrack box.  Subject to Section VIII.D.(3) of these guidelines, each publication applying for a fixed pedestal permit to occupy a split newsrack box in that fixed pedestal unit or cluster of fixed pedestal units shall, at or before the time it so applies, provide the Director with camera-ready black and white art, in number and format consistent with the requirements of the vendor contract, depicting, at a minimum, such publication contact information, displayed in a clear and readily legible manner.  Such black and white art may also depict the publication's name in a typeface of its choice, displayed so as not to obscure the publication contact information, if the publication elects to have its name displayed on the front of its newsrack box pursuant to subsection (6), below.  The area for the display of the publication contact information and the publication name in a typeface of its choice, if any, shall not exceed approximately 8-1/8 inches by 7/8 inches.

    (6)    A publication that has obtained a fixed pedestal permit for, or is otherwise authorized to occupy, a newsrack box in a fixed pedestal unit or cluster of fixed pedestal units may, at the publication's sole option, have its name displayed in a typeface of its own choice on the bottom of the door to the newsrack box, below the window in the door, as well as on the sides of the fixed pedestal unit, and on the back of the unit if the unit does not display advertising, provided that:

    a.    At or before the time it applied for space in the fixed pedestal unit (or, in the case of a single-publisher split box, at or before the time the primary publication applied for space in the newsrack box), the publication provided the Director with black and white camera-ready art, in number and format consistent with the requirements of the vendor contract, depicting the name of the publication.  The vendor shall display each such name on the fixed pedestal unit in conformity with Section IV.(C) of these guidelines.

    b.    No portion of the name of the publication that is displayed on the door of the newsrack box shall extend beyond the left or right sides of the window in the door to the newsrack box.

    c.    Each publication name shall be displayed with standardized letter sizing and spacing.  As displayed on newsrack box doors, publication names (or, in the case of a split door newsrack box, the combination of the publication name and publication contact information described in subsection (5), above) shall not exceed approximately the following width and height:

(i)     For broadsheet publications, 14 inches by 1 inch.

(ii)    For tabloid publications, 14 inches by 1 inch.

(iii)   For publications in a newsrack box with split (two) doors, 8 1/8 inches by 7/8 inches.

d.      Publication names shall be displayed only in such colors as are permitted by the Director in accordance with the terms of a vendor contract.

e.      The display of the name of a secondary publication in a single-publisher split box shall be governed by Subsection VIII.D.(3) of these guidelines.

(7)     Upon at least 90 days' written notice, the vendor shall, at its own cost, make changes to a face plate as required by a change in the price of the publication distributed from the newsrack box to which that face plate is attached. Any other changes to a given publication's information displayed on the exterior of a fixed pedestal unit, including trade dress and contact information, shall be made no more than once per twelve month period, and only after the publication has paid the vendor its costs associated with such change.

(8)     A publication that has obtained a fixed pedestal permit for a newsrack box in a fixed pedestal unit or cluster of fixed pedestal units may, at the publication's option, place a display card that fits entirely inside the window in the door to the newsrack box for the purpose of advertising, displaying, selling, or distributing the publication contained in the newsrack box.  The publication shall be solely responsible for the appearance and condition of the display card.

(9)     In addition to the requirements contained in these guidelines, the size, construction, design, maintenance, and appearance of newsrack boxes, fixed pedestal units and clusters of fixed pedestal units shall conform to Sections 184.12(d)(3), 184.12(f)(3) and 184.12(g), as well as to the specifications and requirements contained in any vendor contract.

(10)    Neither the City nor the vendor shall compile, use, or disseminate to any person any publishers' proprietary information concerning sales or distribution from any newsrack box in any fixed pedestal unit.  This subsection shall not affect the City's right to the extent necessary to verify that fixed pedestal units and newsrack boxes are maintained and used in compliance with Section 184.12 and these guidelines.

(11)    With the exception of a publication that is a secondary occupant of a single-publisher split box, each publication that has obtained a fixed pedestal permit for a newsrack box shall maintain that box in current use so that it does not become an abandoned newsrack box under Section 184.12(b)(1).  Failure to comply with this requirement shall constitute a violation of these guidelines.  The Director will act promptly and diligently to respond to such violations to ensure that space in fixed pedestal units is made available to publications that will properly use such space, including publications that did not receive space in the initial space allocation process.  For purposes of determining when a newsrack box contains only outdated issues or otherwise constitutes an abandoned newsrack box, the Director shall act in a manner which promotes substantial

- 11 -

fairness and which appropriately considers the frequency with which the publication occupying that newsrack box is published. In making such a determination, the Director shall not consider the content or viewpoint of that publication, or of any other publication to which the space in that newsrack box might be reassigned.

