# EXHIBIT K-2

the Director does not receive such a timely request for review by the Newsrack Advisory Committee, (i) he may modify the original or revised plan as necessary to meet the intent and requirements of Section 184.12 and these guidelines, and adopt the plan as modified; (ii) any such modification shall be in writing and shall cite the relevant portion(s) of Section 184.12 and/or these guidelines; and (iii) neither that plan nor the implementation thereof shall be subject to further review.

c.    If the Director does receive a timely request for review by the Newsrack Advisory Committee from the group of publications that submitted a plan, submitted a revised plan, and constitute at least three-quarters (3/4) of publications that are historically present at each location specified in the plan, the Newsrack Advisory Committee shall promptly determine the sizes and locations of the fixed pedestal units in dispute. Any party that wishes to do so may bring a certified court reporter to the Newsrack Advisory Committee hearing to record a transcript of the hearing. The Committee's determination (or, if the Committee is not able to render a decision within 30 days of the notification described in the preceding sentence, the Director's most recent determination concerning the proposed locations) shall be the City's final administrative decision with respect to the matter.

8.    If the Director does not receive a revised plan from the interested publications that meets the requirements of subsection VI.A.(2) of these guidelines within 10 days of the Director's written notice, the Director may modify the publishers' original plan as necessary to meet the requirements of Section 184.12 and these guidelines concerning fixed pedestal unit locations, and adopt the plan as modified. Any such modification shall be in writing and shall cite the relevant portion(s) of Section 184.12 and/or these guidelines. Neither that plan, nor the implementation thereof, shall be subject to further review.

**B.    Selection of Locations During Initial Implementation In the Advertising Zone.**

The following requirements shall apply to the selection of fixed pedestal unit locations within the Advertising Zone during initial implementation:

(1)    Where freestanding newsracks in a particular corner or midblock area were principally located on the curb side, rather than the building side, of the sidewalk at the time of the most recently completed survey, such newsracks shall be replaced by fixed pedestal units at locations that are

a.    unobstructed;

b.    on the side of the sidewalk that is closest to the curb rather than to the building or property line; and

    c.    at, or as close as possible to, the locations of the freestanding newsracks being replaced, in compliance with Section 184.12 and these guidelines.

    (2)    Once the City has selected one hundred (100) final locations for fixed pedestal units that are obstructed, then:

    a.    no further fixed pedestal unit locations shall be selected that are obstructed, unless and until the City has selected sufficient final unobstructed locations for fixed pedestal units to satisfy the vendor contract's requirements concerning the number of such locations that must be selected.

    b.    Unobstructed locations for fixed pedestal units may be selected that are at least three feet (3'), rather than at least five feet (5'), from any ATM, flower stand, street or sidewalk furniture, or certified street artist's designated area, or that are at least one foot (1'), rather than at least two feet (2'), from any tree well or planter box, unless and until the City has selected sufficient final unobstructed locations for fixed pedestal units to satisfy the vendor contract's requirements concerning the number of such locations that must be selected.

## C.    Selection of Locations for Petition Units

    (1)    Pursuant to Section 184.12(g)(2)(B), any interested person may submit a petition to request the installation of an additional fixed pedestal unit at a location specified in the petition (a "petition"). A petition shall comply all requirements contained in Section 184.12(g)(2)(B) and with the following additional requirements:

    a.    Each such petition shall be in writing on a form approved by the Director.

    b.    Each such petition shall describe the requested location with sufficient specificity to allow the Director to determine whether that location complies with the locational requirements of Section 184.12 and these guidelines.

    (2)    No fixed pedestal unit shall be installed in response to a petition:

    a.    At any location which would violate the locational requirements of Section 184.12 or these guidelines, including maximum density levels.

    b.    If such installation would cause the total number of fixed pedestal units to exceed the number of fixed pedestal units available under any vendor contract.

    c.    On the side of the sidewalk closest to the building or property line rather than to the curb.

- 19 -

(3)     Within fifteen (15) days of receiving a properly completed petition requesting the installation of an additional fixed pedestal unit at a location that complies with the locational requirements of Section 184.12 and these guidelines, the Director shall publish notice that the petition has been received. Such notice shall state the location proposed by the petitioner, and shall state that interested publications may collectively submit a proposal for the location of that fixed pedestal unit to the Director within thirty (30) days.

(4)     If the Director, within thirty (30) days of the publication of the notice described in the immediately preceding paragraph, receives a proposal from three-quarters (3/4) of the interested publications concerning the location of the petition unit which complies with the requirements contained at subsection VI.(A)(2).a.-f., inclusive, of these guidelines, the location proposed in such proposal shall be the proposed location for purposes of location selection. If the Director does not receive such a proposal, the location proposed in the petition shall be the proposed location for purposes of location selection.

