# EXHIBIT L

# CITY AND COUNTY OF SAN FRANCISCO MUNICIPAL CODE

## 1996 CHARTER





MUNICIPAL CODE CORPORATION

Tallahassee, Florida          2006

## 1996 CHARTER

| Article | | Page |
|---|---|---|
| | PREAMBLE | 3 |
| I. | EXISTENCE AND POWERS OF THE CITY AND COUNTY | 5 |
| II. | LEGISLATIVE BRANCH | 7 |
| III. | EXECUTIVE BRANCH—OFFICE OF MAYOR | 21 |
| IV. | EXECUTIVE BRANCH—BOARDS, COMMISSIONS AND DEPARTMENTS | 33 |
| V. | EXECUTIVE BRANCH—ARTS AND CULTURE | 73 |
| VI. | OTHER ELECTIVE OFFICERS | 87 |
| VII. | JUDICIAL BRANCH | 99 |
| VIII. | EDUCATION AND LIBRARIES | 105 |
| VIIIA. | THE MUNICIPAL TRANSPORTATION AGENCY | 111 |
| VIIIB. | PUBLIC UTILITIES | 141 |
| IX. | FINANCIAL PROVISIONS | 151 |
| X. | PERSONNEL ADMINISTRATION | 171 |
| XI. | EMPLOYER-EMPLOYEE RELATIONS SYSTEM | 187 |
| XII. | EMPLOYEE RETIREMENT AND HEALTH SERVICE SYSTEMS | 195 |
| XIII. | ELECTIONS | 207 |
| XIV. | INITIATIVE, REFERENDUM AND RECALL | 231 |
| XV. | ETHICS | 243 |
| XVI. | MISCELLANEOUS PROVISIONS | 255 |
| XVII. | DEFINITIONS | 301 |
| XVIII. | TRANSITION PROVISIONS | 321 |
| Appendix | | |
| | CHARTER APPENDICES | 335 |
| A. | EMPLOYMENT PROVISIONS | 337 |
| B. | PORT AGREEMENTS | 725 |
| C. | ETHICS PROVISIONS | 751 |
| D. | BUILDING INSPECTION PROVISIONS | 771 |

## PREAMBLE

In order to obtain the full benefit of home rule granted by the Constitution of the State of California; to improve the quality of urban life; to encourage the participation of all persons and all sectors in the affairs of the City and County; to enable municipal government to meet the needs of the people effectively and efficiently; to provide for accountability and ethics in public service; to foster social harmony and cohesion; and to assure equality of opportunity for every resident:

We, the people of the City and County of San Francisco, ordain and establish this Charter as the fundamental law of the City and County.

## ARTICLE V: EXECUTIVE BRANCH—ARTS AND CULTURE

Sec. 5.100.   General.
Sec. 5.101.   Charitable Trust Departments.
Sec. 5.102.   City Museums.
Sec. 5.103.   Arts Commission.
Sec. 5.104.   Asian Art Museum of San Francisco.
Sec. 5.105.   The Fine Arts Museums of San Francisco.
Sec. 5.106.   War Memorial and Performing Arts Center.

### SEC. 5.100. GENERAL.

The arts and culture departments of the City and County shall be the Arts Commission, the Asian Art Museum of San Francisco, the Fine Arts Museums of San Francisco and the War Memorial and Performing Arts Center. These departments shall be a part of the executive branch of City and County government.

The terms of office of all trustees and commissioners shall continue as they existed on the effective date of this Charter. All vacancies shall be filled within 90 days.

The governing boards of the arts and culture departments may accept and shall comply with the terms and conditions of loans, gifts, devises, bequests or agreements donating works of art or other assets to their department without action of the Board of Supervisors so long as acceptance of the same entails no expense for the City and County beyond ordinary care and maintenance.

### SEC. 5.101. CHARITABLE TRUST DEPARTMENTS.

For the purposes of this Article, the Asian Art Museum of San Francisco, The Fine Arts Museums of San Francisco and the War Memorial and Performing Arts Center are referred to as the "charitable trust departments."

Nothing in this Article shall be construed to limit or change the powers and responsibilities of the governing boards of the charitable trust departments insofar as they involve administration of the charitable trusts, gifts and contracts for which they are responsible.

The charitable trust departments shall have exclusive charge of the trusts and all other assets under their jurisdiction, which may be acquired by loan, purchase, gift, devise, bequest or otherwise, including any land or buildings set aside for their use. They shall have authority to maintain, operate, manage, repair or reconstruct existing buildings and construct new buildings, and to make and enter into contracts relating thereto, subject, insofar as City funds are to be used, to the budgetary and fiscal provisions of this Charter.

### SEC. 5.102. CITY MUSEUMS.

When the term "museums" is used in this Article, unless otherwise specified, it refers to both the Asian Art Museum of San Francisco and The Fine Arts Museums of San Francisco.

Trustees and commissioners of the museums are exempt from the requirement of Section 4.101(2) of this Charter, except that at least a majority of The Fine Arts Museum Board of Trustees shall be residents of the City and County. Members shall serve for three-year terms, and may be removed by the Mayor only pursuant to Section 15.105. Members shall serve without compensation.

The governing boards of the museums shall adopt by-laws providing for the conduct of their affairs, including the appointment of an executive committee which shall have authority to act in such matters as are specified by the governing board.

