# EXHIBIT S-2

184.12(g)(2)(A). Any plan submitted by any publication(s) may include one or more proposed locations.

(ii) The Director may amend or reject all or part of a plan submitted by at least three-quarters (¾) of the publications that are historically present at a particular survey location only if the plan fails to comply with this Section and the guidelines. If the Director amends or rejects all or part of such a plan, he shall explain the basis for the amendment or rejection in writing, citing the portions of this Section and/or the guidelines upon which he relies, and shall afford those publications a reasonable opportunity to revise their plan to address the grounds for such amendment or rejection. If those publications do not do so, the Director may determine the locations of fixed pedestal units as to which he amended or rejected the publishers' plan provided such determination is in compliance with this Section and the guidelines.

(iii) If at least three-quarters (¾) of the publications that are historically present at a particular survey location revise their plan to address the grounds for the Director's amendment or rejection thereof within a reasonable time, and those publications and the Director cannot agree on locations for fixed pedestal units in the zone following such revisions, the locations in dispute may be resolved by the Newsrack Advisory Committee in accordance with all requirements of this section, the guidelines, and the vendor contract, if and only if the Director receives a request for such Newsrack Advisory Committee review submitted by at least three-quarters (¾) of the publications that are historically present at the survey location in dispute. The Committee's determination (or, if the Committee fails to promptly decide, the Director's most recent determination) shall constitute the City's final administrative determination. Any party may bring a court reporter to any such Committee meeting and record a transcript of the meeting.

(B) **Petition Units.** After initial implementation within a fixed pedestal zone has been completed, any publication may submit a petition to the Director requesting the installation of an additional fixed pedestal unit be installed at a location specified in the petition. Other interested publications may submit a proposal for the location of the petition unit to the Director. If the Director receives a proposal for the location of the petition unit from at least three-quarters (¾) of the interested publications (including the petitioner) that complies with this section and the guidelines, the location set forth in such proposal shall be the proposed location or purposes of locating the petition unit. If the Director does not receive such a proposal, the location proposed in the petition shall be the proposed location for purposes of locating the petition unit. The location of each petition unit shall be determined in accordance with procedures contained in the guidelines. If the location as thereby determined is consistent with the requirements of this section and the guidelines, the Director shall authorize the installation of the fixed pedestal unit at the specified location. The Director shall deny any petition under this paragraph that would violate the maximum density levels set forth in the guidelines, or that would cause the total number of fixed pedestal units to exceed the number of fixed pedestal units available under any vendor contract. However, the Director shall not deny any petition that complies with Section 184.12 and the guidelines on the ground that one or more fixed pedestal units are being held in reserve.

(C) **Relocated Units.** In the event that the vendor initiates relocation of any fixed pedestal unit due to excessive repair costs pursuant to the vendor contract, the Director shall promptly select the location to which the unit shall be relocated and reconfigure the fixed pedestal zone to exclude the area from which the fixed pedestal unit is being relocated, as set forth in the guidelines. The Director shall maintain a list of potential locations for such purpose.

(D) **Reserve Units.** To accommodate the installation of additional fixed pedestal units after initial implementation, and to respond to changing conditions and publications that may seek distribution space in fixed pedestal units in the future, the Director shall implement this



section in a manner that maintains some of the fixed pedestal units authorized under a vendor contract in reserve. Such reserve shall be numerous enough to allow the maximum number of fixed pedestal units that can be installed in existing fixed pedestal zones in compliance with this section and the guidelines, to be installed in those zones. No request, petition, or plan for a fixed pedestal unit that complies with this Section and the guidelines shall be denied on the ground that one or more fixed pedestal units are being held in reserve.

(h) **ALLOCATION OF SPACE WITHIN FIXED PEDESTAL UNITS.**

(1) **General.**

(A) Except as this section or the guidelines expressly provide otherwise, no publication that has obtained a space in a fixed pedestal unit or cluster of fixed pedestal units may receive a second space in that unit or cluster until all other publications that have applied for space in that unit or cluster of units have had the opportunity to select a space.

(B) Notwithstanding any other provision in this Section, (i) no publication may receive more than one newsrack box per fixed pedestal unit or cluster of fixed pedestal units on the basis of historical presence, and (ii) a publication's use of more than one freestanding newsrack at a particular area prior to initial implementation shall not be a ground for that publication to receive more than one newsrack box on the basis of historical presence.

(2) **Initial Implementation.** During initial implementation throughout a fixed pedestal zone, space in each fixed pedestal unit or cluster of fixed pedestal units in that zone shall be allocated as follows:

(A) If possible, publications that have applied for space in such a unit or cluster shall agree unanimously among themselves with respect to allocation of space in the fixed pedestal unit(s).

(B) Absent such agreement, the Director shall allocate space in the unit or cluster among publications that have applied for such space as follows:

(i) First priority shall be given to publications that were historically present in the area (as defined in Section 184.12(b)(10)) in which were located the freestanding newsracks that the fixed pedestal unit or cluster of fixed pedestal units is intended to replace.

(ii) Second priority, in the case of fixed pedestal units) that are located at a corner area (as defined in Section 184.12(b)(10)), shall be given to those publications that were historically present in the immediately adjacent midblock area. Second priority, in the case of fixed pedestal unit(s) that are located at a midblock area (as defined in Section 184.12(b)(10)), shall be given to those publications that were historically present in the immediately adjacent corner area.

(iii) Third, priority shall be given to all other publications that have applied for space in the fixed pedestal unit or cluster of fixed pedestal unit, including, subject to Section 184.12(h)(1)(a) publications that were historically present at that area or an immediately adjacent midblock area but have already received one newsrack box in that unit or cluster on the basis of such historical presence.

(iv) The Director shall implement this allocation scheme as to fixed pedestal units located at corner areas before doing so at immediately adjacent midblock areas. In implementing this allocation scheme as to each fixed pedestal unit or cluster of fixed pedestal units, the Director shall conduct a meeting at which each publication in each category, beginning with category (i), historically present publications, may select a newsrack box in a given fixed pedestal unit or cluster until all newsrack boxes have been selected. If any newsrack boxes remain unselected after each publication in category (i) that so desires has chosen a newsrack box in that fixed pedestal unit or cluster, each publication in category (ii) shall select a newsrack box until all newsrack boxes have been selected or each publication in category (ii) that so desires has chosen

a newsrack box in that fixed pedestal unit or cluster, and so forth through category (iii). The publications in each category may agree among themselves as to the order they will follow in selecting newsrack boxes; if they are unable to agree, publications in categories (i) and (ii) shall select according to survey order, and publications in category (iii) shall select according to such order as the Director determines by lots.

