# EXHIBIT A

**F I L E D**

San Francisco County Superior Court

SUPERIOR COURT OF CALIFORNIA

JAN 2 7 2006

COUNTY OF SAN FRANCISCO

GORDON PARK-LI, Clerk

**I M A G E D**

BY: _____
Deputy Clerk

JAN 2 7 2005

| | | |
|---|---|---|
| MICHAEL NADELMAN and AMINTA NADELMAN, | ) ) ) | Court No. 402263 |
| Plaintiffs, | ) ) ) | |
| v. | ) ) | |
| HI TECH DESIGNS, INC., a corporation; QUICKDRAW PERMIT CONSULTING, a business entity of unknown form; LEONARD B. PAUL, individually and doing business as HI TECH DESIGNS, a sole proprietorship; DAVID FRANCIS SCHMIDT and JACK MILFORD KOCH, individually and doing business as THE INSTALLATION DEPARTMENT, a partnership; JEREMY PAUL, individually and doing business as QUICKDRAW CONSULTING; MONTE STOTT, P.E.; INDEMNITY COMPANY OF CALIFORNIA; AMERICAN CONTRACTORS INDEMNITY COMPANY; | ) ) ) ) ) ) ) ) ) ) ) ) ) ) ) ) ) ) ) ) | STATEMENT OF DECISION |
| Defendants. | ) ) ) ) | |

STATEMENT OF DECISION

- 1 -

1    The above-entitled cause came on regularly for court trial on

2    August 30, 2004, in Department 611 of the above-entitled court, the

3    Honorable Diane Elan Wick, Judge presiding, a trial by jury having been

4    waived by the parties.  Michael Brooks Carroll, Esq., appeared as counsel for

5    plaintiffs Michael Nadelman and Aminta Nadelman; James B. Kraus, Esq.,

6    appeared as counsel for defendant Jeremy Paul, individually and doing

7    business as Quickdraw Permit Consulting.

8    Trial proceeded only against Jeremy Paul, individually and doing

9    business as Quickdraw Permit Consulting, for the following reasons: good

10   faith settlements had previously been approved as to defendant Leonard B.

11   Paul, individually and doing business as Hi Tech Designs, and defendant

12   Monte Stott, P.E.; a judgment had been entered against defendant Jack

13   Milford Koch, individually and doing business as The Installation

14   Department, on December 1, 2003; the claims against defendants David

15   Francis Schmidt and Hi Tech Designs have been stayed automatically by

16   operation of federal bankruptcy law when such defendants filed bankruptcy;

17   and dismissals had been entered for defendants Indemnity Company of

18   America and American Contractors Indemnity.  Doe defendants 1 through

19   100 were dismissed during trial.

20   As to defendant Jeremy Paul, individually and doing business as

21   Quickdraw Permit Consulting[1], plaintiff proceeded to trial on the following

22   causes of action:  First Cause of Action for Breach of Contract; Third Cause

23

24   [1] Hereinafter, reference to Jeremy Paul shall also incorporate Quickdraw Permit Consulting, and vice versa.

STATEMENT OF DECISION

- 2 -

1  of Action for Negligent Construction, Sixth Cause of Action for violation of

2  Civil Code sections 1750, et seq., the Consumer Legal Remedies Act; Eighth

3  Cause of Action for Intentional Misrepresentation; and Ninth Cause of Action

4  for a violation of Business and Professions Code sections 17200, et seq., the

5  Unfair Business Practices Act.

6        A statement of decision was orally requested by the parties. The

7  parties agreed to dispense with the statutory and rule time requirements for

8  the court to issue its proposed statement of decision, thus providing the

9  court up to ninety days following submission of the final briefs to the court

10  to issue its proposed decision. It was further agreed that once a proposed

11  statement of decision was entered, the statutory and California Rules of

12  Court time requirements would prevail.

13        In Phase I of the trial covering the underlying claims of plaintiffs,

14  the court heard testimony from seven witnesses called by plaintiffs, and four

15  witnesses called by defendant Jeremy Paul. The parties marked one-

16  hundred-eleven exhibits for identification that were used during trial. The

17  court's proposed statement of decision after Phase I found that defendant

18  Jeremy Paul engaged in the conduct described in the proposed statement of

19  decision with malice and oppression. Because no evidence as to the

20  defendant's financial condition had been received, the court conducted

21  Phase II of the trial to receive documentary evidence from the parties as to

22  the defendant's financial condition. The parties agreed that after submission

23  of the documentary evidence and written argument on punitive damages to

24  the court, which occurred on December 14, 2005, the court would issue a

STATEMENT OF DECISION

1    final statement of decision for Phase I and Phase II and enter judgment.  A

2    proposed statement of decision after Phase II dealing with the amount of

3    punitive damages to be awarded was waived by the parties.

4                          MOTIONS IN LIMINE

5         The first Phase I *motion in limine* was filed by defendant to

6    1) dismiss the entire action,  2) exclude all evidence as to the first claim for

7    breach of contract,  3) exclude all evidence as to the third claim for negligent

8    construction,  4) exclude all evidence as to the sixth claim for breach of the

9    Consumers Legal Remedies Act,  5) exclude all evidence as to the eighth

10   claim for intentional misrepresentation,  6) exclude all evidence as to the

11   ninth claim for Unfair Business Practices, and  7) exclude all evidence in

12   support of any other cause of action that could support plaintiffs' claim

13   against defendant Jeremy Paul for breach of the Consumer Legal Remedies

14   Act.  Said *motion in limine* is denied as being too conclusory for this court to

15   grant.

