EXHIBIT F

Nos. 07-55207 and 07-55179

In The
# UNITED STATES COURT OF APPEALS
# FOR THE NINTH CIRCUIT

**METRO LIGHTS, L.L.C.,**

*Plaintiff/Cross-Appellant/Appellee,*

*v.*

**CITY OF LOS ANGELES**

*Defendant/Appellant/Cross-Appellee.*

Appeal From United States District Court for the Central District of
California
Hon. Gary A. Feess, Judge
Case No. CV 04-1037 (GAF) (Ex)

# OPPOSITION OF METRO LIGHTS, L.L.C. TO MOTION OF
# *AMICUS CURIAE* CBS DECAUX, L.L.C. TO FILE
# SUPPLEMENTAL BRIEF

**LAURENCE H. TRIBE**
Hauser 420
1563 Massachusetts Ave.
Cambridge, MA 02138
Telephone: (617) 495-4621
Facsimile: (617) 495-3383

**AKIN GUMP STRAUSS
HAUER & FELD LLP**
Michael C. Small
2029 Century Park East
Suite 2400
Los Angeles, CA 90067
Telephone: (310)-229-1000
Facsimile: (310)-229-1001

**LAW OFFICES OF
PAUL E. FISHER**
Paul E. Fisher
537 Newport Center Dr.
Suite 289
Newport Beach, CA 92660
Telephone: (949) 675-5619
Facsimile: (949) 675-5641

Attorneys for Plaintiff/Cross-Appellant/Cross-Appelee,
**METRO LIGHTS, L.L.C.**

## INTRODUCTION

Nearly a year after the briefing closed, and more than two months after oral argument before this Court, *amicus curiae* CBS Decaux asserts that it has uncovered "new evidence" that mandates reversal of the district court's summary judgment ruling in favor of Appellee Metro Lights L.L.C. According to CBS Decaux, this revelation shows that an expert declaration submitted by Metro Lights on which the district court supposedly predicated its decision was misleading. CBS Decaux charges that Metro Lights' counsel knew that the declaration was misleading by the time of the oral argument on appeal. And it accuses Metro Lights' counsel of deceiving this Court by failing to disclose the supposed misleading statements in the expert declaration on which the district court is said to have relied. In defiance of this Court's rules, which provide that an *amicus curiae* is permitted to file only one brief, CBS Decaux seeks to file a second brief so that it can "remedy" these supposed wrongs.

CBS Decaux's ad hominem attacks on the personal integrity of Metro Lights' counsel have no basis. But the unfounded name-calling is not the essential defect in CBS Decaux's motion. The more glaring infirmity is that the central premise of the motion -- that the ruling below in favor of Metro Lights should be reversed because it rested on the declaration of Metro Lights' expert -- is wrong. Contrary to that premise, the district court stated expressly and unequivocally that

the expert declaration was "not necessary" to its ruling. ER 429. Rather, the

district court based its ruling on its conclusion that, regardless of the evidence that

Metro Lights presented in its expert's declaration, the City had failed to present

any evidence of its own to carry the burden imposed on it to prove that the CBS

Decaux's signs at issue in the case -- which are identical to Metro Lights' signs in

terms of size and illumination (ER 416), but which are located significantly closer

to the roadway (id.) -- are less distracting to passing motorists than Metro Lights'

signs. In the complete absence of any such evidence from the City, the district

court said that "common sense" would dictate that, given their placement near the

roadway, CBS Decaux's signs would have the potential of distracting drivers. ER

429. CBS Decaux assiduously ignores this critical point, which vitiates the basis

of its motion.

　　　The City is the Appellant here, not CBS Decaux. The City is also privy to

the "new evidence" that, according to CBS Decaux, requires reversal of the

summary judgment ruling.[1] If the City thought that there were any basis in this

supposed evidence to support CBS Decaux's last-ditch plea for reversal, the City

presumably would have been leading that refrain or at least would have joined in it.

