# EXHIBIT A-1

# TABLE OF CONTENTS

| | | Page |
|---|---|---|
| Part 1. | **General Provisions** | 1 |
| 1.01. | Definitions | 1 |
| 1.02. | Certification of Funds; Budget and Fiscal Provisions; Termination in the Event of Non-Appropriation | |
| 1.03. | Term of Agreement | 3 |
| 1.04. | Effective Date of Agreement | 4 |
| 1.05. | Guaranteed Maximum Costs | 4 |
| 1.06. | Contractor to Provide Automatic Public Toilets | 4 |
| 1.07. | License to Install and Maintain Public Service Kiosks as Consideration for Automatic Public Toilets | 5 |
| 1.08. | Grant of Advertising Rights | 5 |
| 1.09. | Ownership of Automatic Public Toilets and Public Service Kiosks | 5 |
| 1.10. | Payment by Contractor | 7 |
| 1.11. | Performance Bond | 7 |
| 1.12. | Letter of Credit | 8 |
| 1.13. | Maintenance and Complaint Log | 11 |
| 1.14. | Insurance | 14 |
| 1.15. | Hold Harmless and Indemnification | 14 |
| 1.16. | Social Security; Unemployment Compensation | 16 |
| 1.17. | Notices; When Effective | 17 |
| 1.18. | Termination of Agreement | 17 |
| 1.19. | Event of Default; Remedies | 17 |
| 1.20. | No Waiver of Subsequent Breaches or Defaults | 19 |
| 1.21. | Subcontracting | 22 |
| 1.22. | Audited Financial Report | 22 |
| 1.23. | Initial Capital | 22 |
| 1.24. | Guaranty of Obligation | 23 |
| Part 2. | **Automatic Public Toilet Installation** | 23 |
| 2.01. | Installation of Automatic Public Toilets | 23 |
| 2.02. | Permit Approvals Required for Automatic Public Toilets | 24 |
| 2.03. | City Review of Plans and Submittals | 24 |
| 2.04. | Automatic Public Toilets Required To Be Installed | 25 |
| 2.05. | Locations and Sites of Automatic Public Toilets | 26 |
| 2.06. | Relocation of Automatic Public Toilets | 28 |

**Page**

| | | |
|---|---|---|
| 2.07. | Clearance Requirements for Automatic Public Toilets . . . . . . . . . . . . . . | 28 |
| 2.08. | Automatic Public Toilet Design . . . . . . . . | 29 |
| 2.09. | Approval of Other Agencies . . . . . . . . . | 29 |
| 2.10. | Location Drawings and Engineering Plans for Automatic Public Toilets . . . . . . . . | 30 |
| 2.11. | Electrical, Sewage, Telephone and Water Services; Installation . . . . . . . . . . . | 31 |
| 2.12. | Restoration of Sites . . . . . . . . . . . . | 31 |
| **Part 3.** | **Public Service Kiosk License** . . . . . . . . . . . | **32** |
| 3.01. | Installation of Public Service Kiosks . . . . | 32 |
| 3.02. | Permit Approvals Required For Public Service Kiosks . . . . . . . . . . . . . . . . . | 32 |
| 3.03. | CITY Review of Plans And Submittals . . . . . | 33 |
| 3.04. | Number of Public Service Kiosks Permitted . . | 33 |
| 3.05. | Locations and Sites of Public Service Kiosks . | 34 |
| 3.06. | Relocation of Public Service Kiosks . . . . | 35 |
| 3.07. | Clearance Requirements For Public Service Kiosks . . . . . . . . . . . . . . . . . | 36 |
| 3.08. | Public Service Kiosk Design . . . . . . . . . | 37 |
| 3.09. | Approval of Other Agencies . . . . . . . . . | 37 |
| 3.10. | Location Drawings and Engineering Plans for Public Service Kiosks . . . . . . . . . | 37 |
| 3.11. | Electrical Connections and Service Responsibility of Contractor . . . . . . . | 38 |
| 3.12. | Restoration of Sites . . . . . . . . . . . . | 38 |
| **Part 4.** | **Advertising** . . . . . . . . . . . . . . . . . | **38** |
| 4.01. | Advertising Displays . . . . . . . . . . . . | 38 |
| 4.02. | Size and Location of Advertising . . . . . . | 39 |
| 4.03. | Advertising Rights . . . . . . . . . . . . | 39 |
| 4.04. | Changes in Authorized Advertising . . . . . | 39 |
| 4.05. | Design Considerations and Use of Materials . . | 40 |
| 4.06. | Advertising Material . . . . . . . . . . . | 40 |
| 4.07. | Limitation on Tobacco Advertising . . . . . | 40 |
| 4.08. | Public Information Campaign . . . . . . . . | 40 |
| **Part 5.** | **Maintenance and Operation** . . . . . . . . . . | **41** |
| 5.01. | Automatic Public Toilet and Public Service Kiosk Maintenance and Operation . . . . . . | 41 |
| 5.02. | Hours of Operation . . . . . . . . . . . . | 41 |

**Page**

| | | |
|---|---|---|
| 5.03. | Services to be Furnished by CONTRACTOR . . . . | 41 |
| 5.04. | Maintenance Schedule . . . . . . . . . | 42 |
| 5.05. | Inspection and Clean-Up of Automatic Public Toilets and Public Service Kiosks . . . . . | 42 |
| 5.06. | Repair and Replacement . . . . . . . . | 42 |
| 5.07. | Vandalism of Automatic Public Toilets . . . . | 43 |
| 5.08. | Charge For Use of Automatic Public Toilets . . | 44 |
| 5.09. | Parking and Traffic Restrictions . . . . . | 44 |
| 5.10. | Public Service Use of Public Service Kiosks . | 45 |
| 5.11. | Relocation Costs . . . . . . . . . . . | 45 |
| | | 49 |

**Part 6.  Accessibility Requirements** . . . . . . . . . . . . . . . 50

| | | |
|---|---|---|
| 6.01. | Accessibility . . . . . . . . . . | 50 |
| 6.02. | Accessible Design . . . . . . . . . | 50 |
| 6.03. | Path of Travel . . . . . . . . . . | 50 |
| 6.04. | Approved Cleaning Products . . . . . . | 50 |
| 6.05. | Automatic Public Toilet Review Committee . . . | 51 |
| 6.06. | Disabled Access Advisory Committee . . . . . | 51 |

