# EXHIBIT A-7

# CITY AND COUNTY OF SAN FRANCISCO
## DEPARTMENT OF PUBLIC WORKS

### Order No. 163,369

ESTABLISHING GUIDELINES FOR THE PLACEMENT OF PUBLIC
TOILETS ON CITY STREETS AND PUBLIC PROPERTY.

Pursuant to Public Works Code Article 8, the Director of Public Works hereby
establishes the following guidelines for the placement of public toilets on City
streets and public property.

These guidelines are in addition to all provisions of the Public Works Code and are
enforceable as part of Article 8.

I. <u>APPLICATION AND APPROVAL:</u>

    A. The application process is summarized in the following chart:



    B. Application to install public toilets shall be submitted to the Department of Public
    Works. Applications shall consist of Location Drawings showing public toilet
    placements, together with an application fee of three hundred fifty dollars
    ($350.00). Location drawings shall include the following:

        1. A twenty feet (20') to one inch (1") scale (20:1 scale) representation of the
        proposed public toilet site covering the area from the property line to the
        street centerlines at the nearest intersection. Mid-block sites can be shown
        with broken line ties.

        2. All necessary street dimensions, such as sidewalk width and street width, the
        location of any curb, ramp and driveway and all surface structures, including
        hydrants, utility poles and catchbasins.

        3. Sewer connections, water service connections, electrical service connections
        and foundation details for public toilets

        4. Location of utilities under and in the vicinity of the proposed toilet site.

# CITY AND COUNTY OF SAN FRANCISCO
# DEPARTMENT OF PUBLIC WORKS

### Order No. 163,369

5.  Sewer connections, water service connections, electrical service connections and foundation plans shall be stamped and signed by an engineer registered with the State of California.

C.  Notification of application to install public toilets shall be sent to fronting businesses, property owners, San Francisco Municipal Railway and Department of City Planning. Notices shall be posted within one hundred feet (100') of proposed public toilet site a minimum of ten (10) days prior to the hearing date.

D.  At the end of the ten days posting period, public hearing will be held by DPW for sites that received protest. The Director of Public Works or the Director's disignee shall decide whether to issue permit after considering testimony received at the hearing.

E.  Applicant may request an exception for those public toilet sites which do not meet the guidelines set forth in this Order. A request for an exception shall be considered at a public hearing conducted jointly by the Director's designee, a representative appointed by the Director of the Art Commission, and a representative appointed by the Director of City Planning. The hearing shall be a public hearing for which notice shall be given as described in paragraph (C) above. The three hearing officers may authorize public toilets which do not comply with the guidelines if facts presented show that measures will be taken to minimize the impact of the toilets or that the public toilet program benefits outweigh the anticipated impact. The Art Commission's designee may require the request for exception be referred to the Art Commission if the proposed site has a major urban design impact on the City.

F.  For those public toilet sites that are denied , the applicant may appeal by writing within fifteen days of the denial to the Executive Director of the Board of Permit Appeals, City Hall, Room 154A, San Francisco, CA 94102 to request that the matter be considered by the Board of Permit Appeals.

## II.  PLACEMENT GUIDELINES:

A.  All public toilets must conform to applicable State, Federal and Local accessibility codes and regulations. A minimum of five feet (5') of pedestrian clearance (free of all obstacles for a clear path of travel) must be maintained on the sidewalk at all times. (Figure One)

B.  Public toilets may not intrude on pedestrian "clear zones" at corners. Public Toilets shall be set back a minimum of five feet (5') from edge of crosswalk. (Figure Two).



FIGURE ONE: Sidewalk Zones                FIGURE TWO: Corner Clear Zone

# CITY AND COUNTY OF SAN FRANCISCO
## DEPARTMENT OF PUBLIC WORKS

### ORDER NO.  163,369

C.    Public toilets shall be placed not less than:

  1.    Twenty four inches (24") from the outside edge of the curb. Overhangs of roof line are permitted on all sides. However, an overhang may not protrude to within eighteen inches (18") of the edge of the curb except where overhang is more than ten (10') above the surface of the sidewalk.  At no time may overhangs protrude beyond the face of curb.

  2.    Eight feet (8') from any fire escape and/or fire exit.

  3.    Five feet (5') from any fire hydrant, driveway, wheelchair ramp, blue zone parking space, curb cut, crosswalk, pedestrian reservoir or corner.

  4.    Sixty feet (60') from any Muni. Transit Shelter and/or Kiosk.

  5.    Five feet (5') from any certified street artist's designated area.

  6.    Sixty feet (60') from any public work of art under the jurisdiction of the Art Commission, except for public art on public toilets.

