# EXHIBIT C-1

**FIRST AMENDED AND RESTATED
PEDESTAL-MOUNTED NEWSRACK AGREEMENT
BY AND BETWEEN
THE CITY AND COUNTY OF SAN FRANCISCO
AND
CLEAR CHANNEL ADSHEL, INC.**

## TABLE OF CONTENTS

**Page**

ARTICLE I – DEFINITIONS ................................................................ 1

   1.1   Definitions................................................................ 1

ARTICLE II – TERM; TERMINATION ...................................... 4

   2.1   Effective Date of Agreement ................................ 4
   2.2   Term of Agreement ................................................ 5
   2.3   Termination Under Sunshine Ordinance ............ 5
   2.4   Termination for Default ........................................ 5
   2.5   Termination Following Change In Law ................ 5
   2.6   Termination by Contractor .................................... 5
   2.7   Extension. ................................................................ 5
   2.8   Removal of Fixed Pedestal Units........................ 6

ARTICLE III – INSTALLATION OF FIXED PEDESTAL UNITS ................ 7

   3.1   Contractor to Provide Fixed Pedestal Units........ 7
   3.2   Installation of Fixed Pedestal Units. .................... 7
   3.3   Permit Approvals Required for Fixed Pedestal Units........ 8
   3.4   Approval of Other Agencies ................................ 9
   3.5   Schedule of Fixed Pedestal Units to be Installed........ 9
   3.6   Relocation of Fixed Pedestal Units...................... 12
   3.7   Locking Plate ........................................................ 14
   3.8   Reconfiguration of Previously Assigned Newsrack Boxes ........ 14
   3.9   Restoration of Sites .............................................. 15
   3.10  Electrical Connections ........................................ 15

ARTICLE IV – DESIGN; APPEARANCE ........................................ 15

   4.1   Fixed Pedestal Unit Design.................................. 15
   4.2   Paid Publication Security Features ...................... 16
   4.3   Publication Names. ................................................ 16
   4.4   Other Authorized Names .................................... 16
   4.5   Maintenance Telephone Number ........................ 17

ARTICLE V – MAINTENANCE ................................................ 17

   5.1   Services to be Furnished by Contractor .............. 17
   5.2   Inspection and Clean-Up of Fixed Pedestal Units and Newsrack Boxes .............. 17
   5.3   Services For Which Contractor is Not Responsible. ...................... 17
   5.4   Substitute Parts .................................................... 18
   5.5   Standard Pace of Repair and Replacement. ........ 18

**TABLE OF CONTENTS (cont'd)**

|  |  | Page |
|---|---|---|
| 5.6 | Special Pace for Repair of Contractor Responsibility Door Problems | 18 |
| 5.7 | Potentially Reimbursable Permit Holder Self Help For Contractor Responsibility Door Problem | 19 |
| 5.8 | Exceptions to Special Pace and Potential Reimbursement Scenarios | 21 |
| 5.9 | Permit Holder Self Help For Vendor Responsibility Door Problem Without The Potential For Reimbursement | 21 |
| 5.10 | City's Remedies | 21 |
| 5.11 | Vandalism of Fixed Pedestal Units | 21 |
| 5.12 | Data Reports and Notices | 21 |
| 5.13 | Keys | 22 |
| 5.14 | Face Plates | 22 |

**ARTICLE VI – ADVERTISING** ........................................................................ 23

| 6.1 | License to Sell and Display Advertising on the Back Side of Fixed Pedestal Units | 23 |
|---|---|---|
| 6.2 | Size of Advertising | 24 |
| 6.3 | Advertising Disclaimer | 24 |
| 6.4 | Design Considerations and Use of Materials | 24 |
| 6.5 | Advertising Material | 24 |
| 6.6 | Tobacco Advertising Prohibited | 24 |

**ARTICLE VII – ACCESSIBILITY REQUIREMENTS** ...................................... 25

| 7.1 | Accessibility | 25 |
|---|---|---|
| 7.2 | Path of Travel | 25 |
| 7.3 | Approved Cleaning Products | 25 |

**ARTICLE VIII – GENERAL PROVISIONS** ..................................................... 25

| 8.1 | Business Office | 25 |
|---|---|---|
| 8.2 | Relief From Parking Restrictions | 25 |
| 8.3 | Financial Obligation of City | 25 |
| 8.4 | Ownership of Fixed Pedestal Units | 26 |
| 8.5 | Installation Performance Bond | 26 |
| 8.6 | Additional Performance Bond | 29 |
| 8.7 | Insurance | 31 |
| 8.8 | Hold Harmless and Indemnification | 33 |
| 8.9 | Social Security, Unemployment Compensation | 35 |
| 8.10 | Notices; When Effective | 35 |
| 8.11 | Event of Default; Remedies | 36 |
| 8.12 | No Waiver of Subsequent Breaches or Defaults; Other Remedies | 38 |
| 8.13 | Subcontracting | 38 |
| 8.14 | Financial Report | 39 |
| 8.15 | Audit and Inspection of Books | 39 |
| 8.16 | Confidentiality | 39 |

5551603v11

# TABLE OF CONTENTS (cont'd)

|  |  | Page |
|---|---|---|
| 8.17 | Compliance With Laws; Change In Laws | 39 |
| **ARTICLE IX – MISCELLANEOUS CONTRACT PROVISIONS** | | 43 |
| 9.1 | Conflict of Interest | 43 |
| 9.2 | Other Agreements Between City and Contractor | 44 |
| 9.3 | Assignment | 44 |
| 9.4 | Binding Effect of Agreement | 44 |
| 9.5 | Taxes | 44 |
| 9.6 | Legal Relationship | 45 |
| 9.7 | Independent Contractor | 46 |
| 9.8 | Qualified Personnel | 46 |
| 9.9 | Minority/Women/Local Business Utilization; Liquidated Damages | 46 |
| 9.10 | Nondiscrimination; Penalties | 48 |
| 9.11 | MacBride Principles – Northern Ireland | 48 |
| 9.12 | Tropical Hardwood and Virgin Redwood Ban | 48 |
| 9.13 | Resource Conservation | 48 |
| 9.14 | Non-Waiver of Rights | 48 |
| 9.15 | Modification and Amendment of Agreement | 49 |
| 9.16 | Section and Paragraph Headings | 49 |
| 9.17 | Agreement Made in California; Venue | 49 |
| 9.18 | Entire Agreement | 49 |
| 9.19 | Submitting False Claims; Monetary Penalties | 49 |
| 9.20 | Prohibiting City Business With Burma | 50 |
| 9.21 | Ownership of Results | 50 |
| 9.22 | Survival of Terms | 50 |
| 9.23 | Attorneys' Fees | 50 |
| 9.24 | Force Majeure | 50 |
| 9.25 | No Third-Party Beneficiaries | 51 |
| 9.26 | Notification of Limitations on Contributions | 51 |
| 9.27 | Authority To Bind Vendor | 52 |

5551693v11

# FIRST AMENDED AND RESTATED
## PEDESTAL-MOUNTED NEWSRACK AGREEMENT
### BY AND BETWEEN
### THE CITY AND COUNTY OF SAN FRANCISCO
### AND
### CLEAR CHANNEL ADSHEL, INC.

This First Amended and Restated Pedestal-Mounted Newsrack Agreement By and Between the City and County of San Francisco and Clear Channel Adshel, Inc. (this "Agreement") is made and entered into this _____ day of _____, 2002 [intentionally blank; "Effective Date" to be interlineated], by and between the City and County of San Francisco, a municipal corporation ("City") acting by and through its Department of Public Works, and Clear Channel Adshel, Inc., a New York corporation, f/k/a Adshel Inc. ("Contractor").

## RECITALS

A. The City desires to implement a Pedestal-Mounted Newsrack Program to replace the unsightly clutter of an estimated many thousands of single publication newsracks with 1,000 pedestal-mounted multi-publication newsracks on public property in San Francisco.

B. In 1999, City and Contractor entered into a contract entitled Pedestal-Mounted Newsrack Agreement By and Between the City and County of San Francisco and Adshel, Inc. ("Original Agreement").

C. Pursuant to said Original Agreement, Contractor agreed to provide, install and maintain up to 1,000 pedestal-mounted newsracks for a Pedestal-Mounted Newsrack Program in exchange for certain advertising rights.

