# EXHIBIT A - 7

 **Municipal Transportation Agency**      

# EXHIBIT I

**City and County of San Francisco**



Gavin Newsom, Mayor
Fred V. Abadi, Ph.D., Director



Phone: (415) 554-6920
Fax: (415) 554-6944
TDD: (415) 554-6900
http://www.sfdpw.com

Department of Public Works
Office of the Director
City Hall, Room 348
1 Dr. Carlton B. Goodlett Place
San Francisco, CA 94102-4645

# CITY AND COUNTY OF SAN FRANCISCO
## DEPARTMENT OF PUBLIC WORKS

### ORDER NO. 177,160

The Director of Public Works will hold a Public Hearing on Wednesday, October 10, 2007 commencing at 9:00 a.m. in Room 400 of City Hall, located at 1 Dr. Carlton B. Goodlett Place, to consider the adoption of permitting and approval procedures related to the placement of transit shelters and advertising kiosks on the sidewalk.

Persons unable to attend the public hearing may submit written comments regarding the subject matter to the Bureau of Street-Use & Mapping, 875 Stevenson Street, Room 460, San Francisco, CA 94103, Attention: Dan McKenna. These comments will be brought to the attention of the hearing officer and made a part of the official public record.

Further information, if desired, on this matter may be obtained prior to the hearing at 875 Stevenson Street, Room 410, or by phoning Mr. McKenna at (415) 554-5520.

RECOMMENDED:                                APPROVED:


Barbara Moy, Manager                        Fred V. Abadi, Ph.D.
Bureau of St-Use & Mapping                  Director of Public Works


Approved: September 26, 2007

Distribution
Return to B.S.M. - D. McKenna, Room 410, 875 Stevenson St., (1-signed)
Outside of B.S.M.
Dept. Files (2)
Sonali Bose
Bill Sanders

APPROVED: September 19, 2007
Fred V. Abadi, Ph.D. DIRECTOR
J:\Newsracks\AmmendOrder_ChainBan\177,147HearingNotice_091907.doc

"IMPROVING THE QUALITY OF LIFE IN SAN FRANCISCO" We are dedicated individuals committed to teamwork, customer service and continuous improvement in partnership with the community.
Customer Service            Teamwork            Continuous Improvement

# CITY AND COUNTY OF SAN FRANCISCO
# DEPARTMENT OF PUBLIC WORKS
# AMENDED ORDER NO. 177,159

REGULATIONS FOR ISSUING PERMITS TO INSTALL TRANSIT SHELTERS,
SIGNAL CONTROL COVERS AND KIOSKS IN THE PUBLIC RIGHTS-OF-WAY

I.    PURPOSE

    A.    The City, through the SFMTA and the Port of San Francisco, has
entered into an agreement that authorizes the Contractor to construct
Transit Shelters, Signal Control Covers and Kiosks in the Public Rights-
of-Way.  The construction of these types of structures would normally
require an excavation permit from the Department under Article 2.4 of
the Public Works Code.

    B.    The Department wishes to ensure that the installation of such structures
in the Public Rights-of-Way will not impede travel, inconvenience
property owners, unnecessarily interfere with views or create visual
blight.  The Department also wishes to assist the SFMTA by ensuring
convenience and support for transit passengers and providing aesthetic
covers to mask the SFMTA's existing signal control equipment.

    C.    In order to address these concerns, rather than requiring Contractor to
obtain excavation permits, the Department is adopting this Order to
establish rules and regulations for Contractor to obtain Permits to install
Transit Shelters, Signal Control Covers, and Kiosks.

II.    DEFINITIONS

    For purposes of this Order, the following terms, phrases, words,
abbreviations, and other similar terms, when capitalized, shall have the meanings
given herein:

    A.    "Advertising" means information displayed on SFMTA Transit Shelters,
Kiosks, Signal Control Covers that is commercial in nature.
"Advertising" shall not include information displayed on SFMTA Transit
Shelters, Signal Control Covers, or Kiosks such as City maps or other
information of local interest, public service announcements, public art
displays, and transit information (routes, schedules, fares, etc.).

    B.    "Agreement" means the agreement between the City and Contractor to
install and maintain Transit Shelters, Kiosks, Signal Control Covers, and
other Structures, including Structures with advertising, in the Public
Rights-of-Way and other public places.

    C.    "Applicable Law" means all applicable federal, state, and City laws,
ordinances, codes, rules, regulations, orders, standard plans and
specifications, as the same may be amended or adopted from time to

time. Where applicable, "Applicable Law" also means the requirements contained in any agreement between the City and Contractor.

D.    "Business Day" means any Monday through Friday that is not observed as an official holiday by the City.

E.    "City" means the City and County of San Francisco.

F.    "Completion Date" means a date set forth in a Permit to complete the construction permitted therein. Unless otherwise stated in the Permit, the Completion Date will be thirty (30) Days after the Start Date.

G.    "Contractor" means any entity under contract with the SFMTA to provide, construct and maintain Transit Shelters, Signal Control Covers and Kiosks in the Public Rights-of-Way.

H.    "Day" means any calendar day. For the purposes hereof, the time in which an act is to be performed shall be computed by excluding the first Day and including the last. For the purposes hereof, if the time in which an act is to be performed falls on a Saturday, Sunday, or any Day observed as an official holiday by the City, the time for performance shall be extended to the following Business Day.

I.    "Department" means the Department of Public Works.

J.    "Director" means the Director of the Department or his or her designee.

K.    "Kiosk" means a free-standing structure that will be constructed in the Public Rights-of-Way by Contractor pursuant to the Agreement that may or may not display advertising. A Kiosk that displays advertising will be referred to as an "Advertising Kiosk."

L.    "Order" means these Regulations for Issuing Permits for Transit Shelters, Signal Control Covers and Kiosks in the Public Rights-of-Way.

