DENNIS J. HERRERA, State Bar #139669
City Attorney
KRISTEN A. JENSEN, State Bar #130196
THOMAS S. LAKRITZ, State Bar #161234
VICTORIA WONG, State Bar #214289
Deputy City Attorneys
City Hall, Room 234
1 Dr. Carlton B. Goodlett Place
San Francisco, California 94102
Telephone:    (415) 554-6547
Facsimile:    (415) 554-4747
E-Mail:       tom.lakritz@sfgov.org

Attorneys for Defendant
CITY AND COUNTY OF SAN FRANCISCO

UNITED STATES DISTRICT COURT

NORTHERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| METRO FUEL LLC, a Delaware limited liability company,<br><br>            Plaintiff,<br><br>     vs.<br><br>CITY OF SAN FRANCISCO, a municipal corporation, COUNTY OF SAN FRANCISCO, a subdivision of the State of California, CITY AND COUNTY OF SAN FRANCISCO, a chartered California city and county and DOE 1 through DOE 10,<br><br>            Defendants. | Case No. C07-6067 JSW<br><br>**DECLARATION OF KIMBERLY J. DURANDET IN OPPOSITION TO PLAINTIFF'S MOTION FOR A PRELIMINARY INJUNCTION**<br><br>Hearing Date:  November 14, 2008<br>Time:          9:00 a.m.<br>Place:         Courtroom 2, 17th Floor<br><br>Trial Date:    October 26, 2009 |

I, KIMBERLY J. DURANDET, declare:

1. I have personal knowledge of the matters stated herein, except for those matters set forth on information and belief, which I believe to be true, and if called to testify, I can and will testify competently as to all matters set forth herein.

2. I am employed as a Planner for the San Francisco Planning Department. I have been employed in this capacity for 2 3/4 years. Prior to my employment as a Planner for the Planning Department, I was a graduate student intern for the United States Department of the Interior.

3. As a Planner for the Planning Department, I am responsible for assisting in the planning, development and implementation of the general advertising sign inventory program, including but not limited to managing and assisting the student trainees in the City-wide survey of general advertising signs. Working with Jonathan Purvis and other Planning Department staff, I helped develop the process by which a City-wide survey of general advertising signs was to be conducted.

4. I was primarily responsible for managing the field study, including supervising the field workers and adjusting their assignments as needed based on the survey program's goals. The steps I took to supervise the field workers included meeting with them individually and as a group every week to assign survey areas to be covered based on what was determined to be a priority of resource allocation. In addition to the field survey, I assigned them individual office projects related to the field work such as creating a file for each sign found in the field. On occasion I would join field workers to survey a given area.

5. In order to conduct the survey, Planning Department staff (working with consultants) created a City Inventory database by merging all of the sign inventories submitted to the City by general advertising sign companies into a single database and by merging that database with databases containing sign-related information maintained by the Planning Department. This City Inventory was mapped by a Geographic Information Systems ("GIS") application. Using that map, I determined where the greatest concentration of signs was and created a survey area plan and calendar, assigning certain parcels to each field surveyor. Although the original survey design did not call for

1  residential blocks to be surveyed, I felt strongly that for a city-wide survey to be comprehensive it
2  needed to include every block including residential areas.  Therefore, I instructed field workers to
3  survey by car all residential areas adjacent to targeted districts.  The result was a City-wide survey
4  that included all parcels, whether or not those parcels were identified by general advertising sign
5  companies as containing signs.

6.  I also personally conducted field work on occasion by surveying parcels.  In the course of surveying each parcel, I checked the parcel to see whether any general advertising signs (where each separate sign face was counted as an individual sign) were located on the parcel.  If I found a sign on the parcel, I tried to match the sign or signs I found against any signs identified for that parcel in the current version of the City Inventory, contained on a laptop that I took into the field.  If I could not match a sign on the ground with a sign listed in the City Inventory, I observed and recorded in the City Inventory database comprehensive information about each sign I found, including sign type (i.e. whether the sign is freestanding, attached to a wall, or attached to a roof), size, height, orientation, features such as illumination, permit number if displayed on the sign, company name if displayed on the sign, the condition of the sign (including any graffiti or maintenance concerns), and the block and lot where the sign was located.  I also noted whether the sign displayed its dimensions as required by Planning Code section 604.1.

7.  If the sign or signs that I found on each parcel I surveyed was listed in the City Inventory, I nonetheless independently verified comprehensive information concerning that sign, including sign type (whether freestanding, wall, or roof), size, height, orientation, features such as illumination, permit number if displayed on the sign, company name if displayed on the sign, condition of the sign (including any graffiti or maintenance concerns), and the block and lot where the sign was located.  I also noted whether the sign displayed its dimensions as required by Planning Code section 604.1.  If any of the information submitted by a company in the City Inventory was incorrect, then I made a note in the City Inventory database of the discrepancy so that it could be researched and resolved at a later stage in the survey process.  If the information already contained in the City Inventory proved to be correct based on my independent field observations, then I did not modify the database entries for that sign.

