PAUL E. FISHER, State Bar No. 125309
The Law Office of Paul E. Fisher
537 Newport Center Dr., #289
Newport Beach, CA 92660
Telephone: (949) 675-5619
Facsimile: (949) 675-5641

ERIC HECKER (admitted *pro hac vice*)
Emery Celli Brinckerhoff & Abady LLP
75 Rockefeller Plaza, 20th Floor
New York, NY 10019
Telephone: (212) 763-5000
Facsimile: (212) 763-5001

ATTORNEYS FOR PLAINTIFF
METRO FUEL LLC

## UNITED STATES DISTRICT COURT

## FOR THE NORTHERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| METRO FUEL LLC, a Delaware limited liability company,<br><br>       Plaintiff,<br>vs.<br><br>CITY OF SAN FRANCISCO, a municipal corporation, COUNTY OF SAN FRANCISCO, a subdivision of the State of California, CITY AND COUNTY OF SAN FRANCISCO, a chartered California city and county,<br><br>       Defendants. | Case No. 3:07-CV-6067 (JSW)<br><br>The Hon. Jeffrey S. White<br><br>**REPLY DECLARATION OF ERIC HECKER IN FURTHER SUPPORT OF PLAINTIFF'S MOTION FOR A PRELIMINARY INJUNCTION** |

ERIC HECKER declares under penalty of perjury, pursuant to 28 U.S.C. §

1746, that the following is true and correct:

      1.    I am a partner at Emery Celli Brinckerhoff & Abady LLP, and I

have been admitted *pro hac vice* and have appeared in this action to serve as co-counsel

to Plaintiff Metro Fuel LLC ("Fuel"), together with the Law Office of Paul Fisher.  I

submit this Reply Declaration in further support of Plaintiff's Motion for a Preliminary Injunction in this case.

2.      On August 22, 2008, the San Francisco Municipal Transportation Agency ("SFMTA") released a Request for Proposals ("RFP") announcing an ambitious plan to generate hundreds of millions in additional revenue by allowing advertising to be placed in and on a wide variety of facilities not covered by the Shelter Agreement with Clear Channel.  Attached hereto as Exhibit A are true and correct copies of SFMTA's authorizing resolution, the RFP, and a list of potential bidders, together with an explanatory cover memorandum prepared by SFMTA's Finance and Information Technology Division.

3.      According to the "Scope of Work" section of the RFP, which appears at page 2, the winning franchisee "will have the right to advertise, on an exclusive basis during the term of this contract, *on a wide range of properties* owned or licensed by the SFMTA" (emphasis supplied).

4.      As page 2 of the RFP makes clear, the City "encourages proposals that include creative ideas for enhancing revenue from all SFMTA property."

5.      The various subsections of Appendix C to the RFP detail the different types of revenue-generating commercial advertising that the City envisions.

6.      Appendix C-1 of the RFP addresses advertising on transit vehicles. The City boasts that it has 1,077 vehicles – including buses, cable cars, and light rail vehicles – that are available for interior and exterior advertising.  The City contemplates commercial advertising on fully or partially wrapped exteriors, interior and exterior panel advertising, and advertising on the floors, seats, windows, door panels, and even the

hangers/grabbers of its vehicles. Section 3.4.1(b) of the draft franchise agreement (which is appended to the RFP as Appendix E) provides that all SFMTA "vehicles may be wrapped so long as side windows are not covered."

       7.    Appendix C-2 of the RFP addresses advertising in the City's 19 municipally-owned parking garages. The RFP contemplates placing static and digital commercial advertising in the City's garages on ramps, gate arms, walls, floors, elevators, stairways, escalators, and planter boxes, among other places.

       8.    Appendix C-3 of the RFP addresses advertising on SFMTA's tunnel and other real property facilities. The City is proposing that commercial advertising signs be placed along the tunnel egress between Twin Peaks and West Portal stations, and on 18 other properties owned or leased by the SFMTA throughout the City.

       9.    Appendix C-4 of the RFP addresses advertising on fare and parking media. The City is proposing that commercial print advertising be placed on all cable car tickets, Muni Passports, Muni Fast Passes, parking tickets, Translink SmartCards, and residential parking permits.

       10.    Appendix C-5 and C-7 of the RFP addresses other revenue-generating commercial signage contemplated by the City. With respect to the Central Subway, the City is proposing that commercial advertising signs be placed on street-level station denominators, platform entryways, platforms, walkways, pillars, and bulkheads. The City is even contemplating putting commercial advertising on SFMTA message screens placed along San Francisco's highways.

       11.    The City has established a minimum bid for this franchise. As pages 7-8 of the RFP set forth, each bidder must offer the City no less than $11.15

million in the first year of the contract (including the mandatory administrative, marketing support, and media fees), escalating to a minimum of $16.625 million in the tenth year. All tolled, the minimum 10-year bid is over $130 million. If the contract is extended to 20 years, the minimum bid is well over $300 million (including the mandatory administrative, marketing support, and media fees).

12.     Attached hereto as Exhibit B is a true and correct copy of the recent opinion entering summary judgment on behalf of the plaintiffs in *World Wide Rush v. City of Los Angeles*, No. 07-CV-0238, __ F. Supp. 2d __ (C.D. Cal. Aug. 20, 2008).

13.     I declare under penalty of perjury that the foregoing is true and correct.

Dated:   September 12, 2008
         New York, New York

ERIC HECKER