**D.    Maintenance of Fixed Pedestal Units**

(1)    Each vendor contract shall:

    a.    Provide for streetworthy fixed pedestal units and prompt and effective maintenance, repair, and replacement of such units.

    b.    Specify reasonable conditions under which paid publications may, at their election, have the vendor assume responsibility for repair, maintenance, or replacement of coin mechanisms and associated hardware located in newsrack boxes they occupy.

    c.    Specify reasonable conditions under which paid publications may, at their election, be allowed to opt out of vendor responsibility for repair, maintenance, or replacement of coin mechanisms and associated hardware located in newsrack boxes they occupy, after having previously elected to have the vendor assume such responsibility.

    d.    Specify reasonable conditions under which publications shall have the right to repair, maintain, replace, or otherwise engage in self help, as to newsrack boxes they occupy, and obtain reimbursement for certain repairs, maintenance or replacement.

    e.    Provide for installation of reasonable security features to protect the integrity of the fixed pedestal unit, including any coin mechanisms and associated hardware.

    f.    Require the vendor to make available to each publication, reasonably promptly, information received by the vendor concerning any damage to newsrack boxes occupied by that publication.

    g.    Allow a paid publication to change the coin mechanism in newsrack boxes it occupies, subject to reasonable notice and procedures.

(2)    Each permitholder shall:

    a.    If the permitholder changes the original keying of any lock associated with a newsrack box it occupies, allow the vendor to purchase the new keys, except for the newsrack box coin tray key, at the vendor's expense, from the key supplier.

b.    Cooperate with the vendor to enable the vendor to timely remove a coin mechanism from the newsrack box the permitholder occupies, if such removal is required for the vendor's repair and/or replacement of the fixed pedestal unit.

c.    To the extent a publication replaces the coin mechanism and related hardware installed by the vendor with parts installed by the publication, pursuant to a vendor contract,

i.    promptly return such vendor-installed parts to the vendor;

ii.   install only such replacement parts as are compatible with the mechanism housing of the newsrack box, so that the replacement mechanism is in line with the face plate; and

iii.  remove such publisher-installed replacement parts as reasonably necessary for the vendor to perform its contractual obligations. Notwithstanding Section 184.12(i)(3), a publication's failure to comply with this requirement shall constitute authorization for the Director and/or the vendor to remove such publisher-installed replacement parts.

d.    To the extent a publication retains or assumes responsibility for, or is otherwise responsible for, the maintenance, repair, or replacement of any component(s) of a newsrack box it occupies, including a coin mechanism or associated hardware and/or newsrack box door functionality related to such coin mechanism or associated hardware, in accordance with the terms of any vendor contract, that publication shall ensure that all such component(s) are maintained in good working order at all times.

# V.    ESTABLISHMENT OF FIXED PEDESTAL ZONES AND IMPLEMENTATION AREAS

## A.    Process

(1)    Upon the effective date of these guidelines, the Director may establish one or more fixed pedestal zones and one or more initial implementation areas within each zone.

(2)    The Director shall establish fixed pedestal zones in compliance with the purpose and intent of Section 184.12 and with subsection 184.12(f)(3)(A), and after taking into consideration the following:

a.    The purpose and intent of Section 184.12 as more fully set forth in Section 184.12(a)(5).

b.    The results of a survey of each proposed fixed pedestal zone. No area shall be designated a fixed pedestal zone

- 13 -

until it has been surveyed and that survey made publicly available.

    c.    The factors set forth in Section 184.12(d)(1)(B).

    d.    The requirements of Section 184.12 and these guidelines regarding placement of fixed pedestal units and clusters of fixed pedestal units.

    e.    The recommendations, if any, of the Newsrack Advisory Committee.

    f.    The public comment, if any, received at, or the written comments received before, a public hearing duly-noticed by the Director held for this purpose. In the notice of the public hearing, the Director shall identify the proposed fixed pedestal zone(s).

    (3)    Consistent with subsection 184.12(f) and these guidelines, the initial fixed pedestal zones shall be established within areas of the City drawn from the following list: Columbus Avenue, the Embarcadero, the Financial District, Fisherman's Wharf, Market Street, Mission Street/South of Market, North Beach, Polk Street, Union Square, Washington Square.