(5)     The location of the petition unit shall be determined by following, as closely as practicable, the procedures for selecting locations of initial fixed pedestal units set forth at subsection VI.(A)(3)-(6), inclusive, of these guidelines.

(6)     The selection of the location for a petition unit shall be subject to the vendor obtaining any permits and approvals required under these guidelines or the vendor contract.

(7)     In performing any activity relating to a petition, the Director may not consider:

    a.    The content or viewpoint of material that would or might be distributed from the unit requested in the petition.

    b.    The content or viewpoint of publications currently or historically distributed in the zone within which the unit would be located, whether by free-standing newsracks, fixed pedestal units, news kiosks or other means.

    c.    The potential impact on the vendor's advertising revenues, if any.

(8)     The Director shall not deny any petition that complies with section 184.12 and these guidelines on the ground that one or more fixed pedestal units are being held in reserve.

**D.    Selection of Locations for Relocated Units; Reconfiguration of Zone**

(1)     If the vendor removes or relocates a fixed pedestal unit pursuant to any provision in a vendor contract authorizing the vendor to initiate such removal or relocation based on excessive repair costs, the Director shall notify each affected publication reasonably promptly after he receives notice of the vendor's intent to remove or relocate. The Director shall reconfigure the Fixed Pedestal Zone to exclude an area sufficiently large to allow each publication that held a fixed pedestal permit relating to the removed or relocated unit at the time it was removed or relocated to place one freestanding newsrack at that location. All freestanding newsracks placed in that area must comply with all applicable legal requirements concerning such freestanding newsracks, including their location,

appearance, and condition. The area removed from the fixed pedestal zone shall be located at the immediate location from which the unit in question was removed or relocated, if possible consistent with the requirements of Section 184.12 and these guidelines, or shall otherwise be located as close as possible to that immediate location consistent with the requirements of Section 184.12 and these guidelines.

(2)    The Director shall maintain a list of potential locations at which a unit may be installed after it has been removed or relocated from its previous location pursuant to any such provision in a Vendor contract. The Director shall select such potential locations after taking into account the recommendations, if any, of the Newsrack Advisory Committee and interested members of the public, and based on the following criteria:

a.    All such potential locations shall comply with all locational criteria contained in Section 184.12 and these guidelines, including, if possible, maximum density levels.

b.    If possible, the list of potential locations shall include locations in each fixed pedestal zone, in numbers approximately proportional to the number of units already installed in each such zone.

c.    The list shall include locations within the advertising zone that are not obstructed.

(3)    When a fixed pedestal unit is removed or relocated pursuant to any provision of a vendor contract authorizing the vendor to initiate such removal or relocation based on excessive repair costs, the Director shall select a location from the list described in paragraph 2 of this subsection and shall instruct the vendor to install the relocated unit, or another of the same size and configuration, at that location. The location selected by the Director shall meet the following requirements:

a.    It shall be sufficiently far from the relocated unit's former location that, taking into account the nature of the vandalism or other event(s) that triggered relocation of the unit, the Director reasonably expects that those events will not be repeated to a comparable degree.

b.    It shall be within the advertising zone and not be obstructed, if the location from which the unit was relocated or removed was within the advertising zone and was not obstructed.

c.    No location requested by any publication(s) during initial implementation, or in any petition, shall be denied on ground that such location is on the Director's list of potential locations for relocated fixed pedestal units.

**E.    Reserve Units**
No petition or plan for installation of one or more fixed pedestal units submitted by any publication(s) that complies with Section 184.12 and these

quidelines shall be denied on the ground that one or more fixed pedestal units are being held in reserve.

**F.    Maximum Density Levels**

(1)    A cluster of fixed pedestal units shall not consist of more than two fixed pedestal units.. Notwithstanding the foregoing, a cluster of fixed pedestal units may consist of three fixed pedestal units in locations where the public sidewalk is at least twenty-five feet (25') wide.

(2)    An individual fixed pedestal unit or cluster of fixed pedestal units may be located in a midblock area on a block face, so long as:

(a)    in the case of a block face that is at least four hundred twenty-five feet (425') in length, the distance between such midblock unit or cluster of units and any individual unit or cluster of units located at any corner area on that block face (measured from the nearest end of each individual unit or cluster) is at least one hundred feet (100'), and the cumulative distance between such midblock unit or cluster of units and any units or clusters of units in both corner areas on that block face is at least three hundred eighty feet (380'); and

(b)    in the case of a block face that is less than four hundred twenty-five feet (425') in length, the distance between such midblock unit or cluster of units and any individual unit or cluster of units located at any corner area on that block face (measured from the nearest end of each individual unit or cluster) is at least one hundred feet (100'), and the cumulative distance between such midblock unit or cluster of units and any units or clusters of units located in both corner areas on that block face is at least three hundred feet (300').

(3)    No more than a single fixed pedestal unit or cluster of units may be installed in a midblock area on a single block face.