The governing boards of the museums shall appoint and may remove a director and such other executive and administrative positions as may be necessary. Appointees to such positions need not be residents of the City and County. Notwithstanding any other provision of this Charter, the governing boards may accept and utilize

contributions to supplement or pay for the salaries and benefits of these appointees in order to establish competitive compensation, provided that only compensation established pursuant to the salary provisions of this Charter shall be considered for Retirement System purposes.

The governing boards of the museums may insure any loaned exhibit and agree to indemnification and binding arbitration provisions necessary to insuring exhibitions without action of the Board of Supervisors so long as such agreement entails no expense to the City and County beyond ordinary insurance expense. The Recreation and Park Department shall maintain and care for the grounds of the Museums.

### SEC. 5.103. ARTS COMMISSION.

The Arts Commission shall consist of fifteen members appointed by the Mayor, pursuant to Section 3.100, for four-year terms. Eleven members shall be practicing arts professionals including two architects, a landscape architect, and representatives of the performing, visual, literary and media arts; and four members shall be lay members. The President of the Planning Commission, or a member of the Commission designated by the President, shall serve ex officio. Members may be removed by the Mayor.

The Commission shall appoint and may remove a director of the department. The Commission shall encourage artistic awareness, participation and expression; education in the arts; assist independent local groups with the development of their own programs; promote the employment of artists and those skilled in crafts, in the public and private sectors; provide liaison with state and federal agencies to ensure increased funding for the arts from these agencies as well as represent arts issues and policy in the respective governmental bodies; promote the continued availability of living and working space for artists within the City and County; and enlist the aid of all City and County governmental units in the task of ensuring the fullest expression of artistic potential by and among the residents of San Francisco.

In furtherance of the foregoing the Arts Commission shall:

1. Approve the designs for all public structures, any private structure which extends over or upon any public property and any yards, courts, set-backs or usable open spaces which are an integral part of any such structures;

2. Approve the design and location of all works of art before they are acquired, transferred or sold by the City and County, or are placed upon or removed from City and County property, or are altered in any way; maintain and keep an inventory of works of art owned by the City and County; and maintain the works of art owned by the City and County;

3. Promote a neighborhood arts program to encourage and support an active interest in the arts on a local and neighborhood level, assure that the City and County-owned community cultural centers remain open, accessible and vital contributors to the cultural life of the City and County, establish liaison between community groups and develop support for neighborhood artists and arts organizations; and

4. Supervise and control the expenditure of all appropriations made by the Board of Supervisors for the advancement of the visual, performing or literary arts.

Nothing in this section shall be construed to limit or abridge the powers or exclusive jurisdiction of the charitable trust departments or the California Academy of Sciences or the Library Commission over their activities; the land and buildings set aside for their use; or over the other assets entrusted to their care.

### SEC. 5.104. ASIAN ART MUSEUM OF SAN FRANCISCO.

The Asian Art Commission shall consist of twenty-seven trustees appointed by the Mayor. In filling vacancies, the Mayor shall solicit nominations from the Commission and shall give due consideration to such nominees in filling such vacancies to the end that the members of the Commission shall be representative of the fields

of Asian art and culture by reason of their knowledge, experience, education, training, interest or activity therein.

The Commission shall:

1. Develop and administer that museum which is known as the "Asian Art Museum of San Francisco," or by such other title as may be chosen by not less than two-thirds of the members of the Commission;

2. Control and manage the City and County's Asian art with the Avery Brundage Collection as its nucleus, consistent with the conditions applicable to the Brundage Collection and other gifts;

3. Maintain a charitable foundation or other legal entity for the purpose of developing the Asian Art Museum;

4. Promote, establish and develop an acquisition fund for Asian art objects; and

5. Collaborate with other groups and institutions to extend and deepen the activities necessary to establish the Asian Art Museum as the outstanding center of Asian art and culture in the western world.

### SEC. 5.105. THE FINE ARTS MUSEUMS OF SAN FRANCISCO.

The California Palace of Legion of Honor and the M.H. de Young Memorial Museum shall compromise the Fine Arts Museums of San Francisco, or such other title as may be chosen by not less than two-thirds of the trustees of the Fine Arts Museums. The Fine Arts Museums Board of Trustees shall consist of 62 members to be elected by the members of the Board. On a vote of the majority of members, the number of Trustees may be increased or decreased from time to time as needed, provided that the number of Trustees shall not be more than 62, and provided further that a vote to decrease the number shall not affect the power or tenure of any incumbent. The Board may act by majority of the members present at meetings in which a quorum is in attendance.

In selecting members to serve on the Board, the Board of Trustees shall give due consideration to nominees who are broadly representative of the diverse communities of the City and County and knowledgeable in the fields of art and culture, as demonstrated by their experience, training, interest or philanthropic activity.

A quorum of the Board shall consist of one-third of the number of trustees in office at the time. A majority or two-thirds vote of the Board shall mean a majority or two-thirds vote of the number of trustees present at the meeting at which the vote is taken.

The Board is responsible for the protection and conservation of the assets of the Fine Arts Museums and for setting the public course the Museums will follow. The Board shall assure that the Museums are open, accessible and vital contributors to the cultural life of the City and County, and that the Museums' programs bring art appreciation and education to all the people of the City and County.

The Board may enter into agreements with a not-for-profit or other legal entity to develop or operate the museums and to raise and maintain funds for the museums' support.