(3) **Petition Units.** Space in each petition unit shall be allocated as follows:

(A) If possible, publications seeking space in a petition unit shall agree unanimously among themselves with respect to the allocation of space in the unit.

(B) Absent such agreement, the Director shall allocate space in the unit as follows:

(i) First priority shall be given to each publication that was historically present in the zone, according to the most recently completed survey of that zone, and that, during initial implementation in that zone, sought but did not receive the maximum number of newsrack boxes that could be allocated to it on the basis of historical presence, in accordance with this section and the guidelines.

(a) To receive first priority, each such publication, within twelve (12) months before the Director received the petition, must have been distributed from a freestanding newsrack that, according to the most recently completed survey of that zone, was located on the same block face as, or a block face that immediately adjoins and is on the same street and same side of the street as, the block face on which the petition unit will be located, and that has not previously been used successfully as a basis for first priority in space allocation in any petition unit.

(b) Within the group of publications described in subsection 184.12(h)(3)(B)(i), publications shall select space in the petition unit based on frequency of publication, with all publications published at least once per week choosing first, followed by all publications published less often than once per week but more often than once per month, followed by all publications published once per month or less frequently. Within each such frequency category, publications shall select space in the petition unit in any mutually agreed upon order, or, absent such agreement, in an order determined by lots.

(ii) Second priority shall be given to all other publications that have applied for space in the petition unit.

(a) The order it which such publications shall select space in the petition unit shall be determined according to Section 184.12(h)(3)(B)(i)(b).

(b) Notwithstanding subsection (a), above, if any such publication already occupies at least one newsrack box in a fixed pedestal unit located either on the same block face as the petition unit ("the petition block face"), the block face(s) immediately across the street from the petition block face, or either of the two block faces that immediately adjoin and are on the same street and same side of the street as the petition block face, that publication shall not select space in the petition unit until all other publications that have applied for space in the petition unit have received at least one such space.

(4) **Abandoned Newsrack Boxes.** When a newsrack box in an already installed fixed pedestal unit has been abandoned or otherwise becomes available for reallocation, space in that newsrack box shall be allocated in the same manner as space in a petition unit, provided that:

(A) Such a newsrack box may not be reallocated to the publication that occupied it immediately before such re-allocation, unless no other publication seeks space in that newsrack box; and

(B) The twelve (12) month period within which a historically present publication must have used a freestanding newsrack in order to obtain first priority in such allocation shall consist of the twelve (12) months before the newsrack box became available for re-allocation.

(5) **Relocated Fixed Pedestal Units.** Space in a fixed pedestal unit that has been relocated due to excessive repair costs pursuant to s vendor contract shall be allocated in the same manner as space in a petition unit, provided that the



twelve (12) month period within which a historically present publication must have used a freestanding newsrack in order to obtain first priority in such allocation shall consist of the twelve (12) months before the Director selects the location at which the fixed pedestal unit shall be installed.

(6) **Split Door Newsrack Boxes.**

(A) Newsrack boxes may be split into two separate distribution areas to distribute free publications, including those historically present free publications that sought but did not receive the maximum number of newsrack boxes that could be allocated to them on the basis of historical presence, in accordance with this section and the guidelines.

(B) Space within split newsrack boxes shall be allocated consistent with the guidelines, provided that:

(i) Any free publication may elect to designate a newsrack box in which space has been assigned to it as a split door newsrack box, so long as one-half of the split door newsrack box is continuously used to distribute that publication ("the primary publication").

(ii) The other half of the split door newsrack box may be used to distribute the primary publication, or to distribute any other free publication published by publisher of the primary publication ("a secondary publication"), regardless of the secondary publication's frequency of publication or when the secondary publication was first published or distributed.

(iii) The publisher of the primary publication may substitute any one of its free publications (including the primary publication) for another as the secondary publication, consistent with this section and the guidelines, so long as one-half of the split box is continuously used to distribute the primary publication.

(i) **STANDARDS FOR DESIGN, MAINTENANCE AND DISPLAY.** The vendor and permit holders shall comply with the following requirements. Failure to comply with any of these requirements shall constitute a violation of this section, and shall be grounds for imposition of penalties in accordance with subsections 184.12(j) and 184.12(k).

(1) Except as this subsection or the guidelines provide otherwise, and subject to Section 184.12(d)(3)(O) with respect to the current provisions of the "First Amended and Restated Pedestal-Mounted Newsrack Agreement By and Between the City and County of San Francisco and Clear Channel Adshel. Inc.," the vendor shall be responsible for ensuring that all fixed pedestal units and newsrack boxes under its control are in compliance with the following requirements:

(A) Every fixed pedestal unit and newsrack box shall be maintained in a neat and clean condition and in good repair at all times. The vendor shall be responsible for inspecting fixed pedestal units and newsrack boxes under its control to ensure compliance with this section no less than once per day Monday through Friday;

(B) Every fixed pedestal unit and newsrack box shall be constructed, installed and maintained in a safe and secure condition;

(C) Every fixed pedestal unit and newsrack box shall be kept free of graffiti and rust, and shall be repaired on a regular basis;

(D) Fixed pedestal units or newsrack boxes that are damaged or defaced shall be replaced, repaired or removed within ten (10) business days from the date of written notice from the Director;

(E) Except as authorized pursuant to a vendor contract with respect to advertising panels and names and logos of the vendor and/or any entities with whom it has contracted for services to performance of said contract, no fixed pedestal unit or newsrack box shall be used for advertising signs or publicity purposes other than for the advertising, identification, promotion, display, sale or distribution of the newspaper(s) or other publication(s) distributed from it;

(F) Where a vendor is authorized to place advertising on fixed pedestal units, the vendor shall comply with the following requirements:

(i) Advertising shall be placed only on the back side of fixed pedestal units, and only on such units dispensing six or more publications;



(ii) Advertising on any individual fixed pedestal unit shall be less than eighteen (18) square feet in area;

(iii) No portion of the advertising shall extend above the top edge of the fixed pedestal unit;

(iv) Each fixed pedestal unit containing advertising shall have a sign adjacent to such advertising that states in typeface at least one inch high, the following disclaimer:

**ADVERTISING ON THIS NEWSRACK IS NOT CONTROLLED BY, AND MAY NOT REFLECT THE VIEWS OF, ANY OF THE PUBLICATIONS DISTRIBUTED WITHIN.**

(v) The letters comprising the above disclaimer shall be printed in white reflective lettering against a black disclaimer background. The disclaimer shall be centered above or below any panel containing such advertising.