16        Defendant's second *motion in limine* was to exclude as

17   inadmissible hearsay evidence from other complaints, newspapers, and

18   internet research.  Defendant's second *motion in limine* is denied as it is too

19   conclusory for the court to grant.

20        Defendants' third *motion in limine* was to exclude all evidence

21   offered in support of plaintiffs' sixth cause of action for violation of the

22   Consumers Legal Remedies Act for plaintiffs' failure to provide certain notice

23   to defendant in order to give him an opportunity to cure whatever violations

24   actually occurred.  The court requested additional authority from plaintiff

STATEMENT OF DECISION

1    and defendant as to how precise the notice had to be.  Counsel provided

2    additional argument in their written closing arguments.  The ruling on this

3    motion is provided below.

4         In Phase II plaintiffs filed a *motion in limine* to exclude the

5    declaration of defendant's accountant, Michael J. Bittner, because the

6    accountant relied on documents not produced to plaintiffs or the court,

7    failed to utilize proper accounting methodology, and failed to explain the

8    methodology used to reach his conclusion.  Said motion is denied.

9         In Phase I plaintiffs filed a request for judicial notice of certain

10   documents of the California Contractors State License Board (CSLB) and the

11   City of Pacifica as follows:  Certified copy of CSLB record re Leonard B. Paul,

12   certified copy of a default decision of the Registrar in the matter of the

13   accusation against Leonard B. Paul, certified copy of CSLB record re Leonard

14   B. Paul, dba The Installation Dept, and/or license number 588674; certified

15   copy of CSLB record re Hi Tech Designs, Inc.; and certified copy of the City of

16   Pacifica Planning and Building Department's file with respect to the design

17   and construction work at plaintiffs' home.

18        In Phase II, plaintiff requested the court take judicial notice of a

19   declaration by attorney Stephen Williams accusing defendant of misconduct.

20   Defendant requested judicial notice of four affidavits, decisions and orders to

21   rebut allegations of the defendant's misconduct.

22        This court has taken judicial notice of the existence of the

23   documents, but has not judicially noticed any hearsay content contained in

24   said documents.

STATEMENT OF DECISION

1    In Phase II plaintiffs also moved the court to reject Dr.

2   Stephenson's declaration contending that his methodology was logically

3   flawed and that he did not understand the defendant's type of business.

4   Said motion is denied.

5                    MOTION TO AMEND BY PLAINTIFFS

6        On August 6, 2004 plaintiffs in Phase I filed a motion to amend

7   their First Cause of Action for Breach of Contract to clarify any possible

8   ambiguity with respect to the contractual obligations of defendants Jeremy

9   Paul and Quickdraw Permit Consulting.

10        On September 9, 2004 plaintiffs filed a supplemental notice of

11   motion to amend their pleading to conform to proof at trial with respect to

12   the First, Sixth, and Ninth causes of action.  The proposed amendments

13   included three separate phrases added to the complaint at various points to

14   clarify averments of fact and legal issues raised and put in issue by the

15   existing complaint and pleadings.

16        On September 13, 2005 plaintiffs filed a further supplemental

17   notice of motion to amend their pleading to conform to proof at trial with

18   respect to the First, Sixth, Eighth, and Ninth causes of action.

19        After reviewing each cause of action sought to be amended, the

20   court finds that said amendments are not prejudicial to the defendants and

21   are based on the same general set of facts as the original complaint.

22   Accordingly, plaintiffs' motion to amend the First, Sixth, Eighth, and Ninth

23   causes of action is granted.

24

STATEMENT OF DECISION

## ADMISSIBILITY OF EXHIBITS

Prior to testimony commencing, the court marked for identification one-hundred-eleven documents. The court reserved ruling on any admissibility objections to the marked exhibits until after the presentation of evidence. Counsel were invited to submit in their written closing arguments or proposed statements of decision the numbers of exhibits objected to. After ruling on objections made, the court stated it would not consider any exhibits found to be inadmissible in rendering its decision.

Plaintiff submitted no objections to the marked exhibits. Defendant's closing brief contained a four-page argument that the court should sustain defendant's objection to the introduction of any evidence not provided in discovery. Defendant's proposed statement of decision included a statement that the court "excludes all evidence not provided to Jeremy during discovery." Defendant failed to identify each specific contested document by number or title or provide a specific objection to each document. This court finds that defendant's objection to exhibits is conclusory and fails to provide a sufficient basis for the court to rule.

Accordingly, all one-hundred-eleven exhibits marked for identification are admitted as evidence in this case.

## JUDGMENT AGAINST OTHER DEFENDANTS

Defendant Jeremy Paul contends that the judgment entered against defendants Jack Koch and The Installation Department collaterally

1  estops the court from finding that defendant Jeremy Paul proximately

2  caused plaintiffs' damages.  Defendant Jeremy Paul has failed to

3  provide sufficient authority to support that position and for this court to

4  render such a ruling.

5                    CREDIBILITY OF WITNESSES

6            This court finds that the trial testimony of Leonard Paul, Jack

7  Koch, and defendant Jeremy Paul was less than credible.

8                          ULTIMATE FACTS

9            Plaintiffs Michael Nadelman and Aminta Nadelman are the

10  owners of residential property commonly known as 268 Piedmont Avenue,

11  Pacifica, San Mateo County, California.   Plaintiffs' home is two stories on the

12  street side and three stories in back, with the back facing the ocean in the

13  west.  Plaintiffs were interested in expanding the size of the existing deck

14  that was approximately five feet deep and adding a sunroom to provide

15  additional space for their family of five.  Near the west property line there

16  was an existing retaining wall.