Tellingly, however, the City has taken no position on CBS Decaux's motion for

---

[1] The City is well aware of this so-called "new evidence" because it derives
from other lawsuits against the City. Motion at 7, 9.

leave to file a second *amicus curiae* brief, as CBS Decaux itself acknowledges. Motion at 4. The City's silence speaks volumes and confirms that there is no substance to CBS Decaux's eleventh-hour challenge to the district court's ruling. Its motion should be denied.[2]

## PROCEDURAL BACKGROUND

This appeal arises from Metro Lights' First Amendment challenge to Appellant City of Los Angeles' ban on "off-site" signs on private property, which are signs that advertise products not made or sold on that property. ER 8. In the decision below from which the City appealed, the district court entered summary judgment for Metro Lights. It held that the City's ban on off-site signs on private property is rendered unconstitutional by the City's "Street Furniture Agreement" with CBS Decaux, which permits CBS Decaux -- and only CBS Decaux -- to place thousands of off-site signs on certain types of public property (such as bus shelters) throughout the City. ER 474.

The City justified its ban on off-site signs on private property on the grounds that such signs purportedly frustrate the City's interests in traffic safety and community aesthetics. ER 6. In holding the ban to be an unconstitutional restriction on commercial speech, the district court determined that the Street

---

[2] If this Court grants the motion and allows CBS Decaux's supplemental brief to be filed, Metro Lights will respectfully ask the Court for permission to submit a responsive brief.

Furniture Agreement fatally undermined the City's asserted traffic safety and aesthetic interests because the City presented no evidence that the off-site signs permitted on public property under the Street Furniture Agreement pose less risk to traffic safety and are more aesthetically tasteful than the off-site signs on private property that are prohibited.  ER 424-440.

In invalidating the City's ban on off-site signs on private property, the district court relied heavily on *Greater New Orleans Broadcasting Ass'n, Inc. v. United States*, 527 U.S. 173 (1999).  There, the Supreme Court struck down a federal ban on the advertising of privately-operated commercial casino gambling on the ground that the ban was so riddled with exemptions that it was impossible to conclude (as required under the test for the constitutionality of restrictions on commercial speech) that the ban directly advanced its objectives and was narrowly tailored to achieve those objectives.  *Id.* at 188, 193.[3]  Analogizing to *Greater New Orleans*, the district court here characterized the Street Furniture Agreement as a sweeping exemption to the City's ban on off-site signs that devastated the City's contention that the ban directly advanced the City's traffic safety and aesthetic interests and was narrowly tailored to achieve those interests.  ER 430, 435, 437.

---

[3] The Supreme Court in *Greater New Orleans* resolved a circuit split on the constitutionality of the casino advertising ban, and adopted the position that this Court had taken on that issue in *Valley Broadcasting Co. v. United States*, 107 F.3d 1328 (9th Cir. 1997).

I.    **CBS DECAUX'S MOTION VIOLATES THIS COURT'S RULES LIMITING AN *AMICUS CURIAE* TO A SINGLE BRIEF AND, IN ANY EVENT, RESTS ON THE ERRONEOUS PREMISE THAT THE DISTRICT COURT'S SUMMARY JUDGMENT RULING RELIED ON THE DECLARATION OF METRO LIGHTS' TRAFFIC SAFETY EXPERT.**

A.    **CBS Decaux's Request To File A Second Brief Violates This Court Rules Restricting An *Amicus Curiae* To One Brief.**

The City has appealed the district court's ruling granting summary judgment for Metro Lights, and has argued, among other things, that *Greater New Orleans* does not control here.  Appellant's Br. at 51-52.  CBS Decaux is not a party to this case.  Indeed, it was denied leave to intervene.[4]  From an *amicus curiae* perch, CBS Decaux filed a brief in this Court in support of the City.  CBS Decaux's motivation in urging reversal is transparent: to eliminate Metro Lights as a competitor and preserve the monopoly on off-site signs that the Street Furniture Agreement confers on CBS Decaux.  Appellee's Br. at 4-5, 26.[5]

---

[4] *See* Exhibit A to Metro Lights Opposition To CBS Decaux Initial Motion For Leave To File An *Amicus Curiae* Brief [hereinafter "ML Opp"].