**Part 7.  Miscellaneous Contract Provisions** . . . . . . . . 51

| | | |
|---|---|---|
| 7.01. | San Francisco Office . . . . . . . . . | 51 |
| 7.02. | Conflict of Interest . . . . . . . . . | 51 |
| 7.03. | Other Agreements between CITY and CONTRACTOR . | 52 |
| 7.04. | Assignment . . . . . . . . . . . . | 52 |
| 7.05. | Binding Effect of Agreement . . . . . . | 52 |
| 7.06. | Taxes . . . . . . . . . . . . . | 52 |
| 7.07. | No Other Fees . . . . . . . . . . | 52 |
| 7.08. | Legal Relationship . . . . . . . . . | 53 |
| 7.09. | Independent Contractor . . . . . . . . | 53 |
| 7.10. | Qualified Personnel . . . . . . . . . | 54 |
| 7.11. | Equal Employment Opportunity and Business Practices; Liquidated Damages . . . . . . | 54 |
| 7.12. | MacBride Principles--Northern Ireland . . . . | 54 |
| 7.13. | Tropical Hardwood Ban . . . . . . . . | 55 |
| 7.14. | Resource Conservation . . . . . . . . | 55 |
| 7.15. | Non-Waiver of Rights . . . . . . . . | 55 |
| 7.16. | Modification And Amendment of Agreement . . . | 55 |
| 7.17. | Section Headings . . . . . . . . . . | 55 |
| 7.18. | Agreement Made in California; Venue . . . . | 55 |
| 7.19. | Construction . . . . . . . . . . . | 55 |
| 7.20. | Entire Agreement . . . . . . . . . . | 55 |

## APPENDICES

### Appendix

A.  Location of Gannett Market Street Kiosks

B.  Preliminary Locations of Initial Phase Automatic Public Toilets

C.  Automatic Public Toilet Plans and Specifications

D.  Public Service Kiosks Plans and Specifications

E.  Form of Guaranty

F.  Map of the San Francisco Waterfront

G.  Department of Public Works Order Nos. 163,368 and 163,369

This AGREEMENT is made and entered into this 2nd day of
August , 1994, by and between the CITY AND COUNTY OF SAN
FRANCISCO a municipal corporation, hereinafter referred to as
"CITY", acting by and through its Department of Public Works, and
JCDECAUX UNITED STREET FURNITURE, INC., a California corporation,
hereinafter referred to as "CONTRACTOR".

### Recitals

WHEREAS, The CITY desires to establish an Automatic Public
Toilet Program, for the benefit of the residents and visitors to
the City and County of San Francisco, to provide for the
placement of automatic public toilets on public property in San
Francisco; and

WHEREAS, CONTRACTOR states and declares that it has the
knowledge, willingness and ability to provide automatic public
toilets for the Automatic Public Toilet Program, in exchange for
the right to place public service kiosks on public property and
to sell advertising on said public service kiosks; and

WHEREAS, The CITY has selected CONTRACTOR to provide the
Automatic Public Toilet Program according to the terms of this
Automatic Public Toilet And Public Service Kiosk Agreement ("the
Agreement");

NOW, THEREFORE, for and in consideration of the promises
hereinafter set forth, the parties hereto agree as follows:

### Part 1.  General Provisions.

1.01.  **Definitions.**

Where any word or phrase defined below or a pronoun used
in place thereof, is used in any part of this Agreement,
it shall have the meaning herein set forth.

(A)  "Agreement" means this contract, as originally
executed and as amended or extended from time to
time; words such as "herein," "hereinafter,"
"hereof," "hereto" and "hereunder," when used with
reference to this Agreement, refer to this Agreement
as a whole, unless the context otherwise requires.

(B)  "Approval" means the written consent of the
Director, or his or her designated agent, unless the
context otherwise requires.

(C)  "Authorization" means an order or other written
authorization of the CITY properly executed by the

617517.0
8/21/94

1.

Director, or his or her designated agent, unless the context otherwise requires.

(D) "Automatic Public Toilet" means a free standing enclosure containing an automatic self-cleaning toilet available for use by the general public as provided herein.

(E) "CITY" means the City and County of San Francisco, a municipal corporation; except where otherwise indicated by the context, all references to CITY shall also mean and include the Port of San Francisco.

(F) "CONTRACTOR" means JCDecaux United Street Furniture, Inc. a California corporation, and its successors and assigns permitted hereunder.

(G) "Controller" means the Controller of the City and County of San Francisco.

(H) "Director" means the Director of the CITY's Department of Public Works.

(I) "Downtown Area" means the geographic area of the CITY bounded on the south by the southerly line of Folsom Street, on the west by the westerly line of Van Ness Avenue extended north to the San Francisco Bay, and on the north and east by the shoreline of the San Francisco Bay.

(J) "Initial Phase" means the twenty-seven (27) Automatic Public Toilets and one hundred twenty one (121) Public Service Kiosks initially authorized pursuant to this Agreement.

(K) "PORT" means the Port of San Francisco.

(L) "Port Director" means the Executive Director of the Port of San Francisco.

(M) "Port Property" means the geographic area of the CITY shown on the map of the San Francisco waterfront attached hereto as Appendix F.

(N) "Public Service Kiosk" means a free standing circular kiosk, the exterior of which is divided into three sections. two of which display advertising panels of approximately

fifty-one (51) square feet each, and one of
which provides access to a public service,
such as public art, a newsstand, newsrack,
display of map or local information, telephone
booth, recycling bin, vending machine,
interactive video information system, or other
public service authorized pursuant to Section
5.10 of this Agreement.

(O)  "Reference Rate" means the reference rate
charged by the Bank of America, NT & SA, San
Francisco, California, at the beginning of each
month.

(P)  "Start Date" means the first date upon which
all permits required for installation have been
issued for at least (i) twenty (20) Automatic Public
Toilets and (ii) ninety (90) Public Service Kiosks,
of which at least thirty-five (35) shall be located
on Market Street.

(Q)  "Vandalism" shall mean wilful or malicious
damage or destruction of an Automatic Public Toilet
or any part thereof caused by a party other than
CONTRACTOR or CITY but shall exclude graffiti,
ordinary wear and tear, and any damage caused during
riots and other civil disturbance.