  7.    Forty inches (40") from any other structure not otherwise specified herein, including but not limited to street light poles, parking meters, power poles and trees.

D.    Public toilets shall not be placed on sidewalks which are less than fourteen feet (14') wide.

E.    Public toilets shall not be placed over any storm drain or similar structure.

F.    Public toilets shall not obstruct any traffic sign or traffic signal.

G.    Public toilets shall not be placed on medians and traffic islands.

H.    Public toilets shall not be installed where placement would significantly impede the flow of pedestrian traffic.

I.    Public toilets shall not intrude, obstruct, diminish or reduce a significant view or become overwhelming objects of key views including planned and significant street elements.

III.    <u>CONSTRUCTION REQUIREMENTS</u>

A.    The applicant shall obtain the required permits, if any, from regulating agencies of the State of California.

B.    The applicant shall contact the Department of Parking and Traffic at 25 Van Ness Avenue, phone 554-2300 for traffic requirements prior to beginning construction.

# CITY AND COUNTY OF SAN FRANCISCO
## DEPARTMENT OF PUBLIC WORKS

### ORDER NO.  163,369

C.  The applicant shall conduct his construction operations in accordance with the requirements of Article 11 of the Traffic Code and the applicable sections under Section 110, Traffic Routing Work, of the Standard Specifications.

D.  The applicant shall call Underground Service Alert (U.S.A.) telephone number
1-800-642-2444, 48 hours prior to any excavation.

E.  Applicant shall be solely responsible for any damage to existing facilities.

F.  Construction must conform to all applicable City specifications and regulations.

John E. Cribbs
Director of Public Works

# CITY AND COUNTY OF SAN FRANCISCO
## DEPARTMENT OF PUBLIC WORKS

### ORDER NO.  163,369

RECOMMENDED:                                APPROVED:

*Denise M. Brady*                           *Vitaly B. Troyan*

Denise M. Brady, Chief                      Vitaly B. Troyan
Bureau of Street-Use and Mapping            Deputy Director, Public Services

Distribution

Outside B.S.M
Dept Files (2)          Central Permit Bureau        Inside B.S.M
Street Repair           Traffic - H. Quan            J. Rodriguez -450 McAllister
SFPD - Traffic Survey   Attached List                F. Casey - Inspector

JS/dl


APPROVED:  SEPTEMBER 8, 1993

              JOHN E. CRIBBS, DIRECTOR

/3163,369.doc Disk 9

FIRST AMENDMENT
TO THE
AUTOMATIC PUBLIC TOILET AND PUBLIC SERVICE KIOSK AGREEMENT
BY AND BETWEEN
THE CITY AND COUNTY OF SAN FRANCISCO
AND
JCDECAUX UNITED STREET FURNITURE, INC.

This First Amendment is made and entered into this 2nd day of August , 1994 by and between the City and County of San Francisco, a municipal corporation, acting by and through its Department of Public Works ("CITY"), and JCDecaux United Street Furniture, Inc., a California corporation ("CONTRACTOR").

RECITALS

WHEREAS, CITY and CONTRACTOR entered into an agreement entitled Automatic Public Toilet and Public Service Kiosk Agreement dated August 2 , 1994 (the "Agreement") pursuant to which CONTRACTOR agreed to provide Automatic Public Toilets in exchange for the right to place Public Service Kiosks on public property and to sell advertising on said Public Service Kiosks; and

WHEREAS pursuant to San Francisco Administrative Code Section 4.20, the Agreement is required to include a prohibition on advertising of cigarettes and tobacco products;

NOW, THEREFORE, for and in consideration of the promises hereinafter set forth, the parties hereto agree as follows:

1.   Section 4.07, Limitation on Tobacco Advertising, is deleted in its entirety and replaced with the following new provision:

Section 4.07. Tobacco Advertising Prohibited. No advertising of cigarettes or tobacco products, including the display of the name of any company producing, selling or distributing cigarettes or tobacco products or the name of any cigarette or tobacco product in any promotion of any event or product, shall be displayed on any Public Service Kiosk installed under this Agreement. This prohibition shall not apply to any advertisement sponsored by a state, local or non-profit entity, which advertisement is designed to communicate the health hazards of cigarettes or tobacco products or to encourage people not to smoke or to stop smoking.

2.   Except as expressly amended herein, the terms of the aforementioned Agreement shall remain in full force and effect.

1.

IN WITNESS WHEREOF, the parties hereto have caused this agreement to be executed, in quintuplicate, by their duly authorized officers, on the day and year first herein above written.