D. Implementation of the Original Contract has been stalled by the existence of litigation challenging the City's Pedestal-Mounted Newsrack Program.

E. City and Contractor now desire to amend the Original Agreement in several respects and to restate it in its entirety as hereinafter set forth.

## AGREEMENT

Accordingly, in consideration of the mutual promises and undertakings hereinafter set forth and for other good and valuable consideration, the receipt and sufficiency of which are hereby acknowledged, City and Contractor agree as follows:

## ARTICLE I – DEFINITIONS

1.1 **Definitions**. Where any word or phrase defined below or a pronoun used in place thereof, is used in any part of this Agreement, it shall have the meaning herein set forth.

5551693v11

(a)    "Action" means the action entitled *New Times, et al. v. City and County of San Francisco, et al.*, filed in the United States District Court for the Northern District of California and bearing Case No. C-99-0020 WHA.

(b)    "Advertising Zone" means the geographic area of the City bounded on the south by the southerly line of Berry Street (including the sidewalk located along the south side of Berry Street) on the west by the westerly line of Polk Street (including the sidewalk located along the west side of Polk Street) extended north to the San Francisco Bay, and on the north and east by the shoreline of the San Francisco Bay. If a new sporting arena or convention center (or the expansion of such an existing facility) is constructed outside of the Advertising Zone during the term of this Agreement, the Advertising Zone shall be deemed to include the immediate block(s) at which such facility is located. This is not, however, intended to allow for the modification of the Advertising Zone to include an expanded sporting arena or convention center where the pre-expansion facility was outside of the Advertising Zone. City and Contractor agree that it would be mutually beneficial to allow advertising on Van Ness Avenue and agree to work cooperatively to have state laws or regulations amended to allow advertising on Fixed Pedestal Units on Van Ness Avenue in the City. In the event state laws or regulations are amended to allow advertising on Fixed Pedestal Units on Van Ness Avenue in the City, then the western border shall be changed to the westerly line of Van Ness Avenue (including the sidewalk located on the west side of Van Ness Avenue).

(c)    "Advisory Committee" shall have the meaning as set forth in San Francisco Public Works Code Section 184.12.

(d)    "Agreement" means this contract as executed and as amended or extended from time to time; words such as "herein," "hereinafter," "hereof," "hereto" and "hereunder," when used with reference to this Agreement, refer to this Agreement as a whole, unless the context otherwise requires.

(e)    "Approval" means the written consent of the Director, or his or her designated agent, unless the context otherwise requires.

(f)    "Authorization" means an order or other written authorization of the City properly executed by the Director, or his or her designated agent, unless the context otherwise requires.

(g)    "Business Day" means a 24-hour period that both starts and ends on a day other than a City employee holiday, a Saturday, or a Sunday.

(h)    "City" means the City and County of San Francisco, a municipal corporation; except where otherwise indicated by the context, all references to City shall also mean and include the Port of San Francisco.

(i)    "Contractor" means Clear Channel Adshel, Inc., a New York corporation, and its successors and assigns permitted hereunder.

2

(j)  "Controller" means the Controller of the City and County of San Francisco.

(k)  "Director" means the Director of the City's Department of Public Works.

(l)  "Effective Date" shall have the meaning as set forth in Section 2.1.

(m)  "Fair Market Value" means the unamortized installed cost of a Fixed Pedestal Unit based on a straight line twenty year amortization schedule from the date of installation.

(n)  "Fixed Pedestal Zone" means any area designated by the Director in accordance with San Francisco Public Works Code Section 184.12 and the Director's orders promulgated thereunder.

(o)  "Fixed Pedestal Permit" means a permit issued to a publication authorizing the placement of the publication in one or more newsrack boxes in a fixed pedestal unit in a Fixed Pedestal Zone.

(p)  "Fixed Pedestal Unit" means an assembly which contain one or more self-service or coin operated boxes, containers, storage units, or other dispensers installed used or maintained for the display and sale or free distribution of newspapers, news periodicals or other publications, and which is attached to the sidewalk, street or public right-of-way in accordance with San Francisco Public Works Code Section 184.12 and the Director's orders promulgated pursuant to said code section and incorporated herein by reference.

(q)  "Free Publication" and "Free Publisher" shall mean and refer to material distributed through a Newsrack Box that does not require a payment by the customer to open and to the publisher or Permit Holder of same.

(r)  "Freestanding Newsrack" means any self-service or coin-operated box, container, storage unit or other dispenser installed, used or maintained for the display and sale or the distribution without charge of newspapers, news periodicals, or other news publications, and which is not a Fixed Pedestal Unit authorized under San Francisco Public Works Code Section 184.12.

(s)  "Installation Information" shall have the meaning as set forth in Section 3.5(a).

(t)  "Newsrack Box" shall mean the individual space within a Fixed Pedestal Unit which dispenses one newspaper or other periodical, including the door, coin return mechanism and associated hardware. "Newsrack Box" does not include any freestanding newsrack.

(u)  "Paid Publication" and "Paid Publisher" shall mean and refer to material distributed through a Newsrack Box that requires a payment by the customer to open and to the publisher or Permit Holder of same.

3

(v)   "Permit Holder" means a publication which has been issued one or more Fixed Pedestal Permits by the Director or is otherwise authorized to occupy a Newsrack Box.

(w)   "Plans and Specifications" shall have the meaning set forth in Section 4.1.

(x)   "Port" means the Port of San Francisco.

(y)   "Port Director" means the Executive Director of the Port of San Francisco.

(z)   "Port Property" means all of the property transferred to the City and County of San Francisco pursuant to Chapter 1333 of the Statutes of 1968, as recorded May 14, 1969, in book C 169 at Pages 573 to 664, inclusive, in the San Francisco Recorder's Office, and such property subsequently acquired and/or transferred to the jurisdiction of the San Francisco Port Commission, as shown on the City and County of San Francisco 100 scale Ownership maps, on file with the City's Bureau of Street Use and Mapping.

(aa)  "Publication" includes any morning, evening or special editions of a publication, as well as any editions published jointly with another publisher.

(bb)  "Public Right of Way" means land which by deed, conveyance, agreement, easement, dedication, usage or process of law is reserved and dedicated to the general public for street, highway, alley, public utility, or pedestrian walkway purposes, whether or not said land has been improved or accepted for maintenance by the City.

(cc)  "Reference Rate" means the current Prime Rate as announced from time to time in the Wall Street Journal.

(dd)  "Settlement Agreement Effective Date" means the effective date as defined in a settlement agreement executed by all parties to the Action.

(ee)  "Unobstructed" means the Fixed Pedestal Unit (1) is lawfully capable of bearing advertising, including that it is configured to dispense no less than six (6) publications, and (2) that the back side of the Fixed Pedestal Unit faces the street, is no more than three (3) feet from the curb, and is not facing a building wall, fence, railing, BART/Muni station entrance wall, or other item that would obscure part of an advertising panel placed on the back of a Fixed Pedestal Unit.

## ARTICLE II – TERM; TERMINATION

2.1   **Effective Date of Agreement**.  This Agreement shall become effective on the date (the "Effective Date") occurring thirty (30) days after the City's Mayor signs an ordinance approving this Agreement.

4



2.2 **Term of Agreement**. This Agreement shall commence as of the Effective Date as defined herein and shall continue, subject to the terms of this Agreement regarding termination and extension, for a period of twenty (20) years ("Contract Period").

2.3 **Termination Under Sunshine Ordinance**. Pursuant to Section 67.29-3 of City's Administrative Code, one basis for City's termination of this Agreement is any action by, or permitted by, Contractor to remove or deface or otherwise interfere with an advertisement on a Fixed Pedestal Unit during the advertisement's paid for display period without first notifying the advertiser and the City and obtaining the advertiser's consent. In the event advertisements are defaced or vandalized during the advertisement's paid for display period, Contractor shall provide written notice to City and the advertiser and shall allow the advertiser the option of replacing the defaced or vandalized material during the advertisement's paid for display period. Any request by any City official or by Contractor to remove or alter any advertising must be in writing and shall be a public record.