M.    "Permit" means a permit issued under this Order as it has been approved, amended, or renewed by the Department.

N.    "Placement Guidelines" means the guidelines set forth in Section XI.B of this Order.

O.    "Public Rights-of-Way" means the area in, on, upon, above, beneath, within, along, across, under, and over the public streets, sidewalks, roads, lanes, courts, ways, alleys, spaces, and boulevards within the geographic area of the City in which the City now or hereafter holds any property interest, which is dedicated to public use.

P.    "SFMTA" means the San Francisco Municipal Transportation Agency.

Q.    "Signal Control Cover" means a structure to cover signal control equipment owned by SFMTA that may or may not display advertising. A Signal Control Cover that displays advertising will be referred to as an "Advertising Signal Control Cover."

R.    "Start Date" means a date set forth in a Permit to commence the construction permitted therein. Unless otherwise stated in the Permit, the Start Date will be one hundred and eighty (180) Days after the approval of a Permit application.

S.    "Transit Shelter" means a structure for use by transit passengers of the SFMTA that may or may not display advertising. A Transit Shelter that displays advertising will be referred to as an Advertising Transit Shelter.

III.    PERMIT REQUIRED

Contractor shall apply for and obtain a Permit before installing a Transit Shelter, Signal Control Cover or Kiosk in the Public Rights-of-Way.

IV.    PERMIT NOT REQUIRED

No Permit shall be required for Contractor to replace existing sign poles or install new sign poles at transit stops.

V.    APPLICATION PROCESS

A.    An application for a Permit to install a Transit Shelter, Signal Control Cover or Kiosk shall be submitted to the Department.

B.    An application for a Permit to install a Transit Shelter, Signal Control Cover or Kiosk shall include:

1.    An application in the form to be provided by the Department, which shall contain the following information:

(a)    Type of structure (include specification if not on file with the Department);
(b)    Identification of proposed location of the structure;
(c)    Recommendation by SFMTA as to location;
(d)    Name, address, telephone number, facsimile number and electronic-mail address for Contractor's contact person; and
(e)    Proposed Start and Completion Dates.

2.   A location drawing of the structure in a twenty feet (20') to one inch (1") scale (20:1 scale) showing each of the following:

    (a)  Street name;
    (b)  Names of cross streets;
    (c)  Face of curb;
    (d)  Property lines;
    (e)  Distance from the face of the curb to face of the structure;
    (f)  Distance from face of the curb to the property lines;
    (g)  Distance from face of the curb to back of the structure;
    (h)  Locations and dimensions of existing above-ground street furniture (utility poles, bus shelters, fire hydrants, garbage receptacles, parking meters, etc) and distance from the proposed location of the structure;
    (i)  Locations and dimensions of existing underground utility facilities (vaults, manholes, handholds, meters, etc.); and distance from the proposed location of the structure;
    (j)  Distance from nearest cross street to the structure;
    (k)  Identification of the structure type and dimensions;
    (l)  Color of the structure;
    (m)  The proposed electrical service connections and foundation details (stamped and signed by an engineer registered with the State of California); and
    (n)  If applicable, the footprint of any existing Transit Shelter or Kiosk that is being replaced.

3.   Photo-simulations of the structure in the proposed location showing each of the following:

    (a)  Front view of the structure;
    (b)  Side view of the structure; and
    (c)  View of the structure in relation to the nearest building or other structure.

4.   If the application is for a Permit for a Transit Shelter or Kiosk, a statement, if applicable, that a hearing is not required because the proposed Transit Shelter or Kiosk: (a) is replacing an existing Transit Shelter or Kiosk; and (b) the location of the proposed Transit Shelter or Kiosk complies with the requirements of Section VI.D.

5.   A statement whether Contractor is seeking a waiver of any of the Placement Guidelines, and if so, the applicable Placement Guidelines.

6.   A proposed notice for mailing and posting if notice is required under Sections VI or XI.C of this Order.

C.   The Department will process an application for a Permit to install a Transit Shelter, Signal Control Cover or Kiosk in the manner set forth below and as shown in Exhibit A attached hereto and incorporated herein by this reference:

1.   If Contractor is not seeking a waiver of any of the Placement Guidelines, the Department will notify Contractor within three (3) Business Days after receipt of a Permit application whether the application complies with the Placement Guidelines.

2.   If the application does not comply with the Placement Guidelines, the Department will return the application to Contractor along with a written statement identifying any deficiencies in the application. Contractor may fix the application and resubmit it at any time or may request an exception to the Placement Guidelines under Section XI.C of this Order.

3.   If the Department notifies Contractor that a Permit application meets the Placement Guidelines, the Department will approve the Permit if no public notice is required under Sections VI.D, VI.E or VI.F of this Order. In all other instances, Contractor will notify the public of the application as required in Sections VI.A or VI.B of this Order.

4.   If Contractor is seeking a waiver of the Placement Guidelines, the Department will require Contractor to notify the public of the application as required in Section XI.C of this Order.

VI.   PUBLIC NOTICE REQUIREMENTS

A.   If Contractor is filing an application for a Permit to install a Transit Shelter, Contractor shall post the notice of the application in conspicuous places within a one hundred foot (100') radius of the proposed location of the Transit Shelter and send the notice to:

1.   Fronting business and property owners.

2.   The Department and the SFMTA.

B.   If Contractor is filing an application for a Permit to install a Signal Control Cover or a Kiosk, Contractor shall post the notice of the application in conspicuous places within a one hundred foot (100') radius of the proposed location of the facility and send the notice to:

1.  All persons owning or occupying property within a one hundred and fifty foot (150') radius of the proposed location of the Signal Control Cover or Kiosk.