8. To verify sign type, size, height, orientation, illumination, condition, block and lot, and whether the sign disclosed its company name, size, and permit number as required by Planning Code section 604.1, of any sign already listed in the City Inventory, took, on average, an amount of time equal to the time required to determine this information with regard to a sign not listed in the City Inventory. Where the data already contained in the City Inventory concerning a sign proved to be accurate, however, it saved me the time of entering that data.

9. For each parcel that I surveyed, I took one to four photographs of each sign face that I found on the parcel. The photographs I took of the sign faces were intended to demonstrate the scale and structural defects, if any, of each sign, as well as the information required to be displayed on the sign pursuant to Planning Code section 604.1. While still in the field or upon my return to the office, I uploaded these photographs into the City Inventory database using a GIS application that was installed on my laptop. In order to pinpoint the location of each sign that I surveyed and photographed while in the field, I also marked each sign that I found on an electronic map of the City with a dot using the GIS application. Each dot was assigned a unique identifying number generated by the computer application I was using. The photographs that I took are linked electronically to the dot for each sign. For every sign that I surveyed, the dot on the map was placed by me or one of my Planning Department colleagues and the linked photographs were taken by me or one of my Planning Department colleagues. None of the dots or the photographs for the signs that I surveyed was generated by any general advertising sign company.

10. In addition to assisting in the development, supervision, and implementation of the City-wide survey and the creation of the City Inventory of general advertising signs, I also supervised the creation of a map of the City that shows the location of every general advertising sign listed in the City Inventory. This map was created exclusively using the City Inventory, and in particular using the location dots that were entered into the GIS application by Planning Department staff.

11. Upon completion of the survey my duties shifted to sign research, review, analysis, and enforcement.

12. I understand that Charles T. Fetternman submitted a declaration in support of Metro Fuel's motion for a preliminary injunction. In his declaration, Mr. Fetterman stated that he is the

1  owner of the property located at 360 5th Street, San Francisco, CA. The violation located at this
2  address is in the Residential/Service Mixed Use Zoning District governed by Section 815 of the
3  Planning Code. (Added by Ord. 115-90, App. 4/6/90)  General advertising signs are prohibited in this
4  zoning district per Section 815.76.  Furthermore, Section 607.2(e) expressly prohibits new general
5  advertising signs in South of Market Mixed Use Districts with the exception of the South of Market
6  (SOMA) Special Sign District (SSD).  This property is not located in the SOMA SSD therefore,
7  would not be permitted under 607.2(e).

8        13.    I understand that Devendra Patel submitted a declaration in support of Metro Fuel's
9  motion for a preliminary injunction.  In his declaration, Mr. Patel stated that he is the owner of the
10  property located at 102 Sixth Street, San Francisco, CA.  The violation located at this address is in the
11  Residential/Service Mixed Use Zoning District governed by Section 815 of the Planning Code.
12  (Added by Ord. 115-90, App. 4/6/90)  General advertising signs are prohibited in this zoning district
13  per Section 815.76.  Furthermore, Section 607.2(e) expressly prohibits new general advertising signs
14  in South of Market Mixed Use Districts with the exception of the South of Market (SOMA) Special
15  Sign District (SSD).  This property is not located in the SOMA SSD therefore, would not be
16  permitted under 607.2(e).

17        14.    I understand that Nazir Javaid submitted a declaration in support of Metro Fuel's
18  motion for a preliminary injunction.  In his declaration, Mr. Javaid stated that he is the owner of the
19  Naz Auto Services, Inc., the entity that owns the property located at 376 Castro Street. The violation
20  located at this address is in the Upper Market Street Neighborhood Commercial District governed by
21  Section 721 of the Planning Code. (Added by Ord. 69-87, App.3/13/87)  General advertising signs are
22  prohibited in this zoning district per Section 721.30.  Furthermore, it is located within the boundaries
23  of the Upper Market Special Sign District (SSD) where general advertising signs are prohibited per
24  Planning Code Section 608.10(b).

25        15.    I understand that Stephanie Foneseca submitted a declaration in support of Metro
26  Fuel's motion for a preliminary injunction.  In her declaration, Ms. Foneseca stated that she is the
27  tenant of the Janice Pivnick Trust, the property owner of 1398 California Street. This violation is
28  located in the Polk Street Neighborhood Commercial District governed by Section 723 of the

Planning Code. (Added by Ord. 69-87, App. 3/13/87) General advertising signs are prohibited in this zoning district per Section 723.30.

16. I understand that Anton Halteh submitted a declaration in support of Metro Fuel's motion for a preliminary injunction. In his declaration, Mr. Halteh stated that he is the Trustee of the Anton & Nimat Halteh Family Trust, the entity that owns a market located at 701 10th Avenue, San Francisco, CA. This violation is located in a Neighborhood Commercial Cluster District governed by Section 710 of the Planning Code. (Added by Ord. 69-87, App. 3/13/87) General advertising signs are prohibited in this zoning district per Section 710.30. Furthermore, Mr. Anton Halteh has filed an application for a building permit (2008.0814.9183) to remove this sign. Removing the sign will abate the violation.