    (4)    The notice of the public hearing shall state that persons unable to attend the hearing may submit written comments before the hearing, which will be brought to the attention of the hearing officer(s) and made a part of the official record. The notice shall include the address to which such comments should be submitted and a telephone number that interested persons may call to request further information.

    (5) The Director also shall provide notice of the public hearing to interested City departments and agencies, including MUNI, the Department of Parking and Traffic, and the Planning Department.

    (6)    When establishing a fixed pedestal zone and initial implementation area, and determining the location of a fixed pedestal unit or cluster of fixed pedestal units, the Director may not consider the potential impact on advertising revenues, if any, of the vendor.

    (7)    When establishing a fixed pedestal zone and initial implementation area, and determining the location of a fixed pedestal unit or clustered fixed pedestal unit, the Director may not consider the content or viewpoint of the material to be distributed through fixed pedestal units or clustered fixed pedestal units in the proposed zone or implementation area, or the content or viewpoint of material currently or historically distributed in the proposed zone or implementation area, whether by free-standing newsracks, news kiosks or other means.

    (8)    Within thirty (30) days of establishing one or more fixed pedestal zones, the Director shall publish notice of his/her intent to amend the guidelines pursuant to Section 184.12(d)(2) to include as an Appendix a map showing, or other description of, the boundaries of each fixed pedestal zone.

### B.    Amendment of Fixed Pedestal Zones and Implementation Areas

(1)    To amend the boundaries of a previously-established fixed pedestal zone in order to bring additional area(s) of the City within that zone, , the Director shall follow the procedures set forth in Subsection (A) above.  Notwithstanding the foregoing, the Director is not required to follow such procedures before amending, or in connection with the amendment of, a previously-established fixed pedestal zone that is amended pursuant to Subsection 184.12(f)(3)(A)(iii).

(2)    To the extent that Section 184.12 or these guidelines requires the Director to reconfigure a fixed pedestal zone so that one or more area(s) of the City which were previously included within the zone are no longer included within it, the Director is not required to follow the procedures contained in subsection A, above, before or in connection with such reconfiguration.

(3)    When amending a previously-established fixed pedestal zone, the Director may not consider the potential impact on advertising revenues, if any, of the vendor.

(4)    When amending a previously-established fixed pedestal zone, the Director may not consider the content or viewpoint of the material to be distributed through fixed pedestal units or clustered fixed pedestal units in the zone or implementation area, or the content or viewpoint of material currently or historically distributed in the zone or implementation area, whether by free-standing newsracks, news kiosks or other means.

## VI.    LOCATIONS OF FIXED PEDESTAL UNITS

### A.    Selection of Locations During Initial Implementation

During initial implementation, locations for fixed pedestal units shall be selected in accordance with subsection 184.12(g)(2)(A), and with the following requirements:

(1)    The Director shall conduct a survey.  In performing each survey, the Director (i) shall consider each freestanding newsrack to be historically present at a corner area if the Director reasonably estimates, without performing any actual measurement, that that freestanding newsrack is situated within thirty-five feet (35') of the inside edge of the curb corner on that block face unless there is one or more items of street furniture, utilities, or other fixed obstructions (except freestanding newsracks) within that thirty-five feet (35'), in which case the applicable estimated distance shall be fifty feet (50'); and (ii) shall consider any freestanding newsrack that is not at a corner area to be at a mid-block area.  Notwithstanding the foregoing sentence, the Director shall not survey, and shall not consider to be historically present, any freestanding newsracks that are illegally placed in a manner that renders them not "situated" under Section 184.12(b)(10).  Each survey shall determine, within the area surveyed, the publications which, to the extent possible and in compliance with this section and the guidelines, shall be allocated space in initial implementation in fixed pedestal units at the area surveyed on the basis of historical presence at such locations.