(4)    The minimum distance between each fixed pedestal unit in a cluster is five feet (5') (measured from the nearest end of each unit).

**VII.    IMPLEMENTATION AND COMPLIANCE**

**A.    Initial Implementation and Compliance Dates**

(1)    Once the Director has established one or more fixed pedestal zones, and once the locations of fixed pedestal units in each such zone have been determined, the Director shall set initial implementation areas and initial implementation and compliance dates in accordance with Section 184.12(I) and the following procedures:

a.    The Director shall establish implementation areas within each such Zone. The Director may establish implementation areas to contain fixed pedestal unit locations that have been finally determined notwithstanding the fact that other fixed

pedestal unit locations within the Zone may not yet be finally determined.

b.    The Director shall set an initial implementation date for each implementation area within an established fixed pedestal zone. The date may be the same or different for each implementation area, as long as the requirements of Section 184.12(I) and these guidelines are met.

c.    Not less than thirty (30) days before the initial implementation date for each implementation area, the Director shall publish a notice in the City's official newspaper that contains substantially the following information:

    i.    The boundaries of each then-established implementation area and fixed pedestal zone in which the Director intends to implement Section 184.12 and these guidelines (the "subject of the notice"). If the Director has amended or is in the process of amending the guidelines to include as an Appendix a map showing these boundaries, this requirement may be met by publishing the map with the notice.

    ii.    The locations in each implementation area that is the subject of the notice where the Director intends to install one or more fixed pedestal units, subject to the vendor's obtaining the permits and approvals required under the vendor contract for installing the units.

    iii.    The initial implementation date for each implementation area that is the subject of the notice.

    iv.    The compliance date for each implementation area that is the subject of the notice. In no event shall the compliance date be less than ninety (90) days from the initial implementation date for that area.

    v.    The deadline for submitting applications to the Director for fixed pedestal permits for space in one or more newsrack boxes in the fixed pedestal units identified in the notice (the "permit application deadline"). In no event shall the permit application deadline be less than ten (10) business days from the date the notice is published.

    vi.    A statement to the effect that all applications for fixed pedestal permits for space in one or more newsrack boxes in the fixed pedestal units identified in the notice that are received by the Director prior to the permit application deadline shall be treated as having been received within, but at the end of, the permit application deadline.

vii.  The date, time and place of a meeting to be conducted by the Director pursuant to Section 184.12(h)(2)(B)(iii) for the purpose of allocating space in newsrack boxes in the fixed pedestal units identified in the notice ("space allocation meeting"). The meeting shall be held no fewer than five (5) business days after the permit application deadline. The Director may continue the space allocation meeting from day to day if needed to complete the space allocation process.

viii.  A statement to the effect that whenever feasible, in accordance with Section 184.12(h) and these guidelines, space in newsrack boxes in the fixed pedestal units identified in the notice will be allocated by voluntary agreement of the publications. Voluntary space allocation agreements that meet the requirements set forth in these guidelines may be submitted to the Director before and/or at the space allocation meeting.

ix.  A statement to the effect that the Director will not hold a space allocation meeting if, no later than two (2) business days before the date specified in the notice for the meeting, the Director has received voluntary space allocation agreements that meet the requirements of these guidelines.

x.  A statement to the effect that on the initial implementation date, the Director may authorize the vendor to install the fixed pedestal units identified in the notice for which the vendor has obtained the permits and approvals required by the vendor contract.

xi.  A statement to the effect that upon the compliance date, all existing free-standing newsracks and unauthorized fixed pedestal units in each implementation area that is the subject of the notice must be removed.

xii.  A statement to the effect that pursuant to Section 184.12(j), after the compliance date, the Director may remove and/or impound existing free-standing newsracks and unauthorized fixed pedestal units that remain in each implementation area that is the subject of the notice.

xiii.  A statement identifying where interested persons may obtain forms for fixed pedestal permit applications and voluntary space allocation agreements, and a telephone number that interested persons may call to request further information.

- 24 -

d.    In addition to publishing the notice described above in the City's official newspaper, not less than thirty (30) days before the initial implementation date for each implementation area that is the subject of the notice, the Director shall mail a copy of the notice to all publications then authorized to distribute their publications in the City through existing free-standing newsracks and to any other person that previously requested such notice in a writing addressed to the Director, and shall conspicuously post the notice in each such implementation area.

e.    The notice to be published in accordance with subsection c., above, and to be mailed in accordance with subsection d., above, need not state the information described in subsections c.iii., c.iv., and c.x-xii, inclusive, for one or more implementation area(s) described in the notice, so long as the Director publishes and mails a subsequent notice containing such information at least thirty (30) days before the initial implementation date for each such implementation area.