### SEC. 5.106. WAR MEMORIAL AND PERFORMING ARTS CENTER.

The governing board of the War Memorial and Performing Arts Center shall consist of eleven trustees appointed by the Mayor, pursuant to Section 3.100, for four-year terms. In making appointments the Mayor shall give due consideration to veterans and others who have a special interest in the purposes for which the Center exists. Members may be removed by the Mayor only pursuant to Section 15.105.

The governing board shall appoint and may remove a director.

## ARTICLE VIIIA: THE MUNICIPAL TRANSPORTATION AGENCY

Sec. 8A.100. Preamble.
Sec. 8A.101. Municipal Transportation Agency.
Sec. 8A.102. Governance and Duties.
Sec. 8A.103. Service Standards and Accountability.
Sec. 8A.104. Personnel and Merit System.
Sec. 8A.105. Municipal Transportation Fund.
Sec. 8A.106. Budget.
Sec. 8A.107. Municipal Transportation Quality Review.
Sec. 8A.108. Fare Changes and Route Abandonments.
Sec. 8A.109. Additional Sources of Revenue.
Sec. 8A.110. Planning and Zoning.
Sec. 8A.111. Citizens' Advisory Council.
Sec. 8A.112. Parking and Traffic; Incorporation Into Agency.
Sec. 8A.113. Parking and Traffic; Governance.

### SEC. 8A.100. PREAMBLE.

(a) The Municipal Railway and the Department of Parking and Traffic are vital to the economic and social fabric of San Francisco. San Francisco's transit system should be comparable to the best urban transit systems in the world's major cities. Specifically, San Francisco residents require:

1. Reliable, safe, timely, frequent, and convenient service to all neighborhoods;

2. A reduction in breakdowns, delays, overcrowding, preventable accidents;

3. Clean and comfortable vehicles and stations, operated by competent, courteous, and well trained employees;

4. Support and accommodation of the special transportation needs of the elderly and the disabled;

5. Protection from crime and inappropriate passenger behavior on the Municipal Railway; and

6. Responsive, efficient, and accountable management.

Through this measure, the voters seek to provide the transportation system with the resources, independence and focus necessary to achieve these goals.

The voters find that one of the impediments to achieving these goals in the past has been that responsibility for transportation has been diffused throughout City government. Accordingly, this Article places within the Municipal Transportation Agency the powers and duties relating to transit now vested in other departments, boards, and commissions of the City and County. This Article further requires that, to the extent other City and County agencies provide services to the Municipal Transportation Agency, those departments must give the highest priority to the delivery of such services.

At the same time, this Article is intended to ensure sufficient oversight of the Municipal Transportation Agency by, among other things, preserving the role of the City's Controller as to financial matters, the City Attorney as to legal matters, and the Civil Service Commission, as to merit system issues. In addition, this Article requires that outside audits be performed to ensure that required service levels are obtained with a minimum of waste.

This Article also requires that the Municipal Transportation Agency develop clear, measured performance goals, and publicize both its goals and its performance under those goals. As the workers of the Municipal Transportation Agency are vital to the improvements the voters seek, this Article authorizes incentives for excellence, and requires accountability-for both managers and employees-when performance falls short.

Finally, this Article is intended to strengthen the Municipal Transportation Agency's authority to: 1) manage its employees; 2) establish efficient and economical work rules and work practices that maximize the Agency's responsiveness to public, needs; and 3) protect the Railway's right to select, train, promote, demote, discipline, lay-off and terminate employees, managers, and supervisors based upon the highest standards of customer service, efficiency and competency.

(b) The Department of Parking and Traffic performs functions vital to the operation of the Municipal Railway. Congestion on City streets causes delays in transit operations. Therefore, the Municipal Transportation Agency must ensure that transit vehicles move through City streets safely and efficiently.

In addition, the residents of San Francisco require that the Department of Parking and Traffic: 1) value and protect pedestrians and bicyclists; 2) reduce congestion and air pollution through efficient use of the streets; and 3) protect the City's economic health by giving priority to commercial deliveries and access to local businesses.

(c) This Article shall be interpreted and applied in conformance with the above goals. (Added November 1999)

### SEC. 8A.101. MUNICIPAL TRANSPORTATION AGENCY.

(a) There shall be a Municipal Transportation Agency. The Agency shall include a Board of Directors and a Director of Transportation. The Agency shall include the Municipal Railway and the Department of Parking and Traffic, as well as any other departments, bureaus or operating divisions hereafter created or placed under the Agency. There shall also be a Citizens Advisory Committee to assist the Agency.

(b) Effective March 1, 2000, the Agency shall succeed to and assume all powers and responsibilities of the Public Transportation Commission.

(c) Effective July 1, 2000, the Municipal Railway shall become a department of the Agency and the full provisions of this Article shall be applicable.

(d) The Department of Parking and Traffic, upon its incorporation into the Agency pursuant to Section 8A.112, shall become a separate department of the Agency.

(e) The Board of Supervisors shall have the power, by ordinance, to abolish the Taxi Commission created in Section 4.133, and to transfer the powers and duties of that commission to the Agency's Board of Directors.

(f) Any transfer of functions occurring as a result of the above provisions shall not adversely affect the status, position, compensation, or pension or retirement rights and privileges of any civil service employees who engaged in the performance of a function or duty transferred to another office, agency, or department pursuant to this measure.

(g) Except as expressly provided in this Article, the Agency shall comply with all of the restrictions and requirements imposed by the ordinances of the City and County, including ordinances prohibiting discrimination of any kind in employment and contracting, such as Administrative Code Chapters 12B et seq., as amended from time to time. The Agency shall be solely responsible for the administration and enforcement of such requirements.