(2) The permit holder shall comply with the following requirements:

(A) In any circumstances where the permit holder decides to vacate a location, the permit holder shall promptly notify the Director and the vendor of the intention to vacate the location;

(B) All coin-operated newsrack boxes shall be equipped with a coin-return device that is maintained in good repair and working order to enable persons to secure full refunds if they are unable to receive the publication paid for. In the case of coin-operated newsrack boxes, the permittee shall be responsible, at its own cost, for the following, unless it timely elects to have the vendor assume such responsibility pursuant to the vendor contract:

(i) For maintenance, repair, and replacement of all hardware related to the charging or coin mechanism or to the security of coins, including all locks and keys;

(ii) For remedying any problem with the functionality of the door of its newsrack box where such remedy requires access to any coin mechanism panel, or access to or repair of any hardware relating to the charging or coin mechanism: and

(iii) For any changes to, or replacement or resetting of, any mechanism necessary to effect a change in the price of a publication distributed from the newsrack box.

(C) Where a vendor contract authorizes any publication to perform or to receive reimbursement from the vendor for any repair, maintenance, or replacement of any part of a fixed pedestal unit, each publication exercising such authority shall comply with all conditions or restrictions on such authority as may be stated in this section, the guidelines, and the vendor contract. Except as otherwise provided in the vendor contract, each publication shall use only vendor-approved parts, cleaning products, and methods to perform any repair, maintenance or replacement of any part of a fixed pedestal unit authorized by that vendor contract.

(D) Except as otherwise authorized by this subsection or the guidelines, and except as authorized pursuant to a vendor contract with respect to advertising panels and names and logos of the vendor and/or any entities with whom it has contracted for services in performance of said contract, no newsrack box shall be used for advertising signs or publicity purposes other than for the advertising, display, sale or distribution of the newspaper(s) or other publication(s) distributed from it. Consistent with the guidelines, each publication may display its name on a specified area on the front of its newsrack boxes, on the side of any fixed pedestal unit in which it has received space in a newsrack box, and on the back of such units, where the backs of such units are not used to display advertising.

(E) Each newsrack box shall display the permit holder's name, street address (Post Office Box numbers will not be allowed), and phone number.

(F) Any permit holder distributing publications containing on the first or cover page material harmful to minors as defined in Section 313 of the California Penal Code, such that the harmful material is visible in the newsrack box, shall equip each newsrack box containing such publications with blinder racks so that the lower two-thirds (2/3) of the first or cover page is not



exposed to view. The permit holder shall be responsible for the installation and maintenance of the blinder racks.

(3) The requirements of this subsection are not intended to alter the obligation of any vendor(s) or permit holders to comply, with all other applicable laws. Except as expressly stated otherwise, no provision of this section, the guidelines, or any vendor contract, including those provisions concerning the repair, maintenance, or replacement of any portion of any fixed pedestal unit or newsrack box, is intended to diminish any right or remedy that any party may have relating to damage to its property.

(4) To the extent any provision in a vendor contract requires any vendor to reimburse any publication for the publication's repair, maintenance, or replacement of any portion of a fixed pedestal unit or newsrack box, any publication denied reimbursement required under such provision may only bring suit against the vendor under this section, and only to obtain reimbursement for such repair, maintenance or replacement, but not attorneys' fees in such suit. Nothing contained herein or in the guidelines shall be construed to grant any publication contractual rights under a vendor contract.

(5) To the extent any provision in a vendor contract authorizes or requires the Director to decide any matter concerning a publication's authority to repair, maintain, or replace any portion of a fixed pedestal unit or newsrack box, or to obtain reimbursement from the vendor for such repair, Maintenance, or replacement, (i) the Director's decision concerning such matter shall be the City's final administrative decision, and (ii) any delay by the Director in making such decision or in otherwise complying with his obligations under such provision shall not prejudice any publication's right to the potential reimbursement provided by such provision.



(j) ENFORCEMENT; VIOLATIONS; HEARINGS.

(1) **Newsracks posing an immediate danger to persons, vehicles or property.** The Director is authorized to remove and impound without prior notice any newsrack that poses an immediate danger to persons, vehicles or property. Such removal and impoundment shall be in accordance with the notice and hearing procedures set forth below.

(A) **Notice of Violation.** Within twenty-four (24) hours after such removal, the Director shall by telephone notify the permit holder or owner of the removal. Within forty-eight (48) hours after removal, the Director shall notify the owner in writing of the removal and the reasons for removal. The notice shall also inform the owner of the right to request, either in writing or in person, within ten (10) business days of the date of the postmark of such written notice, a meeting with the Director to determine whether such removal was prosper.

(B) **Meeting and Decision.** Upon timely request, the Director shall provide such a Meeting by the close of the next business day following receipt of the request, unless the owner agrees to a later date. The proceeding shall be informal, but oral and written evidence may be offered. The Director shall give his or her decision in writing to the owner within three (3) business days after such meeting. If the Director finds that such impoundment was proper, the Director shall notify the owner that the impounded newsrack may be recovered following payment of a $200.00 administrative penalty pursuant to subsection 184.12(k). The owner of an unauthorized fixed pedestal unit shall also be responsible for restoring the sidewalk to its original condition pursuant to subsection 184.12(f)(1). If the Director finds that the impoundment was improper and/or that placement of the fixed pedestal unit or freestanding newsrack was lawful, the Director shall order the immediate release to the owner and reinstallation by the City at its expense of the fixed pedestal unit or freestanding newsrack without charge.

(C) **Disposal of Impounded Newsracks.** Unauthorized fixed pedestal units or freestanding newsracks that are not claimed within thirty (30) calendar days of impoundment shall be disposed of in a manner determined by the Director in accordance with state law.

(2) **Unauthorized fixed pedestal units and any freestanding newsracks.** The Director is authorized to remove and impound any unauthorized fixed pedestal units and any freestanding newsrack located in a Fixed Pedestal Zone in accordance with the following procedures.