17            In response to an advertisement for "sunrooms" by Hi Tech

18  Designs, Inc. (License #588674) in the San Francisco Chronicle newspaper

19  in early 1992, plaintiff Michael Nadelman [2] contacted the telephone listed

20  (408-262-3547) and spoke to Leonard Paul.  On or about March 7, 1992

21  Leonard Paul went to the plaintiffs' home and gave plaintiff his business card

22  that led plaintiff to believe that Leonard Paul was with Hi Tech Designs, Inc.

23

24  [2] Hereinafter, reference to "plaintiff" shall refer to Michael Nadelman.

STATEMENT OF DECISION
                              - 8 -

1    Plaintiff and Leonard Paul discussed the design and cost of a deck

2    expansion and sunroom and Leonard Paul stated that his company would

3    design, and construct the project, but that plaintiffs would have to pay for

4    the permits extra. Leonard Paul stated that his designer, Jeremy, would be

5    responsible for the design of the deck and sunroom in accordance with

6    plaintiffs' instructions and would oversee that the sunroom and deck were

7    constructed to plaintiffs' liking. Plaintiff learned in 2001 that "Jeremy" was

8    Jeremy Paul, Leonard Paul's son. That family relationship was not disclosed

9    to plaintiffs in 1992.

10    Leonard Paul, doing business as Hi Tech Designs at 340

11    Townsend Street, San Francisco, and plaintiffs entered into a written

12    contract on March 7, 1992 for Hi Tech Designs to construct an extension to

13    the existing deck and install a prefabricated sunroom on the extended deck

14    of the property for a total cost of $11,990.00. The contract stated that

15    "Customer will pay for all permit cost Jeremy & fees." Leonard Paul gave

16    plaintiff the telephone number for Jeremy and plaintiff inserted "Jeremy 552-

17    1965" on the top of the first page of the contract to reflect the information

18    given plaintiff by Leonard Paul that Jeremy would design the deck.

19    "Contractors Liscence (sic) 469-6200  B588674  2-90  2-94  clear" is

20    information written by plaintiff when he called the Contractors State License

21    Board for information on Hi Tech Designs and confirmed that License

22    #588674 was a valid, active license.

23    California law requires that a home improvement contract set

24    forth on the face of the contract the license of the entity providing the home

1    improvement services. The contract executed on March 7, 1992 between

2    plaintiffs and Hi Tech Designs had no such visible number.    Inspection

3    during trial of the copy of the contract retained by plaintiffs reflects that

4    license #367107 was covered over by a gold seal, but was visible when

5    inspecting the reverse side of the page. At the time of executing the

6    agreement, Leonard Paul, was not licensed in California as a contractor. His

7    general contractor's license #367107 had been suspended/revoked by the

8    Contractors State License Board prior to execution of the home improvement

9    contract with plaintiffs. During the relevant period of this case, Hi Tech

10    Designs was also not licensed as a general contractor.

11        After signing the Hi Tech Designs contract, plaintiffs decided

12    that a walkway on the north side of the sunroom and a larger deck space

13    facing west would provide better access and called Jeremy Paul to see if he

14    could make changes to the design. Jeremy Paul stated there would be no

15    problem and that he would make the changes. Defendant Jeremy Paul

16    understood that he had a verbal contract with plaintiffs to provide services

17    for plaintiffs and that one of his obligations was to provide his services in a

18    correct and professional manner. On March 30, 1992 plaintiffs received an

19    invoice for $619.50 from Quickdraw Permit Consulting for "measuring,

20    drafting, plans submitted" for the plaintiffs' sunroom project. Plaintiff

21    believed the bill was for the design of the deck and immediately paid the

22    invoice.

23        Jeremy Paul instructed his employee, Connie Dean, to go to the

24    Nadelman residence to take measurements of the site. These measurements

1    were depicted by Jeremy Paul or Connie Dean on the plan being prepared for

2    submission by Jeremy Paul.  Dean was not a licensed architect or engineer.

3    The field measurements depicted on the plan were inaccurate.

4           The location of the pre-existing retaining wall on Jeremy Paul's

5    plan placed the retaining wall 21 feet 6 inches west of plaintiff's house.  The

6    correct distance is 20 feet 3 inches.

7           The depth of the new cantilevered deck drawn by Dean or the

8    defendant was 16 feet 6 inches.  This excludes the 4 feet 6 inch deck original

9    to the house.  It consisted of a back span 10 feet 6 inches in depth and an

10   overhang cantilever section measuring 6 feet.  The deck as constructed

11   measured 15 feet 6 inches, consisting of a backspan measuring 7 feet 2

12   inches and an overhang cantilever section of 8 feet 4 inches.

13          The new support pier, intended to support the post and lateral

14   beam designed to support the western wall of the sunroom, was shown on

15   the plan submitted by Jeremy Paul as 18 feet west of the house.  As built, it

16   was 14 feet 8 inches west of the house.  This caused the western sunroom

17   wall point load being applied to the overhang cantilever instead of directly

18   over the foundation.  It also overstressed the deflection of the cantilever

19   system, created additional uplift forces at the connection point, and resulted

20   in the size of the sunroom being smaller than shown on the Jeremy Paul

21   design plan.