[5] In seeking leave to file its initial *amicus curiae* brief in this appeal, CBS Decaux admitted that it would suffer economically if the district court's summary judgment ruling were affirmed on appeal, thereby resulting in the lifting of its monopoly on off-site signs and forcing the company to compete with Metro Lights.  CBS Decaux Initial Motion For Leave To File *Amicus Curiae* Brief at 4.   Indeed, precisely because the Street Furniture Agreement had become less valuable to it in the wake of the district court's summary judgment ruling, CBS Decaux sought to renegotiate the contract.  In presenting to the Los Angeles City Council the CBS Decaux proposed contractual modifications, the City's Chief Legislative Analyst observed that CBS Decaux had proposed changes to the deal because Metro Lights' signs "had become a source of direct competition for the advertising sold

CBS Decaux had its say in support of reversal in its *amicus* brief, and then again at oral argument. Its request to be heard a second time contravenes this Court's rules, which provide that an *amicus curiae* will be permitted to file just one brief and expressly prohibit an *amicus curiae* from filing a reply brief during the normal course of briefing. Circuit Rule 29-1. CBS Decaux's motion appears to be unprecedented. It cites no case in which this Court has deviated from its rules and granted a request by an *amicus curiae* to submit a second brief, whether before or after regular briefing has closed. This Court should deny CBS Decaux's motion on that ground alone.

**B.    CBS Decaux's Central Premise That The District Court Relied On The Declaration Of Metro Lights' Expert Is False Because The District Court Expressly Stated that The Declaration Was Not Necessary To Its Ruling.**

In defending its extraordinary request to submit another *amicus curiae* brief in contravention of this Court's rules, CBS Decaux proclaims that it has recently stumbled upon evidence that demonstrates that the district court's ruling was based on a misleading 2004 declaration of William Kunzman, which Metro Lights submitted below, regarding the traffic safety implications of the Street Furniture Agreement. According to CBS Decaux, this new evidence "undermines the conclusions in Mr. Kunzman's 2004 declaration and demonstrates that the district

---

by CBS Decaux [,which] was not anticipated when [the Agreement] was executed in 2001." ML Opp., Exh. B. at 1.

court erred in granting summary judgment in favor of Metro Lights." Motion at 14-15. CBS Decaux expounds on this call for reversal of the summary judgment ruling in the proposed supplemental brief that it has lodged. Referring to Mr. Kunzman's declaration, CBS Decaux declares emphatically in the proposed brief: "[b]ecause a truthful presentation of the facts relevant to traffic safety would not support summary judgment in this case, CBS Decaux now calls these issues to the Court's attention as further ground for reversal of the judgment below." Proposed Supplemental Brief at 4.

CBS Decaux's allegations regarding the Kunzman declaration miss the mark by a wide margin. We will address how baseless the allegations are in the next section of this opposition. But as a threshold and fundamental matter, the allegations are entirely irrelevant because the Kunzman declaration played no role in the district court's summary judgment ruling. Indeed, the district court said so itself. Thus, even if CBS Decaux's motion to file a second *amicus curiae* brief comported with this Court's rules, the motion should be denied because it is rooted in the totally erroneous premise that the declaration was material to the district court's ruling.

Mr. Kunzman is a traffic safety engineer with 30 years of experience in the field. ER 543. In his declaration, Mr. Kunzman expressed the view that many of the off-site signs allowed by the City pursuant to the Street Furniture Agreement

with CBS Decaux (signs that were depicted in photographs attached to the declaration) pose a greater threat to traffic safety than Metro Lights' off-site signs because the Street Furniture signs are "invariably closer to lanes of traffic and, therefore, more visible and potentially a greater distraction than any of the signs owned and operated by Metro Lights." ER 542.

The district court paid scant attention to the Kunzman declaration, referring to it in only two sentences in the body of its summary judgment ruling. In the first of those sentences, the district court summarized the Kunzman declaration as follows: "Plaintiff presents evidence from a traffic engineer with 30 years of experience who conducted a survey and concluded that the City's off-site sign depicted in a photograph posed a potentially greater traffic hazard than the Metro Lights sign." ER 429. In the very next sentence, however, the district court expressly stated that it was *not* relying on the evidence presented in the Kunzman declaration in granting summary judgment for Metro Lights. Referring to the declaration, the district court stated:

> *[T]his evidence is not necessary to the Court's ruling since the study tends to confirm that which common sense suggests.* If a sign is in the field of vision of a driver, which is indisputably the case with the Street Furniture signs, it will have the potential of distracting the driver from his or her primary task of safely operating the vehicle. The Court considers the precise location of the sign in the field of vision to be immaterial to the First Amendment analysis in this case. While experts might argue over the degree of distraction created by signs that

are 30 degrees off a driver's visual axis as opposed to those 45 degrees off axis, there can be little dispute that advertising materials at or near the public right of way seek the attention of the driver and create some identifiable, if not measurable, level of distraction. *No persuasive argument can be made that off-site signs, which the Sign Ordinance suggests are a traffic safety hazard, are measurably less dangerous by virtue of being placed adjacent to the public rights of way as opposed to being further off the visual axis.*

*Id.* (emphasis added).