(R)  Whenever the words "as directed", "as required",
"as permitted", or words of like effect are used, it
shall be understood as the direction, requirement, or
permission of the Department of Public Works.  The
words "sufficient", necessary", or "proper", and the
like, mean sufficient, necessary or proper in the
judgment of the Department of Public Works.  The
words "approval", "acceptable", "satisfactory", or
words of like import, shall mean approved by, or
acceptable to, or satisfactory to the Department of
Public Works, unless otherwise expressly provided
herein.

1.02.  <u>Certification of Funds; Budget and Fiscal Provisions;
Termination in the Event of Non-Appropriation</u>.  This
Agreement is  subject to the budget and fiscal provisions
of the CITY's Charter.

CITY has no obligation to make appropriations for this
Agreement in lieu of appropriations for new or other
agreements.  CITY budget decisions are subject to the
discretion of the Mayor and the Board of Supervisors.

CONTRACTOR's assumption of risk of possible
non-appropriation is part of the consideration for this
Agreement. THIS SECTION CONTROLS AGAINST ANY AND ALL
OTHER PROVISIONS OF THIS AGREEMENT. Notwithstanding the
foregoing, if CITY should fail to appropriate amounts as
and when due CONTRACTOR hereunder, CONTRACTOR shall have
the right, at its sole option, to terminate this
Agreement, effective immediately upon notice to CITY.

1.03.    <u>Term of Agreement</u>.  This Agreement shall commence as of
the Effective Date (as defined in Section 1.04 below) and
shall continue, subject to the terms of this Agreement
regarding termination, to the date twenty (20) years from
the Effective Date.

1.04.    <u>Effective Date of Agreement</u>.  This Agreement shall become
effective on the date (the "Effective Date") occurring
thirty (30) days after the CITY's Mayor signs the
ordinance approving this Agreement.

1.05.    <u>Guaranteed Maximum Costs</u>.

A.    The CITY's financial obligations hereunder shall not
at any time exceed the amount certified by the
Controller for the purpose and period stated in such
certification.

B.    Except as may be provided by CITY ordinances
governing emergency conditions, the CITY and its
employees and officers are not authorized to request
CONTRACTOR to perform services or to provide
materials, equipment and supplies that would result
in CONTRACTOR performing services or providing
materials, equipment and supplies that are beyond the
scope of the services, materials, equipment and
supplies agreed upon in the Agreement unless the
Agreement is amended in writing and approved as
required by law to authorize the additional services,
materials, equipment or supplies. CITY is not
required to reimburse CONTRACTOR for services,
materials, equipment or supplies that are provided by
CONTRACTOR which are beyond the scope of the
services, materials, equipment and supplies agreed
upon in the Agreement and which were not approved by
a written amendment to the Agreement having been
lawfully executed by the CITY.

C.    CITY and its employees and officers are not
authorized to offer or promise to CONTRACTOR
additional funding for the Agreement which would

exceed the maximum amount of funding provided for in the Agreement for CONTRACTOR's performance under the Agreement. Additional funding for the Agreement in excess of the maximum provided in the Agreement shall require lawful approval and certification by the Controller of the CITY. The CITY is not required to honor any offered or promised additional funding for an Agreement which exceeds the maximum provided in the Agreement which requires lawful approval and certification by the Controller when the lawful approval and certification by the Controller has not been obtained.

D.  The Controller is not authorized to make payments on any contract for which funds have not been certified as available in the budget or by supplemental appropriation.

1.06.  <u>Contractor to Provide Automatic Public Toilets</u>. CONTRACTOR shall install, operate and maintain, on public property, Automatic Public Toilets as provided in Part 2, <u>Automatic Public Toilet Installation</u>, hereof, subject to all of the terms and conditions set forth in this Agreement.

1.07.  <u>License to Install and Maintain Public Service Kiosks as Consideration for Automatic Public Toilets</u>. In consideration for the installation, operation and maintenance of Automatic Public Toilets according to the terms and conditions of this Agreement, the CITY hereby agrees to grant to CONTRACTOR the right, to occupy and use public property for the installation, operation and maintenance of Public Service Kiosks as provided in, and subject to all of the terms and conditions of, this Agreement, and the right to place advertising on such Public Service Kiosks, subject to the terms, conditions and limitations set forth in Part 4 of this Agreement.

1.08.  <u>Grant of Advertising Rights</u>.

A.  CITY hereby grants to CONTRACTOR, and represents and warrants that CONTRACTOR shall have, during the term of this Agreement, the exclusive right to erect and maintain Public Service Kiosks on CITY property, and the exclusive right to place advertising on Public Service Kiosks as authorized. CITY shall retain and reserve to itself and its assigns all advertising rights not expressly granted to CONTRACTOR hereunder, subject to the limitations and conditions of this Agreement.

6175\7.0
4/21/94

5.

B.  Except for advertising displayed by the CONTRACTOR on Public Service Kiosks authorized hereunder, and except as provided in Paragraph C below, CITY agrees not to display nor will it authorize nor permit the display of advertising panels of from eighteen (18) to fifty-five (55) square-feet on any free-standing structure located on any public right-of-way or other CITY-owned property (i) anywhere within the Downtown Area, and/or (ii) outside the Downtown Area, within a 300-foot radius of any Public Service Kiosk authorized hereunder.  For purposes of this Section 1.08, the term "free-standing structure" includes structures of any shape, size or number of advertising panels, but shall not include buildings of at least 250 square-feet of floor area.

C.  Notwithstanding any other provisions of Paragraph A or B of this Section 1.08, CITY shall have the right to display or to authorize or permit display of advertising panels, each of which shall not exceed twenty four (24) square feet in area, provided that such panels are physically attached to transit shelters, excluding, however, transit shelters on Market Street within the Downtown Area; provided further that the CITY's right to display advertising on such transit shelters shall survive the expiration or termination of the Advertising Transit Shelter Agreement between the CITY and Gannett Outdoor Company, Inc of Northern California, dated as of January 5, 1990.

D.  Notwithstanding any other provision of Paragraph A or B of this Section 1.08, CITY shall have the right to display or to authorize or permit display of up to two (2) advertising panels, each of which shall not exceed twenty four (24) square feet in area, on the twenty-six (26) "Market Street Kiosks" authorized as of the Effective Date hereof pursuant to the First Amendment to Advertising Transit Shelter Agreement between the CITY and Gannett Outdoor Company, Inc. of Northern California dated as of January 5, 1990 (the locations of which are listed in Appendix A hereto); provided that such "Market Street Kiosks" may be relocated as part of any relocation of the transit shelters on Market Street; and provided further that CITY's right to display advertising on the twenty-six (26) "Market Street Kiosks" shall survive the expiration or termination of such Advertising Transit Shelter Agreement.