CITY

CITY AND COUNTY OF SAN FRANCISCO, a California municipal corporation

Recommended by:

Vitaly B. Troyan
Deputy Director,
Public Services

Approved as to Form:

LOUISE H. RENNE, City Attorney

By
Deputy City Attorney

Approved:

Dennis P. Bouey
Director,
Port of San Francisco

Approved:

John E. Cribbs
Director of Public Works

Approved:

Rudolf Nothenberg
Chief Administrative Officer

Approved:

Honorable Frank Jordan, Mayor

CONTRACTOR

JCDecaux United Street Furniture, Inc., a California corporation

249 Front Street
Address

San Francisco, CA          94111
City          State          Zip

I have read and understood Section 7.12, the City's statement urging companies doing business in Northern Ireland to move towards resolving employment inequities, encourage compliance with the MacBride Principles, and urging San Francisco companies to do business with corporations that abide by the MacBride Principles.

By
Signature

Jean-Francois Decaux
Name

Chief Executive Officer
Title

(415)     834-0128
Area Code     Phone Number

133673557
Federal Employer Number

2.

SECOND AMENDMENT
TO THE
AUTOMATIC PUBLIC TOILET AND PUBLIC SERVICE KIOSK AGREEMENT
BY AND BETWEEN
THE CITY AND COUNTY OF SAN FRANCISCO
AND
JCDECAUX UNITED STREET FURNITURE, INC.

This Second Amendment is made and entered into this _2nd_ day of _August_ , 1994 by and between the City and County of San Francisco, a municipal corporation, acting by and through its Department of Public Works ("CITY"), and JCDecaux United Street Furniture, Inc., a California corporation ("CONTRACTOR").

R E C I T A L S:

WHEREAS, CITY and CONTRACTOR entered in an agreement entitled Automatic Public Toilet and Public Service Kiosk Agreement dated _August 2_ , 1994 and a First Amendment thereto dated _August 2_ , 1994 (the "Agreement") pursuant to which CONTRACTOR agreed to provide Automatic Public Toilets in exchange for the right to place Public Service Kiosks on public property and to sell advertising on said Public Service Kiosks; and

WHEREAS, CITY and CONTRACTOR desire to modify the Agreement as provided herein;

NOW, THEREFORE, for and in consideration of the promises hereinafter set forth, the parties hereto agree as follows:

1.    A new Section 1.25, Additional Payments by CONTRACTOR, is hereby added as follows:

1.25  Additional Payments by CONTRACTOR.

A.    Beginning with the calendar year following the seventh anniversary of the completion of the installation of the first twenty (20) Automatic Public Toilets and the first ninety (90) Public Service Kiosks, CONTRACTOR shall pay to CITY an additional fee (the "Additional Fee") as provided in, and subject to the terms and conditions of, this Section 1.25.

B.    In any such calendar year, if CONTRACTOR's Advertising Revenue (as defined below) equals or exceeds the Threshold Amount (as defined below), then CONTRACTOR

6175\23

1.

shall pay to CITY an Additional Fee in an amount equal to five percent (5%) of the CONTRACTOR's Advertising Revenue.  Within two months after each such calendar year, CONTRACTOR shall furnish to CITY a statement of the amount of CONTRACTOR's Advertising Revenue for the preceding calendar year.  CONTRACTOR shall pay to CITY the Additional Fee, if any, for such calendar year simultaneously with delivery to CITY of such statement.  CONTRACTOR shall maintain accurate and complete books and records of all Advertising Revenue for a period of not less than three (3) years after the end of each such calendar year.

B.    "Advertising Revenue" means all revenue received by CONTRACTOR from the sale of advertising on the Public Service Kiosks, excluding advertising agency commissions.

C.    "Threshold Amount" means the amount for each calendar year calculated as follows:

   (i)    the sum of Eighteen Thousand Dollars ($18,000), multiplied by

   (ii)   the percentage increase, if any, in the Consumer Price Index (CPI) (Urban Wage Earners and Clerical Workers in San Francisco - Oakland Standard Metropolitan Statistical Area (1982-84=100) (the "Index") as of July 1 of such calendar year over the Index as of the Start Date, multiplied by

   (iii)  the number of Public Service Kiosks installed during such calendar year; provided that Public Service Kiosks which are installed for only a portion of the year shall be counted proportionately.

2.    Except as expressly amended herein, the terms of the aforementioned Agreement shall remain in full force and effect.

IN WITNESS WHEREOF, the parties hereto have caused this agreement to be executed, in quintuplicate, by their duly authorized officers, on the day and year first herein above written.