2.4 **Termination for Default**. In the event of any uncured default by either party to this Agreement, as defined in Section 8.11, the non-breaching party shall have the option to terminate the Agreement as provided therein.

2.5 **Termination Following Change In Law**. Contractor may terminate this Agreement as provided at Section 8.17.

2.6 **Termination by Contractor**. Contractor shall have the unfettered option to terminate this Agreement upon ninety (90) days' prior written notice to City:

(a) five (5), ten (10), or fifteen (15) years after the Effective Date without any reason; or

(b) two (2) years after the Effective Date if Contractor has not received from City, by that date, all Installation Information as described at Section 3.5(a) herein, that would enable Contractor to install at least three hundred (300) Unobstructed Fixed Pedestal Units within the Advertising Zone.

2.7 **Extension**.

(a) If Contractor terminates this Agreement five (5) years after the Effective Date, Contractor shall have the option of extending the effective date of the termination by two (2) years during which time Contractor shall continue its obligations herein and advertising rights herein at existing Fixed Pedestal Units, but Contractor shall not be required to install any additional Fixed Pedestal Units after providing City with Contractor's notice of termination. This option shall be exercised, if at all, by Contractor notifying City when Contractor provides City with the notice of termination.

(b) At Contractor's option, the twenty (20) year Contract Period shall be deemed to commence on a date ("Start Date") defined as the date the Contractor has installed at least three hundred (300) Unobstructed Fixed Pedestal Units in the Advertising

5

Zone. Nevertheless, all rights running from the Effective Date shall remain the same. This option shall be exercised, it at all, by Contractor notifying City within ninety (90) days after the Start Date.

(c)     If Contractor exercises the option under Section 2.7(b) herein, the number of pre-Start Date Fixed Pedestal Units installed shall be included: (a) in tallying the maximum five hundred (500) Fixed Pedestal Units that Contractor shall be obligated to install during the first five (5) years of the Contract Period, and (b) in applying the ratio, within those five (5) years, of one (1) Fixed Pedestal Unit installed outside the Advertising Zone for each five (5) Unobstructed Fixed Pedestal Units installed within the Advertising Zone, up to a maximum obligation, during the first (5) years of the Contract Period, to install up to fifty (50) Fixed Pedestal Units outside the Advertising Zone, after Contractor has installed at least three hundred (300) Unobstructed Fixed Pedestal Units within the Advertising Zone.

(d)     At Contractor's option, exercisable either separately or in addition to the option at Section 2.7(b) herein, the running of the twenty (20) year Contract Period shall be tolled from the Start Date if six (6) months after the Start Date Contractor has not received all Installation Information, permits and approvals necessary to install, in the Advertising Zone, further Unobstructed Fixed Pedestal Units in the Advertising Zone of a number "N" where "N" equals 450 minus the number of Unobstructed Fixed Pedestal Units installed in the Advertising Zone by that time. This option shall be exercised, if at all, by Contractor providing notice to City within nine (9) months after the Start Date. While such tolling is in effect, time shall not elapse from the Contract Period, but all rights, remedies, or provisions available during this Agreement and the Contract Period shall remain operative. Tolling shall cease after Contractor has received all Installation Information, permits, and approvals necessary to install the foregoing further "N" Unobstructed Fixed Pedestal Units in the Advertising Zone.

2.8     **Removal of Fixed Pedestal Units**. Upon termination of this Agreement, City may direct Contractor to remove its Fixed Pedestal Units and restore the respective sidewalks and curbs at Contractor's own cost and expense to the condition they were in prior to the installation of such Fixed Pedestal Units to the extent that the need for restoration was caused by the installation or removal of the Fixed Pedestal Units. City shall have sixty (60) days from notice of the termination of the Agreement or its expiration to direct Contractor to undertake said removal. Contractor shall file applications for the necessary permits to remove all applicable Fixed Pedestal Units no later than sixty (60) days after receiving notice to do so from City. Contractor shall complete such removal and restoration within one hundred and twenty (120) days after all necessary permits have been issued for such removal and restoration. If Contractor fails to complete such removal and restoration within said period, City, without further notice and at Contractor's cost and expense, may remove the Fixed Pedestal Units and restore the sidewalks and curbs.

5551603v11

## ARTICLE III – INSTALLATION OF FIXED PEDESTAL UNITS

3.1     <u>Contractor to Provide Fixed Pedestal Units</u>.

    (a)    Contractor shall install, operate and maintain, on public property up to 1,000 Fixed Pedestal Units in Fixed Pedestal Zones at locations within said Fixed Pedestal Zones as designated by City.  A minimum of four hundred and eighty-five (485) Fixed Pedestal Units shall be Unobstructed within the Advertising Zone, where Contractor may, subject to the terms of this Agreement, display advertising on any Fixed Pedestal Unit.

    (b)    Contractor shall have no authority to make determinations as to where Fixed Pedestal Units shall be located or concerning which publications shall be distributed from a Fixed Pedestal Unit.

    (c)    Contractor shall not be required to install or maintain Fixed Pedestal Units in any Fixed Pedestal Zone designated to contain fewer than fifteen (15) Fixed Pedestal Units, inclusive of any installed Fixed Pedestal Units Contractor subsequently relocated from that Fixed Pedestal Zone pursuant to this Agreement's relocation provisions.

    (d)    City shall use reasonable efforts to ensure, but does not warrant, that at all times no Freestanding Newsrack will be located within fifteen (15) feet of any Fixed Pedestal Unit.

    (e)    Contractor shall not be required to install Fixed Pedestal Units comprised of more than ten (10) Newsrack Boxes.  In construing the foregoing, where the space for a full-sized Newsrack Box is divided ("split") it shall be counted as one (1) Newsrack Box.

    (f)    The ten (10) Fixed Pedestal Units already installed by Contractor in San Francisco shall be deemed to have been installed in full compliance with this Agreement, including Article IV herein, and shall count, as applicable, towards the parties' respective numeric obligations under this Agreement.

    (g)    It is intended, but Contractor does not warrant, that Fixed Pedestal Units will be available for distribution of publications twenty-four hours per day.  This Section 3.1(g) shall not in any way be construed to modify any term of this Agreement, including those terms concerning design, maintenance, or relocation of Fixed Pedestal Units.

3.2     <u>Installation of Fixed Pedestal Units</u>.

    (a)    Contractor shall install Fixed Pedestal Units only for which (i) the design complies with the requirements of Article IV herein, (ii) all required permits have been issued and all applicable fees have been paid by Contractor, and (iii) locations have been determined by City pursuant to applicable laws and guidelines.

7



(b)    Contractor shall install all Fixed Pedestal Units whenever possible at hours of minimum pedestrian activity or at such hours as are approved by City, which approval shall not be unreasonably withheld.

(c)    Contractor agrees that it shall neither have nor acquire any possessory interest in any of the City's real property, such as a lease or exclusive easement, on which a Fixed Pedestal Unit has been installed pursuant to this Agreement. Such acknowledgment in no way affects or limits Contractor's obligation to pay any possessory interest taxes as further provided herein.

3.3    **Permit Approvals Required for Fixed Pedestal Units.**

(a)    Contractor must obtain a Fixed Pedestal Unit Installation Permit from the Department of Public Works before proceeding with the installation of any Fixed Pedestal Unit. Contractor shall also be required to obtain an excavation permit from the Department of Public Works for all Fixed Pedestal Units which require excavation for reaching an electrical source for illumination and a permit for removal of Fixed Pedestal Units when removal is required, which removal permit shall not have any fee. No other permits from the Department of Public Works shall be required for the Fixed Pedestal Units.

(b)    Contractor shall be responsible for obtaining all other necessary permits and approvals from other City departments or state or local agencies or utility before proceeding with the installation of any Fixed Pedestal Units including, but not limited to the Port of San Francisco, the Bay Conservation and Development Commission and the San Francisco Public Utilities Commission Bureau of Light, Heat and Power, when such approval or permit is required.

(c)    Except for standard, universally applicable, excavation permit fees, Contractor shall not have to pay any City permit, application or similar type fee in any way related to any Fixed Pedestal Unit, including for its installation, illumination, removal or relocation. This Section 3.3(c) does not relieve Contractor of the responsibility to pay City for electricity consumed pursuant to Section 3.10 of this Agreement.