2.  Any neighborhood association identified by the Department of City Planning for any neighborhood within a one hundred and fifty foot (150') of radius of the proposed location of the Signal Control Cover or Kiosk.

3.  The Department and the SFMTA.

C.  The notice shall be in a form to be approved by the Department. At a minimum, the notice shall contain all of the following information:

1.  A short statement describing the Transit Shelter, Signal Control Cover or Kiosk that is the subject of the Permit application.

2.  A photo-simulation of the Transit Shelter, Signal Control Cover or Kiosk that is the subject of the Permit application in the proposed location.

3.  A statement that a protest must be filed within twenty (20) Days of the date of the mailing/posting of the notice.

4.  Instructions for filing protests with the Department.

5.  The name, address, telephone number and electronic mail address of the Contractor's contact person.

6.  The name, address, telephone number and electronic mail address of the Department's contact person.

7.  The name, address, telephone number and electronic mail address of the SFMTA's contact person.

D.  The public notice and hearing requirements of this Section shall not apply to an application for a Permit to install a Transit Shelter or Kiosk if the proposed Transit Shelter or Kiosk will replace an existing Transit Shelter or Kiosk, provided that:

1.  The new Transit Shelter or Kiosk will be placed on the same foundation as the existing structure (or on a new foundation within the same concrete flags as the existing structure); or

2. The new Transit Shelter or Kiosk is being placed in a different location because the location of the existing Transit Shelter or Kiosk does not fully comply with Applicable Law; and

3. The proposed location of the new Transit Shelter of Kiosk complies with the Placement Guidelines.

E. The public notice and hearing requirements of this Section shall not apply to an application for a Permit to install a Transit Shelter provided that:

1. All of the property within a one hundred foot (100') radius of the proposed location of the Transit Shelter is owned by the City; or

2. The Transit Shelter is being installed at the request of a person or persons owning all of the property that is within a one hundred foot (100') radius of the proposed location of the Transit Shelter.

F. The public notice and hearing requirements of this Section shall not apply to an application for a Permit to install a Signal Control Cover provided that:

1. The proposed Signal Control Cover will not increase the footprint of the existing signal control equipment beyond the concrete flags in which the equipment has been installed;

2. The proposed Signal Control Cover is not an Advertising Signal Control Cover; and

3. The proposed location of the Signal Control Cover complies with the Placement Guidelines.

VII. DEPARTMENT HEARING

A. A protest will be timely if made by telephone electronic mail, or postmarked within twenty (20) Days of the date of the mailing or posting of the notice. Within three (3) Business Days of the Department's receipt of a protest, the Department shall notify the Contractor and SFMTA by electronic mail of such protest.

B. If a protest is made, the Director will issue a notice scheduling a hearing for a date that is no later than twenty (20) Days after the date the protest was required to have been made.

C. The hearing will be conducted in accordance with the following procedures:

1.  The Director will appoint an impartial hearing officer to conduct the hearing. The hearing officer will be experienced in conducting proceedings of this kind.

2.  The hearing officer shall take evidence and testimony from the Department, SFMTA, Contractor, and any persons objecting to or supporting the application. If the hearing concerns an application for a Permit to install a Transit Shelter, the hearing officer shall give great weight to the testimony of the SFMTA concerning how the proposed Transit Shelter affects the convenience and necessities of transit riders.

3.  Within ten (10) Days after the hearing, the hearing officer will issue a report to the Director. In the report, the hearing officer will summarize the evidence and testimony and recommend that the Director either approve or deny the application. The hearing officer may also recommend changes to the location or installation of the structure as a condition of approval of the application. The Director may adopt, modify, or reject the hearing officer's recommendation.

4.  The Department will send a copy of the hearing officer's report to the SFMTA, the Contractor and any person who participated in the hearing.

D.  The hearing officer will base his or her recommendation, and the Director will base his or her determination, upon the following matters only:

1.  Whether the proposed structure will unreasonably affect the convenience and necessities of the property owners and occupants in the immediate vicinity of the structure. With respect to Transit Shelters, the hearing officer shall consider whether the convenience and necessities of transit riders outweigh any inconvenience to property owners and occupants in the immediate vicinity of the structure.

2.  Whether Contractor could make any reasonable changes to the location or installation of the Transit Shelter, Signal Control Cover or Kiosk within the same frontage of the given address of the proposed location such that it will have less of an impact on the convenience and necessities of the property owners and occupants in the immediate vicinity of the structure.

3.  With respect to Transit Shelters or Kiosks, whether Contractor could install the structure in other acceptable locations consistent

with the Placement Guidelines that are preferable to the proposed location because use of such other acceptable locations will have less of an impact on the convenience and necessities of the property owners and occupants in the immediate vicinity of the structure.

E.    Within ten (10) Days after receipt of the hearing officer's recommendation, the Director will issue a final report in writing. The Director's final report shall include a determination whether the Director has approved or denied the application, or whether the Director will require Contractor to make reasonable changes to the location or installation of the structure as a condition of approval of the application. The Department will send a copy of the Director's final report to the SFMTA, the Contractor and any person who participated in the hearing.

VIII.    ISSUANCE AND DURATION OF PERMIT

A.    The Department shall issue a Permit to install a Transit Shelter, Signal Control Cover or Kiosk:

1.    Within five (5) Business Days of the filing of the application that complies with the Placement Guidelines contained in Section XI of this Order, if no notice is required under Sections VI.A or VI.B of this Order.

2.    Within three (3) Business Days of the end of the twenty (20) Day notice and posting period if no protest has been made.

3.    Within three (3) Business Days of the Director's decision to approve the application issued under Section VII.E.

4.    Notwithstanding the requirements of Sections VIII.A.1 and VIII.A.2, in no event shall the Department be required to process more than ten (10) applications submitted by Contractor for Permits to construct Transit Shelters, Signal Control Covers, or Kiosks in any five (5) Business Days.