17. I understand that Vijay Patel submitted a declaration in support of Metro Fuel's motion for a preliminary injunction. In his declaration, Mr. Patel stated that he is the owner of the property located at 1485 Bush Street, San Francisco, CA. This violation is in a unique location as it is located in a Residential-Commercial Combined (RC-4) District, which normally would not permit general advertising signs per Planning Code Section 606(a)(3). However, it is also within the boundaries of the Van Ness Special Sign District per Planning Code Section 607.3(c)(3). This section of the Planning Code permits general advertising signs under certain conditions which includes the following: "No more than one general advertising sign of 300 square feet or two general advertising signs of 72 square feet each shall be permitted per lot…All general advertising signs shall conform to the provisions of Section 5408 of the California Business and Professions Code, including the requirement that no advertising display shall be placed within 100 feet from another advertising display on the same side of Van Ness Avenue." This property has an existing general advertising sign located on the south wall. The signs referred to in this violation case would cumulatively exceed the square footage allowed per this Code Section. Additionally, another general advertising sign exists within one hundred feet on the same side of the street, which would prevent Planning Department approval of a permit at this location for a new general advertising sign.

18. I understand that Jennifer Lenh submitted a declaration in support of Metro Fuel's motion for a preliminary injunction. In her declaration, Ms. Lenh stated that she is the owner of the

1    Polk and Clay Liquor, the entity that rents the property located at 1700 Polk Street, San Francisco,
2    CA. This violation is located in the Polk Street Neighborhood Commercial District governed by
3    Section 723 of the Planning Code. (Added by Ord. 69-87, App. 3/13/87)  General advertising signs
4    are prohibited in this zoning district per Section 723.30.

5         19.    I have reviewed the eight pictures of Metro Fuel signs submitted as exhibits to
6    Michael A. Friedman's declaration.

7         20.    The first picture is located in a Downtown General Commercial (C-3-G) Zoning
8    District at 110 Franklin Street.  While this zoning district would permit general advertising signs per
9    Planning Code Section 227(k), it is located within 100 feet of a school, which has been prohibited
10   since at least 1965.

11        21.    The second picture is located in a Residential-Commercial Combined (RC-4) District
12   overlayed by the North of Market Residential Special Use District at 168 Eddy Street.  General
13   advertising signs are prohibited in both levels of zoning districts per Sections 606(a)(3).

14        22.    The third picture is located in the Upper Market Street Neighborhood Commercial
15   District at 376 Castro.  General advertising signs are prohibited in this zoning district per Section
16   721.30.  Furthermore, it is located within the boundaries of the Upper Market Special Sign District
17   (SSD) where general advertising signs are prohibited per Planning Code Section 608.10(b).

18        23.    The fourth picture is located in a Small Scale Neighborhood Commercial (NC-2)
19   District at 3100 California Street.  While this zoning district would permit general advertising signs
20   per Planning Code Section 711.30, Section 607.1(e) would prohibit the sign from covering any
21   windows.  The sign as it exists would not be permitted.

22        24.    The fifth picture is located in the Polk Street Neighborhood Commercial District at
23   1343 Polk Street.  General advertising signs are prohibited in this zoning district per Section 723.30.

24        25.    The sixth picture is located in the Upper Market Street Neighborhood Commercial
25   District at 1900 Market Street.  General advertising signs are prohibited in this zoning district per
26   Section 721.30.  Furthermore, it is located within the boundaries of the Upper Market Special Sign
27   District (SSD) where general advertising signs are prohibited per Planning Code Section 608.10(b).

28

1  Newly adopted zoning regulations for Market Octavia Plan Area NCT-3 do not affect prior general
2  advertising sign controls.
3      26.    The seventh picture is located in a Downtown General Commercial (C-3-G) Zoning
4  District at 75 Howard Street. While this zoning district would permit general advertising signs per
5  Planning Code Section 227(k), it is located within 200 feet of a freeway and further analysis would
6  need to be conducted to determine potential compliance with Section 608.5 of the Planning Code
7  regulations on freeway signs.
8      27.    The eighth picture is located in a Downtown General Commercial (C-3-G) Zoning
9  District at 3420 Taylor Street. While this zoning district would permit general advertising signs per
10 Planning Code Section 227(k), it is located on a Category IV building in the Kearny-Market-Mason-
11 Sutter Conservation District. General advertising signs are prohibited in any Historic or Conservation
12 District or on any historic property per Planning Code Section 1111.7(a).
13
14     I declare under penalty of perjury pursuant to 28 U.S.C. § 1746 that the foregoing is true and
15 correct to the best of my knowledge.
16     Executed on August 28, 2008

By: /s/
KIMBERLY J. DURANDET

**SIGNATURE ATTESTATION**

(U.S.D.C. N.D. Cal. General Order 45, Section X.B.)

I obtained the concurrence in the filing of this document from the signatory of this declaration, in compliance with U.S.D.C. N.D. General Order 45, Section X.B.

Dated: August 29, 2008

DENNIS J. HERRERA
City Attorney
KRISTEN A. JENSEN
THOMAS S. LAKRITZ
VICTORIA WONG
Deputy City Attorneys

By:       /S/       .
THOMAS S. LAKRITZ

Attorneys for Defendant
CITY AND COUNTY OF SAN FRANCISCO