(2)    Each historically present publication may submit to the Director a plan containing proposed locations and sizes for some or all of the fixed pedestal

units, pursuant to Section 184.12(g)(2)(A), to be installed in that zone during initial implementation at locations where that publication is historically present. The intention of each such plan shall be to provide sufficient distribution space in fixed pedestal units within that zone to accommodate each historically present publication in that zone at locations as close as possible to the locations of freestanding newsracks shown in the survey, consistent with Section 184.12 and these guidelines. Each such plan must meet the following requirements:

    a.    The plan must be in writing.

    b.    The Director must receive the plan within thirty (30) days of establishing the zone. If it is a revised plan submitted following the Director's rejection of an original publications' plan, the Director must receive it within ten (10) days after sending written notice of such rejection.

    c.    The plan must list the size and location of each proposed fixed pedestal unit with sufficient specificity to allow the Director to determine whether the plan complies with all locational requirements of Section 184.12 and these guidelines.

    d.    The plan must include the name of each publication, as well as the name, e-mail address, mailing address, and telephone number of each individual representing that publication, that is submitting the plan.

    e.    The plan must include the name, e-mail address, mailing address, and facsimile and telephone numbers of a single individual who shall act on behalf of the publications submitting the plan for purposes of communications with the Director concerning the plan.

    f.    If the plan contains proposed locations for fixed pedestal units within the the advertising zone, such locations shall comply with subsection VI.(B) of these guidelines.

    (3)    If the Director receives a single plan submitted by at least three-quarters (3/4) of those publications that are historically present at each historical location addressed in the plan, he shall promptly make such plan publicly available, and publish notice of its availability in the City's official newspaper.

    (4)    If the Director does not receive such a plan for a historical corner or midblock area in the zone, he shall prepare a plan containing proposed location(s) and size(s) for fixed pedestal units to be installed at such historical corner and midblock areas in the zone that complies with the intent and requirements of subsection VI.A.2, above, and with all requirements of Section 184.12, the vendor contract, and these guidelines concerning fixed pedestal unit locations ("fixed pedestal unit locational requirements"). (Thus, for example, if three quarters (3/4) of those publications historically present at a corner area in the zone cannot agree on the placement of a fixed pedestal unit at the corner area, but three-quarters (3/4) of those publications historically present at a midblock area in the zone can agree on the placement of a fixed pedestal unit at a midblock area, the Director will publish notice of the submitted plan for the

- 16 -

midblock area and publish notice of his own plan regarding the corner location.) The Director shall prepare such plan after taking into consideration the factors listed at subsection V.A.(2) of these guidelines, except subsections (e) and (f) thereof.  The Director shall promptly make that plan publicly available and publish notice of its availability in the City's official newspaper.

(5)     Promptly after the publication of any notice(s) referred to in subsection VI.A.(3) or VI.A.(4), as appropriate, the Newsrack Advisory Committee shall hold a noticed public meeting to consider any plan(s) submitted by at least three-quarters (3/4) of the historically present publications at each of the locations specified in such plan(s), and the Director's plan(s) if applicable. After considering any comments received at that meeting, including comments by publications other than those that are historically present at those locations, and after considering the recommendations, if any, of the Newsrack Advisory Committee, the Director shall either adopt, modify, or reject the plan within ten (10) days after the meeting.

(6)     The Director may modify or reject a single plan collectively submitted by at least three-quarters (3/4) of publications that are historically present at each location specified in the plan, where such plan meets the requirements of subsection VI.A.(2) of these guidelines, only if the plan does not comply with all requirements of Section 184.12 and the guidelines concerning fixed pedestal unit locations.  If the Director modifies or rejects a plan submitted by such publications, he shall notify the interested publications' designated representative of the reasons for such decision promptly and in writing, citing the relevant portions of Section 184.12 or these guidelines.

(7)     The publications that submitted a plan, and that comprise at least three-quarters (3/4) of the publications that are historically present at each location specified in the plan, may submit a revised plan to respond to the Director's notice of modification or rejection.  The Director must receive any such revised plan within ten (10) days after sending such notice.

a.     If the Director receives a revised plan that meets the requirements of subsection VI.A.(2) of these guidelines, he shall adopt, modify, or reject it within ten (10) days after such receipt.  The Director may modify or reject it only if the revised plan does not comply with all requirements of Section 184.12 and the guidelines concerning fixed pedestal unit locations.  If the Director modifies or rejects a revised plan submitted by such publications, he shall notify the publications' designated representative of the reasons for such decision promptly and in writing, citing the relevant portions of Section 184.12 or these guidelines.

b.     If the group of publications that submitted a plan, submitted a revised plan, and constitute at least three-quarters (3/4) of publications that are historically present at each location specified in the plan do not agree with the Director's modification or rejection of the revised plan, those publications must notify the Director that they wish to submit the dispute to the Newsrack Advisory Committee.  The Director must receive such notification, in writing, within ten (10) business days after the date he sent written notice of his modification or rejection of the publishers' revised plan.  If

- 17 -