f.    During the period starting with the initial implementation date and ending with the compliance date for each implementation area that is the subject of the notice (the "voluntary compliance period"), the Director may request publications to remove or relocate existing free-standing newsracks and/or unauthorized fixed pedestal units that occupy locations where the Director intends reasonably shortly thereafter to install one or more fixed pedestal units. If the unauthorized newsracks and/or units are not removed or relocated by the publications upon the Director's request during the voluntary compliance period, the Director may move them to the nearest adjacent location that is in compliance with Sections 184.1 through 184.12, inclusive, of Article 5.4 of the San Francisco Public Works Code, and any guidelines promulgated under those sections.

g.    If any fixed pedestal unit that the Director intends to install in a particular implementation area has not been installed as of the compliance date for that area, no publisher shall be required to remove any freestanding newsrack which the intended fixed pedestal unit was intended to replace until that unit is installed. However, any freestanding newsracks which remain pursuant to this subsection must comply with all applicable requirements concerning such freestanding newsracks, including their location, appearance, and condition.

## VIII.   ALLOCATION OF SPACE IN FIXED PEDESTAL UNITS

### A.    Procedures for Allocating Space in Fixed Pedestal Units During Initial Implementation, In Petition Units, and in Relocated Units

- 25 -

Publications shall be allocated space in fixed pedestal units and clustered fixed pedestal units in accordance with Section 184.12(h) and as set forth below.

(1)     A space in a fixed pedestal unit or clustered fixed pedestal unit means one newsrack box, unless the newsrack box has split (two) doors, in which case a space is equivalent to one-half of the newsrack box..

(2)     A newsrack box shall employ split doors only when both publications to which the spaces in that newsrack box would be allocated (a) are distributed free of charge and (b) consent to the use of split doors.

(3)     Space in a fixed pedestal unit or clustered fixed pedestal unit shall not be allocated until after:

    a.    The Director has established one or more fixed pedestal zones and one or more initial implementation areas within each zone, or amended or added to an implementation area within a previously-established zone;

    b.    The location of the fixed pedestal units and/or clusters of fixed pedestal units in each such implementation area have been determined;

    c.    The Director has published, mailed, and posted notice of the above as set forth in these guidelines;

    d.    The permit application deadline specified in the notice has expired;

    e.    The Director has conducted a space allocation meeting, unless no such meeting was required for one or more fixed pedestal units because the Director received a voluntary space allocation agreement that meets the requirements set forth at subsections VIII.B.(2)-(3) of these guidelines at least two business days before the space allocation meeting;

    f.    If the newsrack box at issue was initially unassigned to any publication at the time the fixed pedestal unit was installed, space in that newsrack box shall not be allocated for the first time except to a publication that has paid all costs, if any, of reconfiguring or otherwise preparing or modifying such an initially unassigned newsrack box to accommodate that publication, including labor and materials, to the extent such reconfiguration, preparation or modification is necessary. This paragraph applies only to the first publication to occupy a newsrack box that was unassigned at the time the fixed pedestal unit was installed, not to any other publications that may subsequently occupy such a newsrack box.

## B.     Voluntary Space Allocation Agreement Procedures

(1)     Whenever feasible, in accordance with Section 184.12 and these guidelines, the Director shall allocate space in each fixed pedestal unit, including

each cluster of fixed pedestal units, pursuant to a voluntary space allocation agreement.

       (2)     After the Director publishes a notice in the form set forth in Section VII above, and before or during the space allocation meeting, publications may, and are encouraged to, submit voluntary space allocation agreements to the Director. Each voluntary space allocation agreement shall be in writing and shall include the following:

          a.     The name of each publication that is a party to the agreement and a copy of the fixed pedestal permit application submitted by each such publication.

          b.     A statement as to which of the fixed pedestal units that were identified in the notice is the subject of the agreement.

          c.     For each publication that is a party to the agreement, a description of the specific newsrack box in each fixed pedestal unit that is the subject of the agreement from which that publication will be distributed.

          d.     If the agreement includes one or more newsrack boxes with split (two) doors, for each split box, the names of the publications that agree to share the box, the location of the box in the unit, and the position each publication is to occupy in the box.

          e.     The signature of at least one authorized representative of each publication that is a party to the agreement attesting to the fact that he/she is authorized to enter into the agreement on behalf of the publication.

       (3)     Every voluntary space allocation agreement is subject to the approval of the Director.  The Director shall approve a voluntary space allocation agreement if, and only if, (a) each publication that is a party to the agreement is a qualified applicant with respect to each fixed pedestal unit that is the subject of the agreement, (b) each publication that is a qualified applicant with respect to any fixed pedestal unit that is the subject of the agreement, but that is not a party to that agreement, has withdrawn its application for a Fixed Pedestal Permit with respect to that unit, or has otherwise indicated its assent to the voluntary space allocation agreement to the Director; (c) the agreement does not allocate more than two newsrack boxes in a single fixed pedestal unit or cluster of fixed pedestal units to a single publication; and (d) the agreement complies with the other requirements for voluntary space allocation agreements set forth in these guidelines and with all other requirements of Section 184.12 and these guidelines.