(h) The Agency may contract with existing City and County departments to carry out any of its powers and duties. Any such contract shall establish performance standards for the department providing the services to the Agency, including measurable standards for the quality, timeliness, and cost of the services provided. All City and County departments must give the highest priority to the delivery of such services to the Agency.

(i) The Agency may not exercise any powers and duties of the Controller or the City Attorney and shall contract with the Controller and the City Attorney for the exercise of such powers and duties. (Added November 1999)

### SEC. 8A.102. GOVERNANCE AND DUTIES.

(a) The Agency shall be governed by a board of seven directors appointed by the Mayor and confirmed after public hearing by the Board of Supervisors. All initial appointments must be made by the Mayor and submitted to the Board of Supervisors for confirmation no later than February 1, 2000. The Board of Supervisors shall act on those initial appointments no later than March, 1, 2000 or those appointments shall be deemed confirmed.

At least four of the directors must be regular riders of the Municipal Railway, and must continue to be regular riders during their terms. The directors must possess significant knowledge of, or professional experience in, one or more of the fields of government, finance, or labor relations. At least two of the directors must possess significant knowledge of, or professional experience in, the field of public transportation. During their terms, all directors shall be required to ride the Municipal Railway on the average once a week.

Directors shall serve four-year terms, provided, however, that two of the initial appointees shall serve for terms ending March 1, 2004, two for terms ending March 1, 2003, two for terms ending March 1, 2002, and one for a term ending March 1, 2001. Initial terms shall be designated by the Mayor. No person may serve more than three terms as a director. A director may be removed only for cause pursuant to Article XV. The directors shall annually elect a chair. The chair shall serve as chair at the pleasure of the directors. Directors shall receive reasonable compensation for attending meetings of the Agency which shall not exceed the average of the two highest compensations paid to the members of any board or commission with authority over a transit system in the nine Bay Area counties.

(b) The Agency shall:

1. Have exclusive charge of the construction, management, supervision, maintenance, extension, operation, use, and control of all property, as well as the real, personal, and financial assets of the Municipal Railway; and have exclusive authority over contracting, leasing, and purchasing by the Municipal Railway, provided that any Agency contract for outside services shall be subject to Charter Sections 10.104(12) and 10.104(15). Ownership of any of the real property of the City and County shall not be transferred to any private entity pursuant to any such contract;

2. Have the sole power and authority to enter into such arrangements and agreements for the joint, coordinated, or common use with any other public entity owning or having jurisdiction over rights-of-way, tracks, structures, subways, tunnels, stations, terminals, depots, maintenance facilities, and transit electrical power facilities;

3. Have the sole power and authority to make such arrangements as it deems proper to provide for the exchange of transfer privileges, and through-ticketing arrangements, and such arrangements shall not constitute a fare change subject to the requirements of Sections 8A.106 and 8A.108;

4. Have the authority to arrange with other transit agencies for bulk fare purchases, provided that if passenger fares increase as a result of such purchases, the increase shall be subject to review by the Board of Supervisors pursuant to Sections 8A.106 and 8A.108;

5. Notwithstanding Section 2.109, and except, as provided in Sections 8A.106 and 8A.108, have exclusive authority to fix the fares charged by the Municipal Railway and all other rates, fees, and charges for services provided by the Agency;

6. Have the authority to conduct investigations into any matter within its jurisdiction through the power of inquiry, including the power to hold public hearings and take testimony, and to take such action as may be necessary to act upon its findings; and

7. Exercise such other powers and duties as shall be prescribed by ordinance of the Board of Supervisors.

(c) The Agency's board of directors shall:

1. Appoint a director of transportation, who shall serve at the pleasure of the board. The director shall be employed pursuant to an indi-

vidual contract. His or her compensation shall be comparable to the compensation of the chief executive officers of the public transportation systems in the United States which the directors, after an independent survey, determine most closely resemble the Agency in size, mission, and complexity. In addition, the Agency shall provide an incentive compensation bonus plan for the director of transportation based upon the Agency's achievement of the milestones adopted pursuant to Section 8A.103.

2. Appoint an executive secretary who shall be responsible for administering the affairs of the directors and who shall serve at the pleasure of the board.

(d) The director of transportation shall appoint all subordinate personnel of the Agency, including a deputy director for the Municipal Railway, and, upon its incorporation into the Agency, a deputy director for Parking and Traffic. The deputy directors shall serve at the pleasure of the director of transportation. The director of transportation may serve as the deputy director for the Municipal Railway, but shall not be entitled to any greater compensation or benefits on that basis.

(e) Upon recommendation of the City attorney and the approval of the board of directors, the City attorney may compromise, settle, or dismiss any litigation, legal proceedings, claims, demands or grievances which may be pending for or on behalf of, or against the Agency relative to any matter or property solely under the Agency's jurisdiction. Unlitigated claims or demands against the Agency shall be handled as set forth in Charter Section 6.102. Any payment pursuant to the compromise, settlement, or dismissal of such litigation, legal proceedings, claims, demands, or grievances, unless otherwise specified by the Board of Supervisors, shall be made from the Municipal Transportation Fund.

(f) The Agency's board of directors, and its individual members, shall deal with administrative matters solely through the director of transportation or his or her designees. Any dictation, suggestion, or interference by a director in the administrative affairs of the Agency, other than through the director of transportation or his or her designees, shall constitute official misconduct; provided, however, that nothing herein contained shall restrict the directors' powers of hearing and inquiry as provided in this Section.