(A) **Notice of Violation and Impoundment.** The Director shall post a notice of violation on the unauthorized fixed pedestal newsrack or freestanding newsrack, and shall use all reasonable efforts to immediately contact the owner of the newsrack or other responsible party by facsimile and telephone where this information is contained on the newsrack or is available from the Director's records. The notice attached to the newsracks, and any written notice transmitted to the owner, shall also inform the owner of the right to request, by facsimile, telephone or in person, by the close of business on the first business day following the date of the notice of violation, a meeting with the Director to determine whether the newsrack is in violation of this section. If the newsrack has not been removed, and the owner has not requested a meeting with the Director by the close of the next business day following the day that the notice of violation has been affixed, the Director may remove and impound the offending newsrack. Within forty-eight (48) hours after removal, the Director shall notify the owner in writing of the removal and the reasons for removal. If the owner did not request a meeting with the Director prior to removal of the newsrack, the notice shall also inform the owner of the right to request, either in writing or in person, within ten (10) business days of the date of the postmark of such written notice, a meeting with the Director to determine whether such removal was proper.

(B) **Meeting and Decision.** Upon timely request, the Director shall provide such a meeting by the close of the next business day following receipt of the request, unless the owner agrees to a later date. The proceeding shall be informal, but oral and written evidence may be offered. The Director shall give his or her decision in writing to the owner within three (3) business days after such meeting. If no meeting has been requested, and/or the Director finds that the impoundment was proper, the Director shall notify the owner that the impounded newsrack may be recovered following payment of a $200.00 administrative penalty pursuant to subsection 184.12(k). The owner of an unauthorized fixed pedestal unit shall also be responsible for restoring the sidewalk to its original condition pursuant to subsection 184.12(f)(1). If the Director finds that the impoundment was improper and/or that placement of the fixed pedestal unit or freestanding newsrack was lawful, the Director shall order the immediate release to the owner and reinstallation by the City at its expense of the fixed pedestal unit or freestanding newsrack without charge.

(C) **Disposal of Impounded Newsracks.** Unauthorized fixed pedestal units or freestanding newsracks that are not claimed within thirty (30) calendar days of impoundment shall be disposed of in a manner determined by the Director in accordance with state law.

(3) **Other Violations.** Any other violation of this section, or the guidelines promulgated under this section, by a permit holder or owner may be cause for disablement of the offending newsrack box(es), subject to the notice and hearing procedures set forth below.

(A) **Notice of Violation.** Before a newsrack box may be disabled under this subsection, the Director shall notify the permit holder or owner of the violation. The notice shall be in writing and shall state the nature of the violation. The notice shall give the permit holder or owner ten (10) business days from the date the postmark of such written notice to either remedy the violation or request a meeting before the Director. An additional notice shall be affixed to the offending newsrack box.

(B) **Meeting and Decision.** Upon timely request, the Director shall conduct the meeting within three (3) business days of receiving the request. The meeting shall be informal, but oral and written evidence may be offered. Thereafter, the Director shall give his or her decision in writing to the owner, permit holder or designated agent for notice, within three (3) business



days after the meeting. Any action by the City with respect to the alleged violation shall be stayed pending the written decision of the Director following the meeting and resolution of any other appellate or review process initiated by the permit holder.

(C) **Disablement of Newsracks.** The Director may disable a newsrack box in accordance with this subsection, subject to the resolution of any appellate or review process initiated by the permit holder, following either (1) the written decision of the Director upholding the determination of a violation; or (2) where the permit holder or owner has neither requested a meeting nor remedied the violation within the time periods set forth above. A newsrack box that has been disabled may be recovered by the permit holder upon payment of a $200.00 administrative penalty imposed pursuant to subsection 184.12(k).

(D) **Failure to Pay Penalties.** Where the permit holder of, other publication authorized to occupy, a newsrack box that has been disabled fails to pay the administrative penalty specified in subparagraph (C) within thirty (30) calendar days, the newsrack box shall be considered as having been vacated, subject to the resolution of any appellate or review process initiated by the permit holder.

(k) **ADMINISTRATIVE PENALTIES; OTHER REMEDIES.**

(1) **Administrative Penalties.**

(A) Any fixed pedestal permit holder, or the owner of a freestanding newsrack or unauthorized fixed pedestal unit found to have violated any of the provisions of this section pursuant to subsection 184.12(j) shall receive a notice of violation in accordance with subsection 184.12(j)(1), 184.12(j)(2) or 184.12(j)(3). If a newsrack is impounded pursuant to section 184.12(j)(1) or is found to be in violation of this section following expiration of the time periods set forth in section 184.12(j)(2) or (j)(3), the permit holder or owner shall be subject to an administrative penalty of $200.00 per violation. A permit holder shall not be issued any additional permits until all outstanding administrative penalties levied against that permit holder under this subsection, after the expiration of all applicable notice, grace, and cure periods, and subject to resolution of any appellate or review process initiated by the permit holder, have been paid.

(B) The Director is responsible for charging and collecting any penalty or fee assessed pursuant to this subsection. The Director shall notify in writing the person or publication responsible for the violation of the cost of the penalty and declare that such costs are due and payable to the Treasurer of the City and County of San Francisco.

(C) Any person or publication who has been assessed administrative penalties may seek administrative review of such penalties and fees by filing an appeal with the Director that specifies in detail the basis or appeal. Within ten (10) days of the receipt of the appeal, unless extended by mutual agreement of the affected parties, the Director shall cause a hearing to be held before an impartial hearing officer. The decision of the hearing officer shall be final.

(2) **Deposit of Penalties.** Any administrative penalty received by the Treasurer of the City and County of San Francisco in accordance with the requirements of this subsection shall be paid into the Department of Public Works' Engineering and Inspection Fund, and shall be used only for the costs of administering and enforcing the requirements of this section and the guidelines promulgated under this section.

(3) **Permit Suspension.** Failure to pay any administrative penalties imposed pursuant to this subsection, or repeated refusal, following a minimum of three (3) written notices within thirty (30) days from the Director, to maintain newsrack boxes in compliance with this subsection and the Director's guidelines shall, after notice of the violation, and the expiration of all applicable notice, grace, and cure periods, and subject to resolution of any appellate or review process initiated by the permit holder, be cause for suspension of all of the permit holder's fixed pedestal permits in the Fixed Pedestal Zone

containing the subject newsrack box(es) for a period not to exceed one hundred eighty (180) days.