22          The support pier as constructed was also placed in the sphere of

23   influence of the retaining wall's structural support area and increased forces

24

STATEMENT OF DECISION

1  on the retaining wall.  This causes the retaining wall to absorb more force

2  than it was designed to absorb.

3      In short, the deck as designed and built is unsafe as the deck

4  overhang cantilever is excessive in length and the deck exceeds the

5  applicable building code allowances and industry standards.  It is also

6  unsafe as the retaining wall could fail at any time and result in the

7  catastrophic failure of the entire structure.  The deck is also defective as the

8  design failed to specify the use of pressure-treated wood or redwood and the

9  use of sheet metal flashing for all components of the deck exposed to the

10  marine environment of Pacifica, California.

11      The cost to remove the unsafe deck and sunroom and to replace

12  it with a deck of safe cantilever design was estimated in November, 2003 to

13  exceed $74,000.00.

14      Defendant Jeremy Paul was not qualified, approved, or licensed

15  under California law to be responsible for the design of plaintiffs' deck,

16  including the engagement and coordination of engineer Stott.  The

17  representations of defendant Jeremy Paul, by word and deed, that he was

18  qualified to be responsible for the design of plaintiffs' deck were false,

19  deceptive, and misleading.

20      Plaintiff received an invoice dated April 3, 1992 from Quickdraw

21  Permit Consulting for $375.00 for five hours work for engineering services,

22  including field inspection, framing/plan/attachments, and structural

23  calculations.  Plaintiffs immediately paid the invoice.

24

1    The plaintiffs were not shown the plan prior to commencement

2    of construction, but plaintiff later saw a blueprint posted on the wall of the

3    lower back of the house during construction.  The blueprint showed that the

4    deck and sunroom plan was drawn by Quickdraw.

5    On April 28, 1992 Jeremy Paul made application for the project's

6    building permit with the City of Pacifica.  The design plan submitted by

7    Jeremy Paul to the City as support for the building permit was the plan

8    prepared by Jeremy Paul and his employee that included inaccurate site

9    measurements.  The building permit application under the designation of

10   architect listed "Jeremy" as the contact and gave his telephone number of

11   552-1965.  Jeremy Paul signed the building permit application but checked

12   none of the boxes for contractor, owner, or agent for the contractor or owner.

13   The Installation Department, License, #588674, was listed as the contractor

14   for the deck extension and patio cover project.  Permit No. 10392-92 was

15   issued by the City of Pacifica on April 27, 1992.

16   Plaintiff received a bill from Quickdraw Permit Consulting dated

17   April 27, 1992 for $232.00 for consultation with the building inspector,

18   permit issuance, and fees to the City of Pacifica.  Plaintiff  paid this invoice

19   on April 28, 1992.

20   When the City declined to approve the design of the deck unless

21   the plan was supported by engineering calculations, Jeremy Paul engaged

22   and paid Monte Stott, a registered civil engineer, to prepare the structural

23   calculations for submission to the City.  Stott was not engaged to do any site

24   measurements and he relied on the measurements in the plan provided by

STATEMENT OF DECISION

1  Jeremy Paul. Stott took all instructions from Jeremy Paul and not from the

2  Nadelmans. Jeremy Paul knew that Stott would be relying on the plan's

3  measurements in making his structural calculations. Stott billed Jeremy

4  Paul $275.00 to prepare the structural calculations. Jeremy Paul sent

5  plaintiffs a $375.00 invoice dated April 3, 1992 for engineering services, thus

6  making a profit on Stott's engineering services.

7         On May 9, 1992 workers arrived to begin work on the

8  construction project and brought with them a new written contract for

9  plaintiffs to sign that incorporated the design changes requested by plaintiffs

10  to Jeremy Paul. The deck size, including the walkway, described in the

11  contract was the size contained in defendant Jeremy Paul's plan. The May 9,

12  1992 contract, a standard form construction agreement, lists The

13  Installation Department as the Contractor-Seller. The new contract signed

14  by "J. M. Koch" in the amount of $16,490.00 lists 3701 Old Santa Rita Road,

15  #23, Pleasanton, California 94588, as the address for The Installation

16  Department with license #588674. The new contract made no mention of Hi

17  Tech Designs. While plaintiff did not know who the workers were, they

18  identified themselves as The Installation Department and stated they were to

19  perform the work that plaintiffs had asked for. After plaintiffs signed the

20  contract, the construction crew began the work.

21         After the deck was constructed, the City building inspector

22  inspected the deck construction and had concern about the deck as

23  constructed. The City building inspector advised plaintiffs that the City

24  would not approve the deck, and that he personally would not want to be on

STATEMENT OF DECISION

1    the deck during a party, and that plaintiffs needed to have a design

2    professional address the City's concerns.

3              Plaintiffs contacted Jeremy Paul about the City's refusal to

4    approve the deck.  Jeremy Paul advised plaintiffs that the deck was safe,

5    that the building inspector was being too strict, and that Jeremy Paul would

6    take care of the problem by having his engineer pull rank on the City's

7    building inspector.  Jeremy Paul discussed the problem with civil engineer

8    Monte Stott and explained to Stott that the support pier's footing was not as

9    represented on the plan and that the overhang cantilevered an additional

10   two feet.  After Jeremy Paul asked Stott if that would work, Stott performed

11   some calculations and stated that it was in conformance with the Uniform

12   Building Code.  Jeremy Paul asked Stott to write a letter to the City

13   regarding the safety of the deck.  Jeremy Paul did not tell Stott that the

14   overhang cantilever was more than 8 feet, or that the backspan was less

15   than 8 feet, both materials facts.  Jeremy Paul also failed to disclose to Stott

16   that the western wall of the sunroom extended beyond where the lateral

17   beam was to support the sunroom, also a material fact.  Had Stott known

18   the actual measurements, he would not have written his letter dated

19   August 9, 1992 to the City stating that it was acceptable to cantilever the

20   deck joists 8 feet over the beam and that the joist stresses and deflections

21   were within code allowables for an overhang cantilever measuring 8 feet.