In short, as the district court made unmistakably clear, the traffic safety evidence presented in Mr. Kunzman's declaration had no bearing on its summary judgment ruling. Rather, the district court based its ruling on the City's complete failure to present any evidence of its own to overcome the "common sense" conclusion that the off-site signs on public property permitted by the Street Furniture Agreement were at least as distracting, and therefore at least as hazardous to traffic safety, as the off-site signs on private property banned by the City's ordinance. ER 432-433, 438-39 (discussing lack of evidence supporting City's position).[6]

---

[6] Consistent with its theme that the City's traffic safety evidence in support of the off-site signs permitted under the Street Furniture Agreement was nonexistent, the district court stated that the declaration of the Administrator of the Agreement that the City submitted "provides no help to the City, and indeed lends support to the Plaintiff's argument," because it "conc[eded] that signs on Street Furniture affect traffic safety, thus implicitly conceding that Street Furniture signs tend to undermine the objective of the Sign Ordinance." ER 429 n.9

As the district court recognized, the burden rested with the City to demonstrate that the exempted CBS Decaux Street Furniture signs are less distracting to drivers than the prohibited Metro Lights signs; it was not incumbent on Metro Lights to prove that CBS Decaux's signs are more distracting to drivers than Metro Lights' signs. *See Bolger v. Youngs Drug Prod. Corp.* 463 U.S. 60, 71 n.20 (1983 ("The party seeking to uphold a restriction on commercial speech carries the burden of justifying it."); *see also Central Hudson Gas & Elec. Corp. v. Public Serv. Comm'n*, 447 U.S. 557, 570 (1980). The district court entered summary judgment for Metro Lights because the City failed to adduce *any evidence at all* to carry its burden on this critical issue. Thus, it was immaterial to the decision below that Metro Lights *affirmatively* showed through Mr. Kunzman's declaration that the CBS Decaux Street Furniture signs are, if anything, more distracting to drivers than Metro Lights' signs are. Even if Metro Lights had not made that affirmative showing -- *i.e.*, even if CBS Decaux's attack on the Kunzman declaration had any merit (which, as will be demonstrated below, it does not ) -- Metro Lights still would have been entitled to summary judgment given the City's wholesale failure to discharge its evidentiary burden.

## II.    CBS DECAUX'S ATTACKS ON THE KUNZMAN DECLARATION AND THE INTEGRITY OF METRO LIGHTS' COUNSEL ARE BASELESS.

Even if the 2004 Kunzman declaration were material to the district court's summary judgment ruling, CBS Decaux's charges that the declaration is misleading and that Metro Lights' counsel deceived this Court in failing to correct the supposedly misleading statements therein are groundless.

CBS Decaux's primary argument is that Mr. Kunzman contradicted his 2004 declaration in a report he prepared in 2007, which Metro Lights' counsel submitted on behalf of another off-site sign company (World Wide Rush, L.L.C.) in separate litigation challenging the constitutionality of the City's ban on off-site signs. Motion at 3-4. According to CBS Decaux, this contradiction lies in the following purported dichotomy between the two documents: whereas in the 2004 declaration, Mr. Kunzman stated that the off-site signs on bus shelters permitted by the Street Furniture Agreement are distracting to drivers and thus pose a traffic hazard, *id.* at 5-6, Mr. Kunzman stated in the 2007 report that the term "distraction" is not "synonomous with the term traffic hazard [because] '[m]ost driver distractions are not significant, and do not lead to traffic accidents.'" *Id.* at 7. These two statements are not contradictory. And it is only by distorting them that CBS Decaux has manufactured an alleged contradiction.