E.  Notwithstanding the provisions of Paragraphs A through D of this Section 1.08, the PORT shall have the right to display or to authorize or permit display of advertising, including informational and directional displays, related exclusively to the business activities of the PORT, its lessees and licensees, within Port Property; except that any such displays of a commercial nature on free-standing structures shall be no larger than eighteen (18) square feet.

F.  CITY shall not enter into any contract or Agreement granting to any third-party any exclusive advertising rights which would have the effect of precluding the CITY from permitting Public Service Kiosks anywhere in the CITY otherwise permitted hereunder; provided, however, that CITY may impose reasonable standards, such as those imposed pursuant to Department of Public Works Order Number 163,368, (as set forth in Appendix G hereto, on the distance between individual pieces of street furniture containing advertising.

1.09.  <u>Ownership of Automatic Public Toilets and Public Service Kiosks</u>.  All Automatic Public Toilets and Public Service Kiosks constructed, installed and maintained pursuant to this Agreement shall be the property of CONTRACTOR.

1.10.  <u>Payment by Contractor</u>.  CONTRACTOR agrees to pay the CITY an annual fee according to the following terms and conditions, to defray CITY'S costs of administering this Agreement.

A.  <u>Base Payment; Adjustments</u>.  CITY's base fee shall be twenty-five thousand dollars ($25,000) for all those Automatic Public Toilets provided in the Initial Phase pursuant to this Agreement.  In Year One (1) of the Agreement (commencing on the Start Date), CONTRACTOR shall pay the base fee without adjustment. CONTRACTOR's bid security, a certified check in the amount of twenty-five thousand dollars ($25,000) submitted with CONTRACTOR's bid and presently held by the CITY, shall be retained as CONTRACTOR's Year One (1) base fee.  In each succeeding year during the term of the Agreement (Years Two (2) through Twenty (20),) CONTRACTOR shall pay CITY on or after each anniversary date of the Start Date of this Agreement, adjusted as follows:  (i) the base fee shall be adjusted based on the percentage change in the most recently published Consumer Price Index (CPI) (Urban Wage Earners and Clerical Workers in San Francisco -

6175\7.0
4/23/91

7.

Oakland Standard Metropolitan Statistical Area (1982-84 = 100)) as calculated from the Start Date, and (ii) a fee of Five Hundred Dollars ($500) shall be added for each Automatic Public Toilet for which all permits have been issued over and above the twenty-seven (27) Automatic Public Toilets in the Initial Phase. The above fee includes both the Automatic Public Toilets and the associated Public Service Kiosks authorized hereunder.

B.    <u>Late Payments</u>. Payments due hereunder which are not received by the CITY within fifteen (15) days after such amount becomes due shall bear interest at the Reference Rate from and after the date said payment was due until the date paid.

C.    <u>Payments</u>. CONTRACTOR shall make all payments to: CITY and County of San Francisco, Department of Public Works, Bureau of Street-Use and Mapping, Room 350 CITY Hall, San Francisco, California 94102, or at such other place as CITY may from time to time designate by written notice to CONTRACTOR.

1.11.    <u>Performance Bond</u>. CONTRACTOR shall provide the CITY with a performance bond as a guarantee for CONTRACTOR's performance of the supply and installation of the Automatic Public Toilets in accordance with the terms and specifications of this Agreement.

A.    <u>Initial Amount of Bond</u>. CONTRACTOR agrees that within three (3) business days after the Effective Date of this Agreement, CONTRACTOR shall deliver to the Department of Public Works a performance bond valued at two million dollars ($2,000,000).

B.    <u>Qualifications of Surety</u>. The bond shall be executed by a guaranty or surety company legally authorized to engage in the business of furnishing performance bonds in the State of California and listed in the latest issue of the United States Treasury Circular 570. The total bond liability of any guaranty or surety company engaged by CONTRACTOR shall not exceed the therein specified underwriting limitation for that company.

C.    <u>Duration of Bond Requirement</u>. Except as otherwise provided herein or authorized in writing by the Director, CONTRACTOR shall maintain said performance bond in full force and effect throughout the period of installation of the Automatic Public Toilets.

After CONTRACTOR has completed installation of twenty (20) Automatic Public Toilets, the required amount of such performance bond shall be reduced to One Million Two Hundred Thousand Dollars ($1,200,000). Thereafter, the required amount of such Performance Bond shell be reduced pro rata at a rate of Forty Thousand Dollars ($40,000) per Automatic Public Toilet as CONTRACTOR completes installation of each Automatic Public Toilet installed hereunder; except that CONTRACTOR shell not be required to maintain said Performance Bond in effect for more then five (5) years after the Start Date.

D.    **Failure to Provide Performance Bond; Failure of Surety.**

(1)    If CONTRACTOR fails to deliver the performance bond as required by the Agreement, the CITY shall be entitled to cancel the Agreement effective immediately upon notice to CONTRACTOR and shall be entitled to exercise any other rights and remedies granted hereunder or by law.

(2)    During the period covered by this Agreement, if any of the sureties upon the bond shall become insolvent or, in the opinion of the Department of Public Works, unable to pay promptly the amount of such bond to the extent to which the surety might be liable, CONTRACTOR, within thirty (30) days after notice given by the Department of Public Works to CONTRACTOR, shall by supplemental bond or otherwise, substitute another and sufficient surety approved by the Director in place of the surety becoming insolvent or unable to pay.  If CONTRACTOR fails within such thirty (30) day period to substitute another and sufficient surety, the Department of Public Works may elect to find CONTRACTOR in default of the performance of its obligations under this Agreement.  The Department of Public Works, in addition to any and all other remedies available to it by law, may terminate the Agreement, withhold monies then due or which thereafter may become due to CONTRACTOR, and bring any proper suit or proceeding against CONTRACTOR under the Agreement.  The amount for which the surety shall have justified on the bond and the monies so deducted shall be held by CITY as collateral for the performance of the conditions of the bond.