CITY

CITY AND COUNTY OF SAN FRANCISCO, a California municipal corporation

Recommended by:

Vitaly B. Troyan
Deputy Director,
Public Services

Approved as to Form:

LOUISE H. RENNE, City Attorney

By _____
Deputy City Attorney

Approved:

Dennis P. Bouey
Director,
Port of San Francisco

Approved:

John E. Cribbs
Director of Public Works

Approved:

Rudolf Nothenberg
Chief Administrative Officer

Approved:

Honorable Frank Jordan, Mayor

CONTRACTOR

JCDecaux United Street Furniture, Inc., a California corporation

249 Front Street
Address

San Francisco, CA        94111
City            State        Zip

I have read and understood Section 7.12, the City's statement urging companies doing business in Northern Ireland to move towards resolving employment inequities, encourage compliance with the MacBride Principles, and urging San Francisco companies to do business with corporations that abide by the MacBride Principles.

By _____
    Signature

Jean-Francois Decaux
Name

Chief Executive Officer
Title

(415)        834-0128
Area Code    Phone Number

133673557
Federal Employer Number

617923

3.

REVISED
THIRD AMENDMENT
TO THE
AUTOMATIC PUBLIC TOILET AND PUBLIC SERVICE KIOSK AGREEMENT
BY AND BETWEEN
THE CITY AND COUNTY OF SAN FRANCISCO
AND
JCDECAUX UNITED STREET FURNITURE, INC.

This Third Amendment is made and entered into this *2nd* day of *August*, 1994 by and between the City and County of San Francisco, a municipal corporation, acting by and through its Department of Public Works ("CITY"), and JCDecaux United Street Furniture, Inc., a California corporation ("CONTRACTOR").

R E C I T A L S:

WHEREAS, CITY and CONTRACTOR entered into an agreement entitled Automatic Public Toilet and Public Service Kiosk Agreement dated *August 2*, 1994, a First Amendment thereto dated *August 2*, 1994 and a Second Amendment thereto dated *August 2*, 1994 (collectively, the "Agreement") pursuant to which CONTRACTOR agreed to provide Automatic Public Toilets in exchange for the right to place Public Service Kiosks on public property and to sell advertising on said Public Service Kiosks subject to the terms and conditions set forth in the Agreement; and

WHEREAS, in order to demonstrate the feasibility of the Public Toilet Program, CITY and CONTRACTOR desire to establish a two-year trial period (the "Trial Phase") for the operation of twenty (20) Automatic Public Toilets, seventy (70) related Newsstand Kiosks and twenty (20) other related Public Service Kiosks; and

WHEREAS, at the end of the two year trial period, if CITY determines the program is unsuccessful due to excessive downtime, vandalism or misuse, CONTRACTOR has agreed that CITY shall have the right to require the removal of the Automatic Public Toilets, in which event the Public Service Kiosks could remain for an additional three years.

WHEREAS, CITY and CONTRACTOR have agreed that expansion of the Public Toilet Program beyond the Trial Phase shall be subject to the decision of the Board of Supervisors;

WHEREAS, in order to limit the amount of new street furniture, and to maximize the replacement of existing equipment, CONTRACTOR has agreed to increase to eighty (80) the number of Newsstand Kiosks and to decrease to thirty-five (35) (including Newsstand Kiosks) the number of Public Service Kiosks on Market Street during the Initial Phase; and

WHEREAS, with the increase in the number of Newsstand Kiosks and the decrease in the total number of Kiosks, CONTRACTOR will install on CITY property during the Trial Phase only twenty (20) new pieces of street furniture, eight of which are to be located on Port Property, and of the balance of twelve, no more than eight are to be located on Market Street, and only approximately four are to be located elsewhere in the Downtown Area; and

WHEREAS, CONTRACTOR has agreed to extend the operating hours of all of the Automatic Public Toilets to midnight and to operate and maintain for a six month trial period five toilets on a twenty-four hour basis in areas of high need for the homeless; and

WHEREAS, CONTRACTOR has agreed to expand its maintenance obligation under the Agreement to seven days per week; and

WHEREAS, CONTRACTOR has agreed to provide additional revenues to the CITY if CONTRACTOR's Public Service Kiosk advertising program is successful; and

WHEREAS, CITY and CONTRACTOR desire to modify the Agreement to reflect the changes described above and certain other modifications to the Agreement;

NOW, THEREFORE, for and in consideration of the agreements hereinafter set forth, the parties hereto agree as follows:

1.    A new Section 7.21 is hereby added to the Agreement which shall read as follows:

7.21  Two Year Trial Period.

A.    Notwithstanding any provision of this Agreement to the contrary, there shall be a two (2) year trial period of operation of the twenty (20) Automatic Public Toilets, seventy (70) Newsstand Kiosks and twenty (20) other Public Service Kiosks for which permits are issued as of the Start Date pursuant to Section 2.04 of the Agreement. CONTRACTOR shall not be required nor permitted to install the remainder of the Initial Phase until the conclusion of such trial period.