(d)    The Department of Public Works shall reasonably assist Contractor in obtaining all required permits and approvals. In particular, the City will appear with Contractor at all hearings and meetings throughout the permit/approval process, and otherwise assist Contractor to expeditiously procure all required permits or approvals, where they are issued or required by governmental bodies, departments, commissions or agencies of any type. In particular, where a permit or approval is required by a private entity, such as Pacific Gas and Electric, the City will, at Contractor's option, appear with Contractor at any applicable hearing or meeting.

8

3.4    **Approval of Other Agencies**.  The Department of Public Works shall reasonably assist Contractor in obtaining all required permits and approvals, including:

   (a)    **Approval of Recreation and Park Commission**.  The location of Fixed Pedestal Units on real property owned by or under the jurisdiction of or fronting the property of the San Francisco Recreation and Park Department shall be subject to review and approval by the Recreation and Park Commission.

   (b)    **Approval of Port Commission and Bay Conservation and Development Commission**.  The location of Fixed Pedestal Units on real property owned by or under the jurisdiction of the Port of San Francisco shall be subject to review and approval by the Port Commission.  In addition, any locations within one hundred feet (100') of the San Francisco Bay shoreline shall be reviewed by the Bay Conservation and Development Commission.

   (c)    **Approval of Port Director**.  Any relocation or removal of any Fixed Pedestal Unit on Port Property shall be subject to the review and approval of the Port Director and of Port engineering staff (in lieu of the Department of Public Works, in accordance with this Agreement).

3.5    **Schedule of Fixed Pedestal Units to be Installed**.

   (a)    "Installation Information" shall mean all the information listed below at 3.5(a)(i)-(vii) which information shall be complete, specific and final in that no further administrative or legal step or process remains that could frustrate Contractor's reliance on the information.

       (i)    installation locations;

       (ii)   the Newsrack Box configuration (i.e., paid, free, or free split) and location of each Newsrack Box within each of said Fixed Pedestal Units;

       (iii)  the assigned publication for each Newsrack Box within each of said Fixed Pedestal Units;

       (iv)   copies of black and white camera ready art in a horizontal format depicting the name of any publication assigned by City to be distributed from any Newsrack Box in said Fixed Pedestal Units in such numbers, sizes and formats as Contractor reasonably requests for ease of availability, and to standardize the display of publication names on Fixed Pedestal Unit sides, non-ad bearing backs, and Newsrack Box doors as provided herein;

       (v)    in the case of non-split Newsrack Boxes, two copies of black and white camera ready art depicting the content of the face plate, including at a minimum contact information (i.e., Permit Holder's name, street address, and phone number);

9

(vi)    in the case of split Newsrack Boxes (i.e., without a face plate), two copies of black and white camera ready art depicting the content to be displayed on the Newsrack Box door in lieu of a face plate, including at a minimum contact information (i.e., Permit Holder's name, street address, and phone number);

(vii)    All camera ready art provided by City shall be appropriately sized in the light of the given physical space on the Fixed Pedestal Unit and shall be otherwise practicable for Contractor's use in creating standard displays of the information.

(b)    City shall in writing provide Contractor with Installation Information for a series of batches of Fixed Pedestal Units each "batch" consisting of no less than fifty (50) Fixed Pedestal Units.

(c)    Following receipt of the written Installation Information from City for a batch of Fixed Pedestal Units consisting of no less than fifty (50) Fixed Pedestal Units, Contractor shall apply to the Department of Public Works for approval of Contractor's drawings showing the site of each Fixed Pedestal Unit ("location drawings"). Contractor shall have a minimum of thirty (30) Business Days to apply for approval of location drawings if City's Installation Information is for a batch of no more than fifty (50) Fixed Pedestal Units, and fifteen (15) additional Business Days for every additional ten (10) or less Fixed Pedestal Units identified by City in said batch.

(d)    The timing of installation shall run from the date ("Installation Trigger") on which Contractor has received all final permits and approvals (and not just Department of Public Works approval of Contractor's location drawings) from all sources for the installation of, and as applicable electrical connections for, all Fixed Pedestal Units in a batch for which City has provided Installation Information. If a batch consists of fifty (50) Fixed Pedestal Units, Contractor shall install the batch within one hundred (100) Business Days from the Installation Trigger if City has caused the clearance of all Freestanding Newsracks from the installation locations. Notwithstanding the foregoing, Contractor, at its sole option, may but is never required to, apply for and receive a Fixed Pedestal Unit Installation Permit from City before Contractor has received approvals for electrification of a Fixed Pedestal Unit, and Contractor may arrange for electrification of an already installed Fixed Pedestal Unit. Any additional cost to Contractor due to its exercise of the foregoing option will be borne by Contractor and not City. If a batch is greater than fifty (50) Fixed Pedestal Units, for every increment of fifteen (15) or less Fixed Pedestal Units beyond fifty (50), Contractor shall have an additional fifteen (15) Business Days to install the batch from the Installation Trigger if City has caused the clearance of all Freestanding Newsracks from the installation locations.

10

(e)     In no event shall Contractor be required to install any Fixed Pedestal Units outside the Advertising Zone prior to Contractor installing at least three hundred (300) Unobstructed Fixed Pedestal Units within the Advertising Zone.

(f)     During the first five (5) years of the Contract Period, Contractor shall be required to install no more than five hundred (500) Fixed Pedestal Units of which no more than fifty (50) Fixed Pedestal Units may be outside of the Advertising Zone.

(g)     Beginning in the sixth year of the Contract Period Contractor shall be required to install no more than one hundred (100) Fixed Pedestal Units per year.  Beginning in the sixth year of the Contract Period and continuing until the total number of Unobstructed Fixed Pedestal Units installed in the Advertising Zone is at least four hundred eighty-five (485), Contractor is entitled to install at least five (5) Unobstructed Fixed Pedestal Units in the Advertising Zone for each one (1) Fixed Pedestal Unit Contractor is directed to install outside the Advertising Zone.

(h)     If the Installation Information provided by City to Contractor for a given Fixed Pedestal Unit is complete as to some, but not all, of the Newsrack Boxes within that Fixed Pedestal Unit, Contractor shall install that Fixed Pedestal Unit, but Contractor is only required to configure, label, or otherwise prepare or install the Newsrack Boxes for which the Installation Information is complete.  Contractor is not required to install a Newsrack Box door on an unassigned Newsrack Box space.  Contractor shall take reasonable mechanical steps to prevent an unassigned Newsrack Box space from becoming an open receptacle for trash.

(i)     Once any Installation Information or portion thereof is provided by City to Contractor for a given Fixed Pedestal Unit under any circumstances, including an initial installation of a Fixed Pedestal Unit, a relocation of a Fixed Pedestal Unit, configuration of a Newsrack Box space that was not assigned to any Permit Holder, or pursuant to the reallocation of a Newsrack Box space that had been occupied, City is thereafter responsible for paying Contractor for all expenses whatsoever incurred due to Contractor's detrimental reliance upon such information, regardless of whether a change in the information is caused by City or a publisher.  A failure by City to pay Contractor said expenses shall, at Contractor's option and without limiting Contractor's other remedies, be grounds for Contractor permissibly not undertaking the work identified in the Installation Information or portion thereof in question, including not installing the Fixed Pedestal Unit(s) in question and not performing the Newsrack Box preparation or reconfiguration in question.  In addition, if pursuant to Section 3.5(h) herein City directs Contractor to install a Fixed Pedestal Unit with less than all of the Newsrack Boxes fully prepared (including, for example, where the City's Installation Information does not identify a publisher for a given Newsrack Box), if City thereafter (including after installation of the Fixed Pedestal Unit) provides complete Installation Information for a Newsrack Box for which the Installation Information was previously incomplete, Contractor shall configure, label, and otherwise prepare or install that Newsrack Box per the supplement Installation Information, but only after City has paid or caused Contractor to be paid an

11

amount representing Contractor's reasonable estimate, in the light of the intent to cover all of Contractor's costs, as to all the expenses whatsoever associated with doing so, after Contractor has notified City of that amount.

(j)    Any announcement by City or estimate by Contractor as to the schedule in connection with the installation of Fixed Pedestal Units shall under no circumstances cause Contractor to be liable, bound or otherwise affect Contractor's rights herein regardless of whether City relies upon information from Contractor.