B.    Every Permit shall contain a Start Date and Completion Date. The Permit shall be void if Contractor does not begin construction by the Start Date and/or complete construction by the Completion Date. On written request from Contractor, the Director may extend the Start and/or Completion Dates. Such a written request must be made at least five (5) Business Days prior to the expiration of the applicable date and must explain why the work could not be started or completed by the Start and/or Completion Dates set forth in the Permit and specify the proposed new Start and/or Completion Dates. Any extension granted

by the Director may be subject to additional special conditions, including, but not limited to, conditions that ensure the timely start and completion of construction. The Director shall inform the Contractor and SFMTA of his or her decision to grant or deny a request for an extension within five (5) Business Days of the request.

C.   If Contractor fails to obtain a Permit extension under Section VIII.B and instead allows a Permit to lapse, Contractor must file an application for a new Permit and follow all of the applicable requirements of this Order.

IX.     APPEAL OF PERMIT APPROVAL OR DENIAL

The Department's approval or denial of any Permit under this Order may be appealed to the Board of Permit Appeals pursuant to Section 4.106(b) of the City's Charter.

X.     APPLICATION FEE AND REMITTANCE

A.   The fee for an application for Permit to install a Transit Shelter or Kiosk in a new location or a Signal Control Cover shall be three hundred and fifty dollars ($350.00).

B.   The fee for an application for a Permit to install a new Transit Shelter or Kiosk in the same location as an existing Transit Shelter or Kiosk shall be one hundred dollars ($100.00). However, if public notice is required because the exceptions contained in Sections VI.D, VI.E or VI.F are inapplicable, or if Inspections or related work is required for Permit review, then the regular fee of three hundred and fifty dollars ($350.00) will be required.

C.   Contractor shall remit the application fee to the Department along with the application.

XI.     PLACEMENT GUIDELINES

A.   The Department will not issue a Permit for a Transit Shelter, Signal Control Cover or Kiosk if the proposed location of the facility does not conform to all Applicable Law, including all applicable State, Federal and Local accessibility codes and regulations.

B.   Except as otherwise stated, the following Placement Guidelines shall apply to any location chosen for a Transit Shelter, Signal Control Cover or Kiosk:

1.   A Transit Shelter, Signal Control Cover or Kiosk shall not obstruct pedestrians. A minimum of four feet (4') of pedestrian clearance

(free of all obstacles for a clear path of travel, unobstructed pedestrian walkway) shall be maintained at all times.

2.    A Transit Shelter, Signal Control Cover or Kiosk shall not intrude on pedestrian "clear zones" at street corners.

3.    A Transit Shelter, Signal Control Cover or Kiosk shall be set back a minimum of five feet (5') from the edge of a crosswalk.

4.    A Transit Shelter, Signal Control Cover or Kiosk shall be set back a minimum of eighteen inches (18") from the face of the curb.

5.    A Transit Shelter, Signal Control Cover or Kiosk shall be set back a minimum of eight feet (8') from any fire escape and/or fire exit.

6.    A Transit Shelter, Signal Control Cover or Kiosk shall be set back a minimum of five feet (5') from any fire hydrant, driveway, curb ramp, or blue zone parking space.

7.    A Transit Shelter, Signal Control Cover or Kiosk shall be set back a minimum of forty inches (40") from any other above-ground structure not otherwise specified herein including, but not limited to, street light poles, parking meters, trees, etc.

8.    A Signal Control Cover that displays advertising or an Advertising Kiosk shall be set back a minimum of sixty feet (60') from a Transit Shelter.

9.    An Advertising Transit Shelter, Advertising Signal Control Cover or Advertising Kiosk shall be set back a minimum of five feet (5') from any certified street artist's designated area per list to be provided by the Department.

10.   An Advertising Transit Shelter, Advertising Signal Control Cover or Advertising Kiosk shall be set back a minimum of sixty feet (60') from any public art work under the jurisdiction of the Arts Commission of San Francisco, except for public art on kiosks, per the San Francisco Civic Art Collection published by the Arts Commission of San Francisco, unless otherwise authorized by the Arts Commission, or its designee.

11.   A Transit Shelter, Signal Control Cover or Kiosk shall not be placed over any storm drain or utility facility, except that Signal Control Covers may be placed over signal control equipment.

12. A Transit Shelter, Signal Control Cover or Kiosk shall not obstruct the view by the public of any traffic sign, wayfinding sign, traffic signal, or informational structure.

13. Advertising Kiosks shall be placed at least one hundred fifty feet (150') apart on any block face on Market Street.

14. Advertising Kiosks shall be placed at random, rather than in a fixed, predictable pattern.

C. Contractor may request waiver of the Placement Guidelines. Such a request will be considered at a hearing to be conducted by the Department in accordance with Section VII of this Order. The Department may issue the Permit if the Department finds after the hearing that granting an exception to the Placements Guidelines for the particular Transit Shelter, Signal Control Cover or Kiosk is in the public interest. The Department shall require Contractor to issue a public notice under Sections VI.A and VI.B of this Order if a Permit application includes a request for an exception to the Placement Guidelines. The exceptions to the public notice requirement contained in Sections VI.D, VI.E or VI.F of this Order shall not apply to a hearing required under this Section.

## XII.    CONSTRUCTION REQUIREMENTS

A. Contractor shall obtain the required permits, if any, from regulating agencies of the State of California.

B. Contractor shall contact the Department of Parking and Traffic for traffic requirements prior to beginning construction.

C. Contractor shall conduct its construction operations in accordance with the requirements of Article 11 of the City's Traffic Code.