       (4) If a voluntary space allocation agreement addresses less than all of the fixed pedestal units in a cluster, publications that are parties to the agreement also may seek space in fixed pedestal unit(s) within that cluster that are not the subject of the agreement at the space allocation meeting, subject to Section 184.12 and these guidelines.

**C.    Allocation Of Space Without Voluntary Space Allocation Agreements**

If the publications that are qualified applicants with respect to a particular fixed pedestal unit are unable to reach a voluntary space allocation agreement for that unit that complies with Section 184.12 and these guidelines, the Director shall allocate all of the spaces in that unit at the space allocation meeting that was publicized in the notice. The Director's allocation of those spaces shall be based on the space allocation provisions of Section 184.12(h).

**D.    Split Newsrack Box Procedures**

(1)    Unless the newsrack box is located in a fixed pedestal unit whose specifications allow split newsrack boxes to contain coin mechanisms and all associated parts and hardware required for the distribution of paid publications, a newsrack box shall only be split if each half of the split newsrack box is used to distribute an unpaid, i.e. freely-distributed, publication.

(2)    A newsrack box may be split (an "ordinary split box") if:

a.    The newsrack box is to be occupied by two unpaid publications, each of which has received space in that unit through the space allocation procedures set forth in Section 184.12 and these guidelines, other than pursuant to subsection (3), below; and

b.    Each such publication informs the Director, at the time space in that newsrack box is allocated, that it elects to split and share the newsrack box with the other publication involved.

(3)    Notwithstanding subsection (2), above, a newsrack box may also be split (a "single-publisher split box") at the request of an unpaid publication to whom space in that newsrack box is allocated pursuant to the space allocation provisions contained in Section 184.12 and these guidelines other than this subsection, provided that:

a.    The publication requesting the split (the "primary publication") does so by a written request received by the Director within five (5) business days after space in that newsrack box is first allocated to that publication.

b.    At least one half of the split newsrack box must be continuously used to distribute the primary publication. Failure to comply with this requirement shall constitute abandonment of the entire newsrack box.

c.    The other half of the split newsrack box may be used to distribute the primary publication, or to distribute any other unpaid publication published by the publisher of the primary publication (the "secondary publication"), regardless of the secondary publication's frequency of publication or when the secondary publication was first published or distributed.

- 28 -

d.   Notwithstanding subsection 184.12(e)(6) of the Ordinance, and subsection IV.C.(11) of these guidelines, the publisher of the primary publication may substitute any one of its unpaid publications (including the primary publication) for another as secondary publication, so long as:

i.   The Director receives at least thirty (30) days advance written notice of such substitution; and

ii.  The primary publication remains continuously distributed from one half of the split newsrack box.

e.   Notwithstanding subsection d., above, the Vendor is not required to change or replace any publication trade dress on the fixed pedestal unit in connection with secondary publication substitutions more often than once per twelve (12) months.  The publisher of the primary and secondary publications shall pay the Vendor in advance for the Vendor's reasonable charges of all such changes or replacements of trade dress, including labor and materials.

(4)    Each publication or publisher occupying half of a split newsrack box shall be responsible for the same fixed pedestal permit fee, regardless of whether the newsrack box is an ordinary split box or a single-publisher split box. The amount of that fee shall be the same as the fixed pedestal permit fee for a newsrack box that is not split.

(5)    The prohibition on allocation of multiple newsrack boxes in a single fixed pedestal unit or cluster of units to a single publication, as set forth in Section 184.12(h)(1)(A), shall not preclude the use of both sides of a single-publisher split box to distribute the primary publication for that box, but shall otherwise apply to split newsrack boxes as well as to newsrack boxes that are not split.

**E.    Giving Notice Of Available Newsrack Box Space**

(1)    If a previously allocated and/or previously occupied newsrack box in an existing fixed pedestal unit becomes available for any reason (including without limitation where the previously-issued fixed pedestal permit for that newsrack box has been revoked, or where the publication that held that previously-issued permit (the "most recent occupant") has vacated the box), the Director shall give prompt written notice to each publication to each publication that holds at least one fixed pedestal permit or that has a certificate on file with the Director for the use of freestanding newsracks, as well as to any other person or entity that has submitted a written request for such notice to the Director, stating the following:

a.   The location of the particular fixed pedestal unit in which space has become available.

b.   The location of the particular newsrack box in that unit which has become available ("the available newsrack box").