(g) Except to the extent otherwise provided in this Article, the Agency shall be subject to the provisions of this Charter applicable to boards, commissions, and departments of the City and County, including Sections 2.114, 3.105, 4.101, 4.103, 4.104, 4.113, 9.118, 16.100, and A8.346. Sections 4.102, 4.126, and 4.132 shall not be applicable to the Agency. (Added November 1999)

SEC. 8A.103. SERVICE STANDARDS AND ACCOUNTABILITY.

(a) The Municipal Railway shall be restored as soon as practicable to a level of service measured in service hours which is not less than that provided under the schedule of service published in the April 1996 timetable, although not necessarily in that configuration.

(b) No later than July 1, 2000, and by July 1 of each year thereafter, the Agency shall adopt mile-stones for the achievement of the goals specified in subsections (c) and (d). Milestones shall be adopted for each mode of transportation of the Municipal Railway, and for the Municipal Railway as a whole, with the goal of full achievement of the standards set in subsection (c) no later than July 1, 2004.

(c) The standards for the Agency with respect to the services provided by the Municipal Railway shall include the following minimum standards for on-time performance and service delivery:

1. On-time performance: At least 85 percent of vehicles must run on-time, where a vehicle is considered on-time if it is no more than one minute early or four minutes late as measured against a published schedule that includes time points; and

2. Service delivery: 98.5 percent of scheduled service hours must be delivered, and at least 98.5 percent of scheduled vehicles must begin service at the scheduled time.

(d) The standards for both managers and employees of the Agency with respect to the services, provided by the Municipal Railway shall also include other measurable standards for system reliability, system performance, staffing performance, and customer service, including:

1. Passenger, public, and employee safety and security;

2. Coverage of neighborhoods and equitable distribution of service;

3. Level of crowding;

4. Frequency and mitigation of accidents and breakdowns;

5. Improvements in travel time, taking into account adequate recovery and lay-over times for operators;

6. Vehicle cleanliness, including absence of graffiti;

7. Quality and responsiveness of customer service;

8. Employee satisfaction;

9. Effectiveness of the preventive maintenance program; and

10. Frequency and accuracy of communications to the public.

(e) The performance measures adopted in Section 4 of this measure shall be published as rules of the Agency and utilized to determine the achievement of the performance standards and milestones adopted by the Agency for the Municipal Railway. The performance measures shall be subject to amendment after public hearing by a vote of the Agency board. The Agency shall regularly publish reports on its attainment of those standards and milestones. Nothing herein shall prohibit the Agency from using additional performance measures. (Added November 1999)

SEC. 8A.104. PERSONNEL AND MERIT SYSTEM.

(a) The Agency shall establish its own personnel/labor relations office. The director of transportation shall appoint a personnel/labor relations manager, who shall serve at the pleasure of the director of transportation.

(b) Except as otherwise provided in this Section, the Agency shall be governed by the rules of the civil service system administered by the City and appeals provided in civil service rules shall be heard by the City's Civil Service Commission. Unless otherwise agreed by the Agency and affected employee organizations, appeals to the Civil Service Commission shall include only those matters within the jurisdiction of the Civil Service Commission which establish, implement, and regulate the civil service merit system as listed in Section A8.409-3.

(c) Effective July 1, 2000, except for the administration of health services, the Agency shall assume all powers and duties vested in the Department of Human Resources and the Director of Human Resources under Articles X and XI of this Charter in connection with job classifications within the Municipal Railway performing "service-critical" functions. Except for the matters set forth in subsection (f), the Department of Human Resources and the Director of Human Resources shall maintain all powers and duties under Articles X and XI as to all other Agency employees.

(d) On or before April 15, 2000, the Agency shall designate "service-critical" classifications and functions for all existing classifications used by the Municipal Railway; provided, however, that employees in classifications designated as "service-critical" shall continue to be covered by any Citywide collective bargaining agreement covering their classifications until the expiration of that agreement.

(e) For purposes of this Article, "service-critical" functions are:

1. Operating a transit vehicle, whether or not in revenue service;

2. Controlling dispatch of, or movement of, or access to, a transit vehicle;

3. Maintaining a transit vehicle or equipment used in transit service, including both preventive maintenance and overhaul of equipment and systems, including system-related infrastructure;

4. Regularly providing information services to the public or handling complaints; and

5. Supervising or managing employees performing functions enumerated above.

The Agency shall consult with affected employee organizations before designating particular job classifications as performing "service-critical" functions. If an employee organization disagrees with the Agency's designation of a particular job classification as "service-critical" pursuant to the above standards, the organization may, within seven days of the Agency's decision, request immediate arbitration. The arbitrator shall be chosen pursuant to the procedures for the selection of arbitrators contained in the memorandum of understanding of the affected employee organization. The arbitrator shall determine only whether the Agency's designation is reasonable based on the above standards. The arbitrator's decision shall be final and binding.

The Agency may designate functions other than those listed above, and the job classifications performing those additional functions, as "service-critical," subject to the consultation and arbitration provisions of this Section. In deciding a dispute over such a designation, the arbitrator shall decide whether the job functions of the designated classes relate directly to achievement of the goals and milestones adopted pursuant to Section 8A.103 and are comparable to the above categories in the extent to which they are critical to service.