(4) **Other Remedies.** The provisions of this section shall not limit any other remedies authorized by law.

(l) **IMPLEMENTATION AND APPLICATION TO EXISTING NEWSRACKS.** The Director is instructed to promptly phase in the implementation of this section in consultation with the Newsrack Advisory Committee. In order to accomplish this purpose, the Director is authorized to establish implementation areas within fixed pedestal zones and to establish dates by which all fixed pedestal units in the implementation areas shall be in compliance with the requirements of this subsection, and by which all freestanding newsracks and unauthorized fixed pedestal units shall be removed. The deadlines for compliance with this section and the Director's guidelines shall be prominently posted in the implementation areas not less than thirty (30) days prior to the date for initial implementation specified in the guidelines. Publications shall have ninety (90) days from the initial date specified in the guidelines to come into compliance with the provisions of this section and the guidelines promulgated under this section. Deadlines for compliance with these requirements shall be published in the City's official newspaper.

(m) **APPEALS.**

(1) (A) Unless otherwise provided herein or in the guidelines, any person other than a vendor who is aggrieved by and seeks review of a determination made by the Director pursuant to subsections 184.12(e)—(k), inclusive of this section must file with the Director a written request for review of the Director's decision by the Newsrack Advisory Committee. Such a request must be delivered to the Director not more than ten (10) business days following the issuance of the Director's decision. The Newsrack Advisory Committee shall consider the request at its next regularly-scheduled meeting, or at a special meeting held or this purpose before the next regularly-scheduled meeting, if the next regularly-scheduled meeting is not going to be held within ten (10) business days of the Director's receipt of the request, consistent with public meeting law requirements. At the meeting, the Newsrack Advisory Committee shall vote either to affirm or dissent from the Director's decision. The Newsrack Advisory Committee's vote shall be provided to the Director within two (2) business days. The Director shall have three (3) additional business days to render a final decision affirming or reversing his or her original determination. Such decision shall explain the Director's determination, including the facts relied on in the determination, with citations to any provisions of this Section and the guidelines upon which the Director relies.

(B) Review by the Newsrack Advisory Committee pursuant to subparagraph (A) shall be optional, at the election of the person aggrieved by the Director's determination. The election of such review shall not detract from any right of judicial review that may be available under applicable law, provided that if the person aggrieved by the Director's determination elects review by the Newsrack Advisory Committee, then that person waives any claim that the City did not provide him, her or it with a prompt administrative appeal or prompt judicial review during the period the matter is under review pursuant to subparagraph (A). If the person aggrieved by the Director's determination does not elect review by the Newsrack Advisory Committee, the Director's original determination shall constitute the Director's final decision.

(2) Following a final decision of the Director pursuant to subparagraph (1), any person other than a vendor who is aggrieved by a determination made by the Director granting, denying or revoking a permit pursuant to subsection 184.12(e) may file an appeal with the Board of Appeals in accordance with Part III, Section 8 et seq. of the San Francisco Municipal Code. The Board of Appeals shall set the hearing on the appeal not less than fifteen (15) days after the filing of the appeal, shall act on the appeal not more than thirty (30) days after such filing, and shall not entertain a motion for rehearing. These time



limits may be extended by stipulation of the parties or order of the Board on good cause shown.

(3) The Board of Appeals shall determine whether the action taken by the Director was proper solely based on the provisions of this section and the Director's guidelines. If the determination of the Board differs from that of the Director, the Board shall, in a written decision, specify wherein there was error in interpretation of this section or the guidelines promulgated under this section, or abuse of discretion on the part of the Director, and shall specify in its findings, as part of such written decision, the facts relied upon in arriving at its determination. The determination of the Board shall be final and conclusive.

(4) Any party to the appeal to the Board of Appeals who is aggrieved by the determination of the Board may seek judicial review of the Board's final decision in the Superior Court of California, County of San Francisco, by filing a petition for a writ of mandamus under Sections 1085 and/or 1094.5 of the California Code of Civil Procedure, as appropriate. The petition shall be heard and decided in accordance with all applicable statutes and rules, including Section 1094.8 of the Code of Civil Procedure and San Francisco Superior Court Uniform Local Rules of Court, Rule 8.16, revised July 1, 1999, both of which provide for expedited judicial review of the denial of a permit for an activity protected by the First Amendment. Pursuant to Section 1094.8(c) of the Code of Civil Procedure, the City hereby designates fixed pedestal permits as eligible for expedited judicial review pursuant to Section 1094.8.

(n) **NOTICE PROCEDURES.**

(1) All notices, consents, demands and other communications required or permitted to be given under this section shall be effective only if rendered or given in writing unless otherwise specified in this section, and shall be delivered either by (i) registered or certified mail; (ii) expedited messenger service; (iii) personal delivery to an authorized representative; (iv) facsimile; or (v) air courier addressed to the party or parties for whom intended at the addresses set forth in the party's applications or such other address as the intended recipient shall have designated in writing to the Director from time to time (provided, however, notice of change of address or facsimile number shall be effective only upon receipt).

(2) Notice to the City or the Director shall be addressed to the address specified for this purpose in the guidelines.

(3) All notices and other communications shall be deemed to have been rendered or given (i) if sent by registered or certified mail, on the date it is officially recorded as delivered to the intended recipient by return receipt or equivalent, and in the absence of such record of delivery, the effective date shall be presumed to have beefs on the fifth business day after the date when it shall have been deposited in the mail; (ii) if sent by expedited messenger service, on the date it is officially recorded by the messenger service carrier as delivered to the intended recipient; (iii) if personally delivered, upon receipt by an authorized representative; (iv) if by facsimile, one (1) hour after its transmission, if such time is during the hours of 9:00 a.m. and 5:00 p.m. in the place of its receipt or, if it is not, on the opening of business on the succeeding business day in place of the receipt, subject to having in fact been received in legible form; and (v) if sent by air courier, one (1) business day after delivery to an air courier for overnight expedited delivery.

(o) **NATURE OF DIRECTOR'S DUTIES.** It is the intent of the Board of Supervisors that the duties imposed upon the Director of Public Works by this section be directory in nature, and that as a result, the Director's failure to comply with a particular procedural step shall not invalidate any subsequent action by the Director to which the procedural requirement relates.