22              Having no knowledge that the underlying factual foundation for

23   Stott's conclusion that the deck was safe was incorrect, the City accepted

24   Stott's professional representation and approved the project.

STATEMENT OF DECISION

1    Jeremy Paul represented to plaintiffs that the City's concerns

2    with the excessive cantilever length had been resolved by Monte Stott's letter.

3    Plaintiffs had no way of knowing that the faulty deck design and excessive

4    overhang cantilever had been covered up by Jeremy Paul to plaintiffs, Stott,

5    and the City.

6    While designing plaintiffs' deck and drafting the plan and

7    specifications for the deck, Jeremy Paul failed to specify the type, size and

8    species of decking materials to be used that were suitable for the marine

9    environment of Pacifica, California.  Consequently, plaintiffs' deck was not

10   constructed with water-resistant materials and thus failed to comply with

11   construction industry standards of good workmanship.  As a result,

12   plaintiffs' deck rotted out and created a life safety issue after only nine years,

13   when the service life of the deck should have been in excess of thirty years.

14   Because the sub-flooring beneath the sunroom had rotted away, plaintiff

15   nearly fell through the sunroom deck on Thanksgiving Day 2001.  It was

16   necessary for plaintiffs to expend more than $22,000.00 to mitigate the

17   deck's safety problems from the dry rot of the non-pressure-treated sub-

18   floor.

19   Plaintiffs did not learn that the deck built on Jeremy Paul's

20   design plan was defective until June, 2001 when a contractor they engaged

21   to build another sunroom underneath the deck advised plaintiffs that the

22   design and construction of the existing upper deck was faulty.

23

24

STATEMENT OF DECISION

1        <u>CAUSES OF ACTION</u>

2   <u>*First · Breach of Contract:*</u>

3              Plaintiffs allege that defendant Jeremy Paul breached a

4   contractual agreement entered into between plaintiffs and defendant on or

5   about March 30, 1992 wherein defendant would perform design and

6   construction services in a non-negligent, workmanlike manner and that the

7   work would be free of defects and would conform to standards of good

8   workmanship.  Plaintiffs' First Cause of Action also alleged that defendant

9   failed to properly supervise construction of the deck and sunroom.

10             In addition to express contracts created by oral or written

11  agreement, the existence and terms of an implied contract can arise from the

12  manifestations of conduct of the parties.  Civil Code § 1619, 1621; *Del Webb*

13  *Corp. v. Structural Materials* (1981) 123 Cal.App3d 593, 611-612.

14             This court finds that an implied contract arose between

15  defendant Jeremy Paul and plaintiffs on March 30, 1992 when Jeremy Paul

16  sent plaintiffs his invoice for $619.50 to measure the site of the plaintiffs'

17  home, draft plans for the construction of the deck and sunroom to be built at

18  the plaintiffs' home, and to submit those plans to the permitting authority.

19  The first link in the chain that created the implied contract and its terms

20  was the designation in the Hi Tech Designs March 7, 1992 contract by

21  Leonard Paul, defendant's father, that induced plaintiffs to believe that

22  "Jeremy" (defendant Jeremy Paul) would design the project and bill the

23  plaintiffs for the deck design and obtaining the permit.  Plaintiffs contacted

24  defendant Jeremy Paul as instructed to initiate the deck design.  Plaintiffs

STATEMENT OF DECISION

1    subsequently requested changes in the deck design that were made by

2    defendant Jeremy Paul.  The implied agreement was further expressed by

3    defendant Jeremy Paul's invoice dated April 3, 1992 for $375.00 for

4    engineering services, including field inspection, framing plan, and structural

5    calculations, and his invoice dated April 27, 1992 for $232.00 for consulting

6    with the building inspector and to recover fees paid to the City of Pacifica.  In

7    return, plaintiffs agreed to pay the charges for those services.

8            The terms of this agreement were further manifested by

9    defendant Jeremy Paul when he provided a design plan entitled "Nadelman

10   residence, patio cover, dated 3/30/92" from QuickDraw, the name of the

11   enterprise under which defendant Jeremy Paul conducted business.

12   Defendant Jeremy Paul had responsible control of each of the important

13   parties involved in the project, including Connie Dean, defendant's employee

14   who took the site measurements at plaintiffs' home.  It was Dean's

15   measurements that were transferred to the design plan drawn by or

16   supervised by defendant.  Defendant also supervised, Monte Stott, the

17   engineer, as well as the employees of The Installation Department, contractor

18   on the project.  Additionally, defendant Jeremy Paul presented himself to the

19   City of Pacifica as the architect on the project by inserting his name in the

20   architect's block on the building permit application and not otherwise

21   identifying his controlling role in the project.  Defendant Jeremy Paul

22   performed the duties and responsibilities of a designer and defendant

23   performed acts that led the engineer to believe and make reference to Jeremy

24

STATEMENT OF DECISION

1    Paul as the architect/designer on the project. Defendant invoiced the

2    plaintiffs for the engineer's services and took a profit on those services.