In his 2004 declaration, Mr. Kunzman expressed the view that because the CBS Decaux signs erected pursuant to the Street Furniture Agreement are located in close proximity to traffic lanes, those signs are potentially distracting to drivers and hence are a potential traffic hazard. ER 538-39, 541-42.

In his 2007 report, Mr. Kunzman did not repudiate the conclusion in his 2004 declaration that the CBS Decaux signs are likely to be distracting to drivers. In fact, he reaffirmed that conclusion.

Kunzman's 2007 report first distinguished between "significant distraction[s] . . . that lead[] to traffic accidents," on the one hand, and "insignificant distraction[s]. . . that cannot be shown to lead to traffic accidents," on the other hand. Motion, Brill Dec., Exh. A at 3. The report then proceeded to review and discuss empirical research on the extent to which various signs are distracting to drivers, focusing on the impact of the proximity of a sign to traffic lanes. *Id*. at 4-10. Next, in the section of the report entitled "Conclusions," Mr. Kunzman reiterated that while not all signs are distracting to drivers, some are in fact distracting. *Id*. at 10.

Then, Mr. Kunzman concluded that the CBS Decaux signs are a significant distraction, and hence a traffic hazard, because of their proximity to traffic lanes -- which is precisely what Mr. Kunzman had stated in his 2004 declaration. In

particular, Mr. Kunzman said the following in his 2007 report when discussing the

CBS Decaux signs and the magnitude of the distraction to drivers they pose:

> How much distraction is caused by a sign is a function of
> how big the sign is in the driver's retina, not how big the
> sign is in square feet.  A sign close up such as bus shelter
> sign placed just 18 inches from curb face generally is
> bigger in the driver's retina than a large sign 200 or 300
> feet away. Likewise, a sign on the back of a bus will
> loom very large in a driver's retina when the driver is just
> a few car lengths behind the bus.  There are numerous
> CBS Decaux signs located on sidewalks throughout the
> City that fall in this category of signs.  *Although the CBS
> Decaux signs are much smaller than standardized
> billboards, measuring only approximately 4'x 6,' the fact
> that they are maintained sometimes within feet or inches
> of lanes of traffic make them as significant a traffic
> hazard as much larger signs maintained further from
> traffic lanes.*

*Id.* (emphasis added).

There is no contradiction between that statement about the traffic hazards

posed by CBS Decaux's signs from Mr. Kunzman's 2007 report and the statement

about the traffic hazards posed by CBS Decaux's signs from Mr. Kunzman's 2004

declaration.  In both documents, Mr. Kunzman concluded that the proximity of the

CBS Decaux signs to traffic lanes made them distracting to drivers and therefore a

traffic hazard.[7]  Thus, there was nothing in the 2004 declaration that was in need of

---

[7] The statement in Mr. Kunzman's 2007 report that the placement of the
CBS Decaux signs close to traffic lanes may distract drivers is also consistent with
the comparison in his 2004 declaration between the traffic safety implications of
Metro Lights' signs and the traffic safety implications of CBS Decaux's signs.  As

correction on appeal, and CBS Decaux's assertion that Metro Lights' counsel breached a duty of candor owed to this Court in failing to make any corrections to that document is untenable.

Equally empty is CBS Decaux's related charge that Mr. Kunzman's 2007 report placed Metro Lights' counsel "on notice that the methodology that Mr. Kunzman had used in his [2004 declaration] was flawed beyond repair." Motion at 7. The hole in this charge is that Mr. Kunzman used the same methodology in the 2007 report that he used in the 2004 declaration: in both documents, Mr. Kunzman relied on what CBS Decaux labels the "traffic engineering rule of thumb that is meant to ensure that signs are safe and legible by placing them close enough to the road that they will be seen" -- *i.e.*, within an approximately fifteen degree vision cone from the road. Motion at 7-8. *Compare* ER 539 (discussing rule of thumb in 2004 declaration) *with* Brill Dec., Exh. A at 8 (discussing rule of thumb in 2007 report). Nothing about the use of the rule of thumb in the 2007 report casts doubt on the use of the same rule of thumb in the 2004 declaration -- the rule of thumb