E.  **Letter of Credit as Alternative.**  Notwithstanding any
other provision of this Section 1.11, CONTRACTOR
shall have the right to substitute a letter of credit
for the performance bond otherwise required hereunder
as a guarantee for CONTRACTOR's performance of the
supply and installation of the Automatic Public
Toilets under the terms of this Agreement
(hereinafter "Alternative Letter of Credit").  The
required amount of any such Alternative Letter of
Credit shall be the same as that required for a
performance bond pursuant to Paragraphs A and C
above.  Any such Alternative Letter of Credit shall
be established with a national or California bank
having at least one branch office within the CITY and
County of San Francisco, in favor of the CITY, a
municipal corporation, acting by and through its
Director.  The Alternative Letter of Credit shall
have an original term of one (1) year, with automatic
extensions of the full amount required hereunder to
be maintained until the date five (5) years after the
Start Date.  The original of the Alternative Letter
of Credit shall be held by CITY throughout its term.
The Alternative Letter of Credit shall provide that
payment of the entire face amount of the letter of
credit, or any portion thereof, shall be made to the
CITY and County of San Francisco, upon presentation
of a written demand to the Bank signed by the
Director on behalf of the CITY and County of San
Francisco, accompanied by a copy of the demand for
performance delivered to CONTRACTOR and a copy of the
certified-mail-return-receipt-requested form.  If
CONTRACTOR defaults, as described in Section 1.19,
_Event of Default; Remedies_, of this Agreement with
respect to its obligation to supply and install the
Automatic Public Toilets required hereunder, CITY
may, but shall not be required to, make its demand
under the Alternative Letter of Credit for all or any
portion thereof to compensate CITY for any loss or
damage which CITY may have incurred by reason of
CONTRACTOR's default.  CITY shall present its written
demand to the Bank for payment under the Alternative
Letter of Credit only after the CITY shall have made
its demand for performance directly to CONTRACTOR by
certified mail, return receipt requested, and after
five (5) full business days have elapsed without
performance by CONTRACTOR.

F.  **Non-Extension of Letter of Credit Alternative;
Replacement.**  The Alternative Letter of Credit
permitted under this Section 1.11 shall provide for

sixty (60) days notice by the issuer to CITY in the event of termination or non-renewal of the Alternative Letter of Credit. Upon receipt of notice from the issuer that the Alternative Letter of Credit will not be renewed or extended, CITY may demand that CONTRACTOR replace the Alternative Letter of Credit within at least twenty (20) days prior to its expiration. If CONTRACTOR fails to do so, CITY shall be entitled to present its written demand for payment of the entire face amount of the Alternative Letter of Credit. Any amounts so received by CITY shall be held as cash collateral, in the manner provided in Paragraph G of Section 1.12, Letter of Credit, below, and shall be returned to CONTRACTOR upon replacement of the Alternative Letter of Credit.

1.12.    Letter of Credit.  In addition to the guaranty of performance required hereunder pursuant to the provisions of Section 1.11, above, CONTRACTOR shall provide CITY with a letter of credit or Alternate Security (as hereinafter defined) according to the following terms and conditions, which shall constitute security for the faithful performance by CONTRACTOR of all terms, covenants, and conditions, including all monetary obligations set forth in this Agreement.

    A.    Amount and Term of Letter of Credit.  Subject to Paragraph G below, CONTRACTOR agrees that, in addition to the required guarantee of performance provided pursuant to Section 1.11, within seventy-two (72) hours after the Start Date of this Agreement, CONTRACTOR shall establish a confirmed irrevocable letter of credit in the amount of three hundred fifty thousand dollars ($350,000) in favor of the CITY and County of San Francisco, a municipal corporation, acting by and through its Department of Public Works. The letter of credit shall be established with a national or a California bank having at least one branch office within the CITY and County of San Francisco.  The letter of credit shall have an original term of one (1) year, with automatic extensions of the full three hundred fifty thousand dollar ($350,000) amount to be maintained throughout the term of this Agreement.  The original copy of the letter of credit shall be held by the CITY throughout the term of this Agreement.

    B.    Payment on Demand.  The letter of credit shall provide that payment of the entire face amount of the

letter of credit, or any portion thereof, shall be made to CITY, upon presentation of a written demand to the bank signed by Director of Public Works on behalf of CITY, accompanied by a copy of the demand for payment delivered to CONTRACTOR and a copy of the certified-mail-return-receipt-requested form, in accordance with Paragraph C below.

C.    <u>Default of Contractor</u>.  If CONTRACTOR defaults with respect to any provision of this Agreement, as described in Section 1.19, <u>Event of Default;</u> <u>Remedies</u>, of this Agreement, CITY may, but shall not be required to make its demand under the letter of credit for all or any portion thereof to compensate CITY for any loss or damage which the CITY may have incurred by reason of CONTRACTOR's default.  CITY shall present its written demand to the bank for payment under the letter of credit only after the CITY shall have made its demand for payment directly to CONTRACTOR by certified mail, return receipt requested, and after five (5) full business days have elapsed without payment by CONTRACTOR.  CITY need not terminate this Agreement in order to receive compensation for its damages hereunder.  If any portion of the letter of credit is so used or applied, CONTRACTOR, within twenty (20) business days after written demand therefor, shall reinstate the letter of credit to its original amount, and upon such reinstatement, the excess of the proceeds of the letter of credit over the amount of the loss or damage suffered by the CITY shall be returned to CONTRACTOR pursuant to Paragraph E below.  CONTRACTOR's failure to comply with any of the provisions hereinabove shall constitute a material breach of this Agreement.

D.    <u>Non-Extension of Letter of Credit Replacement</u>.  The letter of credit shall provide for sixty (60) days notice by the issuer to CITY in the event of termination or non-renewal of the letter of credit. Upon receipt of notice from the issuer that the letter of credit will not be renewed or extended, CITY may demand that CONTRACTOR replace the letter of credit within at least twenty (20) days prior to its expiration.  If CONTRACTOR fails to do so, CITY shall be entitled to present its written demand for payment of the entire face amount of the letter of credit. Any amounts so received by CITY shall be held as cash collateral pursuant to Paragraph G below, and shall

be returned to CONTRACTOR upon replacement of the
letter of credit.