B.    If CITY determines, in the good faith exercise of its discretion, by the date three (3) months following the second anniversary of the completion of the installation of the first twenty (20) Automatic Public Toilets that the Automatic Public Toilet Program is unsuccessful due to excessive down time, Vandalism, or

417927.D1

2-

misuse of the Automatic Public Toilets, then CITY, upon written notice to CONTRACTOR accompanied by a copy of the resolution of the Board of Supervisors referred to below, shall direct CONTRACTOR to remove in accordance with Paragraph B of Section 1.18 of the Agreement the Automatic Public Toilets previously installed and no additional Automatic Public Toilets or Public Service Kiosks shall be installed. Such determination shall be made, if at all, by a duly enacted resolution of the Board of Supervisors. In the event CITY gives such notice to CONTRACTOR, CONTRACTOR's right to maintain the ninety (90) Public Service Kiosks previously authorized and installed hereunder and to display advertising thereon shall continue for a period of three (3) years after the date of such notice, unless CITY and CONTRACTOR agree to continue operation of such Public Service Kiosks for the remaining term of the Agreement, in which event CONTRACTOR would pay to CITY a share of its Advertising Revenues as agreed pursuant to Paragraph C below. If the CITY elects to require removal of the Automatic Public Toilets as set forth above, then, unless CITY and CONTRACTOR agree to extend the Agreement pursuant to Paragraph C below, this Agreement shall terminate in its entirety on the date three (3) years after the date of the notice referred to above, and at such time CONTRACTOR shall remove the Public Service Kiosks in accordance with Paragraph B of Section 1.18 of the Agreement.

C.    If CITY determines that the Program is unsuccessful pursuant to Paragraph B above, then at the option of CITY, CITY and CONTRACTOR shall negotiate in good faith for a period of up to one (1) year in an effort to reach agreement on an amendment to this Agreement pursuant to which CONTRACTOR would continue to operate the Public Service Kiosks previously authorized and installed hereunder for the remainder of the twenty (20) year term of this Agreement, but would pay to CITY that portion of its Advertising Revenue over and above that required to compensate CONTRACTOR for its actual and reasonable costs and expenses incurred in, and a reasonable profit from, the continued operation and maintenance of the Public Service Kiosks and to enable CONTRACTOR to recover over the remaining term of this Agreement CONTRACTOR's actual and reasonable investment from the Effective Date in the Automatic Toilets and Public Service Kiosks which had been installed pursuant to this Agreement, less depreciation. If CITY and CONTRACTOR do not reach agreement within such one (1) year period on such an amendment,

this Agreement shall terminate as and when provided in Paragraph B above.

D.  Notwithstanding any provision of this Agreement to the contrary, the Public Toilet Program shall not expand beyond the Trial Phase unless the balance of the Initial Phase is authorized by a duly enacted resolution of the Board of Supervisors within six (6) months following the second anniversary of the completion of the installation of the Trial Phase.  If CITY does not so elect to expand the Automatic Public Toilet Program to at least the Initial Phase, then CONTRACTOR may at any time prior to the fourth anniversary of the completion of the installation of the Trial Phase terminate this Agreement in its entirety upon sixty (60) days written notice to CITY.

2.  Section 1.11, <u>Performance Bond</u> is hereby amended as follows:

a.  Paragraph C, <u>Duration of Bond Requirement</u>, is amended by deleting the second sentence thereof and replacing it with the following:

After CONTRACTOR has completed installation of the twenty (20) Automatic Public Toilets in the Trial Phase in accordance with the requirements of this Agreement, the required amount of such performance bond shall be reduced to Five Hundred Thousand Dollars ($500,000).  If CITY elects pursuant to Paragraph D of Section 7.21 not to expand the number of Automatic Public Toilets to be provided pursuant to this Agreement to the twenty seven (27) in the Initial Phase, or when CONTRACTOR has satisfactorily completed installation of all of the Automatic Public Toilets in the Initial Phase in accordance with the requirements of this Agreement, such performance bond shall no longer be required.

b.  Paragraph E, <u>Letter of Credit as Alternative</u>, is amended by deleting the third sentence thereof and replacing it with the following:

Any such Alternative Letter of Credit shall be established with a bank registered to do business in the State of California and having at least one branch office within the City and County of San

Francisco, and the place for CITY's presentation of a demand shall be a branch office in the City and County of San Francisco.