3.6    **Relocation of Fixed Pedestal Units.**

(a)    Contractor may not relocate or remove a Fixed Pedestal Unit except upon express written instructions of Director. Notwithstanding the foregoing sentence or any other term of this Agreement, City agrees that upon 72-hours advanced written notice to Director, Contractor may, without need for a removal permit, remove any Fixed Pedestal Unit if, at any point, the cumulative total of all repair costs to the Fixed Pedestal Unit in any given consecutive twelve (12) month period or less would exceed the total of Contractor's initial manufacturing cost of such Fixed Pedestal Unit.

(b)    Except as provided herein, the cost of all relocations or removals initiated by Contractor shall be the sole responsibility of Contractor. The cost of all relocations or removals not initiated by Contractor shall be the sole responsibility of City except that in any given calendar year City shall have the right to require that up to two percent (2%) of the total number of Fixed Pedestal Units in service be relocated at Contractor's expense. However, no more than one quarter of the two percent (2%) of Fixed Pedestal Units which City has the right to require to be relocated at Contractor's expense as described above may be Fixed Pedestal Units with advertising and/or that have been installed with the capacity for illumination. Contractor shall only be required to perform a City initiated relocation or removal if Contractor has been given reasonable notice and in no event shall Director fail to give Contractor notice within forty-eight (48) Business Day hours after the time Director learns of the need for a City initiated removal of a given Fixed Pedestal Unit.

(c)    In the event that any Fixed Pedestal Unit with advertising is removed, other than at the initiation of Contractor, if City fails to timely provide Contractor with the relocation site and/or the remaining portion of Installation Information applicable to the relocation site as provided by Section 3.6(d)(i) and as otherwise required by and in conformity with the terms of this Agreement ("Missing Information"), then Contractor shall be entitled to payments by City to compensate Contractor for loss of advertising revenue, calculated as follows: the lowest rate on the "Advertising Rate Card" multiplied by the number of days beyond the applicable deadline proscribed by Section 3.6(d)(i), up until the date the Missing Information is provided by City to Contractor. The "Advertising Rate Card" shall mean the then

12

most current version of the advertising rates published by Contractor for advertising on the Fixed Pedestal Units.

(d)    If a Fixed Pedestal Unit is removed due to excessive repair costs pursuant to Section 3.6(a) or if a Fixed Pedestal Unit within the Advertising Zone is removed at the initiation of City, Contractor shall relocate it or install another Fixed Pedestal Unit (of the same size and with the same configuration of Newsrack Boxes), subject to the following:

    (i)    City shall within two (2) weeks of the Fixed Pedestal Unit's removal notify Contractor of a new, definitive location. Within thirty-five (35) Business Days of the Fixed Pedestal Unit's removal City shall notify Contractor of the remaining portion of Installation Information applicable to the relocation site other than location (provided earlier) and size and configuration of Newsrack Boxes (which shall be the same as the removed Fixed Pedestal Unit). If through no fault of Contractor, a new location is not approved by anyone other than the Department of Public Works from whom approval is necessary for Contractor to obtain an Installation Permit from the Department of Public Works, then per the time table provided at this Section 3.6(d)(i) (running instead from the date of notice by Contractor) City shall provide Contractor with a different relocation site and associated applicable Installation Information.

    (ii)    At Contractor's option, and without in any way diminishing its other rights herein, if a relocated Fixed Pedestal Unit is within the Advertising Zone and the relocation site is not on property that implicates the need for installation approval from anyone other than the Department of Public Works, Contractor may install a Fixed Pedestal Unit at the relocation site prior to the City's communication to Contractor of complete Installation Information for the relocated Fixed Pedestal Unit. The foregoing is at Contractor's option and the failure to exercise the option is not a defense to and does not diminish Contractor's other rights herein.

    (iii)    All of the provisions of this Agreement protecting Contractor's interests in connection with the approval and installation process shall apply to an installation caused by a relocation, including but not limited to City's obligation to clear freestanding newsracks from the new location. Except where Contractor exercises its option under Section 3.6(d)(ii) in conjunction with a relocation initiated by Contractor pursuant to its rights under this Agreement, Contractor shall not be obligated to reconfigure or otherwise modify or update a Fixed Pedestal Unit that is being installed per a relocation removal unless City has paid or caused Contractor to be paid an amount representing Contractor's reasonable estimate, in the light of the intent to cover all of Contractor's costs, as to all the expenses whatsoever associated with doing so, after Contractor has notified City of that amount.

5551693v11

(iv)    Once any portion of Installation Information is provided by City to Contractor for a given installation of a Fixed Pedestal Unit at a relocation site, City is thereafter responsible for paying Contractor for all expenses whatsoever incurred due to Contractor's detrimental reliance upon said portion of information, regardless of whether a change in the information is caused by City or a publisher. A failure by City to pay Contractor said expenses shall at Contractor's option, and without limiting Contractor's other remedies, be grounds for Contractor not installing the Fixed Pedestal Unit(s) in question. If City directs Contractor to install a Fixed Pedestal Unit in a relocation site with less than all of the Newsrack Boxes fully prepared (including, for example, where the City's Installation Information does not identify a publisher for a given Newsrack Box at a relocation site), if City thereafter (including after installation of the Fixed Pedestal Unit) provides Installation Information for a Newsrack Box for which the Installation Information was previously incomplete, Contractor shall configure, label, and otherwise prepare or install that Newsrack Box per the supplemental Installation Information, but only after City has paid or caused Contractor to be paid an amount representing Contractor's reasonable estimate, in the light of the intent to cover all of Contractor's costs, as to all the expenses whatsoever associated with doing so, after Contractor has notified City of that amount.

(v)    Any new location that City selects shall be sufficiently far from the relocated Fixed Pedestal Unit's former location that, taking into account the nature of the vandalism or other event(s) that triggered relocation, it is objectively reasonable that those events will not be repeated to a comparable degree; and

(vi)    If the relocated Fixed Pedestal Unit's former location was within the Advertising Zone and Unobstructed, its new location shall be within the Advertising Zone and Unobstructed.

3.7    **Locking Plate**. Contractor shall only install Newsrack Boxes that are capable of being rendered inoperative by placing a locking plate over the offending Newsrack Box if the Director finds that a Newsrack Box violates San Francisco Public Works Code Section 184.12. Contractor shall render a Newsrack Box inoperative within twenty-four (24) hours of receiving written notice to do so from Director.

3.8    **Reconfiguration of Previously Assigned Newsrack Boxes**. Once all Newsrack Boxes in a Fixed Pedestal U... have been configured through Installation Information or supplemental Installation Information pursuant to Section 3.5 herein, Contractor will thereafter only reconfigure a Newsrack Box space within an already installed Fixed Pedestal Unit, without expense to City, if a Permit Holder who had occupied a given Newsrack Box loses or surrenders the right to distribute from a given Newsrack Box and the Newsrack Box configuration (*i.e.*, paid, free, split free) desired by the successor Permit Holder assigned by City is not already open and available elsewhere in the assigned Fixed Pedestal Unit. In particular, and regardless of any possible interpretation

14



of the foregoing (unless City has paid or caused Contractor to be paid an amount representing Contractor's reasonable estimate as to all the expenses whatsoever associated with doing so, in the light of the intent to cover all of Contractor's costs after Contractor has notified City of that amount), Contractor is not required to reconfigure a Newsrack Box into a split free Newsrack Box space pursuant to a reallocation of that Newsrack Box space if the same publisher family publishes both the newly assigned publication for that Newsrack Box and also the publication that was assigned to occupy that Newsrack Box immediately prior to the reallocation of that Newsrack Box space, and said prior publication could practically have fit for distribution from within one side of a split free Newsrack Box space. This Section 3.8 is subject to Section 3.5(i).

3.9    **Restoration of Sites**. When each installation or relocation of a Fixed Pedestal Unit is complete, Contractor shall remove all excess materials and restore any area disturbed in the installation or relocation to its condition existing prior to Contractor's installation of the Fixed Pedestal Unit.