D. Contractor shall call Underground Service Alert (telephone number 1-800-277-2600) 48 hours prior to any excavation.

E. Contractor shall be solely responsible for any damage to existing facilities.

F. Contractor shall comply with all applicable City specifications and regulations including those contained in Article 2.4 of the City's Public Works Code and Department Order No. 171, 442.

XIII.   DEPOSIT

Contractor shall submit and maintain with the Department a bond, cash deposit, or other security acceptable to the Department securing the faithful performance of the obligations of Contractor and its agent under any Transit Shelter, Signal Control Cover or Kiosk Permit issued under this Order. The deposit shall be in the sum of twenty-five thousand ($25,000) in favor of the "Department of Public Works, City and County of San Francisco."  If the Director has deducted any amounts from such a deposit pursuant to this Order, Contractor must restore the full amount of the deposit prior to the Department's issuance of a subsequent Permit.

XIV.   OTHER REQUIREMENTS

A.   Contractor's use of the Public Rights-of-Way shall be subordinate to any prior lawful occupancy and the continuing right of the City to use and occupy the Public Rights-of-Way, or any part thereof, exclusively or concurrently with any other person or persons, and further subject to the public easement for streets and any and all other deeds, easements, dedications, conditions, covenants, restrictions, encumbrances, franchises and claims of title which may affect the Public Rights-of-Way.

B.   Contractor shall not place a Transit Shelter, Signal Control Cover or Kiosk in the Public Rights-of-Way in a manner that is inconsistent with the City's Public Works Code, the rules, regulations, orders, and standard plans and specifications issued by the Department, other Applicable Law; provided that if any of the above provisions is inconsistent with this Order, this Order shall take precedence.

C.   When required to ensure the public health, safety or welfare, Contractor shall, at its own cost and expense, temporarily or permanently remove, relocate, adjust, and/or support a Transit Shelter, Signal Control Cover or Kiosk, or any part thereof, to such other locations in the Public Rights-of-Way, in such manner as appropriate and as may be approved by the City in writing and in advance, or otherwise required by the City. The City may not unreasonably withhold its approval of any plan for removal, relocation, adjustment, and/or support of a Transit Shelter, Signal Control Cover or Kiosk ordered pursuant to this Section. Such removal, relocation, adjustment, and/or support shall be completed within the time and manner prescribed by the City; however, where feasible the City may require Contractor to follow the procedures set forth in this Order to obtain a new location for a Transit Shelter, Signal Control Cover or

Kiosk. If Contractor does not remove, relocate, adjust, and/or support a Transit Shelter, Signal Control Cover or Kiosk in the manner and time prescribed by the City, the City shall take all reasonable, necessary, and appropriate action, including removing the Transit Shelter, Signal Control Cover or Kiosk, and may charge Contractor the reasonable costs actually incurred including, but not limited to, administrative costs.

D.    Whenever the City requires Contractor to remove, relocate, adjust, and/or support a Transit Shelter, Signal Control Cover or Kiosk to ensure the public health, safety or welfare, Contractor shall, after such work is complete, at its own cost and expense, promptly restore the Public Rights-of-Way in accordance with Applicable Law. If Contractor fails to restore the Public Rights-of-Way in accordance with Applicable Law, the City shall have the option to perform or cause to be performed such restoration in such manner as the City deems expedient and appropriate on behalf of Contractor and charge the actual costs incurred including, but not limited to administrative costs, to Contractor.

E.    Upon the receipt of a demand for payment by the City, Contractor shall reimburse the City for any costs incurred by the City to remove a Transit Shelter, Signal Control Cover or Kiosk or to restore the Public Rights-of-Way.

F.    The Department will not take any action that is authorized or required under this Section without first notifying and consulting with the SFMTA.

RECOMMENDED:                                    APPROVED:

_____                    _____
Barbara Moy, Bureau Manager                    Fred V. Abadi, Ph.D. Bureau of
Street-Use and Mapping                         Director of Public Works

Dated:  September 26, 2007                      Dated:  September 26, 2007

Distribution
Return to B.S.M. - D. McKenna, Room 410, 875 Stevenson St., (1-signed)
Outside of B.S.M.
Dept. Files (2)
Sonali Bose, MTA

Page 14

 **Municipal Transportation Agency**  

**EXHIBIT J**
**MTA Advertising Policy**
**Effective October 16, 2007**

Advertising on Municipal Transportation Agency ("MTA") property, or as authorized under any contract with the MTA, constitutes a nonpublic forum. No such advertisement shall:

- be false, misleading or deceptive;
- concern a declared political candidate or ballot measure scheduled for consideration by the voters in an upcoming election, or an initiative petition submitted to the San Francisco Department of Elections;
- appear to promote the use of firearms;
- be clearly defamatory;
- be obscene or pornographic;
- advocate imminent lawlessness or violent action;
- promote alcoholic beverages or tobacco products;
- infringe on any copyright, trade or service mark, title or slogan;

In addition, all advertisements on MTA property or as authorized under any MTA contract shall include the following language: "The views expressed in this advertisement do not necessarily reflect the views of the San Francisco Municipal Transportation Agency."

Any pilot programs or experimental advertisements must be submitted and approved by the MTA Executive Director/Chief Executive Officer at least sixty (60) days prior to implementation.

This policy shall be effective upon adoption but shall not be enforced to impair the obligations of any contract in effect at the time of its approval. It shall be incorporated into any new contract for advertising on MTA property including any new contract for advertising on transit shelters effective on or after December 7, 2007.

The MTA Board of Directors reserves the right to amend this policy at any time with written notice to any affected advertising contractor.

MTA contracts granting advertising rights shall include this Policy as an attachment and must require the following:

- The contractor must comply with the advertising standards set forth in this Policy, as they may be amended from time to time.
- The contractor must display only those advertisements that are in compliance with this Policy.
- The contractor must promptly remove any advertisements that are in violation of this policy upon written demand by the MTA Executive Director/Chief Executive Officer, in conformity with state and federal law.