- 29 -

c.      The deadline for submitting applications to the Director for a fixed pedestal permit for the available newsrack box (the "permit application deadline").

d.      A statement to the effect that all applications for a fixed pedestal permit for space in the available newsrack box that are received by the Director prior to the permit application deadline shall be treated as having been received on the permit application deadline.

e.      The date, time and place of a meeting to be conducted by the Director pursuant to Section 184.12 for the purpose of reassigning the available newsrack box ("reassignment meeting"). The meeting shall be held no fewer than five (5) business days after the permit application deadline.

f.      A statement to the effect that whenever feasible, in accordance with Section 184.12 and these guidelines, the available newsrack box shall be reassigned by agreement of publications that are qualified applicants for that newsrack box. Such publications may submit a voluntary reassignment agreement that meets the requirements set forth in these guidelines to the Director before and/or at the reassignment meeting .

g.      A statement to the effect that the Director will not hold a reassignment meeting concerning the available newsrack box if, no later than two (2) business days before the date specified in the notice, the Director has received a voluntary reassignment agreement for that box that meets the requirements of these guidelines.

h.      A statement identifying where interested publications may obtain forms for fixed pedestal permit applications and voluntary reassignment agreements, and a telephone number that interested publications may call to request further information.

    (2)     If a fixed pedestal unit contains one or more newsrack boxes that are not initially assigned to any publication at the time that fixed pedestal unit is installed, space in such an initially unassigned newsrack box shall not be assigned to any publication until that publication pays all of the costs, if any, of reconfiguring, modifying, or otherwise preparing the newsrack box to accommodate that publication, including labor and materials, to the extent such reconfiguration, preparation or modification is necessary. This paragraph applies only to the first publication to occupy a newsrack box that was unassigned at the time the fixed pedestal unit was installed, not to any other publications that may subsequently occupy that newsrack box.

## F.    Reassigning Space In Available Newsrack Boxes

    (1)     Space in an available newsrack box shall not be reassigned to the most recent occupant of that box unless no other qualified applicant seeks space in that newsrack box.

(2)    If two or more newsrack boxes in the same fixed pedestal unit or cluster of fixed pedestal units are available for reassignment at the same time, a qualified applicant or applicants seeking space in that unit or cluster of units shall, if possible, be reassigned space in a newsrack box in that unit or cluster whose configuration matches the paid or unpaid status, as well as the split or unsplit status, of the qualified applicant or applicants.

(3)    The Director shall not reassign space in an available newsrack box until after:

a.    The Director has given written notice of the available newsrack box to each publication that holds at least one fixed pedestal permit or that has a certificate on file with the Director for the use of freestanding newsracks, as well as to any other person or entity that has requested such notice,

b.    The permit application deadline specified in the notice has expired.

c.    The Director has conducted a reassignment meeting for the available newsrack box, unless no such meeting was required because the box was filled by a voluntary reassignment agreement that meets the requirements of these guidelines and that is received by the Director at least two business days before the meeting.

(4)    Whenever feasible, in accordance with Section 184.12 and these guidelines, the Director shall reassign space in available newsrack boxes pursuant to a voluntary reassignment agreement.

(5)    After the Director gives written notice of space in an available newsrack box as set forth above, and before or during the space allocation meeting, publications may, and are encouraged to submit a voluntary reassignment agreement.  Each voluntary reassignment agreement shall be in writing and shall include the following:

a.    a description of the specific newsrack box that is the subject of the agreement, including the specific fixed pedestal unit in which it is located.

b.    the name of the publication (or, if the available newsrack box will have split doors, the publications) to which the space in the available newsrack box shall be reassigned, and a copy of the fixed pedestal permit application submitted by that publication (or publications).

c.    the name of each publication that is a party to the agreement.

d.    the signature of at least one authorized representative of each publication that is a party to the agreement, attesting to

the fact that he/she is authorized to enter into the agreement on behalf of the publication.

(6)    Every voluntary reassignment agreement is subject to the approval of the Director.  The Director shall approve a voluntary reassignment agreement if, and only if, (a) each publication that is a qualified applicant with respect to the available newsrack box which the agreement concerns, is a party to the agreement; (b) the publication to which the available newsrack box shall be reassigned is a qualified applicant with respect to that newsrack box; and (c) the agreement complies with the other requirements for voluntary reassignment agreements set forth in these guidelines and with all other requirements of Section 184.12 and these guidelines.

(7)    If the publications that are qualified applicants for space in a particular newsrack box are unable to reach a voluntary reassignment agreement for that box, the Director shall reassign that box at the reassignment meeting that was publicized in the notice.  Space in that newsrack box shall be reassigned in accordance with Section 184.12(h)(4).

## IX.    ACCESS TO FIXED PEDESTAL UNITS

The following requirements shall apply to the issuance of permits to publications for access to fixed pedestal units.

### A.    Applications For Fixed Pedestal Permits

(1)    In accordance with Section VII. of these guidelines, the Director shall publish notice, and shall give written notice to all publications and other interested parties who have requested such notice, of the Director's intention to issue fixed pedestal permits for specified fixed pedestal units.  The Director shall allow a minimum of 10 business days for publications to submit permit applications for the specified locations.  For purposes of permit issuance, all applications received prior to the start of the permit application deadline specified in the notice shall be treated as having been received within, but at the end of, the application period.