(f) In addition, the Agency shall, with respect to all Agency employees, succeed to the powers and duties of the Director of Human Resources under Article X to review and resolve allegations of discrimination, as defined in Article XVII, against employees or job applicants, or allegations of nepotism or other prohibited forms of favoritism; provided, however, that the Agency's resolution of allegations of discrimination must be approved by the City's Director of Human Resources. To the extent resolution of a discrimination complaint or request for accommodation involves matters or employees beyond the Agency's jurisdiction, the Agency shall coordinate with and be subject to applicable determinations of the Director of Human Resources.

(g) The Agency shall be responsible for creating and, as appropriate, modifying Municipal Railway bargaining units for classifications designated by the Agency as "service-critical" and shall establish policies and procedures pursuant to Government Code section 3507 and .3507.1 for creation and modification of such bargaining units. When the Agency creates or modifies a bargaining unit, employees in existing classifications placed in such bargaining unit shall continue to be represented by their current employee organizations.

(h) The Agency may create new classifications of employees doing specialized work for the Agency. Such classifications shall be subject to the civil service provisions of the Charter unless exempted pursuant to Section 10.104 or subsection (i).

(i) The Agency may create new classifications and positions in those classifications exempt from the civil service system for managerial employees in addition to those exempt positions provided in Section 10.104; provided, however, that the total number of such exempt new positions shall not exceed 1.5 percent of the Agency's total workforce, exclusive of the exempt positions provided in Section 10.104. This provision shall not be utilized to eliminate personnel holding existing permanent civil service managerial positions on November 2, 1999.

Persons serving in exempt managerial positions shall serve at the pleasure of the director of transportation. Such exempt management employees, to the extent they request placement in a bargaining unit, shall not be placed in the same bargaining units as non-exempt employees of the Agency.

(j) The Civil Service Commission shall annually review both exempt and non-exempt classifications of the Agency to ensure compliance with the provisions of subsections (h) and (i).

(k) Upon the expiration of current labor contracts, and except for retirement benefits, the wages, hours, working conditions, and benefits of the employees in classifications within the Municipal Railway designated by the Agency as "service-critical" shall be fixed by the Agency

after meeting and conferring as required by the laws of the State of California and this Charter, including Sections A8.346, A8.404 and A8.409. These agreements shall utilize, and shall not alter or interfere with, the health plans established by the City's Health Service Board; provided, however, that the Agency may contribute toward defraying the cost of employees' health premiums. For any job classification that exists both as a "service-critical" classification in the Municipal Railway and elsewhere in City service, the base wage rate negotiated by the Agency for that classification shall not be less than the wage rate set in the Citywide memorandum of understanding for that classification.

(l) Notwithstanding subsection (k), the Agency may, in its sole discretion, utilize the City's collective bargaining agreements with any employee organization representing less than 10 percent of the Municipal Railway's workforce.

(m) Notwithstanding any limitations on compensation contained in Section A8.404, and in addition to the base pay established in collective bargaining agreements, all agreements negotiated by the Agency relating to compensation for Municipal Railway managers and employees in classifications designated by the Agency as "service-critical" shall provide incentive bonuses based upon the achievement of the service standards in Section 8A.103(c) and other standards and milestones adopted pursuant to Section 8A.103. Such agreements may provide for additional incentives based on other standards established by the Agency, including incentives to improve attendance. The Agency shall also establish a program that provides incentive bonuses for all managers, including all managers exempt from the civil service system, based on the achievement of these standards and milestones.

(n) For employees whose wages, hours and terms and conditions of employment are set by the Agency pursuant to Sections A8.404 or A8.409 et seq., the Agency shall exercise all powers of the City and County, the Board of Supervisors, the Mayor, and the Director of Human Resources under those sections. For employees covered by Section A8.409 et seq., the mediation/arbitration board set forth in Section A8.409-4 shall consider the following additional factors when making a determination in any impasse proceeding involving the Agency: the interests and welfare of transit riders, residents, and other members of the public; and the Agency's ability to meet the costs of the decision of the arbitration board without materially reducing service. The Agency shall perform the functions of the Civil Service Commission with respect to certification of the average of the two highest wage schedules for transit operators in comparable jurisdictions pursuant to Section A8.404(a), and conduct any actuarial study necessary to implement Section A8.404(f).

(o) The voters find that unscheduled employee absences adversely affect customer service. Accordingly, not later than January 1, 2001, the agency shall create a comprehensive plan for the reduction of unscheduled absences. In addition, the Agency shall take all legally permitted steps to eliminate unexcused absences. The Agency shall have no authority to approve any memorandum of understanding or other binding agreement which restricts the authority of the Agency to administer appropriate discipline for unexcused absences.

(p) Before adopting any tentative agreement reached as a result of negotiations, mediation or arbitration, the Agency shall, at a duly noticed public meeting, disclose in writing the contents of such tentative agreement, a detailed analysis of the proposed agreement, a comparison of the differences between the agreement reached and the prior agreement, and an analysis of all costs for each year of the term of such agreement. Such tentative agreement between the Agency and employee organization shall not be approved by the Agency until 30 days after the above disclosures have been made. (Added November 1999)

### SEC. 8A.105.  MUNICIPAL TRANSPORTATION FUND.

(a) There is hereby established a fund to provide a predictable, stable, and adequate level of funding for the Agency, which shall be called the Municipal Transportation Fund. The fund

shall be maintained separate and apart from all other City and County funds. Monies therein shall be appropriated, expended, or used by the Agency solely and exclusively for the operation including, without limitation, capital improvements, management, supervision, maintenance, extension, and day-to-day operation of 1) the Agency; 2) the Municipal Railway; 3) upon its incorporation into the Agency, the Department of Parking and Traffic; and 4) any other division of the Agency subsequently created and performing transportation-related functions. Monies in the Fund may not be used for any other purposes than those identified in this Section.