(p) **LIMITATION OF LIABILITY.** By adopting this section, the City and County of San Francisco is assuming an undertaking only to promote the general welfare. It is not assuming, nor is it imposing on its officers and employees, an obligation for breach of which it is liable in money damages to any person who claims that



such breach proximately caused injury. This subsection shall not affect any rights that may be available under a vendor contract and shall not create any such rights.

(q) **SEVERABILITY.** If any provision, subdivision, paragraph, phrase or clause of this section or the application of this section is for any reason held to be invalid or unconstitutional by a court of competent jurisdiction, such decision shall not affect the validity or effectiveness of the remaining portions of this section. The Board of Supervisors declares that it would have passed each section, paragraph, sentence, clause or phrase of this section irrespective of the fact that any portion of this section could be declared unconstitutional, invalid or ineffective. This subsection shall not affect the terms of any vendor contract or the rights or obligations of any party to such a contract under such a contract. (Added by Ord. 75-02, File No. 020465, App. 5/17/2002) (Former Sec. 184.12 added by Ord. 190-98, App. 6/12/98; amended by Ord. 234-99, File No. 991317, App. 8/23/99; repealed by Ord. 75-02; Ord. 100-07, File No. 070264, App. 5/4/2007)



## ARTICLE 5.7: HANDBILL DISTRIBUTION ON PRIVATE PREMISES; DISPLAY OF BANNERS

Sec. 184.69.   Definitions.
Sec. 184.70.   Distribution of Handbills on Private Premises.
Sec. 184.71.   Exclusions.
Sec. 184.72.   Criminal Penalties.
Sec. 184.73.   Investigation by Director.
Sec. 184.74.   Publication of Notice.
Sec. 184.75.   Authority to Make Rules, Etc.
Sec. 184.76.   Severability.
Sec. 184.78.   Banners.

### SEC. 184.69.   DEFINITIONS.

For the purposes of this Article:

(a) "Board" means the Board of Supervisors of the City.



(b) "City" means the City and County of San Francisco.

(c) "Department" means the Department of Public Works of the City.

(d) "Director" means the Director of the Department of Public Works of the City. Director shall mean and include an officer or employee of the City designated to act on the Director's behalf.

(e) "Handbill" means any handbill, dodger, circular, booklet, card, pamphlet, sheet or any other kind of printed matter or literature which is distributed to or upon any premises in the City. Handbill shall not include a Sign, as that term is defined and regulated by Sections 184.56 to 184.68, inclusive, of this Code.

(f) "Newspaper" means a publication that (1) is printed, published, and circulated at regular intervals, including, but not limited to, daily, weekly, bi-weekly, and monthly circulation, (2) contains at least 3 separate sheets of paper, and (3) has printed matter on at least one side of the paper.

(g) "Person" means any individual person, firm, partnership, association, corporation, company, organization, society, group or legal entity of any kind. (Added by Ord. 116-99, File No. 982076, App. 5/14/99)

### SEC. 184.70.   DISTRIBUTION OF HANDBILLS ON PRIVATE PREMISES.

(a) Findings. The Board hereby finds and declares that the City has a compelling need to prohibit the distribution of Handbills on private premises where the occupant has expressed his or her unwillingness to receive such Handbills. Prohibiting distributions of Handbills in defiance of an occupant's expressed desire not to receive them strikes an appropriate accommodation between the rights of distributors to solicit willing listeners with the rights of occupants to object to receive the material.

This Ordinance is also aimed at decreasing the adverse effects of the distribution of unsolicited Hand-bills on private premises. The prohibition against delivering Handbills contrary to the expressed desire of the occupant and the requirement that Handbills be folded or otherwise attached to the outside of a premises will decrease the amount of litter created by Handbills.

(b) Prohibition When "No Handbills" Sign Posted. It shall be unlawful for any Person to distribute, cause to be distributed, or suffer, allow or permit the distribution of any Handbill to or upon any private premises in the City by placing or causing any such Handbill to be deposited or placed in or upon any porch, yard, steps, hallway, or mailbox located on, or used in connection with such premises when such premises has posted thereon in a conspicuous place, a notice or notices of at least eight square inches in area bearing the words "No Handbills" or the

like, unless such Person has first received the written permission of the occupant of such premises authorizing the Person so to distribute.

(c) **Distributed Matter To Be Folded.** It shall be unlawful for any Person to distribute, cause to be distributed, or suffer, allow or permit the distribution of any Handbill to or upon any private premises in the City by placing or causing any such Handbill to be deposited or placed in or upon any porch, yard, steps, hallway, or mailbox located on, or used in connection with such premises unless the same is folded or otherwise so prepared or placed that it will not be blown therefrom by the winds. (Added by Ord. 116-99, File No. 982076, App. 5/14/99; amended by Ord. 53-05, File No. 041308, App. 4/1/2005)

### SEC. 184.71.  EXCLUSIONS.

The provisions of this Article shall not apply to: (1) the distribution and delivery of any Newspaper, or (2) any distribution or delivery made by a duly authorized public officer or employee of or contractor acting with the authority of the City, the State of California, or the United States acting to promote the purpose of the contract. (Formerly Sec. 184.72; added by Ord. 116-99, File No. 982076, App. 5/14/99; renumbered by Ord. 53-05, File No. 041308, App. 4/1/2005) (Former Sec. 184.71 added by Ord. 116-99, File No. 982076, App. 5/14/99; repealed by Ord. 53-05)

### SEC. 184.72.  CRIMINAL PENALTIES.

Any Person who violates any provision of this Article shall be guilty of an infraction and upon conviction thereof shall be punished by a fine of not more than $250. (Formerly Sec. 184.73; added by Ord. 116-99, File No. 982076, App. 5/14/99; renumbered by Ord. 53-05, File No. 041308, App. 4/1/2005) (Former Sec. 184.72 added by Ord. 116-99, File No. 982076, App. 5/14/99; renumbered by Ord. 53-05)

### SEC. 184.73.  INVESTIGATION BY DIRECTOR.

The Director shall investigate, or cause to be investigated, all complaints made to the Department regarding the violation of any of the provisions of this Article and take such actions regarding any violation as is provided therein.