3         Plaintiffs manifested their agreement to the implied contract by

4    immediately paying defendant Jeremy Stott for his invoiced services. In

5    doing so, plaintiffs performed all significant things required of them under

6    the implied contract.

7         Defendant Jeremy Paul breached the implied contract as follows.

8    Defendant and his employee, Connie Dean, failed to accurately measure the

9    site and/or accurately transfer those measurements to the design plan, the

10   first essential element of the design process. Jeremy Paul provided design

11   services for a structure that he is not qualified to design because a three-

12   story building requires a licensed architect to provide design plans.

13   Defendant also misrepresented himself as an architect to the City of Pacifica

14   to obtain a building permit. Defendant further failed to adequately supervise

15   the contractors and sub-contractors on the job. Defendant also failed to

16   advise Monte Stott, the engineer, that the dimensions of the deck were

17   different than those previously submitted to him. Defendant also requested

18   and caused Stott to write a letter to the City of Pacifica vouching for the

19   safety of the deck as constructed. Defendant failed to take steps to correct

20   the integrity and safety of the project by correcting the problems caused by

21   the support pier being misplaced, and he provided a smaller sunroom than

22   that provided on the May 9, 1992 contract between plaintiffs and The

23   Installation Department. Defendant also failed to specify sufficient building

24   materials for the deck design that would withstand the deck's marine

STATEMENT OF DECISION

1    Paul as the architect/designer on the project. Defendant invoiced the

2    plaintiffs for the engineer's services and took a profit on those services.

3        Plaintiffs manifested their agreement to the implied contract by

4    immediately paying defendant Jeremy Stott for his invoiced services. In

5    doing so, plaintiffs performed all significant things required of them under

6    the implied contract.

7        Defendant Jeremy Paul breached the implied contract as follows.

8    Defendant and his employee, Connie Dean, failed to accurately measure the

9    site and/or accurately transfer those measurements to the design plan, the

10   first essential element of the design process. Jeremy Paul provided design

11   services for a structure that he is not qualified to design because a three-

12   story building requires a licensed architect to provide design plans.

13   Defendant also misrepresented himself as an architect to the City of Pacifica

14   to obtain a building permit. Defendant further failed to adequately supervise

15   the contractors and sub-contractors on the job. Defendant also failed to

16   advise Monte Stott, the engineer, that the dimensions of the deck were

17   different than those previously submitted to him. Defendant also requested

18   and caused Stott to write a letter to the City of Pacifica vouching for the

19   safety of the deck as constructed. Defendant failed to take steps to correct

20   the integrity and safety of the project by correcting the problems caused by

21   the support pier being misplaced, and he provided a smaller sunroom than

22   that provided on the May 9, 1992 contract between plaintiffs and The

23   Installation Department. Defendant also failed to specify sufficient building

24   materials for the deck design that would withstand the deck's marine

STATEMENT OF DECISION

1   environment in Pacifica, California.  Defendant further ignored the fact that

2   an overhang cantilever measuring 8 feet 4 inches with a backspan

3   measuring only 7 feet 2 inches was not in compliance with the code or

4   industry standards and that the deck as constructed raised major safety

5   concerns.

6           As a result of the defective deck design, plaintiffs have been

7   harmed because they received a deck that could catastrophically fail at any

8   time and one whose life has been drastically shortened because proper

9   construction materials were not specified in the deck design plan.

10  Defendant's actions as described above were a substantial factor in causing

11  plaintiffs' harm and plaintiffs were damaged by said harm in an amount that

12  will provide for the repair or construction of a safe structure that will

13  withstand the marine environment of Pacifica, California.

14  *Third – Negligent Construction:*

15          Plaintiffs further allege that defendant Jeremy Paul had a duty

16  to design and construct the deck and sunroom at plaintiffs' property

17  pursuant to the May 9, 1992 agreement in a way that conformed with the

18  law and standards of workmanship in the industry, with due care, and free

19  of defects.

20          This court finds that defendant Jeremy Paul when accepting the

21  role as designer of the deck had a legal and contractual duty to see that the

22  deck design produced was safe, free of defects, and that water-resistant

23  products capable of lasting in the marine environment of Pacifica, California

24  were specified.  Defendant's lack of architectural or design license did not

STATEMENT OF DECISION

1  excuse his legal duty to see that the three-story wood-frame deck design

2  complied with all code and industry requirements.  Defendant Jeremy Paul

3  also had a duty to deal with, investigate, disclose, and correct the excessive

4  length of overhang cantilever caused by his and/or his employee's inaccurate

5  measurements of the existing site conditions and their use in the deck

6  design.

7          As stated above, defendant Jeremy Paul breached his

8  contractual duty to design and/or build a safe and defect-free deck capable

9  of withstanding the marine environment of Pacifica, California by conducting

10  himself and those persons he controlled as described above.  As a result of

11  the defective deck design, plaintiffs have been harmed because they have a

12  deck that could catastrophically fail at any time and one whose life has been

13  drastically shortened because proper construction materials were not

14  specified or used in the deck design plan.  Defendant's conduct as described

15  above was a substantial factor in causing plaintiffs' harm and plaintiffs were

16  damaged by said harm in an amount that will provide for the repair or

17  construction of a safe structure that will comply with the code requirements

18  and withstand the marine environment of Pacifica, California.