---

the record reflects, Metro Lights' signs are identical to CBS Decaux's signs in terms of size and illumination, but they are located significantly further away from the roadway than the CBS Decaux signs. ER 416. Thus, under the reasoning of Mr. Kunzman's 2007 report, the Metro Lights signs pose less of a distraction to drivers than the CBS Decaux signs and thus pose less of a risk to traffic safety, just as Mr. Kunzman concluded in his 2004 declaration.

was used in both documents to arrive at identical conclusions regarding the

potential traffic hazard presented by the CBS Decaux signs.[8]

CBS Decaux does not like that conclusion, of course. In an attempt to

counter it, CBS Decaux argues that "[t]here is no basis to infer from this rule of

thumb that bus shelter signs are more unsafe than Metro Lights signs because the

former are closer to traffic lanes." Motion at 8. CBS Decaux offers no

explanation as to why this argument correct -- it simply asserts that it is. In any

event, CBS Decaux could have made this very same argument about the 2004

declaration's application of the rule of thumb in its initial *amicus* brief. It is not an

argument that only could have become apparent to CBS Decaux following the

submission of its *amicus curiae* brief in this case and its receipt of the 2007 report

prepared by Mr. Kunzman in another case -- the argument was there for CBS

Decaux's picking well before those two events transpired. CBS Decaux should not

---

[8] CBS Decaux suggests that the 2007 report calls into question the methodology of the 2004 declaration because, according to CBS Decaux, the report states that "when a driver's attention is diverted away from the road by an occurrence or object outside the 15 foot [sic] cone, accidents can result." Motion at 8. But the passage from the 2007 report that CBS Decaux cites for that proposition says no such thing -- indeed, it makes no reference at all to the 15-degree cone rule of thumb. As quoted by CBS Decaux itself, the passage states only that "[w]e are all familiar with the rubber necking that occurs when there is an accident. One driver is looking at the accident and runs into the back of the car ahead which might have unexpectedly stopped." *Id.* (quoting Brill Dec., Exh. A, at 3).

be given a second chance to make that argument through the vehicle of another *amicus* brief.

As a secondary argument in support of its allegation that Mr. Kunzman's 2004 declaration is misleading, CBS Decaux lists alleged contradictions between Mr. Kunzman's recent deposition testimony in the *Summit Media* litigation challenging the City's Sign Ordinance (which was not brought by Metro Lights' counsel) and the 2004 declaration. Motion at 9-13. According to CBS Decaux, this list "provides additional bases to disregard Mr. Kunzman's declaration as a factor favoring Metro Lights in this case." *Id.* at 15. Once again, CBS Decaux misfires.

For one, the City could have deposed Mr. Kunzman in the *Metro Lights* case. It did not do so. CBS Decaux cites no authority for the proposition that a party -- let alone an *amicus curiae* -- can seek on appeal to collaterally discredit witness testimony in a record that has long-since closed by introducing testimony the witness gave in another case involving a different party represented by different counsel. Such after-the-fact challenges to the evidence that is before an appellate court would undermine basic notions of finality. It would encourage parties (and even nonparty *amici*) to seek to open up the record on appeal and essentially retry matters that were resolved in the district court. This litigation tactic has no moorings in appellate procedure.

Moreover, the alleged contradictions between Mr. Kunzman's *Summit Media* deposition testimony and his 2004 declaration in this case are illusory. In none of the deposition testimony to which CBS Decaux points did Mr. Kunzman retreat from the core position he advanced in the 2004 declaration that the CBS Decaux signs are potentially distracting to drivers and hence constitute a traffic hazard.[9]

---

[9] CBS Decaux cherry-picks snippets from Mr. Kunzman's *Summit Media* deposition in an attempt to conjure up contradictions between Mr. Kunzman's testimony there and the statements about the CBS Decaux signs in the declaration he submitted in this litigation. These efforts fail. For example, CBS Decaux highlights Mr. Kunzman's testimony in his *Summit Media* deposition that signs on bus shelters may help some drivers know when a bus is going to stop. Motion at 10. This testimony is a far cry, however, from saying that those signs pose no traffic hazard. Likewise, CBS Decaux trumpets the fact that Mr. Kunzman testified that off-site signs on private property may pose traffic hazards. *Id.* at 12-13. But Mr. Kunzman did not testify that off-site signs on public property pose no traffic hazards. CBS Decaux also tries to make hay of responses Mr. Kunzman gave in his *Summit Media* deposition to questions regarding whether bus shelters help increase transit ridership and whether bus shelters are privately-constructed. *Id.* at 10. Mr. Kunzman did not profess in the deposition to have experience on these subjects, which, in any event, have no relationship to the impact on traffic safety of signs on bus shelters.