E.    Wrongful or Excessive Demand; Return of Receipts.  If
CITY receives any payments from the aforementioned
bank under the letter of credit by reason of having
made a wrongful or excessive demand for payment, CITY
shall return to CONTRACTOR the amount by which CITY's
total receipts from CONTRACTOR and from the bank
under the letter of credit exceeds the amount to
which CITY rightfully is entitled, together with
interest thereon at the Reference Rate, but CITY
shall not otherwise be liable to CONTRACTOR for any
damages or penalties.

F.    Return Upon Faithful Performance.  The letter of
credit  shall be returned to CONTRACTOR upon the
termination of the Agreement, provided that the
CONTRACTOR has faithfully performed throughout the
duration of the Agreement and, upon termination of
the Agreement, has removed all Automatic Public
Toilets and Public Service Kiosks and has restored
all affected CITY streets and sidewalks.

G.    Alternate Security.  In lieu of a letter of credit,
CONTRACTOR may deposit $350,000 in cash, (referred to
herein as "Alternate Security").  Any cash deposited
with CITY as Alternate Security, or any cash proceeds
of a draw upon a letter of credit posted hereunder
which are in excess of the loss or damage suffered by
the CITY shall be held in a segregated account
separate from other funds held by CITY, and shall be
invested by CITY, in the name of CITY, but for the
account of CONTRACTOR, in one or more investments
which are lawful for investments of public funds, but
subject to a security interest in favor of CITY to
secure payment of any loss or damage which CITY may
incur by reason of CONTRACTOR's default hereunder.
At the request of CITY, CONTRACTOR shall execute and
deliver to CITY a security Agreement, in such form as
CITY may reasonably request, a UCC-1 financing
statement in proper form for filing and recording,
and with respect to any Alternate Security, written
notice satisfying the requirements of California
Commercial Code Section 9302(1)(g)(ii)(or any
successor section), to create and perfect such
security interest.  So long as CONTRACTOR is not in
default hereunder, interest earned on any Alternate
Security shall be disbursed to the CONTRACTOR no less
than annually.

1.13.  <u>Maintenance and Complaint Log</u>.

    A.  <u>Maintenance Logs</u>.  CONTRACTOR shall prepare
maintenance logs as described in Section 5.04,
<u>Maintenance Schedule</u>, and submit to CITY copies of
the log for the preceding month within fifteen (15)
days after the end of every month during the first
six (6) months following completion of the
installation of the Automatic Public Toilets for
which permits were issued by the Start Date.
Thereafter, copies of such logs shall be provided
upon the request of the Director.  Unless less
frequent submittals are authorized by the Director,
CONTRACTOR shall also furnish to the Director within
thirty (30) days after the end of each calendar
quarter a narrative summary of its maintenance
operations during the preceding quarter, noting
problem areas, corrective actions taken, and the
number and cost of repairs attributable to Vandalism.

    B.  <u>Complaint Log</u>.  CONTRACTOR shall maintain and make
available to CITY a written complaint log in format
reasonably acceptable to CITY.  The purpose of this
document will be to record complaints and/or
incidents that occur with respect to the Automatic
Public Toilets and Public Service Kiosks.  In
addition to the date, time, location, etc., the log
shall include disposition and final resolution of the
complaint.  Copies of this document will be submitted
to the CITY upon request.

1.14.  <u>Insurance</u>.

    A.  <u>Insurance Policies</u>.  CONTRACTOR shall maintain in
force, during the full term of this Agreement,
insurance as follows:

        (1)  Workers' Compensation, with Employers' Liability
limits not less than One Million Dollars ($1,000,000)
each accident;

        (2)  Commercial General Liability Insurance, including
all coverages contained in an unamended I.S.O. 1988
Occurrence Form with limits not less than One Million
Dollars ($1,000,000) each occurrence Combined Single
Limit Bodily Injury and Property Damage.  Such form
includes Contractual Liability, Personal Injury,
Advertising Liability, Broad Form Property Damage,
Products and Completed Operations coverages; and

(3) Comprehensive Automobile Liability Insurance with limits not less than One Million Dollars ($1,000,000) each occurrence Combined Single Limit Bodily Injury and Property Damage, including owned, non-owned and hired auto coverages, as applicable.

(4)  Excess Liability Coverage following the provisions of the insurance referred to in clauses (1), (2) and (3) above in the amount of Five Million Dollars ($5,000,000) per occurrence, Combined Single Limit, and Five Million Dollars ($5,000,000) in the aggregate for each annual policy period.

B.    **Endorsements**.  Commercial General Liability and Comprehensive Automobile Liability Insurance policies shall be endorsed to provide the following:

(1)  To name as additional insureds with respect to the operations of CONTRACTOR under this Agreement the CITY and County of San Francisco, its Department of Public Works, San Francisco Port Authority, and San Francisco Recreation and Park Department, and their officers, agents, and employees, and;

(2)  To provide that such policies are primary insurance to any other insurance available to the additional insureds, with respect to any claims arising out of this Agreement, and that insurance applies separately to each insured against whom claim is made or suit is brought.

C.    **Notice**.  All policies shall be endorsed to provide that there will be thirty (30) days advance written notice to CITY of cancellation, non-renewal or reduction in coverage, which shall be mailed to the following address:

        Director of Public Works
        Bureau of Street-Use and Mapping
        Room 350, CITY Hall
        San Francisco, CA 94102

D.    **Condition Precedent**.  Certificates of insurance, satisfactory to CITY, evidencing all coverages above, shall be furnished to CITY before the Effective Date of this Agreement, with complete copies of policies to be delivered to CITY upon its request.

E.    **Approval by CITY**.  Approval of insurance contracts required under this Agreement shall not relieve

617517.0
4/21/94

15.

CONTRACTOR, its subcontractors, consultants, successors or assigns, from the obligation to indemnify and hold harmless the CITY pursuant to Section 1.15, <u>Hold Harmless and Indemnification</u>, of this Agreement.

F.    <u>Copies of Policies and General Provisions</u>. If at any time during the term of this Agreement CONTRACTOR fails to maintain the required insurance in full force and effect, CONTRACTOR shall discontinue immediately all work under the Agreement and shall not resume work until authorized by the Department of Public Works after having given proper notice that the required insurance has been restored to full force and effect and that the premiums therefor have been paid and are current.

G.    <u>Insurers</u>. The insurance required herein shall be placed in a company or companies having policy holders' surplus of not less than ten (10) times the amount of coverage required hereunder.