3.    Paragraph A, <u>Amount and Term of Letter of Credit</u>, of Section 1.12 is amended by deleting the second sentence thereof and replacing it with the following:

The Letter of Credit shall be established with a bank registered to do business in the State of California and having at least one branch office within the City and County of San Francisco, and the place for CITY's presentation of a demand shall be a branch office in the City and County of San Francisco.

4.    Delete Section 1.25, <u>Additional Payments by CONTRACTOR</u>, which was added to the Agreement by the Second Amendment, and replace it with the following:

1.25  <u>Additional Payments by CONTRACTOR</u>.

A.    Beginning with the calendar year following the completion of the installation of the first Public Service Kiosks in the Trial Phase, CONTRACTOR shall pay to CITY an additional fee (the "Additional Fee") as provided in, and subject to the terms and conditions of, this <u>Section 1.25</u>. In the event that CONTRACTOR fails to pay to CITY the Additional Fee in the manner or within the time period provided herein, CITY may elect to treat such failure by CONTRACTOR as an event of default, and CITY shall have all rights and remedies provided under Section 1.19 of the Agreement relating to such event of default.

B.    In any such calendar year, if CONTRACTOR's Advertising Revenue (as defined below) equals or exceeds the First Threshold Amount (as defined below), then CONTRACTOR shall pay to CITY an Additional Fee in an amount equal to the Applicable Percentage (as defined below) of the CONTRACTOR's Advertising Revenue. Within two months after the end of each such calendar year, CONTRACTOR shall furnish to CITY a statement of the amount of CONTRACTOR's Advertising Revenue for such preceding calendar year. CONTRACTOR shall pay to CITY the Additional Fee, if any, for such calendar year simultaneously with delivery to CITY of such statement. Such statement shall be certified as accurate and complete by a duly authorized officer of CONTRACTOR. CONTRACTOR shall maintain at its office in San Francisco accurate and complete books and records of all Advertising Revenue, and shall retain such books and records for not less than five (5) years after the

end of each such calendar year. CITY shall have the right upon demand in accordance with Section 1.22 of the Agreement to audit, copy and inspect such books and records. If such audit discloses any discrepancies which result in an underpayment of the Additional Fee due to CITY for any calendar year during the term of the Agreement, CONTRACTOR shall immediately pay to CITY the amount of such underpayment, plus interest thereon at the Reference Rate, or the maximum amount allowable by law. If any such discrepancy disclosed by the audit has resulted in an underpayment to CITY of more than five percent (5%) of the Additional Fee for any calendar year, then CONTRACTOR shall reimburse CITY for the cost of such audit. If such audit discloses an overpayment, CITY shall promptly return such overpayment without interest.

C.    "Advertising Revenue" means all revenue received by CONTRACTOR from the sale of advertising on the Public Service Kiosks, excluding advertising agency commissions, calculated on an accrual basis in accordance with generally accepted accounting principles.

D.    "Applicable Percentage" means (i) during the first seven (7) calendar years following the completion of installation of the Automatic Public Toilets, the Applicable Percentage shall be two percent (2%) and (ii) during the remaining term of this Agreement, in any year in which CONTRACTOR's Advertising Revenue is less than the Second Threshold Amount (as defined below), the Applicable Percentage shall be five percent (5%), and in any year in which CONTRACTOR's Advertising Revenue equals or exceeds the Second Threshold Amount, the Applicable Percentage shall be seven percent (7%).

E.    "First Threshold Amount" means the amount for each calendar year calculated as follows:

(i)      the sum of Eighteen Thousand Dollars ($18,000), multiplied by

(ii)     the percentage increase, if any, in the Consumer Price Index (CPI) (Urban Wage Earners and Clerical Workers in San Francisco - Oakland Standard Metropolitan Statistical Area (1982-84=100) (the "Index") as of July 1 of such calendar year over the Index as of the Start Date, multiplied by

(iii)    the number of Public Service Kiosks installed during such calendar year; provided that Public Service Kiosks which are installed for

6175\37.D1

6.

only a portion of the year shall be counted proportionately, based on a fraction equal to the number of days remaining in the calendar year after installation, divided by the actual number of days in the year.

F.   "Second Threshold Amount" means the amount for each calendar year calculated as follows:

(i)   the sum of Twenty-Five Thousand Dollars ($25,000), multiplied by

(ii)   the percentage increase, if any, in the Consumer Price Index (CPI) (Urban Wage Earners and Clerical Workers in San Francisco - Oakland Standard Metropolitan Statistical Area (1982-84=100) (the "Index") as of July 1 of such calendar year over the Index as of the Start Date, multiplied by

(iii)   the number of Public Service Kiosks installed during such calendar year; provided that Public Service Kiosks which are installed for only a portion of the year shall be counted proportionately, based on a fraction equal to the number of days remaining in the calendar year after installation, divided by the actual number of days in the year.