3.10   **Electrical Connections**. If Contractor desires to arrange for a Fixed Pedestal Unit advertising display to be backlit or illuminated, Contractor may, if reasonably available, use City owned street lighting circuits and conduit, including the nearest available connection, and the only fee to be paid by Contractor to tap into the City's electricity shall be for Contractor's actual consumption of electricity for which Contractor shall pay City, if at all, the lower of: (a) the rate provided by San Francisco Public Utilities Commission Resolution No. 89-0355 or any subsequently adopted equivalent; or (b) the rate, if any, actually paid by any other City street furniture vendor or contractor (whether for transit shelters, information kiosks, automatic public toilets, or otherwise), where if no amount is paid by another City street furniture vendor for electricity, or a refund or benefit is extended to another street furniture vendor effecting the price regarding electricity, Contractor shall has the right to receive the same benefit or other consideration. Subject to the applicable withholding or redacting in compliance with the Public Records Act and any similar laws, upon Contractor's request, City shall provide Contractor with such information as Contractor shall reasonably request, including copies of invoices and cancelled checks concerning payment by other City street furniture vendors relating to electrical service, to assess City's compliance with this Section.

## ARTICLE IV – DESIGN; APPEARANCE

4.1    **Fixed Pedestal Unit Design**. Contractor shall install Fixed Pedestal Units contracted for under this Agreement that conform with the plans and specifications (the "Plans and Specifications") attached hereto as Appendix A. Modifications to the Plans and Specifications which materially affect the visible external size, shape or color of the Fixed Pedestal Units, the disabled access requirements of the Fixed Pedestal Units or adversely affect their operation shall require the prior written approval of the Director, which approval shall not be unreasonably withheld. Any other modification shall not require the approval of the Director. Fixed Pedestal Units shall be self supporting, stable, rigidly assembled and shall not exceed 54 inches in height when measured from the base to the top surface of the pedestal mount. The Fixed Pedestal Units which are permitted to have advertising displays on the back side pursuant to this Agreement may, at

15

5551605v11

Contractor's option, contain illuminating devices which conform to the Plans and Specifications, all laws, ordinances, regulations of general applicability, and all requirements of the Bureau of Light Heat and Power and of the San Francisco Public Utilities Commission or any other utility or agency with jurisdiction over such devices. Except as specifically provided herein, the decision regarding the color of any part of the Fixed Pedestal Units including face plates, shall require Contractor's written consent.

4.2    **Paid Publication Security Features.** Contractor shall install Newsrack Boxes for Paid Publications with the following features:

    (a)    then-current Kaspar mechanical coin mechanism (presently the TK $3.00 model);

    (b)    Assa-Abloy cam lock and padlock (keyed alike);

    (c)    mechanism panel made of 12 gauge steel;

    (d)    Newsrack Box window made of .093 polycarbonate; and

    (e)    Medeco locking coin tray.

4.3    **Publication Names.**

    (a)    The names of the publications designated by City as being authorized to distribute from a given Fixed Pedestal Unit will be listed horizontally on the sides of that Fixed Pedestal Unit, on each publication's Newsrack Box door and, in the case of non-advertising bearing Fixed Pedestal Units only, on the rear of each publication's respective Newsrack Box. The lettering ("Outside Trade Dress") shall be in white and in each publication's script as provided to Contractor as part of the Installation Information, and Contractor may standardize the lettering size and placement.

    (b)    Contractor shall be required to change Outside Trade Dress for a given Permit Holder or publication no more than once per twelve (12) month period, and in no event shall be required to make any such change until the City pays or causes the Permit Holder or publication in question to pay to Contractor Contractor's reasonable estimate, in the light of the intent to cover all of Contractor's costs, as to all the expenses whatsoever associated with doing so, after Contractor has notified City of that amount. In construing the foregoing, under no circumstances shall Contractor be required to incur an uncompensated for expense in changing Outside Trade Dress, except: (i) to the extent the Outside Trade Dress is damaged by Contractor, its employees, agents or contractors; or (ii) in connection with preparation of a given Newsrack Box for a new occupant where a Permit Holder who had occupied that Newsrack Box loses or surrenders the right to distribute from that Newsrack Box.

4.4    **Other Authorized Names.** Contractor may display its name and logo on the Fixed Pedestal Units as well as those of any entities with whom Contractor has contracted for services in performance of this Agreement.

16

4.5     **Maintenance Telephone Number**. Contractor shall list a telephone number for maintenance service on the sides of each Fixed Pedestal Unit.

## ARTICLE V – MAINTENANCE

5.1     **Services to be Furnished by Contractor**. Except as provided herein, Contractor shall be responsible for maintaining, on the schedules provided herein, all Fixed Pedestal Units and Newsrack Boxes installed, and advertising displayed, under this Agreement in clean, graffiti-free, safe, secure, rust-free and first-class condition, throughout the duration of this Agreement, including refurbishing, reconditioning, and if necessary, replacing any such Fixed Pedestal Units and Newsrack Boxes at no cost to City.

5.2     **Inspection and Clean-Up of Fixed Pedestal Units and Newsrack Boxes**. Contractor shall inspect each Fixed Pedestal Unit and Newsrack Box contained therein at least once per day Monday through Friday. When inspecting Fixed Pedestal Units, Contractor will observe each Newsrack Box and tug on its door handle. The foregoing is a minimum standard, and Contractor acknowledges that two or more inspections per day may be required, particularly at certain locations. Contractor shall inspect a site more frequently if conditions at that site so require. Each Fixed Pedestal Unit shall be washed at least once per week. Contractor shall remove all graffiti, stickers, unauthorized posters and flyers, litter, dust, dirt and weeds and other rubbish from each Fixed Pedestal Unit.

5.3     **Services For Which Contractor is Not Responsible**.

    (a)     In respect of Paid Publication Newsrack Boxes, Contractor is not responsible for the following:

        (i)     Maintaining and replacing the following parts of a Paid Publication Newsrack Box: the charging or coin mechanism, locks, the coin tray, the coin return button, and customer coin return funnel, and all keys (collectively, "Coin Charging/Security Parts");

        (ii)     Remedying any Paid Publication Newsrack Box door functionality problem that is not within the category of Sections 5.6(a), 5.6(b) or 5.6(c) below. For example, if Contractor encounters a Paid Publication Newsrack Box with a door that will not latch closed, the Contractor will make sure that the flange-like hook of the door fits into the door latch slot of the cabinet. If the hook fits in the slot, but the coin mechanism simply will not grab the hook then that is the Permit Holder's repair responsibility.

    (b)     Notwithstanding the foregoing, Contractor shall provide the labor and replacement parts identified in subsection (a) of this Section (except for replacement keys which shall be controlled by Section 5.13), pursuant to the terms of Section 5.5 herein, if a Paid Publisher has made a timely written request to both City and Contractor according the following schedule:

17

(i)  For a Paid Publisher that was a litigant in the Action, the written request is timely if received within fifteen (15) days after the Settlement Agreement Effective Date.

(ii)  For a Paid Publisher that was not a litigant in the Action, the written request is timely if received no later than the date the Paid Publisher applies to the City for its first Fixed Pedestal Permit.

(c)  Subject to the provisions of Section 5.7, City and Contractor agree that a Paid Publisher that initially opted to have Contractor provide the labor and replacement parts described at subsection (a) of this Section may upon reasonable written notice to City and Contractor subsequently opt to provide such labor and replacement parts itself at its sole cost.

5.4  **Substitute Parts.**  Where Section 5.3(b) has not been triggered, Contractor agrees that a Paid Publisher may substitute, at its sole cost, any of the Contractor-installed Coin Charging/Security Parts with the Paid Publisher's own parts so long as: (a) said Contractor-installed parts are returned to Contractor, who will sign a document acknowledging receipt; (b) the Paid Publisher-installed parts are compatible with the mechanism housing of the then-current Contractor-supplied Newsrack Box (so that the mechanism is in line with the face plate); and (c) City causes the Paid Publisher to remove any substitute Paid Publisher-installed parts as requested by Contractor.

5.5  **Standard Pace of Repair and Replacement.**

(a)  Except as provided herein, upon observing or receiving notification of any damage, vandalism, or graffiti in, or on any Fixed Pedestal Unit, Contractor shall use its best efforts to repair or replace said damage, vandalism, or graffiti, within twenty-four (24) Business Day hours of such observation or receipt of notification during its normal hours of operation, but in no event later than ten (10) Business Days from written notification of Director.