 

**Municipal Transportation Agency**

## EXHIBIT K



 **Municipal Transportation Agency**                 

## EXHIBIT L

## NextBus Specifications

| | |
|---|---|
| Overall Matrix | 96 x 16 |
| LEDs per Pixel | One |
| Pixel Pitch | 4.58 mm Horizontal and Vertical |
| LED Color | Amber |
| LED Type | Surface Mount |
| Viewing Angle | 70 degrees from center |
| | 16 degree downward tilt to display face |
| Brightness Level | Photoelectric Light Sensors |
|     AC Units | 400 mcd/led, 19,069 NITs |
|     DC Units | 150 mcd/led, 7,140 NITs |
| Height of characters | 1.26 or 2.9" |
| Communication | RS 232 via Next Bus radio equipment |
| Messaging | Alpha / Numeric |
| Message entry & exit | Cascade, Flash, Jump, Open, Scroll Left, hold |
| Controller | On Board Mobile Radios and controller |
| Housing | Welded Aluminum |
| | Powder Coat Black Paint, RAL 9005 |
| | NEMA Type 4 |
| | UL Approved |
| Display Face | .5mm GE Polycarbonate Lens with anti-glare and UV filter |
| Servicing | Front Access via hinged door and display plate |
| Dimensions | 8" (H) x 23.62" (L) x 7.63" (D) |
| Approx. Weight | 25 lbs. |
| Power | |
|     AC Units | 120 V AC, 55 Watts |
|     DC Units | 12 V DC, 45 Watts |
| Mounting | Custom Bracketing |
| Misc: | Talking Sign IR LEDs |
| | Conformal Coated PCBs |
| | Tamperproof Mounting Hardware |
| | Cam Lock Hinged Door |

**Municipal Transportation Agency**  

## EXHIBIT M

## SAN FRANCISCO GIS DATA LICENSE AGREEMENT

THIS AGREEMENT, effective [insert date] is executed between the City and County of San Francisco, a chartered City, "CCSF" or "Licensor," and Clear Channel Outdoor, Inc., a Delaware corporation, "Licensee," residing or with a principal place of business at 555 12th Street, Suite 950, Oakland, California 94607.

### SECTION I
### DEFINITIONS

A. The term "MTA GEOSPATIAL DATA" or "MTA GeoData" includes, but is not limited to: 1) transit stop point location data including attribute data sets, 2) transit route and transit pattern line data for San Francisco Municipal Railway operated diesel bus, trolley bus, light rail, historic streetcar rail, and cable car service including attribute data sets, and 3) as well as additional geometric and attribute data sets, based on the above layers developed by the City and County of San Francisco.

B. The term "DISTRIBUTE" or "DISTRIBUTION" shall mean remarket, sublicense, give away, trade, sell, barter, disclose, transfer, lease, assign, disseminate, copy or otherwise provide third party access to the GIS, or to any copy, modification or derivative version of the GIS.

C. The term "GEOGRAPHIC INFORMATION SYSTEM" or "GIS" shall mean the computer mapping system containing: 1) the MTA GeoData (including all digital information and codes entered thereon by the City of San Francisco), 2) object files of software and/or any data in any format used to facilitate access to and manipulation of the MTA GeoData, 3) the Documentation accompanying GIS, 5) any other confidential information marked "confidential," "privileged" or "proprietary" relating to GIS and not a public record under Chapter 67 of the San Francisco Administrative Code, and 6) any copies, manipulated, modified or derivative versions or any updates of any or all of the foregoing items. "GIS" does not include output of the GIS, including spreadsheet files, database files, text files engineering or environmental document drawings and exhibits that are based on the GIS and auxiliary application programs that are appurtenant to GIS, except to the extent that such output is exempt from public disclosure under Chapter 67 of the San Francisco Administrative Code.

### SECTION II
### LICENSE GRANTED

A. CCSF hereby grants Licensee a perpetual, nontransferable and nonexclusive license to use the GIS in the normal course and scope of Licensee's business, subject to the terms and conditions stated in this Agreement. The license granted hereunder does not include any right to sublicense or otherwise distribute GIS.

B. The license granted in this Agreement shall be effective from the date of delivery of the GIS, and shall remain in force indefinitely, unless earlier terminated as set forth in Section IV of this Agreement.

**Municipal Transportation Agency**

 

C. During the term of this Agreement, subject to the license granted hereunder, the City and County of San Francisco shall retain all right, title and interest in the GIS, and in all copies, modifications and derivatives of works or versions of the GIS prepared by the Licensee. This Agreement shall not be deemed to grant Licensee any title or right to Licensor's patents, copyrights, trade secrets, or other intellectual properties.

SECTION III
CONDITIONS OF LICENSE

A. Licensee shall not Distribute any part of the GIS except as authorized by this Agreement. The GIS shall only be used on or copied onto Licensee's own computer equipment. Licensee may not make copies of, modify of make derivative versions of the GIS except as expressly authorized in writing by Licensor. Licensee shall be entitled to make a backup copy of the GIS for legitimate archival purposes only.

B. Licensee acknowledges and agrees with claims by the City and County of San Francisco that:

(1) The GIS contains valuable proprietary information, and;

(2) Any unauthorized Distribution of the GIS would i) substantially diminish the value to Licensor of the copyrights and other proprietary interests that are the subject of this Agreement, ii) render Licensor's remedy at law for such unauthorized Distribution inadequate, and iii) cause irreparable harm to the City and County of San Francisco. If Licensee breaches any of its obligations with respect to the use of the GIS, Licensor shall be entitled to equitable relief to protect its interests therein, including but not limited to preliminary and permanent injunctive relief, and Licensee waives any requirements that a bond be posted in connection therewith.