(2)    Any publication seeking access to a newsrack box in a fixed pedestal unit shall submit one permit application for that entire unit.  The application shall be on a form provided by the Director, and shall include the following information, accompanied by the appropriate annual permit fee:

    a.    The name, street address, telephone and fax number of the publication.

    b.    The name, title, street address and telephone, fax and, if applicable, pager numbers of one or more persons whom the Director may notify or contact at any time concerning the applicant's newsrack boxes and whom the applicant authorizes to act on its behalf.

    c.    The applicant's frequency of publication.  If the frequency of publication has not remained constant during the preceding six months, the applicant must include a written explanation of the reasons for and date of any change(s) in frequency of

- 32 -

publication, and must affirm in writing the publication's intent to maintain its current frequency of publication.

d.    The exact location of the fixed pedestal unit to which the publication is seeking access.

e.    The number of newsrack boxes to which the publication seeks access within that fixed pedestal unit. The fact that a publication seeks access to more than one newsrack box within a fixed pedestal unit shall not affect that publication's ability to obtain access to the unit.

(3)    If the newsrack box at issue was initially unassigned to any publication at the time the fixed pedestal unit was installed, and has not subsequently been assigned to any publication since the unit was installed, any publication seeking to be the first occupant of that newsrack box shall include with its application a payment to cover all costs, if any, of reconfiguring, modifying or otherwise preparing that newsrack box to accommodate that publication, including labor and materials, to the extent such reconfiguration, modification or preparation is necessary. The payment shall be returned if the space in that newsrack box is not allocated to that publication. This paragraph applies only to the first publication to occupy a newsrack box that was unassigned at the time the fixed pedestal unit was installed, not to any other publications that may subsequently occupy such a newsrack box.

**B.    Grant or Denial Of Applications For Fixed Pedestal Permits**

(1)    Upon receipt of a properly completed and timely application for a fixed pedestal permit, the Director shall either grant or deny the application within fifteen (15) business days of the permit application deadline. If the Director has not completed the process of allocating space within the fixed pedestal unit to which the application relates, the Director shall have an additional five (5) business days to grant or deny the application. If the Director denies the application, he or she must promptly provide the reasons for the denial in writing, citing any relevant portions of these guidelines or Public Works Code Section 184.12(e)(4)(B) that authorize denial of the application.

(2)    The Director may deny an application for a fixed pedestal permit only for the reasons set forth in Public Works Code Sections 184.12(e)(4)(B).

**C.    Administrative Review Of Fixed Pedestal Permit Decisions**

(1)    Administrative review of the Director's determination to grant or deny an application for a fixed pedestal permit, or to revoke such a permit, shall proceed in accordance with Public Works Code Section 184.12(m).

(2)    Such administrative review may, but is not required to, include review of the Director's permit determination by the Newsrack Advisory Committee ("the Committee"). If the aggrieved party requests review of that determination by the Committee, the Committee shall consider the request at its next regularly-scheduled meeting. If no regular Committee meeting is scheduled to occur within ten (10) business days of the Director's receipt of the request for Committee review, the Committee shall consider and act upon the review request at a special meeting held within that ten business day period. If the aggrieved

- 33 -

party desires a transcript of the meeting, it may bring a certified court reporter to the meeting or transcribe the official tape of the meeting, at its own expense.

(3)    In reviewing the Director's determination to grant or deny an application for a fixed pedestal permit, or to revoke such a permit, the Committee shall afford the aggrieved party a fair opportunity to be heard, but is not required to follow formal hearing procedures.

### D.    Judicial Review Of Fixed Pedestal Permit Decisions

Judicial review of a final administrative determination to grant or deny an application for a fixed pedestal permit, or to deny or revoke such a permit, shall proceed in accordance with Public Works Code Section 184.12(m) and California Code of Civil Procedure Section 1094.8.

### E.    Withdrawal of Fixed Pedestal Permits

Where a permittee intends to vacate a newsrack box in a fixed pedestal unit, the permittee shall notify the Director of the permittee's intention to vacate, and shall request withdrawal of the permit. Such notice shall be provided to the Director as soon as possible, but not later than three business days prior to the date on which the newsrack box will be vacated.

## X.    INSTALLATION PERMITS

### A.    Installation Permit Requirements

(1)    Before installing any fixed pedestal unit, the Vendor shall apply for and obtain an installation permit relating to that unit from the Director. The application shall be on a form issued by the Director and shall state the number of fixed pedestal units proposed and the total number of newsrack boxes within each of those proposed units. The application shall include location drawings as specified below.