(b) Beginning with the fiscal year 2000-2001 and in each fiscal year thereafter, there is hereby set, aside to the Municipal Transportation Fund the following:

1. An amount (the "Base Amount") which shall be no less than the amount of all appropriations from the General Fund, including all supplemental appropriations, for the fiscal year 1998-1999 or the fiscal year 1999-2000, whichever is higher (the "Base Year"), adjusted as provided in subsection (c), below, for (1) the Municipal Railway; and (2) all other City and County commissions, departments and agencies providing services to the Municipal Railway, including the Department of Human Resources and the Purchasing Department, for the provision of those services. The Base Amount for the Department of Parking and Traffic and the Parking Authority shall be established in the same fashion but using fiscal years 2000-2001 and 2001-2002 for the services being incorporated into the Agency.

2. Subject to the limitations and exclusions in Sections 4.113 and 16.110, the revenues of the Municipal Railway, and, upon their incorporation into the Agency, the revenues of the Department of Parking and Traffic, and the Parking Authority; and

3. All other funds received by the City and County from any source, including state and federal sources, for the support of the Municipal Railway.

(c) The Base Amount shall initially be determined by the Controller. Adjustments to the Base Amount shall be made as follows:

1. The Base Amount shall be adjusted for each year after fiscal year 2000-2001 by the Controller based on calculations consistent from year to year, by the percentage increase or decrease in aggregate City and County discretionary revenues. In determining aggregate City and County discretionary revenues, the Controller shall only include revenues received by the City which are unrestricted and may be used at the option of the Mayor and the Board of Supervisors for any lawful City purpose. Errors in the Controller's estimate of discretionary revenues for a fiscal year shall be corrected by adjustment in the next year's estimate.

2. An adjustment shall also be made for any increases in General Fund appropriations to the Agency in subsequent years to provide continuing services not provided in the Base Year, but excluding additional appropriations for one-time expenditures such as capital expenditures or litigation judgments and settlements.

3. Further, when new parking revenues increase due to policy changes in fines, taxes or newly-created positions, the Base Amount shall be reduced by 50 percent of such increase to reduce the Agency's reliance on the General Fund.

(d) The Treasurer shall set aside and maintain the amounts required to be set aside by this Section, together with any interest earned thereon, in the Municipal Transportation Fund, and any amounts unspent or uncommitted at the end of any fiscal year shall be carried forward, together with interest thereon, to the next fiscal year for the purposes specified in this Article. (Added November 1999)

**SEC. 8A.106. BUDGET.**

The Agency shall be subject to the provisions of Article IX of this Charter except:

(a) No later than March 1 of each year, after professional review, public hearing and after receiving the recommendations of the Citizens' Advisory Council, the Agency shall submit its

proposed budget for the next fiscal year to the Mayor and the Board of Supervisors for their review and consideration. The Agency shall propose a base budget that is balanced without the need for additional funds over the Base Amount, but may include fare increases and decreases, and reductions or abandonment of service. The Mayor shall submit the base budget to the Board of Supervisors, without change. Should the Agency request additional support over the Base Amount, it shall submit an augmentation request for those funds in the standard budget process and subject to normal budgetary review and amendment.

(b) At the time the budget is adopted, the Agency shall certify that the budget is adequate in all respects to make substantial progress towards meeting the goals, objectives, and performance standards established pursuant to Section 8A.103 for the fiscal year covered by the budget.

(c) No later than August 1, the Board of Supervisors may allow the Agency's base budget to take effect without any action on its part or it may reject but not modify the Agency's base budget by a two-thirds' vote. Any fare or service change proposed in the base budget shall be considered accepted unless rejected by a two-thirds' vote on the entire base budget. Should the Board reject the base budget, it shall make additional interim appropriations to the Agency from the Municipal Transportation Fund sufficient to permit the Agency to maintain all operations through the extended interim period until a base budget is adopted. Any request for augmentation funding shall be approved, modified, or rejected under the general provisions of Article IX. (Added November 1999)

## SEC. 8A.107. MUNICIPAL TRANSPORTATION QUALITY REVIEW.

(a) The Agency shall biennially contract with a nationally recognized management or transportation consulting firm with offices in the City and County for an independent review of the quality of its operations. The contract shall be competitively bid and approved by the Controller and Board of Supervisors. The review shall contain:

1. A detailed analysis of the extent to which the Agency has met the goals, objectives, and performance standards it is required to adopt under Section 8A.103, and the extent to which the Agency is expected to meet those goals, objectives, and performance standards in the two fiscal years for which the review is submitted, and independent verification of the Agency's reported performance under the performance measures adopted pursuant to Section 4 of this measure; and

2. Such recommendations for improvement in the operation of the Agency as the firm conducting the review deems appropriate.

(b) The results of the review shall be presented promptly to the Citizens' Advisory Council, the Agency, the Board of Supervisors, and the Mayor by the reviewing firm; and the Citizens' Advisory Council, the Agency, and the Board of Supervisors shall each promptly hold at least one public hearing thereon. (Added November 1999)

## SEC. 8A.108. FARE CHANGES AND ROUTE ABANDONMENTS.

(a) Any proposed change in fares shall be submitted to the Board of Supervisors as part of the Agency's budget under Section 8A.106, and may be rejected at that time by a two-thirds' vote of the Board.