In undertaking enforcement of this Article, the City, including, but not limited to, the Department, is assuming an undertaking only to promote the general welfare. It is not assuming, nor is it imposing on its officers and employees, an obligation for breach of which it is liable in money damages to any Person who claims that such breach proximately caused injury. The obligations this Article imposes on City officials are intended to be directive only. The provisions of this Article shall not be invalidated to the extent City officials do not comply with any obligation imposed herein. (Formerly Sec. 184.74; added by Ord. 116-99, File No. 982076, App. 5/14/99; renumbered by Ord. 53-05, File No. 041308, App. 4/1/2005) (Former Sec. 184.73 added by Ord. 116-99, File No. 982076, App. 5/14/99; renumbered by Ord. 53-05)

### SEC. 184.74.  PUBLICATION OF NOTICE.

The Director shall publish a copy of this Article once in one or more newspapers of general circulation, post a copy of the Article on or near the front door of the Chamber of Commerce and on a bulletin board in or adjacent to the City Hall for a period of 90 calendar days after its passage, and prominently provide notice of this Article in any material made available to the public regarding the City's regulations of Handbills.

The notice requirements of this Section are intended to enhance community awareness of the City's regulations of Handbills. However, the notice requirements shall be given only directive effect. Accordingly, the failure of the Director to provide the notice required by this Section shall not be a defense in any criminal proceeding or civil action brought to enforce the provisions of this Article nor shall such failure relieve any Person of criminal or civil liability for Handbill distributions that violate this Article. (Formerly Sec. 184.75; added by Ord. 116-99, File No. 982076, App. 5/14/99; renumbered by Ord. 53-05, File No. 041308, App. 4/1/2005) (Former Sec. 184.74 added by Ord. 116-99, File No. 982076, App. 5/14/99; renumbered by Ord. 53-05)



Case 3:07-cv-06067-JSW   Document 68-23   Filed 08/29/2008   Page 15 of 18

425                 Handbill Distribution on Private Premises; Display of Banners   Sec. 184.78.

### SEC. 184.75. AUTHORITY TO MAKE RULES, ETC.

The Director is empowered to adopt rules, regulations, and interpretations of this Ordinance as he or she may deem necessary and proper to interpret and administer the provisions of this Article provided that the rules, regulations, and interpretations shall not be inconsistent with any of the provisions of this Article. (Formerly Sec. 184.76; added by Ord. 116-99, File No. 982076, App. 5/14/99; renumbered by Ord. 53-05, File No. 041308, App. 4/1/2005) (Former Sec. 184.75 added by Ord. 116-99, File No. 982076, App. 5/14/99; renumbered by Ord. 53-05)

### SEC. 184.76. SEVERABILITY.

If any of the provisions of this Article or the application thereof to any Person or circumstance is held invalid, the remainder of this Article, including the application of such part or provisions to Persons or circumstances other than those to which it is held invalid, shall not be affected thereby and shall continue in full force and effect. To this end, the provisions of this Article are severable. (Formerly Sec. 184.77; added by Ord. 116-99, File No. 982076, App. 5/14/99; renumbered by Ord. 53-05, File No. 041308, App. 4/1/2005) (Former Sec. 184.76 added by Ord. 116-99, File No. 982076, App. 5/14/99; renumbered by Ord. 53-05)

Sec. 184.77
(Added by Ord. 116-99, File No. 982076, App. 5/14/99; renumbered as Sec. 184.76 by Ord. 53-05)

### SEC. 184.78. BANNERS.

(a) **Findings.** The Board of Supervisors hereby finds that:

(1) Banners placed on the upper portion of City-owned utility poles are an important medium for providing notice to San Francisco residents, as well as those who work in and visit San Francisco, about City-sponsored, City-funded, and City-wide special events, City-convention facility events, and the locations of the City's diverse neighborhoods.

(2) Because of the significant economic benefits that the City gains from tourism, San Francisco has a strong interest in fostering tourism by promoting City-sponsored, City-funded and City-wide special events, and in providing notice of the locations of the City's varied and distinct neighborhoods.

(3) Because of the significant economic benefits that the City gains from the events held at the City's convention facilities, San Francisco has a strong interest in fostering, promoting and identifying those events conducted at the City's convention facilities.

(4) Increasing awareness of City-sponsored City-funded and City-wide special events, and San Francisco's diverse neighborhoods also fosters civic pride.

(5) By adopting this section the Board does not intend to create a public forum on the upper portion of City-owned utility poles, it has decided to make the upper portion of City-owned utility poles available for the installation of banners that announce City-sponsored events, City-funded events, City-wide special events, City convention facility events, or City neighborhoods in order to achieve its goals of promoting tourism and civic pride, and providing public notice.

(b) Subject to the conditions and limitations imposed by this Section, the Department is authorized to adopt rules and regulations governing the posting of banners consistent with the terms of this Article. In enacting such rules and regulations, the Department shall consider the need to protect the safety of pedestrians, vehicles and other property and the need to promote aesthetics on the City's streets and sidewalks. With respect to City-wide special event banners or City convention facility banners, the Department of Public Works shall not discriminate on the basis of the viewpoint in a banner in its administration and interpretation of this Section and any rules or regulations adopted under this Section.

Sec. 184.78.   **San Francisco - Public Works Code**   426

(c) Only the following banners may be posted on City-owned utility poles: City-sponsored banners, City-funded event banners, City-wide event banners, City convention facility banners, and City neighborhood banners.

(1) A "city-sponsored banner" is a banner announcing an event or series of related events conducted by the City or any of its departments, boards, commissions or agencies, or announcing a facility operated by the City or any of its departments, boards, commissions.

(2) A "city-funded event banners is a banner announcing an event or series of related events which event or series of events have received funding of $5,000 or more from the City or any of its departments, boards, commissions or agencies.

(3) A "city-wide special event banner" is a banner announcing an event or series of related events of interest to a significant portion of the residents of San Francisco and/or tourists, which is not a purely commercial enterprise, and where (a) the proceeds, if any, will directly benefit either a federal, state, or local government agency or a charitable non-profit organization that maintains tax-exempt status under Internal Revenue Code Section 501(c)(3) or (b) the event or series of events will take place on City-owned property and further a public purpose.