19  <u>Sixth – Violation of Consumers Legal Remedies Act:</u>

20          Plaintiffs' Sixth Cause of Action alleges a violation of the

21  Consumers Legal Remedies Act, Civil Code section 1750 *et seq.*, in that

22  Jeremy Paul and Quickdraw passed off their construction goods and services

23  as the goods and services of another person or entity.

24

STATEMENT OF DECISION

1    Civil Code section 1750 states that the Act's purposes are to

2  protect consumers against unfair and deceptive business practices and to

3  provide efficient and economical procedures to secure such protection.  The

4  section further provides that the Act shall be liberally construed and applied

5  to promote its underlying purposes.

6    Civil Code section 1770(a)(3) and (5) provide that the following

7  acts and practices are unlawful: "misrepresenting the affiliation, connection,

8  or association with, or certification by, another," and "representing that

9  goods or services have sponsorship, approval, characteristics, ingredients,

10  uses, benefits, or quantities which they do not have or that a person has a

11  sponsorship, approval, status, affiliation, or connection which he or she does

12  not have."

13    Thirty days or more before filing an action for damages, notice

14  must be sent by the consumer to the person alleged to have violated Civil

15  Code § 1770.  Civil Code § 1782.  The case may be commenced without

16  serving the notice when the complaint includes a prayer for injunctive relief.

17  Once damages are sought by amending the complaint, however, the notice

18  requirement activates.   Plaintiffs served such a notice and defendant argues

19  that the notice was not in compliance as it is utterly unintelligible and

20  violates Civil Code § 1782.

21    Section 1782(a)(1) requires that plaintiffs notify defendant of the

22  "particular alleged violation of Section 1770."  Plaintiffs' January 4, 2004

23  notice alleges that defendants, including defendant Jeremy Paul, violated

24  Civil Code § 1770(a)(2), (3), and (5).  Those subsections describe the following

STATEMENT OF DECISION

1    acts:  (2) misrepresenting the source, sponsorship, approval, or certification

2    of good or services; (3) misrepresenting the affiliation, connection, or

3    association with, or certification by, another; and (5) representing that goods

4    or services have sponsorship, approval, characteristics, ingredients, uses,

5    benefits, or quantities which they do not have or that a person has a

6    sponsorship, approval, status, affiliation, or connection which he or she does

7    not have.

8         This court finds that plaintiff's notice to defendant Jeremy Paul

9    sufficiently describes the particular violations of Section 1770 that defendant

10   is charged with and that it complies with the notice requirement of Section

11   1782(a)(1).  The defendant has failed to provide authority to support his

12   position that the notice must contain language more specific.

13        This court further finds that defendant Jeremy Paul has violated

14   the Consumers Legal Remedies Act by misrepresenting to plaintiffs and the

15   City of Pacifica that he was an architect and/or that he was a designer

16   qualified to design the deck on plaintiffs three-story home.  Additionally,

17   defendant Jeremy Paul violated the Act by misrepresenting to Monte Stott

18   the measurements on which Stott provided structural calculations for the

19   deck to be submitted to the City of Pacifica, and further misrepresented the

20   as-built size of the deck to Stott so that Stott would write a letter to the City

21   of Pacifica expressing his professional opinion that the as-built deck was

22   within code allowances.

23        As a further basis for finding that defendant Jeremy Paul is

24   liable for having violated the Consumers Legal Remedies Act and engaged in

1   intentional misrepresentation toward plaintiffs, the court finds that

2   defendant Jeremy Paul conspired with Leonard Paul and others to evade the

3   California licensing laws in connection with the Nadelman deck project and

4   acted in

5   furtherance of such conspiracy by his affirmative conduct in representing as

6   his part in such concerted scheme that he was qualified, approved, and/or

7   licensed to be responsible for the design of plaintiffs' deck, when in fact he

8   was not.

9           As a result of the defective deck design, plaintiffs have been

10  harmed because they received a deck that could catastrophically fail at any

11  time and one whose life has been drastically shortened because proper

12  construction materials were not specified in the deck design plan.

13  Defendant's conduct as described above was a substantial factor in causing

14  plaintiffs' harm and plaintiffs were damaged by said harm in an amount that

15  will provide for the repair or construction of a safe structure that will

16  withstand the marine environment of Pacifica, California.

17  *Eighth – Intentional Misrepresentation*

18          Plaintiffs' Eighth Cause of Action alleges that defendant Jeremy

19  Paul misrepresented to plaintiffs and others that he was qualified to design

20  plaintiffs' deck, misrepresented the safe design of the deck to the City of

21  Pacifica, misrepresented the actual size of the deck to Monte Stott, and

22  misrepresented that the deck was in compliance with codes and industry

23  standards.

24

STATEMENT OF DECISION

1    Intentional misrepresentation, or deceit, is codified in Civil Code

2   § 1710 and the elements thereof are defined in Judicial Council of California

3   Civil Jury Instructions (CACI 1900).

4    Incorporating the facts stated above with the elements of

5   intentional misrepresentation, this court finds as follows:  That defendant

6   Jeremy Paul represented to plaintiffs that he was an architect or designer

7   qualified to design the wooden deck on plaintiffs' three-story house,

8   represented to plaintiffs that the deck would be constructed in a safe,

9   workmanlike manner, that it would be approved by the City of Pacifica,

10   misrepresented the size of the deck, and misrepresented that the deck was in

11   compliance with codes and industry standards.