---

## III.    CONCLUSION

For the foregoing reasons, the motion of *amicus curiae* CBS Decaux to file a

supplemental brief should be denied.

Respectfully submitted,

Dated:  August 22, 2008          **AKIN GUMP STRAUSS HAUER &**
**FELD LLP**

By _____

                 Michael C. Small
**Attorneys for Plaintiff/Cross-Appellant/Cross-**
**Appellee**

# PROOF OF SERVICE

## STATE OF CALIFORNIA, COUNTY OF LOS ANGELES

I am employed in the County of Los Angeles, State of California. I am over the age of 18 and not a party to the within action; my business address is: 2029 Century Park East, Suite 2400, Los Angeles, CA 90067. On August 22, 2008, I served the foregoing document(s) described as: **OPPOSITION OF METRO LIGHTS, L.L.C. TO MOTION OF *AMICUS CURIAE* CBS DECAUX, L.L.C. TO FILE SUPPLEMENTAL BRIEF** on the interested party(ies) below, using the following means:

Laura W. Brill
Richard M. Simon
Irell & Manella LLP
1800 Avenue of the Stars
Suite 900
Los Angeles, CA 90067
　　　　Attorneys for Amicus Curiae, CBS Decaux, L.L.C.

Kenneth T. Fong, Deputy City Attorney
700 City Hall East
200 North Main Street
Los Angeles, CA 90012
　　　　Attorneys for Appellant City of Los Angeles

☐ BY PERSONAL SERVICE  I personally delivered the documents to the respective address(es) of the party(ies) stated above. (1) For a party represented by an attorney, delivery was made to the attorney or at the attorney's office by leaving the documents in an envelope or package clearly labeled to identify the attorney being served with a receptionist or an individual in charge of the office. (2) For a party, delivery was made to the party or by leaving the documents at the party's residence with some person not less than 18 years of age between the hours of eight in the morning and six in the evening.

☒ BY UNITED STATES MAIL  I enclosed the documents in a sealed envelope or package addressed to the respective address(es) of the party(ies) stated above and

　　　　☒ placed the envelope(s) for collection and mailing, following our ordinary business practices. I am readily familiar with the firm's practice of collection and processing correspondence for mailing. On the same day that correspondence is placed for collection and mailing, it is deposited in the

ordinary course of business with the United States Postal Service, in a sealed envelope with postage fully prepaid at Los Angeles, California.

☐ BY OVERNIGHT DELIVERY  I enclosed the document(s) in an envelope or package provided by an overnight delivery carrier and addressed to the respective address(es) of the party(ies) stated above.  I placed the envelope or package for collection and overnight delivery at an office or a regularly utilized drop box of the overnight delivery carrier.

☐ BY MESSENGER SERVICE  I served the documents by placing them in an envelope or package addressed to the respective address(es) of the party(ies) stated above and providing them to a professional messenger service for service.

☐ BY FAX  Based on an agreement of the parties to accept service by fax transmission, I faxed the documents to the respective fax number(s) of the party(ies) as stated above.  No error was reported by the fax machine that I used.  A copy of the record of the fax transmission(s), which I printed out, is attached.

☐ BY ELECTRONIC MAIL OR ELECTRONIC TRANSMISSION.  Based on a court order or an agreement of the parties to accept service by e-mail or electronic transmission, I caused the document(s) to be sent to the respective e-mail address(es) of the party(ies) as stated above.  I did not receive, within a reasonable time after the transmission, any electronic message or other indication that the transmission was unsuccessful.

☐ (STATE)  I declare under penalty of perjury under the laws of the State of California that the foregoing is true and correct.

☒ (FEDERAL)  I declare that I am employed in the office of a member of the bar of this court at whose direction the service was made.

Executed on August 22, 2008, at Los Angeles, California.

Robin-lyn Mendick
_____
[Print Name of Person Executing Proof]

_____
[Signature]