H.    <u>Breach</u>. In the event of any uncured breach of any provision of this Section 1.14, <u>Insurance</u>, or in the event that any insurance coverage required by this Agreement is cancelled or diminished in any way, during any period that any insurance coverage or endorsements required under this Section 1.14 is not in effect, CITY, in addition to any other remedies available under this Agreement or by law, and notwithstanding any other provision of this Agreement to the contrary, shall have the option, upon notice to the CONTRACTOR, to suspend the further exercise by CONTRACTOR of all rights and privileges granted to CONTRACTOR under this Agreement until such coverage is provided.

1.15. <u>Hold Harmless and Indemnification</u>.

A.    CONTRACTOR shall indemnify, defend, and hold harmless CITY, its employees, officers, representatives, and agents from and against any claim, loss, damages, injury, expense, judgment or liability associated with the Automatic Public Toilets and Public Service Kiosks to the extent such claim, loss, damages, injury, expense, judgment or liability is caused either by defects in products supplied by CONTRACTOR hereunder or by the willful or negligent act or omission of CONTRACTOR, its employees, officers, representatives and agents.

B.   CITY shall indemnify, defend, and hold harmless CONTRACTOR, its employees, officers, representatives, and agents from and against any claim, loss, damages, injury, expense, judgment or liability associated with the Automatic Public Toilets and Public Service Kiosks to the extent such claim, loss, damages, injury, expense, judgment or liability is caused by the willful or negligent act or omission of CITY, its employees, officers, representatives and agents.

1.16.   Social Security, Unemployment Compensation. CONTRACTOR, upon request, shall furnish to CITY adequate evidence of compliance with laws relating to Social Security and Unemployment Compensation.

1.17.   Notices; When Effective. Notices, as herein provided, shall be given by either personal service or by first class mail and shall be addressed as follows:

To CITY:            Director of Public Works
                    Bureau of Street-Use and Mapping
                    Room 350, CITY Hall
                    San Francisco, CA 94102

To CONTRACTOR:      JCDecaux United Street Furniture, Inc.
                    249 Front Street
                    San Francisco, CA 94111

Notices shall be deemed effective upon delivery, if given by personal service, or, if by mail, three (3) days after deposit in the mail. In the event of any change in the above mailing addresses, the affected party shall notify the other promptly in writing.

1.18.   Termination of Agreement.

A.   Termination Upon Expiration. This Agreement shall terminate twenty (20) years from the Effective Date, as provided in Section 1.03, unless the Agreement has been extended as provided herein, including in Section 2.03, and unless terminated earlier as provided in this Section.

B.   Removal of Automatic Public Toilets and Public Service Kiosks Upon Termination. Upon termination of this Agreement, CITY may direct CONTRACTOR to remove its Automatic Public Toilets and Public Service Kiosks and restore the respective sidewalks and curbs at CONTRACTOR's own cost and expense, and CONTRACTOR shall promptly thereafter file applications for the

necessary permits to do so.  CONTRACTOR shall
complete such removal and restoration within one
hundred twenty (120) days of the issuance of such
permits.  If CONTRACTOR fails to complete such
removal and restoration within said one hundred
twenty (120) day period, CITY, without further notice
and at CONTRACTOR's cost and expense, may remove the
Automatic Public Toilets and Public Service Kiosks
and restore the sidewalks and curbs.  CITY shall
promptly issue permits for removal of Automatic
Public Toilets and/or Public Service Kiosks whenever
such removal is required hereunder.

C.    **Termination for Default**.  In the event of any uncured
default by either party to this Agreement, as defined
in Section 1.19, **Event of Default; Remedies**, the
non-breaching party shall have the option to
terminate the Agreement as provided therein.

D.    **Termination For Delays in Start Date**.  In the event
that the Start Date has not occurred within two (2)
years of the Effective Date, CONTRACTOR, at its
option, may at any time after the end of said two (2)
year period, but in no event later than the Start
Date, elect to terminate this Agreement upon sixty
(60) days notice to CITY during which period CITY
shall have an opportunity to cure said delay.  In the
event CITY fails to achieve the Start Date within
said sixty (60) day period, this Agreement shall
terminate without further notice and the parties
shall be discharged from any and all obligations
hereunder without penalty or liability, except for
liability for breach of this Agreement arising prior
to the date of such termination.

E.    **Termination for Delays in Issuance of Permits for**
**Initial Phase**.  If, through no fault of CONTRACTOR,
CITY has not issued permits for all of the Automatic
Public Toilets in the Initial Phase by the date one
(1) year after the Start Date, then CONTRACTOR, at
its option, may at any time after the end of said one
(1) year period, but in no event later than the date
three (3) years after the Start Date, elect to
terminate this Agreement upon sixty (60) days notice
to CITY during which period CITY shall have an
opportunity to cure said delay.  In the event CITY
fails to issue permits for all such Automatic Public
Toilets within said sixty (60) day period, this
Agreement shall terminate without further notice and
the parties shall be discharged from any and all

61751\7.0
4/21/94

18.

obligations hereunder without penalty or liability, excepting liability for breach of this Agreement arising prior to the date of such termination and excepting also CONTRACTOR's obligations pursuant to Paragraph B of this Section 1.18.

F. **Change in Laws.** If CITY, the State of California, the federal government or any other governmental agency should adopt a change in laws or regulations, including Department of Public Works Orders, applicable to the Automatic Public Toilets, Public Service Kiosks or the use of the Public Service Kiosks for advertising, which significantly affects CONTRACTOR's ability to sell advertising, significantly restricts the areas in which the Public Service Kiosks (including the advertising to be placed thereon) are permitted, or significantly increases the cost of operation, including the cost of manufacture or installation of new Automatic Toilets or Public Service Kiosks, but excluding any tax or change in business regulation of general applicability, then at the request of CONTRACTOR, CITY and CONTRACTOR shall negotiate in good faith possible modifications to this Agreement to compensate for the effect of such change. In no event shall CITY be required to agree to any particular modification of this Agreement. If no modification of the Agreement satisfactory to CONTRACTOR is agreed upon after one hundred twenty (120) days, CONTRACTOR may, at its option, elect to terminate this Agreement upon ninety (90) days notice to CITY.