5.   Paragraph B, _Terminations for Delays in Issuance of Permits for Initial Phase_, of Section 1.18 is amended by deleting the first sentence thereof and replacing it with the following:

If CITY elects pursuant to Paragraph D of Section 7.21 to proceed with the balance of the Initial Phase, and through no fault or delays of CONTRACTOR, CITY has not issued permits for all of the Automatic Public Toilets in the Initial Phase by the date four (4) years after the completion of the installation of the Trial Phase, then CONTRACTOR, at its option, may at any time after the end of said four (4) year period, but in no event later than the date six (6) years after completion of the installation of the Trial Phase, elect to terminate this Agreement upon sixty (60) days notice to CITY during which period CITY shall have an opportunity to cure said delay.

6.    Paragraph A, <u>Initial Phase</u>, of Section 3.05, is hereby amended by deleting the fourth sentence thereof, and replacing it with the following:

The first ninety (90) Public Service Kiosks for which permits are issued as of the Start Date shall be located in the Downtown Area, and of those, at least thirty-five (35) shall be located on Market Street and at least seventy (70) shall be Newsstand Kiosks, unless CITY and CONTRACTOR otherwise agree.  Of the remaining thirty-one (31) Public Service Kiosks in the Initial Phase (i) at least ten (10) shall be Newsstand Kiosks, (ii) at least ten (10) shall be located in the Downtown Area, and (iii) none shall be located on Market Street in the Downtown Area.

7.    Section 5.02, <u>Hours of Operation</u>, is hereby deleted in its entirety and replaced with the following:

5.02  <u>Hours of Operation</u>.

A.    Except as is provided in paragraph B below, each Automatic Public Toilet shall be operational during the hours from 6:00 a.m. to midnight everyday, unless otherwise agreed by CONTRACTOR and Director.

B.    Beginning on a date no later than three (3) months following the completion of the installation of the first twenty (20) Automatic Public Toilets, CONTRACTOR shall for a period of at least six (6) months operate at least five (5) Automatic Public Toilets on a twenty-four hour basis, and at least one of such Automatic Public Toilets shall be operated throughout such six (6) month period free of charge, and without the need for a token.  The location of each of such five (5) Automatic Public Toilets shall be determined by the Director, after consultation with the CONTRACTOR and the Automatic Public Toilets Review Committee, and at least three of such Automatic Public Toilets (including the Automatic Public Toilet to be operated free of charge) shall be located in areas of particular need for the homeless.  At the end of such six (6) month trial period, the results of such trial shall be reviewed by CONTRACTOR, CITY and the Automatic Public Toilet Review Committee, with particular attention to the usage of such Automatic Public Toilets during the additional hours, benefits to the homeless and persons with disabilities, including persons with mental disabilities, and the lost revenues and increased

costs, if any, to CONTRACTOR, including the cost of Vandalism. In light of such review, CITY and CONTRACTOR shall negotiate in good faith adjustment of the hours of operation provided in Paragraph A above and extending or expanding the free access trial to the extent commercially feasible.

8.    Section 5.05, _Inspection and Clean-up of Automatic Public Toilets and Public Service Kiosks_, is amended by deleting the first sentence, and replacing it with the following:

CONTRACTOR shall inspect each Automatic Public Toilet at least once per day (Sundays and bank holidays included) and shall inspect each Public Service Kiosk at least once per week. The foregoing is a minimum standard, and CONTRACTOR acknowledges that two or more inspections per day may be required, particularly at certain locations.

9.    Section 5.07, _Vandalism of Automated Public Toilets_ is deleted in its entirety and replaced with the following:

_Vandalism of Automatic Public Toilets._ Nothing in this Agreement shall be construed to impose on CITY any responsibility or liability for costs incurred by CONTRACTOR on account of Vandalism. In the event that CONTRACTOR's cost of repair and replacement of Automatic Public Toilets due to Vandalism during any of the first two years of operation should exceed Two-Thousand Dollars ($2,000) per Automatic Public Toilet per year, CONTRACTOR may, by notice to CITY, request that CITY negotiate in good faith possible modifications of this Agreement to reduce such cost or provide additional revenues. Such modifications may include relocation of Automatic Public Toilets for which maintenance is a particular problem, change in the ratio of Public Service Kiosks to Automatic Public Toilets, or any other modification which would reduce such costs or provide offsetting additional revenues. In no event shall CITY be required to agree to any particular modification of this Agreement, provided, however, that it will not unreasonably withhold approval of the relocation of an Automatic Public Toilet if the cost or replacement of such Automatic Public Toilet due to Vandalism has exceeded $2,000 per year in both of its first two years of operation. If no modification of the Agreement satisfactory to CONTRACTOR is agreed upon after six (6) months, CONTRACTOR may, at its option, elect to terminate this Agreement upon ninety (90) days notice to CITY.