(b)  If a Fixed Pedestal Unit is destroyed, Contractor shall within twenty-four (24) hours secure or remove the remains of the Fixed Pedestal Unit and shall thereafter replace it at that site within ten (10) Business Days from written notification of Director, subject to the Contractor-initiated relocation provisions of Section 3.6. In conjunction with such removal, to the extent Contractor damages the sidewalk or curb area in removing the Fixed Pedestal Unit, Contractor shall, at its own expense, repair the damage it has caused.

5.6  **Special Pace for Repair of Contractor Responsibility Door Problems.**  In addition to its other responsibilities, Contractor is responsible for remedying, on the unique schedule set forth at subsection (d) below, the following:

(a)  Any failure of a Newsrack Box door to properly open or close (such as a bent or crooked door) so long as the investigation or repair does not require access to or repair of the Coin Charging/Security Parts or access behind the coin mechanism panel. Thus, for example, if Contractor encounters a Paid Publication Newsrack

18



Box with a door that will not latch closed, Contractor will make sure that the flange-like hook of the door fits into the door latch slot of the cabinet. If the hook fits in the slot, but the coin mechanism simply will not grab the hook then that is the Permit Holder's repair responsibility.

(b)    Any broken Newsrack Box window; and

(c)    Any Newsrack Box window that is substantially obscured.

(d)    Subject to the provisions of Section 5.7, upon receiving notice from any source during its normal hours of operation, Contractor will within twenty-four (24) Business Day hours repair any problem that is limited to Contractor's responsibilities under subsections (a), (b) or (c) of this Section.

5.7    **Potentially Reimbursable Permit Holder Self Help For Contractor Responsibility Door Problem.**

(a)    **Business Days (by 10:00 a.m.).** If during its normal hours of operation Contractor learns, from any source by 10 a.m. on any Business Day, of a problem that is exclusively a subsection 5.6(a), 5.6(b), or 5.6(c) problem, Contractor shall notify City and the affected Permit Holder of the problem reasonably promptly. Contractor then has until 10 a.m. on the next Business Day ("Cure Day") to fix the problem. By 10 a.m. on the Cure Day, Contractor shall notify City and the affected Permit Holder as to whether or not it has fixed the problem, and if the repair has not occurred provide an estimated timetable for its completion. If Contractor has not fixed it, City shall, by 6 p.m. on the Cure Day, investigate and view the situation, and notify the affected Permit Holder and Contractor in writing by that time: that the Permit Holder may fix the problem and bill Contractor for the Permit Holder's reasonable repair expense, or why there should be no reimbursement from Contractor, either because the problem was not exclusively within the scope of subsection 5.6(a), 5.6(b), or 5.6(c), falls within the scope of Section 5.8, or because Contractor is in the process of responding appropriately under the circumstances.

(b)    **Business Days (after 10:00 a.m.).** If during its normal hours of operations Contractor learns, from any source after 10 a.m. on any Business Day, of a problem that is exclusively a 5.6(a), 5.6(b), or 5.6(c) problem, Contractor shall notify the City and the affected Permit Holder of the problem reasonably promptly. Contractor then has 24 Business Day hours to fix the problem. At the end of that 24 hours, Contractor shall notify City and the affected Publisher as to whether or not it has fixed the problem, and if the repair has not occurred provide an estimated timetable for its completion. If Contractor has not fixed it, City shall, within 24 Business Day hours, investigate and view the situation and notify the affected Permit Holder and Contractor in writing by that time: that the Permit Holder may fix the problem and bill Contractor for the Permit Holder's reasonable repair expense, or why there should be no reimbursement from Contractor, either because the problem was not exclusively within the scope of

19

subsection 5.6(a), 5.6(b), or 5.6(c), falls within the scope of Section 5.8, or because Contractor is in the process of responding appropriately under the circumstances.

(c)    <u>Non-Business Days</u>. If a Permit Holder experiences a major circulation problem caused by a subsection 5.6(a) and/or 5.6(b) condition that occurs or persists on a day that is not a Business Day, the Permit Holder may, on that non-Business Day, repair the subsection 5.6(a) and/or 5.6(b) condition and bill Contractor for the Permit Holder's reasonable repair expense only if the problem does not fall within the scope of Section 5.8, and all of the following conditions are met:

  (i)    prior to undertaking the repairs on that non-Business Day, the Permit Holder gives Contractor warning of the location(s) and the problem(s) through a prearranged Contractor-provided non-Business Day emergency contact method; and

  (ii)    within two Business Days following the non-Business Day in question the Permit Holder provides City and Contractor with sufficient documentary proof, which shall include pictures and/or videotape, depicting the location(s), problem(s) and repair(s) in question, that puts them in a position comparable to having viewed the locations, problems, and repairs during the non-Business Day; and

  (iii)    within two Business Days following receipt of the proof described at subsection 5.7(c)(ii), City investigates the alleged problem and views the now repaired locations in question; and

  (iv)    the City notifies the Permit Holder and Contractor in writing that the situation was exclusively covered by subsection 5.6(a) and/or 5.6(b) and satisfies this subsection 5.7(c). In determining whether a major circulation problem in fact occurred or persisted on the non-Business Day, City shall base its decision on the number of actually affected Newsrack Boxes relative to the Permit Holder's estimated total number of Newsrack Boxes in the City, the number of actually affected Newsrack Boxes relative to the number of Newsrack Boxes the Permit Holder has in the Fixed Pedestal Zone(s) in question, and the location or locations affected.

(d)    Without limiting Contractor's non-administrative rights, City's Newsrack Program Manager or said manager's designee shall be the final City administrative decision-maker in respect of all issues decided by City under Section 5.7.

5.8    <u>Exceptions to Special Pace and Potential Reimbursement Scenarios</u>. Notwithstanding anything else herein, neither Section 5.6 nor Section 5.7 shall apply if a problem defined under Section 5.6(a), 5.6(b) or 5.6(c) exists along with other damage to a Fixed Pedestal Unit such that Contractor may wish to replace rather than repair the Newsrack Box. However, a Permit Holder may exercise self help under Section 5.9.

20



5.9 **Permit Holder Self Help For Vendor Responsibility Door Problem Without The Potential For Reimbursement**. On any non-Business Day a Permit Holder may at its sole expense and without recourse against Contractor or City exercise self help to repair any problem defined under Section 5.6(a), 5.6(b), or 5.6(c) if the Permit Holder performs the repair using Contractor's approved parts, cleaning products and methods. Nothing in this Agreement shall in any way deprive Contractor of any right or remedy relative to damage caused by a Permit Holder to Contractor's property.

5.10 **City's Remedies**.

    (a)    In addition to its other remedies hereunder, if Contractor does not conduct repairs as proscribed herein, City shall be entitled, upon forty eight (48) hours prior written notice to Contractor (or such shorter notice as may be feasible in an emergency), to make the repairs and to bill Contractor for the work performed. If Contractor fails to reimburse City within fifteen (15) Business Days of delivery of such bill, City may recover any and all costs incurred from Contractor as provided in Section 8.6.

    (b)    If any Fixed Pedestal Unit or Newsrack Box requires repair such that it is out of operation for more than ten (10) Business Days from written notification of Director, or if any Fixed Pedestal Unit or Newsrack Box is destroyed and has not been replaced within ten (10) Business Days from notification by Director, subject to extension for force majeure, then Contractor shall pay to City the sum of one hundred dollars ($100) per day for every day that such Fixed Pedestal Unit or Newsrack Box is out of operation or has not been replaced beyond said ten (10) day period.

5.11 **Vandalism of Fixed Pedestal Units**. Nothing in this Agreement shall be construed to impose on City any responsibility or liability for costs incurred by Contractor on account of Vandalism, which shall mean the willful or malicious damage or destruction of a Fixed Pedestal Unit or any part thereof caused by a party other than Contractor or City but shall exclude ordinary wear and tear and any damage caused during riots and other civil disturbances.

5.12 **Data Reports and Notices**. Contractor shall develop a log system for recording all inspections and maintenance work performed on each Fixed Pedestal Unit and Newsrack Box.