C. Licensee understands and agrees that only the Licensor can authorize Distribution of the GIS. Licensee agrees not to Distribute or allow Distribution of the GIS without express written authorization from Licensor.

D. Licensee agrees to immediately notify the Licensor of any improper GIS use or Distribution which occurs as a result of Licensee's activities.

E. Licensee shall include and maintain Licensor's copyright notices, trademark notices, and other proprietary legends on all copies of the GIS, including modified or derivative versions prepared by the Licensee. All GIS printouts shall bear the following notice, provided, that in the event Licensee fails insert any such notice as required hereunder, upon discovery by Licensee or Licensor, Licensee shall have such reasonable period of time to promptly correct such failure to so insert such notice and shall thereupon inform Licensor of its action.:

Reproduced with permission granted by the City and County of San Francisco. This map is copyrighted by the City and County of San Francisco. It is unlawful to copy or reproduce all or any part thereof without the prior written permission of the City and County of San Francisco.

**Municipal Transportation Agency**

 

The City and County of San Francisco does not guarantee the accuracy, adequacy, completeness or usefulness of any information. The City and County of San Francisco provides this information on "as is" basis without warranty of any kind, express or implied, including but not limited to warranties of merchantability or fitness for a particular purpose, and assumes no responsibility for anyone's use of the information.

F. Licensee shall be entitled to use modifications and upgrades to GIS provided to Licensee by Licensor as part of Licensor's ongoing maintenance of the GIS. Unless otherwise specified by Licensor, any such modifications and upgrades of the GIS shall automatically be deemed included within the definition of the term "GIS" and shall be subject to the terms and conditions of this license and shall be the sole property of Licensor. Licensor shall be under no obligation to make modifications that may be required for Licensee specific needs.

G.    Licensee agrees that only Licensor shall have the right to alter, maintain, enhance, or otherwise modify the GIS. Licensee shall not disassemble, decompile, or reverse engineer the GIS.

## SECTION IV
### DELIVERY AND TERMINATION

A. Licensee hereby acknowledges receipt and accepts delivery of the GIS. Licensee understands and agrees that the GIS is designed to operate only with specific computer equipment and software, all of which must be supplied and installed by the Licensee. Licensee is responsible for installation of the GIS on Licensee's computer equipment and for training its employees in use of the GIS and any required software.

B. This Agreement shall become effective upon the date of delivery of GIS to Licensee, and shall remain in effect until terminated. This Agreement may be terminated by either party upon notice if the other party breaches any material term or condition of this Agreement and fails to remedy the breach within sixty (60) days after being given notice thereof; provided, however, that if such breach cannot be cured within such sixty (60) day period, but the breaching party commences to effect a cure within such sixty (60) day period and diligently pursues such cure, the breaching party shall have so much time as is reasonable and necessary to cure such default. Upon termination of this Agreement, any rights granted to Licensee shall cease.

C. In the event of termination of this Agreement, Licensee shall within fifteen (15) days of termination remove all copies of the GIS from Licensee's computer equipment, including any backup copies. Licensee acknowledges that its failure to comply with the obligations of this section IV(C) will constitute unauthorized use of the GIS, entitling Licensor to equitable relief under section III(B) above.

## SECTION V
### LIMITATION OF WARRANTIES

 

**Municipal Transportation Agency**

A. CCSF warrants that it is the owner of the GIS. This express warranty of title replaces all other warranties, expressed or implied, including, without limitation, implied warranties of merchantability and fitness for a particular purpose, and is made exclusively to and for the Licensee. Licensor does not warrant that GIS will be error-free after Licensee's installation.

B. The GIS contains information and data compiled and processed by Licensor and third parties. Licensor makes no representation or warranty that the information and data contained in the GIS is accurate, true or correct. In accepting delivery of the GIS, Licensee understands and agrees that the data contained therein is subject to error, and cannot be relied upon without verification or site inspection.

## SECTION VI
## LIMITATION OF LIABILITY & INDEMNITY

A. In the event that the GIS fails to operate as described in the Licensor's published specifications due to a reproducible defect, Licensor's total liability and Licensee's sole remedy shall be limited to, at Licensor's option, replacement of the GIS or refund of any amounts paid for the License under this Agreement. In no event shall CCSF be liable for any of Licensee's incidental, consequential or special damages (including without limitation, loss of use, time or data, inconvenience, commercial loss, lost profits or savings, or the cost of computer equipment and software), to the full extent that such may be disclaimed by law, or for any claim against Licensee by any third party. In no event shall Licensor be liable for any claim, including claims by third parties, for loss or damages arising from erroneous data or information contained in the GIS.

B. Licensor shall have no liability or obligation with respect to any derivative product or other modifications of the GIS by Licensee. If any claim is asserted by a third party that, as a result of such derivative products or modifications by Licensee, the GIS as so modified infringes an intellectual property right of the third party, Licensee shall indemnify Licensor with respect to all costs or damages resulting from such claim, including attorney's fees, and any judgment that may be awarded against Licensor to the extent based on such derivative product or modification.

C. Licensee will defend, indemnify, and hold harmless CCSF, together with any and all of CCSF's agents and employees, from and against any and all claims, losses, liabilities, damages and expenses (including reasonable attorneys' fees) of any kind whatsoever for injuries to or death of any person (including, but not limited to, employees of CCSF arising out of the GIS, including any subsequent modifications, updates or enhancements to the MTA GeoData) resulting from the negligence or intentional acts of the Licensee, whether or not the negligence of CCSF caused or contributed to said injury or death. This paragraph shall survive the termination or expiration of this Agreement. Licensor will defend, indemnify, and hold harmless Licensee, together with any and all of Licensee's agents and employees, from and against any and all claims, losses, liabilities, damages and expenses (including reasonable attorneys' fees) of any kind whatsoever resulting from Licensor's infringement of any copyright, trademark, patent or other intellectual property right of any third party in connection with the grant of license hereunder.