(2)    The location drawings submitted with each installation permit application shall be a scale representation of the intended location of each fixed pedestal unit drawn in a scale of twenty feet equals one inch (20:1). The location drawings shall show the area from the property line to the street centerlines at the nearest intersection. Mid-block sites can be shown with broken line ties. The location drawings shall show all necessary street dimensions, such as sidewalk width, the location of any curb ramps or driveways, street width, and all street furniture and surface structures, including hydrants, utility poles and catchbasins.

### B.    Approval of Location Drawings

(1)    In reviewing an application for an installation permit, including any location drawings or other materials accompanying the application, the Director may not consider the content or viewpoint of any publication that would or might be distributed from any fixed pedestal unit to which the application relates, or the content or viewpoint of material currently or historically distributed in the Fixed Pedestal Zone within which such unit(s) would be located, whether by freestanding newsracks, fixed pedestal units, news kiosks, or other means.

- 34 -

(2)     In reviewing an application for an installation permit, including any location drawings or other materials accompanying the application, the Director may not consider the potential impact on advertising revenues, if any, of the Vendor.

(3)     Within 30 days of receiving a completed set of location drawings relating to an installation permit application that complies with the requirements of these guidelines and the Contract, the Director shall approve such location drawings relating to fixed pedestal units at all intended locations that comply with the requirements contained in the Contract, Section 184.12, and these guidelines relating to the location of fixed pedestal units.  Within 30 days of receiving a completed set of such location drawings, the Director shall notify the Vendor in writing of any location drawings that have not been approved, and shall state the reason(s) why such approval has not been granted, including citations to the relevant location provisions of Public Works Code Section 184.12, these guidelines, or the Contract.

## C.     Final Approval of Installation Permit Applications

(1)     In addition to the Fixed Pedestal Unit Installation Permit, the Vendor shall be required to obtain an Excavation Permit from the Department of Public Works for all fixed pedestal units which require excavation for illumination.

(2)     The Vendor shall provide documentation to the Director showing that the Vendor has obtained all necessary approvals and permits from other City departments or other governmental agencies, as well as any required Excavation Permits, for an intended fixed pedestal unit location for which the Director previously approved the location drawings.

(3)     Within fifteen (15) days of receiving such documentation, the Director shall issue one or more installation permits authorizing installation of a fixed pedestal unit at each such location.  The Director may decline to authorize installation of a unit at any location described in the installation permit application only if the Vendor has not provided documentation of all other required approvals or permits, or if the Director did not previously or concurrently approve the location drawings for that location.  If the Director declines to authorize installation of a unit at any location described in the installation permit application, the Director must inform the Vendor in writing of the reason(s) why such authorization has been withheld, including citations to the relevant provisions of Public Works Code Section 184.12, these guidelines, or the Contract, and such determination shall constitute the City's final administrative determination.

(4)     The Vendor may not install any fixed pedestal unit until the Director has issued the Vendor an installation permit containing the Director's approval of that unit.

## XI.     MISCELLANEOUS PROVISIONS

### A.     Newsrack Advisory Committee Meetings

(1)     The Newsrack Advisory Committee ("Committee") shall hold a regularly-scheduled meeting at least monthly.  The date, time and location shall be specified in the Committee's Administrative Procedures.

- 35 -

(2)    Within two (2) business days of the filing with the Director of a request for review of a decision by the Director by the Newsrack Advisory Committee pursuant to Section 184.12(k)(1) ("request"), the Director shall notify the Chair of the Committee of the request.  If the Chair of the Committee determines that there is no regularly-scheduled meeting of the Committee within ten (10) business days of the Director's receipt of the request for review, the Chair shall schedule a special meeting of the Committee, consistent with public meeting law requirements, within ten (10) business days of the Director's receipt of the request.  If the Committee is unable to hold a special meeting within this time frame or if a special meeting is held but there is no quorum present, the Chair will notify the person who filed the request.  The person who filed the request shall notify the Director in writing that he/she (1) will wait for the next-regularly scheduled meeting of the Committee to have the original determination of the Director reviewed as set forth in Section 184.12(k)(1), or (2) elects to have the original determination of the Director deemed final and waives review by the Committee and further review by the Director.

## B.    Address for Notice

(1)    Any notice to the City or the Director required under Section 184.12 or these guidelines shall be sent to the following address:

> Director
> City and County of San Francisco
> Department of Public Works
> City Hall, Room 348
> 1 Dr. Carlton B. Goodlett Place
> San Francisco, CA  94102

## C.    Severability

If any provision, paragraph, subparagraph, section, phrase, or clause of these guidelines or if the application of these guidelines is for any reason held to be invalid or unconstitutional by a court of competent jurisdiction, such decision shall not affect the validity or effectiveness of the remaining provisions, paragraphs, subparagraphs, sections, phrases, or clauses of these guidelines. The foregoing sentence shall not affect the terms of any vendor contract or the rights or obligations of any party to such a contract under such a contract.