The Agency shall base any proposed change in Municipal Railway fares on the following criteria:

1. The Municipal Railway's need for additional funds for operations and capital improvements.

2. The extent to which the increase is necessary to meet the goals, objectives, and performance standards previously established by the Agency pursuant to Section 8A.103.

3. The extent to which the Agency has diligently sought other sources of funding for the operations and capital improvements of the Municipal Railway.

　　4. The need to keep Municipal Railway fares low to encourage maximum patronage.

　　5. The need to increase fares gradually over time to keep pace with inflation and avoid large fare increases after extended periods without a fare increase.

　　(b) For purposes of this Article, a "route abandonment" shall mean the permanent termination of service along a particular line or service corridor. If the Agency proposes to abandon a route at any time other than as part of the budget process as provided in Section 8A.106(a), it shall first submit the proposal to the Board of Supervisors. The Board of Supervisors may, after a noticed public hearing, reject the proposed route abandonment by a two-thirds' vote of its members taken within 30 days after the proposal is submitted by the Agency. (Added November 1999)

## SEC. 8A.109. ADDITIONAL SOURCES OF REVENUE.

　　The Mayor, the Board of Supervisors, and the Agency diligently shall seek to develop new sources of funding for the Agency's operations, including sources of funding dedicated to the support of such operations, which can he used to supplement or replace that portion of the Municipal Transportation Fund consisting of appropriations from the General Fund of the City and County. To the extent permitted by State law, the Agency may submit any proposal for increased or reallocated funding to support all or a portion of the operations of the Agency, including, without limitation, a tax or special assessment, directly to the electorate for approval without the further approval of the Mayor or the Board of Supervisors. The Agency shall be authorized to conduct any necessary studies in connection with considering, developing, or proposing such revenue sources. (Added November 1999)

## SEC. 8A.110. PLANNING AND ZONING.

　　The planning and zoning provisions of this Charter and the Planning Code as they may be amended from time to time shall apply to all real property owned or leased by the Agency. (Added November 1999)

## SEC. 8A.111. CITIZENS' ADVISORY COUNCIL.

　　The Agency shall establish a Citizens' Advisory Council of fifteen members which shall consist of one person appointed by each member of the Board of Supervisors and four members appointed by the Mayor. Each member must be a resident of the City and County. No fewer than ten members of the Council must be regular riders of the Municipal Rail-way. At least two members must use the Municipal Railway's paratransit system, and at least three of the members must be senior citizens over the age of 60. The membership of the Council shall be reflective of the diversity and neighborhoods of the City and County. The Council may provide recommendations to the Agency with respect to any matter within the jurisdiction of the Agency and shall be allowed to present reports to the Agency's board of directors. The members of the Council shall be appointed to four-year terms and shall serve at the pleasure of their appointing power. Staggered terms for the initial appointees to the Council shall be determined by lot. (Added November 1999)

## SEC. 8A.112. PARKING AND TRAFFIC; INCORPORATION INTO AGENCY.

　　(a) By July 1, 2001, the Agency and the Department of Parking and Traffic shall prepare and submit to the Mayor and the Board of Supervisors a joint plan for incorporating the Department into the Agency.

　　(b) Effective July 1, 2002, the Department of Parking and Traffic shall become a separate department of the Municipal Transportation Agency and Charter Section 4.116, establishing the Parking and Traffic Commission, shall be repealed. Effective that date, the Agency shall have all the same powers and duties with respect to the Department of Parking and Traffic that it has with respect to the Municipal Railway, and shall succeed to all powers and duties of the Parking and Traffic Commission.

　　Effective July 1, 2002, the Agency's board of directors shall also exercise all remaining powers of the Parking and Traffic Commission for all

purposes, including the power of members of the Parking and Traffic Commission to serve ex officio as members of the Parking Authority under Section 32657 of the Streets and Highways Code. The chair of the Agency's board of directors shall designate annually the directors to serve as members of the Parking Authority. Any person may serve concurrently as a member of the Agency's board of directors and as a member of the Parking Authority. It is the policy of the City and County that the Agency exercise all powers vested by State law in the Parking Authority.

(c) Except as provided in subsection (a), no provision of this Article shall apply to the Department of Parking and Traffic prior to July 1, 2002. (Added November 1999)

**SEC. 8A.113. PARKING AND TRAFFIC; GOVERNANCE.**

(a) The Agency shall manage the functions of the Department of Parking and Traffic so that the department:

1. Provides priority to transit services in the utilization of streets, particularly during commute hours;

2. Facilitates the design and operation of City streets to enhance alternative forms of transit, such as pedestrian, bicycle, and pooled or group transit (including taxis);

3. Proposes and implements street and traffic changes that gives the highest priority to impacts on public transit, pedestrians, commercial delivery vehicles, and bicycles;

4. Integrates modern information and traffic-calming techniques to promote safer streets and promote usage of public transit; and

5. Develops a safe, interconnected bicycle circulation network.

(b) The Agency shall manage the Parking Authority so that it does not construct new or expanded parking facilities unless the Agency finds that the costs resulting from such construction and the operation of such facilities will not reduce the level of funding to the Municipal Railway from parking and garage revenues under Section 16.110 to an amount less than that provided for fiscal year 1999-2000. (Added November 1999)