(4) A "city convention facility banner" is a banner installed on any City-owned utility pole located on streets proximate to the City's convention center facilities that announces an event currently being held at a City-owned convention center facility. Those streets are: Third Street between Folsom and Mission (west side only), Folsom Street between Third and Fourth (north side only), Howard Street between Third and Fifth (both sides), Mission Street between Third and Fourth (south side only), Fourth Street between Mission and Howard (both sides), Fourth Street between Howard and Folsom (east side only), and Grove Street between Polk and Larkin (both sides). A "city convention facility banner" may only be installed proximate to the City-owned convention center facility at which the event the banner announces is currently being held. A "city convention facility banner" may only be installed 10 days prior an event, and may not remain posted for more than 10 days after an event. The Department shall give requests for a "city convention facility banner" priority over other requests for banners on City-owned utility poles directly adjacent to any part of the City's convention center facilities.

(5) A "city neighborhood banner" is a banner demarking a neighborhood in San Francisco, placed in that neighborhood, and identifying the neighborhood's name, such as, for example: the Tenderloin, or Pacific Heights.

(6) For the purposes of this Section, an "event or series of related events of interest to a significant portion of the residents of San Francisco" is any event or series of related events that take place in the City and that reasonably expect an in-person attendance of 500 or more people for a single event or 1000 or more people for a series of events. Expected attendance may be demonstrated by attendance at that same event or series of related events in previous years, attendance at a similar event or series of related events in previous years, by attendance projections for an event or series of events based on sales of tickets or subscriptions to the event or series of related events or, for an event or series of events that is being organized for the first time, by another reasonable measure of expected in-person attendance to be determined by the Department of Public Works.

(d) Under the findings made in Section 184.58, no banner may be posted on the historic and decorative lamp posts listed in Section 184.58, with the exception of those historic and decorative lamp posts in the "Mission Street Corridor" located on Mission Street between Sixteenth and Twenty-Fourth Streets, where banners may be posted.

(e) No banner shall be affixed to more than one structure so that it spans the area between two or more structures or spans a street unless and until the party responsible for the posting of such banner first obtains a permit from the Department for the purpose of enabling that Department to ensure that the banner is posted



Case 3:07-cv-06067-JSW   Document 68-23   Filed 08/29/2008   Page 17 of 18

427  **Handbill Distribution on Private Premises; Display of Banners**   Sec. 184.78.

in a safe manner and that the party has obtained adequate insurance coverage for any risk posed by such posting, according to guidelines established by the Director; and provided that, if any part of the banner is to be attached to non-City property, upon filing the permit application, the party shall be notified that the consent of the private owner should be obtained before posting the banner.

(f) Notwithstanding anything in this Code that may be to the contrary, the Director is authorized to permit the posting of banners on the historic lamp posts lining Market Street, an area known as the "Path of Gold," and more fully described in Section 184.58, subject to the following conditions:

(1) The Director may issue a permit only for an event: (A) that results in the closure of all or a portion of Market Street's Path of Gold and (B) for which the event sponsor has already obtained the necessary City approvals for such closure; and

(2) Banners shall not be posted for longer than 30 days prior to the event, nor remain posted for longer than 10 days after the event.

(g) The following shall apply to all Banners:

(1) Banners identifying the name of a commercial sponsor must limit that identification to a logo or business name only, located in the top or bottom portion of the banner, and comprising no more than 15% of the total area of the banner.

(2) Banners shall not be installed for longer than 30 days prior to the event or series of events, nor remain posted for longer than 10 days after the event or series of events.

(3) Banners shall be limited in size to 36 inches in width by 72 inches in length.

(4) An application for a banner permit may be submitted to the Department no earlier than 90 days prior to the first day for which the banner permit is sought.

(h) No banners may be installed in R (residential) districts, excepting RM-4 (residential-mixed high density) districts as defined in the San Francisco Planning Code, Article 2.

(i) All banners shall bear the name of the installer of the banner and a local or toll-free phone number, labeled "Service Number," where citizens may contact or leave word for the installer of the banner regarding maintenance or repair problems with any banner bearing the installer's service phone number. This required text shall be imprinted and maintained on the face or edge of the banner and shall be a minimum of 2 inches in height.

(j) Each applicant for a banner permit shall pay to the Department of Public Works a processing fee of $65 for the first 20 banners sought to compensate the Department for the cost of processing and administering the permit. An applicant shall pay a fee of $65 for each 20 additional banners sought per application. Processing fees for banner requests under 20 banners shall be prorated.

(k) Each applicant for a banner permit shall pay to the Department of Public Works an inspection fee of $130 for the first 20 banners approved to compensate the Department for the cost of enforcing the banner permits. Applicants shall pay an inspection fee of $130 for each 20 additional banners, or fraction thereof, approved.

(l) The procedures to review and adjust the fees specified in Section 184.78(k) and Section 184.78(l) shall be the procedures for fee review and adjustment set forth in Section 2.1.2 of the Public Works Code.

(m) Any person violating the provisions of this Section or any regulations promulgated by the Department of Public Works pursuant to this Section, shall be guilty of an infraction. Each banner determined to be an infraction is punishable by (1) a fine of $100 for a first violation; (2) a fine not exceeding $200 for a second violation within one year; (3) a fine not exceeding $500 and revocation of the permittee's banner permits for a third violation within one year.

(n) In addition, a fee equal to the cost of the time and materials expended by the Department of Public Works may be imposed by the Department of Public Works for investigation of ban-

ners being maintained without or in violation of a valid permit. Payment of the fees shall be directly to the Department of Public Works.

(1) The person responsible for payment of the fee may appeal the amount of the investigation fee to the Board of Appeals, subject to its filing fees and rules.

(2) The nonpayment of such fee or fine, or the continued existence of a condition in violation of this Section, shall be grounds for the Director of Public Works to deny a permit for a banner to the responsible owner or applicant until such penalty has been paid and the condition corrected.

(o) At his or her discretion, the Director of the Department of Public Works may require that a performance bond, not to exceed $25,000 be posted before a banner permit is granted to any permittee who has violated this Section, or any of the regulations promulgated by the Department of Public Works pursuant to this Section, more than three times within the year preceding the banner permit request.

(p) Six months after the effective date of this legislation an appropriate committee of the Board of Supervisors shall hold a hearing to review the status of the City's banner program. (Added by Ord. 116-99, File No. 982076, App. 5/14/99; amended by Ord. 82-00, File No. 000532, App. 5/5/2000; Ord. 11-05, File No. 041350, App. 1/21/2005)

[The next page is 445]