12    Defendant Jeremy Paul knew that each of these representations

13   was not true or he made each representation recklessly and without regard

14   for its truth.  Defendant further intended that plaintiffs rely on each of the

15   representations and, in fact, each representation was relied on by the

16   plaintiffs.  As a result of the defective deck design, plaintiffs have been

17   harmed because they have a deck that could catastrophically fail at any time

18   and one whose life has been drastically shortened because proper

19   construction materials were not specified in the deck design plan.

20    Plaintiffs' reliance on each of defendant Jeremy Paul's

21   representations was a substantial factor in causing their harm.  Plaintiffs

22   were damaged by said harm in an amount that will provide for the repair or

23   construction of a safe structure that will withstand the marine environment

24   of Pacifica, California.

STATEMENT OF DECISION

1   _Ninth – Violation of Business and Professions Code § 17200:_

2              Plaintiffs' Ninth Cause of Action alleges that defendant Jeremy

3   Paul misrepresented his qualifications to design plaintiffs' deck and

4   represented that he was qualified to be the person in responsible control of

5   the design services when he was not.

6              California Business and Professions Code section 17200 defines

7   "unfair competition" as any unlawful, unfair or fraudulent business act or

8   practice.  A plaintiff need only prove that a practice, when taken in context,

9   is likely to deceive consumers.  Massachusetts Mutual Life Ins. Co. v.

10  Superior Court (2002) 97 Cal. App.4th 1282, 1289.  It is not necessary to

11  prove that anyone was actually deceived or damaged.  Committee on

12  Children's Television, Inc. v. General Foods Corp. (1983) 35 Cal.3d 197, 211.

13             Incorporating the facts described above, this court finds that

14  defendant Jeremy Paul violated Business and Professions Code § 17200 by

15  representing himself to be an architect or designer qualified to design the

16  plaintiffs' deck, representing that the deck design met code and industry

17  requirements, misrepresenting to Monte Stott the as-built size of the deck,

18  and representing to the plaintiffs that the City of Pacifica had approved the

19  deck as built.  These acts were likely to deceive the plaintiffs, and in fact did

20  deceive plaintiffs into believing that their deck and sunroom were safe, free of

21  defects, and built to last its normal life.  Instead, plaintiffs are now burdened

22  with a defective, unsafe structure that could catastrophically fail at any time.

23             As a further basis for finding that defendant Jeremy Paul is

24  liable for having violated Business and Professions Code section 17200, _et_

STATEMENT OF DECISION

1  *seq*, and engaged in intentional misrepresentation toward plaintiffs, the

2  court finds that defendant Jeremy Paul conspired with Leonard Paul to

3  evade the California licensing laws in connection with the Nadelman deck

4  project and acted in furtherance of such conspiracy by his affirmative

5  conduct in representing as his part in such concerted scheme that he was

6  qualified, approved, and/or licensed to be responsible for the design of

7  plaintiffs' deck, when in fact he was not.

8          As a result of the misrepresentations and the resulting defective

9  deck design, plaintiffs have been harmed because they have a deck that

10  could catastrophically fail at any time and one whose life has been

11  drastically shortened because proper construction materials were not

12  specified in the deck design plan.  As a result of said harm, the Court orders

13  restitution to Plaintiffs in the amount of $1,226.50, which are the fees paid

14  by Plaintiffs to Defendant Jeremy Paul, dba Quickdraw Permit Consulting,

15  based on the bills submitted to Plaintiffs by the Defendant.  Without

16  restitution, the Defendant will retain the proceeds of the unfair business

17  practices in which he engaged.

18                              <u>DAMAGES</u>

19          For the First, Third, Sixth, and Eighth causes of action, plaintiffs

20  are awarded actual damages against defendant Jeremy Paul in the amount

21  of $100,000.00.

22          For the Ninth cause of action, plaintiffs are awarded restitution

23  against defendant Jeremy Paul in the amount of $1,226.50.

24

STATEMENT OF DECISION

1       Plaintiffs are the prevailing parties and are entitled to recover

2   costs of suit.  Whether said costs include attorneys fees shall be the subject

3   of a noticed motion following entry of judgment in this case.

4                     PUNITIVE DAMAGES

5       In the court's proposed statement of decision following Phase I

6   this court found by clear and convincing evidence with respect to the Sixth

7   and Eighth causes of action that defendant Jeremy Paul engaged in the

8   above-described conduct with malice and oppression.  The court further

9   found that defendant's conduct as described above was despicable and done

10   with a willful and knowing disregard of the rights or safety of others and that

11   he subjected plaintiffs to cruel and unjust hardship in knowing disregard of

12   their rights.  Those findings are adopted in this statement of decision.

13       Evidence as to the defendant's financial condition was presented

14   in Phase II of the court trial.  Upon consideration of the evidence presented

15   as to defendant's financial condition, the written submissions by the parties,

16   and good cause appearing, plaintiffs are awarded punitive damages in the

17   amount of $109,049.00.

18                     INJUNCTION

19       In its proposed statement of decision after Phase I of the trial,

20   the court stated that the parties had failed to adequately address the issue of

21   whether this court should or should not enjoin defendant Jeremy Paul from

22   certain activities individually or in connection with any residential home

23   improvement business entity.  The court invited briefing on the issue by the

24

1   plaintiffs, but none was submitted.  Accordingly, plaintiff's request that an

2   injunction be issued is denied.

3

4   Dated:  January 27, 2006

5

6                                             Diane Elan Wick

7                                    Judge of the Superior Court

8

9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

STATEMENT OF DECISION