1.19. **Event of Default; Remedies.**

A. **Default of Contractor.** In the event that CONTRACTOR shall fail to comply with or carry out any material term, covenant, condition, or promise herein set forth, CITY may elect to serve upon CONTRACTOR a First Notice of Default. If CONTRACTOR fails to cure such default within thirty (30) days after receipt of said notice, or, if such default cannot be cured within such period, if CONTRACTOR does not commence to cure within such thirty (30) days and thereafter diligently pursue such cure to completion, then CITY may elect to serve upon CONTRACTOR a Second Notice of Default. If CONTRACTOR fails to cure such default within twenty (20) days after receipt of said Second Notice of Default, or if such default cannot be cured within such period, CONTRACTOR does not commence to

6175\7.0
6/21/96

19.

cure such default and thereafter diligently pursue such cure to completion, then CITY may elect to terminate this Agreement. Termination shall be effective after ten (10) days written notice to CONTRACTOR. CONTRACTOR shall undertake no new work after the date of receipt of any notice of termination or five days after the date of the notice, whichever date is earlier.

B.    **Bankruptcy or Reorganization Proceedings.** CONTRACTOR shall be deemed to be in default of this Agreement in the event that CONTRACTOR shall cease conducting business in the normal course, become insolvent, make a general assignment for the benefit of creditors, suffer or permit the appointment of a receiver for its business or assets or shall avail itself of , or become subject to, any proceeding under the Federal Bankruptcy Act or any other statute of any state of these United States or any other foreign country relating to the insolvency or the protection of rights of creditors, then at the option of the other party, this Agreement shall terminate and be of no further force and effect, and any property or rights of such other party, tangible or intangible, shall forthwith be returned to it. Upon the occurrence of any of the foregoing events, the CITY shall have the right to terminate this Agreement forthwith and CONTRACTOR or its successor in interest by operation of law or otherwise shall thereafter have no rights in or to this Agreement or to any of the privileges herein conferred.

C.    **Option to Demand Payment on Letter of Credit; Performance Bond.** In the event of a default by CONTRACTOR under this Agreement which causes CITY to suffer any loss or damage, whether or not said default is timely cured, CITY shall be entitled to demand the immediate payment of the full amount of the letter of credit as provided in Section 1.12, **Letter of Credit**, of this Agreement, from which the CITY may be compensated for said loss or damages incurred as a result of CONTRACTOR's failure to comply with the Agreement, including but not limited to the CITY's costs of operating and maintaining the Automatic Public Toilets and Public Service Kiosks in the event of CONTRACTOR's default. If CONTRACTOR has not fulfilled its obligations to install any Automatic Public Toilets in the Initial Phase at the time of said default, the CITY shall also be entitled to make a demand on CONTRACTOR's performance bond or

other guarantee of performance, as provided in
Section 1.11, __Performance Bond__, of this Agreement, in
addition to any other remedies available in law or
equity.

D.    __Default of CITY__.   In the event that the CITY shall
fail to comply with or carry out any material term,
covenant, condition, or promise herein set forth,
CONTRACTOR may elect to serve upon CITY a Notice of
Default.  If the CITY fails to cure such default
within thirty (30) days after receipt of said notice,
or, if such default cannot be cured within such
period, if CITY does not commence to cure within such
thirty (30) days and thereafter diligently pursue
such cure to completion, then CONTRACTOR may elect to
serve upon CITY a Second Notice of Default.  If CITY
fails to cure such default within twenty (20) days
after receipt of said Second Notice of Default, or,
if such default cannot be cured within such period,
CITY does not commence to cure such default and
thereafter diligently pursue such cure to completion,
then CONTRACTOR may elect to terminate this
Agreement.  Termination shall be effective after ten
(10) days written notice to the CITY.  CONTRACTOR
shall then be entitled to the return of its letter of
credit or Alternate Security and any performance
bond, in addition to any other remedies available in
law or equity.

E.    __Actual Damages__.  In the event that either party
serves a Notice of Default on the other and such
default is subsequently cured, the non-defaulting
party shall nevertheless be entitled to recover from
the defaulting party any loss or damage which the
non-defaulting party may have incurred by reason of
such default.  Each party shall have available to it
the remedies provided for in this Section 1.19 as
well as all remedies available in law and equity, to
resolve its claim for loss or damage.

F.    __Rights of Parties Accrued Prior to Termination__.
Termination of this Agreement shall not in any way
affect the rights and obligations of the parties with
respect to damages or amounts payable to the other
party which have accrued prior to such termination.

G.    __Other Remedies__.  The exercise of the remedies
provided for in this Section 1.19 shall be cumulative
and shall in no way affect any other remedy the
parties may have available in law or equity.  The

exercise by either party of any of the options set
forth in this paragraph by commencement of legal
proceedings, audit, or otherwise, shall not be deemed
a waiver of its right to exercise any other option
provided herein.

H.    **No Termination for Certain Defaults**.  Notwithstanding
any other provision of this Agreement, the CITY shall
not have the right to terminate this Agreement due to
any failure of the CONTRACTOR to comply with the
provisions of Section 7.11, below, but may exercise
any or all other remedies as provided in Section 7.11
or as are otherwise available in law or equity.

1.20.    **No Waiver of Subsequent Breaches or Defaults**.

The failure of either party to insist upon a strict
performance of any of the terms, conditions and covenants
herein by the other party shall not be deemed a waiver of
any subsequent breach or default in the terms, conditions
and covenants herein contained.

1.21.    **Subcontracting**.

CITY grants CONTRACTOR the authority to hire such
subcontractors as CONTRACTOR deems necessary to fulfill
the requirements detailed in this Agreement, provided if
an MBE/WBE subcontractor is unable to perform successfully
and is to be replaced, CONTRACTOR will be required (i) to
give prompt notice thereof to the CITY and, (ii) make good
faith efforts to replace the original MBE/WBE
subcontractor with another MBE/WBE subcontractor, pursuant
to Section 7.11, **Equal Employment Opportunity and Business
Practices**, below.

1.22.    **Audited Financial Report**.

On or before the first (1st) day of the fifth (5th)
calendar month of the CONTRACTOR's succeeding fiscal year
for the duration of this Agreement, CONTRACTOR shall
submit to CITY, through its Director, copies of
CONTRACTOR's annual Audited Financial Statements, audited
by an independent certified public accountant.  CITY shall
also be entitled to audit CONTRACTOR's books pertaining to
the Automatic Public Toilet program on demand.