9.    Paragraph A, <u>Newsstand Kiosks</u>, of Section 5.10 is hereby amended by deleting the phrase "sixty-five (65)" and replacing it with the phrase "eighty (80)".

10.    Paragraph D(2), <u>Contribution</u>, of Section 5.10 is hereby amended by deleting the first sentence, and replacing it with the following:

> CONTRACTOR agrees to pay the Art Commission a contribution (the "Contribution") toward the cost of reproduction or extended print runs of such public art materials.  The amount of the Contribution shall be Three Thousand Dollars ($3,000.00) per year, adjusted as set forth below, provided, however, if CITY elects pursuant to Paragraph D of Section 7.21 to expand to the balance of the Initial Phase, the amount of such Contribution shall be increased to Seventeen Thousand Two Hundred Dollars ($17,200.00) per year, adjusted as set forth below, beginning with the first payment following the completion of installation of all of the Automatic Public Toilets and Public Service Kiosks in the Initial Phase.

11.    A new Section 7.22 is hereby added to the Agreement which shall read as follows:

> 7.22.    <u>RELOCATION AND TERMINATION: WAIVER OF RIGHTS</u>. CONTRACTOR ACKNOWLEDGES THAT THIS AGREEMENT INCLUDES PROVISIONS GRANTING TO CITY, SUBJECT TO CERTAIN TERMS AND CONDITIONS, THE RIGHT TO ORDER THE REMOVAL AND RELOCATION OF A LIMITED NUMBER OF PUBLIC SERVICE KIOSKS AND, SUBJECT TO CERTAIN TERMS AND CONDITIONS, THE RIGHT TO TERMINATE THE AGREEMENT AND UPON SUCH TERMINATION TO ORDER THE REMOVAL OF ALL PUBLIC SERVICE KIOSKS. CONTRACTOR FULLY WAIVES, RELEASES AND RELINQUISHES FOREVER ANY AND ALL CLAIMS, DEMANDS, RIGHTS AND CAUSES OF ACTION THAT IT MAY HAVE AGAINST THE CITY UNDER THE OUTDOOR ADVERTISING ACT (BUSINESS AND PROFESSIONS CODE, SECTION 5200 <u>ET SEQ</u>.), ANY AMENDMENTS THERETO OR OTHER FUTURE LAWS, FOR ANY COMPENSATION FROM CITY NOT OTHERWISE PROVIDED FOR HEREIN, INCLUDING THE PAYMENT OF JUST COMPENSATION, AS DEFINED IN THE EMINENT DOMAIN LAW (TITLE 7, COMMENCING WITH SECTION 1230.010, OF PART 3 OF THE CODE OF CIVIL PROCEDURE), IN THE EVENT CITY LAWFULLY EXERCISES ANY SUCH RIGHTS IN ACCORDANCE WITH THE PROVISIONS OF THIS AGREEMENT.

12.    Except as expressly amended herein, the terms of the aforementioned Agreement shall remain in full force and effect.

6175\J7.D1

IN WITNESS WHEREOF, the parties hereto have caused this agreement to be executed, in quintuplicate, by their duly authorized officers, on the day and year first herein above written.

CITY

CITY AND COUNTY OF SAN FRANCISCO, a California municipal corporation

Recommended by:

Vitaly B. Troyan
Deputy Director,
Public Services

Approved as to Form:

LOUISE H. RENNE, City Attorney

By Theodore R. Lakey
Deputy City Attorney

Approved:

Dennis P. Bouey
Director,
Port of San Francisco

Approved:

John E. Cribbs
Director of Public Works

Approved:

Rudolf Nothenberg
Chief Administrative Officer

Approved:

Honorable Frank Jordan, Mayor

CONTRACTOR

JCDecaux United Street Furniture, Inc., a California corporation

249 Front Street
Address

San Francisco, CA          94111
City          State          Zip

I have read and understood Section 7.12, the City's statement urging companies doing business in Northern Ireland to move towards resolving employment inequities, encourage compliance with the MacBride Principles, and urging San Francisco companies to do business with corporations that abide by the MacBride Principles.

By
Signature

Jean-Francois Decaux
Name

Chief Executive Officer
Title

(415)     834-0128
Area Code   Phone Number

133673557
Federal Employer Number

6175/27.D1                    11.