    (a)    Maintenance Reports. Contractor shall maintain for the current calendar quarter records regarding the maintenance of each Fixed Pedestal Unit and make available to City a monthly report describing all maintenance in a form reasonably acceptable to City no later than the tenth Business Day of the month following the month for which the report is made.

    (b)    Complaint Log. Contractor shall maintain for the current calendar quarter and make available to City a written complaint log in a format acceptable to City. The purpose of this log will be to record complaints and/or incidents that occur with

21



respect to the Fixed Pedestal Units. In addition to the date, time, location, etc., the log shall include disposition and final resolution of the complaint. This information shall be made available to City on a monthly basis no later than the tenth Business Day following the month for which the log is made.

(c)    Permit Holder Access. The reports provided to City under subsections (a) and (b) above shall be made available to Permit Holders for the respective Newsrack Boxes their publications occupy no later than the tenth Business Day following the month for which the report is made.

5.13    Keys. Contractor will furnish one set of keys to each Paid Publisher. Thereafter, each Paid Publisher is responsible for procuring at its expense its own replacement or additional keys. In order to perform its work described herein, Contractor needs and shall have keys to the Newsrack Boxes except keys to the coin tray. Contractor shall keep all keys secured. If a coin mechanism needs to be removed from a Newsrack Box because, for example, the Newsrack Box is crushed, City will cause the affected Paid Publisher to cooperate with Contractor to use the key to the coin tray to allow for the timely removal of the mechanism. If a Paid Publisher changes the original keying of its Newsrack Boxes, City will cause the Paid Publisher to provide Contractor with the capacity to buy the new keys (except for keys to the coin tray) from the supplier of the keys at Contractor's expense.

5.14    Face Plates. Contractor is responsible for the installation, repair and replacement if defaced of: all Newsrack Box face plates, and in the case of split free Newsrack Boxes which do not have faces plates, the area on such Newsrack Boxes designated for face plate information. Upon no less than ninety (90) days' written notice from the Permit Holder to City and Contractor, Contractor will make changes to a Permit Holder's Face Plate due to the change of the price of a Paid Publication. However, Contractor is not responsible for any changes to, replacement of, or resetting of a mechanism or any other parts necessary to effect a change in the sale price of a Paid Publication. Contractor shall be required to change non-price face plate content on a face plate or the designated area for a split free Newsrack Box for a given Permit Holder or publication no more than once per twelve (12) month period, and in no event shall be required to make any such change until the City pays or causes the Permit Holder or publication in question to pay to Contractor an amount representing Contractor's reasonable estimate, in the light of the intent to cover all of Contractor's costs, as to all the expenses whatsoever associated with doing so, after Contractor has notified City of that amount. In construing the foregoing, under no circumstances shall Contractor be required to incur any uncompensated for expense, except: (i) to the extent the displayed information is damaged by Contractor, its employees, agents or contractors; or (ii) in connection with preparation of a given Newsrack Box for a new occupant where a Permit Holder who had occupied that Newsrack Box loses or surrenders the right to distribute from that Newsrack Box.

## ARTICLE VI – ADVERTISING

6.1    License to Sell and Display Advertising on the Back Side of Fixed Pedestal Units.

22

5551693v11

(a)     In consideration for the installation, operation and maintenance of the Fixed Pedestal Units according to the terms and conditions of this Agreement, City hereby grants to Contractor the exclusive right, as further defined herein and subject to all of the terms and conditions of this Agreement, to place and offer for sale advertising on Fixed Pedestal Units in the City and County of San Francisco. Notwithstanding the foregoing, advertising may be displayed by Contractor only on up to four hundred eighty-five (485) Fixed Pedestal Units in the Advertising Zone or some lesser number as determined by Contractor, configured to dispense no less than six (6) publications each and such advertising shall not detract from the aesthetics of the Fixed Pedestal Units. Display of advertising shall be subject to the applicable zoning regulations for property adjacent to the Fixed Pedestal Unit site. The advertising shall be located only on the back sides of Fixed Pedestal Units and only in the Advertising Zone and shall conform with the Plans and Specifications. Any of said advertising may be backlit or illuminated at Contractor's option.

(b)     So long as there are no more than four hundred eighty-five (485) advertising panels displayed at one time, Contractor may, as its discretion, display advertising on the back of any Fixed Pedestal Unit in the Advertising Zone, and may change, at its discretion, which Fixed Pedestal Units within the Advertising Zone bear advertising. However, Contractor shall provide City with written notice in advance of any such change and supply City with a current list of those Fixed Pedestal Units that bear advertising.

(c)     City hereby grants to Contractor, and represents and warrants that Contractor shall have, during the term of this Agreement, the exclusive right to install, operate and maintain Fixed Pedestal Units in the City and County of San Francisco during the term of this Agreement. Contractor shall also have the exclusive right to display advertising on such Fixed Pedestal Units. City shall not authorize any other party to advertise on Fixed Pedestal Units during the term of this Agreement.

(d)     Contractor, its affiliates, employees or approved subcontractors, may sell or donate advertising space on the Fixed Pedestal Units for commercial advertising or public service advertising. Contractor may also display on the Fixed Pedestal Units its own advertisements and those of its affiliates.

6.2     **Size of Advertising**. An advertising panel frame placed on the back side of a Fixed Pedestal Unit may be of any dimension so long as it complies with the other restrictions of this Agreement and the viewable copy area inside the frame is less than 18 square feet. No portion of the advertising panel shall extend above the top edge of the Fixed Pedestal Unit.

6.3     **Advertising Disclaimer**. Each Fixed Pedestal Unit bearing an advertisement shall have a disclaimer centered below such advertisement that states in typeface at least one inch high: "ADVERTISING ON THIS NEWSRACK IS NOT CONTROLLED BY, AND MAY NOT REFLECT THE VIEWS OF, ANY PUBLICATION DISTRIBUTED

23

WITHIN." Said disclaimer shall be in white reflective lettering against a black background.

6.4 **Design Considerations and Use of Materials.** It is the intent of both City and Contractor to provide an advertising program which is effective and aesthetically pleasing to residents and visitors of San Francisco and which will be beneficial to both parties. The parties accordingly agree to maintain throughout the term of this Agreement a continual liaison and exchange of plans and information to assure successful implementation of this Agreement.

6.5 **Advertising Material.** Contractor is expected at all times to use good judgment in accepting any material for advertising on Fixed Pedestal Units. Contractor agrees to remove promptly, upon written demand by the Director of Public Works, or, with respect to advertising displays on Port Property, upon written demand by the Port Director, any advertisement deemed to be objectionable, on stated grounds which shall be reasonable and lawful.

6.6 **Tobacco Advertising Prohibited.** No advertising of cigarettes or tobacco products, including the display of the name of any company producing, selling or distributing cigarettes or tobacco products or the name of any cigarette or tobacco product in any promotion of any event or product, shall be displayed on any Fixed Pedestal Unit installed under this Agreement. This prohibition shall not apply to any advertisement sponsored by a state, local or non-profit entity, which advertisement is designed to communicate the health hazards of cigarettes or tobacco products or to encourage people not to smoke or to stop smoking.

## ARTICLE VII – ACCESSIBILITY REQUIREMENTS

7.1 **Accessibility.** The design of all Fixed Pedestal Units and Newsrack Boxes shall comply with all applicable federal, state and local law and regulation or barrier-free design, including but not limited to the, applicable provisions of the Uniform Fair Accessibility Standards (UFAS); the Americans with Disabilities Act, (ADA) (42 U.S.C. Section 12101 et seq.); the Americans with Disabilities Act Accessibility Guidelines (See 28 CFR, Part 36); Title 24 of the California Code of Regulations, Part 2; the California State Accessibility Standards Interpretive Manuals; and all other applicable federal, state and local regulations. In the event of conflict between applicable laws and regulations, the more restrictive shall apply.

7.2 **Path of Travel.** Fixed Pedestal Units shall not obstruct the path of travel for persons with disabilities. Contractor shall comply with the clearance requirements in Director's Orders incorporated l - .in by reference.

7.3 **Approved Cleaning Products.** In cleaning installed Fixed Pedestal Units, Contractor shall only use cleaning products that meet all applicable laws and regulations pertaining to accommodation of chemical sensitivities.

‹551603v¹¹