 **Municipal Transportation Agency**     

## SECTION VII
## GENERAL PROVISIONS

A. This Agreement shall be governed by and interpreted under the law of the State of California without regard to conflict of laws provisions. Any dispute arising out of this Agreement shall be subject to the exclusive venue of the state and federal courts within the Northern District of California, and the parties hereby consent to the venue and jurisdiction of such courts.

B. This Agreement may not be assigned or otherwise transferred, nor, except as expressly provided herein, may any right or obligation hereunder be assigned or transferred to any third party by either party without the prior written consent of the other party hereto.

C. No modification to this Agreement, nor any waiver of any rights, shall be effective except by an instrument in writing executed in the same manner as this Agreement,, and the waiver of any breach or default shall not constitute a waiver of any other right hereunder or any subsequent breach or default.

D. All notices or other communications under this Agreement shall be delivered by first class mail to:

**Licensor:**

San Francisco Municipal Transportation Agency
Real Estate Division
One South Van Ness Ave. 7th floor
San Francisco, California 94103
Fax: (415) 701-4341

**Licensee:**

Clear Channel Outdoor – San Francisco Division
555 12th Street, Suite 950
Oakland, California 94607
Attention: President – San Francisco Division

E. This Agreement and its attachments contain the entire Agreement and understanding between the parties with respect to the subject matter hereof and merges and supersedes all prior agreements, understanding and representations. In no event will any additional terms or conditions on a purchase order be effective unless expressly accepted by Licensor in writing.

F. If any provision of this Agreement is held to be invalid by a court of competent jurisdiction, then the remaining provisions will nevertheless remain in full force and effect.

**Municipal Transportation Agency**

 

G. The failure of either party to enforce at any time any of the provisions of the Agreement, or the failure to require at any time performance by the other party of any of the provisions of this Agreement, will in no way be construed to be a present or future waiver of such provisions, nor in any way effect the validity of either party to enforce each and every such provision thereafter.

H. Tropical hardwoods. The City and County of San Francisco urges companies not to import, purchase, obtain or use for any purpose, any tropical hardwood or tropical hardwood product.

I. The terms and provisions of this Agreement shall be governed by and be subject to the provisions of the Charter of the City and County of San Francisco as in effect on the date of execution hereof.

**IN WITNESS WHEREOF,** the undersigned are duly authorized to execute this Agreement on behalf of the City and the Licensee.


CITY

Recommended by:


Municipal Transportation Agency


Approved:


Executive Director/CEO
Municipal Transportation Agency


Approved as to Form:

Dennis J. Herrera
City Attorney


By _____
    Deputy City Attorney

 **Municipal Transportation Agency**  

## EXHIBIT N

## SFMTA SBE FORM No. 4
## SUBCONTRACTOR PARTICIPATION DECLARATION

**(To be submitted by the prospective prime contractor or subcontractor, as appropriate, to the Contract Compliance Office no later than 4:00 p.m. on the fifth business day following bid opening)**

_____,

(Name and Title)

declares as follows:   That contingent upon award of_____,

(Name of Project)

_____ will award subcontracts or pursue

(Name of Prime Contractor)

orders to the following Small Business firms:  (If the firm is a joint venture, you must attach a copy of the joint venture agreement.)

| Name and Address of SBE | SBE Certified (Type) | Lic. # | Gender M | F | Ethnicity | Type of Work (Describe) | $ Amount of Sub-Contract | % of Contract |
|---|---|---|---|---|---|---|---|---|
| | | | | | | | | |
| | | | | | | | | |
| | | | | | | | | |
| | | | | | | | | |
| | | | | | | | | |
| | | | | | | | | |

Total dollar value of SBE work:   $_____  =   _____   % of SBE
Participation
Total dollar of Bid Price        $

I declare under penalty of perjury under the laws of the State of California that the above information is true and correct.

_____        Dated: _____

Owner or Authorized Representative (Signature)

## END OF FORM

 **Municipal Transportation Agency**     

## EXHIBIT N

## SFMTA SBE FORM No. 5

### SMALL BUSINESS ENTERPRISE ACKNOWLEDGMENT DECLARATION

Every listed SBE subcontractor or supplier (including lower tier subcontractors) must submit the completed declarations to the apparent low Bidder. The apparent low Bidder shall submit completed declarations and copies of the subcontractors' or suppliers' bid quotations directly to the Contract Compliance Office no later than 4:00 p.m. on the fifth business day following bid opening.

_____

(Owner or Authorized Representative and Title)

declares that _____ will award a
            (Name of Prime Contractor)

subcontract in the amount of $_____, or a purchase order in the

amount of $_____to _____
                                        (Name of your firm)

License No. _____. Nature of work to be performed by SBE: _____
_____

## FORM OF OWNERSHIP FOR SMALL BUSINESS ENTERPRISE

Sole Proprietorship _____ Partnership_____ Joint Venture_____

Corporation _____ Limited Liability Partnership _____    Limited Liability Corporation _____

Type of SBE Certification _____

### LIST OWNERS

Name _____ Ethnicity*_____ Gender _____ % of Ownership _____

Name _____ Ethnicity*_____ Gender _____ % of Ownership _____

Name _____ Ethnicity*_____ Gender _____ % of Ownership _____

Name _____ Ethnicity*_____ Gender _____ % of Ownership _____

Percentage of SBE Stockholders: _____

· *Ethnic Codes: AI/AN = American Indian or Alaskan Native, A/PI = Asian or Pacific Islander, B = Black, F = Filipino, H = Hispanic, and W = White.

 **Municipal Transportation Agency**

 

## EXHIBIT O

